UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x
ARLENE DELGADO,

                                     **Civil Case No.: 19-cv-11764**

                                     **PLAINTIFF DEMANDS**
                    Plaintiff,                **A TRIAL BY JURY**

             *-against-*                   **COMPLAINT**

DONALD J. TRUMP FOR PRESIDENT, INC.,
TRUMP FOR AMERICA, INC.,
SEAN SPICER, individually,
REINCE PRIEBUS, individually,
STEPHEN BANNON, individually,

                     Defendants.
-----------------------------------------------------x


      Plaintiff, ARLENE DELGADO, (hereinafter referred to as "A.J. Delgado" or "Plaintiff"), by and through her attorneys, DEREK SMITH LAW GROUP, PLLC, hereby complains of Defendants, DONALD J. TRUMP FOR PRESIDENT, INC., (hereinafter referred to as the "Trump Campaign" or "Campaign"), TRUMP FOR AMERICA, INC., (hereinafter referred to as the "Transition Organization" or "TFA") SEAN SPICER, individually, REINCE PRIEBUS, individually and STEPHEN BANNON, individually (together, the "Campaign Directors" or "Transition Directors") and all collectively referred to as "Defendants," upon information and belief, as follows:


### NATURE OF CASE

      Plaintiff, ARLENE DELGADO, complains pursuant to the common law of the state of New York, Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title

VII"), the Administrative Code of the City of New York and the laws of the State of New York, based upon the supplemental jurisdiction of this Court pursuant to *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966), and 28 U.S.C. §1367 seeking declaratory relief and damages to redress the injuries Plaintiff has suffered as a result of *inter alia*, a breach of contract, tortious interference with economic advantage, pregnancy discrimination, sex and gender discrimination, hostile work environment and retaliation by Defendants.

## JURISDICTION AND VENUE

1. Jurisdiction of this action is conferred upon this Court as this case involves a Federal Question under Title VII.  The Court also has diversity jurisdiction, and jurisdiction pursuant to 29 U.S.C. §2617; 28 U.S.C. §1331, §1343 and pendent jurisdiction thereto.

2. Additionally, the Court has supplemental jurisdiction under the New York State and City laws.

3. Venue is proper in this court, as a substantial part of the events giving rise to this action arose in New York County, within the Southern District of New York.

## PARTIES

4. Plaintiff, A.J. DELGADO, is an individual woman residing in Miami, Florida.

5. At all times material, Defendant Donald J. Trump for President, Inc. (the "Campaign") was and is a foreign not-for-profit corporation incorporated in the State of Virginia, authorized to do business in the State of New York, that operated and operates as a Presidential Campaign Committee, with a principal place of business at Trump Tower, 725 Fifth Avenue, New York, New York, 10022.

6. At all times material, Defendant Trump for America, Inc. ("TFA") was and is a foreign not-for-

profit corporation established pursuant to Section 501(c)(4) of the Internal Revenue Code and incorporated in New Jersey, and authorized to do business is New York.  TFA assisted in the presidential transition and the preparation for the assumption of official duties of the President.

7.    At all times material, Defendant SEAN SPICER, a current resident of Rhode Island, was a Senior Official for the Campaign and TFA, and, subsequently, incoming White House Press Secretary, and held supervisory authority over Plaintiff with regard to her employment including the ability to hire and fire Plaintiff.

8.    At all times material, Defendant REINCE PRIEBUS, a current resident of Virginia, was a Senior Official for the Campaign and TFA, and, subsequently, incoming White House Chief of Staff, and held supervisory authority over Plaintiff with regard to her employment including the ability to hire and fire Plaintiff.

9.    At all times material, Defendant STEPHEN BANNON, a current resident of California, was a Senior Official for the Campaign and TFA, and, subsequently, incoming White House Chief Strategist, and held supervisory authority over Plaintiff with regard to her employment including the ability to hire and fire Plaintiff.

**RELEVANT FACTS**

10.   Plaintiff, A.J. DELGADO, is a nationally known political commentator, writer, and attorney.  A graduate of Harvard Law School, Delgado served as a Senior Advisor and Hispanic Outreach Director for the Campaign and TFA from September 1, 2016 to January 20, 2017.

