UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
ARLENE DELGADO,

                            Plaintiff,                            Civil Action No.:
                                                                         19-cv-11764 (AT)

              -against-

DONALD J. TRUMP FOR PRESIDENT, INC.,
TRUMP FOR AMERICA, INC.,
SEAN SPICER, individually,
REINCE PRIEBUS, individually,
STEPHEN BANNON, individually,

                            Defendants.
------------------------------------------------------------------------X

# MEMORANDUM OF LAW IN SUPPORT
# OF MOTION TO COMPEL ARBITRATION AND TO DISMISS

*On the brief:*
*Patrick McPartland, Esq.*
*Jared E. Blumetti, Esq.*

**LAROCCA HORNIK ROSEN
& GREENBERG LLP**
40 Wall Street, 32nd Floor
New York, New York 10005

*Attorneys for defendants
Donald J. Trump for President, Inc.,
Trump for America, Inc.,
Sean Spicer, and Reince Priebus*

# **TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ……………………………………………………. 1

**STATEMENT OF FACTS**…………………………………………………………… 3

    A.    The Retention Agreement…………………………………………… 3

    B.    The Parties' Prior Confidential Communications Regarding Their Disputes…………………………………………………………… 3

    C.    The Motion to Dismiss…………………………………………….. 4

**ARGUMENT** …………………………………………………………………………. 4

    I.    **AS A MATTER OF LAW, PLAINTIFF'S CLAIMS FOR BREACH OF CONTRACT AND PROMISSORY ESTOPPEL MUST BE REFERRED TO ARBITRATION**……………………………. 4

        A.    Disputes as to Arbitrability Must be Decided by a AAA Arbitrator…………………………………………………………… 4

        B.    Plaintiff's Claims are Arbitrable Under the Parties' Broad Arbitration Agreement…………………………………………………… 5

    II.    **DEFENDANTS' MOTION TO DISMISS MUST BE GRANTED**……… 8

        A.    Plaintiff Cannot State a "Failure to Hire" Claim Under the NYSHRL And NYCHRL……………………………………………………. 8

        B.    Plaintiff Cannot State a Tortious Interference Claim…………………… 10

            i.    Plaintiff's Claim is Barred by Title VII………………………… 10

            ii.    Plaintiff Cannot Meet the Required Pleading Elements………… 10

**CONCLUSION**…..………………………………………….…………………… 13

# TABLE OF AUTHORITIES

**Cases**

*Baguer v. Spanish Broadcasting System, Inc.*,
  2007 WL 2780390 (S.D.N.Y. September 20, 2007)……………………………  12

*Belgrave v. Pena*,
  254 F.2d 384 (2d Cir. 2001)……………………………………………………  9

*Brown v. General Services Administration*,
  425 U.S. 820, 96 S. Ct. 1961 (1976)…………………………………………….  8

*Buchman v. Weiss*,
  2009 WL 2044615 (S.D.N.Y. July 15, 2009)……………………………………  7

*China Auto Care, LLC v. China Auto Care (Caymans)*,
  859 F.Supp.2d 582 (S.D.N.Y. 2012)……………………………………………  6

*Contec Corp. v. Remote Solution, Co., Ltd.*,
  398 F.3d 205 (2d Cir. 2005)……………………………………………………  4

*Daly v. Citigroup Inc.*,
  939 F.3d 415 (2d Cir. 2019)……………………………………………………  5

*DiPompo v. West Point Military Academy*,
  708 F.Supp. 540 (S.D.N.Y. 1989)………………………………………………  8

*Emmons v. City University of New York*,
  715 F.Supp.2d 394 (E.D.N.Y. 2010)……………………………………………  12

*Fonar Corp. v. Magnetic Resonance Plus, Inc.*,
  957 F. Supp. 477 (S.D.N.Y. 1997)………………………………………………  11

*Garvin v. Potter*,
  367 F.Supp.2d 548 (S.D.N.Y. 2005)……………………………………………  8

*Gerentine v. U.S.*,
  2001 WL 876831 (S.D.N.Y. August 2, 2001)…………………………………  10

*Gwathmey Siegel Kaufman & Associates Architects, LLC v. Rales*,
  518 Fed.Appx. 20 (2d Cir. 2013)………………………………………………  4

*International Equity Investments, Inc. v. Opportunity Equity Partners Ltd.*,
    475 F.Supp.2d 450 (S.D.N.Y. 2007)……………………………………………  6

