UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x
ARLENE DELGADO,

                                      **Civil Case No.: 19-cv-11764**

                      Plaintiff,

            *-against-*

DONALD J. TRUMP FOR PRESIDENT, INC.,
TRUMP FOR AMERICA, INC.,
SEAN SPICER, individually,
REINCE PRIEBUS, individually,
STEPHEN BANNON, individually,

                    Defendants.

-----------------------------------------------------x


**<u>PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANTS'</u>**

**<u>MOTION TO COMPEL ARBITRATION AND TO DISMISS; AS WELL AS IN</u>**

**<u>SUPPORT OF PLAINTIFF'S MOTION TO ENJOIN THE PENDING ARBITRATION</u>**


DEREK SMITH LAW GROUP, PLLC
One Penn Plaza, Suite 4905
New York, New York 10119
(212) 587-0760
*Attorneys for Plaintiff Arlene Delgado*

## Table Of Contents

**PRELIMINARY STATEMENT**………………………………………………..1

**MATERIAL FACTS**………………………………………………………1

**ARGUEMENT**……………………………………………….………………4

    A. **THE PRESENT CLAIMS ARE PROPERLY BEFORE THIS COURT, AND SHOULD NOT BE COMPELLED TO ARBITRATION**…………… 4

        a. **This action does not relate to the Confidentiality Agreement, but rather is merely about enforcing a settlement of Plaintiff's statutory discrimination claims, which do not touch upon the Confidentiality Agreement**………………..……………... 4

        a. **The Confidentiality Agreement is not a valid contract**………………8

    B. **THE DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED**….10

    C. **PLAINTIFF'S CROSS-MOTION TO ENJOIN THE AAA ARBITRATION FILED BY THE DEFENDANTS AGAINST PLAINTIFF SHOULD BE GRANTED**…………………………………….. 13

**CONCLUSION**……………………………………………………………14

## **Table Of Authorities**

**Cases**

*Arthur Guinness & Sons, PLC v. Sterling Publ'g Co.*, 732 F.2d 1095, 1099 (2d Cir. 1984)……13

*Baguer v. Spanish Broad. Sys., Inc.*, No. 04-CV-8393 (KMK), 2007 WL 2780390,

(S.D.N.Y. Sept. 20, 2007)…………………………………………………………………12

*Buchman v. Weiss*, 2009 WL 2044615, 5 (SDNY 2009) …………………………………………8

*Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 547 F.3d 115, 132 (2d Cir.2008), *cert. denied, Catskill Dev., L.L.C. v. Harrah's Operating Co.*, 556 U.S. 1166, 129 S.Ct. 1908, 173 L.Ed.2d 1058 (2009) ………………………………………………………………………12

*Chitkara v. New York Telephone*, 45 Fed.Appx. 53 (2nd Cir. 2002) ………………………...7

*Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*,

598 F.3d 30 (2d Cir. 2015).……………………………………………………… 13, 14

*Civil Serv. Employees Ass'n, Inc. v. Baldwin Union Free Sch. Dist.*, 84 A.D.3d 1232, 924 N.Y.S.2d 126, 128 (2d Dep't 2011).…………………………………………………… 9, 10

*Delyanis v. Dyna-Empire, Inc.*, 465 F. Supp. 2d 170, 171 (E.D.N.Y. 2006)……………………7

*Denson v Donald J. Trump for President, Inc.*, 2018 NY Slip Op 32168(U)………………4, 5, 6

*Denson v. Trump for President, Inc.*, No. 18-CV-2690 (JMF), 2018 WL 4568430 (S.D.N.Y. Aug. 30, 2018).…………………………………………………………………………6, 7

*Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686–87, 116 S. Ct. 1652, 1656, 134 L. Ed. 2d 902 (1996) ……………………………………………………………………………8

*Gwathmey Siegel Kaufman & Associates Architects, LLC v. Rales*, 518 Fed.Appx. 20, 21 (2d Cir. 2013)……………………………………………………………………………10

*Hauzinger v. Hauzinger*, 43 AD3d 1289 (4th Dept. 2007) ………………………………………7

*In re Teligent*, 640 F.3d 53, 57-58 (2nd Cit. 2011).……………………………………………...7

*JLM Industries, Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 175–176 (2d Cir. 2004)………………..8

