UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
ARLENE DELGADO,

|  |  |
|---|---|
| Plaintiff, | Civil Action No.: |
| | 19-cv-11764 (AT) |
| -against- | |

DONALD J. TRUMP FOR PRESIDENT, INC.,
TRUMP FOR AMERICA, INC.,
SEAN SPICER, individually,
REINCE PRIEBUS, individually,
STEPHEN BANNON, individually,

                     Defendants.
------------------------------------------------------------------------X

# MEMORANDUM OF LAW
## IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO
## COMPEL ARBITRATION AND TO DISMISS
## AND IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION
## FOR A PRELIMINARY INJUNCTION

*On the brief:*
*Patrick McPartland, Esq.*
*Jared E. Blumetti, Esq.*

**LAROCCA HORNIK ROSEN
& GREENBERG LLP**
40 Wall Street, 32nd Floor
New York, New York 10005
T: (212) 530-4837, 4831
E: pmcpartland@lhrgb.com
    jblumetti@lhrgb.com

*Attorneys for defendants*
*Donald J. Trump for President, Inc.,*
*Trump for America, Inc.,*
*Sean Spicer, and Reince Priebus*

**TABLE OF CONTENTS**

Page(s)

TABLE OF AUTHORITIES……………………………………………………… ii

PRELIMINARY STATEMENT …………………………………………… 1

ARGUMENT …………………………………………………………………… 2

I.   THE CAMPAIGN'S MOTION TO COMPEL ARBITRATION
     MUST BE GRANTED……………………………………………… 2

     A.   Issues of Arbitrability Must Be Decided by
          a AAA Arbitrator………………………………………………… 2

     B.   Plaintiff's Challenges to the "Validity" of the Retention
          Agreement are Meritless………………………………………… 5

II.  DEFENDANTS' MOTION TO DISMISS MUST BE GRANTED……… 8

     A.   Plaintiff's "Failure to Hire" Claims Must Be Dismissed……………… 8

     B.   Plaintiff Tortious Interference Claim Must Be Dismissed……………… 9

III. PLAINTIFF'S CROSS-MOTION FOR A PRELIMINARY
     INJUNCTION MUST BE DENIED…………………………………… 12

CONCLUSION…..……………………………………………………………… 14

## TABLE OF AUTHORITIES

**Cases**

*Baguer v. Spanish Broadcasting System, Inc.*,
  2007 WL 2780390 (S.D.N.Y. September 20, 2007)………………………………… 11, n.6

*Brown v. General Services Administration*,
  425 U.S. 820, 96 S. Ct. 1961 (1976)………………………………………………… 8

*Buckeye Check Cashing, Inc. v. Cardegna*,
  546 U.S. 440, 126 S.Ct. 1204 (2006)………………………………………………… 5, 6, 13

*Chen-Oster v. Goldman, Sachs & Co.*,
  2020 WL 1467182 (S.D.N.Y. March 26, 2020)…………………………………… 6

*Chung Chang v. Warner Bros. Entertainment, Inc.*,
  2019 WL 5304144 (S.D.N.Y. October 21, 2019)………………………………… 3, 4

*Colorado-Arkansas-Texas Distributing, L.L.C. v. American Eagle Food Products, Inc.*,
  525 F.Supp.2d 428 (S.D.N.Y. 2007)…………………………………………………… n.3

*Contec Corp. v. Remote Solution, Co., Ltd.*,
  398 F.3d 205 (2d Cir. 2005)………………………………………………………… 2

*Creative Securities Corp. v. Bear Stearns & Co.*,
  671 F.Supp. 961 (S.D.N.Y. 1987),
  *aff'd* 847 F.2d 834 (2d Cir. 1988)…………………………………………………… n.3

*Cypress v. Cintas Corporation No. 2*,
  2017 WL 564492 (E.D.N.Y. February 11, 2017)………………………………… 6

*DeBono v. Washington Mutual Bank*,
  2006 WL 3538938 (S.D.N.Y. December 8, 2006)……………………………… 7

*Denson v. Trump for President, Inc.*,
  2018 WL 4568430 (S.D.N.Y. August 30, 2018)………………………………… passim

