UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
ARLENE DELGADO,

                        Plaintiff,                      Civil Action No.:
                                                            19-cv-11764 (AT)

            -against-

DONALD J. TRUMP FOR PRESIDENT, INC.,
TRUMP FOR AMERICA, INC.,
SEAN SPICER, individually,
REINCE PRIEBUS, individually,
STEPHEN BANNON, individually,

                       Defendants.

------------------------------------------------------------------------X

---

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTIONS TO COMPEL ARBITRATION

---

*On the brief:*
*Patrick McPartland, Esq.*
*Jared E. Blumetti, Esq.*

**LAROCCA HORNIK ROSEN**
**& GREENBERG LLP**
40 Wall Street, 32nd Floor
New York, New York 10005
T: (212) 530-4837, 4831
E: pmcpartland@lhrgb.com
   jblumetti@lhrgb.com

*Attorneys for defendants*
*Donald J. Trump for President, Inc.,*
*Trump for America, Inc.,*
*Sean Spicer, and Reince Priebus*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ………………………………………………………   1

ARGUMENT …………………………………………………………………………   2

   I.   ISSUES OF ARBITRABILITY ARE RESERVED FOR THE
       ARBITRATOR………………………………………………………………   2

   II.  PLAINTIFF'S APPLICATION FOR A PERMANENT INJUNCTION
       MUST BE HEARD AND DETERMINED BY AN ARBITRATOR……   5

   III. PLAINTIFF'S REMAINING ARGUMENTS ARE BASELESS…………   6

CONCLUSION…...……………………………………………………….……………   7

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*1199SEIU United Healthcare Workers East v. PSC Community Services*,
   2021 WL 708584 (S.D.N.Y. February 19, 2021)……………………………   2

*Bridgeton 396 Broadway Fee LLC v. Anthony T. Rinaldi LLC*,
   2020 WL 5983205 (S.D.N.Y. October 8, 2020)………………………………   3

*Buckeye Check Cashing, Inc. v. Cardegna*
   546 U.S. 440, 126 S.Ct. 1204 (2006)…………………………………………   1, 5, 7

*Contec Corp. v. Remote Solution, Co., Ltd.*,
   398 F.3d 205 (2d Cir. 2005)……………………………………………………   2

*Chung Chang v. Warner Bros. Entertainment, Inc.*,
   2019 WL 5304144 (S.D.N.Y. October 21, 2019)……………………………   3

*Daly v. Citigroup Inc.*,
   939 F.3d 415 (2d Cir. 2019)……………………………………………………   4

*DDK Hotels, LLC v. Williams-Sonoma, Inc.*,
   2020 WL 4194196 (E.D.N.Y. July 20, 2020)…………………………………   n.1

*Denson v. Trump for President, Inc.*,
   2018 WL 4568430 (S.D.N.Y. August 30, 2018)………………………………   5

*Denson v. Trump*,
   2021 WL 1198666 (S.D.N.Y. March 30, 2021)………………………………   7

*General Mills, Inc. v. Champion Petfoods USA, Inc.*,
   2020 WL 915824 (S.D.N.Y. February 26, 2020)………………………………   n.1

*Henry Schein, Inc. v. Archer and White Sales, Inc.*,
   139 S.Ct. 524 (2019)……………………………………………………………   passim

*Hidalgo v. Amateur Athletic Union of United States, Inc.*,
   2020 WL 3442029 (S.D.N.Y. June 24, 2020)…………………………………   3

*Jacobs v. U.S. Anti-Doping Agency*,
   2004 WL 5003951 (S.D.N.Y. May 19, 2004)…………………………………   2

*Katsoris v. WME IMG, LLC*,
   237 F.Supp.3d 92 (S.D.N.Y. 2017)……………………………………………   2

*Pierre v. Rochdale Village Inc.*,
    2020 WL 6799635 (E.D.N.Y. November 19, 2020)……………………………… n.1

*Pincaro v. Glassdoor, Inc.*,
    2017 WL 4046317 (S.D.N.Y. September 12, 2017)…………………………… 2, 4

*Simpson v. 1147 Dean, LLC*,
    116 A.D.3d 835, 983 N.Y.S.2d 443 (2d Dept. 2014)…………………………… 7

*Symphony Fabrics Corp. v. Knapel*,
    2008 WL 2332333 (S.D.N.Y. June 2, 2008)………………………………………… 4

