```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
ARLENE DELGADO,

                        Plaintiff,

        -against-

DONALD J. TRUMP FOR PRESIDENT, INC.,
TRUMP FOR AMERICA, INC., SEAN SPICER,
individually, REINCE PRIEBUS, individually,
STEPHEN BANNON, individually,

                        Defendants.
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _3/14/2022_

19 Civ. 11764 (AT)

**ORDER**

ANALISA TORRES, District Judge:

In this employment discrimination action, Plaintiff, Arlene Delgado, alleges that Defendants Donald J. Trump for President, Inc.,[1] Trump for America, Inc., Sean Spicer, Reince Priebus, and Stephen Bannon violated her rights under the New York State Human Rights Law, N.Y. Exec. Law § 296 (the "NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8–107 (the "NYCHRL"). See Compl. ¶¶ 69–94, ECF No. 1. Delgado also asserts claims for breach of contract, promissory estoppel, and tortious interference with prospective business relations. See id. ¶¶ 57–68, 95–97. Delgado moves (1) to amend the complaint, ECF No. 84, and (2) for a permanent injunction under Federal Rule of Civil Procedure 65, ECF No. 69. Defendants, except for Stephen Bannon, who has not yet appeared in this action, move for an order compelling arbitration of Delgado's breach of contract and promissory estoppel claims and her request for a permanent injunction. ECF No. 67. For the reasons stated below, Delgado's motion to amend her complaint is GRANTED in part, and DENIED in part, and her motion for a permanent injunction is DENIED without prejudice to

---

[1] Since the filing of the pending motions, Defendant Donald J. Trump for America, Inc., has been dismissed, with prejudice, from this case. ECF No. 92.

renewal after the filing of the amended complaint. Defendants' motion to compel arbitration is DENIED without prejudice to renewal as to the permanent injunction.

## BACKGROUND[2]

Delgado is a "Latina-American and a politically conservative writer, thinker, and commentator" whose work has been featured in publications like The Miami Herald and Breitbart, and who has appeared on Fox News, CNN, and Telemundo. Compl. ¶¶ 10–12. When former President Trump announced his candidacy for president in 2015, Delgado became an early supporter, and claims that at public campaign events Trump "routinely called [Delgado] up on stage" and "singled her out for praise." *Id.* ¶¶ 13, 16, 19. She states that on at least three occasions "Trump expressed that he was impressed" with her and that he "would hire her for the White House if he won." *Id.* ¶ 19. Delgado was formally hired by the campaign in August 2016. *Id.* ¶ 14. Prior to beginning her employment, Delgado signed a "Consulting Agreement." Amend. Compl. ¶ 21, ECF No. 66. The Consulting Agreement did not contain an arbitration clause. *Id.* ¶ 23. A few days after Delgado started working for the campaign, the campaign presented her with a new document, titled "Agreement," and "instructed her to sign it." *Id.* ¶ 25. Delgado asserts that she "was not provided any form of consideration for this new purported agreement," and that the Agreement was not signed by the campaign. *Id.*

On September 1, 2016, Delgado was named the Hispanic Outreach Director of the campaign. Compl. ¶¶ 10, 17, 32. In November 2016, Delgado learned that she and Jason Miller, her supervisor, were expecting a child. *Id.* ¶ 20. In December 2016, Delgado informed Stephen Bannon and Sean Spicer, senior campaign officials, that she was pregnant. *Id.* ¶¶ 7, 9, 23–24. Delgado claims that Spicer told her that the White House is "no place for a new mom" and that

---

[2] The facts are drawn from the complaint and proposed amended complaint. The facts are presumed to be true. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

working there while raising a baby would be "difficult, if not impossible." *Id*. ¶¶ 25–28. Delgado states that Spicer tried to persuade her to focus on other employment options, but she insisted that she still wanted to work at the White House. *Id*. ¶¶ 28–29. On January 20, 2017, the date of Trump's inauguration, Delgado again asked Spicer about employment at the White House but was met with silence. *Id.* ¶ 33.

