

May 3, 2022

Hon. Analisa Torres, U.S. District Judge
U.S. District Court, Southern District of New York
500 Pearl Street, Courtroom 15-D
New York, New York 10007

Re:  *Arlene Delgado v. Donald J. Trump for President, et al.,* No. 19 Civ. 11764

Dear Judge Torres:

This firm represents the above-referenced Plaintiff.  I write per Your Honor's Individual Practice III(a)(i), to respectfully request a pre-motion conference regarding Plaintiff's anticipated motion to enforce, or for summary judgment enforcing, the Parties' prior settlement.

## Material Facts

Per the Complaint (Docket 1) and First Amended Complaint (Docket 94), Plaintiff informed Defendants in March 2017 that she anticipated complaining about their discriminatory employment practices to the New York City Commission on Human Rights (NYCCHR).

The Parties then agreed to mediate Plaintiff's claims with former First Department Justice Betty Weinberg Ellerin. After a full day of mediation on May 10, 2017, Justice Weinberg made a "mediator's proposal" that Defendants pay Plaintiff $1.2 million in exchange for a mutual release of all claims.  During a telephone conference on about June 4, 2017, counsel for all Parties orally agreed to the proposal.  The following day, Plaintiff's counsel e-mailed Defendant's counsel (Marc Kasowitz): "please confirm by immediate return email that your clients agree to settle Ms. Delgado's claims for $1.2 million, as you told me by phone last night.  Once you have confirmed by email, we should, as we discussed, move to documentation of the settlement."  Kasowitz responded several hours later: "confirmed as to amount, need to work out payment and other terms and reduce to a formal signed writing."  Notably, Kasowitz did ***not*** reserve any right not to be bound by the settlement absent a formal written agreement or resolution of any other terms.

Plaintiff, in compliance with the terms of the written agreement, began performance by promptly drafting a full-length settlement document, as well as by abiding by the release and not filing her complaint against Defendants.  During that time, however, Defendants reneged on the settlement, and refused to pay the $1.2 million owed Plaintiff, and also violated the agreed-upon mutual release by initiating a baseless AAA arbitration against Plaintiff – which was dismissed.

## Procedural History

Plaintiff filed this action on December 23, 2019; as indicated above, her Complaint alleged (among other things) that Defendants "entered into a settlement agreement with Plaintiff and then reneged on the agreement and failed to perform their obligations."  Before Defendants responded

to the Complaint, Plaintiff filed a pre-motion letter (similar to this one) on March 12, 2020, seeking to move to enforce the Parties' settlement. (Docket 29.) Defendants then filed their own pre-motion letter on April 7, 2020, seeking to move to compel arbitration of certain of Plaintiff's claims – including those arising out of their failure to honor the settlement agreement, and to dismiss the remaining ones. (*See* Docket 31, 32.) That same day, the Parties filed a stipulation, which was so-ordered by the Court, agreeing that because Defendants intended to move pre-answer to compel arbitration, and Plaintiff intended to cross-move to stay or dismiss such arbitration, her pre-motion letter to enforce the Parties' settlement would be withdrawn without prejudice. (Docket 34.)

Defendants then moved to compel arbitration and to dismiss on April 22, 2020 (Docket 35-37), arguing *inter alia* that Plaintiff's claims concerning their breach of the Parties' prior settlement agreement are arbitrable, "because these 'private' settlement negotiations directly relate to and arise under plaintiff's contractual confidentiality obligations" per the Parties' prior "Retention Agreement." Plaintiff cross-moved to enjoin such arbitration on June 16, 2020. (Docket 44-47.) After multiple briefings on these issues, on March 14, 2022, the Court denied with prejudice Defendants' motion to compel arbitration as to all claims except Plaintiff's permanent injunction claim, which had been denied without prejudice to renew based on Plaintiff's amended Complaint. (Docket 93.) Plaintiff filed her Amended Complaint on March 28, 2022. Like the original Complaint, it alleges that Defendants "entered into a settlement agreement with Plaintiff and then reneged on the agreement and failed to perform their obligations." (Docket 94.) Defendants answered the Amended Complaint on April 11, 2022. (Docket 95.)

