# **<u>EXHIBIT A</u>**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
ARLENE J. DELGADO,

                            Plaintiff,                    Civil Action No.:
                                                         19-cv-11764 (AT) (KHP)
                -against-


DONALD J. TRUMP FOR PRESIDENT, INC., SEAN
SPICER, individually, REINCE PRIEBUS,
individually, and STEPHEN BANNON, individually,

                            Defendants.
------------------------------------------------------------------X

**FIRST REQUEST FOR THE
PRODUCTION OF DOCUMENTS TO PLAINTIFF**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and any applicable

Local Rules of the United States District Court for the Southern District of New York, defendants

Donald J. Trump for President, Inc., Sean Spicer, and Reince Priebus, by their attorneys, LaRocca

Hornik Rosen & Greenberg LLP, demand that plaintiff produce the documents demanded below

within thirty (30) days of service.

**Definitions**

1.    The term "communication" means the transmittal of information (in the form of

facts, ideas, inquiries or otherwise).

2.    The term "document" is defined to be synonymous in meaning and equal in scope

to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P.

34(a)(1)(A).  A draft or non-identical copy is a separate document within the meaning of this term.

3.    The term "person" is defined as any natural person or any legal entity, including,

without limitation, any business or governmental entity or association.

4.    The term "concerning" means relating to, referring to, describing, evidencing, or

constituting.

5.      The term "information" shall be expansively construed and shall include, without limitation, facts, data, opinion, images, impressions, concepts, and formulae.

6.      The term "plaintiff" means plaintiff Arlene J. Delgado, her agents or representatives.

7.      The term "Campaign" means defendant Donald J. Trump for President, Inc. and any of its predecessors, successors, subsidiaries, affiliates, current or former employees or agents.

8.      The term "TFA" means Trump for America, Inc. and any of its predecessors, successors, subsidiaries, affiliates, current or former employees or agents.

9.      The term "Spicer" means defendant Sean Spicer, his agents or representatives.

10.      The term "Priebus" means defendant Reince Priebus, his agents or representatives.

11.      The term "Bannon" means defendant Stephen Bannon, his agents or representatives.

12.      The term "Defendants" collectively refers to the Campaign, TFA, Spicer, Priebus, and Bannon.

13.      The term "Amended Complaint" refers to the "first amended complaint (revised)" filed by plaintiff on March 28, 2022.

14.      The term "Arbitration" refers to the arbitration between the Campaign and plaintiff before the American Arbitration Association under AAA Case Number 01-17-0004-4706.

15.      The term "TFA Settlement" refers to the resolution of claims in this action between plaintiff and TFA, including any written agreement entered between plaintiff and TFA.

16.      The terms "all," "any," and "each" shall each be construed as encompassing any and all.

17.     The connectives "<u>and</u>" and "<u>or</u>" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

18.     The use of the singular form of any word includes the plural and vice versa.

### <u>General Instructions and Directions</u>

For the purposes of responding to this document request, the following instructions shall apply:

1.     By way of this document request, the Campaign, Spicer, and Priebus seek only non-privileged documents and information.  If you assert a privilege as to any document, identify (a) the document including its type (e-mail, correspondence, memorandum, facsimile, etc.), subject matter, custodian, location, and such other information sufficient to identify the document for a subpoena duces tecum or a document request, including where appropriate the author, the addressee and, if not apparent, the relationship between the two; (b) the privilege, and if the privilege is being asserted in connection with a claim or defense governed by state law, the state privilege rule being invoked; (c) the basis for the privilege; and (d) each person who has received a copy of the document.  Fed. R. Civ. P. 26(b)(5).  As used herein, the term "<u>privilege</u>" encompasses the work product doctrine.

2.     If you object to a request, set forth specifically the reason for the objection.

3.     If any document responsive to a request was, but no longer is, in your possession, custody or control, please furnish a description of each such document and indicate the manner and circumstances under which it left your possession, custody or control, and its present whereabouts, if known.

