March 27, 2024

Hon. Magistrate Parker
United State District Court, S.D.N.Y.
500 Pearl Street, Courtroom 17D
New York, NY 10007

RE: *Delgado v. Donald J. Trump for President, et. al.*, 19-cv-11764 - **response to Defendants' motion to compel**
VIA: electronic submission through *pro-se* intake unit

Your Honor,

I am the *pro-se* Plaintiff in the above-mentioned matter. Pursuant to Your Honor's Order, parties are to respond to one another's respective motions to compel, by March 27th. Plaintiff responds to Defendants' March 20, 2024 Motion to Compel, as follows:

**Defendants' Request for Affidavit of Stephanie Grisham**
Defendants request an affidavit that Plaintiff obtained from Stephanie Grisham. Plaintiff already informed Mr. Blumetti, Defendants' counsel, in a phone call earlier this week, that she will provide such *and* even proactively disclosed and informed Mr. Blumetti that she has subsequently obtained other affidavits, as well, which she will provide together. Plaintiff even proactively informed Mr. Blumetti what the affidavits address, as a courtesy. As such, this issue is largely moot.

Plaintiff only has held off momentarily due to the need to first obtain clarification that the Defendants will not disseminate the affidavits (as they are part of Confidential discovery) or discuss such with third parties. This is due to Plaintiff's wish to avoid any harassment against those who graciously provided an affidavit to assist this Court. Plaintiff respectfully requests that such be clarified in the Order entered, and for the Court to enter a date by which she is to produce the affidavits, which she will gladly produce.

**Defendants' Request for VA Job Records**
As Defendants are already aware, Plaintiff (at long last) obtained, in late 2022, a position as a remote-work attorney for the Veterans Administration Board of Appeals, paying approximately $65,000 a year, for which the VA Board hired hundreds of attorneys across the country. She began in this position *in November 2022* (six years after the events at issue in this case, which are from 2016). The training program lasts five months. Due to lack of childcare at the time, Plaintiff

1

was left with no choice but to exit the program three months into the training program (e.g., the child would often appear in ZOOM meetings, etc.), regrettably resigning in February 2023.

Defendants argue, in their Motion to Compel, that Plaintiff's records from this brief stint are relevant to Plaintiff's duty to mitigate damages. Plaintiff, ordinarily, would be inclined to agree (that her employment efforts may be relevant to mitigation of damages) – but for the fact that this is **<u>six years</u> removed *from the incident at issue*** (the events at issue are December 2016 and this is a job Plaintiff started in November 2022).

Defendants cite no caselaw, in New York or otherwise, wherein a defendant-employer was able to point to 'six years later' as relevant for *mitigation* of damages.

To the extent, however, that Defendants seem to concede that the 'damages window' in this case does extend six years and further, as their request seems to indicate, Defendants should certainly stipulate to that, in which case, the VA job records would be relevant. They have not, however, stipulated to such and, until they do, cannot 'have it both ways.'

In sum, Defendants already know where Plaintiff worked; for how long; her compensation (she is happy to provide her W-2); her start and finish dates; and her reason for resigning.

Perhaps most troubling is the fact that ***Defendants made this request yet have never (curiously so) requested the same information regarding Plaintiff's employment with the Trump "American First" PAC, at which Plaintiff was employed from January 1, 2018 – April 30, 2018***. Surely, if the VA records are relevant to mitigation of damages, then the America First employment in 2018 is *certainly* relevant to mitigation of damages. After all, that employment took place only one year after the events at issue -- not six years, as is the VA job. Why have the Defendants never pursued a release of *those* records, or subpoena?  It is because they are aware the reason for the termination from that role was interference from the Campaign (or agents of the Campaign) and do not want to reveal such. But, again, Defendants cannot have it both ways. ***Defendants should join the Plaintiff in the deposition she previously sought of Brian O. Walsh, who***

***led the PAC at the time.*** After all, the reasons behind the conclusion of the employment are relevant to mitigation of damages, according to Defendants' *own* arguments.

Lastly, Defendants argue for *Plaintiff's* records, **all while claiming that <u>their</u> own personnel records** (those of Mr. Priebus and Spicer's time at the RNC, at which they worked during the events at issue in this case) ***should not, however, be released*** – even though *those* records *are* extremely relevant *and* the request is narrowly tailored in terms of time period. The individual Defendants are alleged to have engaged in discriminatory behavior – thus, it is extremely relevant, and proportional to the needs of this case, whether other similarly situated individuals made similar complaints against either of the individual Defendants, provided the window of time is not excessive (and Plaintiff's requested window is not excessive).

Plaintiff humbly suggests to the Court that, it appears, the most equitable solution here would be to allow both sides the personnel records each seeks.

Plaintiff respectfully requests that the Court schedule a 15-minute telephonic conference for each side to be orally heard on such.

Respectfully and humbly submitted,
*s/ Arlene Delgado*
Plaintiff, *pro-se*
