# EXHIBIT B

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

----------------------------:

ARLENE DELGADO,                  : Case No.: 19-cv-11764

              Plaintiff,   :

     v.                          :

DONALD J. TRUMP FOR       : New York, New York

PRESIDENT, INC., et al.,     :

              Defendants.  : January 30, 2024

----------------------------:


TRANSCRIPT AND STATUS CONFERENCE HEARING

BEFORE THE HONORABLE KATHARINE H. PARKER

UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

Plaintiff Pro Se   ARLENE DELGADO
                   1065 SW 8th Street
                   Miami, Florida 33130

For Defendants:    LAROCCA HORNIK ROSEN & GREENBERG
                   BY:  Jared Blumetti, Esq.
                   40 Wall Street - 32nd Floor
                   New York, NY 10005


Proceedings recorded by electronic sound recording;
Transcript produced by transcription service

AMM TRANSCRIPTION SERVICE - 631.334.1445

THE DEPUTY CLERK:  19-cv-11764; Delgado v. Trump For President.  The Honorable Katharine H. Parker presiding.

Beginning with the plaintiff, please state your name for the record.

MS. DELGADO:  Arlene Delgado.

THE DEPUTY CLERK:  Thank you.

And counsel for the defendant, please make your appearance for the record..

MR. BLUMETTI:  Jared Blumetti of LaRocca, Hornik Rosen & Greenberg.

THE COURT:  Okay.  Good afternoon.

Before we get started, just a few preliminaries.  Because we are on the phone, I ask that you keep your phones on mute unless you are speaking to eliminate the background noise.

Also, I ask that you state your name before speaking for clarity of the record.  I'm making a recording of this conference so that you can order a transcript if you would like.

Also, I remind you that the Court's conference line is open to the press and public on a listen-only basis, and that court rules prohibit others from recording and rebroadcasting court proceedings, including this one.  Violations of this

rule may result in sanctions.

All right.  We have a couple of things to discuss at today's conference.  First, plaintiff has now provided her address and submitted a letter requesting extension of discovery deadlines.

As I understand the request, Ms. Delgado, you would like to take the deposition of Reince Priebus, the 30(b)(6) deposition that had been discussed.  And there are two third parties who you believe are necessary, who have necessary information, relevant information to the case, Eric Trump and Brad Parscale, who you would like to depose, and that you are requesting an extension until April 9 for this; is that correct?

MS. DELGADO:  Not entirely, Your Honor.  I would like to, at some point when we get to that, address the issue of a broader number of third-party depositions that need to be taken.

I recall in your December 19th order, Your Honor, you stated that because my prior counsel had not, by November 14th -- the deadline Your Honor had set in your November 2nd order -- had not by November 14th, provided Your Honor with a list of the third-party deponents, which had already been provided in May, but provided to Your Honor again a

list of the third-party deponents that he wished to depose, and why those third parties needed to be deposed.  Because he didn't do that by November 14th -- you stated in your December 19th order -- now, those third-party depositions would not be allowed.

What I'm asking is for I to not be held liable for my former counsel's error, and I do agree with Your Honor, that was an error on his part, that I be allowed to submit that list that he should have been submitting on November 14th so that Your Honor may consider the list of the depositions and which ones Your Honor would like to approve.

THE COURT:  So all discovery has to be both relevant and proportional to the needs of the case, and that includes third-party discovery.  It's the Court's job to keep cases moving along so that they can get resolved in a timely manner.

I understand your desire to take third-party depositions.  I think what I had previously communicated is that if there was going to be any extension of time to take third-party discovery, that I understood what the scope was that was requested and why such third-party discovery was both relevant and proportional to the needs of the

case, in accordance with Rule 26 requirements.  And so that's what I had wanted to understand and did not get that explanation.

MS. DELGADO:  I understand.

THE COURT:  So right now let's talk about just Eric Trump and Brad Parscale as the third-party deponents.

Ms. Delgado, what kind of information do you expect that they will have that is relevant and proportional to the needs of the case?  And then when do you anticipate that you would be able to serve the subpoenas and depose them?

MS. DELGADO:  I had already spoken, Your Honor, and my prior counsel had already spoken as well as I, with Mr. Parscale's attorney, Stanley Woodward, and they had agreed his deposition is relevant, and we had been discussing his deposition and scheduling that.  Mr. Woodward abruptly cut off that communication in September when I tried to proceed pro se, essentially telling me in an e-mail, let me know when you have an attorney, and I'll just communicate with them about the deposition scheduling.

