April 24, 2024, morning

Hon. Magistrate Parker
United State District Court, S.D.N.Y.
500 Pearl Street, Courtroom 17D
New York, NY 10007
<u>RE</u>: *correction of incorrect representations in Defendants' April 22, 2024 letter to the Court*
<u>VIA</u>: electronic submission through *Pro-Se* Intake Unit and to chambers

Your Honor,

I am the *pro-se* Plaintiff in the above-mentioned matter. I am compelled to write because there are misrepresentations in the letter-to-the-Court submitted by Defendants on April 22nd.

    I.    <u>The "2020" Campaign Is Not, and Never Was, a Distinct/Separate Entity</u>
In his April 22nd letter, responding to Plaintiff's Motion to Compel appropriate 30(b)(6) answers, Mr. Blumetti argues that Plaintiff should be denied discovery of complaints made during the "2020 campaign" (i.e., presumably this means January 2017 – November 2020?). Mr. Blumetti's use of the term "2020 Campaign" here is a misrepresentation and misnomer – there is **no such thing as the "2020 Campaign"** nor did any entity exist called the "2020 Campaign." There was an entity named **Donald J. Trump for President, Inc., established in 2015**, and that entity, according to Defendant-Campaign (*See* 30b6 deposition and public disclosures), existed from **2015 to early 2021**. **It coordinated efforts for two large events: a 2016 election and a 2020 election**. (Then, in early 2021, that entity, according to Defendant-Campaign and public filings, re-named itself as the Make America Great Again PAC, a committee.) There is, in short, no such thing as the "2020 Campaign." **The term is used to lead the Court to believe that the "2020 Campaign" is a separate and distinct entity. It is not and never was.** Additional misrepresentations include:

-    First, Mr. Blumetti states that the "2020 Campaign" (again, there is no such thing – it is Donald J. Trump for President, Inc.) is an entity for which the "Plaintiff did not work." This is *false*: Donald J. Trump for President, Inc. (existing 2015-2021) is the entity for which Plaintiff worked.
-    Second, Mr. Blumetti states that the "2020 Campaign" (again, there is no such thing - it is Donald J. Trump for President, Inc.) had a different staff and leadership team. This is *false*: Donald J. Trump for President Inc., like any company/entity, had staff come in and out over the years. What year is Mr. Blumetti referring to and how does it differ from another year? Indeed, the senior staff of the entity, in the days leading up to the 2020-election event, was very similar to the senior staff leading up to the 2016-election event: e.g., Brad Parscale, Jason Miller, Boris Epshteyn, Michael Glassner, Jared Kushner, Katrina Pierson, John Pence, Marc Lotter, and Steven Cheung were senior staff working on both the 2016 and 2020 events.
-    Third, Mr. Blumetti also states that the "2020 Campaign" (again, there is no such thing - it is Donald J. Trump for President, Inc.) "was even headquartered in a different state." This is misleading. Donald J. Trump for President, Inc., as FEC filings show, was always *officially* a New York entity, from 2015-early 2021 – the entirety of its existence (*See* Attachment A), though sometime in 2019 it did lease and use office space in Virginia. What Mr. Blumetti is trying to imply – "different locations!" – is only invoked in cases where there are distinct offices simultaneously and individuals work exclusively in that location. E.g., a Chase bank-teller in a Maine branch, who alleges discrimination against a single manager there, perhaps does not need to know allegations made by an Arizona-branch bank-teller against a colleague in Arizona, who never worked in Maine.

Donald   J.   Trump   for   President,   Inc.   was   a   completely   different   structure.

II.     Defendants' Caselaw -- In Support of the Claim that Plaintiff's Discovery Must Be
        Strictly Limited Only to Other "Pregnancy" Discrimination – is Misleading

Defendants imply that Plaintiff's discovery should be strictly limited only to other "pregnancy
discrimination" claims. First, **this position is improper because the Campaign already waived
this argument**: During the 30(b)(6) deposition, when asked about complaints made, the Campaign
answered with three known complaints (besides Plaintiff's). **It did not limit its answer only to
other "pregnancy discrimination complaints."** On the contrary: one was sexual harassment and
hostile work environment; one was a sexual harassment and sexual misconduct; and one was
specific gender discrimination. Indeed, the 30(b)(6) witness stated that he searched "**specifically as
to claims if sexual harassment or for unlawful discrimination or for pregnancy discrimination**.
So I was looking specifically for claims and those were the claims I was able to identify." (transcript,
p. 65) Moreover, the 30b6 notice asked the Campaign to prepare to answer as to "Any and all claims
of **sexual harassment or for unlawful discrimination or for pregnancy discrimination** against
DTP or employees/representatives thereof." **Neither during the meet-and-confer about the
30(b)(6) topics, or at any point, did Defendants raise any objection to this**. Thus, the position
Defendants are now attempting to take… is one they have **indisputably waived**.

Second, **another reason they have waived the argument** is that they demanded to know the reason
the Plaintiff withdrew from the job with the VA, in February 2023. They did not limit it to "only if
it was related to pregnancy discrimination" but rather for any reason. Nor was this purely for
mitigation-of-damages' relevance: Mr. Blumetti noted such was only "part" of it. Clearly, it was to
see if the Plaintiff had poor job performance that Defendants could then use against her. This Court
ordered the resignation ("or termination") letter produced (for *any* reason, and *over six years after*
the events at issue).[1] Now, however, Defendants take the position of, "No, no – when it comes to
what *we* have to produce, you are limited to 'pregnancy discrimination' matters." Defendants waived
that position. There cannot be one standard for the Plaintiff and another for Defendants.

