May 8, 2024

Hon. Magistrate Parker
United State District Court, S.D.N.Y.
500 Pearl Street, Courtroom 17D
New York, NY 10007
**RE**: *Response to Defendants' counsel's May 8, 2024 "Status Report" and Supplement to Motion to Compel compliance with April 24, 2024 Order*
VIA: electronic submission through *Pro-Se* Intake Unit

Your Honor,

I am the *pro-se* Plaintiff in the above-mentioned matter, hereinafter referred to in first person or as "Plaintiff." Plaintiff writes to correct misrepresentations, and note glaring errors and ***admitted lack of diligence***, in Defendants' alleged "compliance" with the Court's April 24th Order.

MISREPRESENTATIONS
In the "Status Report," Mr. Blumetti neglects to mention that, immediately following the April 24, 2024 requiring that his client produce certain information, he abruptly moved to withdraw, on Friday April 26th, citing an "irreparable breakdown" with the client. (***Of great concern is that fact that Mr. Blumetti has not been required, by this Court, to explain how he claimed a complete breakdown with a client in a sworn declaration – yet he continues to represent the client in another case.*** If the *Plaintiff* in this case presented this Court with such a contradiction, she would certainly be made to explain it, or suffer the motion being dismissed.) That was Friday afternoon.

Mr. Blumetti did not resurface for the required 'meet-and-confer' about the April 24th Order call… ignoring the Plaintiff's email outreach… until near a week later -- Wednesday afternoon, May 1st. During the call on May 1st, Mr. Blumetti claimed he had secured a 30b6 witness to speak on the topic but, given Mr. Blumetti's disappearing act, by then it was too late, as there was no time remaining, with: Kellyanne Conway's deposition the following day (Thursday, May 2nd) and Mr. Parscale's on Tuesday, May 7th. Mr. Blumetti actually then suggested that the Plaintiff --  a single mother with no childcare or nanny – should simply find a way to take *both* depositions on May 7th. He, moreover, did not even *identify* any 30b6 witness, as is required. It is unclear if, in fact, ay 30b6 witness was *truly* obtained.

During the call, Mr. Blumetti essentially admitted that he was not in fact prepared to facilitate a 30b6 deposition, even if Plaintiff was available, because he was "still working" on the locating the information required. Specifically, Plaintiff inquired when Mr. Blumetti planned to comply with the Order and produce the documents (as the documents would be required anyway, even with a 30b6 deposition – given that the deposition would be *duces tecum*) and **he responded that he was still "working with the vendor on getting that information." Plaintiff was shocked to hear such**, as it meant that Mr. Blumetti's diligence into locating/ascertaining the existence of said complaints was a knowingly-sure-to-produce-nothing "keyword search" with the email-archives vendor.

LACK OF REASONABLE DUE DILIGENCE
But this Court need not take the Plaintiff's word for it as to what was said in that conversation: Mr. Blumetti's own Status Report letter makes it clear that the Defendant-Campaign did not comply with the obligation of ***reasonable*** diligence. Instead, Mr. Blumetti simply, as he has routinely done,

1

phoned the vendor, ran a keyword search (notice his Status Report does not even say what the keyword searches were!), the keyword search (unsurprisingly) resulted in nothing, and *voila*!, they called it a day. This not only fails to meet the standard of a reasonable search but it is so knowingly ineffective as to almost merit sanctions. Why?

*First*, one need not be an attorney to know that ***most complaints/concerns raised about gender-related, sensitive issues -- such as sexual harassment, gender discrimination, and pregnancy discrimination – are usually (a) not raised in writing; and (b) often specifically avoid using work-related email***. For instance, when the Plaintiff informed the Campaign chief and CEO that she was pregnant in December 2016, she did so from her Gmail and to each of the recipients' personal (not Campaign) email addresses, for discretion.

*Second*, if the Trump election cycle in 2020 was anything like the election cycle in 2016, most staffers ***communicated via text or even encrypted app's*** (a favorite suggestion of Jason Miller – who served as essential Campaign chief in 2020) – not via their work email accounts. How then, does Mr. Blumetti believe, that a "reasonable" search is to search the *work-email* archives? Mr. Blumetti and his client know this, of course. Yet, ***they feign ignorance and claim that "searching the Campaign email archives" is the way to reasonably ascertain any concerns raised by women about these sensitive matters.***

*Third*, the most obvious and reasonable manner to obtain this information is to speak to individuals who handled Human Resources duties or operational duties, or even attorneys such as Justin Clark (Senior Counsel to the 2020 Campaign, with whom Mr. Blumetti is in contact, given that Mr. Clark signed a recent stipulation). Two 2020-Trump-election-effort staffers recently informed the Plaintiff that the Human Resources person – or one most like a Human Resources person – was ***Megan Powers***. Mr. Blumetti knows this yet curiously did not speak to Megan Powers. Moreover, a third, Brad Parscale, who was the Campaign Manager (!) in 2020, also stated, during his continued deposition yesterday, that the person who often handled those duties was Megan Powers. But, again, Mr. Blumetti did *not* speak to Megan Powers. Mr. Parscale also referenced Michael Glassner, who was in an operations-chief role – but Mr. Blumetti, of course, did not speak to Michael Glassner. ***Did Mr. Blumetti's email-archives search even search Ms. Powers's emails? It did not.***