11.   Delgado is a first-generation Latina-American and a politically conservative writer, thinker, and commentator.  The daughter of Cuban immigrants (her father was a bus driver and her mother worked in a factory), Delgado only spoke Spanish until she started kindergarten.  She graduated

from the University of Florida with 4.0 GPA, and immediately attended and graduated from Harvard Law School, where she excelled as a popular and successful student, serving as section-leader her 1L year and in multiple student groups.  After Harvard, she joined a top New York City law firm before returning home years later to Miami to care for an ill family member and begin building her profile as a political commentator.

12.   Delgado has regularly published commentary in a variety of publications including the American Conservative, the National Review, The Miami Herald, Breitbart, the Daily Caller and the Washington Post.  She has appeared as a conservative political commentator hundreds of times on radio, online, and on cable news programs, including on Fox News, MSNBC, CNN, CNN en Espanol, Yahoo!, BBC, Al Jazeera, Univision, Telemundo, and NPR.

13.   Shortly after now-President Donald J. Trump announced his candidacy for President in 2015, Delgado became one of his earliest, most loyal, and most vocal supporters, at a time when almost no political writers or pundits were willing to publicly support President Trump.  For example, on October 2015, at a time when nearly all known conservative writers and pundits were supporting other candidates, Delgado wrote a viral article in Breitbart entitled, "20 Reasons Why It Should be Donald Trump in 2016," at great professional and personal risk.[1]

14.   Even before she was formally hired by the Campaign in August 2016, Delgado made dozens of unpaid television and radio appearances supporting President Trump and the Campaign throughout the October 2015 – August 2016 period.  Notably, on November 4, 2015, Delgado appeared on Sean Hannity's Fox News show and, when asked to predict the election, correctly predicted President Trump would win the primaries and the general election.

15.   MSNBC's Chris Hayes called DELGADO "by far, the most cogent, formidable surrogate for

---

[1] https://www.breitbart.com/politics/2015/10/22/20-reasons-donald-trump-2016/

Trump of anyone who's been doing TV appearances,"[2] and Fox News' Sean Hannity said Delgado has "incredible communications skills.  She is not only a Harvard grad who is brilliant, but she has incredible insight and knowledge on every important issue of the day."[3]

16.    Even Prior to meeting Plaintiff DELGADO in August of 2016, President Trump was so impressed with her advocacy that he sent her messages of praise.

17.    Plaintiff DELGADO formally joined the Campaign in August 2016.  Her counterparts were Sarah Huckabee Sanders (who was hired by the White House as a deputy press secretary and served as White House Press Secretary); Boris Epshteyn (who was hired by the White House); and Omarosa Manigualt Newman (who was also subsequently hired by the White House).

18.    After joining the Campaign, Plaintiff DELGADO appeared on television on behalf of President Trump nearly 100 times and defended him against every attack.  The Washington Post referred to Plaintiff DELGADO as "one of Trump's most steadfast defenders."

19.    Plaintiff DELGADO performed for the campaign so well that President Trump consistently praised her and referred to her as his "star" and routinely called Plaintiff up on stage at public events and singled her out for praise.  Indeed, on at least three occasions President Trump expressed that he was impressed by Plaintiff and would hire her for the White House if he won.

**DEFENDANTS DISCRIMINATED AGAINST PLAINTIFF BECAUSE OF HER PREGNANCY AND RETALIATED AGAINST PLAINTIFF FOR COMPLAINING ABOUT PREGNANCY DISCRIMINATION.**

20.    In mid-November 2016, Plaintiff DELGADO learned that she became pregnant by her supervisor, Jason Miller.

---

[2] https://www.theatlantic.com/politics/archive/2017/08/from-trump-aide-to-single-mom/536892/
[3] https://finance.yahoo.com/news/trump-campaign-brings-on-a-j-delgado-as-a-senior-adviser-165555143.html?guccounter=1&guce_referrer=aHR0cHM6Ly93d3cuZ29vZ2xlLmNvbS8&guce_referrer_sig=AQAAACrDva7CPKW1ddi4Dl6KNVtbxJmlvy86L0BAed7KHNc_i7B2j-_phJuwt7Jd8QYXrkzn5M9yncSpB9herrug6YPuDkwKWOwHAN1l5BIK2IbmnckEu6cP82rjyH6XjSEWyfHuyU9sXJNm97HlckxRcU5PK3TFxluY0RdhoDG7xira

21. Plaintiff informed Miller, who told her that she could not be seen "waddling around the White House pregnant."

22. Around December 21, 2016, Plaintiff DELGADO emailed Defendant BANNON and senior Campaign and TFA Advisor Kellyanne Conway to inform them of her pregnancy.