*Jamieson v. Securities America, Inc.*,
    2019 WL 6977126 (S.D.N.Y. December 20, 2019)…………………………  6

*JLM Industries, Inc. v. Stolt-Nielsen SA*,
    387 F.3d 163 (2d Cir. 2004)………………………………………………  7

*Kanhoye v. Altana Inc.*,
    686 F.Supp.2d 199 (E.D.N.Y. 2009)………………………………………  12

*Katsoris v. WME IMG, LLC*,
    237 F.Supp.3d 92 (S.D.N.Y. 2017)…………………………………………  5

*King v. U.S. Postal Service*,
    2002 WL 1067825 (S.D.N.Y. May 29, 2002)………………………………  8

*Lewis v. Snow*,
    2003 WL 22077457 (S.D.N.Y. September 8, 2003)…………………………  8, 10

*Mehler v. Terminix Intern. Co. L.P.*,
    205 F.3d 44 (2d Cir. 2000)………………………………………………  5

*Piccoli A/S v. Calvin Klein Jeanswear Co.*,
    19 F.Supp.2d 157 (S.D.N.Y.1998)…………………………………………  11

*Pratt v. Brennan*,
    2020 WL 364195 (S.D.N.Y. January 22, 2020)………………………………  9

*PRL USA Holdings, Inc. v. United States Polo Ass'n, Inc.*,
    2015 WL 1442487 (S.D.N.Y. March 27, 2015)………………………………  5

*Rein v. Esper*,
    2018 WL 10561521 (S.D.N.Y. February 27, 2018)……………………………  9

*RFP LLC v. SCVNGR, Inc.*
    788 F. Supp. 2d 191 (S.D.N.Y. 2011)………………………………………  11

*Rivera v. Heyman*,
    157 F.3d 101 (2d Cir. 1998)………………………………………………  8

*Samsung Display Co. v. Acacia Research Corp.,*
    2014 WL 6791603 (S.D.N.Y. December 3, 2014)……………………………  12

*Spinelli v. Secretary of Department of Interior*,
    2006 WL 2990482 (E.D.N.Y. October 19, 2006)……………………………… 10

*Symphony Fabrics Corp. v. Knapel*,
    2008 WL 2332333 (S.D.N.Y. June 2, 2008)…………………………………… 5

*Torres v. U.S. Dept. of Veteran Affairs*,
    2004 WL 691237 (S.D.N.Y. March 31, 2004)………………………………… 9

**Other Authorities:**

42 U.S.C. § 2000e-16…………………………………………………………………… 8, 9

29 C.F.R. §§ 1614.105…………………………………………………………………… 9

29 C.F.R. §§ 1614.106…………………………………………………………………… 9

Defendants Donald J. Trump for President, Inc. (the "Campaign"), Trump for America, Inc. (the "Transition Team"), Sean Spicer, and Reince Priebus (collectively, "Defendants"), by their attorneys LaRocca Hornik Rosen & Greenberg LLP, respectfully submit this memorandum of law in support of: (i) the Campaign's motion, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure and 9 U.S.C. § 1 *et seq.*, to compel arbitration of two of plaintiff's claims, *to wit*, breach of contract and promissory estoppel; and (ii) Defendants' motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss with prejudice plaintiff's "failure to hire" claim under the New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL"), and plaintiff's common-law claim for "tortious interference with prospective business relations."

## **PRELIMINARY STATEMENT**

As a condition of her engagement by the Campaign to work on the 2016 presidential campaign, plaintiff signed a written agreement (the "Retention Agreement") containing an arbitration provision, pursuant to which she agreed to arbitrate "***any dispute arising under or relating to***" the Retention Agreement in accordance with the commercial rules of the American Arbitration Association (the "AAA Rules"). These AAA Rules expressly provide that disputes as to the arbitrability of a claim are themselves to be decided in arbitration, and not by the courts. Furthermore, in the Retention Agreement, plaintiff also expressly ***waived*** any right to "***contest***" the arbitrability of any claim submitted to arbitration by the Campaign.