*Kavitz v. Int'l Bus. Machines, Corp.*, 458 F. App'x 18, 19 (2d Cir. 2012)……………………9, 10

*Local 1814, Int'l Longshoremen's Ass'n v. N.Y. Shipping Ass'n, Inc.*, 965 F.2d 1224, 1228–29 (2d Cir. 1992) ……………………………………………………………………….....13

*Lombard v. Booz–Allen & Hamilton, Inc.*, 280 F.3d 209, 214 (2d Cir.2002)……………….....13

*Perry v. Thomas*, 482 U.S. 483, 492, 107 S. Ct. 2520, 2526, 96 L. Ed. 2d 426 (1987)………….8

*Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir.1990)……………………13

*Stoll v. Port Authority*, 701 N.Y.S.2d 430 (1st Dept. 2000)………………………………………7

*Transperfect Translations Int'l, Inc. v. Merrill Corp.*, 159 F. App'x 313, 314 (2d Cir. 2005)…...9

*Trump v Refco Properties, Inc.*, 194 AD2d 70, 74, 605 NYS2d 248 [1st Dept. 1993])............4

*United States v. Gallina*, No. 97-CV-5532 CBA JMA, 2010 WL 6194099, at *8 (E.D.N.Y. Sept. 28, 2010), *report and recommendation adopted*, No. 97-CV-5532 CBA JMA, 2011 WL 976676 (E.D.N.Y. Mar. 15, 2011).................................................................................9

**<u>Statutes</u>**

9 U.S.C. § 2.................................................................................................8

## PRELIMINARY STATEMENT

Plaintiff Arlene J. Delgado ("AJ") submits this Memorandum of Law in opposition to the Defendants' motion to compel arbitration of specific claims and to dismiss specific claims, as well as in Support of her Motion to enjoin the pending AAA arbitration brought by Defendants against Plaintiff.  The affirmative claims Plaintiff brings in this action are not the subject of the Confidentially Agreement that included an arbitration agreement.  Additionally, the Confidentiality Agreement is an invalid contract for failure to adhere to Plaintiffs initial Employment Agreement's modification clause, and for lack of consideration.  As such, the Defendants motion to compel arbitration should be denied.  Moreover, Plaintiff respectfully requests that this Court enjoin the Defendants from pursing claims before the AAA based on this invalid contract.  Additionally, as Plaintiff stated to the Defendants in pre-motion letter practice, Plaintiff does not maintain a cause of action against the federal government for failure to hire.   Plaintiff however does properly maintain a cause of action against the Defendants for tortious interference with prospective employment, for interfering with her employment prospects with the Trump administration.   Thus, it is respectfully submitted that this Court should deny the Defendants' motion to compel arbitration of her contract claims, deny the Defendants' partial motion to dismiss, and grant Plaintiff's motion for an injunction.

## MATERIAL FACTS

Around August of 2016, Plaintiff Delgado began her employment with the Defendants.  Prior to commencing her employment, Plaintiff Delgado signed an Employment Agreement.  (See Pl. Decl. ¶ 4-5; Mel. Decl. Exhibit A).  This agreement stated that all disputes relating to Plaintiff's employment should be brought before a court of competent jurisdiction in New York. *Id*.  The agreement did not contain an arbitration clause. *Id*.  This

agreement also contained a modification clause, which provided that any modifications to the terms of the agreement, and thus to the terms of Plaintiff's employment, may only be made by a writing signed by ***all parties***.   *Id*.   A few days after Plaintiff began her employment, Defendants presented Plaintiff with a Confidentially Agreement, and instructed Plaintiff to sign it.   (See Pl. Decl. ¶ 6-8; Mel. Decl. Exhibit A).   Plaintiff was not provided any consideration for this new agreement.   *Id*.   Additionally, the agreement was never signed by the Trump campaign.   *Id*.