*DiPompo v. West Point Military Academy*,
  708 F.Supp. 540 (S.D.N.Y. 1989)……………………………………………………… 9

*Emmons v. City University of New York*,
  715 F.Supp.2d 394 (E.D.N.Y. 2010)………………………………………………… 11

*Garvin v. Potter*,
  367 F.Supp.2d 548 (S.D.N.Y. 2005)…………………………………………………… 8

*Gwathmey Siegel Kaufman & Associates Architects, LLC v. Rales*,
    518 Fed.Appx. 20 (2d Cir. 2013)……………………………………………… 2, 13

*HDI Global SE v. Lexington Insurance Company*,
    232 F.Supp.3d 595 (S.D.N.Y. 2017)………………………………………… 6

*Henry Schein, Inc. v. Archer and White Sales, Inc.*,
    139 S.Ct. 524 (2019)………………………………………………………… passim

*Hidalgo v. Amateur Athletic Union of United States, Inc.*,
    2020 WL 3442029 (S.D.N.Y. June 24, 2020)………………………………… 3, 4

*Kanhoye v. Altana Inc.*,
    686 F.Supp.2d 199 (E.D.N.Y. 2009)………………………………………… 11, n.6

*Katsoris v. WME IMG, LLC*,
    237 F.Supp.3d 92 (S.D.N.Y. 2017)…………………………………………… 3

*King v. U.S. Postal Service*,
    2002 WL 1067825 (S.D.N.Y. May 29, 2002)………………………………… 10

*Kumaran v. National Futures Association*,
    2020 WL 3630389 (S.D.N.Y. July 2, 2020)…………………………………… 12, 13

*Lan Sang v. Ming Hai*,
    951 F.Supp.2d 504 (S.D.N.Y. 2013)………………………………………… 11

*Local One Security Officers Union v. New York University*,
    2019 WL 4254026 (S.D.N.Y. September 9, 2019)…………………………… 13

*Lewis v. Snow*,
    2003 WL 22077457 (S.D.N.Y. September 8, 2003)………………………… 8, 9

*In re Refco Inc. Securities Litigation*,
    826 F.Supp.2d 478 (S.D.N.Y. 2011)………………………………………… 10

*RFP LLC v. SCVNGR, Inc.*
    788 F. Supp. 2d 191 (S.D.N.Y. 2011)………………………………………… 10

*Stern v. Espeed, Inc.*,
    2006 WL 2741635 (S.D.N.Y. September 22, 2006)………………………… 6

*Spinelli v. Secretary of Department of Interior,*
    2006 WL 2990482 (E.D.N.Y. October 19, 2006)…………………………… 9

*Torre v. Charter Communications, Inc.*,
        2020 WL 1048933 (S.D.N.Y. March 4, 2020)…………………………………    3, 4

**Other Authorities**

Title VII………………………………………………………………………………    passim

Defendants Donald J. Trump for President, Inc. ("Campaign"), Trump for America, Inc., Sean Spicer, and Reince Priebus (collectively, "Defendants") respectfully submit this memorandum of law: (i) in further support of the Campaign's motion to compel arbitration of certain arbitrable claims, and Defendants' motion to dismiss certain non-arbitrable claims, and (ii) in opposition to plaintiff's cross-motion for a preliminary injunction staying the Campaign's arbitration claims against her while her purported defenses to those claims are decided by this Court.

## PRELIMINARY STATEMENT

Plaintiff misguidedly premises her opposition to the Campaign's motion to compel arbitration (of her breach of contract and promissory estoppel claims) on the ground that these two claims are not arbitrable, and on the further ground that the Retention Agreement that contains the subject arbitration provision is itself not a valid or enforceable agreement. As demonstrated below, both of these arguments fail as a matter of law because (i) issues of arbitrability must be decided by the AAA arbitrator and (ii) issues relating to the validity and enforceability of the Retention Agreement are likewise exclusively reserved for the AAA arbitrator.

Concerning Defendants' motion to dismiss, plaintiff's opposition papers serve to confirm that her claim for tortious interference with prospective business relations—which claim is premised entirely on Defendants' alleged failure to hire her to work at "the White House" for discriminatory reasons—is simply a recast of a "failure to hire" claim under Title VII (a claim that she is administratively barred from asserting). Because Title VII provides the exclusive remedy for employment discrimination claims that are brought against the federal government, plaintiff's tortious interference claim—which also fails from a basic pleading standpoint—is barred as a matter of law.