*Torre v. Charter Communications, Inc.*,
    2020 WL 1048933 (S.D.N.Y. March 4, 2020)…………………………………… 3

In accordance with the Court's March 26, 2011 Order (ECF Doc. No. 63), defendant Donald J. Trump for President, Inc. (the "Campaign"), by its attorneys, LaRocca Hornik Rosen & Greenberg LLP, respectfully submits this reply memorandum of law in further support of the Campaign's (i) renewed motion, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure and 9 U.S.C. § 1 *et seq.*, to compel arbitration of plaintiff's claims for breach of contract and promissory estoppel (ECF Doc. Nos. 35–37, 50–51, 68) and (ii) further motion, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure and 9 U.S.C. § 1 *et seq.*, to compel arbitration of plaintiff's application for a permanent injunction.  ECF Doc. Nos. 68–71, 77.

## PRELIMINARY STATEMENT

In her opposition papers, plaintiff continues to urge this Court to decide issues of arbitrability regarding her breach of contract and promissory estoppel claims despite the fact that the parties' arbitration agreement, as demonstrated by United States Supreme Court and Second Circuit precedent, wholly delegates the determination of these issues to a AAA arbitrator.  Her circular argument that this Court may make a threshold determination of arbitrability despite this clear and unequivocal delegation of authority to a AAA arbitrator is without merit or authority.

Likewise, plaintiff fails to present any authority to demonstrate why her application for a permanent injunction—which plainly challenges the validity and enforceability of the Retention Agreement as a whole—is not arbitrable under the United States Supreme Court's decision in *Buckeye Check Cashing, Inc. v. Cardegna*.  Indeed, she does not even discuss *Buckeye* in her opposition papers, much less provide any authority to undermine its controlling effect here. Moreover, plaintiff's assertion that the Campaign is collaterally estopped from challenging her permanent injunction application—which is incorrect for numerous reasons on its own—is an

issue for the arbitrator to decide.

Finally, plaintiff's remaining arguments that the Retention Agreement was not validly formed—which the Campaign has already addressed extensively in its prior motion papers—are factually and legally baseless for the various reasons discussed again below.

## ARGUMENT

## I.

### ISSUES OF ARBITRABILITY
### ARE RESERVED FOR THE ARBITRATOR

Second Circuit courts have repeatedly found that issues of arbitrability must be decided by an arbitrator where, as here, the parties broadly agreed to arbitrate in accordance with the AAA Rules. *See e.g. 1199SEIU United Healthcare Workers East v. PSC Community Services*, 2021 WL 708584, * 12 (S.D.N.Y. February 19, 2021) ("[c]ourts in this Circuit have recognized that when parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, such as the AAA Rules, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator") (*internal quotations omitted*), *citing Contec Corp. v. Remote Solution, Co., Ltd.*, 398 F.3d 205, 208 (2d Cir. 2005); *see also Katsoris v. WME IMG, LLC*, 237 F.Supp.3d 92, 105 (S.D.N.Y. 2017) ("the incorporation of the AAA Rules into the [parties' agreement] serves as clear and unmistakable evidence that the [parties] agreed to delegate any questions of arbitrability to the arbitrator"); *Pincaro v. Glassdoor, Inc.*, 2017 WL 4046317, * 7 (S.D.N.Y. September 12, 2017) (arbitrability of plaintiffs' claims was a question for the arbitrator because the parties' broad arbitration provision incorporated by reference the AAA Rules, which in turn commit questions of arbitrability to the arbitrator); *Jacobs v. U.S. Anti-Doping Agency*, 2004 WL 5003951, * 4 (S.D.N.Y. May 19, 2004) (where arbitration provision incorporated the

AAA Rules, "the parties…agreed that all questions regarding the existence, validity, and scope of their arbitration agreement should be decided by a AAA arbitrator rather than by a court").