According to Delgado, Bannon, Spicer, and Reince Priebus, another senior campaign official, stripped her of her campaign responsibilities shortly after she announced her pregnancy. *Id*. ¶¶ 8, 30–32. Delgado further alleges that, in late December 2016 or early January 2017, Defendants orchestrated her removal from the list of incoming White House personnel and convinced various third parties not to hire her. Amend. Compl. ¶¶ 55–56. Delgado posits that, but for the interference of Defendants, "she would have almost certainly been named Deputy Press Secretary" for the Trump administration. *Id*. ¶ 57. Further, she alleges "[t]he only possible motive for Defendants' acts and omissions was [her] sex and gender, pregnancy, and complaints of discrimination—or else pure malevolence." *Id.* ¶ 58.

In March of 2017, Delgado informed Defendants of her intent to file a complaint with the New York City Commission on Human Rights. Compl. ¶ 39. The parties entered into mediation of the possible claims, which resulted in a purported settlement that Delgado alleges Defendants "reneged on" and "refused to perform." *Id.* ¶¶ 41–47. On December 23, 2019, Delgado filed this lawsuit. *See generally id*. On April 7, 2020, Defendants moved for an order dismissing her failure to hire and tortious interference claims, and compelling arbitration of her breach of contract and promissory estoppel claims. ECF No. 35. Delgado cross-moved for a preliminary injunction enjoining arbitration. ECF No. 44. On March 26, 2021, the Court granted Defendants' motion to dismiss, denied their motion to compel arbitration without prejudice to

3

renewal, and denied Delgado's cross-motion to enjoin arbitration as moot. *See generally* Mar. 26, 2021 Order, ECF No. 63. The Court granted Delgado leave to amend her complaint for the limited purpose of re-pleading her tortious interference claim. *Id.* at 8; ECF No. 75.

Delgado filed an amended complaint on April 15, 2021, which, in addition to re-pleading her tortious interference claim, added *prima facie* tort and declaratory judgment claims. *See generally* Amend. Compl. After the Court clarified that the March 26, 2021 Order permitted only the re-pleading of the tortious interference claim, ECF No. 75, Delgado sought leave to file an amended complaint with new claims, ECF No. 84.

The proposed amended complaint adds additional facts relating to the tortious interference claim. Amend. Compl. ¶¶ 54–59. It also adds a cause of action for *prima facie* tort, pleaded in the alternative to the tortious interference claim. *Id.* ¶¶ 131–35. Finally, the proposed amended complaint adds a claim for a judgment declaring that the Agreement is "null and void." *Id.* ¶¶ 136–39.

## DISCUSSION

### I. Leave to Amend Complaint

Plaintiff moves to amend her complaint, arguing that the amendment is not in bad faith, will not prejudice Defendants, and is not futile. *See generally* Pl. Amend Mem., ECF No. 85.

#### a. Legal Standard

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that courts "should freely give leave" to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). Under this liberal standard, a motion for leave to amend should be denied only if the moving party has unduly delayed or acted in bad faith, the opposing party will be unfairly prejudiced if leave is granted, or the proposed amendment is futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962);

4

*McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200–01 (2d Cir. 2007). On a motion to amend a complaint, "[a] court is not required to make a final determination on the merits of a proposed claim or defense, but instead, must only 'satisfy itself that [the claim or defense] is colorable and not frivolous.'" *Rodriguez v. Ridge Pizza Inc.*, No. 16 Civ. 254, 2018 WL 1335358, at *3–4 (E.D.N.Y. Mar. 15, 2018) (quoting *UMG Recordings, Inc. v. Lindor*, No. 05 Civ. 1095, 2006 WL 3335048, at *2 (E.D.N.Y. Nov. 9, 2006)). "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Lucente v. Int'l Bus. Mach. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002).

To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff is not required to provide "detailed factual allegations" in the complaint, but must assert "more than labels and conclusions." *Twombly*, 550 U.S. at 555. Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* Courts must accept the allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *ATSI Commc'ns, Inc.*, 493 F.3d at 98.