## **Argument**

"Under New York law, parties are free to enter into a binding contract without memorializing their agreement in a fully executed document." *Winston v. Mediafare Ent. Corp.*, 777 F.2d 78, 80 (2d Cir. 1985). To determine when a contract is formed, Second Circuit courts must consider: (1) whether there has been an express reservation of the right not to be bound absent another writing; (2) whether there has been partial performance; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type usually committed to writing. *Id.* Moreover, in New York settlements are judicially favored and may not be lightly set aside. *In re Guttenplan*, 222 A.D.2d 255, 256-57 (1st Dep't 1995). "A presumption in favor of enforcement reflects the value that courts place on negotiated settlement agreements." *Oparah v. N.Y.C. Dep't of Educ.*, No. 12 Civ. 8347 (JGK) (SN), 2015 WL 4240733, at *4 (S.D.N.Y. July 10, 2015). So if a court finds that parties reached a settlement, that binds them, "even if a party has a change of heart between the time of the agreement . . . and the time it is reduced to writing." *Elliot v. City of N.Y.*, No. 11 Civ. 7291 (RWS), 2012 WL 3854892, at *2 (S.D.N.Y. Sept. 5, 2012) (internal quotations and citation omitted).

The first *Winston* factor is generally considered the most important. *See Walker v. City of N.Y.*, No. 05 Civ. 04 (JBW) (JMA), 2006 WL 1662702, at *7 (E.D.N.Y. June 15, 2006) (citing cases). But an "express reservation" means exactly that; it must be expressed. Merely because a party's counsel professes a need to "paper the deal" and "confirm the details with our clients," it has not reserved its right not to be bound. *Westwide Winery, Inc. v. SMT Acquisitions, LLC*, 511 F. Supp. 3d 256, 262 (E.D.N.Y. 2021). And the "*Winston* factors" apply to e-mail exchanges between counsel about settlement in particular. *See, e.g., Estate of Brannon v. City of N.Y.*, No. 14 Civ. 2849 (SN), 2015 WL 13746664, at *5 (S.D.N.Y. Oct. 19, 2015), *r & r adopted*, 2016 WL

1047078 (Mar. 10, 2016) (AJN) ("the City's intention to memorialize the agreement in writing does not vitiate the binding power of the e-mail exchange"). So where one party proposes by e-mail to settle a dispute for a specific amount of money and dismissal of all claims with prejudice, and the other side replies that "[w]e have a deal," they have an enforceable settlement agreement. *Scheinmann v. Dykstra*, No. 16 Civ. 5446 (AJP), 2017 WL 1422972, at *1 (S.D.N.Y. Apr. 21, 2017). More particularly, where the parties' counsel have both e-mailed their assent to the defendant paying a particular sum in exchange for the plaintiff releasing all claims, even if one party later adds an additional demand and obtains new counsel who refuses to execute the settlement documents, the prior agreement will still be enforced. *See, e.g.*, *Herz v. Transamerica Life Ins. Co.*, 172 A.D.3d 1336, 1337-38 (2d Dep't 2019).

Here, the Parties' counsel exchanged e-mails clearly agreeing that Plaintiff would release all claims in exchange for Defendants paying her $1.2 million. The *only* details to be worked out were standard non-material terms, including payment logistics. Marc Kasowitz is obviously a sophisticated and experienced attorney (per his own firm's website, he is "recognized as one of the nation's top litigators"), yet he did not reserve the right not to be bound absent a formal written agreement. If Kasowitz intended to reserve Defendants' rights not to be bound absent a formal full-length document, he would have stated so explicitly, but he did not. Plaintiff then performed her end of the bargain – she began drafting a formal settlement document and refrained from pursuing her NYCCHR complaint. As such, the *Winston* factors clearly weigh in favor of an enforceable settlement agreement, and this Court should enforce it.

## Request for Pre-Motion Conference

Although Plaintiff is entitled to enforce her settlement agreement with Defendants, the exact procedural mechanism for doing so (whether a simple "motion to enforce the settlement," or a "pre-discovery summary judgment motion") is unclear, given the unusual procedural history of this case. Further, it is unclear how discovery regarding the remaining claims in the Amended Complaint should be structured and scheduled while such motion is pending.

For these reasons, Plaintiff respectfully requests that the Court schedule a pre-motion conference to discuss Plaintiff's anticipated motion and these related issues.

Respectfully submitted,

DEREK SMITH LAW GROUP, PLLC

BY: /s/ Daniel S. Kirschbaum
Daniel S. Kirschbaum, Esq.
One Penn Plaza, Suite 4905
New York, New York 10119
dsk@dereksmithlaw.com
(212) 587-0760

cc: Counsel of Record (via ECF)