4.     To the extent that there are no documents in your possession, custody or control

that are responsive to a specific request, please specifically state that there are no responsive documents to that request.

## **Document Requests**

1.　　All documents concerning plaintiff's allegation that Defendants unlawfully discriminated against her on the basis of her sex, gender, and pregnancy.

2.　　All documents concerning plaintiff's allegation that Defendants unlawfully retaliated against her for making complaints of discrimination.

3.　　All documents concerning plaintiff's allegation that the Campaign commenced the Arbitration for retaliatory purposes.

4.　　All documents concerning any purported unlawful statements, comments, or other communications concerning plaintiff's sex, gender, or pregnancy made by any of the Defendants.

5.　　All communications between plaintiff and any of the Defendants containing a purportedly unlawful statement, comment, or other communication concerning plaintiff's sex, gender, or pregnancy.

6.　　All communications between any of the Defendants and any third-party containing a purportedly unlawful statement, comment, or other communication concerning plaintiff's sex, gender, or pregnancy.

7.　　All communications between plaintiff and any of the Defendants concerning plaintiff's pregnancy.

8.　　All communications between plaintiff and any of the Defendants concerning any purported complaint of discrimination made by plaintiff.

9.　　All communications between plaintiff and any of the Defendants concerning any purported complaint of retaliation made by plaintiff.

10.     All documents concerning plaintiff's allegation in paragraph 9 of the Amended Complaint that Spicer "was a senior official for the Campaign."

11.     All documents concerning plaintiff's allegation in paragraph 10 of the Amended Complaint that Priebus "was a senior official for the Campaign."

12.     All documents concerning plaintiff's allegation in paragraph 32 of the Amended Complaint that her "counterparts" on the Campaign were Sarah Huckabee Sanders, Boris Epshteyn, and Omarosa Manigault Newman.

13.     All documents concerning plaintiff's purported job performance while working for the Campaign.

14.     All communications between plaintiff and any of the Defendants concerning plaintiff's purported job performance while working for the Campaign.

15.     All documents concerning plaintiff's purported job performance while working for TFA.

16.     All communications between plaintiff and any of the Defendants concerning plaintiff's purported job performance while working for TFA.

17.     All communications between plaintiff and Kellyanne Conway concerning plaintiff's purported job performance or experiences working for the Campaign.

18.     All documents concerning plaintiff's allegation in paragraph 35 of the Amended Complaint that "Donald Trump personally promised [plaintiff] that if he won the election, she would be 'set' in the White House in a prime role."

19.     All communications between plaintiff and any of the Defendants concerning plaintiff's allegation in paragraph 35 of the Amended Complaint that "Donald Trump personally

promised [plaintiff] that if he won the election, she would be 'set' in the White House in a prime role."

20.    All communications between plaintiff and any third-party concerning plaintiff's allegation in paragraph 35 of the Amended Complaint that "Donald Trump personally promised [plaintiff] that if he won the election, she would be 'set' in the White House in a prime role."

21.    All communications between plaintiff and Jason Miller concerning plaintiff's purported prospective employment with the federal government.

22.    All documents concerning plaintiff's allegation in paragraph 36 of the Amended Complaint that Jason Miller "assured [plaintiff] many times that she was 'going in' to the Trump Administration with a White House job."

23.    All communications between plaintiff and any of the Defendants concerning plaintiff's allegation in paragraph 36 of the Amended Complaint that Jason Miller "assured [plaintiff] many times that she was 'going in' to the Trump Administration with a White House job."

24.    All communications between plaintiff and any third-party concerning plaintiff's allegation in paragraph 36 of the Amended Complaint that Jason Miller "assured [plaintiff] many times that she was 'going in' to the Trump Administration with a White House job."

25.    The December 16, 2016 text message from Jason Miller referenced in paragraph 36 of the Amended Complaint.

26.    All documents concerning plaintiff's allegation in paragraph 38 of the Amended Complaint that Jason Miller informed her "that she could not be seen 'waddling around the White House pregnant.'"