Mr. Parscale is relevant in a multitude of arenas, including the retaliation element, the fact

that he worked with me as a senior advisor and was familiar with my work, and a few other elements that are escaping my mind. But I would be able to certainly provide Your Honor with a paragraph, a short paragraph, explaining Mr. Parscale's relevancy.

Eric Trump was also the individual who represented the campaign essentially in discussions that we had in October of 2017, I believe it was, when he offered me a job to either go to the PAC or back to the campaign in exchange for not pursuing the lawsuit at the time, which is also part of the retaliation element. And again, other aspects that are escaping my mind right at this moment, but they are most certainly relevant.

THE COURT: Okay. So I don't think I need a written submission. I just need to understand, in general, what kind of information you think that they have that's relevant. And you've answered that question.

How long do you anticipate -- depositions are normally limited to seven hours, but not all depositions take a full day. So my question to you is, do you anticipate these to be full-day depositions or part-day depositions?

MS. DELGADO: No, part-day by Zoom. I don't anticipate any of them will be more than a couple of hours, maybe two hours. Even Mr. Spicer's deposition, when my prior counsel took that deposition in June, even though Mr. Spicer is a party, I believe even that deposition, which I observed quietly on Zoom, lasted, I believe, only about three hours. And he's a party.

THE COURT: Okay.

MS. DELGADO: So these are very quick depositions. Each deposition, obviously, as you're aware, costs me money with the court reporter that needs to be present and the videographer. So this Court can be assured that I do not seek to depose anyone who isn't distinctly and clearly relevant, because each carries a financial cost to me.

THE COURT: Okay. And in terms of the previous deposition, there had been a date scheduled for that. That was then put off. And was there a 30(b)(6) witness? I guess this is a question for Mr. Blumetti. Who were you going to identify as a 30(b)(6) witness?

MR. BLUMETTI: Judge, this is Mr. Blumetti. We never got there. I was in the middle of identifying that witness, and, you know, we didn't

really have anybody on hand.  And then Mr. Odle filed his motion to withdraw, as we discussed at the last December conference.

So, you know, as far as we were concerned, before two days ago, there was just two items of discovery remaining here.  You know, Ms. Delgado opposing our motion to compel by January 24th, which she did not, and conducting Mr. Priebus's deposition by February 15th.  We have him on the books for February 8th, and I think that date is going forward.

But beyond that, you know, we would reiterate that we don't think that Ms. Delgado is entitled to any more discovery, as Your Honor already ordered.

THE COURT:  Okay.

MR. BLUMETTI:  She didn't have good cause before.

THE COURT:  So hang on, let me stop you for a second.

February 8th is the date you have for Priebus?

MR. BLUMETTI:  Correct.

THE COURT:  Okay.  Good.

So with respect to February 8th, that

deposition should go forward on that date, and I'm not going to allow either side to cancel it without Court permission.

That's been one of the problems in this case, that the parties, the attorneys, put off depositions without letting the Court know that that was happening until after the fact, and that disrupts the timeline.

And so, again, I don't think I got an answer to my question, Ms. Delgado, about the time frame. When do you think you would be in a position within -- you know, would it be February and March, you would be able to take the deposition -- the 30(b)(6) deposition, and these two other people that you've identified, Parscale and Eric Trump?

MS. DELGADO: It's more than the two others, Your Honor. There are several others. I think about five others in total, which would also be probably no more than an hour deposition. And I'd like the opportunity to submit that list to Your Honor with the justification for each.

But in terms of your question as to when all of those -- which are about, I believe, six in total or seven third-party depositions and the 30(b)(6) -- could be done, realistically, I'm of the

same mindset as my former counsel who, when he came in, he was asking for March 1st. And he came in October 30th. So he was estimating four months. I know we've had a delay, so I'm not asking for four months from this point. But if we could do through, say, April 15th, just because it's a date that sticks out in everyone's mind, I think that would be sufficient. Also, because these are individuals that are sometimes hard to get ahold of and can be difficult to schedule with because they're very busy and have erratic schedules.

So if I could have that period, I believe that's actually less than what Mr. Odle, being an attorney, even envisioned and told the Court he would need. He estimated four months. I'm not asking for that. If we could just do, like, two and change, I could get everything done then.