Mr. Blumetti cites a single case, from 2011, *Vuona v. Merill Lynch*, wherein plaintiffs were denied
discovery of non-gender-based complaints. In that case, three female trainees were terminated from
a training program at Merill Lynch, and then filed a gender-discrimination suit alleging that the male
trainees were favored over women. It was a straightforward gender-discrimination case. But what
Mr. Blumetti omits is that, even then, the Court indicated it would have considered permitting
discovery into complaints entailing *other* forms of discrimination (not just gender-discrimination)
had the Plaintiffs proffered that these complaints might shed light on their own. Mr. Blumetti
curiously does not cite a mountain of other cases, such as *Bell v. Lockheed Martin Corp.,* 270 F.R.D.
186, 197 (D.N.J.2010) or *Chen-Oster v. Goldman Sachs* (2013, SDNY, below) which *did* **permit
plaintiff/s discovery into complaints entailing other forms of discrimination**.

Plaintiff's case involves wrongdoing due to Plaintiff's **"sex, gender, and pregnancy, as well as in
retaliation for her complaining of discrimination [occurred 2019-2021]."** (Plaintiff's Amended
Complaint, March 28, 2022). **Thus, Plaintiff should be entitled to, at a <u>minimum</u>:** sex-related
complaints (including sexual harassment, which is a type of sex-related discrimination[2]), gender-

---

[1] Unfortunately for Defendants, the letter, which Plaintiff produced (as ordered), shows Plaintiff withdrew due to lack
of childcare and demands on her time due to her child's health challenges, and that the VA was sad to see her go.
[2] https://www.eeoc.gov/sex-based-discrimination

related complaints (including sexual harassment, which is a type of gender-related harassment), and pregnancy discrimination and disability discrimination complaints, and perhaps not those pertaining to race, national origin, and age.  As this Court wisely noted during a January 2024 hearing, pregnancy discrimination *is* essentially a gender-related claim, given that women are those who become pregnant. Similarly, sexual harassment is also typically a gender-*related* claim, as e.g., the heterosexual male who harasses a woman does so because she is a female to whom he is attracted.

**The <u>U.S. Supreme Court</u> has held that, in <u>employment discrimination</u> cases, courts should favor "<u>liberal civil discovery rules</u>," giving plaintiffs "<u>broad access to employers' records in an effort to document their claims.</u>"** *Wards Cove Packing Co. v. Atonio,* 490 U.S. 642, 657, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989). This district (**S.D.N.Y.**) upholds such. <u>See e.g.</u>, *Chan v. NYU Downtown Hosp.,* No. 03–CV–3003, 2004 WL 1886009, at *4 (**S.D.N.Y.** Aug.23, 2004) ("**the imposition of unnecessary discovery limitations is to be avoided" in employment discrimination claims**)  Indeed, the **<u>S.D.N.Y.</u>** and others courts have noted that, **in employment discrimination cases, "the scope of discovery <u>must go beyond the specifics of the plaintiff's claim.</u>"** *Chan* at *4 (citing *Louison v. Blue Cross Blue Shield of Greater New York,* 90–CV–1820, 1990 WL 108347 (<u>S.D.N.Y.</u> July 23, 1990). Other circuits agree: As one federal judge in a D.C. circuit court noted, in expressing that discrimination cases often lack a "smoking gun, such as a discriminatory comment made by a hiring official", such is precisely why courts must permit broad discovery in employment discrimination cases, "**discovery in these cases is necessarily broad**….[T]he court of appeals has stated quite broadly that data bearing on an **employer's treatment of other members of a[nother] protected class is discoverable**…. *Mitchell v. National Railroad Passenger Corp.*, 208 F.R.D. 455, 460 (D.D.C. 2002) (emphasis added)

Consider the famous case of the female Goldman Sachs employees alleging gender-discrimination, *Chen-Oster v. Goldman, Sachs & Co.*, 293 F.R.D. 557 (**S.D.N.Y. 2013**), wherein the S.D.N.Y. overruled Goldman Sachs' claims that plaintiffs' seeking of all complaints by any female employee, for any reason, was a phishing expedition. The Court ordered Goldman Sachs to produce **all internal complaints that were even "conceivably related" to gender discrimination**. *Id.* at 563-564. (Complaints of sexual harassment were included in what was ultimately produced under this order.) Simply because the Plaintiff does not have the high-priced legal representation the *Goldman Sachs* case plaintiffs enjoyed, does not mean she should be permitted any less discovery.

Given that Defendants already waived the position they now take; *and* given U.S. Supreme Court's position that, in employment discrimination cases, courts should favor "liberal civil discovery rules" giving plaintiffs "broad access to employers' records"; *and* given the S.D.N.Y. precedent that the scope of discovery must go beyond the Plaintiff's claim (in employment discrimination cases); *and* given the *Goldman Sachs* case, **Plaintiff requests discovery of complaints related to sex and gender (including sexual harassment), pregnancy, disability, and hostile-work environment during the short existence of Donald J. Trump for President Inc**. (2015 – January 2021).

Respectfully submitted,
*s/ Arlene Delgado*
Arlene Delgado
Plaintiff, pro-se

**Attachment A**