To be sure, a 30b6 deposition would have been no better. In the 30b6 deposition of the Campaign taken earlier this year, in which the Campaign did answer as to 2015-2016 concerns raised, the witness said his knowledge/research was obtained by 'searching online and then taking those names and running them through the vendor.' In other words, "Google" and then if a name came up about someone suing the Campaign formally, run that name through the vendor's email-archives. This is simply incredible. The same would have been the answer in this other 30b6 – in which the witness would have answered with 'I Googled' and then 'I asked the vendors to run those names.'

*Fourth*, how does reasonable diligence on this even lend itself to "we will run a <u>keyword search</u> through the email archives"? Does a woman complaining that a male supervisor inappropriate made advances on her… often use the term "sexual harassment"? ***Does a staffer use the term "gender discrimination" if complaining that a male staffer is being paid the same?*** 90% of the time, no. The Campaign and Mr. Blumetti know this.

Regrettably, the Plaintiff must point out that this expectation of being permitted to get away with this has been caused by the Court, albeit unintentionally, and the Plaintiff respectfully requests that

the Court undo same. On several occasions, this Court has made comments to the effect of 'Defendant's counsel can search for the document, and, if you don't find it, Mr. Blumetti, then that's it, that'll be the end of it" and similar words to that effect. While Plaintiff does not claim such is the Court's intent, nor that the Court is 'signaling' to the Defendants to merely say 'we don't have XYZ' , assured that 'that will be the end of it,' such is how the words were clearly *interpreted* and how the words come across to the recipients/listeners.

DISCOVERY – NOT CLOSED
Mr. Blumetti singlehandedly declares that discovery is closed. But how can it be closed when:
   a) once again due to Southern District of New York errors, the Plaintiff was precluded from serving subpoenas on the (few) individuals this Court permitted her to depose (Castellano, Glassner, Bannon, and Kushner), because the Clerk *delayed a week in even the signing* of the subpoenas so that, by the time the Plaintiff received them (and only after she repeatedly called the Intake Unit), the date on the subpoena was almost lapsed and the recipients/deponents would have almost no notice;
   b) this Court itself stated that the identity of the HR person was to be provided via a Request for Admission, which the Plaintiff was to serve by May 7th and is not due until June 7th;
   c) court-ordered interrogatories on Defendants Priebus and Spicer are not due until late May;
   d) there was misconduct by one of Mr. Parscale's attorneys, Stanley Woodward, claiming that this Court's wording of the April 24th Order gave him the power to instruct his client not to answer, if he felt the question was not "relevant" (a sort of special magistrate presiding over his own client's deposition), rendering key questions unanswered and still outstanding;
   e) at least one served subpoena for documents remains outstanding (served but not responded to) and must be addressed;
   f) the subpoena on Don McGahn (a key third party, as Mr. Priebus testified that he forward Mr. McGahn information regarding Plaintiff) is currently being addressed by a D.C. circuit court (a status report on such is due May 10th). That matter also remains outstanding;
   g) the Fox News subpoena matter has yet to be resolved;
   h) It is clear that the Defendant-Campaign's claim that it "complied" with producing the 2020-complaints information is not true, and such is being challenged;
   i) A report from just a week ago makes it very likely that the Trump Campaign has paid hidden settlements to women using "Red Curve Solutions" as the middleman and, likely, Kasowitz Benson Torres. This is part and parcel of the complaints that Defendants are required to disclose, yet steadfastly refuse.

Plaintiff fully understands that the Defendant-Campaign, wishing to hide and all testimony and documents that it can, is furiously chanting "discovery is closed! Pay no attention to the man behind the curtain!" The record shows otherwise. The record shows that the Plaintiff has been, and is, severely prejudiced by recent events, through no fault/control of her own, and that several matters remain to be addressed, before discovery can close. Yesterday, a federal judge vacated an entire trail setting, because matters remained to be adjudicated first, in fairness to the Defendant's rights. That Defendant is Donald Trump. Perhaps the justice system is different for wealthy Republican men but the Plaintiff likes to believe she is entitled to the same rights. he Plaintiff does not ask for an entire trial setting to be tossed out but does ask that she be given the reasonable right to complete and address the remaining manners, including to have her motion to compel heard on what is clearly a lack of compliance and attempt to withhold documentation that will help prove her case.

Respectfully and humbly submitted,<br>
<u>*s/ Arlene Delgado*</u><br>
Plaintiff, *pro-se*