23. Around December 22, 2016, Defendant BANNON accepted the news about Plaintiff DELGADO's pregnancy and told her someone would call by the end of the day, but no one did.

24. On December 26, 2016, Plaintiff spoke with Defendant SPICER on the phone.  Defendant SPICER discouraged Plaintiff from pursuing White House employment due to her status as a pregnant woman and a first-time mother.

25. Defendant SPICER told Plaintiff DELGADO that the White House is "no place for a new mom."

26. Defendant SPICER cited the long hours and serious commitment required of a White House job, and said that that it would be difficult, if not impossible, for Plaintiff to work in the White House as a first-time mother with a newborn baby.

27. Defendant SPICER said that the White House press team holds daily meetings at 7:00 a.m., including on weekend, and emphasized that having children and working was difficult even for him, and it would not be possible without assistance from his wife and their nanny/nannies.

28. During the December 26, 2016 call, Defendant SPICER tried to persuade Plaintiff DELGADO to focus on options outside of the White House.

29. Despite this, Plaintiff DELGADO insisted that she receive equal treatment to other employees and that she was seeking a position in the White House despite being pregnant.

30. Immediately after Plaintiff DELGADO announced her pregnancy, the Campaign and TFA, including SPICER, BANNON and PRIEBUS, Plaintiff's supervisors, stripped Plaintiff of her job responsibilities and duties throughout for the remainder of her employment from late December

of 2016 and through the Inauguration in late January of 2017.

31. By way of example only, Plaintiff immediately and inexplicably stopped receiving emails and other communications from the Campaign and TFA, including about projects on which she was currently working.

32. Plaintiff was excluded from participating in the communications work of the Inauguration or in any capacity, even though she was still formally part of the Communications Transition team. Plaintiff was even prohibited from making previously scheduled television appearances on and around Inauguration Day. Despite the fact that Plaintiff was still the Hispanic Outreach Director, Plaintiff was excluded from a transition event where the transition team met with Hispanic leaders.

33. On Friday, January 20, 2017, Plaintiff DELGADO sent a text message to Defendant SPICER reminding him that she was still waiting to hear about her new position at the White House. Defendant SPICER did not respond. Plaintiff DELGADO followed up in writing again on multiple occasions over a period of weeks, reiterating her interest in a White House position. She never received a substantive response.

34. Whereas even RNC employees who had been harshly critical of Trump were given high-ranking and well-paying jobs in the White House, Plaintiff DELGADO was completely ignored because of her pregnancy.

35. Defendants terminated and constructively discharged Plaintiff from her employment with the Campaign and TFA, despite the fact that they did not "fold-up" but have continued to employ a number of employees since.

36. Defendants also prevented Plaintiff from obtaining employment with the White House because of her sex, gender and pregnancy and because she complained of discrimination.

37. Defendants discriminated against Plaintiff, including creating a hostile work environment for Plaintiff, because of her sex and gender and pregnancy, and because she complained of discrimination.

38. Defendants retaliated against Plaintiff because she complained of sex, gender and pregnancy discrimination.

### DEFENDANTS ENTERED INTO A SETTLEMENT AGREEMENT WITH PLAINTIFF AND THEN RENEGED ON THE AGREEMENT AND FAILED TO PERFORM THEIR OBLIGATIONS.

39. In March of 2017, Plaintiff DELGADO informed the Transition Directors that she intended to file a complaint with the New York City Commission on Human Rights ("NYCCHR") regarding the discrimination she suffered while working for the Campaign and TFA.