Here, plaintiff's claims for breach of contract and promissory estoppel—which are premised on plaintiff's contention (disputed by Defendants) that the parties previously agreed at a confidential mediation to "privately settle" certain claims—are arbitrable, because these "private" settlement negotiations directly relate to and arise under plaintiff's contractual confidentiality

obligations under the Retention Agreement. Plaintiff may dispute the arbitrability of these claims; however, under well-established Second Circuit law, issues as to the arbitrability of a claim are solely reserved for arbitration where, as here, the parties agreed to include an arbitration provision in their contract that expressly incorporates the AAA Rules.[1]

Separately, certain of plaintiff's non-arbitrable claims fail as a matter of law and must be dismissed with prejudice now. Specifically, plaintiff's claims for "failure to hire" and "tortious interference with prospective business relations"—which are premised entirely on Defendants purportedly impeding plaintiff's ability to work for the federal government at the White House, are barred as a matter of law because Title VII provides the ***exclusive*** remedy for persons alleging claims of discrimination and retaliation relating to federal employment. Plaintiff's tortious interference claim also fails as a matter of law because she has not (and cannot) allege facts sufficient to satisfy the requisite pleading elements for such a claim.

For these reasons (and the reasons set forth below), it is respectfully requested that the Campaign's motion to compel arbitration, and Defendants' motion to dismiss two of plaintiff's non-arbitrable claims, be granted in their entirety.

---

[1] The Campaign is not moving to compel arbitration of plaintiff's remaining discrimination and retaliation claims arising under the NYSHRL and NYCHRL, which will be litigated in this Court.

## STATEMENT OF FACTS

**A.     The Retention Agreement**

During her retention with the Campaign, plaintiff executed the Retention Agreement which contains, *inter alia*, confidentiality obligations and an arbitration provision. *Relevant portions of the Retention Agreement are set forth in paragraphs 1 and 3 of the parties' stipulation, which is attached as* **Exhibit B** *to the Declaration of Patrick McPartland, dated April 22, 2020 (the "McPartland Decl.").*

The arbitration provision states in pertinent part that:

> "…[A]ny dispute arising under or relating to this agreement may, at the sole discretion of [the Campaign], be submitted to binding arbitration in the State of New York pursuant to the rules for commercial arbitrations of the American Arbitration Association, and you hereby agree to and will not contest such submissions…"

*McPartland Decl., Exh. B, ¶ 1.*

The confidentiality provisions require plaintiff to, *inter alia*, maintain the confidentiality of "all information…of a private, proprietary or confidential nature…including, but not limited to, any information with respect to…political affairs, and/or business affairs of…[the Campaign]…" *McPartland Decl., Exh. B, ¶ 3, fn. 2.*

**B.     The Parties' Prior Confidential Communications Regarding Their Disputes**

In her Complaint, plaintiff expressly acknowledges that the parties previously jointly desired to "privately" mediate certain disputes in order to maintain confidentiality. *McPartland Decl., Exh. A, ¶¶ 40–41.* In fact, consistent with these confidentiality requirements, at the outset of the mediation the parties entered a written mediation agreement which, like the Retention Agreement, also contained a strict confidentiality provision. *McPartland Decl., Exh. B, ¶ 4.*

Plaintiff's instant breach of contract and promissory estoppel claims are based solely on the assertion that the parties reached a settlement agreement as a result of these confidential communications and negotiations. *McPartland Decl., Exh. A, ¶¶ 40–47, 58–60, 65–67.*

**C.** **The Motion to Dismiss**

In the within action, plaintiff additionally alleges that Defendants (1) "failed to hire" her for a position at "the White House" based upon discriminatory and retaliatory reasons in violation of the NYSHRL and NYCHRL, and (2) "tortiously interfered" with her "prospective business relations" with respect to her being hired by "the White House" for discriminatory and retaliatory reasons. *McPartland Decl., Exh. A, ¶¶ 17, 19, 21, 24–29, 33–34, 36, 96.* Defendants move to dismiss these claims.