During her employment, Plaintiff Delgado was subjected to severe discrimination, retaliation and wrongful termination/constructive discharge.   See Pl. Compl. generally; Pl. Decl. ¶ 3.   Around March of 2017, Plaintiff Delgado informed the Defendants that she intended to file a complaint with the New York City Commission on Human Rights ("NYCCHR") regarding the discrimination she suffered while working for the Defendants. See Pl. Compl. ¶ 39; Pl. Decl. ¶ 3.   Prior to filing such complaint, the Parties agreed to mediate Plaintiff's claims with the former First Department Justice, the Hon. Betty Weinberg Ellerin, through JAMS, on May 10, 2017.   See Pl. Compl. ¶ 40 - 45; Pl. Decl. ¶ 3.   The JAMS mediation agreement did not provide for arbitration.   Decl. ¶ 10.   After a full day of mediation, in a follow up phone call, Justice Weinberg made a "mediator's proposal" and around June 4, 2017, counsel for Plaintiff Delgado and the Defendants orally agreed to the proposal to settle Plaintiff Delgado's claims for a sum certain ("Payment") in exchange for a mutual release of all claims.   See Pl. Compl. ¶ 40 - 45; Pl. Decl. ¶ 3.   The following day, on June 5, 2017, Plaintiff Delgado's counsel emailed Defendant's counsel, to confirm the terms of the settlement, and Defendants' counsel responded to the email confirming the terms of the settlement.   *Id*.

2

Plaintiff, in compliance with the terms of the settlement agreement, began performance of her obligations under the settlement agreement by promptly drafting a pro forma settlement document with the binding terms reached over the phone. *Id*. These agreements were never signed, and so the operateive agreement was the verbal settlement agreement, which was confirmed in writing by email. Pl. Decl. ¶ 14.  Defendants then reneged on this settlement and refused to perform on the agreement.  Pl. Decl. ¶ 14.  To date, Defendants have refused to pay Claimant the money owed, and have violated the agreement to a mutual release by initiating a baseless arbitration against Plaintiff Delgado in front of the AAA.  Pl. Decl. ¶ 16 - 18.  Specifically, the Defendants initiated an arbitration at AAA against Plaintiff (*Donald J. Trump for President, Inc. V. Arlene Delgado* (JAMS reference 01-17-0004-4706), alleging that she breached the Confidentiality Agreement by intending to file a complaint with the NYCCH, as well as by sending out certain unspecified tweets in December of 2016.[1]  *Id*.  Now, Plaintiff, who is indigent, and has been certified as such by the Florida Family Court, is expected to expend significant sums of money paying for the administration of the arbitration and to her attorneys to defend her, as well as to expend significant resources in defending against this arbitration.  *Id*.

Plaintiff now brought this action to enforce this settlement, and in the alternative to pursue her discrimination and retaliation claims, as well as to pursue her additional retaliation claims against the Defendants relating to their retaliatory actions in bringing claims against Plaintiff before AAA.  See Pl. Complaint generally.

---

[1] Defendants have subsequently withdrawn their claims that Plaintiff breached the Confidentially Agreement by indicating an intent to file discrimination claims with NYCCHR, and thus only the claims relating to tweets remain.

[2] Defendants do not, and indeed cannot dispute the fact that Plaintiff's statutory discrimination claims are properly before this Court.

[3] As the Court in the state court *Denson* case held, "the Court recognizes that the rules of the American Arbitration Association ("AAA") provide that the arbitrator shall decide questions of arbitrability (see Rule 7), the circumstances of this case do not require this Court to send this matter to an arbitrator. It isn't even a close question.

## ARGUEMENT

**D.**  **THE PRESENT CLAIMS ARE PROPERLY BEFORE THIS COURT, AND SHOULD NOT BE COMPELLED TO ARBITRATION**

> **a.**  **This action does not relate to the Confidentiality Agreement, but rather is merely about enforcing a settlement of Plaintiff's statutory discrimination claims, which do not touch upon the Confidentiality Agreement.**

It is well settled that a party cannot be compelled to submit to arbitration unless the agreement to arbitrate expressly and unequivocally encompasses the subject matter of the particular dispute.  Where "there is no agreement to arbitrate all disputes arising out of the parties' relationship but rather a limited arbitration clause relating to a specific type of dispute, the clause must be read conservatively if it is subject to more than one interpretation." *Denson v Donald J. Trump for President, Inc.*, 2018 NY Slip Op 32168(U) citing *Trump v Refco Properties, Inc.*, 194 AD2d 70, 74, 605 NYS2d 248 [1st Dept. 1993]).  Indeed even in a case that invokes the AAA rules, which would ordinarily require an arbitrator to decide arbitrability, where the Court cannot find clear and unmistakable evidence that the parties agreed to have an arbitrator decide arbitrability for ***all*** disputes between them, the court may decide that issue.  *Id*.