Finally, plaintiff's cross-motion seeking to enjoin the Campaign's arbitration against her while her purported defenses to those claims are litigated before this Court also fails as a matter of law for a number of reasons, including that her purported defenses themselves must also be referred to and decided by the AAA arbitrator.

For all of these reasons (and the reasons set forth below and in Defendants' moving brief), the instant motion must be granted in its entirety, and plaintiff's cross-motion should be denied.

## ARGUMENT

## I.

## THE CAMPAIGN'S MOTION TO COMPEL ARBITRATION MUST BE GRANTED

Plaintiff's opposition to the Campaign's motion to compel arbitration is premised on two arguments:  (i) her claims for breach of contract and promissory estoppel are claims that are not covered by the arbitration provision contained in the parties' Retention Agreement (i.e. that the claims themselves are not arbitrable) and (ii) the Retention Agreement as a whole is not valid or enforceable.  Both of these arguments fail as a matter of law under United States Supreme Court precedent.

## A.     Issues of Arbitrability Must Be Decided by a AAA Arbitrator

It has long been established in the Second Circuit that the first-order issue of whether a claim is—or is not—arbitrable is to be determined by an arbitrator where, as here, the parties expressly agreed to arbitrate pursuant to the procedural rules of the American Arbitration Association (the "AAA Rules").  *See e.g. Gwathmey Siegel Kaufman & Associates Architects, LLC v. Rales*, 518 Fed.Appx. 20, 21 (2d Cir. 2013) ("by incorporating the [AAA Rules] the parties agreed to have the arbitrators decide arbitrability"), *citing Contec Corp. v. Remote Solution, Co.,*

2

*Ltd.*, 398 F.3d 205, 208 (2d Cir. 2005) ("when, as here, parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator") (*citations omitted*); *see also Katsoris v. WME IMG, LLC*, 237 F.Supp.3d 92, 105 (S.D.N.Y. 2017) ("the incorporation of the AAA Rules into the [parties' agreement] serves as clear and unmistakable evidence that the [parties] agreed to delegate any questions of arbitrability to the arbitrator").

In 2019, the United States Supreme Court cemented this longstanding rule in the *Henry Schein* case holding that the delegation of authority to the arbitrator to determine issues of arbitrability may not be overridden by the district courts. *See Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S.Ct. 524, 529–531 (2019).  Second Circuit courts have consistently followed this precedent. *See e.g. Hidalgo v. Amateur Athletic Union of United States, Inc.*, 2020 WL 3442029, * 9–10 (S.D.N.Y. June 24, 2020) (whether plaintiff's claims that accrued prior to the commencement of his membership with defendant fell within the scope of the parties' agreement to arbitrate disputes "arising out of or during the term of membership" was reserved for an arbitrator); *Torre v. Charter Communications, Inc.*, 2020 WL 1048933, * 1 (S.D.N.Y. March 4, 2020) (whether plaintiff's employment claims were "covered or excluded" within the meaning of the parties' agreement to arbitrate was reserved for an arbitrator); *Chung Chang v. Warner Bros. Entertainment, Inc.*, 2019 WL 5304144, * 5 (S.D.N.Y. October 21, 2019) (whether plaintiff's claims pertaining to defendant's alleged retaliatory conduct following the termination of his employment fell within the scope of their agreement to arbitrate disputes "arising out of or related in any way to [plaintiff's] employment…or termination thereof" was reserved for an arbitrator).

Here, plaintiff misguidedly argues that her claims for breach of contract and promissory estoppel fall outside the scope of the parties' arbitration provision, and thus should be heard by

this Court. Specifically, plaintiff asserts that the arbitration provision contained in the Retention Agreement only applies to affirmative claims made by the Campaign against her (e.g. a claim by the Campaign that she breached the confidentiality provisions under the Retention Agreement), and does not apply to claims made by her against the Campaign (which she asserts are covered by a separate agreement that she also signed when she started working for the Campaign).[1] ECF Doc. No. 45, pp. 8–9. In other words, she disputes that her claims are arbitrable under the Retention Agreement.[2]

As required by terms of the parties' arbitration agreement—and the precedent set forth by *Henry Schein* and its progeny—this first-order arbitrability dispute must be decided by a AAA arbitrator. *See Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S.Ct. at 529; *Hidalgo v. Amateur Athletic Union of United States, Inc.*, 2020 WL 3442029, at * 9–10; *Torre v. Charter Communications, Inc.*, 2020 WL 1048933, at * 1; *Chung Chang v. Warner Bros. Entertainment, Inc.*, 2019 WL 5304144, * 5.