In fact, the United States Supreme Court expressly held in the *Henry Schein* case that where the parties' arbitration provision delegates issues of arbitrability to an arbitrator, such as here, "a court possesses no power to decide the arbitrability issue…[t]hat is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S.Ct. 524, 529 (2019). Second Circuit courts have consistently followed this precedent, finding that the inclusion of a broad provision wholly delegating issues of arbitrability to an arbitrator "is the end of the inquiry for [the] Court." *Bridgeton 396 Broadway Fee LLC v. Anthony T. Rinaldi LLC*, 2020 WL 5983205, * 3 (S.D.N.Y. October 8, 2020); *see also Hidalgo v. Amateur Athletic Union of United States, Inc.*, 2020 WL 3442029, * 9–10 (S.D.N.Y. June 24, 2020) (applying *Henry Schein* in finding that the determination of whether plaintiff's claims that accrued prior to the commencement of his membership with defendant fell within the scope of the parties' agreement to arbitrate disputes "arising out of or during the term of membership" was reserved for an arbitrator); *Torre v. Charter Communications, Inc.*, 2020 WL 1048933, * 1 (S.D.N.Y. March 4, 2020) (applying *Henry Schein* in finding that the determination of whether plaintiff's claims were "covered or excluded" within the meaning of the parties' agreement to arbitrate was reserved for an arbitrator); *Chung Chang v. Warner Bros. Entertainment, Inc.*, 2019 WL 5304144, * 5 (S.D.N.Y. October 21, 2019) (applying *Henry Schein* in finding that the determination of whether plaintiff's claims pertaining to defendant's alleged retaliatory conduct fell within the scope of the

parties' arbitration agreement was reserved for the arbitrator).[1]

Plaintiff's assertion that her claims cannot be referred to arbitration unless this Court finds that there is "clear and unmistakable" evidence of the parties' intent to arbitrate these claims is meritless and, indeed, turns the concept of arbitrability on its head.  By definition, "arbitrability" *is* the determination of whether a claim falls within the scope of an arbitration provision—a determination which the parties here have "clearly and unmistakably" delegated to a AAA arbitrator.  *See e.g. Pincaro v. Glassdoor, Inc.*, 2017 WL 4046317, at * 5 (arbitrability "is a term of art" covering, among other things, whether an arbitration provision applies to a particular type of controversy).  Moreover, her assertion is inconsistent with the "strong federal policy favoring arbitration" (*Daly v. Citigroup Inc.*, 939 F.3d 415, 421 (2d Cir. 2019)) and the "presumption of arbitrability" that arises where parties broadly agree to arbitrate "any dispute arising under or relating to" an agreement.  *See e.g. Symphony Fabrics Corp. v. Knapel*, 2008 WL 2332333, * 5 (S.D.N.Y. June 2, 2008) (provision providing for arbitration of "any dispute or controversy arising out of or relating to this Agreement" is "precisely the kind of broad arbitration clause that justifies a presumption of arbitrability") (*internal alterations omitted*).

---

[1] The cases cited by plaintiff are either inapposite or follow *Henry Schein*.  *See e.g. General Mills, Inc. v. Champion Petfoods USA, Inc.*, 2020 WL 915824, * 4–5 (S.D.N.Y. February 26, 2020) (finding solely that *Henry Schein* did not impact court's ability to issue preliminary injunctive relief to preserve status quo pending arbitration); *DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 2020 WL 4194196, * 12 (E.D.N.Y. July 20, 2020) (finding delegation clause limited to specific issues); *Pierre v. Rochdale Village Inc.*, 2020 WL 6799635, * 5 (E.D.N.Y. November 19, 2020) (following *Henry Schein* in granting defendants' motion to compel in accordance with parties' broad agreement to arbitrate which delegated issues of arbitrability to arbitrator).  As for plaintiff's continued reliance on the state court's in the Jessica Denson case, the Campaign respectfully refers the Court to the points made in its prior motion papers.  ECF Doc. No. 51, n. 1.

In fact, plaintiff's very assertions that her breach of contract and promissory estoppel claims do not fall within the scope of the Retention Agreement's arbitration provision (including her argument that these claims should be covered by her companion consulting agreement) are all nothing more than issues of arbitrability to be determined by a AAA arbitrator under the parties' agreement.[2]  To the extent plaintiff wishes to raise these issues, she is free to do so before the arbitrator and, if successful, she can pursue her claims in court.  This, however, does nothing to abrogate the parties' delegation of authority to the arbitrator to make these determinations.