  b. Analysis

    i. *Prima Facie* Tort

Under New York law, the elements of a claim for *prima facie* tort are: "(1) intentional infliction of harm, (2) causing special damages, (3) without excuse or justification, (4) by an act or series of acts that would otherwise be lawful." *Curiano v. Suozzi*, 63 N.Y.2d 113, 117 (1984). The general principle behind this tort is that "harm intentionally inflicted is *prima facie* actionable unless justified." *Id.* *Prima facie* tort serves as a catch-all cause of action where no

5

other suitable one exists; it may be pleaded in the alternative to other forms of tort, but if another form of tort is established, the *prima facie* tort claim "disappears." *Id.*

Defendants argue that federal law bars Delgado's *prima facie* tort cause of action because Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, provides the exclusive remedy for federal employees and applicants for federal employment to assert employment discrimination claims. Defs. Amend Opp'n at 4–6, ECF No. 86. However, Delgado was not a federal employee, and Defendants' reliance on cases brought by federal workers, *see, e.g.*, *Lewis v. Snow*, No. 01 Civ. 7785, 2003 WL 22077457, at *1 (S.D.N.Y. Sept. 8, 2003), and by applicants for jobs with federal employers, *see, e.g.*, *Blitzer v. Potter*, No. 03 Civ. 6124, 2005 WL 1107064, at *16–17 (S.D.N.Y. May 6, 2005), is misplaced. Because Delgado is suing non-government entities and individuals, not a federal employer, these cases are inapposite.[3]

Defendants contend that because the *prima facie* tort claim is premised on the same allegations as Plaintiff's discrimination and retaliation claims, it is futile. Defs. Amend Opp'n at 6–7. A *prima facie* tort cause of action may be pleaded in the alternative to other claims. *See Curiano*, 63 N.Y.2d at 117; *Hughes v. Patrolmen's Benevolent Ass'n of City of New York, Inc.*, 850 F.2d 876, 882 (2d Cir. 1988). And, if the other claims succeed, then the *prima facie* tort cause of action will disappear, preventing double recovery. *Curiano*, 63 N.Y.2d at 117. The holdings of the New York Court of Appeals are controlling authority in this area of law. *Comm'r v. Est. of Bosch*, 387 U.S. 456, 465 (1967). This Court shall not adopt the reasoning of

---

[3] Defendants' counsel is again reminded that attorneys presenting motions to the Court are prohibited from submitting frivolous arguments. Fed. R. Civ. P. 11(b)(2) ("By presenting to the court a . . . written motion, . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances[,] . . . the . . . legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law[.]").

cases that contradict that court and, therefore, grants Delgado's request to plead a *prima facie* tort claim in the alternative to her other claims. *See Curiano*, 63 N.Y.2d at 117.

Defendants further allege that the *prima facie* tort claim fails because Delgado did not properly plead disinterested malevolence. Defs. Amend Opp'n at 7–8. To state a claim for a *prima facie* tort, the "sole motivation" for the alleged conduct must be "disinterested malevolence." *See Curiano*, 63 N.Y.2d at 117. Defendants argue that, because Delgado pleaded the *prima facie* tort claim in the alternative, she did not plead that disinterested malevolence, also called intent to harm, was the sole motivation of Defendants' actions. Defs. Amend Opp'n at 7–8. Delgado alleges that, "if [Defendants'] motives are ultimately deemed to be non-discriminatory and non-retaliatory, then Defendants could only have been motivated by 'disinterested malevolence,' or the intent to simply harm" Delgado. Amend. Compl. ¶ 134. Defendants do not posit any other motives for the alleged conduct, *see* Defs. Amend Opp'n at 7–8, 8 n.5, unlike in *Harish v. Goldberg*, No. 14 Civ. 9503, 2016 WL 1181711, at *13–14 (S.D.N.Y. Mar. 25, 2016) (alleging alternative motive of concealing corruption); *Ritter v. Klisivitch*, No. 06 Civ. 5511, 2008 WL 2967627, at *16–17 (S.D.N.Y. July 30, 2008) (pleading demonstrates alternative motive of self-interest); and *G-I Holdings, Inc. v. Baron & Budd*, 179 F. Supp. 2d 233, 251 (S.D.N.Y. 2001) (alleging multiple other motives). Drawing all inferences in Delgado's favor, she has plausibly pleaded that if discrimination and retaliation are eliminated as the reasons for the alleged conduct, the "sole motivation" would necessarily be disinterested malevolence. Thus, Delgado has stated a cause of action for *prima facie* tort.