27.     All communications between plaintiff and any of the Defendants, including any complaints made by plaintiff to any of the Defendants, concerning plaintiff's allegation in paragraph 38 of the Amended Complaint that Jason Miller informed her "that she could not be seen 'waddling around the White House pregnant.'"

28.     All communications between plaintiff and any third-party concerning plaintiff's allegation in paragraph 38 of the Amended Complaint that Jason Miller informed her "that she could not be seen 'waddling around the White House pregnant.'"

29.     The December 21, 2016 email referenced in paragraph 39 of the Amended Complaint.

30.     All documents concerning plaintiff's allegation in paragraph 40 of the Amended Complaint that "around December 22, 2016, [Jason] Miller raised [plaintiff's] pregnancy during a morning conference call with Priebus and Bannon."

31.     All communications between plaintiff and any of the Defendants, including any complaints made by plaintiff to any of the Defendants, concerning plaintiff's allegation in paragraph 40 of the Amended Complaint that "around December 22, 2016, [Jason] Miller raised [plaintiff's] pregnancy during a morning conference call with Priebus and Bannon."

32.     All communications between plaintiff and any third-party concerning plaintiff's allegation in paragraph 40 of the Amended Complaint that "around December 22, 2016, [Jason] Miller raised [plaintiff's] pregnancy during a morning conference call with Priebus and Bannon."

33.     The "late December 2016" email referenced in paragraph 42 of the Amended Complaint.

34.     The December 22, 2016 and December 24, 2016 "tweets" referenced in paragraph 43 of the Amended Complaint.

35.     All communications between plaintiff and Spicer concerning plaintiff's purported prospective employment with the federal government.

36.     All communications between plaintiff and any person with the federal government regarding her purported prospective employment with the federal government.

37.     All documents concerning any alleged harassment, discrimination, or retaliation by Spicer against plaintiff.

38.     All communications between plaintiff and any of the Defendants, including any purported complaints made by plaintiff to any of the Defendants, concerning any alleged harassment, discrimination, or retaliation by Spicer against plaintiff.

39.     All communications between plaintiff and any third-party concerning any alleged harassment, discrimination, or retaliation by Spicer against plaintiff.

40.     All communications between plaintiff and any of the Defendants concerning the allegation in paragraph 44 of the Amended Complaint that Spicer "discouraged [plaintiff] from pursuing White House employment due to her status as a pregnant woman and a first-time mother."

41.     All communications between plaintiff and any third-party concerning the allegation in paragraph 44 of the Amended Complaint that Spicer "discouraged [plaintiff] from pursuing White House employment due to her status as a pregnant woman and a first-time mother."

42.     All communications between plaintiff and any of the Defendants concerning the allegation in paragraph 45 of the Amended Complaint that Spicer "told [plaintiff] that the White House is 'no place for a new mom'" and "tried persuading [plaintiff] to focus on options outside of the White House."

43.     All communications between plaintiff and any third-party concerning the allegation in paragraph 45 of the Amended Complaint that Spicer "told [plaintiff] that the White House is

'no place for a new mom'" and "tried persuading [plaintiff] to focus on options outside of the White House."

44.     All documents concerning plaintiff's allegation in paragraph 46 of the Amended Complaint that she "insisted that she receive equal treatment to other Campaign employees and that she was seeking a position in the White despite being pregnant."

45.     All communications between plaintiff and any of the Defendants concerning the allegation in paragraph 46 of the Amended Complaint that she "insisted that she receive equal treatment to other Campaign employees and that she was seeking a position in the White despite being pregnant."

46.     All communications between plaintiff and any third-party concerning the allegation in paragraph 46 of the Amended Complaint that she "insisted that she receive equal treatment to other Campaign employees and that she was seeking a position in the White despite being pregnant."

47.     All communications between plaintiff and Priebus concerning plaintiff's prospective employment with the federal government.