THE COURT: Okay.

So, I guess, Mr. Blumetti, I've heard your position. You're opposed to this, and you're opposed to allowing additional third-party depositions; is that correct? Is that your position?

MR. BLUMETTI: Correct, Judge. We've been down this road a few times already. Yeah, we oppose

AMM TRANSCRIPTION SERVICE - 631.334.1445

any further discovery beyond that, what was already baked into Your Honor's December 18th order.

We opposed that application in writing on November 17th, and, you know, we laid out the legal reasons why there was no good cause here. You know, we found that there was a lack of good cause before Mr. Odle even came into the fold. So we still don't think that there's any good cause here for a further extension of discovery. We think this is necessarily a reconsideration of Your Honor's order.

To the extent it's being entertained by the Court, we would like the opportunity to respond in writing.

THE COURT: Okay. I'm going to reject the request for a response in writing. I am going to extend the discovery schedule to April 15. I find that plaintiff has provided good cause in that she has explained that she was not advised by her former lawyer of the Court granting his withdrawal, and that the scheduled deposition of Priebus was canceled by counsel without even letting the Court know and without the Court having even considered or decided any motion for withdrawal. And that's affected the schedule, and that has happened a number of times, although it's not -- the plaintiff

is entitled to get some core discovery that was always contemplated.  So I am going to extend the discovery deadline.

Like I said, the February 8th date has to stick, unless you get permission from the Court to cancel that date.  So there can be no last minute cancellation.  You have to do two -- my rules require two business days in advance of any extension request, unless there's some kind of emergency, obviously.

But let's talk about the 30(b)(6) deposition, because I want to set an actual date with the same rule.

So when is there a date that counsel for defendants is available, and then we'll -- or, Ms. Delgado, are you generally free, or are there certain days that are better than others for you?

MS. DELGADO:  For the taking of the 30(b)(6)?

THE COURT:  Yes.

MS. DELGADO:  Generally, this month is a little tight, but next month, I'm generally open. My son has -- even during my son's spring break, I could probably move things around.

THE COURT:  So you're saying you can't take

another deposition until March?

MS. DELGADO:  No, I can.  I'm available on February 21st through 29th.  I had also mentioned, I believe, in one of the filings.  I thought just given the option --

THE COURT:  Okay.

MS. DELGADO:  -- because I still need to identify who it is, and then I need to prepare for it.

THE COURT:  Sure.

MS. DELGADO:  Given the option, I would prefer March.

THE COURT:  Okay, so the 30(b)(6) deposition shall occur on a date between February 20 -- you know, on a date between February 21st through February 29.

I'm going to direct the defendants to identify the 30(b)(6) witness by a week from today.  The 30(b)(6) notice was already served, and so I assume that's the same 30(b)(6) notice that will be utilized; is that correct, Ms. Delgado?

MS. DELGADO:  Yes.  Yes.  Sorry, I was checking if I was on mute.  Yes, to the extent there is any modification I need to make, since it was drafted by Mr. Odle and not myself, is there a time

by which you would like that revision?

THE COURT: Well, you don't serve it on the Court, you serve it on the other side.

MS. DELGADO: Right. Yes.

THE COURT: So that would need to be -- if there's any other subjects that need to be added, I don't know what they would be, but you should do that by one week from today.

MS. DELGADO: Okay.

THE COURT: And serve that on Mr. Blumetti.

And, Mr. Blumetti, you need to identify a date that is available, February 21st through February 29. One date. It will occur then. And by -- let's see here -- by February -- hang on a second. By February 12, I'd like a status letter telling me who has been identified as that witness, and what date has been set by the parties in that week.

MS. DELGADO: Okay.

THE COURT: Because that date is going to have to stick.

Now, with respect to Parscale and Eric Trump, I'm going to permit you to send a subpoena to them to have a deposition for a date in March. You should serve those subpoenas within two weeks. And

AMM TRANSCRIPTION SERVICE - 631.334.1445

I'm going to schedule another call at the end of February to learn what dates have been scheduled for those two witnesses, but they must occur in March.

Now, to the extent there are other third-party witnesses that you wish to subpoena, Ms. Delgado, it may be that you don't actually need to subpoena all of them, because the 30(b)(6) witness may provide some of the answers that you're seeking. They may provide some of the information.  Sometimes that happens.

MS. DELGADO:  Yes, Your Honor.