40. Plaintiff DELGADO did not want to cause President Trump any bad press, so, rather than immediately filing the complaint, Delgado agreed to negotiate with the Defendants who wished to privately settle the matter.

41. On May 10, 2017, the parties had a full-day mediation before former First Department Justice the Hon. Betty Weinberg Ellerin.

42. The above mediation resulted in a settlement proposal from Justice Weinberg Ellerin.

43. Defendants and Plaintiff both orally accepted the settlement proposal.

44. As a result of Defendants and Plaintiff both agreeing to settle, the parties reached a binding settlement agreement for the amount proposed by Judge Weinberg Ellerin in exchange for Plaintiff releasing her claims, including her statutory claims under Title VII.

45. Defendants also confirmed in writing that the amount of the settlement was agreed upon.

46. The parties then exchanged drafts of a long form settlement agreement.

47. Subsequently, the Defendants reneged on their agreement and refused to perform their

obligations under the agreement.

48. Then, around July 31, 2017, in further retaliation for Plaintiff having complained of discrimination and for having indicated intent to file a complaint with the NYCCHR, Defendants filed a baseless arbitration action against Plaintiff claiming an exorbitant sum in damages, alleging that she breached the confidentiality and non-disparagement clauses of an NDA Plaintiff signed with the Campaign.  The Defendants claimed Plaintiff's intent to file a complaint about the discrimination she suffered at the Campaign and TFA as one of the basis for their arbitration claims.

49. When some time passed, around September of 2018, the Defendants ceased prosecuting the arbitration, further demonstrating the fact that it was unfounded and merely intended to dissuade and intimidate Plaintiff into not pursing her discrimination claims.

50. Then, within days of Plaintiff expressing her intention to file this Complaint seeking to enforce the settlement, or pursue her discrimination claims, in a further act of retaliation, the Defendants suddenly re-initiated the arbitration against Plaintiff, which they had failed to prosecute for more than a year.

51. The Defendants retaliated against Plaintiff for complaining about discrimination and retaliation as well as for indicating intent to file a complaint with the NYCCHR and the instant Complaint.

52. As a result of the Defendant's actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

53. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

Plaintiff has further experienced severe emotional and physical distress.

54. As Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages against all the Defendants, jointly and severally.

55. The above are just some examples of some of the unlawful discrimination and retaliation to which Defendants subjected Plaintiff.

56. Defendants' actions constituted a continuing violation of the applicable federal, state city and county laws.

<u>**AS A FIRST CAUSE OF ACTION**</u>
<u>**BREACH OF CONTRACT**</u>
<u>**(Against All Defendants)**</u>

57. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

58. Plaintiff entered into a valid, binding and enforceable contract with the Defendants to settle her discrimination claims.

59. Plaintiff has performed and has been ready, willing and able to perform all of her material obligations in connection with this settlement agreement.

60. Defendants have willfully and intentionally breached their agreement with Plaintiff and failed to perform their obligations in connection with the settlement agreement.

61. Defendants have breached their covenants of good faith and fair dealing in their dealings with Plaintiff.

62. By reason of the foregoing, Defendants breached the subject contracts with Plaintiff.

63. As a result of this breach, Plaintiff has been damaged in an amount to be determined at trial.

**AS A SECOND CAUSE OF ACTION**
**FOR PROMISSORY ESTOPPEL**
**(Against All Defendants)**

64. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

65. Defendants made a clear and unambiguous promise to Plaintiff and there was reasonable and foreseeable reliance by Plaintiff.

66. Plaintiff reasonably and foreseeably relied to her detriment on Defendants' promise.

67. Defendants breached their promise by refusing to fulfill such promise and representations.

68. As a direct result of the Defendants' actions, Plaintiff has suffered damages in an amount to be determined at trial.

**AS A THIRD CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER**
**NEW YORK STATE LAW**
**(Against All Defendants)**

69. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

70. Executive Law §296 provides that "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

71. Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of her sex, gender and pregnancy.

72.     Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law § 296.

## AS A FOURTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## NEW YORK STATE LAW
## (Against All Defendants)

73.     Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

74.     New York State Executive Law §296(6) further provides that "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."