**ARGUMENT**

**I.**

**AS A MATTER OF LAW, PLAINTIFF'S CLAIMS FOR BREACH OF CONTRACT AND PROMISSORY ESTOPPEL MUST BE REFERRED TO ARBITRATION**

**A.** **Disputes as to Arbitrability Must be Decided by a AAA Arbitrator**

Second Circuit courts have routinely held that the issue of whether a claim is or is not arbitrable is itself one that must be determined by an arbitrator where, as here, the parties agreed to arbitrate pursuant to the AAA Rules.[2] *See e.g. Gwathmey Siegel Kaufman & Associates Architects, LLC v. Rales*, 518 Fed.Appx. 20, 21 (2d Cir. 2013) ("by incorporating the [AAA Rules] the parties agreed to have the arbitrators decide arbitrability"), *citing Contec Corp. v. Remote Solution, Co., Ltd.*, 398 F.3d 205, 208 (2d Cir. 2005) ("when, as here, parties explicitly incorporate

---

[2] For reference, Rule 7(a) of the AAA Rules provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." *A copy of Rule 7 is attached as* **Exhibit C** *to the McPartland Decl.*

4

rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator") (*citations omitted*); *see also Katsoris v. WME IMG, LLC*, 237 F.Supp.3d 92, 105 (S.D.N.Y. 2017) ("the incorporation of the AAA Rules into the [parties' agreement] serves as clear and unmistakable evidence that the [parties] agreed to delegate any questions of arbitrability to the arbitrator"); *PRL USA Holdings, Inc. v. United States Polo Ass'n, Inc.*, 2015 WL 1442487, * 5 (S.D.N.Y. March 27, 2015) ("it is the arbitrator, and not the district court, that must determine whether or not the allegations are claims covered by the [agreement] and therefore subject to arbitration").

Here, plaintiff not only agreed to arbitrate pursuant to the AAA Rules, but she also expressly waived any right to "contest" the arbitrability of her claims. *McPartland Decl., Exh. B, ¶ 1.* For these reasons alone, her claims for breach of contract and promissory estoppel must be referred to arbitration.

**B.** **Plaintiff's Claims are Arbitrable Under the Parties' Broad Arbitration Agreement**

Plaintiff's claims are also arbitrable under the strong federal policy in favor of arbitration. *See e.g. Daly v. Citigroup Inc.*, 939 F.3d 415, 421 (2d Cir. 2019) (referencing the "strong federal policy favoring arbitration"). In fact, it is well-established that a "presumption of arbitrability" arises where, as here, parties broadly agree to arbitrate "any dispute arising under or relating to" an agreement. *See e.g. Symphony Fabrics Corp. v. Knapel*, 2008 WL 2332333, * 5 (S.D.N.Y. June 2, 2008) (provision providing for arbitration of "any dispute or controversy arising out of or relating to this Agreement" is "precisely the kind of broad arbitration clause that justifies a presumption of arbitrability") (*internal alterations omitted*); *Mehler v. Terminix Intern. Co. L.P.*, 205 F.3d 44, 49 (2d Cir. 2000) (provision providing for arbitration of "any controversy or claim between the parties arising out of or relating to the Agreement" deemed "classically broad")

(*internal alterations and citation omitted*); *China Auto Care, LLC v. China Auto Care (Caymans)*, 859 F.Supp.2d 582, 587 (S.D.N.Y. 2012) ("[b]ecause the Court finds that the Arbitration Clause is broad, the presumption of arbitrability attaches and plaintiffs bear the burden of providing positive assurances that the arbitration clause is not susceptible of an interpretation that it covers the asserted dispute") (*internal quotations and citation omitted*).

Moreover, "[w]here a provision to arbitrate is broad, its coverage extends to collateral matters beyond the interpretation and particular provisions of the contract containing the arbitration clause." *Jamieson v. Securities America, Inc.*, 2019 WL 6977126, * 6 (S.D.N.Y. December 20, 2019). Indeed, "[i]f the allegations underlying the claims touch matters covered by the parties' contracts, then those claims must be arbitrated, whatever the legal labels attached to them." *China Auto Care, LLC*, 859 F.Supp.2d at 588 (*internal quotations, alterations, and citation omitted*); *see also International Equity Investments, Inc. v. Opportunity Equity Partners Ltd.*, 475 F.Supp.2d 450, 454 (S.D.N.Y. 2007) ("[c]lauses agreeing to arbitrate disputes that arise out of or relate to an agreement typically have been construed to require arbitration not only of claims of breach, but also of claims that 'touch matters' covered by or 'pertain to' the contract at issue as well as claims that are 'integrally linked' to the contractual relation") (*citations omitted*).