In the present case, the affirmative claims brought by Plaintiff, both of which stem from her employment, are in essence two, and they are quite clear.  The first is whether Plaintiff has an enforceable settlement agreement with the Defendants relating to her statutory discrimination claims against the Defendants.  The second is if Plaintiff does not have an enforceable settlement agreement, then Plaintiff maintains claims against the Defendants for discrimination and retaliation, arising out of her employment with the Defendants.  Neither of these claims have remotely anything to do with the Confidentiality Agreement executed by Plaintiff, which clearly was created for the sole purpose of preventing Plaintiff from making disparaging remarks about President Donald Trump and his family.  (Mel. Decl. Exhibit B).

4

Indeed, the Defendants' contention otherwise is entirely disingenuous, as it has already been settled that this exact Confidentiality Agreement is not an employment agreement, and an affirmative claim brought by a plaintiff arising from their employment clearly is not subject to this agreement.   See *Denson v Donald J. Trump for President, Inc.*, 2018 NY Slip Op 32168(U).   Indeed the Defendants' counsel in the present case were the same counsel in the *Denson* case.   This is only further amplified by the fact that Plaintiff signed an Employment Agreement before she began her employment, and days before she signed the Confidentiality Agreement, and that agreement did not contain an arbitration clause, but instead explicitly stated that a court of competent jurisdiction in New York must resolve all disputes relating to Plaintiff's employment.   (Mel. Decl. Exhibit A).   If the statutory discrimination claims that Plaintiff presented, which led to Plaintiff's settlement agreement, are properly before this Court, it follows that an action to enforce that settlement is also properly before this Court.[2]   The Defendants argument that the claims in the present case somehow touch upon the Confidentially Agreement is simply wrong.   This is not an action wherein the Defendants claim that Plaintiff breached the Confidentiality Agreement.[3]   This is an action, ***brought by Plaintiff***, to enforce the settlement reached when Plaintiff presented her statutory discrimination claims to the Defendants.

Indeed, the terms of the arbitration provision provide that any dispute relating to a "***breach of the agreement***" is subject to arbitration.   This is not a dispute relating to an alleged breach of the Confidentiality Agreement. This case does not "touch upon" or "pertain to"

[2] Defendants do not, and indeed cannot dispute the fact that Plaintiff's statutory discrimination claims are properly before this Court.

[3] As the Court in the state court *Denson* case held, "the Court recognizes that the rules of the American Arbitration Association ("AAA") provide that the arbitrator shall decide questions of arbitrability (see Rule 7), the circumstances of this case do not require this Court to send this matter to an arbitrator. It isn't even a close question. This narrow arbitration clause, which only applies to the narrow agreement, simply does not cover the claims asserted in this case. Defendant's behavior, which is the subject of this litigation, is not subject to arbitration; only plaintiffs behavior as it relates to those five categories can be arbitrated."

plaintiff's ongoing confidentiality obligations under the Confidentiality Agreement. The Confidentiality Agreement, and in turn it's arbitration clause, does not relate to affirmative claims brought by Plaintiff arising out of her employment. See *Denson v Donald J. Trump for President, Inc.*, 2018 NY Slip Op 32168(U), as well as *Denson v. Trump for President, Inc.*, No. 18-CV-2690 (JMF), 2018 WL 4568430 (S.D.N.Y. Aug. 30, 2018).