---

[1] Curiously, plaintiff places heavy reliance for this proposition on the 2018 state court decision in *Denson*, and in her papers fails to acknowledge that the decision was completely abrogated by the Supreme Court's 2019 decision in *Henry Schein*. In fact, the state court in *Denson* did precisely what *Henry Schein* proscribes—it impermissibly decided the issue of the arbitrability of certain claims where that power was exclusively vested in the arbitrator as per the express terms of the parties' arbitration agreement. *See Denson v Donald J. Trump for President, Inc.*, 2018 NY Slip Op 32168 (N.Y. Sup. Ct. September 7, 2018); *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S.Ct. at 529–531 (court may not override parties' agreement to delegate issues of arbitrability to an arbitrator, even where the court believes that the party's argument that the claim is arbitrable is "wholly groundless").

[2] As set forth more fully in the Campaign's moving brief, plaintiff's claims for breach of contract and promissory estoppel—which are based on plaintiff's own assertions that the parties "privately settled" their disputes against each other in a "confidential mediation"—are arbitrable because they relate and pertain to plaintiff's confidentiality obligations under paragraph 1 of the Retention Agreement. *McPartland Decl., Exh. A, ¶¶ 40–47, 58–60, 65–67; Exh. B, ¶¶ 1, 3–4.* This issue, therefore, is reserved exclusively for the AAA arbitrator to decide.

**B.**       **Plaintiff's Challenges to the "Validity" of the Retention Agreement Are Meritless**

As the United States Supreme Court has expressly held, when an arbitration provision grants the arbitrator authority to determine the enforceability of an agreement, any challenges to the validity or enforceability of the agreement—***with the sole exception of challenges to the arbitration provision itself***—must be decided by the arbitrator.  *See e.g. Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449, 126 S.Ct. 1204, 1210 (2006) ("a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator").  Indeed, Judge Jesse M. Furman of this Court applied *Buckeye* to the exact same arbitration provision that is contained in plaintiff's Retention Agreement when he compelled arbitration of various claims by Jessica Denson that her agreement with the Campaign was not valid and enforceable.  *See Denson v. Trump for President, Inc.*, 2018 WL 4568430, * 2 (S.D.N.Y. August 30, 2018).

Here, plaintiff does not raise any procedural or substantive challenges pertaining specifically to the parties' arbitration provision.  ECF Doc. No. 45, pp. 12–14.  Rather, she challenges the validity of the Retention Agreement as a whole, namely that the Retention Agreement is "invalid" because it was (i) not supported by consideration and (ii) purportedly signed only by plaintiff and, thus, cannot constitute a "valid modification" to her separate consulting agreement with the Campaign.  *Id*.

These arguments fall squarely within the parties' broad agreement to arbitrate "any dispute arising under or relating to the [Retention Agreement]."  *McPartland Decl., Exh. B, ¶ 1*.  They further fall squarely within the jurisdiction of the AAA, as the parties specifically incorporated the AAA Rules in their arbitration provision, which provide that "[t]he arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part."

5

*McPartland Decl., Exh. C.*  For these reasons alone, all of plaintiff's arguments must be heard and decided by the AAA arbitrator.  *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. at 449, 126 S.Ct. at 1210; *see also HDI Global SE v. Lexington Insurance Company*, 232 F.Supp.3d 595, 603 (S.D.N.Y. 2017) (compelling arbitration where there were "no allegations or facts pleaded in the amended complaint challenging the validity and enforceability of the arbitration clause itself").