## II.

### PLAINTIFF'S APPLICATION FOR A PERMANENT INJUNCTION MUST BE HEARD AND DETERMINED BY AN ARBITRATOR

Plaintiff's application for a permanent injunction—which plaintiff hardly even addresses in her opposition—is likewise arbitrable under United States Supreme Court precedent because it plainly challenges the validity and enforceability of the Agreement as a whole.  *See e.g. Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449, 126 S.Ct. 1204, 1210 (2006) ("a challenge to the validity of [a] contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator"); *Denson v. Trump for President, Inc.*, 2018 WL 4568430, * 1 (S.D.N.Y. August 30, 2018) ("Denson's claim here—that the Agreement '*as a whole* is unenforceable'—plainly 'arises under or relates to the Agreement…[i]t follows that the parties' dispute—including the

---

[2] As plaintiff acknowledges, her breach of contract and promissory estoppel claims are premised on the allegation that the parties previously agreed to "privately" resolve certain disputes pertaining to plaintiff's retention following a confidential mediation (which itself was governed by a confidentiality agreement).  Accordingly, these claims plainly relate to and arise under plaintiff's confidentiality obligations under the Retention Agreement.  ECF Doc. Nos. 36-1, ¶ 40; 36–2, ¶¶ 3–4, 37, pp. 10–12.

threshold question of arbitrability itself—is for an arbitrator, not this Court, to decide") (*internal alterations omitted*).

On this point, Judge Gardephe's March 30, 2021 decision and Arbitrator Ruffino's October 8, 2020 award do nothing to change the fact that this claim is arbitrable under the parties' valid and enforceable arbitration provision.  To the extent plaintiff seeks to assert that either of these decisions provides any collateral estoppel effect in support of her application for a permanent injunction (which they do not), she is free to make those arguments before a AAA arbitrator, who has the sole jurisdiction over these issues as per the Retention Agreement's arbitration provision. ECF Doc. No. 36–3, p. 3.

### III.

### <u>PLAINTIFF'S REMAINING ARGUMENTS ARE BASELESS</u>

Plaintiff's assertion that the Retention Agreement constitutes an invalid "modification" to her companion consulting agreement because it was not countersigned by the Campaign is baseless.  For one thing, the Campaign did, in fact, countersign the Retention Agreement.  *See the Declaration of Jared E. Blumetti, dated May 28, 2021 (the "Blumetti Decl."), Exh. 1.*

Regardless, the Retention Agreement is not a "modification" of the consulting agreement at all—as expressly confirmed on the first page of the consulting agreement where plaintiff acknowledges that she is "simultaneously" executing a "companion agreement" relating to "confidentiality, non-disparagement, non-competition, non-solicitation and protection of intellectual property" (i.e., the Retention Agreement) as a "condition" of the Campaign's "consent to enter into [the consulting agreement]" with her.  ECF Doc. No. 47-1, p. 2.  As plaintiff does not dispute that she signed the Retention Agreement, it is enforceable against her as the party to be

charged.  *See e.g. Simpson v. 1147 Dean, LLC*, 116 A.D.3d 835, 836, 983 N.Y.S.2d 443 (2d Dept. 2014) (a writing is enforceable as a contract "where it identifies the parties, describes the subject matter, states all of the essential terms of an agreement, and is signed by the party to be charged").

Finally, plaintiff's assertion that the Retention Agreement was never validly formed because of "a lack of mutual assent" also fails.  For one thing, there can be no dispute that the arbitration provision itself is valid and enforceable and, here, plaintiff does nothing more than challenge the validity and enforceability of the Retention Agreement's confidentiality and non-disparagement provisions (which, as set forth above, are issues for the arbitrator to determine). *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. at 449, 126 S.Ct. at 1210.  Indeed, her reliance on Judge Gardephe's decision is misplaced for numerous reasons, but, most fundamentally, because Judge Gardephe never made any determination that the Retention Agreement as whole, much less the arbitration provision, was invalid for lack of mutual assent. *See e.g. Denson v. Donald J. Trump for President, Inc.*, 2021 WL 1198666, * 1 (S.D.N.Y. March 30, 2021) (limiting decision to the validity and enforceability of the Retention Agreement's confidentiality and non-disparagement provisions as to Jessica Denson only).

## <u>CONCLUSION</u>

For these reasons (and the reasons set forth in the Campaign's moving brief), the Campaign respectfully requests that the Court grant its motions to compel in their entirety.

Dated: New York, New York
     May 28, 2021

LAROCCA HORNIK ROSEN
& GREENBERG LLP

/s/ *Jared E. Blumetti*

By: _____

Patrick McPartland
Jared E. Blumetti
40 Wall Street, 32nd Floor
New York, New York 10005
T: (212) 530-4837, 4831
E: pmcpartland@lhrgb.com
   jblumetti@lhrgb.com

*Attorneys for defendants*
*Donald J. Trump for President, Inc.,*
*Trump for America, Inc.,*
*Sean Spicer, and Reince Priebus*