### ii. Declaratory Judgment

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, allows parties to contract to arbitrate their disputes, and such agreements are "valid, irrevocable, and enforceable, save upon

such grounds as exist at law or in equity for the revocation of any contract." *Id.* § 2.  Arbitration is a creature of contract:  "The threshold question facing any court considering a motion to compel arbitration is . . . whether the parties have indeed agreed to arbitrate."  *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012).  Under the FAA, "threshold questions of arbitrability presumptively should be resolved by the court and not referred to the arbitrator."  *Doctor's Ass'n v. Alemayehu*, 934 F.3d 245, 250 (2d Cir. 2019).  That presumption may be overcome where the parties "clearly and unmistakably" contract to have the arbitrator decide arbitrability; however, "parties may not delegate to the arbitrator the fundamental question of whether they formed the agreement to arbitrate in the first place."  *Id.* at 251 (quoting *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299–301 (2010)).  This is because a contract that has not been "properly formed is not merely an unenforceable contract; it is not a contract at all."  *Id.*  To force parties to arbitrate when they have not properly contracted to arbitrate would be improper.  *See id.*

Delgado argues that the Agreement is "invalid and unenforceable."  *See*, *e.g.*, Pl. Amend Mem. at 18.  She contends that her arguments go to contract formation, specifically, that Defendants never signed the Agreement and that there was no mutual assent.  *Id*. at 1–2; *see also* Pl. Inj. Mem. at 17–22, ECF No. 71.  Defendants contend that the issue of whether the Agreement is "'null and void' . . . is indisputably arbitrable" and should be decided by the arbitrator.  Defs. Amend Opp'n at 2–3.

Therefore, the question is:  do Plaintiff's arguments go to formation or to enforceability and scope?  *Doctor's Ass'n*, 934 F.3d at 251–52.  To answer this question, the Second Circuit instructs courts to look to the law of the state under which the contract was formed, *see id.* at 252, here New York law, Agreement ¶ 8(a), ECF No. 82-1.  Under New York law, "[f]ew

principles are better settled in the law of contracts than the requirement of definiteness. If an agreement is not reasonably certain in its material terms, there can be no legally enforceable contract." *Cobble Hill Nursing Home, Inc. v. Henry and Warren Corp.*, 74 N.Y.2d 475, 482 (1989). Further, "if the parties to an agreement do not intend it to be binding upon them until it is reduced to writing and signed by both of them, they are not bound and may not be held liable until it has been written out and signed." *Kolchins v. Evolution Markets, Inc.*, 31 N.Y.3d 100, 107 (2018) (quoting *Scheck v. Francis*, 26 N.Y.2d 466, 469–470 (1970)).

Delgado alleges that no contract was formed because the terms were insufficiently definite and the Agreement was not signed by both parties. Amend Compl. ¶¶ 24–25, 29–31. Under New York law, issues relating to the requirement of definiteness and the validity of signatures go to contract formation. *See Cobble Hill Nursing Home*, 74 N.Y.2d at 482; *Kolchins*, 31 N.Y.2d at 107. The Court concludes, therefore, that Delgado's arguments relate to formation and should be decided by the Court. On a motion to amend, the Court is not required to make a final decision on this issue, but must only establish that the claim "is colorable and not frivolous." *Rodriguez*, 2018 WL 1335358, at *3–4 (quoting *UMG Recordings, Inc.*, 2006 WL 3335048, at *2). The Court finds that the declaratory judgment claim is not frivolous or futile and Delgado's request for leave to plead this proposed claim is GRANTED.