48.     All documents concerning any alleged harassment, discrimination, or retaliation by Priebus against plaintiff.

49.     All communications between plaintiff and any of the Defendants, including any purported complaints made by plaintiff to any of the Defendants, concerning any alleged harassment, discrimination, or retaliation by Priebus against plaintiff.

50.     All communications between plaintiff and any third-party concerning any alleged harassment, discrimination, or retaliation by Priebus against plaintiff.

51.     All communications between plaintiff and Bannon concerning plaintiff's purported prospective employment with the federal government.

52.     All documents concerning any alleged harassment, discrimination, or retaliation by Bannon against plaintiff.

53.     All communications between plaintiff and any of the Defendants concerning any alleged harassment, discrimination, or retaliation by Bannon against plaintiff.

54.     All communications between plaintiff and any third-party concerning any alleged harassment, discrimination, or retaliation by Bannon against plaintiff.

55.     All documents concerning plaintiff's allegation in paragraph 47 of the Amended Complaint that she was "stripped" of her job responsibilities in late 2016 and early 2017.

56.     All communications between plaintiff and any of the Defendants concerning plaintiff's allegation in paragraph 47 of the Amended Complaint that she was "stripped" of her job responsibilities in late 2016 and early 2017.

57.     All communications between plaintiff and any third-party concerning plaintiff's allegation in paragraph 47 of the Amended Complaint that she was "stripped" of her job responsibilities in late 2016 and early 2017.

58.     All documents concerning plaintiff's allegation in paragraph 48 of the Amended Complaint that she "immediately and inexplicably stopped receiving e-mails and other communications from the Campaign and TFA."

59.     All communications between plaintiff and any of the Defendants concerning plaintiff's allegation in paragraph 48 of the Amended Complaint that she "immediately and inexplicably stopped receiving e-mails and other communications from the Campaign and TFA."

60. All communications between plaintiff and any third-party concerning plaintiff's allegation in paragraph 48 of the Amended Complaint that she "immediately and inexplicably stopped receiving e-mails and other communications from the Campaign and TFA."

61. All documents concerning plaintiff's allegation in paragraph 49 of the Amended Complaint that she was "excluded from participating in the communications work of the Inauguration in any capacity, even though she was still formally part of the Communications Transition team."

62. All communications between plaintiff and any of the Defendants concerning plaintiff's allegation in paragraph 49 of the Amended Complaint that she was "excluded from participating in the communications work of the Inauguration in any capacity, even though she was still formally part of the Communications Transition team."

63. All communications between plaintiff and any third-party concerning plaintiff's allegation in paragraph 49 of the Amended Complaint that she was "excluded from participating in the communications work of the Inauguration in any capacity, even though she was still formally part of the Communications Transition team."

64. All documents concerning plaintiff's allegation in paragraph 50 of the Amended Complaint that she was "prohibited from making previously scheduled television appearances around the time of the Inauguration" and "excluded from a transition event where her team met with Hispanic leaders."

65. All communications between plaintiff and any of the Defendants concerning plaintiff's allegation in paragraph 50 of the Amended Complaint that she was "prohibited from making previously scheduled television appearances around the time of the Inauguration" and "excluded from a transition event where her team met with Hispanic leaders."

66.     All communications between plaintiff and any third-party concerning plaintiff's allegation in paragraph 50 of the Amended Complaint that she was "prohibited from making previously scheduled television appearances around the time of the Inauguration" and "excluded from a transition event where her team met with Hispanic leaders."

67.     The January 20, 2017 text message referenced in paragraph 51 of the Amended Complaint.

68.     The "follow up" emails referenced in paragraph 51 of the Amended Complaint.

69.     All documents concerning plaintiff's allegation in paragraph 53 of the Amended Complaint that Defendants "actually terminated and/or constructively terminated [plaintiff]…because of her sex, gender, and pregnancy, as well as in retaliation for her complaining of discrimination."

70.     All communications between plaintiff and any of the Defendants concerning plaintiff's allegation in paragraph 53 of the Amended Complaint that Defendants "actually terminated and/or constructively terminated [plaintiff]…because of her sex, gender, and pregnancy, as well as in retaliation for her complaining of discrimination."