THE COURT:  So you may not actually need five people.  To me, that seems like a large number of non-party subpoenas.  And so I'd like you to think about what is truly necessary after you get information from the 30(b)(6) witness and the other witnesses, all right?  And then what you can do is you can provide a letter to the Court.  And maybe after considering what's necessary and not redundant, you can write a letter to the Court, and I will consider that application.

Now, let's move next to the defendant's motion to compel.  As I understand it, Mr. Blumetti, the type of information that you're seeking is information from a family court matter; is that

correct?

MR. BLUMETTI:  Correct, Judge.  The plaintiff's testimony from that matter, which we believe bears directly on mitigation and other issues.

THE COURT:  On mitigation?

MR. BLUMETTI:  Correct.

THE COURT:  But didn't you take Ms. Delgado's deposition?

MR. BLUMETTI:  I did.  And also the deposition testimony that she gave, we believe is materially contradictory to the deposition testimony that she gave in the family court proceeding.

THE COURT:  On the topic of mitigation?

MR. BLUMETTI:  No, on the topic of her relationship with Mr. Miller.  But we also believe she testified in our deposition --

THE COURT:  Well, how is her relationship with Mr. Miller relevant to this case?

MR. BLUMETTI:  Because we --

THE COURT:  How is that relevant?  This case concerns allegations of pregnancy discrimination and destructive discharge on the basis of pregnancy.  It is not a claim of sexual harassment.  So how is any testimony regarding Ms.

Delgado's relationship with Jason Miller relevant to the issue of pregnancy discrimination by the campaign?

MR. BLUMETTI:  It's relevant, Judge, because at her deposition in this matter, Ms. Delgado described her relationship with Mr. Miller for the first time as something other than a consensual and voluntary sexual relationship.  She didn't plead any allegations in her complaint that pertain to a quid pro quo sexual relationship or anything other than a voluntary consensual relationship.

We believe that in her deposition testimony in the family court proceeding, she gave testimony that is inconsistent with the deposition testimony that she gave in this action.

And for the reasons we --

THE COURT:  But, again, why is that even admissible?

MR. BLUMETTI:  That is relevant, Judge, because --

THE COURT:  Why is that even relevant to the issue of whether the campaign had a problem with Ms. Delgado being pregnant or not?

MR. BLUMETTI:  The issue is relevant

because the campaign could be held strictly liable for unwanted gender-based conduct on the part of Mr. Miller, and we would argue that it was not unwanted. And that family court proceeding --

THE COURT: That's not the claim in this case.

MS. DELGADO: Exactly.

MR. BLUMETTI: There was certainly a gender-based claim.

THE COURT: That's not the claim in this case.

MR. BLUMETTI: Ms. Delgado is certainly making a gender discrimination claim in this case -- Ms. Delgado, stop me if I'm wrong -- based on the conduct of Mr. Miller.

THE COURT: Ms. Delgado, are you claiming that Mr. Miller was a decision-maker and discriminating against you because of your pregnancy?

MS. DELGADO: No. Mr. Miller is not a named defendant in this case. Sexual harassment is not a pled claim in this case. This is a very simple case. It was structured that way for a reason. We're focused on the pregnancy discrimination in this case.

What Mr. Blumetti and the defendants want to do is complicate this and muddy the waters by now trying the sexual misconduct issue within this case. That is not this case. It's not an issue in this case. It's not a claim in this case. And to now start involving the family law case -- and by the way, he's incorrect that this is the first time -- when he says, this is the first time during my deposition in June that I've alleged Mr. Miller's sexual misconduct, no, it's not. That has been stated for years.

Regardless, Your Honor is completely correct that this has nothing to do with the matter. They want it both ways. They get to avoid liability because sexual harassment is not pled in this case, and Mr. Miller is not a named defendant, but they want to try that issue nonetheless, even though they have no liability or any risk on that, because it's not a claim in the case.

So I just don't --

THE COURT: Yeah, okay.

Mr. Blumetti, there's a totally separate case in state court. This case is not a vehicle to get discovery in another case. And the only comments attributable to Mr. Miller in this case

related to -- I can't remember exactly what was in the complaint, but something about pregnancy and that the -- something about the White House maybe not being a place for a pregnant woman, something of that sort was alleged.