75.     Defendants engaged in an unlawful discriminatory practice by aiding, abetting, compelling and/or coercing the discriminatory behavior as stated herein.

## AS A FIFTH CAUSE OF ACTION
## FOR RETALIATION UNDER
## NEW YORK STATE LAW
## (Against All Defendants)

76.     Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

77.     New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

78.     Defendants engaged in an unlawful discriminatory practice by wrongfully retaliating against Plaintiff because she complained of discrimination and indicated an intention to file a complaint

with the NYCCHR.

## AS A SIXTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## THE NEW YORK CITY ADMINISTRATIVE CODE
## (Against All Defendants)

79.    Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this

complaint as if fully set forth at length.

80.    The Administrative Code of City of NY §8-107 [1] provides that "It shall be an unlawful

discriminatory practice: "(a) For an employer or an employee or agent thereof, because of the

actual or perceived age, race, creed, color, national origin, gender, disability, marital status,

sexual orientation or alienate or citizenship status of any person, to refuse to hire or employ or

to bar or to discharge from employment such person or to discriminate against such person in

compensation or in terms, conditions or privileges of employment."

81.    Defendants engaged in an unlawful discriminatory practice in violation of New York City

Administrative Code Title 8, by creating and maintaining discriminatory working conditions

and a hostile work environment, and otherwise discriminating against Plaintiff because of her

sex, gender and pregnancy.

82.    Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of

New York City Administrative Code Title 8.

## AS A SEVENTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## THE NEW YORK CITY ADMINISTRATIVE CODE
## (Against All Defendants)

83.    Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this

complaint as if fully set forth at length.

84. The New York City Administrative Code Title 8, §8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . , to discharge . . . or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter. . . "

85. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Tide 8, §8-107(1) (e) by discriminating against Plaintiff because of her opposition to the unlawful employment practices of Plaintiff's employer.

## AS AN EIGHTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## THE NEW YORK CITY ADMINISTRATIVE CODE
### (Against All Defendants)

86. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as is fully set forth at length.

87. The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

88. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

## AS A NINTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## THE NEW YORK CITY ADMINISTRATIVE CODE
### (Against All Defendants)

89. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

14

90.   Section 8-107(19), entitled Interference With Protected Rights provides that "It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section."

91.   Defendants violated the above section as set forth herein.

**AS A TENTH CAUSE OF ACTION
FOR DISCRIMINATION UNDER
THE NEW YORK CITY ADMINISTRATIVE CODE
(Against All Defendants)**

92.   Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as is fully set forth at length.

93.   Section 8-107(13) entitled Employer Liability for Discriminatory Conduct by Employee, agent or independent contractor provides "An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section." b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where: (1) the employee or agent exercised managerial or supervisory responsibility; or (2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or (3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise

reasonable diligence to prevent such discriminatory conduct.

94.    Defendants violated the above section as set forth herein.

## AS AN ELEVENTH CAUSE OF ACTION
## FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS
## RELATIONS/ECONOMIC ADVANTAGE
## (Against All Defendants)

95.    Plaintiff hereby repeats and re-alleges each allegation contained herein in all above paragraphs

number as if more fully set forth herein.

96.    Defendants tortuously interfered with Plaintiff's ability to obtain employment with the White

House because of Plaintiff's sex, gender and pregnancy, and because she had complained of

discrimination and retaliation.

97.    As a result of the foregoing, the Defendants caused harm to Plaintiff, and Plaintiff has been

injured and as a result thereof.

**WHEREFORE**, Plaintiff demands judgment against all Defendants, jointly and

severally, in an amount to be determined at the time of trial plus interest, punitive damages,

attorneys' fees, costs, and disbursements of action; and for such other and further relief as this

Court deems just and proper.

## JURY DEMAND

Plaintiff demands a jury trial on all issues to be tried.

Dated:    Los Angeles, California        December 23, 2019

DEREK SMITH LAW GROUP, PLLC
*Attorneys for Plaintiff*

By:    ***/s/Abraham Z. Melamed***
        Abraham Z. Melamed, Esq.
        One Penn Plaza, Suite 4905
        New York, New York 10119
        (212) 587-0760