Here, plaintiff expressly acknowledges in her Complaint that all parties desired that their "private" discussions regarding their disputes be and remain confidential—a fact further evidenced by the parties previously entering into and signing a written mediation agreement containing strict confidentiality obligations. *McPartland Decl., Exh. A, ¶¶ 40–41; Exh. B, ¶ 4.* These confidentiality requirements are further governed by (and directly arise from) plaintiff's obligation under the Retention Agreement to maintain the confidentiality of any and all private or confidential

6

information pertaining to her retention with the Campaign, including information pertaining to the political or business affairs of the Campaign.[3] *McPartland Decl., Exh. B, ¶ 3, fn. 2.*

Plaintiff's breach of contract and promissory estoppel claims—which are based solely on the parties' previous private and confidential settlement communications—"touch upon" and "pertain to" plaintiff's ongoing confidentiality obligations under paragraph 1 of the Retention Agreement. *See e.g. Buchman v. Weiss*, 2009 WL 2044615, * 5 (S.D.N.Y. July 15, 2009) (breach of fiduciary duty, fraud, and unjust enrichment claims made by former lawyers of a law firm against their former law partners for illegally paying individuals to serve as class representatives were arbitrable under the parties' partnership agreement because the claims pertained to "the rights and obligations of the parties under the [a]greement"); *JLM Industries, Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 175–176 (2d Cir. 2004) ("collateral" anti-trust claims made by charterers alleging that the existence of price-fixing conspiracy among parcel tanker owners undermined the parties' contractual relationship fell within the scope of the broad arbitration provision in the parties' charter contracts because even though the evidence supporting the charterers' claims would "not focus exclusively upon the parties' conduct under the terms of the charter" the "claims unquestionably involve a core issue of the contracts between the parties—allegations that the price terms set forth in those contracts have been artificially inflated").

For these reasons too, plaintiff's claims for breach of contract and promissory estoppel must be referred to arbitration.

---

[3] Drafts of a written settlement agreement that were being negotiated by the parties following the mediation—but never ultimately agreed upon—also contained a broad arbitration provision that would have obligated the parties to arbitrate, and not litigate, any post-settlement disputes that arose under that settlement agreement. While not dispositive because the settlement was never consummated, this further evidences that all parties intended to arbitrate, rather than litigate, these matters. *McPartland Decl., Exh. B, ¶ 2.*

7

## II.

## **DEFENDANTS' MOTION TO DISMISS MUST BE GRANTED**

**A.     Plaintiff Cannot State a "Failure to Hire" Claim Under the NYSHRL or NYCHRL**

As the United States Supreme Court has held, Title VII provides the "exclusive, preemptive administrative and judicial scheme for the redress of federal employment discrimination." *Brown v. General Services Administration*, 425 U.S. 820, 829, 96 S. Ct. 1961, 1966 (1976), *citing* 42 U.S.C. § 2000e-16; *see also Garvin v. Potter*, 367 F.Supp.2d 548, 560 (S.D.N.Y. 2005) ("Title VII is the exclusive remedy for federal employees alleging employment discrimination based on race, color, religion, sex, or national origin"); *Lewis v. Snow*, 2003 WL 22077457, * 10 (S.D.N.Y. September 8, 2003) (Title VII "is the exclusive remedy for claims of discrimination in federal employment"); *DiPompo v. West Point Military Academy*, 708 F.Supp. 540, 544 (S.D.N.Y. 1989) ("Congress made Title VII the exclusive remedy for federal employees alleging employment discrimination").

Plaintiff's "failure to hire" claims, which as pleaded by plaintiff in her Complaint arise solely under the NYSHRL and NYCHRL, must therefore be dismissed. *See e.g. Garvin*, 367 F.Supp.2d at 559–60 (discrimination and retaliation claims under the NYSHRL and NYCHRL were barred by the exclusivity of Title VII); *Lewis*, 2003 WL 22077457, at * 11 (discrimination claim under the NYSHRL was precluded by the exclusivity of Title VII); *DiPompo*, 708 F.Supp. 540, 544 (S.D.N.Y. 1989) (discrimination and failure to hire claims under the NYSHRL were barred by exclusivity of Title VII); *see also King v. U.S. Postal Service*, 2002 WL 1067825, * 4 (S.D.N.Y. May 29, 2002) (refusing to permit invocation of state law remedies to circumvent the exclusivity of Title VII as a remedy for discrimination in federal employment), *citing Rivera v. Heyman*, 157 F.3d 101 (2d Cir. 1998).