In *Denson v Donald J. Trump for President, Inc.*, 2018 NY Slip Op 32168(U), the Plaintiff, who worked for the Trump Campaign, brought affirmative claims of discrimination and retaliation against the Defendants. *Denson v Donald J. Trump for President, Inc.*, 2018 NY Slip Op 32168(U). The Defendants moved to compel arbitration of those claims, citing the identical arbitration provision in an identical confidentiality agreement (Mel. Decl. Exhibit C). *Id*. As the *Denson* court held, this arbitration clause clearly is intended only to allow the Defendants to decide whether to commence a lawsuit or an arbitration if a plaintiff violated a term of the agreement. (Mel. Decl. Exhibit D). Indeed, "the arbitration clause could have been written to require any disputes arising out of plaintiffs employment to go to arbitration or that any claims brought by plaintiff against defendant must be sent to arbitration. But it did not." *Id*. Rather, the clause is much more narrow, and all it does is allow defendant to choose whether to arbitrate a dispute that ***arises out of*** the agreement. Most critically, the court noted that "[t]he clause cannot be interpreted to apply to plaintiffs affirmative claims arising out of her employment." *Id*. In the present case, just as in *Denson*, "no one claims that plaintiff violated the terms that governed plaintiffs conduct in those five categories [of confidentiality]; this case is about defendant's conduct in the employment context [and in settling a claim arising from that employment]. Therefore, neither the agreement nor its arbitration provision has any application here." *Id*.

Similarly, in *Denson v. Trump for President, Inc.*, No. 18-CV-2690 (JMF), 2018 WL 4568430, at *2 (S.D.N.Y. Aug. 30, 2018) this Court cited the state court decision in *Denson v. Donald J. Trump for President, Inc.*, Index No. 101616/2017 (N.Y. Sup. Ct. Aug. 7, 2018), and clearly made the distinction between the case before it where the plaintiff did not bring "affirmative claims arising out of her employment" but rather disputed the enforceability of the Confidentiality Agreement, thus making the claim arbitrable. *Denson v. Trump for President, Inc.*, No. 18-CV-2690 (JMF), 2018 WL 4568430, at *2 (S.D.N.Y. Aug. 30, 2018). But certainly in the present case, where Plaintiff's breach of contract and promissory estoppel claims at issue are affirmative claims arising out of her employment, these claims are properly before this court. Defendants attempt to repackage their argument from the *Denson* state court case by claiming that the breach of contract claims "touch upon" or "pertain to" the Confidentiality Agreement merely because settlement discussions that led to the settlement occurred in a confidential mediation. However, this cannot save the Defendants from the fact that the claims at issue in this case are affirmative claims brought by Plaintiff, which arise out of Plaintiff's employment. Thus, they are not subject to the Confidentiality Agreement or its arbitration clause.[4] This is particularly the case in light of the fact that Plaintiff's actual Employment Agreement did not contain an arbitration clause, and instead explicitly stated that a court of competent jurisdiction in New York must resolve disputes relating to Plaintiff's employment. (Mel. Decl. Exhibit A).

Furthermore, contrary to the Defendants' contention, this case is clearly distinguishable

---

[4] Despite the fact that the settlement discussions that led to the settlement were held during a confidential JAMS mediation, in order to pursue her claims, Plaintiff has no choice but to reveal at least the general terms of the settlement agreement, and she is certainly entitled to present those claims before this Court. When disclosure of confidential mediation information is required to enforce the terms of the settlement, it may be disclosed. See e.g. *Delyanis v. Dyna-Empire, Inc.*, 465 F. Supp. 2d 170, 171 (E.D.N.Y. 2006); *Stoll v. Port Authority,* 701 N.Y.S.2d 430 (1st Dept. 2000); *Chitkara v. New York Telephone*, 45 Fed.Appx. 53 (2nd Cir. 2002); *Hauzinger v. Hauzinger*, 43 AD3d 1289 (4th Dept. 2007); *In re Teligent*, 640 F.3d 53, 57-58 (2nd Cit. 2011). Indeed, it is necessary for the Court to know the terms of the settlement in order to enforce it. Moreover, the JAMS mediation agreement did not provide for arbitration, and the draft settlement agreements exchanged between the parties were never finalized or executed by either party. *Supra*.