Regardless, plaintiff's arguments are also meritless.  First, the Retention Agreement, including the arbitration provision itself, was indisputably supported by valid consideration, *to wit*, the offer that was made (and opportunity afforded) to plaintiff to work for the Campaign on a presidential campaign, and her continued retention by the Campaign.  *See e.g. Cypress v. Cintas Corporation No. 2*, 2017 WL 564492, * 3 (E.D.N.Y. February 11, 2017) (defendant's "offer of employment" to plaintiff "indisputably constitute[d] valid consideration" for plaintiff agreeing to arbitrate disputes with defendant); *Chen-Oster v. Goldman, Sachs & Co.*, 2020 WL 1467182, * 14 (S.D.N.Y. March 26, 2020) ("continuing employment alone is sufficient consideration to support an agreement for arbitration"), *citing Stern v. Espeed, Inc.*, 2006 WL 2741635, * 2 (S.D.N.Y. September 22, 2006) (rejecting employee's contention that "she did not receive any consideration for signing the arbitration agreement because it was not accompanied by any raise, special payment, or promotion" finding that "the continuation of plaintiff's employment was sufficient consideration to support the agreement").

On this point, plaintiff's assertion that the Campaign's offer of retention only constituted valid consideration for the separate consulting agreement that plaintiff signed "a few days" before the Retention Agreement is baseless.  ECF Doc. No. 45, pp. 6, 13.  Both of these agreements were provided to—and signed by—plaintiff as a condition of her retention—a fact expressly confirmed on the very first page of the consulting agreement, which recites that plaintiff is "simultaneously"

6

executing a "companion agreement" relating to "confidentiality, non-disparagement, non-competition, non-solicitation and protection of intellectual property" (i.e. the "Retention Agreement"). *See the "Consulting Agreement" at* ECF Doc. No. 47-1, p. 2, ¶ 3.

Second, plaintiff's argument that the Retention Agreement is an invalid "modification" of the Consulting Agreement because it was purportedly not signed by both parties is a red-herring and likewise baseless. ECF Doc. No. 45, pp. 13–14. As an initial matter, the Campaign did, in fact, countersign the Retention Agreement. *See the Retention Agreement, which is attached as* **Exhibit D** *to the Reply Declaration of Patrick McPartland, dated August 5, 2020 (the "Reply McPartland Decl.")*. Regardless, as noted above, the Retention Agreement is not a "modification" of the Consulting Agreement at all—it is a *separate* "companion agreement," as expressly set forth right on the first page of the Consulting Agreement. *McPartland Decl., Exh. D*; ECF Doc. No. 47-1, pp. 2–3. Plaintiff, of course, does not dispute that **_she signed_** the Retention Agreement and thus is in any event bound by its terms and conditions as the party to be charged, including the arbitration provision.[3] *See e.g. DeBono v. Washington Mutual Bank*, 2006 WL 3538938, * 2 (S.D.N.Y. December 8, 2006) (rejecting plaintiff's assertion that the arbitration agreement he signed as a condition of his employment was "invalid" where it was "undisputed that plaintiff signed the [arbitration agreement]").

---

[3] While the point is academic, there is no requirement under federal law that an arbitration agreement be signed by either party, much less both parties, in order to be enforceable. *See e.g. Colorado-Arkansas-Texas Distributing, L.L.C. v. American Eagle Food Products, Inc.*, 525 F.Supp.2d 428, 435 (S.D.N.Y. 2007) ("[i]t is clear that an agreement to arbitrate may be binding even though it is not signed"); *Creative Securities Corp. v. Bear Stearns & Co.*, 671 F.Supp. 961, 965 (S.D.N.Y. 1987), *aff'd* 847 F.2d 834 (2d Cir. 1988) (the Federal Arbitration Act only requires a written agreement to arbitration, not a signature by the party to be charged).