iii. *Nunc Pro Tunc* Request

Delgado requests that the Court accept the proposed amended complaint *nunc pro tunc*. Pl. Amend Mem. at 2. "*Nunc pro tunc*, Latin for 'now for then,' refers to a court's inherent power to enter an order having retroactive effect." *Iouri v. Ashcroft*, 487 F.3d 76, 87 (2d Cir. 2006). District courts consider this power to be "a far-reaching equitable remedy applied in certain exceptional cases, typically aimed at rectifying any injustice to the parties suffered by

9

them on account of judicial delay." *Id*. (internal quotation marks, citations, and alterations omitted). Here there was no judicial delay, rather Delgado misunderstood the Court's March 26, 2021 Order. The parties will not suffer injustice if the amended complaint is filed after this order is issued. The Court finds that this is not an exceptional case such that *nunc pro tunc* relief is proper.

Accordingly, Delgado's request for leave to amend her complaint is GRANTED in part, and DENIED in part.

## II. Motion for Permanent Injunction

Delgado seeks a permanent injunction prohibiting Defendants from compelling arbitration under the Agreement. ECF No. 69. The Second Circuit has held that courts lack jurisdiction to issue injunctive relief when the complaint does not allege issues related to the request for an injunction and an amended complaint has not been filed. *Cf. Stewart v. U.S. Immigr. & Naturalization Servs.*, 762 F.2d 193, 199 (2d Cir. 1985) (discussing preliminary injunction). Delgado's initial complaint only tangentially pleads facts related to the injunction she seeks. *See generally* Compl. Delgado cites no cases permitting a Court to issue injunctive relief as to matters not actually pleaded.[4] Accordingly, Plaintiff's motion for a permanent injunction is DENIED without prejudice to renewal after the filing of the amended complaint.

---

[4] Plaintiff cites cases that do not support her contention, Pl. Inj. Reply at 4–5, ECF No. 81. *See, e.g.*, *Silverstein v. Penguin Putnam, Inc.*, 368 F.3d 77, 84 (2d Cir. 2004) (copyright case in which statute gives the court jurisdiction to grant temporary and final injunctions); *Conti v. Doe*, No. 17 Civ. 9268, 2019 WL 952281, at *2 n.5 (S.D.N.Y. Feb. 27, 2019) (interpreting claims for "injunction" as a request for an injunction for the pleaded claims); *Kwan v. Schlein*, No. 05 Civ. 459, 2008 WL 4755345, at *4 (S.D.N.Y. Oct. 30, 2008) (construing a claim for a permanent injunction as a request for relief).

III.    Motion to Compel Arbitration

Defendants move for an order compelling Delgado to arbitrate her breach of contract and promissory estoppel claims under the Agreement. ECF No. 67.[5] Delgado argues that the claims are beyond the scope of the Agreement. Pl. Compel Opp'n at 1–2, 7–13, ECF No. 78.

   a.  Legal Standard

Arbitration is "a matter of contract between the parties; it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). Parties may delegate the question of arbitrability to an arbitrator, *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 528 (2019), however, "threshold questions of arbitrability," such as whether the arbitration agreement applies to a particular dispute, "presumptively should be resolved by the court and not referred to the arbitrator," *DKK Hotels, LLC v. Williams-Sonoma, Inc.*, 6 F.4th 308, 317 (2d Cir. 2021) (quoting *Doctor's Assocs.*, 934 F.3d at 250–51). "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *Id.* (quoting *First Options of Chi*, 514 U.S. at 944) (quotation marks omitted). Courts must look to the intent of the parties to ensure that parties are not forced to arbitrate matters that they have not agreed to arbitrate. *Id.* at 317–18. Even if the arbitration agreement incorporates the American Arbitration Association Commercial Arbitration Rules ("AAA Rules"), which provide for the arbitrator to resolve questions of arbitrability, the court may still find that arbitrability has not been delegated "where other aspects of the contract create ambiguity as to

---

[5] Defendants also move to compel arbitration of Plaintiff's claim for a permanent injunction. ECF No. 67. Because the amended complaint has not been filed, this portion of the motion is premature and is DENIED without prejudice to renewal.