71.     All communications between plaintiff and any third-party concerning plaintiff's allegation in paragraph 53 of the Amended Complaint that Defendants "actually terminated and/or constructively terminated [plaintiff]…because of her sex, gender, and pregnancy, as well as in retaliation for her complaining of discrimination."

72.     All communications between any of the Defendants and any employees or agents of the federal government concerning plaintiff's purported prospective employment with the federal government.

73.     All communications between any of the Defendants and any third-party concerning plaintiff's prospective employment with the federal government.

74.     All documents concerning plaintiff's allegation in paragraph 54 of the Amended Complaint that Defendants "prevented [plaintiff] from obtaining employment with the White House and Federal Government."

75.     All communications between plaintiff and any of the Defendants concerning plaintiff's allegation in paragraph 54 of the Amended Complaint that Defendants "prevented [plaintiff] from obtaining employment with the White House and Federal Government."

76.     All communications between plaintiff and any third-party concerning plaintiff's allegation in paragraph 54 of the Amended Complaint that Defendants "prevented [plaintiff] from obtaining employment with the White House and Federal Government."

77.     All documents concerning plaintiff's allegation in paragraph 55 of the Amended Complaint that Defendants "communicated with the Federal Government…and advised the Trump Administration or the Federal Government to remove [plaintiff] from the list of incoming White House personnel and to not hire her."

78.     All communications between plaintiff and any of the Defendants concerning plaintiff's allegation in paragraph 55 of the Amended Complaint that Defendants "communicated with the Federal Government…and advised the Trump Administration or the Federal Government to remove [plaintiff] from the list of incoming White House personnel and to not hire her."

79.     All communications between plaintiff and any third-party concerning plaintiff's allegation in paragraph 55 of the Amended Complaint that Defendants "communicated with the Federal Government…and advised the Trump Administration or the Federal Government to remove [plaintiff] from the list of incoming White House personnel and to not hire her."

80.    All documents concerning plaintiff's allegation in paragraph 56 of the Amended Complaint that as a result of Defendants' purported communications with the federal government, "the United States of America, the General Services Administration, the Executive Office of the President, and/or the Office of Management and Budget did not hire [plaintiff]."

81.    All documents concerning plaintiff's allegation in paragraph 57 of the Amended Complaint that "but for" Defendants' purported "interference with [plaintiff's] attempts to obtain a White House position, she would have almost certainly been named Deputy Press Secretary."

82.    All documents concerning plaintiff's allegation in paragraph 57 of the Amended Complaint that she "would have earned $165,000 in 2017 and $179,700 in each of the following three years."

83.    All documents concerning plaintiff's allegation that "[t]he only possible motive for Defendants' acts and omissions was [plaintiff's] sex and gender, pregnancy, and complaints of discrimination – or else pure malevolence."

84.    All documents concerning plaintiff's allegation in Section E of the Amended Complaint that Defendants "entered into a settlement agreement with plaintiff."

85.    All communications between plaintiff and any of the Defendants concerning plaintiff's allegation in Section E of the Amended Complaint that Defendants "entered into a settlement agreement with plaintiff."

86.    All documents concerning the TFA Settlement, including, without limitation, any written agreement entered between plaintiff and the TFA.

87.    All documents evidencing plaintiff's complete educational and employment background, including, without limitation, any resumes, or curricula vitae.

88.     All documents concerning any unemployment benefits received by plaintiff from January 2017 to the present.

89.     All health care records, including any mental health care records, concerning any treatment plaintiff sought for any mental, physical, or reputational injuries alleged in this action.

90.     All documents concerning each category of damages alleged by plaintiff in this action, including, without limitation, loss of income or benefits, attorneys' fees, punitive damages, costs, damages for any alleged breach of contract, and compensatory damages for any alleged mental, physical, or reputational injuries.