And so that's the gender-based discrimination alleged here.  It's not sexual harassment.  So I --

MR. BLUMETTI:  You understood from Ms. Delgado's deposition testimony that it certainly was.  But to the extent that she is not proceeding with a sexual harassment claim or gender-based claim against Mr. Miller, you know, strict liability insofar as the campaign is concerned, based on that conduct, then we would agree that the discovery would not be relevant for that purpose.  But, you know, we were under the impression that Ms. Delgado was pursuing that gender-based claim based on those events.

THE COURT:  Yeah.  Ms. Delgado, speak now or forever hold your -- you're not asserting sexual harassment in this case; is that correct?

MS. DELGADO:  Sexual harassment is not one of the pled issues in this case.

I don't want to -- I don't know what -- I

AMM TRANSCRIPTION SERVICE - 631.334.1445

don't want to use the word "trickery," but what Mr. Blumetti is trying to get at with the question he just posed for me to answer on the spot, I'd have to go back and review what phrasing he's just used, but no, Mr. Miller is not a defendant in this case, and sexual harassment is not one of the claims. You can go back and look at the complaint in this case specifically.

THE COURT: Right. Okay. All right.

So it's now stated on the record --

MR. BLUMETTI: Judge, if I could just be heard on one more issue?

THE COURT: -- Mr. Blumetti.

So what's been stated on the record, and just to be clear, to cabin the claims in this matter, it's a pregnancy discrimination claim and hostile work environment based on pregnancy. Of course, pregnancy is a gender-based claim because women are the ones, typically, who are pregnant.

MS. DELGADO: Correct.

THE COURT: But it's not based on alleged sexual harassment by Miller against Delgado. That's the subject of a separate state claim, as I understand it.

And so I don't believe that the documents

that you're seeking in this case are relevant from the family court.

MR. BLUMETTI:  There is another prong to the motion, Judge.

THE COURT:  Go ahead.

MR. BLUMETTI:  There is another prong to the motion.  It's also with respect to the loss-of-earnings claim.

Ms. Delgado exchanged a Rule 26 exchange last year.  She's alleging more than $20 million in purported loss of earnings for not getting a position with the Trump administration.  She admitted at her deposition in this matter, in this action, that she did give testimony in the family court proceeding regarding her employability after she left the campaign, your know, her ability to be employed, her earning capacity, all of that.  That is certainly relevant in this case, you know, to the extent that her testimony --

THE COURT:  But why isn't it -- why do you have reason to believe that that testimony differs?

MR. BLUMETTI:  Because there's public orders that we've seen on the family court proceeding that are in the public domain that discuss about the fact that Ms. Delgado took a

AMM TRANSCRIPTION SERVICE - 631.334.1445

position that she was essentially unemployable following the campaign, and that she, you know, didn't really do what she said she did in this matter, in her deposition in this matter, to remain employed.

MS. DELGADO:  Sorry, I'm not following along.

THE COURT:  How is that -- I'm not sure how that -- the claim here, the loss of earnings, as I understand it, is premised on Ms. Delgado's contention that but for the pregnancy discrimination, she would have gotten a job in the White House and would have earned at the White House, and subsequently had greater earnings in some sort of public or press media role.

MR. BLUMETTI:  Correct, and we understand that there has been some --

THE COURT:  Is that correct, Ms. Delgado? Do I understand this contention correctly?

MS. DELGADO:  Yes, Your Honor.  Thank you.

THE COURT:  Okay.  And so, Ms. Delgado, did you testify in the family matter, the family court matter, about your efforts to find work after you left the campaign?

MS. DELGADO:  There's probably been

AMM TRANSCRIPTION SERVICE - 631.334.1445

questions about that, maybe in a deposition, but no different than what I say publicly, or Mr. Blumetti could or did ask me about in the deposition he took of me.

MR. BLUMETTI:  And that's where we have a big disagreement, Judge.

THE COURT:  Okay.

So, Ms. Delgado, you did answer some questions related to efforts you made to find work and any employment after the campaign in the family court matter; is that correct?

MS. DELGADO:  You mean after, like immediately after, or...

THE COURT:  At any time after.

MS. DELGADO:  Because I've applied for jobs and not received any, is what I've said.  I've applied for numerous jobs, and I don't receive any, which only supports my claims in this case.

If Mr. Blumetti wants that --

THE COURT:  My question -- I'm just trying to figure out -- I'm just trying to understand what the testimony was concerning, not what it was specifically, but was there, in fact, deposition testimony under oath about efforts to find employment after the campaign?  Was there testimony

about that in the family court action?