8

Furthermore, plaintiff is barred from now seeking leave to amend her Complaint to belatedly assert any such claim under Title VII.  It is undisputed that prior to filing this lawsuit, plaintiff never filed with the EEOC a charge of discrimination under Title VII.  Because any purported "failure to hire" claim would have arisen more than three years ago in January 2017 (i.e. when President Trump and his staff took office), plaintiff is long since time-barred from filing any such charge.  *See e.g. Rein v. Esper*, 2018 WL 10561521, * 4 (S.D.N.Y. February 27, 2018) (for federal employment discrimination claims, individual must initiate contact with a counselor at the Equal Employment Office ("EEO") within forty-five (45) days of the alleged discrimination and file a formal written administrative complaint within fifteen (15) days of receiving notice of the right to file a complaint if the matter is not resolved), *citing* 29 C.F.R. §§ 1614.105–1614.106; *see also Belgrave v. Pena*, 254 F.2d 384, 386 (2d Cir. 2001) (affirming dismissal of Title VII action based on failure to timely file a formal EEO complaint); *Torres v. U.S. Dept. of Veteran Affairs*, 2004 WL 691237, * 3–4 (S.D.N.Y. March 31, 2004) (failure to meet the 45-day requirement for initial contact with an EEO counselor found to be fatal to Title VII claim).

In any event, plaintiff would also have been required under Title VII to bring any such claim against the head of the federal department or agency that purportedly denied her employment, which, here, would be the Director of the Office of Administration of the Executive Office of the President.  *See e.g.* 42 U.S.C. 2000e-16(c) ("the head of the department, agency, or unit, as appropriate, shall be the defendant"); *Pratt v. Brennan*, 2020 WL 364195, * 7 (S.D.N.Y. January 22, 2020) ("the only proper defendant in actions brought by a federal employee under Title VII…is the head of the agency being sued") (*citation omitted*).

For all of these reasons, plaintiff's purported "failure to hire" claims under the NYSHRL and NYCHRL must be dismissed with prejudice.

B.     **Plaintiff Cannot State a Tortious Interference Claim**

Plaintiff's tortious interference with prospective business relations claim—which is also based on her failure to be hired by the federal government for a position at the White House—fails for a plethora of reasons.

i.     **Plaintiff's Claim is Barred by Title VII**

As an initial matter, this claim is nothing more than an impermissible attempt by plaintiff to recast her "failure to hire" claims—which are barred by the exclusivity of Title VII—as a tort claim.  Indeed, her tortious interference claim derives from the exact same alleged conduct underlying her "failure to hire" claims, including, *to wit*, her allegations that defendants Sean Spicer and Reince Priebus "tortiously interfered with [her] ability to obtain employment with the White House" for discriminatory and retaliatory reasons.  *McPartland Decl., Exh. A,* ¶ 96.

As the courts have repeatedly held, however, the exclusivity of Title VII cannot be circumvented by any other federal or state statute or law.  *See e.g. Lewis*, 2003 WL 22077457, at * 11 (dismissing claim for intentional infliction of emotional distress that was "based solely on the alleged workplace discrimination underlying the previous causes of action" finding that "[c]ourts have refused to permit the invocation of state law remedies to circumvent the exclusivity of Title VII as a remedy for discrimination in federal employment"), *citing Gerentine v. U.S.,* 2001 WL 876831, * 7 (S.D.N.Y. August 2, 2001) ("where the challenged action falls within the purview of Title VII's remedial framework, federal employees may not seek an end-run around Title VII's administrative requirements by masquerading their discrimination claims as tort claims"); *Spinelli v. Secretary of Department of Interior,* 2006 WL 2990482, * 9–10 (E.D.N.Y. October 19, 2006) ("plaintiffs' state law tort claims derive solely from the alleged workplace discrimination

underlying their federal law claims…in order to maintain the exclusivity of Title VII remedies for employment discrimination, plaintiffs' state tort claims…are dismissed").

### ii. <u>**Plaintiff Cannot Meet the Required Pleading Elements**</u>

Even if her claim was not barred by Title VII, plaintiff still fails to meet the basic pleading requirements for a tortious interference claim, which require her to allege facts sufficient to demonstrate that (1) she had business relations with a third party, (2) Defendants interfered with those business relations, (3) Defendants acted for a wrongful purpose or used dishonest, unfair, or improper means, and (4) Defendants' acts injured the relationship.  *See RFP LLC v. SCVNGR, Inc.* 788 F. Supp. 2d 191, 195 (S.D.N.Y. 2011).