from *Buchman v. Weiss*, 2009 WL 2044615, 5 (SDNY 2009), where the Plaintiff's claims pertained to "the rights and obligations of the parties **under the [a]greement**" (emphasis added)).  Here the claims Plaintiff asserted have nothing to do with the rights and obligations of the parties under the Confidentiality Agreement.  Similarly, *JLM Industries, Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 175–176 (2d Cir. 2004) is clearly distinguishable in that the court found that the "claims unquestionably involve a core issue of the **contracts between the parties**…." (emphasis added)).  Again, in stark contrast here, the claims Plaintiff asserts have nothing to do with the rights and obligations of the parties under the Confidentiality Agreement. Simply put, Plaintiff's claims for breach of the settlement agreement have absolutely nothing to do with a "core issue" of the confidentiality agreement, nor do they relate to the "rights and obligations of the parties under the agreement." *Denson v. Donald J. Trump for President, Inc.*, Index No. 101616/2017 (N.Y. Sup. Ct. Aug. 7, 2018); *JLM Industries, Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 175–176 (2d Cir. 2004).  As such, Plaintiff's claims do not even remotely touch upon the Confidentially Agreement, and thus the Defendants motion to compel arbitration of these claims should be denied.

### b.  <u>The Confidentiality Agreement is not a valid contract.</u>

The FAA provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.   Additionally, the text of § 2 declares that state law may be applied "if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." *Perry v. Thomas*, 482 U.S., at 492, n. 9, 107 S.Ct., at 2527, n. 9.  Therefore, generally applicable contract defenses, such as invalid consideration, fraud, duress, or unconscionability may be applied to invalidate arbitration agreements.  *Doctor's*

*Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686–87, 116 S. Ct. 1652, 1656, 134 L. Ed. 2d 902 (1996) (internal citations omitted).  In order to establish the existence of an enforceable contract under New York law, there must be "an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound." *Kavitz v. Int'l Bus. Machines, Corp.*, 458 F. App'x 18, 19 (2d Cir. 2012) citing *Civil Serv. Employees Ass'n, Inc. v. Baldwin Union Free Sch. Dist.,* 84 A.D.3d 1232, 924 N.Y.S.2d 126, 128 (2d Dep't 2011).  Thus, where a party receives no consideration, there cannot be a valid contract.   Moreover, past consideration is plainly inadequate. *Transperfect Translations Int'l, Inc. v. Merrill Corp.*, 159 F. App'x 313, 314 (2d Cir. 2005); *United States v. Gallina*, No. 97-CV-5532 CBA JMA, 2010 WL 6194099, at *8 (E.D.N.Y. Sept. 28, 2010), *report and recommendation adopted*, No. 97-CV-5532 CBA JMA, 2011 WL 976676 (E.D.N.Y. Mar. 15, 2011).

In the present case, there are two primary issues with the validity of the Confidentiality Agreement at issue.  First, the Confidentiality Agreement did not provide any valid consideration to Plaintiff in exchange for her promises to the Defendants.   Rather, the Confidentiality Agreement, which was drafted by the Defendants in a one-sided fashion, did not provide any benefit to Plaintiff.  Because Plaintiff initially signed her Employment Agreement days before she was ever presented with the Confidentiality Agreement, the prior consideration of the offer of employment, which Plaintiff received and performed upon based on her original contract, cannot serve as additional consideration for the new Confidentiality Agreement.  As such, there is no valid consideration and therefore there is no valid contract.  *Kavitz v. Int'l Bus. Machines, Corp.*, 458 F. App'x 18, 19 (2d Cir. 2012).

Second, the Employment Agreement had a valid modification clause, which required that any modification to the agreement be confirmed in a writing signed by ***both*** parties in order to be

9

an enforceable modification (Mel. Decl. Exhibit A).  However, the Defendants never executed the Confidentiality Agreement.  Thus, the modifications to the terms of Plaintiff's Employment Agreement were never valid, and the Confidentiality Agreement is not a valid contract. Critically, per the terms of Plaintiff's Employment Agreement, any claims relating to her employment were to be brought in a court of competent jurisdiction within New York, namely this Court.  As such, this case is clearly properly before this Court and should not be compelled to arbitration.[5]

### E. THE DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED.

Despite the fact that the Defendants raised the issue of a "failure to hire" claim in their pre-motion letter to Plaintiff and Plaintiff explicitly responded that she does not maintain any cause of action against the federal government, or otherwise, under a theory of failure to hire, the Defendants still chose to argue this moot point in the present motion.  It would appear that the Defendants intention in doing so is simply to lay the groundwork for their subsequent argument that Plaintiff's tortious interference is a re-characterization of a failure to hire claim. However, as Plaintiff has stated previously, she does not maintain a cause of action against the federal government, or otherwise, for failure to hire.  Plaintiff does however allege that in preventing her from obtaining a job with the current Trump administration, the Defendants tortuously interfered with her third party contract, which was confirmed by President Trump (See Pl. Compl. generally).  Additionally, the Defendants did so for an improper reason, because they had issue with the fact that Plaintiff, as a woman, was pregnant and would soon