## II.

## DEFENDANTS' MOTION TO DISMISS MUST BE GRANTED

### A.    Plaintiff's "Failure to Hire" Claims Must Be Dismissed

In her opposition papers, plaintiff does not and cannot dispute that she is barred from asserting a "failure to hire" claim under the NYSHRL or NYCHRL—thus acknowledging the well-established principle that Title VII provides the "exclusive remedy" for claims of discrimination or retaliation relating to federal employment.  ECF Doc. No. 45, pp. 14–17; *see also Brown v. General Services Administration*, 425 U.S. 820, 829, 96 S. Ct. 1961, 1966 (1976) (Title VII provides the "exclusive, preemptive administrative and judicial scheme for the redress of federal employment discrimination"); *Garvin v. Potter*, 367 F.Supp.2d 548, 559–560 (S.D.N.Y. 2005) (discrimination and retaliation claims under the NYSHRL and NYCHRL were barred by the exclusivity of Title VII); *Lewis v. Snow*, 2003 WL 22077457, * 11 (S.D.N.Y. September 8, 2003) (discrimination claim under the NYSHRL was barred by the exclusivity of Title VII).  Although plaintiff misleadingly insists that she is not asserting any such claim (ECF Doc. No. 45, p. 14), the clear allegations of her Complaint state otherwise, *to wit*, that Defendants failed to hire her for a position at "*the White House*" because she was "*a pregnant woman and first-time mother*." *McPartland Decl., Exh. A, ¶¶ 17, 19, 21, 24–29, 33–34, 36* (allegations asserting that other individuals at the Campaign were hired to work at the White House, while plaintiff was allegedly not hired because of her pregnancy; allegations that plaintiff was not hired at the White House despite President Trump's purported "promise" to hire her).

It is, therefore, respectfully requested that the Court issue an order deeming any such "failure to hire" claims under the NYCHRL or NYSHRL dismissed.

8

**B.      Plaintiff's Tortious Interference Claim Must Be Dismissed**

Plaintiff also does not dispute in her opposition papers that she is prohibited from circumventing the exclusivity of Title VII by masquerading a discrimination or retaliation claim relating to federal employment as a state law tort claim.  ECF Doc. No. 45, pp. 14–17; *see also Lewis v. Snow*, 2003 WL 22077457, at * 11 (claim for intentional infliction of emotional distress that was "based solely on the alleged workplace discrimination underlying the previous causes of action" was barred by the exclusivity of Title VII); *Spinelli v. Secretary of Department of Interior*, 2006 WL 2990482, * 9–10 (E.D.N.Y. October 19, 2006) (dismissing state law tort claims that "derive[d] solely from the alleged workplace discrimination underlying [plaintiffs'] federal law claims...in order to maintain the exclusivity of Title VII").  However, this is precisely what plaintiff is attempting to do with her instant claim for tortious interference with prospective business relations.

By her own pleading, the purported "interference" consists of Mr. Preibus and Mr. Spicer allegedly failing to hire her at the White House *after themselves becoming employed at the White House*.  *McPartland Decl., Exh. A, ¶¶ 7–8, 33, 96.[4]*  Indeed, as set forth above, the clear allegations of plaintiff's Complaint are that Defendants failed to hire her for a position at "*the White House*" because of her "*sex, gender and pregnancy, and because she had complained of discrimination and retaliation*."  *Id.*  By definition, only the federal government could have failed to hire her, so any claim that she was not hired for discriminatory or retaliatory reasons falls squarely under the exclusivity provisions of Title VI.  As such, plaintiff's common law claim for tortious interference is barred.  *See e.g. DiPompo v. West Point Military Academy*, 708 F.Supp. 540, 544 (S.D.N.Y.

---

[4] Specifically, plaintiff asserts that that she was not hired after January 20, 2017 (i.e. inauguration day, and the date on which Mr. Spicer and Mr. Priebus became White House staff), despite having reached out to Mr. Spicer on and after that date to express her ongoing interest in a White House position. *Id.*

1989) (claims for discrimination and failure to hire under the NYSHRL were barred by the exclusivity of Title VII); *King v. U.S. Postal Service*, 2002 WL 1067825, * 4 (S.D.N.Y. May 29, 2002) (state law tort claims cannot be used to circumvent the exclusivity of Title VII as the sole remedy for claims of discrimination in federal employment), *citing Rivera v. Heyman*, 157 F.3d 101 (2d Cir. 1998).