11

the parties' intent." *Id.* at 318. In looking to intent, courts "apply ordinary state-law principles that govern the formation of contracts." *First Options if Chi, Inc.*, 514 U.S. at 944.

        b. Analysis

Delgado's breach of contract and promissory estoppel claims arise from Defendants' failure to honor a purported settlement agreement that resulted from private mediation. Compl. ¶¶ 57–68. Defendants argue that the arbitration provision in the Agreement is "broad," and that, because the parties desired confidentiality in the mediation, the claims related to the purported settlement agreement are within the ambit of the Agreement's arbitration provision. *See* Defs. Compel Mem. at 1 n.1, ECF No. 68 (incorporating by reference Defs. Dismiss Mem. at 6–7, ECF No. 37). Defendants also rely on the incorporation of the AAA Rules in the Agreement to argue that issues of arbitrability must be resolved by the arbitrator. Defs. Compel Mem. at 2–4.

The Agreement has five substantive provisions that relate to non-disclosure, non-disparagement, non-compete for services, non-compete for solicitation, and non-compete for intellectual property claims. Agreement ¶¶ 1–5. The arbitration clause states that "any dispute arising under or relating to this agreement may . . . be submitted to binding arbitration in the State of New York pursuant to the [AAA Rules], and you hereby agree to and will not contest such submissions." *Id.* ¶ 8(b). Therefore, by its plain terms, the Agreement is limited to "disputes arising under or relating to" the five areas articulated in the Agreement—not all disputes between the parties. *See id.* Defendants do not dispute that the Agreement is limited, recognizing that Plaintiff's employment discrimination claims are "non-arbitrable claims." Defs. Dismiss Mem. at 2. A state court, interpreting the same agreement, held that the language of the Agreement does not encompass "plaintiff's *affirmative* claims arising out of her employment."

*Denson v. Trump*, No. 101616/2017, 2018 WL 4352827, at *2 (N.Y. Cnty. Sup. Ct. Sept. 7, 2018) (emphasis in original). The Court agrees.

Defendants do not allege that Plaintiff has violated her obligations under the Agreement. Rather, Defendants argue that the claims fall within the scope of the Agreement because the mediation was "private," and, therefore, is related to "plaintiff's contractual confidentiality obligation under the [] Agreement." Defs. Dismiss Mem. at 1–4. That the mediation was conducted in a private manner is not sufficient to bring Delgado's claims within the scope of the Agreement. The excerpted portion of the settlement agreement provided to the Court makes no reference to the Agreement, rather it uses standard language and invokes Federal Rule of Evidence 408. *See* ECF No. 36-2 ¶ 4. The Court rejects Defendants' illogical argument that entering into settlement talks transformed claims that Defendants concede are non-arbitrable into claims that are subject to the Agreement.

Defendants' reliance on the Agreement's incorporation of the AAA Rules does not save their argument. Where, as here, "the arbitration agreement is narrower, vague, or contains exclusionary language suggesting that the parties consented to arbitrate only a limited subset of disputes, incorporation of [the AAA Rules,] that empower an arbitrator to decide issues of arbitrability, standing alone, does not suffice to establish the requisite clear and unmistakable inference of intent to arbitrate arbitrability." *DKK Hotels*, 6 F.4th at 318.

Plaintiff's breach of contract and promissory estoppel claims are not within the scope of the Agreement. Accordingly, Defendants' motion to compel arbitration is DENIED as to those claims.

13

## CONCLUSION

For the reasons stated above, Delgado's motion to amend her complaint is GRANTED in part, and DENIED in part, Delgado's motion for a permanent injunction is DENIED without prejudice to renewal after the amended complaint is filed, and Defendants' motion to compel arbitration is DENIED without prejudice to renewal as to the permanent injunction. Delgado shall re-file the proposed amended complaint, ECF No. 66, by **April 1, 2022**.

The Clerk of Court is directed to terminate the motions at ECF Nos. 67, 69, and 84.

SO ORDERED.

Dated: March 14, 2022
New York, New York

_____
ANALISA TORRES
United States District Judge