91.     All documents that plaintiff filed with the Equal Employment Opportunity Commission, New York State Division of Human Rights, New York City Division of Human Rights, or any other similar entities, including, without limitation, any charges of discrimination or retaliation against any of the Defendants.

92.     All written or recorded statements made by any third persons concerning the allegations contained in the Amended Complaint.

93.     All documents concerning any employment discrimination proceedings, including, without limitation, litigations, arbitrations, or proceedings before state or federal agencies or military tribunals, in which plaintiff was named as a party or identified as a person who engaged in unlawful discriminatory or harassing acts.

94.     All documents concerning any legal proceedings, including, without limitation, litigations, arbitrations, or proceedings before state or federal agencies or military tribunals, in which plaintiff was named as a party or identified as a person who engaged in any unlawful or harassing acts.

95.     All documents concerning the matter entitled *John de Neufville v. Arlene Delgado*, Case No. 12-8427-FC-04.

96.     All communications between plaintiff and any of the Defendants concerning the matter entitled *John de Neufville v. Arlene Delgado*, Case No. 12-8427-FC-04.

97.     All documents demonstrating that she disclosed to any of the Defendants any of the facts and circumstances underlying the matter entitled *John de Neufville v. Arlene Delgado*, Case No. 12-8427-FC-04 prior to working for the Campaign.

98.     All documents demonstrating that plaintiff was qualified for a position of employment with the federal government.

99.     All documents demonstrating that plaintiff would have been able to pass any necessary background checks in order to obtain a position of employment with the federal government.

100.     All documents concerning any employment (whether on an employee or independent contractor basis) held by plaintiff from January 2017 to the present.

101.     All documents concerning any allegations made by plaintiff against any employers other than the Campaign or TFA (whether she was employed with any such other employers on an employee or independent contractor basis) that she was being discriminated, harassed, or retaliated against on the basis of her sex, gender, or pregnancy.

102.     All documents concerning the termination of plaintiff's employment with any employer from January 2017 to the present (whether plaintiff was employed on an employee or independent contractor basis).

103.     All federal, state, and city income tax returns filed by plaintiff for the tax years 2015 through the present, including all schedules.

104.    All Forms W-2, Forms K-1, Forms-1099 or other similar tax forms evidencing any income earned by plaintiff through employment, as an independent contractor or otherwise, for the tax years 2015 through the present.

105.    All documents concerning plaintiff's employment with any persons (whether on an independent contractor or employee basis) from January 2017 to the present, including (i) Forms W-2, Forms 1099, or other similar tax forms or payroll records demonstrating her compensation; (ii) documents sufficient to identify any medical, dental or other benefits received by plaintiff from the employer; (iii) all written agreements or similar documents setting forth the terms or conditions of plaintiff's employment or retention, including, without limitation, any agreements or documents setting forth her compensation or benefits; and (iv) all documents demonstrating any reason(s) for the termination of her employment or retention, in the event she is no longer employed with or retained by a particular employer.

106.    All documents relied on by plaintiff or referenced in her responses to Defendants' First Set of Interrogatories.

107.    All documents not responsive to any of the foregoing requests which plaintiff intends to introduce into evidence at trial.

The foregoing demands are continuing in nature, and responses to same shall be supplemented or modified to reflect any information and/or documentation that come into plaintiff's possession, custody or control up to the time of trial.

Defendants reserve the right to supplement these demands up to the time of trial.