MS. DELGADO:  Yeah, I believe in October of last year, they had asked me if I had applied for jobs.  And I talked about how I had applied for jobs at Amazon, et cetera, and I do not receive any callbacks.  Testimony of that nature, that I recall.

THE COURT:  Okay.

And so, Mr. Blumetti, as I understand your application that you submitted, you believe that that is relevant testimony concerning mitigation, and that --

MR. BLUMETTI:  Yes.

THE COURT:  -- the extent that Ms. Delgado took any differing position in the family court matter, that would be relevant on the issue of mitigation.

MR. BLUMETTI:  We have reason to believe that she did take a different position.  There was a finding in a public decision that I've seen before where the judge found, based on Ms. Delgado's testimony, that her attempts to find other employment were -- I don't remember the right words -- but not genuine, not legitimate.  That is -- certainly goes to the heart of mitigation, Judge.

THE COURT: Hold on. Hang on.

Mr. Blumetti, why do you need testimony if you have a finding, a public finding that says that? Why do you need the testimony? Why would --

MR. BLUMETTI: Well, because I would like to find -- I would like to see what Ms. Delgado said that gave rise to that finding.

MS. DELGADO: I could clear this up right now. I think Mr. Blumetti will be disappointed, but the judge -- what he's referring to is the judge, I think, said something when I was asked to produce the applications of the jobs to which I've applied.

I explained that these days, as Mr. Blumetti is aware, and as Your Honor also I'm sure is aware, you don't apply like you did in, you know, in the 1990s with a fax. You don't have a copy of your job application. You just get an e-mail back saying, thank you for your submission for Amazon corporate counsel or whatever it may be.

He found that not believable. Well, I have a PDF I subsequently created and offered to supply to the Court of over 100 of those e-mails saying, thank you for your application to Starbucks, or whatever it may be.

So the finding from the judge is pointless.

AMM TRANSCRIPTION SERVICE - 631.334.1445

It's baseless.  It won't help either side.  It's frankly irrelevant.  He was simply stating that he didn't find my position credible simply because I couldn't produce the actual applications, you know, with my name on it as if this were 1997.

THE COURT:  Okay.  So if --

MS. DELGADO:  I'm not going to provide Mr. Blumetti the --

THE COURT:  If you created such a PDF, that should be provided to Mr. Blumetti in this matter.

But I do find that there is some relevance under the broad definition of relevance under Rule 26, that solely portions related to mitigation should be turned over from that family court deposition.  What that means is only the questions and answers pertaining to your job search, nothing else.  Everything else would have to be redacted and not produced in this case, but just questions about what your job search was.  That is relevant to the issue of mitigation.

So I'm going to direct you to look through that transcript, Ms. Delgado, and I'm going to direct you to produce only those questions and answers.  The pages that are -- I don't know what pages they are, or how many pages they cover, but

only those that relate to questions about your job search and earnings after leaving the campaign. That's it.  Nothing else.

So everything else can just be blacked out if it's on the same page.  But maybe they're in -- maybe those questions are in, you know, a discrete set of pages of the transcript.  I don't know what the questions were, but just that section.  Nothing else.  Okay.

MS. DELGADO:  If I have that transcript, I'll look for it.  I usually can't afford the transcript.  That was from October of last year, but if I have it, I'll turn it over.  I'm certainly happy to turn over the PDF I created of the dozens and dozens of jobs to which I've applied.

THE COURT:  Yes, you should turn that over as well, because that's also relevant to the issue of mitigation.  Okay.

MS. DELGADO:  And if I may, Your Honor --

MR. BLUMETTI:  And I believe Ms. Delgado testified at her deposition --

Go ahead, Ms. Delgado.

THE COURT:  Mr. Blumetti, is there anything else?

MR. BLUMETTI:  I was just saying, to answer

the point on possession of the transcript, I believe Ms. Delgado testified at her deposition in this action that she has possession of certain transcripts and her attorney has possession of the remainder.

THE COURT: Okay. Well, if your attorney has -- if your attorney or former attorney has possession of the transcript, then you have possession of the transcript, Ms. Delgado. So they'll have to provide that to you. But why don't you take a look and see if you have it in the first instance.

MS. DELGADO: Right. Just to be clear, it's a six-year-long case. When I say I have some transcripts, there have been many, many, many hearings. Mr. Blumetti never asked for a specific -- he's welcome to purchase it.