First, plaintiff's tortious interference claim fails because she has not (and cannot) allege facts sufficient to establish that Defendants interfered with a ***third-party*** business relationship. Here, based upon the allegations in plaintiff's own Complaint, there is no third-party.  As pleaded by plaintiff, Mr. Spicer and Mr. Priebus, who purportedly had the "ability to hire and fire" plaintiff, <u>***were themselves each employed at the White House***</u> (i.e. by the federal government) at the time of the alleged "interference."[4]  *See e.g. Piccoli A/S v. Calvin Klein Jeanswear Co.*, 19 F.Supp.2d 157, 167–168 (S.D.N.Y.1998) (tortious interference claim failed when "defendants' alleged conduct concededly was not directed towards any third party with whom plaintiff had an existing or prospective business relationship"); *Fonar Corp. v. Magnetic Resonance Plus, Inc.,* 957 F. Supp. 477, 482 (S.D.N.Y. 1997) ("[u]nder New York law, in order for a party to make out a claim for tortious interference with prospective economic advantage, the defendant must…direct some

---

[4] Plaintiff expressly pleads that Defendants' alleged "interference" took place on and after January 20, 2017 (i.e. inauguration day, and the date on which Mr. Spicer and Mr. Priebus were appointed as White House staff). *McPartland Decl., Exh. A, ¶¶* 7–8, 33, 96; *see also In re Foreign Exchange Benchmark Rates Antitrust Litigation*, 74 F.Supp.3d 581, 590 (S.D.N.Y. 2015) ("[c]ourts may…take judicial notice of matters of public record when considering motions to dismiss").

activities towards the third party"). Plaintiff thus fails to satisfy the first and second elements of a tortious interference with prospective business relations claim.

Second, plaintiff has not (and cannot) plead the "wrongful purpose" or "improper means" required for a tortious interference claim. Under Second Circuit law, "wrongful purpose" or "improper means" can only be demonstrated "where the defendant's conduct amounts to a crime or an independent tort." *Samsung Display Co. v. Acacia Research Corp.,* 2014 WL 6791603, * 5 (S.D.N.Y. December 3, 2014) (*internal quotations and alterations omitted*). In her Complaint, plaintiff alleges that Defendants acted for discriminatory and retaliatory reasons; however, as a matter of law this is insufficient to satisfy this pleading requirement. *McPartland Decl., Exh. A, ¶ 96; see also Emmons v. City University of New York*, 715 F.Supp.2d 394, 425 (E.D.N.Y. 2010) (alleged discriminatory and retaliatory acts on the part of plaintiff's supervisor were "insufficient to establish independent tortious acts under New York law to sustain a tortious interference claim") (*internal quotations and alteration omitted*); *Kanhoye v. Altana Inc.*, 686 F.Supp.2d 199, 215 (E.D.N.Y. 2009) ("the retaliatory and discriminatory acts [plaintiff] alleges they committed would be insufficient to establish independent tortious acts under New York law to sustain a tortious interference claim") (*internal quotations and alteration omitted*), *citing Baguer v. Spanish Broadcasting System, Inc.*, 2007 WL 2780390, * 4 (S.D.N.Y. September 20, 2007) ("alleged violations of federal, state, and city anti-discrimination laws are not torts under New York law"). Plaintiff thus also fails to satisfy the third element of a tortious interference with prospective business relations claim.

For all of these reasons, plaintiff's tortious interference with prospective business relations claim must also be dismissed with prejudice.

**CONCLUSION**

Based on the foregoing, Defendants respectfully request that the Court grant the instant motion in its entirety and grant Defendants such other relief as the Court deems just and proper.

Dated: New York, New York
April 22, 2020

                                     LAROCCA HORNIK ROSEN
                                     & GREENBERG LLP

                                     */s/ Patrick McPartland*
By: _____
                                     Patrick McPartland
                                     Jared E. Blumetti
                                     40 Wall Street, 32nd Floor
                                     New York, New York 10005
                                     T: (212) 530-4837, 4831
                                     E: pmcpartland@lhrgb.com
                                           jblumetti@lhrgb.com

                                     *Attorneys for defendants*
                                     *Donald J. Trump for President, Inc.,*
                                     *Trump for America, Inc.,*
                                     *Sean Spicer, and Reince Priebus*