---

[5] While it is true that the Second Circuit has held that the issue of whether a claim is or is not arbitrable is generally one that must be determined by an arbitrator, that is only where the parties have an actually valid agreement to begin with, not where, as here, there never was a valid contract to begin with.  *Kavitz v. Int'l Bus. Machines, Corp.*, 458 F. App'x 18, 19 (2d Cir. 2012) citing *Civil Serv. Employees Ass'n, Inc. v. Baldwin Union Free Sch. Dist.*, 84 A.D.3d 1232, 924 N.Y.S.2d 126, 128 (2d Dep't 2011); *Gwathmey Siegel Kaufman & Associates Architects, LLC v. Rales*, 518 Fed.Appx. 20, 21 (2d Cir. 2013).

become a mother.  See Pl. Compl. generally.

Moreover, contrary to the Defendants contention, the third party business relationship that Plaintiff maintained would have been with the Trump administration and the federal government, none of which employed Plaintiff previously.  The mere fact that some of the named Defendants in the present action worked for the new employer that Plaintiff was supposed to work for, does not mean that such a future employer is not considered a third party for a tortious interference claim to exist.  And indeed, the fact that the named Defendants worked for the third party only lends credibility to the contention that they had the ability to, and in fact did, interfere with Plaintiff's job opportunities with said employer.  Thus, the specific allegation that the individual Defendants interfered with Plaintiff's ability to obtain the employment she was promised with the Trump administration, is indeed an independent cause of action for tortious interference.

Furthermore, as stated in Plaintiff's opposition letter to the Defendants pre-motion letter, it is not the case that an individual's discriminatory animus toward someone cannot form the basis of a "wrongful purpose" for tortious interference purposes.  Rather, the cases cited by Defendants stand for the proposition that where a Plaintiff alleges that the ***actual acts of discrimination*** within the context of ***their first employer***, for example the hostile work environment and wrongful termination, are an independent tort.  For example, in *Emmons v. City Univ. of New York*, 715 F. Supp. 2d 394, 425 (E.D.N.Y. 2010), *modified* (July 2, 2010)*,* the Court found that the plaintiff's claim for tortious interference based on her ***termination from the Defendants*** failed because she could not establish that the Defendant was a "third party" who "used wrongful means to effect the termination" of her employment.  The court noted that a claim grieving employment termination by the Plaintiff's superiors acting within

11

the scope of their authority did not create a tort claim under New York law." *Id*.   In stark contrast, Plaintiff's tortious interference claims against the Defendants are based on their interference with her ability to obtain **other future** employment with the Trump administration.   The Defendants actions in interfering with such business opportunities for Plaintiff with this third party, based upon their wrongful means of a discriminatory animus against Plaintiff for being a woman, being pregnant, and being an expectant mother, certainly can form an independent cause of action for tortious interference.

Similarly, in *Baguer v. Spanish Broad. Sys., Inc.*, No. 04-CV-8393 (KMK), 2007 WL 2780390, at *3 (S.D.N.Y. Sept. 20, 2007) the court held that a defendant may be liable in tort when it breaches a duty that is distinct from its contractual obligations, or when it has engaged in tortious conduct separate and apart from its failure to fulfill its contractual obligations.   The outcome in *Baguer* again is factually different from the present case, where in addition to discriminating against Plaintiff during her employment with the Defendants, and terminating her, Defendants also interfered with Plaintiff's prospective business opportunities with the Trump administration.   Indeed if one were to take the Defendant's contention to its' logical conclusion, even if the Defendants hypothetically spoke with every one of Plaintiff's future potential employers and interfered with her employment prospects with those employers, Defendants seem to contend that Plaintiff would not maintain an independent cause of action based on that tortious interference if the motivation behind it is the same discriminatory animus, and Plaintiff had already pursued discrimination claims against the Defendants.   This is certainly not a proposition that *Emmons* and *Baguer* stand for, and is contrary to well established precedent.   *Catskill Dev., L.L.C. v. Park Place Entm't Corp.,* 547 F.3d 115, 132 (2d Cir.2008), *cert. denied, Catskill Dev., L.L.C. v. Harrah's Operating Co.,* 556 U.S. 1166,

129 S.Ct. 1908, 173 L.Ed.2d 1058 (2009); *see Lombard v. Booz–Allen & Hamilton, Inc.,* 280 F.3d 209, 214 (2d Cir.2002).   As such, this Court should deny the Defendants' motion to dismiss in.