This fundamental flaw in plaintiff's claim—i.e. the lack of a "third-party"—also dooms plaintiff's claim from a pleading perspective.  Mr. Preibus and Mr. Spicer could not have possibly interfered with plaintiff's prospective business relations with a "***third-party***" because, at the time of the alleged failure to hire, they were—by plaintiff's own admission—themselves employed by the third-party, i.e. the federal government.  ECF Doc. No. 45, p. 15; *see also RFP LLC v. SCVNGR, Inc.* 788 F. Supp. 2d 191, 195 (S.D.N.Y. 2011) (to state a tortious interference claim, plaintiff must allege facts sufficient to demonstrate, *inter alia*, that she had business relations with a third-party and that defendant interfered with that third-party business relationship).

For similar reasons, plaintiff cannot identify any "interference" with a third-party.  Plaintiff has failed to identify any actions by Defendants directed towards the federal government, beyond her conclusory assertions that they failed to hire her.[5] *See e.g. In re Refco Inc. Securities Litigation*, 826 F.Supp.2d 478, 520–521 (S.D.N.Y. 2011) (dismissing tortious interference claim where plaintiffs failed to plausibly assert that defendants used wrongful means "to induce" the third-party to breach the subject contract).  In fact, the majority of plaintiff's allegations pertain to conduct that was directed at plaintiff herself, such as her assertion that Mr. Spicer tried to "discourage" her

---

[5] Plaintiff's assertion that President Trump purportedly "promised" to hire her to work at the White House, but that she was not hired following Inauguration Day only further evidences the fact that her tortious interference claim is nothing more than a failure to hire claim under Title VII.  ECF Doc. No. 45, pp. 14–15.

"from pursuing White House employment" and tried to "persuade" her to "focus on options outside of the White House," which are insufficient to support a tortious interference claim. *McPartland Decl., Exh. A, ¶¶ 24, 28; see also Lan Sang v. Ming Hai*, 951 F.Supp.2d 504, 528 (S.D.N.Y. 2013) ("conduct constituting tortious interference with business relations is, by definition, conduct directed ***not at the plaintiff itself***, but at the party with which the plaintiff has or ***seeks to have a relationship***") (*emphasis added*) (*citation omitted*).

Finally, Second Circuit courts have repeatedly held that alleged discriminatory conduct ***does not*** satisfy the "wrongful purpose" or "improper means" element of a claim for tortious interference with contract. *See e.g. Emmons v. City University of New York*, 715 F.Supp.2d 394, 425 (E.D.N.Y. 2010) (alleged discriminatory and retaliatory acts by plaintiff's supervisor were "insufficient to establish independent tortious acts under New York law to sustain a tortious interference claim") (*internal quotations and alteration omitted*); *Kanhoye v. Altana Inc.*, 686 F.Supp.2d 199, 215 (E.D.N.Y. 2009) ("the retaliatory and discriminatory acts [plaintiff] alleges they committed would be insufficient to establish independent tortious acts under New York law to sustain a tortious interference claim") (*internal quotations and alteration omitted*), *citing Baguer v. Spanish Broadcasting System, Inc.*, 2007 WL 2780390, * 4 (S.D.N.Y. September 20, 2007) ("alleged violations of federal, state, and city anti-discrimination laws are not torts under New York law"). As such, plaintiff's assertion that Defendants failed to hire her "because of [her] sex, gender, and pregnancy, and because she had complained of discrimination and retaliation" is

insufficient as a matter of law to support her claim for tortious interference with contract.[6]

*McPartland Decl., Exh. A, ¶ 96.*

**III.**

**PLAINTIFF'S CROSS-MOTION FOR A**
**PRELIMINARY INJUNCTION MUST BE DENIED**

A district court is permitted to enjoin an arbitration only in very limited circumstances, *to wit*, where (i) "the parties have ***not*** entered into a valid and binding arbitration agreement," or (ii) the arbitration "is not otherwise valid, such as when the parties have waived arbitration or when the claims being arbitrated are not within the scope of an arbitration agreement." *Kumaran v. National Futures Association*, 2020 WL 3630389, * 4 (S.D.N.Y. July 2, 2020) (*citation omitted*) (*emphasis added*). Otherwise, "***all other questions*** which grow out of the dispute and bear on its final disposition are presumptively not for the judge, but for an arbitrator, to decide." *Id.* (*emphasis added*) (*internal alterations, quotations, and citations omitted*).