Dated: New York, New York
        September 15, 2022

LAROCCA HORNIK ROSEN
& GREENBERG LLP

/s/ *Jared E. Blumetti*

By: _____
Patrick McPartland
Jared E. Blumetti

40 Wall Street, 32nd Floor
New York, New York 10005
T: (212) 530-4837, 4831
E: pmcpartland@lhrgb.com
    jblumetti@lhrgb.com

*Attorneys for defendants*
*Donald J. Trump for President, Inc.,*
*Sean Spicer, and Reince Priebus*

18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
ARLENE J. DELGADO,

                                        Plaintiff,                    Civil Action No.:
                                                                      19-cv-11764 (AT) (KHP)
                        -against-

DONALD J. TRUMP FOR PRESIDENT, INC., SEAN
SPICER, individually, REINCE PRIEBUS,
individually, and STEPHEN BANNON, individually,

                                        Defendants.
-------------------------------------------------------------------X

## FIRST DEMAND FOR
## AUTHORIZATIONS TO PLAINTIFF

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and all applicable

Local Rules of the United States District Court for the Southern District of New York, defendants

Donald J. Trump for President, Inc., Sean Spicer, and Reince Priebus, by their attorneys, LaRocca

Hornik Rosen & Greenberg LLP, demand that plaintiff serve upon the undersigned within thirty

(30) days of service the following duly executed and acknowledged written authorizations:

1.      Duly executed authorization(s) to obtain plaintiff's employment or independent

contractor records from any employers with whom plaintiff has been employed or retained since

January 2017, including, (i) Forms W-2, Forms K-1, Forms 1099, or other similar tax forms or

payroll records demonstrating her compensation; (ii) documents sufficient to identify any medical,

dental or other benefits received by plaintiff from the employer; (iii) all written agreements or

similar documents setting forth the terms or conditions of her employment or retention, including,

without limitation, any agreements or documents setting forth her compensation or benefits; and

(iv) all documents demonstrating any reason(s) for the termination of her employment, in the event

she is no longer employed with a particular employer.  **A prepared template authorization is**

**enclosed.**

2.      Duly executed authorization(s) to obtain plaintiff's complete unemployment records from tax years 2017 through the present.

3.      Duly executed authorization(s) to obtain plaintiff's complete records from all collateral source providers.

4.      Duly executed HIPAA compliant authorization(s) to obtain plaintiff's complete records from any mental health care providers with whom she has treated from 2016 through the present.

5.      Duly executed HIPAA compliant authorization(s) to obtain plaintiff's complete medical records from any health care providers with whom plaintiff has treated for any alleged physical, mental, or emotional injuries relating to this action.

Dated: New York, New York
      September 15, 2022

LAROCCA HORNIK ROSEN
& GREENBERG LLP

/s/ *Jared E. Blumetti*

By: _____
Patrick McPartland
Jared E. Blumetti

40 Wall Street, 32nd Floor
New York, New York 10005
T: (212) 530-4837, 4831
E: pmcpartland@lhrgb.com
   jblumetti@lhrgb.com

*Attorneys for defendants*
*Donald J. Trump for President, Inc.,*
*Sean Spicer, and Reince Priebus*

## AUTHORIZATION TO RELEASE EMPLOYMENT
## AND/OR INDEPENDENT CONTRACTOR RECORDS

To:      _____ ("Employer")
         _____
         _____

Re:    Employee/Independent Contractor:        Arlene J. Delgado
       Social Security No.:                     _____
       Date of Birth:                           _____

        PURSUANT TO NEW YORK STATE LAW, authorization is hereby given for you to furnish **LaRocca Hornik Rosen & Greenberg LLP, 40 Wall Street, 32nd Floor, New York, New York 10005** copies of the COMPLETE EMPLOYMENT AND/OR INDEPENDENT CONTRACTOR RECORDS in your possession, custody or control pertaining to Arlene J. Delgado, including, but not limited to, the following:

(i)     Forms W-2, Forms K-1, Forms 1099, or other similar tax forms or payroll records demonstrating her compensation;

(ii)    documents sufficient to identify any medical, dental or other benefits received by plaintiff from the Employer;

(iii)   all written agreements or similar documents setting forth the terms or conditions of her employment or retention, including, without limitation, any agreements or documents setting forth her compensation or benefits; and

(iv)    all documents demonstrating any reason(s) for the termination of her employment, in the event she is no longer employed by Employer.

                                          _____
                                                  Arlene J. Delgado

Sworn to before me this ___
day of _____, 2022


_____
        Notary Public