THE COURT: The only thing that I am directing you to turn over is those portions of the deposition testimony regarding your employment search and employment post-campaign.

Okay. Mr. Blumetti, I think that addresses the issues in your letter in terms of what was outstanding; is that correct?

MR. BLUMETTI: Correct, Judge.

The other prong was the text messages with Mr. Miller. But again, to the extent that Ms. Delgado is not pursuing that claim, as we discussed earlier, you know, we would agree that those are also --

THE COURT: Those are not relevant in this action. Okay. And, Mr. Blumetti, have you turned over documents that were requested in this case?

MR. BLUMETTI: There's been full document productions in this case, yes.

THE COURT: Okay.

So, Ms. Delgado, have those --

MS. DELGADO: No, Your Honor --

THE COURT: Do you have documents that defendants previously produced to your former lawyers? Have those been provided to you?

MS. DELGADO: That's what I was going to mention, Your Honor, is there was -- when Mr. Blumetti says they turned over the documents, there was still a document deficiency letter that was outstanding. That has never been addressed.

There were serious deficiencies with the defendant's document production. They only gave one round of document production. It was more like a document dump notwithstanding, a document dump is

allowed. But nonetheless, within that document dump, there were serious deficiencies and documents that were requested that were not provided.

And second --

THE COURT: What specifically do you believe is outstanding?

MS. DELGADO: I don't have it right in front of me at the moment, Your Honor, but there was a letter. I believe it was filed into the docket. If not, I can provide it to Your Honor tomorrow.

MR. BLUMETTI: We had a conference on that, Judge. I believe Mr. Kirschbaum and I had an entire oral argument before Your Honor, if I understand that, and all these issues were already ruled on.

THE COURT: Okay. Based on what Ms. Delgado is saying, it sounds like -- I assume this was something that the Court hadn't already addressed. So if there's something that is missing that the Court hasn't already addressed after oral argument, then in the first instance, Ms. Delgado, you need to write to Mr. Blumetti. Because under the federal rules, there's an obligation for the parties to meet and confer to try to work out any discovery disputes before you come to the Court.

Now --

MS. DELGADO:  Yes, and this was a deficiency after.  I know there was a hearing with Your Honor about some of the document production, but this was subsequent to that.

THE COURT:  Okay.  So why don't you speak to Mr. Blumetti after this conference or send him a letter about what you think is deficient based on that prior deficiency letter, and if there's an issue --

Chris, do we have a date at the end of February that we can have for a conference?

THE DEPUTY CLERK:  Sure, Judge.  Give me one second.

MS. DELGADO:  Your Honor, while he is looking at them, when you asked about documents that he had said they were going to be produced but haven't been, Mr. Blumetti had told Mr. Odle that he was going to provide a copy of my deposition because part of what he was requesting regarding mitigation that he referenced earlier, he is alluding to portions of the deposition he took of me.

So Mr. Odle told him, well, it's only fair you provide us the deposition so we can look at it, and he said he would.  My understanding is that he didn't get around to it.  I'm sure Mr. Blumetti just

forgot, but I'm still waiting for that.

MR. BLUMETTI:  We're happy to send Ms. Delgado a copy of her deposition transcript.  I'd already told Mr. Odle before he filed his motion to withdraw that I would.

THE COURT:  All right.  Please provide that within a week.

THE DEPUTY CLERK:  Judge, how about February 28th at 2:00 p.m.?

THE COURT:  Does that work for the parties?

MS. DELGADO:  February 28th?

MR. BLUMETTI:  Okay.  Hang on.

MS. DELGADO:  February 28th, 2:00 p.m?

THE COURT:  Yes.  Is that okay for both parties?

MS. DELGADO:  Yes, Your Honor.

THE COURT:  Okay.  So that's going to be a telephonic conference.  And under my rules, if any emergency comes up, or for some reason you need to adjourn that, you have to write to me two days in advance.  But you have to meet and confer before you write to me because I need to know whether both sides agree or not.  But just so you know, I'm not inclined to adjourn that because I want to keep you on schedule to get to the end of this discovery,

AMM TRANSCRIPTION SERVICE - 631.334.1445

okay.

And, again, Ms. Delgado, I'm reluctant to open discovery to have the expansive third-party discovery you're requesting.