### F. **PLAINTIFF'S CROSS-MOTION TO ENJOIN THE AAA ARBITRATION FILED BY THE DEFENDANTS AGAINST PLAINTIFF SHOULD BE GRANTED.**

The standard for issuing a temporary restraining order and a preliminary injunction are the same.   *Local 1814, Int'l Longshoremen's Ass'n v. N.Y. Shipping Ass'n, Inc.,* 965 F.2d 1224, 1228–29 (2d Cir. 1992).   In particular, "[t]he purpose of a preliminary injunction is to preserve the status quo pending the final determination of a dispute."   *Arthur Guinness & Sons, PLC v. Sterling Publ'g Co.,* 732 F.2d 1095, 1099 (2d Cir. 1984).   In Plaintiff's case, the status quo would be not being forced to litigate in a separate arbitration, while claims are pending in this action, which if decided may have a dispositive effect on the arbitration.

A court may issue a preliminary injunction under Federal Rule of Civil Procedure 65 when the moving party demonstrates "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief."   *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.,* 598 F.3d 30, 35 (2d Cir. 2015).   The showing of irreparable harm is considered "the single most important requirement with regard to the granting of a preliminary injunction." *Reuters Ltd. v. United Press Int'l, Inc.,* 903 F.2d 904, 907 (2d Cir.1990).   Plaintiff's case satisfies these elements.

In the present case, Defendants have sued Plaintiff in a AAA arbitration alleging that Plaintiff breached the Confidentiality Agreement by sending out tweets in December of 2016.

At present, Plaintiff will have to expend time, money and resources in defending against this arbitration. *Supra*. As such, Plaintiff will suffer irreparable harm, and the first element is established. However, to the extent that this Court grants Plaintiff's anticipated motion to enforce the settlement agreement, it is clear the operative agreement was entered into before the AAA arbitration was initiated (*supra*) and as such the mutual release provided for in the settlement agreement would have released the Plaintiff from the Defendants claims in the AAA arbitration.

Similarly, as stated above, the confidentiality agreement in the present case is an invalid contract, as it was not executed by both parties as required by Plaintiff's initial Employment Agreement, and it also did not provide any valid consideration to Plaintiff. In light of this, the Defendants have no legal basis to bring an action in AAA alleging that Plaintiff breached this invalid agreement. As such, it is clear that there is a strong likelihood of success on the merits, or at the very least serious questions regarding the merits of the dispute, making them fair grounds for litigation, and a balance of hardships tips in favor of Plaintiff. Thus, Plaintiff is entitled to a preliminary injunction while the Court determines the merits of Plaintiff's claims that there exists an enforceable settlement agreement, which would release the claims pending in AAA, as well as whether there ever existed a valid contract between the parties. *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.,* 598 F.3d 30, 35 (2d Cir. 2015).

Thus, it is respectfully submitted that this Court issue an Order enjoining the Defendants from continuing to pursue the action in front of AAA, or from otherwise litigating any alleged breach of the invalid Confidentiality Agreement.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court 1- deny the Defendants' partial motion to compel arbitration, 2- deny the Defendants partial motion to dismiss, and 3- grant Plaintiff's motion for an injunction and enjoin the Defendants from pursuing claims that allege that Plaintiff breached the confidentiality agreement, at AAA or otherwise, together with such other and further relief as the Court may deem just and proper.

Dated:        Los Angeles, California         June 16, 2020

DEREK SMITH LAW GROUP, PLLC
*Attorneys for Plaintiff*

***/s/Abraham Z. Melamed***
 Abraham Z. Melamed, Esq.
 One Penn Plaza, Suite 4905
 New York, New York 10119
 (212) 587-0760