Here, plaintiff does not raise any challenges pertaining to the parties' arbitration provision (which, in fact, has been specifically upheld by Judge Furman of this Court). ECF Doc. No. 45, pp. 12–14; *Denson v. Trump for President, Inc.*, 2018 WL 4568430, at * 2. Plaintiff further does not (and cannot) allege that the Campaign waived its right to arbitrate disputes with her under the Retention Agreement, as the Campaign by this very lawsuit is moving to compel arbitration of her breach of contract and promissory estoppel claims relating to the purported settlement agreement. Finally, because the Campaign's pending breach of contract claims against plaintiff in

---

[6] Plaintiff's tortured attempt to distinguish the *Emmons* and *Baguer* cases decidedly misses the point. ECF Doc. No. 45, pp. 15–16. Discriminatory animus simply cannot form the basis of a tortious interference claim, irrespective of whether the animus is perpetrated by the plaintiff's former or prospective employer. *See Emmons v. City University of New York*, 715 F.Supp.2d at 425; *Kanhoye v. Altana Inc.*, 686 F.Supp.2d at 215.

arbitration arise directly under the Retention Agreement, there can be no assertion that these claims are not arbitrable. *See e.g. Kumaran v. National Futures Association*, 2020 WL 3630389, at * 4 (denying motion to enjoin an arbitration where plaintiff failed to show that the parties "did not agree to arbitrate, that they waived arbitration, or that the claims being arbitrated are not within the scope of the applicable arbitration agreement"). As such, plaintiff fails to demonstrate any of the predicate circumstances required for enjoining an arbitration.

Indeed, plaintiff's request fails on its face because the purported defenses that she seeks to have decided by this Court must be referred to arbitration themselves. Specifically, plaintiff's alleged defenses are that the Campaign's claims in arbitration (i) were "released" as part of the alleged settlement underlying her breach of contract claim and (ii) are barred because the Retention Agreement is not valid or enforceable. However, as set forth in Section I above, there is an issue of arbitrability regarding her breach of contract claim that must be decided by a AAA arbitrator. *See Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S.Ct. at 529–531. Furthermore, any issue relating to the validity and enforceability of the Retention Agreement is arbitrable as a matter of law. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. at 449, 126 S.Ct. at 1210.

As prior courts in this district have held, these arbitrable issues relating to her defenses bar plaintiff from demonstrating a likelihood of success on the merits or irreparable harm as a matter of law. *See e.g. Local One Security Officers Union v. New York University*, 2019 WL 4254026, *4 (S.D.N.Y. September 9, 2019) ("because the CBA in this case reflects the parties' agreement to have an arbitrator decide in the first instance what constitutes an arbitrable 'labor dispute or difference' under the CBA, [plaintiff] has failed to demonstrate a likelihood of success on the merits of its claim that it is entitled to enjoin the challenged arbitration, or to demonstrate serious questions going to the merits of that claim"); *Gwathmey Siegel Kaufman & Associates Architects,*

13

*LLC v. Rales*, 898 F.Supp.2d 610, 617–618 (S.D.N.Y. 2012) (denying motion to enjoin arbitration on the grounds that the claims in the arbitration were time-barred where the "threshold issue of arbitrability," including "the *determination* of timeliness…must be decided first and must be decided by the arbitrator") (*emphasis in original*), *aff'd* 518 Fed.Appx. 20 (2d Cir. 2013).

For these reasons, plaintiff's cross-motion must be denied in its entirety.

## CONCLUSION

Based on the foregoing, Defendants respectfully request that the Court (i) grant the instant motion in its entirety, (ii) deny plaintiff's cross-motion in its entirety, and (iii) grant Defendants such other relief as the Court deems just and proper.

Dated: New York, New York
       August 5, 2020

LAROCCA HORNIK ROSEN
& GREENBERG LLP

By: ___*/s/ Patrick McPartland*___

Patrick McPartland
Jared E. Blumetti
40 Wall Street, 32nd Floor
New York, New York 10005
T: (212) 530-4837, 4831
E: pmcpartland@lhrgb.com
   jblumetti@lhrgb.com

*Attorneys for defendants*
*Donald J. Trump for President, Inc.,*
*Trump for America, Inc.,*
*Sean Spicer, and Reince Priebus*

14