So that being said, if there's something that is absolutely necessary, because you can't get the information from anybody else, including the 30(b)(6) witness, you can write a letter explaining why you need that. But I would like to understand the length of time that you anticipate you would need for such depositions, and by what date you would be able to take them, okay?

MS. DELGADO: I understand, Your Honor. I understand your need for the justification.

And if I may, the original list submitted by my prior counsel, John Phillips, in May, listed the ten deponents we planned to depose, which were including the two parties, Ryan Priebus, Sean Spicer, and then eight third parties.

THE COURT: Right.

MS. DELGADO: I will even reduce it from that, even though Mr. Phillips felt those were critical and even he had to reduce his list.

But just to give you an example, off the top of my head, even Kellyanne Conway is necessary

because they've listed her as a trial witness.

So it really is fundamentally, truly directly relevant individuals whose deposition I do not imagine, in some cases, would even last more than an hour, and would all be by Zoom.

THE COURT:  Okay.  So we can talk about that in February at the conference.  And if you want to write to me in advance of the conference with that list that is more considered and potentially pared down a bit, you can do that, Ms. Delgado.

Now, I will issue a --

MR. BLUMETTI:  Judge, if I could be heard on one issue on the 30(b)(6) witness.

THE COURT:  Yes.

MR. BLUMETTI:  I believe that I raised this with the Court previously, but just based on, you know, the timing of when this happened, the campaign, as I understand it, is probably still something that's moving ahead now, you know, for 2024.  But it's not the same individuals, as far as I know, from '16.

I can just imagine, and I already had a problem identifying the right 30(b)(6) witness, which I can, but it might not be somebody that's within the campaign's, you know, possession, custody

or control, or what have you, that I would be able to necessarily produce them.  It might be the subject of the subpoena.

THE COURT:  Well, you're required to produce someone or to educate somebody.  That's the entity's responsibility under Rule 30(b)(6).  So you're going to have to figure that out.  That's going to be the campaign's problem.  But there must be somebody that is within the control and will have information or can be educated to provide information requested.  And a non-party can be designated.

MR. BLUMETTI:  Right.  Well, that's what I was getting at, Judge.  I'm obviously going to see the best person we can produce, but I'm just previewing for everybody in an abundance of caution that it might be a non-party.

THE COURT:  Okay.  Okay.  So I think I've covered everything.

Is there anything else, Ms. Delgado, that you would like to raise?

MS. DELGADO:  No.  If I could just please ensure Mr. Blumetti -- I know I hadn't filed an e-mail and address into the docket, but I saw that motion to compel that you filed, I believe it was

January 5th, you did not send that to me, even though you have sent me things in the past, and you've had my e-mail for a very long time, and it's the same e-mail.

So if you could just make sure that I am on the service list, because I did not receive that. I've actually not seen it, that motion to compel, which is now resolved.

THE COURT: Did you sign up for electronic notices?

MS. DELGADO: I did.

THE COURT: Well, now you should be --

MS. DELGADO: I'm not sure if I've done it correctly.

THE COURT: Okay. So there's instructions for the ECF, and the pro se office may be able to give you some additional guidance on ECF. But going forward, once you are on ECF, you will have access to the docket. And filing on the docket does constitute service.

MS. DELGADO: Okay. Okay. Yes.

THE COURT: You won't be getting a separate e-mail or mail, because you'll be getting the notice through -- the electronic notice through the filing.

MS. DELGADO: Understood.

Yeah, I just meant, since Mr. Blumetti was aware that I hadn't registered anything, he didn't send to me either, which he didn't have an obligation to.  I just wanted to make sure that, for the record, I had not seen that motion to compel.

THE COURT:  Okay.

MS. DELGADO:  Regardless, it's resolved.

THE COURT:  Okay.  Well, do it now because I'm denying it, except for this one small thing that we've talked about, okay?

All right.  Mr. Blumetti, is there anything else?

MR. BLUMETTI:  No, Judge.

THE COURT:  Okay.  Thank you.  We're adjourned.

MS. DELGADO:  Thank you, Your Honor.

0o0

C E R T I F I C A T E


      I, Adrienne M. Mignano, certify that the
foregoing transcript of proceedings in the case of
Delgado v. Trump For President; Docket #19CV11764
was prepared using digital transcription software and
is a true and accurate record of the proceedings.



Signature    *Adrienne M. Mignano*_____
              ADRIENNE M. MIGNANO, RPR


Date:        February 4, 2024