May 9, 2024

Dear Magistrate Judge Parker:

Plaintiff Arlene J. Delgado and Non-Party Donald F. McGahn II jointly submit this letter respectfully seeking clarification of your Honor's discovery order dated March 1, 2024.  ECF No. 204 ("Order").  As your Honor is aware, the Order granted leave to Ms. Delgado to subpoena Mr. McGahn and three other non-parties.  The Order specifically stated as follows:

> Having reviewed Plaintiff's letter and heard from the parties at the Conference, I orally granted Plaintiff permission to subpoena and depose certain additional non-parties, and otherwise denied the request.  **Specifically, as discussed at the Case Management Conference, Plaintiff is permitted to subpoena and depose the following individuals**:
>
> • **Lucia Castellano**, who was identified as the head of Human Resources for the Campaign, and is thus likely to have information relevant to employment decisions by the Campaign.
>
> • **Michael Glassner**, who was identified as counsel for the Campaign during a mediation between the Campaign and Plaintiff to which the breach of contract claim pertains, and is likely to have information relevant to the breach of contract claim.
>
> • **Jared Kushner**, who was identified as having a role in the decision not to hire Plaintiff for a position at the White House, and thus is likely to have information relevant to the discrimination claim.
>
> • **Donald McGahn**, who was identified as an individual involved in the security clearance process for White House personnel during the relevant period, and is likely to have information relevant to Defendants' defense that Plaintiff would not have qualified for a position at the White House due to security clearance issues.
>
> In the event Defendants state a renewed intention to call Kellyanne Conway as a trial witness, Plaintiff may seek leave to depose Ms. Conway in advance of trial.  **Plaintiff's request for additional third-party discovery is otherwise DENIED.**

*Id.* at 2.

On March 7, Ms. Delgado served a subpoena on Mr. McGahn, seeking deposition testimony and nine categories of document production.  A copy of the subpoena is attached as Exhibit A.

On March 22, Mr. McGahn moved to quash the subpoena in the U.S. District Court for the District of Columbia, "the court for the district where compliance is required," Fed. R. Civ. P. 45(d)(3).  A copy of the motion to quash is attached as Exhibit B.  On April 19, Ms. Delgado filed an opposition to the motion to quash, a copy of which is attached as Exhibit C.  On April 26, Mr. McGahn filed a reply in support of the motion to quash, a copy of which is attached as Exhibit D.

On April 30, the Honorable Jia M. Cobb of the U.S. District Court for the District of Columbia presided over a hearing on Mr. McGahn's motion to quash.  During the hearing, Judge Cobb noted disagreement between Mr. McGahn and Ms. Delgado about the scope of the subpoena your Honor authorized Ms. Delgado to serve on Mr. McGahn.  Specifically, Judge Cobb noted disagreement about how to understand the portion of your Honor's March 1 Order quoted above.

- Mr. McGahn has argued that the Order allows Ms. Delgado to subpoena Mr. McGahn only for "information relevant to Defendants' defense that Plaintiff would not have qualified for a position at the White House due to security clearance issues," ECF No. 204, at 2, and that the subpoena Ms. Delgado served on Mr. McGahn—seeking a range of documents unrelated to "security clearance issues," including communications between Mr. McGahn and numerous individuals—exceeds that scope.

- Ms. Delgado has argued that the Order: does not preclude her from seeking material sent to Mr. McGahn by Defendant Reince Priebus and others; does not state that the subpoena is limited only to the topic of "information relevant to Defendants' defense that Plaintiff would not have qualified for a position at the White House due to security clearance issues," *id.*; that the Order would have said so if indeed there was a limitation to that specific topic; and that the description of Mr. McGahn (and of the three other witnesses) found in the Order is only a brief description of the witnesses' relevance, meant to explain why the subpoena was granted, and not to limit discovery to strictly that issue.

Given these contrasting views of the Order, Judge Cobb requested that Ms. Delgado and Mr. McGahn jointly seek clarification from your Honor about whether either view is correct.  Judge Cobb further requested that Ms. Delgado and Mr. McGahn file a status report by May 10 regardless of whether your Honor has provided any such clarification by that time.

Respectfully submitted,

*s/Arlene Delgado*
Arlene J. Delgado
*Plaintiff*

*s/Christopher N. Thatch*
Christopher N. Thatch
*Counsel for Mr. McGahn*

# EXHIBIT A

AO 88A (Rev. 12/13) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the
Southern District of New York

| | |
|---|---|
| Arlene Delgado | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. |
| | ) 19-cv-11764 (AT)(KHP) |
| Donald J. Trump for President, et. al. | ) |
| *Defendant* | ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:
Donald McGahn

*(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place: | Date and Time: |
|---|---|
| (via ZOOM) (link will be provided or contact Plaintiff) | March 25, 2024, 10:00 am EST |

The deposition will be recorded by this method:  certified court reporter

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

   *See* Attachment A

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  03/07/24

*CLERK OF COURT*

OR

_____          _____
*Signature of Clerk or Deputy Clerk*                     *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
  Arlene Delgado                                                              , who issues or requests this subpoena, are:

  Arlene Delgado, *pro se*; 1065 SW 8th St PMB 609 Miami ,FL 33130; adelgado@post.harvard.edu; (786) 349-3186

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A (Rev. 12/13) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. 19-cv-11764 (AT) (KHP)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  12/13) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## ATTACHMENT A
### (Donald McGahn deposition)

- All communications (including but not limited to emails, letters, and text messages) and all documents (including but not limited to notes, memoranda, charts, and lists) regarding, discussing, and/or concerning any complaint, whether formal or informal (including but not limited to concerns raised), made about any staffer/advisor of the 2016 Campaign, including but not limited to Boris Epshteyn. (Time period is 2015 – March 2017).
- All communications (including but not limited to emails, letters, and text messages) and all documents (including but not limited to notes, memoranda, charts, and lists) regarding, discussing, and/or concerning Arlene ("AJ") Delgado, at any time.
- All communications (including but not limited to emails, letters, and text messages) and all documents (including but not limited to notes, memoranda, charts, and lists) regarding, discussing, concerning, and/or reflecting steps taken regarding, concerning, or related to Arlene ("AJ") Delgado's pregnancy or potential pregnancy (December 2016 onward).
- All communications (including but not limited to emails, letters, and text messages) and all documents (including but not limited to notes, memoranda, charts, and lists) regarding, discussing, concerning, and/or reflecting steps taken in regards to Arlene ("AJ") Delgado's role in the White House (December 2016 onward).
- All documentation reflecting notices, flyers, information, booklets, and pamphlets provided to 2016 Campaign staffers/advisors regarding how to report discrimination, concerns, complaints, and the like (2015 – January 2017).
- All communications (including but not limited to emails, letters, and text messages) and all documents (including but not limited to notes, memoranda, charts, and lists) regarding, discussing, and/or concerning the need to provide information and/or notices to Trump Campaign staffers regarding Human Resources' availability, and/or options for reporting discrimination or concerns. (2015-2017)
- All emails, text messages, documents, lists, memoranda, letters, forwarded conversations, forwarded documents, and any communication or document at all, that was forwarded to you, supplied to you, or on which you were included, by or sent to you by Reince Priebus and/or anyone else, December 2016 – May 2017, regarding, concerning, or related to Arlene ("AJ") Delgado.
- All emails, text messages, documents, lists, memoranda, letters, forwarded conversations, forwarded documents, and any communication or document at all, that was forwarded to you, supplied to you, or on which you were included, by or sent to you by Reince Priebus and/or anyone else, December 2016 – May 2017, regarding, concerning, or related to Jason Miller.
- All emails, text messages, documents, lists, memoranda, letters, forwarded conversations, forwarded documents, and any communication or document at all, that was forwarded to you, supplied to you, or on which you were included, regarding accusations against Robert ("Rob") Porter, for the period November 2016 – April 2018.

IF ANY DOCUMENT IS WITHHELD ON A CLAIM OF ATTORNEY-CLIENT PRIVILEGE, PLEASE PROVIDE A PRIVILEGE LOG, INCLUDING IDENTITY OF CLIENT, DATE OF ITEM, AND DESCRIPTION.
IF ANY DOCUMENT IS WITHHELD ON A CLAIM THAT THE DOCUMENT WAS PART OF SETTLEMENT DISCUSSIONS, PLEASE PROVIDE DATE AND SENDER/AUTHOR IDENTITY.

# EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

In re Motion to Quash Non-Party Subpoena

Movant: Donald F. McGahn II
        c/o Christopher N. Thatch
        51 Louisiana Avenue, NW
        Washington, DC 20001

Underlying Proceeding:

Arlene Delgado,

        Plaintiff,

    v.

Donald J. Trump for President, Inc.; Sean
Spicer; Reince Priebus; Steve Bannon,

        Defendants.

Case No. _____

Case No. 19-cv-11746

United States District Court for the
Southern District of New York

Hon. Analisa Torres (District Judge)
Hon. Katharine Parker (Magistrate Judge)

## MEMORANDUM OF LAW IN SUPPORT OF
## NON-PARTY DONALD F. MCGAHN II'S MOTION TO QUASH

JONES DAY

Michael R. Shumaker
  *pro hac vice* forthcoming
Christopher N. Thatch
  D.C. Bar No. 980227
David K. Suska
  *pro hac vice* forthcoming
51 Louisiana Avenue, NW
Washington, DC 20001
(202) 879-3939
mrshumaker@jonesday.com
cthatch@jonesday.com
dsuska@jonesday.com

March 22, 2024

*Counsel for Donald F. McGahn II*

**<u>TABLE OF AUTHORITIES</u>**

**Page**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 3

    A.   Ms. Delgado's Lawsuit. ........................................................................................... 3

    B.   Ms. Delgado's Non-Party Subpoena to Mr. McGahn ............................................ 4

ARGUMENT ...................................................................................................................... 6

    A.   The Subpoena Targets Information Protected by Attorney-Client Privilege ...................... 6

    B.   The Subpoena Targets Information Protected by Executive Privilege. ............................. 8

    C.   The Subpoena Imposes an Undue Burden on Mr. McGahn. ........................................ 10

    D.   The Subpoena Fails to Designate a Place of Compliance ............................................ 13

CONCLUSION ................................................................................................................... 13

CERTIFICATE OF SERVICE .......................................................................................... 15

## TABLE OF AUTHORITIES

Page

CASES

*Apex Mortg. Corp. v. Great N. Ins. Co.*,
    2018 WL 318481 (N.D. Ill. Jan. 8, 2018) ...................................................................7

*Chang v. United States*,
    512 F. Supp. 2d 62 (D.D.C. 2007) .........................................................................7

*Chen v. FBI*,
    2022 WL 17851618 (D.D.C. Oct. 18, 2022) .............................................................6

*\*Cheney v. U.S. District Court for the District of Columbia*,
    542 U.S. 367 (2004) ...............................................................................8, 9, 10

*Coastal States Gas Corp. v. Dep't of Energy*,
    617 F.2d 854 (D.C. Cir. 1980) ..............................................................................6

*Colonial BancGroup, Inc. v. PricewaterhouseCoopers LLP*,
    110 F. Supp. 3d 37 (D.D.C. 2015) ......................................................................11, 12

*Cusumano v. Microsoft Corp.*,
    163 F.3d 702 (1st Cir. 1998) ...............................................................................11

*Dell Inc. v. DeCosta*,
    233 F. Supp. 3d 1 (D.D.C. 2017) ......................................................................10, 11

*Dep't of Interior v. Klamath Water Users Protective Ass'n*,
    532 U.S. 1 (2001) ............................................................................................9

*\*Dep't of the Navy v. Egan*,
    484 U.S. 518 (1988) .........................................................................................9

*Dunlap v. Presidential Advisory Comm'n on Election Integrity*,
    319 F. Supp. 3d 70 (D.D.C. 2018) ........................................................................13

*Fed. Ins. Co. v. Tungsten Heavy Powder & Parts, Inc.*,
    2022 WL 2820667 (S.D. Cal. July 18, 2022) ...........................................................13

*Flores-Kemmerer v. Portfolio Recovery Assocs., LLC*,
    2022 WL 612334 (S.D. Ind. Mar. 2, 2022) ...............................................................6

## <u>TABLE OF AUTHORITIES</u>

**Page**

*Gouse v. District of Columbia*,
359 F. Supp. 3d 51 (D.D.C. 2019) ................................................................................10, 11

*Harris v. Koenig*,
2010 WL 4910261 (D.D.C. Dec. 2, 2010) ...........................................................................7

*In re Slack*,
768 F. Supp. 2d 189 (D.D.C. 2011) ......................................................................................7

*In re Subpoena to Wang*,
214 F. Supp. 3d 91 (D.D.C. 2016) ....................................................................................6, 7

*Int'l Union, United Mine Workers of Am. v. CONSOL Energy Inc.*,
2020 WL 7042815 (D.D.C. Dec. 1, 2020) ...........................................................................7

*Nixon v. Adm'r of Gen. Servs.*,
433 U.S. 425 (1977) .............................................................................................................9

*Patane v. Nestle Waters N. Am. Inc.*,
2022 WL 6569823 (D. Conn. Oct. 4, 2022) ........................................................................6

*Pernell v. Fla. Bd. of Governors of State Univ.*,
84 F.4th 1339 (11th Cir. 2023) ............................................................................................7

*Russell v. Maman*,
2021 WL 3212646 (N.D. Cal. July 29, 2021) ......................................................................6

*Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak Co.*,
276 F.R.D. 376 (D.D.C. 2011) .........................................................................................7, 8

*Trump v. Thompson*,
142 S. Ct. 680 (2022) (statement of Kavanaugh, J.) ...........................................................9

*U.S. ex rel. Pogue v. Diabetes Treatment Centers of America, Inc.*,
238 F. Supp. 2d 270 (D.D.C. 2002) .....................................................................................6

*Unigene Labs., Inc. v. Apotex, Inc.*,
2007 WL 2972931 (N.D. Cal. Oct. 10, 2007) ......................................................................7

# TABLE OF AUTHORITIES

Page

*United States ex rel. Kammarayil v. Sterling Operations, Inc.*,
    2019 WL 464820 (D.D.C. Feb. 6, 2019) ...................................................................7

*United States v. Google LLC*,
    2023 WL 5725518 (N.D. Cal. Sept. 5, 2023) .......................................................13

*\*United States v. Nixon*,
    418 U.S. 683 (1974)............................................................................................9, 10

*\*Watts v. SEC*,
    482 F.3d 501 (D.C. Cir. 2007)..................................................................7, 8, 11, 13

*Williams v. Johnson*,
    597 F. Supp. 2d 107 (D.D.C. 2009) .......................................................................7

*Winston & Strawn LLP v. Janssen Prod., L.P.*,
    2022 WL 3588106 (D.N.J. Aug. 22, 2022) ............................................................7

OTHER AUTHORITIES

9A Charles Alan Wright & Arthur R. Miller, FED. PRAC. & PROC. § 2463.1
    (3d ed. April 2023 update)......................................................................................7

*Assertion of Executive Privilege Concerning the Special Counsel's Interviews of
    the Vice President and Senior White House Staff*,
    32 Op. O.L.C. 7 (2008).............................................................................................9

*\*Federal Rule of Civil Procedure 26* ..........................................................2, 11, 12, 13

Federal Rule of Civil Procedure 37 ....................................................................12, 13

*\*Federal Rule of Civil Procedure 45* ...........................................2, 6, 7, 8, 10, 13, 14

*Whistleblower Protections for Classified Disclosures*,
    22 Op. O.L.C. 92 (1998) (statement of Randolph D. Moss, Deputy Assistant
    Attorney General) ...................................................................................................9

## INTRODUCTION

This motion to quash concerns an ill-conceived non-party subpoena requesting information from former Counsel to the President Donald F. McGahn II that is plainly protected from disclosure by attorney-client privilege and executive privilege. The subpoena arises out of a lawsuit filed in the Southern District of New York by Arlene Delgado, a writer and commentator who supported Donald Trump during the 2016 election. The defendants are a campaign-affiliated entity, Donald J. Trump for President, Inc., as well as Trump Administration officials Sean Spicer, Reince Priebus, and Stephen Bannon. Ms. Delgado has pleaded claims based on allegations that the defendants stripped her of campaign-related responsibilities and denied her a job in the Trump Administration after she disclosed to them that she was pregnant and that the father of her child was her then-supervisor on the campaign trail. *See* First Amend. Compl., *Delgado v. Donald J. Trump for President, Inc.*, No. 19-cv-11746 (S.D.N.Y. Mar. 28, 2022), ECF 94 ("FAC").

On March 7, 2024, Ms. Delgado served the non-party subpoena at issue on Mr. McGahn, who at all times relevant to the underlying litigation served as legal counsel to the Trump Campaign or Trump Transition, or as Counsel to President Trump (colloquially referred to as the White House Counsel). The subpoena directs Mr. McGahn to produce documents and give testimony regarding the alleged decision by the Trump Campaign, Trump Transition, and Trump Administration to deny Ms. Delgado employment. *See* Ex. A at 1, 4. Neither the complaint nor the subpoena alleges or even hints that Mr. McGahn had any involvement with any purported wrongdoing. To the contrary, in a letter to the magistrate judge presiding over discovery, Ms. Delgado professed "high esteem" for Mr. McGahn, stating that she "understands him to be a man of great ethics." Ex. B at 4. Nonetheless, more than four years after she filed her lawsuit and as fact discovery draws to a close, Ms. Delgado apparently has come to believe that Mr. McGahn has information that is somehow relevant to her case.

The non-party subpoena should be quashed in its entirety because it is invalid for at least four independent reasons.

*First*, the subpoena targets information protected by attorney-client privilege in violation of Federal Rule of Civil Procedure 45(d)(3)(A)(iii).  Even assuming Mr. McGahn possesses information relevant to the claims or defenses, he would have acquired that information only in his role as legal counsel to the Trump Campaign, Trump Transition, or Trump Administration.

*Second*, the subpoena targets information protected by executive privilege, also in violation of Rule 45(d)(3)(A)(iii).  Ms. Delgado has stated her intention to ask Mr. McGahn about decisions made regarding "White House employees' security clearance[s]," Ex. B at 4., which would intrude into the deliberative-process and national-security components of executive privilege.

*Third*, the subpoena seeks to impose an undue burden on Mr. McGahn in violation of Rule 45(d)(3)(A)(iv).  The subpoena requests extensive deposition testimony and document production spanning many years with only an attenuated connection to Ms. Delgado's claims.  That burden is not only undue but unnecessary as Ms. Delgado can obtain the information "from some other source that is more convenient, less burdensome, or less expensive," Rule 26(b)(2)(C)(i)—namely, the actual parties.  Indeed, Ms. Delgado has conceded that the only reason for this eleventh-hour subpoena of Mr. McGahn is that certain defendants have failed to turn over documents.  Ex. B at 4.  But the proper recourse for any perceived failure on the part of those defendants is a motion to compel directed to them, not a burdensome non-party subpoena directed to Mr. McGahn.

*Fourth*, the subpoena is facially invalid because it fails to specify a place of compliance as required by Rule 45(a)(1)(A)(iii).

Each of these reasons is sufficient to grant Mr. McGahn's motion.  Collectively they leave no doubt.  Consistent with Rule 45(d)(3)(A), the Court "must quash" the subpoena in its entirety.

# BACKGROUND

The following summary of events leading up to the motion to quash is drawn primarily from Ms. Delgado's first amended complaint. Mr. McGahn has had no prior involvement in the underlying case, and he takes no position on the veracity of the allegations of the complaint.

## A.    Ms. Delgado's Lawsuit.

Ms. Delgado is a "political commentator, writer, and attorney" who "became one of [Mr. Trump's] earliest, most loyal, and most vocal supporters, at a time when almost no political writers or pundits were willing to publicly support him." FAC ¶¶ 12, 16. Her work garnered attention, and in August 2016, she "formally joined the Campaign" by "sign[ing] a 'Consulting Agreement.'" *Id.* ¶ 21. Thereafter, Ms. Delgado "appeared on television on behalf of Donald Trump nearly 100 times and defended him against every attack." *Id.* ¶ 33. Mr. Trump "complimented her" and "promised" her a "prime role" were he to win the election. *Id.* ¶¶ 34, 35. "Ms. Delgado's supervisor, Campaign Spokesperson Jason Miller, also assured Ms. Delgado many times that she was 'going in' to the Trump Administration with a White House job." *Id.* ¶ 36.

In November 2016, "Ms. Delgado learned that she had become pregnant by [Mr.] Miller," her supervisor on the trail. *Id.* ¶ 37. Over the next month, Ms. Delgado informed Mr. Miller and Mr. Bannon, and they in turn informed Mr. Priebus and Mr. Spicer. *Id.* ¶¶ 38–42. Shortly after they learned of her pregnancy, Mr. Bannon, Mr. Priebus, and Mr. Spicer allegedly "stripped Ms. Delgado of her job responsibilities and duties for … the remainder of her employment with them, from late December 2016 through … late January 2017." *Id.* ¶ 47. Ms. Delgado also contends that she was "completely ignored" during the process of placing former campaign staffers into "high-ranking and well-paying White House jobs," *id.* ¶ 52, and that the defendants "advised the Trump Administration … to remove [her] from the list of incoming White House personnel and to not hire her," *id.* ¶ 55. In sum, Ms. Delgado claims that the defendants "actually terminated and/or

constructively terminated [her] from the Campaign because of her sex, gender, and pregnancy, as well as in retaliation for her complaining of discrimination," *id.* ¶ 53, and that she was "prevented … from obtaining employment with the White House and Federal Government … because of her sex, gender, and pregnancy, and because she complained of discrimination," *id.* ¶ 54.  *See also id.* ¶ 57 (alleging that "[b]ut for" defendants' wrongful conduct "[Ms. Delgado] would have almost certainly been named Deputy Press Secretary").

In December 2019, Ms. Delgado filed a complaint in the Southern District of New York.  *See* Compl., *Delgado v. Donald J. Trump for President, Inc.*, No. 19-cv-11746 (S.D.N.Y. Dec. 23, 2019), ECF 1.  The complaint pleaded a dozen claims under New York law, including promissory estoppel, unlawful discrimination, and tortious interference with economic advantage.  *Id.* ¶¶ 57–97.  It named Donald J. Trump for President, Inc., Trump for America, Inc., Mr. Spicer, Mr. Priebus, and Mr. Bannon as defendants.  *Id.* ¶¶ 5–9.  Following motion practice, Ms. Delgado filed an amended complaint.  The amended complaint likewise pleads a dozen claims under New York law, with federal jurisdiction premised on diversity of citizenship.  *See* FAC ¶¶ 3, 92–135.

## B.    Ms. Delgado's Non-Party Subpoena to Mr. McGahn.

In August 2022, Magistrate Judge Katharine Parker set January 31, 2023 as the deadline for fact discovery in Ms. Delgado's case.  *See* Order, *Delgado v. Donald J. Trump for President, Inc.*, No. 19-cv-11746 (S.D.N.Y. Aug. 16, 2022), ECF 103.  But Ms. Delgado, who is now proceeding *pro se*, obtained numerous extensions that pushed the discovery deadline to April 15, 2024.  *See, e.g.*, Discovery Order and Scheduling Order at 1, *Delgado v. Donald J. Trump for President, Inc.*, No. 19-cv-11746 (S.D.N.Y. Mar. 1, 2024), ECF 204.

On March 7, Ms. Delgado served Mr. McGahn with the non-party subpoena at issue.  *See* Ex. A.  In addition to deposition testimony, the subpoena seeks a raft of communications and documents over a multi-year period.  For example, Ms. Delgado has demanded:

- "All communications … and all documents … regarding, discussing, and/or concerning any complaint, whether formal or informal (including but not limited to concerns raised), made about any staffer/advisor of the 2016 Campaign."

- "All communications … and all documents … regarding, discussing, and/or concerning [Ms. Delgado], at any time."

- "All communications … and all documents … regarding, discussing, concerning, and/or reflecting steps taken in regards to [Ms. Delgado's] role in the White House (December 2016 onward)."

- "All documentation reflecting notices, flyers, information, booklets, and pamphlets provided to 2016 Campaign staffers/advisors regarding how to report discrimination, concerns, complaints, and the like (2015 to January 2017)."

- "All emails, text messages, documents, lists, memoranda, letters, forwarded conversations, forwarded documents, and any communication or document at all, that was forwarded to [Mr. McGahn], supplied to [Mr. McGahn], or on which [Mr. McGahn] was included, by or sent to [Mr. McGahn] by [Mr. Priebus] and/or anyone else, December 2016–May 2017, regarding, concerning, or related to [Ms. Delgado]."

- "All emails, text messages, documents, lists, memoranda, letters, forwarded conversations, forwarded documents, and any communication or document at all, that was forwarded to [Mr. McGahn], supplied to [Mr. McGahn], or on which [Mr. McGahn] was included, by or sent to [Mr. McGahn] by [Mr. Priebus] and/or anyone else, December 2016–May 2017, regarding, concerning, or related to Jason Miller."

Ex. A at 4.

The subpoena noticed Mr. McGahn's deposition for March 25, 2024 and designated the place of compliance as "(via ZOOM) (link will be provided or contact Plaintiff)." Ex. A at 1. Mr. McGahn's timely motion to quash followed.[1]

## ARGUMENT

"Although the Federal Rules of Civil Procedure allow parties wide latitude in seeking discovery … there are nonetheless limits on what a party may obtain." *In re Subpoena to Wang*, 214 F. Supp. 3d 91, 94 (D.D.C. 2016). Two of the most important limits on subpoenas are found in Rule 45(d)(3)(A). Rule 45(d)(3)(A)(iii) shields against disclosure of "privileged or other protected matter." Rule 45(d)(3)(A)(iv) protects the subpoenaed party from "undue burden." The non-party subpoena directed to Mr. McGahn blows past both of those limits, and it violates Rule 45 in other ways too. The Court must quash it.

### A. The Subpoena Targets Information Protected by Attorney-Client Privilege.

First, the subpoena should be quashed because it intrudes upon the attorney-client privilege, "the oldest of the evidentiary privileges," *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 862 (D.C. Cir. 1980). Indeed, Rule 45(d)(3)(A)(iii) provides that the Court "*must*

---

[1] The motion to quash is properly filed in this Court as "the court for the district where compliance is required," Rule 45(d)(3)(A). The subpoena seeks deposition testimony via Zoom. Ex. A at 1. "[F]or depositions to be taken via Zoom, the Court deems the place of compliance to be where the deponent is located." *Chen v. FBI*, 2022 WL 17851618, at *3 (D.D.C. Oct. 18, 2022) (internal quotation marks omitted); *accord, e.g.*, *Patane v. Nestle Waters N. Am. Inc*., 2022 WL 6569823, at *3 (D. Conn. Oct. 4, 2022); *Flores-Kemmerer v. Portfolio Recovery Assocs., LLC*, 2022 WL 612334, at *1 (S.D. Ind. Mar. 2, 2022); *Russell v. Maman*, 2021 WL 3212646, at *2 (N.D. Cal. July 29, 2021). Here, that means Washington, D.C., where Mr. McGahn's law office is located and where he practices. *Cf.* Rule 45(c)(1)(A) ("A subpoena may command a person to attend a … deposition … within 100 miles of where the person resides, is employed, or regularly transacts business in person.")

In addition, the motion is "timely" for purposes of Rule 45(d)(3)(A) because it was filed "within the time set in the subpoena for compliance." *U.S. ex rel. Pogue v. Diabetes Treatment Centers of America, Inc.*, 238 F. Supp. 2d 270, 278 & n.6 (D.D.C. 2002).

*quash* … a subpoena that … requires disclosure of privileged or other protected matter" (emphasis

added). *See also Watts v. SEC*, 482 F.3d 501, 508 (D.C. Cir. 2007) (Kavanaugh, J.) ("The rule

requires that district courts quash subpoenas that call for privileged matter."); 9A Charles Alan

Wright & Arthur R. Miller, FED. PRAC. & PROC. § 2463.1 (3d ed. April 2023 update) ("One of the

most important protections of persons subject to a subpoena is that of privilege.").

Courts in this District have not hesitated to enforce Rule 45(d)(3)(A)(iii) by quashing

subpoenas that ask for privileged or other protected material. *See, e.g.*, *Int'l Union, United Mine*

*Workers of Am. v. CONSOL Energy Inc.*, 2020 WL 7042815, at *5–7 (D.D.C. Dec. 1, 2020);

*United States ex rel. Kammarayil v. Sterling Operations, Inc.*, 2019 WL 464820, at *2 (D.D.C.

Feb. 6, 2019); *In re Slack*, 768 F. Supp. 2d 189, 193–98 (D.D.C. 2011); *Sterne Kessler Goldstein*

*& Fox, PLLC v. Eastman Kodak Co.*, 276 F.R.D. 376 (D.D.C. 2011); *Harris v. Koenig*, 2010 WL

4910261, at *3 (D.D.C. Dec. 2, 2010); *Williams v. Johnson*, 597 F. Supp. 2d 107, 116–19 (D.D.C.

2009); *Chang v. United States*, 512 F. Supp. 2d 62, 64 (D.D.C. 2007); *see also In re Wang*, 214 F.

Supp. 3d at 95–96 (staying deposition due to privilege concerns). Courts elsewhere have done the

same. *See, e.g.*, *Pernell v. Fla. Bd. of Governors of State Univ.*, 84 F.4th 1339, 1341, 1345 (11th

Cir. 2023); *Winston & Strawn LLP v. Janssen Prod., L.P.*, 2022 WL 3588106, at *3 (D.N.J. Aug.

22, 2022); *Apex Mortg. Corp. v. Great N. Ins. Co.*, 2018 WL 318481, at *4 (N.D. Ill. Jan. 8, 2018);

*Unigene Labs., Inc. v. Apotex, Inc.*, 2007 WL 2972931, at *3–4 (N.D. Cal. Oct. 10, 2007).

*Eastman Kodak* shows how the rule is applied. There, as here, a non-party attorney moved

to quash a subpoena issued in connection with litigation in another forum. The attorney argued

that the court had to quash the subpoena because it sought testimony that "will necessarily touch

on information protected by attorney-client privilege." 276 F.R.D. at 377. (internal quotation

marks omitted). The court agreed, citing Rule 45 and reasoning that to permit the deposition would

"disrupt the effective operation of the adversarial system by chilling the free and truthful exchange of information between attorneys and their clients." *Id.* at 380–81; *see also id.* (collecting cases).

The Court should do the same here. Indeed, this dispute is even more straightforward than *Eastman Kodak*, because the subpoena to Mr. McGahn does not merely "touch on" privileged information—privileged information is its overriding focus. The subpoena specifically and repeatedly demands that Mr. McGahn produce documents shared with or by him in his capacity as legal counsel to the Trump Campaign, Trump Transition, or the President. Ex. A at 4. Confirming as much, Ms. Delgado explained to Magistrate Judge Parker that she hopes to depose Mr. McGahn precisely because he was "counsel at the time." Ex. B at 4. It is thus inconceivable that the sought-after documents and testimony would not be subject to attorney-client privilege.

## B. The Subpoena Targets Information Protected by Executive Privilege.

Likewise, the Court should quash the subpoena because it threatens to intrude upon executive privilege. *See Watts*, 482 F.3d at 503, 504, 510 (recognizing that Rule 45(d)(3)(A)(iii) reaches executive privilege). Ms. Delgado intends to question Mr. McGahn about White House decisions regarding "White House employees' security clearance[s]." Ex. B at 4. Those questions would almost certainly implicate the deliberative-process and national-security components of executive privilege. And a court order requiring Mr. McGahn to answer such questions would unavoidably raise separation-of-powers concerns. The Supreme Court has instructed lower courts to exercise caution in such circumstances, reasoning that "occasion[s] for constitutional confrontation … should be avoided whenever possible." *Cheney v. U.S. District Court for the District of Columbia*, 542 U.S. 367, 389–90 (2004) (internal quotation marks omitted).

The Supreme Court has recognized the "valid need for protection of communications between high Government officials and those who advise and assist them in the performance of their manifold duties." *United States v. Nixon*, 418 U.S. 683, 705 (1974). After all, "[h]uman

experience teaches that those who expect public dissemination of their remarks may well temper candor … to the detriment of the decisionmaking process." *Id*. Executive privilege therefore extends to Executive Branch deliberations, necessarily including deliberations about who will fill key White House positions. *See Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8–9 (2001); *see also Assertion of Executive Privilege Concerning the Special Counsel's Interviews of the Vice President and Senior White House Staff*, 32 Op. O.L.C. 7, 9 (2008). Moreover, as an institutional prerogative, the privilege outlasts the tenure of any officeholder. *See Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 448–49 (1977); *Trump v. Thompson*, 142 S. Ct. 680, 681 (2022) (statement of Kavanaugh, J.) ("Without sufficient assurances of *continuing* confidentiality, Presidents and their advisers would be chilled from engaging in the full and frank deliberations upon which effective discharge of the President's duties depends.").

The Supreme Court also has recognized the President's authority and duty "to classify and control access to information bearing on national security and to determine whether an individual is sufficiently trustworthy to occupy a position in the Executive Branch that will give that person access to such information." *Dep't of the Navy v. Egan*, 484 U.S. 518, 527 (1988). Indeed, "since the Washington Administration, Presidents and their senior advisers have repeatedly concluded that our constitutional system grants the executive branch authority to control the disposition of secret information." *Whistleblower Protections for Classified Disclosures*, 22 Op. O.L.C. 92, 97 (1998) (statement of Randolph D. Moss, Deputy Assistant Attorney General) . Executive privilege therefore reaches "national security" information. *See, e.g.*, *Nixon*, 418 U.S. at 706.

The non-party subpoena directed to Mr. McGahn runs headlong into executive privilege. Ms. Delgado seeks information about whether she "would not have qualified for a position at the White House due to security clearance issues." Discovery Order and Scheduling Order at 2, ECF

204.  And she has indicated that she would ask why others did or did not receive security

clearances.  *See* Ex. B at 8–15 (identifying individuals Ms. Delgado believes should not have

received clearances if Ms. Delgado could not).  Even assuming Mr. McGahn possesses such

information years after departing the Office of White House Counsel (and he does not), its

disclosure would undermine the prerogatives of the Executive Branch to protect the confidentiality

of its deliberations and to control the dissemination of classified information.  Put simply, a non-

party subpoena directed to the former Counsel to the President about decisions made regarding

White House staffing and security clearances is "not a routine discovery [request]."  *Cheney*, 542

U.S. at 385.  Instead, "special considerations control [given] the Executive Branch's interest in

maintaining the autonomy of its office and safeguarding the confidentiality of its

communications."  *Id.*  This Court should adhere to those "special considerations" and preclude

Ms. Delgado from demanding information that is protected by executive privilege.

**C.    The Subpoena Imposes an Undue Burden on Mr. McGahn.**

The subpoena also should be quashed because it seeks to impose an "undue burden" on

Mr. McGahn in violation of Rule 45(d)(3)(A)(iv).  *See Gouse v. District of Columbia*, 359 F. Supp.

3d 51, 56 (D.D.C. 2019) ("[Rule 45] mandates that a district court quash an otherwise valid third-

party subpoena [that] … 'subjects a person to undue burden.'" (quoting Rule 45(d)(3)(A)(iv)).

Whether a subpoena imposes an "undue burden" depends "on the specific facts of the

case."  *Dell Inc. v. DeCosta*, 233 F. Supp. 3d 1, 3 (D.D.C. 2017).  As a general matter, courts "must

balance the interests served by demanding compliance with the subpoena against the interests

furthered by quashing it."  *Id.* (internal quotation marks omitted).  In doing so, "courts should

consider relevance, the need of the party for the documents, the breadth of the document request,

the time period covered by it, the particularity with which the documents are described[,] and the

burden imposed."  *Id.* (internal quotation marks omitted).  When a witness would assert privilege

as to some or all documents, "prepar[ing] a privilege log" constitutes part of his burden. *Id*. The witness's status as a non-party also weighs in favor of finding undue burden. *See Watts*, 482 F.3d at 509; *see also Cusumano v. Microsoft Corp.*, 163 F.3d 708, 717 (1st Cir. 1998) ("concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight"). Finally, "courts must … consider Rule 26," *Gouse*, 359 F. Supp. 3d at 56, which similarly restricts discovery of information that "can be obtained from some other source that is more convenient, less burdensome, or less expensive," Rule 26(b)(2)(C)(i).

This non-party subpoena presents a textbook example of undue burden. Magistrate Judge Parker has indicated that the only potentially relevant information Mr. McGahn may possess concerns "information relevant to Defendants' defense that Plaintiff would not have qualified for a position at the White House due to security clearance issues." Discovery Order and Scheduling Order at 2, ECF 204. But the subpoena seeks a wide range of communications and other materials that have nothing to do with that defense—and the demand for documents spans the course of many years. Ex. A at 4. The subpoena is therefore grossly overbroad. *Cf. Colonial BancGroup, Inc. v. PricewaterhouseCoopers LLP*, 110 F. Supp. 3d 37, 43 (D.D.C. 2015) (quashing subpoena for materials with only an "attenuated relevance" to the claims).

The subpoena also fails to describe the sought-after documents with the requisite particularity—by a wide margin. For example, Ms. Delgado seeks "All communications … and all documents … regarding, discussing, and/or concerning any complaint, whether formal or informal (including but not limited to concerns raised), made about any staffer/advisor of the 2016 Campaign." Ex. A at 4. This could cover anything from legitimate complaints about harassment to one-off text messages about a staffer's tardiness.

At the same time, complying with the subpoena would impose a significant burden on Mr.

McGahn, a non-party and attorney, both in terms of time and expense. Given the subpoena's broad and ill-defined sweep, the likely need for an extensive privilege log, the potential obligation to consult the Department of Justice in connection with issues of executive privilege, the demand to appear personally to give testimony, and the short timeframe allowed for compliance, Mr. McGahn would have to devote immediate and substantial attention to this matter—to the exclusion of his obligations to current clients.

The clearest indication that the subpoena imposes an undue burden, however, is that it seeks information Ms. Delgado can obtain "from some other source that is more convenient, less burdensome, or less expensive," Rule 26(b)(2)(C)(i)—namely, the parties to the litigation. Indeed, there is no need to speculate about what information might be available elsewhere: Ms. Delgado has *conceded* that she is turning to Mr. McGahn at this late stage in discovery because "Mr. Priebus stated during his deposition that … he reached out to Don McGahn" and "forwarded [certain] emails and documents … to Don McGahn," but "***Mr. Priebus has produced no documents in this matter, despite extensive requests***." Ex. B at 4 (emphasis in original). Confirming her motivation, Ms. Delgado has further explained that "***It appears there are documents, enormously relevant to this matter, that have yet to be produced and have been withheld.***" *Id.* (emphasis in original).

Ms. Delgado is certainly entitled to take discovery from Mr. Priebus (and others). If Ms. Delgado believes any defendant is shirking discovery obligations, there is a tried-and-true remedy available to her: a motion to compel under Rule 37(a). If that fails, there is a back-up option: a request for sanctions under Rule 37(b). What Ms. Delgado cannot do, however, is use a non-party subpoena as a substitute for those conventional measures. If a litigant could simply subpoena non-parties when confronted with typical foot-dragging, Rule 26(b)(2)(C)(i) would be reduced to an empty shell, and non-parties would be routinely conscripted into costly litigation. Fortunately,

that is not the law. *See Watts*, 482 F.3d at 509 (explaining that "[t]he Rule 45 'undue burden' standard requires district courts … to be generally sensitive to the costs imposed on third parties," and identifying Rule 26(b) as a particularly important parameter); *Dunlap v. Presidential Advisory Comm'n on Election Integrity*, 319 F. Supp. 3d 70, 82–83 & n.4 (D.D.C. 2018) (same).

## D.     The Subpoena Fails to Designate a Place of Compliance.

If all this were not enough, the subpoena also should be quashed because it fails to designate a place of compliance as Rule 45(a)(1)(A)(iii) requires. Instead, the subpoena lists "(via Zoom) (link will be provided or contact Plaintiff)." Ex. A at 1. But "a subpoena that does not specify all information required by [Rule 45], *including the place of compliance*, is facially invalid." *United States v. Google LLC*, 2023 WL 5725518, at *19 (N.D. Cal. Sept. 5, 2023) (emphasis added). Courts have therefore refused to compel compliance with subpoenas that list "Zoom" rather than a physical location. *See, e.g.*, *Fed. Ins. Co. v. Tungsten Heavy Powder & Parts, Inc.*, 2022 WL 2820667, at *1, *2, *7 (S.D. Cal. July 18, 2022). This Court should do the same. Failure to specify a place of compliance is not some trivial deficiency. It impairs the witness's ability to assess the subpoena's conformity with Rule 45(c) and the proper forum for a motion to quash under Rule 45(d). This Court should not overlook such a glaring defect.

## CONCLUSION

For the reasons stated above, Mr. McGahn respectfully requests that the Court enter an order granting the motion and quashing the subpoena.

Dated: March 22, 2024

Respectfully submitted,

JONES DAY

Michael R. Shumaker
  *pro hac vice* forthcoming
Christopher N. Thatch
  D.C. Bar No. 980227
David K. Suska
  *pro hac vice* forthcoming
51 Louisiana Avenue, NW
Washington, DC 20001
(202) 879-3939
mrshumaker@jonesday.com
cthatch@jonesday.com
dsuska@jonesday.com

By: /s/ Christopher N. Thatch
    Christopher N. Thatch

    *Counsel for Donald F. McGahn II*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 22, 2024, I filed the foregoing document with the Clerk of Court for the United States District Court for the District of Columbia by emailing a true and correct copy to DCD_Intake@DCD.USCourts.gov.  I further certify that on March 22, 2024, I served Arlene Delgado, who issued the subpoena that is the subject of the motion to quash, and who is proceeding *pro se* in the underlying litigation in the United States District Court for the Southern District of New York, via email and mail.

/s/ Christopher N. Thatch
Christopher N. Thatch

# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

**Donald F. McGahn II,**
**Petitioner,**

**Case No. 1:24-mc-00038-JMC**
**Hon. Jia M. Cobb**

**v.**

**Arlene Delgado,**
**Respondent**

<u>Underlying Proceeding</u>:

Arlene Delgado, Plaintiff,

v.

Donald J. Trump for President, Inc.; Sean Spicer; Reince Priebus; Steve Bannon,
Defendants

Case No. 19-cv-11764 (Southern District of New York)

**<u>RESPONDENT'S OPPOSITION TO PETITIONER'S MOTION TO QUASH</u>**

This matter pertains to a March 2024 subpoena for deposition, *duces tecum*, on Donald F.

McGahn (hereinafter, **"Petitioner McGahn"**), by Arlene J. Delgado (hereinafter, **"Respondent**

**Delgado"**) in a matter pending in the Southern District of New York (Case No. 19-cv-11764). [A

copy of the documents requested of Petitioner McGahn is found on p. 5 of Petitioner McGahn's

Motion.] Respondent Delgado is the plaintiff in an employment discrimination (pregnancy

discrimination) matter against the Donald J. Trump for President Campaign, stemming from

Respondent Delgado's time on the Trump Campaign in 2016. Mr. Sean Spicer is a co-defendant

in the lawsuit, as is Mr. Reince Priebus.

Petitioner McGahn was reportedly counsel to the Trump Campaign and Trump Transition

Team in 2016, and thereafter served a White House General Counsel for approximately two

years, departing in late 2018. He subsequently resumed his role as a partner within Jones Day, where he works today.

Respondent Delgado sought to depose Petitioner McGahn as a third-party witness, largely because Defendant-Priebus stated under oath earlier this year, during Defendant-Priebus's February 8, 2024 deposition, that he did not possess any of the relevant documents but had instead forwarded everything to Petitioner McGahn.

The S.D.N.Y. Judge considered Respondent Delgado's subsequent request to take the deposition of Petitioner McGahn; agreed that Petitioner McGahn was likely to possess relevant information; and granted the deposition request on March 1, 2024. Respondent Delgado filed the subpoena for deposition, attaching a notice of documents requested. Subsequently, a colleague of Petitioner McGahn's at Jones Day, Christopher Thatch (hereinafter, "**Mr. Thatch**"), subsequently appeared, accepted service, and introduced himself to Respondent Delgado, asking to set up a call to discuss the subpoena.

Mr. Thatch and Respondent Delgado spoke on March 19th. During the cordial and friendly call, Mr. Thatch repeatedly sought to persuade Respondent Delgado to withdraw the subpoena, repeatedly assuring her that it was highly unlikely Petitioner McGahn possessed any responsive documents whatsoever; said it was quite possible that "this Mr. Priebus" had not been truthful in stating the documents were provided to Petitioner McGahn; and stated that Respondent Delgado should save herself the "motion practice." Mr. Thatch asked whether, if Petitioner McGahn provided her a statement stating he had no such documents, Respondent Delgado would withdraw the subpoena. This struck Respondent Delgado as both premature and inappropriate. Respondent Delgado suggested a reasonable, efficient compromise: Mr. Thatch should first investigate *whether* Petitioner McGahn has responsive documents, and subsequently

she and Mr. Thatch could reconvene and discuss what next steps would be appropriate, depending on the search results. Respondent Delgado even helpfully provided some search terms that could prove useful.

Three days later, March 22nd, Mr. Thatch circled back with Respondent Delgado and stated that he  had not found any "underlying documents or attachments", when using the search terms suggested. Mr. Thatch also simultaneously attached a copy of the Motion to Quash they intended to file, which he had apparently already prepared, oddly enough, given that their position was that they had no documents.

This struck Respondent Delgado as a curious and eyebrow-raising position for a witness and counsel to take: 'We have no documents, yet we are also drafting a 14-page motion to quash the subpoena.' Surely the easier, and more judicially efficient, route, if there *truly* are no responsive documents in Petitioner McGahn's possession, is to allow the subpoena to proceed and then simply answer the *duces tecum* notice with 'We have no documents to provide.' Moreover, to the extent any *are* found, yet are privileged, even then there is an appropriate option*: a privilege log*.

When pressed by Respondent Delgado, Mr. Thatch conceded that the firm only searched underlying documents and attachments and did not conduct a thorough search.

It is worth quickly noting that Petitioner McGahn and his counsel can safety be presumed to do all they can to assist disgraced, twice-impeached former president Donald J. Trump and the Trump Campaign, by doing their best to avoid compliance with this subpoena (responsive documents would potentially help Respondent Delgado's case against the Trump Campaign). Consider a November 2020 article by renowned legal scholar, Elie Mystal, about Jones Day:

> **Jones Day**, per reports, **earned a reported $20 million from 2016-2020** from its work for the Trump Campaign and affiliated entities and is known as, generally, **a law firm that is very loyal to Mr. Trump and the Trump Campaign.**

-Elie Mystal, *Don't Expect Jones Day to Stop Enabling Donald Trump. The law firm has been the president's biggest legal booster—and beneficiary—from the start. It's not going to stop now,* The Nation, November 2020.[1] (emphasis added)

Petitioner McGahn himself reportedly has a pattern of avoiding subpoenas that might prove harmful to former president Trump, according to Mr. Mystal (and as widely reported elsewhere):

> The most famous hire [by the Trump White House] was **Don McGahn**, who spent almost two years as White House counsel **and continues to ignore a congressional subpoena to testify about his knowledge of Trump's attempts to obstruct justice**. While McGahn has since returned to Jones Day, he was able to use his perch in the counsel's office to help reshape the federal judiciary under Trump. In addition to overseeing district court and circuit court appointments, McGahn was heavily involved in the nominations of Supreme Court justices Neil Gorsuch and alleged attempted rapist Brett Kavanaugh. Gorsuch and Kavanaugh weren't even on the "list" of potential nominees Trump produced ahead of the 2016 election. McGahn, as much as anybody, pushed those names to the forefront.

Id. (emphasis added)

The Motion to Quash should be denied.

*First*, per this district's own precedent, "**Limiting discovery and quashing subpoenas goes against courts' general preference for a broad scope of discovery**." *North Carolina Right to Life, Inc. v. Leake,* 231 F.R.D. 49, 51 (D.D.C.2005) (emphasis added)

*Second*, the individual or entity seeking relief from compliance (i.e., Petitioner McGahn) **bears the burden** of demonstrating that a subpoena should be modified or quashed. See *Linder v. Dep't of Defense,* 133 F.3d 17, 24 (D.C.Cir.1998); *In re Micron Tech., Inc. Sec. Litig.,* 264 F.R.D. 7, 9 (D.D.C.2010). Thus, Petitioner McGahn bears the burden here. He does not meet it and the subpoena should be quashed.

---

[1] https://www.thenation.com/article/politics/jones-day-election/

As other federal courts have explained, ***the most sensible course of action, respecting the subpoenaing-party's right to discovery whilst also safeguarding against breaching of privileged information, is to permit the deposition to go forward whereupon, of course, privilege-objections can be made – and same with the documents: permit the subpoena to move forward whereupon, of course, a privilege log can substitute for any document' production when, in fact, privileged documentation is sought***. See e.g., *Zino v. Whirlpool Corp.*, 47 F. Supp. 3d 561 (N.D. Ohio 2014) ("***The court denies the motion to quash, finding the preferable course is to allow the deposition to take place, with the normal provisions regarding questions concerning privileged matters***. See, e.g., NLRB v. Modern Drop Forge Co., 108 F.3d 1379, 1997 WL 120572, at *2-*3 (7th Cir. Mar. 14, 1997); Jamison v. Miracle Mile Rambler, Inc., 536 F.2d 560, 565-566 (3d Cir. 1976); McKenna v. Nestle Purina PetCare Co., No. 2:05CV0976, 2006 WL 2612980, at *2(S.D. Ohio Sept. 11, 2006) (deposition ordinarily convened, with opportunity to object to improper questions)".)

Respondent Delgado nonetheless will address each of Petitioner McGahn's arguments, in turn. Petitioner McGahn's Motion to Quash, in sum, argues three grounds:

> In short, the subpoena targets information protected by attorney-client privilege and executive privilege, see Fed. R. Civ. P. 45(d)(3)(A)(iii); subjects Mr. McGahn to an undue burden, see Fed. R. Civ. P. 45(d)(3)(A)(iv); and fails to specify a place of compliance, see Fed. R. Civ. P. 45(a)(1)(A)(iii).

-Petitioner McGahn's Motion to Quash, p. 1-2

None of these three grounds has merit, as follows:

I.   Petitioner McGahn's argument that the subpoena targets information protected by attorney-client privilege is baseless.

Petitioner McGahn's argument that the subpoena targets information protected by attorney-client privilege is baseless. The Motion argues: "First, the subpoena should be quashed because it intrudes upon the attorney-client privilege…. Indeed, Rule 45(d)(3)(A)(iii) provides

that the Court 'must quash ... a subpoena that ... requires disclosure of privileged or other protected matter'."

But this is a strawman argument. Respondent Delgado does *not* seek privileged communications/materials. She respects the importance of attorney-client privilege. Petitioner McGahn, however, is attempting to avail himself here of a protection to which he has yet to establish a right, i.e. *he has not shown, or even persuasively argued, that the materials sought are <u>actually</u> attorney-client privileged*. Broad-brush, blanket 'The information sought is privileged!' declarations are generally not indulged by district courts: <u>See e.g.</u>, *In the Matter of 1- 800 Contacts, Inc.*, 2016 WL 7634657, at *8 (***ordering discovery because "[a] conclusory, blanket assertion of privilege is not a sufficient basis for denying a request for discovery...")*** Consider, e.g., this category found in the subpoena:

> All emails, text messages, documents, lists, memoranda, letters, forwarded conversations, forwarded documents, and any communication or document at all, that was forwarded to [Mr. McGahn], supplied to [Mr. McGahn], or on which [Mr. McGahn] was included, by or sent to [Mr. McGahn] by [Mr. Priebus] and/or anyone else, December 2016–May 2017, regarding, concerning, or related to [Ms. Delgado].

-Respondent's subpoena on Petitioner McGahn

How, exactly, does Petitioner McGahn claim that such material (information written by others that is simply *forwarded* to him) is automatically 'privileged information'? Consider, moreover, a multitude of situations that would *negate* privilege therein, e.g.,: a) A document or email string, simply forwarded to Petitioner McGahn, even by a client, would not automatically create a privilege for that underlying communication or document; (b) The CC'ing of a non-attorney would usually negate the privilege, even if the email seeks legal advice. Yet Petitioner McGahn wants this Court to cast a broad brush and agree with him that anything/everything sent to him is protected under the cloak of attorney-client privilege.

Second, even assuming, *arguendo*, that some of the categories would result in some responsive documents that are privileged, or partially privileged, Petitioner McGahn's argument nonetheless still misleads the Court, given that Respondent Delgado's subpoena does *not* demand attorney-client privileged material be produced to her – on the contrary, **her subpoena clearly states at the bottom, in CAPS, that any attorney-client privileged documents can be withheld and a privilege log provided.**

The Motion then argues: "Even assuming Mr. McGahn possesses information relevant to the claims or defenses, he would have acquired that information only in his role as legal counsel to the Trump Campaign, Trump Transition, or Trump Administration." This is false argument. Again, as noted above, simply because an email or document is sent to an attorney does not automatically protect that email or document as privileged. Surely, attorneys of Petitioner McGahn Mr. Thatch's experience know this is misleading and know that **simply because a document is forwarded to an attorney, even if done so in that attorney's capacity as an attorney, does not automatically render the <u>underlying</u> document – or even the communication – privileged.** Moreover, another example: Even if the entirety of the email to Petitioner McGahn were seeking legal advice, yet a non-attorney was copied, this would also render the document ineligible for privilege-protection.

Clearly, Petitioner McGahn and his counsel, Mr. Thatch, feign ascribing to a very rudimentary, and inaccurate, understanding of attorney-client privilege – one which they *know* is incorrect. Namely, they wish to push the common misconception that 'Anything sent to an attorney is privileged!" That is not true, and never has been. As noted even in Wright and Miller:

> **It is well-established that one cannot 'privilege' pre-existing documents by delivering them to a lawyer**. *Southeastern Pennsylvania Transp. Authority v. Caremarkpcs Health, L.P.*, 254 F.R.D. 253, 257 (E.D. Pa. 2008) (cannot privilege documents by routing them through attorney). *National Union Fire Ins. Co. v.*

*Valdez,* Tex. 1993, 863 S.W.2d 458, 460…. Eutectic Corp. v. Metco., Inc., D.C.N.Y.1973, 61 F.R.D. 35, 37. *In re Avantel, S.A.*, C.A.5th, 2003, 343 F.3d 311, 321(**merely sending copies of communications to corporate lawyer does not suffice to make them privileged**); *In re Sulfuric Acid Antitrust Litigation, D.C.Ill.2006*, 235 F.R.D. 407, 428 n. 17 (**sending copy of communication between corporate employees to attorney does not make the original privileged**); *SmithKlineBeecham Corp. v. Apotex Corp.,* D.C. Pa.2005, 232 F.R.D. 467, 478 (**routing communications through attorney does not make them privileged**)…. **Documents do not automatically become privileged simply because they are given to or reviewed by an attorney. An existing, non-privileged document which is forwarded to an attorney does not then become privileged.**

In short, "a pre-existing document or email string, conveyed by a client to an attorney, does not become privileged as a result of the transfer. The content within the document itself must be privileged for the document to be protected by the privilege."[2] Consider, e.g., the following hypothetical: An oil spill occurs off an Alaskan coast through negligent use of the wrong machinery. The oil rig captain emails a top executive at the oil and gas company, Roger, regarding the colossal error made by his team. Roger, the executive, then forwards the email to the company's attorney, Dan. Years later, the resulting lawsuit against the company includes a subpoena for communications/materials about the spill, on Dan, the attorney who was, at the time of the spill, the company's attorney. The attorney claims, "Attorney-client privilege! Motion to quash!" Not so fast: the mere fact that an existing email was forwarded to an attorney does *not* conceal it under the cloak of attorney-client privilege. After all, if that were true, all a company would need to do to conceal any and all 'smoking guns' forever would be to forward everything to an attorney and, *voila*!, it is forever hidden! No, an underlying document,

---

[2] Even basic articles online address this fundamental and obvious truth. See e.g.,:
https://resourcehub.bakermckenzie.com/en/resources/global-attorney-client-privilege-guide/north-america/united-states/topics/02---type-of-privilege#:~:text=Importantly%2C%20a%20pre%2Dexisting%20document,be%20protected%20by%20the%20privilege.

attachment, communication, etc., is discoverable and is *not* protected, generally. Granted, if the oil company executive had written, at the top of the forwarded-email, his own message to the attorney, seeking legal advice, *that* portion would be shielded, as would any response from the attorney (provided, of course, that no non-attorneys were copied on either). But the underlying material/forward itself is not, and never was, attorney-client privileged.

Such is part and parcel of what Respondent Delgado seeks. It is obvious Respondent Delgado does not seek attorney-client privileged materials and, to the extent that Petitioner McGahn locates responsive material that is privileged, he is free to utilize a privilege log, as the subpoena makes clear.

II.    Petitioner McGahn's argument that the subpoena targets information protected by executive privilege is also baseless.

Similarly, Petitioner McGahn's claim that the subpoena targets information protected by *executive* privilege (pertaining to his time in the White House) is also baseless. Petitioner McGahn explicitly concedes that, same as with attorney-client privilege, he is again making a blanket assertion of privilege – without any actual basis. His own language makes this clear: He writes that the subpoena "threatens to" "intrude upon" executive privilege and that the questions would "almost certainly" involve executive privilege. None of this sounds very definite.

Clearly, the judge in the Southern District of New York, presiding over discovery in this case, begs to differ. In fact, in her order granting the taking of Petitioner McGahn's deposition, the judge specifically noted that Petitioner McGahn can shed light on White House processes and procedures (which she clearly felt would not necessarily violate executive privilege).

It is worth noting that this circumstance is unique in that the judge (who was very much aware that Petitioner McGahn was an attorney for the Campaign, Transition, and White House) nonetheless green-lit his deposition. Petitioner McGahn's Motion to Quash is nothing but

9

another bite at the apple, hoping a different judge in a different district will yield a different result.

III.   Petitioner McGahn's argument that the subpoena subjects Mr. McGahn to an undue burden is meritless and not credible.

Petitioner McGahn's argument that the subpoena subjects Petitioner McGahn to an undue burden is meritless and not credible.

**First**, in this age of electronic mail, it takes mere *seconds* to search years of email communications, particularly when limited to a certain time period (and much of the subpoena is – e.g.,, the emails about Respondent Delgado and/or her pregnancy would be contained within a small period, from late 2016-early 2017, as the subpoena notes).

**Second**, according to Mr. Thatch's representation to Respondent Delgado on March 22nd, a search revealed no responsive 'underlying documents or attachments.' Yet, simultaneously, they *now* claim that a privilege log would be an incredibly burdensome undertaking – all whilst having told Respondent Delgado that nothing was found. Perhaps Petitioner McGahn and Mr. Thatch should choose one argument and stick to it, as both cannot be true: Either there are so many responsive documents that a privilege log would be back-breaking exercise (as they now argue) or there are, as Mr. Thatch already indicated last month, essentially none (or very few) responsive documents, in which case their 'burdensome privilege log' argument is, respectfully, a farce.

**Third**, to try to argue undue burden, Petitioner McGahn makes inaccurate representations, e.g., he claims that the subpoena demands documents spanning "the course of many years." This is patently false, as is evidence from the subpoena. Even when including Petitioner McGahn's time in the White House (some of which he would likely decline to answer

on grounds of executive privilege), at most the subpoena time-period extends from late 2016 –

2018 – i.e., a mere two years.[3]

He also argues:

> For example, Ms. Delgado seeks "All communications ... and all documents ...
> regarding, discussing, and/or concerning any complaint, whether formal or
> informal (including but not limited to concerns raised), made about any
> staffer/advisor of the 2016 Campaign." Ex. A at 4. This could cover anything from
> legitimate complaints about harassment to one-off text messages about a staffer's
> tardiness.

> But this is illogical. Why would Petitioner McGahn have complaints about a Campaign

employees' "tardiness"? This is inventing ludicrous scenarios, to try to conjure an image to this

Court of Petitioner McGahn having *thousands* of potential emails about Respondent Delgado. He

does not. It is not plausible that he would. He would likely not even have a hundred emails about

Respondent Delgado.

Petitioner McGahn's argument goes so far as to claim that the simple subpoena, which is

clearly narrowly tailored, is "grossly overbroad." To do so, he inaccurately quotes the judge's

order, writing, "Magistrate Judge Parker has indicated that the **only** potentially relevant

information Petitioner McGahn may possess concerns information relevant to Defendants'

defense that Plaintiff would not have qualified for a position at the White House due to security

clearance issues." (Petitioner's McGahn's Motion to Quash, p. 11, emphasis added) This is false.

At no point in the judge's order did the judge state that such is the "only" relevance of Petitioner

McGahn – she only cited such as a quick example of his relevance. All that notwithstanding, the

appropriate and judicially efficient course of action was to work with Respondent Delgado on

---

[3] Only one category – communications about Respondent Delgado – has no specific time frame and could
theoretically extend until present day but it is extremely likely Petitioner McGahn would have any documents about
Respondent Delgado past 2018 or 2019.

cooperatively narrowing a scope on a category, if indeed Petitioner McGahn felt he would have too many responsive documents. This is routinely done in litigation. They never did so.

**Fourth and lastly**, Petitioner McGahn claims Respondent Delgado could and should simply obtain the information from Mr. Priebus. But (a) Mr. Priebus is not the only individual who would have forwarded materials to Petitioner McGahn; *and* (b) Respondent Delgado already tried to obtain the documents from Mr. Priebus, who washed his hands of it claiming they were in the possession of Petitioner McGahn. It is *a game of hot potato* – with Defendant-Priebus saying 'I sent everything to McGahn' and McGahn saying 'Don't look at me, I don't know what he's talking about and don't have anything; and, P.S. if I did, it's privileged but you can't have a privilege log!' This is precisely why federal courts permit deposing, and obtaining documents from, third-party witnesses.

There is, quite clearly, no substantial burden presented here, much less undue burden. Petitioner McGahn and his law firm simply seek to curry favor with President Trump and the Trump Campaign, by stonewalling Respondent Delgado's subpoena that could prove helpful to her case.

IV.   Petitioner McGahn's argument that the subpoena fails to specific a "place of
      compliance" is meritless.
      Petitioner McGahn's final argument - that the subpoena fails to specific a "place of
compliance" -- is not only meritless but knowingly so. A deposition to be taken by ZOOM, as this one was, generally *cannot* list a physical place of compliance in advance, as it is impossible for the issuing party to know from what preferred location the deponent will choose to appear (especially when the witness-deponent is an individual who travels often and might very well

appear for deposition out of a hotel mid-business-trip). It is not surprising that, despite the lengthy Motion to Quash, Petitioner McGahn dedicates a mere paragraph to this 'argument.'

Petitioner McGahn writes: "Courts have therefore refused to compel compliance with subpoenas that list "Zoom" rather than a physical location. *See, e.g., Fed. Ins. Co. v. Tungsten Heavy Powder & Parts, Inc.*, 2022 WL 2820667, at *1, *2, *7 (S.D. Cal. July 18, 2022)." Notice that, despite claiming that "courts" (plural) have held such, ***he only cites a single case,*** on the other side of the country (California). Nevertheless, Respondent Delgado read the case that allegedly (according to Petitioner McGahn) held that a subpoena for a virtual deposition would nonetheless, confoundingly, need to list a physical location. Upon reading that case, however, it is clear that case is inapplicable here, and Petitioner McGahn miscategorized it: That California district court was clear that its concern with the "by ZOOM" listing in the subpoena *was because the parties in that case had not agreed to conduct depositions electronically*, writing:

> Parties may stipulate to conduct video depositions through electronic means. *See generally Herrington*, 354 F. Supp. 3d at 710 ("parties may stipulate . . . that a deposition be taken by telephone or other remote means"). Where there is no such mutual agreement, however, this Court will not permit a party's Zoom designation to vitiate the stated purpose of the federal rules. *See Black*, 2019 WL 1877070, at *5 (recognizing the importance of protecting nonparties from adjudicating a dispute in a distant forum). In this case, the parties did not agree to a remote, videoconference deposition.

Id. p-15-16.

In Respondent Delgado's case, the parties have (indeed, at the Court's suggestion) agreed to conduct all depositions (including even the parties' depositions) via ZOOM and all have been conducted as such, as the docket and orders reflect. It is disappointing to Respondent Delgado that Petitioner McGahn's Motion would misuse caselaw to attempt to mislead this Court.

But most importantly, Footnote 1 of Petitioner McGahn's own Motion (p. 6) makes it abundantly clear that he is well aware of where 'compliance' takes place (the district where the deponent/subpoenaed individual resides):      `

> The motion to quash is properly filed in this Court as "the court for the district where compliance is required," Rule 45(d)(3)(A). The subpoena seeks deposition testimony via Zoom. Ex. A at 1. "[F]or depositions to be taken via Zoom, the Court deems the place of compliance to be where the deponent is located." Chen v. FBI, 2022 WL 17851618, at *3 (D.D.C. Oct. 18, 2022) (internal quotation marks omitted); accord, e.g., Patane v. Nestle Waters N. Am. Inc., 2022 WL 6569823, at *3 (D. Conn. Oct. 4, 2022); Flores-Kemmerer v. Portfolio Recovery Assocs., LLC, 2022 WL 612334, at *1 (S.D. Ind. Mar. 2, 2022); Russell v. Maman, 2021 WL 3212646, at *2 (N.D. Cal. July 29, 2021). Here, that means Washington, D.C., where Mr. McGahn's law office is located and where he practices. Cf. Rule 45(c)(1)(A) ("A subpoena may command a person to attend a ... deposition ... within 100 miles of where the person resides, is employed, or regularly transacts business in person.")

-Petitioner's Motion to Quash, p. 6, Footnote 1

Indeed, Petitioner was clearly on notice and aware of how to comply, given his filing of a Motion to Quash *and* his filing such in the appropriate venue.

<u>CONCLUSION</u>

In conclusion, for all of the foregoing reasons, Petitioner McGahn failed to meet his high burden of showing why this Court should block Respondent Delgado's right to discovery via subpoena on him, and thus Respondent Delgado respectfully and humbly requests that this Court DENY his Motion to Quash and permit the subpoena to go forward.

Respectfully and humbly submitted,

Arlene Delgado

*Respondent, Pro-Se*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on April 19, 2024, I filed the foregoing document with the Clerk of Court for

the United States District Court for the District of Columbia by emailing a true and correct copy

to DCD_Intake@DCD.USCourts.gov. I further certify that on April 19, 2024, I served Donald

McGahn, Petitioner, via counsel Christopher Thatch, via email and U.S. mail.

Arlene Delgado

*Respondent, Pro-Se*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

**Donald F. McGahn II,**
**Petitioner,**                                          **Case No. 1:24-mc-00038-JMC**
                                                         **Hon. Jia M. Cobb**
**v.**

**Arlene Delgado,**
**Respondent**

Underlying Proceeding:
Arlene Delgado, Plaintiff,
v.
Donald J. Trump for President, Inc.; Sean Spicer; Reince Priebus; Steve Bannon,
Defendants

Case No. 19-cv-11764 (Southern District of New York)

## [PROPOSED] ORDER DENYING
## DONALD F. MCGAHN II'S MOTION TO QUASH SUBPOENA

Having duly considered Petitioner's Motion to Quash, and Respondent's Opposition to

said Motion to Quash, this Court balances the Respondent's due process right to engage in

discovery deemed relevant to her case, and the Federal Rules' preference for permitting broad

discovery, against the Petitioner's concerns regarding safeguarding of privilege.

This Court hereby finds that Petitioner did not meet his high burden and finds that

altogether quashing of the subpoena to be an extreme remedy and an unnecessary remedy, given

that Petitioner has numerous avenues able to him to safeguard attorney-client privilege, including

declining to answer questions of a privileged nature during a deposition and, as it pertains to

documentation requested, providing a privilege log in lieu of producing the documentation. This

Court is also not persuaded, nor did Petitioner demonstrate, that *all* documentation requested of

Petitioner would automatically qualify as attorney-client privileged.

16

As for Petitioner's undue burden argument, this Court does not find the argument persuasive, nor did Petitioner present any argument as to why a search for these documents would indeed be unduly burdensome.  This Court also acknowledges that Petitioner McGahn may indeed be the only avenue by which Respondent may obtain these documents.

As for Petitioner's argument that the subpoena was defective, Petitioner presented no law supporting such, nor demonstrated how the subpoena affected the Petitioner's ability to comply. Rather, given his Motion to Quash, filed in the appropriate Court, it seems Petitioner suffered no prejudice by any alleged nonconformity with any Rule. Compliance requirements exist to ensure the receiving party is aware of how, when, and where to comply – clearly Petitioner suffered no lack of notice or comprehension by any alleged technical error in Respondent's subpoena.

It is hereby ORDERED this _____ day of _____, 2024, that the Petitioner's motion is DENIED.

Dated: _____, 2024 _____

Notice to be delivered to:

Donald F. McGahn II
c/o Christopher N. Thatch
51 Louisiana Avenue, NW
Washington, DC 20001

Arlene Delgado
1065 S.W. 8th St. PMB 609
Miami, FL 33130

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**Donald F. McGahn II,**
**Petitioner,**

Case No. 1:24-mc-00038-JMC
Hon. Jia M. Cobb

**v.**

**Arlene Delgado,**
**Respondent**

<u>Underlying Proceeding</u>:

Arlene Delgado, Plaintiff,

v.

Donald J. Trump for President, Inc.; Sean Spicer; Reince Priebus; Steve Bannon,
Defendants

Case No. 19-cv-11764 (Southern District of New York)

## <u>CORRECTION ON EARLIER FILING</u>

On April 19, 2024, Respondent Arlene Delgado filed *Respondent's Opposition to Motion to Quash*. There is a citation error therein, which Respondent humbly corrects herein.
On page 5, Respondent's filing reads:

> See e.g., <u>Zino v. Whirlpool Corp.</u>, 47 F. Supp. 3d 561 (N.D. Ohio 2014) ("***The court
> denies the motion to quash, finding the preferable course is to allow the deposition to
> take place, with the normal provisions regarding questions concerning privileged
> matters***. *See, e.g.,* NLRB v. Modern Drop Forge Co., 108 F.3d 1379, 1997 WL 120572, at
> *2-*3 (7th Cir. Mar. 14, 1997); Jamison v. Miracle Mile Rambler, Inc., 536 F.2d 560,
> 565-566 (3d Cir. 1976); McKenna v. Nestle Purina PetCare Co., No. 2:05CV0976, 2006
> WL 2612980, at *2(S.D. Ohio Sept. 11, 2006) (deposition ordinarily convened, with
> opportunity to object to improper questions)".)

- *Respondent's Opposition to Motion to Quash*, p.5, underline emphasis added

The correct citation for that holding/quote is from a 2012 order (not 2014) in the case, which can
be found at: <u>Zino v. Whirlpool Corp.</u>, No. 11CV1676, 2012 WL 5197377 (N.D. Ohio Oct. 19,
2012). Respondent apologizes to the Court for the citation error.

Respectfully submitted,

**RECEIVED**

APR 29 2024
Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

Arlene Delgado
Respondent, *pro-se*

# EXHIBIT D

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Donald F. McGahn II,

    Petitioner,

  v.            Case No. 1:24-mc-00038-JMC

Arlene Delgado,

    Respondent.

---

## REPLY IN SUPPORT OF MOTION TO QUASH

This motion to quash is not about "disgraced, twice-impeached former president Donald J. Trump." Opp. at 3. Nor is it about "McGahn and his law firm simply [seeking] to curry favor with President Trump and the Trump Campaign." *Id.* at 12. This motion is about Ms. Delgado's subpoena on Mr. McGahn and the reasons it fails to comport with Rule 45. As Mr. McGahn has shown, the subpoena seeks documents and testimony protected by attorney-client privilege and executive privilege, imposes an undue burden, and fails to designate a place of compliance. Moreover, Ms. Delgado can (and should) obtain the documents she seeks from the parties she sued in her Southern District of New York lawsuit. And she has communicated to the judge there that "alternate" depositions will be sufficient to meet her needs. Her subpoena to Mr. McGahn therefore should be quashed. Nothing in Ms. Delgado's opposition justifies a different result.

## ARGUMENT

### A.  Factual Misrepresentations.

Ms. Delgado's portrayal of certain facts in connection with the subpoena is, at best, incomplete. While many of the misrepresentations can go without a response, some cannot.

**1.** Ms. Delgado insists that the subpoena she served on Mr. McGahn is consistent with

what Magistrate Judge Parker allowed.  Opp. at 2, 11–12.  Not so.

In January, Judge Parker prevented Ms. Delgado from seeking further non-party discovery without leave of court based on a showing that the discovery would be both "relevant and proportional to the needs of the case."  Order, *Delgado v. Donald J. Trump for President*, Inc., No. 19-cv-11746 (S.D.N.Y. Jan. 31, 2024), ECF 187.  In later asking Judge Parker to permit a subpoena on Mr. McGahn, Ms. Delgado argued that "Mr. McGahn should be subpoenaed … as to those documents forwarded to him by [Reince] Priebus" because "Mr. Priebus has produced no documents in this matter, despite extensive requests."  Letter at 4, *Delgado v. Donald J. Trump for President*, Inc., No. 19-cv-11746 (S.D.N.Y. Jan. 31, 2024), ECF 202.  Ms. Delgado further contended that "Mr. McGahn was involved in White House employees' security clearances, making him relevant also in terms of" an anticipated "defense claim" that Ms. Delgado "would not have obtained a While House role because she would not have received White House security clearance" due to a "no-contact order" being entered against her years ago.  *Id.* at 4, 7.

Judge Parker permitted Ms. Delgado to subpoena Mr. McGahn.  Discovery Order and Scheduling Order, *Delgado v. Donald J. Trump for President*, Inc., No. 19-cv-11746 (S.D.N.Y. Mar. 1, 2024), ECF No. 204.  But Judge Parker's *entire* explanation of the appropriate scope of the subpoena was as follows:  "**Donald McGahn**, who was identified as an individual involved in the security clearance process for White House personnel during the relevant period, and is likely to have information relevant to Defendants' defense that Plaintiff would not have qualified for a position at the White House due to security clearance issues."  *Id.* at 2 (emphasis in original).  Judge Parker then stated that "**Plaintiff's request for additional third-party discovery is otherwise DENIED**."  *Id.* (emphasis in original); *see also id.* at 3 (reiterating that Ms. Delgado was permitted to take "*limited* third-party discovery" (emphasis added)).

The subpoena that Ms. Delgado served on Mr. McGahn seeks nine categories of documents.  Memorandum of Law, Exh. A, at 4, ECF No. 1-2.  White House security clearance issues—the *only* topic that Judge Parker determined would be relevant to explore with Mr. McGahn—is not included among any of the categories.  *See id.*  Ms. Delgado's assertion that the subpoena is consistent with what Judge Parker contemplated thus blinks reality.

**2.**  Ms. Delgado suggests that Mr. McGahn backed out of an agreement to search for all responsive documents before filing the motion to quash.  Opp. at 2–3.  Again, not so.

Ms. Delgado and Mr. Thatch conferred about the subpoena on March 19.  Mr. Thatch expressed Mr. McGahn's concerns and his interest in an informal resolution.  Status Report at 1, ECF No. 6.  Ms. Delgado says that she proposed that Mr. McGahn run a complete search for responsive documents as "a reasonable, efficient compromise."  Opp. at 2.  But Mr. Thatch never agreed to do so.  Indeed, nothing about that would have been reasonable, efficient, or a compromise, given Mr. McGahn's many doubts about the subpoena's validity and breadth.

Instead, after hearing that Ms. Delgado was particularly interested in discovery of any documents attached to emails sent from Mr. Priebus and other members of the Trump Campaign and Trump Transition, and determining that a targeted search for *those* documents would not be unduly burdensome for Mr. McGahn, Mr. Thatch ran that search using keywords provided by Ms. Delgado.  On March 22, Mr. Thatch informed Ms. Delgado that he did not find any documents or other attachments to emails using the keywords provided.  Whatever Ms. Delgado might have expected that search to yield, the fact that it was limited to files attached to emails should not have been "eyebrow-raising."  Opp. at 3.  Nor should it have struck Ms. Delgado as "odd[]" that Mr. McGahn also filed and served the motion to quash that day.  *Id.* at 3.  Time had run out to resolve this dispute before the March 25 return date.  *See U.S. ex rel. Pogue v. Diabetes Treatment Centers*

*of America, Inc.*, 238 F. Supp. 2d 270, 278 & n.6 (D.D.C. 2002) (motion to quash is timely if filed before return date). And Mr. Thatch had informed Ms. Delgado during their conversation that Mr. McGahn was likely to file a motion to quash if they were unable to reach a resolution.

**3.** Ms. Delgado faults Mr. McGahn for not "work[ing] with" her to "cooperatively narrow[]" the subpoena if he had concerns. Opp. at 11–12. But Mr. McGahn had no such obligation. And in any case, Mr. McGahn (through counsel) *did* try to work with Ms. Delgado.

An overbroad subpoena is not an opening bid. Parties cannot serve non-parties with invalid subpoenas and then insist on negotiating toward validity. The law is precisely the opposite: "A party or attorney responsible for issuing and serving a subpoena *must* take reasonable steps to avoid imposing undue burden or expense on a person subject to a subpoena." Rule 45(d)(1) (emphasis added). "The court for the district where compliance is required *must* enforce this duty and impose an appropriate sanction … on a party or attorney who fails to comply." *Id.* (emphasis added). "On timely motion, the court for the district where compliance is required *must quash* … a subpoena that … subjects a person to an undue burden." Rule 45(d)(3)(A)(iv) (emphasis added).

Nonetheless, and as noted above, Mr. Thatch conferred with Ms. Delgado before filing the motion to quash, offering to run (and running) a targeted search based on Ms. Delgado's keywords. Mr. Thatch also made clear upon serving the motion and in subsequent communications that Mr. McGahn remained willing to try to resolve this dispute without further motion practice. Ms. Delgado expressed frustration in an email on March 23 and did not contact Mr. Thatch again until April 5. Even then, Ms. Delgado did not reach out to try to resolve the dispute. Instead, she advised that Mr. McGahn should request a hearing on the motion to quash. Status Report at 3.

**4.** On April 18, Ms. Delgado asked this Court for leave to file an out-of-time opposition because she "only recently became aware of the Motion to Quash that was filed in the District of

Columbia court."  Motion for Extension of Time at 2, ECF No. 7.  Mr. McGahn does not know if Ms. Delgado means that she was previously unaware of the motion to quash or previously unaware that it was filed in this Court.  But the former is not true.  And the latter is implausible.

Mr. McGahn filed and served the motion to quash on March 22.  The next day, Ms. Delgado emailed Mr. Thatch to express frustration with the motion.  On April 5, Ms. Delgado emailed Mr. Thatch to advise that Mr. McGahn request a hearing on the motion, stating "[i]t's your Motion to Quash so you should request a prompt hearing."  Status Report at 3.  There is no basis for Ms. Delgado to have contended on April 18 that she "only recently" became aware of the motion.

If Ms. Delgado instead means that she was previously unaware that the motion was filed in this Court, that is equally difficult to believe.  Ms. Delgado is a graduate of Harvard Law School and a former corporate litigator.  Status Report at 4.  The motion to quash and accompanying papers state at the top that they are filed in this Court.  Mr. McGahn recognizes that oversights happen, and that Ms. Delgado is also litigating in the Southern District of New York.  But his memorandum of law accompanying his motion *actually explained why the motion was filed in this Court* as opposed to the Southern District of New York.  Memorandum of Law at 6 n.1.  And if Ms. Delgado truly believed that the motion to quash was filed in the Southern District, presumably she would have attempted to file an opposition in that court.  She apparently did not.

Mr. McGahn is not asking this Court to revisit its order allowing Ms. Delgado an out-of-time opposition.  But he does submit that the Court should hold Ms. Delgado to her other obligations—most importantly, her obligations under Rule 45.  Ms. Delgado objects that Mr. McGahn "even goes so far as to claim that, because [Ms.] Delgado has a law degree, she should be treated differently and should be expected to be knowledgeable on all local rules."  Motion for Extension of Time at 2.  But that is what is required of every *pro se* litigant, even someone without

a law degree and litigation experience.  *See, e.g.*, *Anand v. HHS*, 2023 WL 2646815, at \*4 (D.D.C.

Mar. 27, 2023) ("Although *pro se* litigants are held to a more lenient standard than those

represented by counsel, they must nevertheless comply with the Federal Rules of Civil Procedure,

Local Rules of Civil Procedure, and court orders."); *see also Moore v. Agency for Int'l Dev.*, 994

F.2d 874, 876 (D.C. Cir. 1993) ("The assistance provided [to *pro se* litigants] by the district courts

… does not constitute a license for a plaintiff filing *pro se* to ignore the Federal Rules." (internal

quotation marks omitted)).

**B.  The Subpoena Targets Privileged Information, Imposes an Undue Burden on Mr. McGahn, and Fails to Designate a Place of Compliance.**

This Court should grant the motion to quash because the subpoena for documents and

testimony targets information protected by attorney-client privilege and executive privilege,

imposes an undue burden, and fails to designate a place of compliance.  Memorandum of Law at

6–13.  Mr. McGahn has cited numerous decisions from the D.C. Circuit, this District, and other

jurisdictions showing that is the correct result.  *See id.*  Ms. Delgado simply ignores those

authorities.  And nothing she cites in her opposition supports a different result.

**1.  Standard of Review.**  At the outset, Ms. Delgado argues that there is a strong

presumption against quashing subpoenas "per this district's own precedent."  Opp. at 4; *see also*

*id.* at 14 (arguing that McGahn failed to carry his "high burden").  But the only case from this

District that Ms. Delgado cites is *North Carolina Right to Life, Inc. v. Leake*, 231 F.R.D. 49

(D.D.C. 2005).  And that case actually supports Mr. McGahn.  It, too, involved a motion to quash

a non-party subpoena for a "vast array of documents," and the court granted the motion to quash,

finding that the subpoena imposed an undue burden "particularly in light of the fact that [the

recipient] is neither a party, nor even an amicus, in the underlying action."  *Id.* at 52.

Ms. Delgado also relies on *Zino v. Whirlpool Corp.*, 47 F.Supp.3d 561 (N.D. Ohio 2014).

Opp. at 5.  Ms. Delgado appears to quote *Zino* as saying:

> The court denies the motion to quash, finding the preferable course is to allow the deposition to take place, with the normal provisions regarding questions concerning privileged matters.  *See, e.g., NLRB v. Modern Drop Forge Co.*, 108 F.3d 1379, 1997 WL 120572, at *2-*3 (7th Cir. Mar. 14, 1997); *Jamison v. Miracle Mile Rambler, Inc.*, 536 F.2d 560, 565-566 (3d Cir. 1976); *McKenna v. Nestle Purina PetCare Co.*, No. 2:05CV0976, 2006 WL 2612980, at *2 (S.D. Ohio Sept. 11, 2006) (deposition ordinarily convened, with opportunity to object to improper questions).

Opp. at 5 (reproducing this text, within quotation marks, in a parenthetical behind the cite to *Zino*).

This is curious.  *Zino* does *not* include that quoted language (or anything approximating it).  *Zino* does *not* cite those three decisions.  *Zino* was *not* about a subpoena or a motion to quash.  And *Zino* was vacated on appeal.  763 Fed.Appx. 470 (6th Cir. 2019).[1]

**2.  Attorney-Client Privilege.**  Ms. Delgado's arguments about attorney-client privilege misunderstand the nature of Mr. McGahn's position and the applicable law.  Mr. McGahn does not contend that everything "sent" or "simply forwarded" to him as a lawyer is "automatically" privileged.  Opp. At 6–7.  Nor does Mr. McGahn contend that "anything/everything" Ms. Delgado seeks is subject to a claim of privilege.  *Id.* at 6.  Mr. McGahn's position is that: (a) communications between client and lawyer for the purpose of seeking or providing legal advice are privileged; (b) Ms. Delgado's subpoena targets—*i.e.*, focuses on—such communications; and (c) courts must quash subpoenas that target privileged communications.  Each of (a), (b), and (c) is correct.

**a.**  Ms. Delgado has pleaded claims under New York law, *see* Memorandum of Law at 4, so New York law governs attorney-client privilege issues, *see* Fed. R. Evid. 501.  New York law treats as privileged any communication from "client to lawyer" or "lawyer to client" made "for the purpose of facilitating the rendition of legal advice or services."  *Appellate Advocates v. New York*

---

[1] Mr. McGahn has reviewed *Zino* as reported and as reproduced on Westlaw and Lexis. None of those versions includes the language in question.  Nor does the Sixth Circuit's opinion.

*State Dep't of Corr. & Cmty. Supervision*, 228 N.E.3d 588, 592 (N.Y. Ct. App. 2023) (internal quotation marks omitted).[2]  "That nonprivileged information is included in an otherwise privileged lawyer's communication to its client—while influencing whether the document would be protected in whole or only in part—does not destroy the immunity."  *Spectrum Sys. Int'l Corp. v. Chem. Bank*, 581 N.E.2d 1055, 1060 (N.Y. Ct. App. 1991).  "In transmitting legal advice and furnishing legal services it will often be necessary for a lawyer to refer to nonprivileged matter (see, Code of Professional Responsibility EC 4–1 [lawyer should be fully informed of all facts])."  *Id.*  Thus, even non-privileged reports or notes exchanged between client and counsel "as the foundation for [counsel's] legal advice" are entitled to protection.  *Id.* at 1061.

**b.**  The subpoena here self-evidently targets attorney-client privileged information.  The subpoena lists nine categories of communications between Mr. McGahn and individuals affiliated with the Trump Campaign, Trump Transition, or Trump Administration.  Memorandum of Law, Exh. A, at 4.  At all relevant times, Mr. McGahn served as legal counsel to the Trump Campaign or Trump Transition, or as Counsel to the President.  *Id.* at 1, 8.  And it should hardly surprise anyone that the majority of communications Mr. McGahn exchanged during this period with those affiliated with the Campaign or Transition, or Administration, were "for the purpose of facilitating the rendition of legal advice."  *Appellate Advocates*, 228 N.E.3d at 592.  That was his job.

Ms. Delgado's argument about privilege seems to turn on the belief that "underlying material" is "never" eligible for protection—even if the material serves as the foundation for the legal advice.  Opp. at 8.  As shown above, that is not the law.  *See Spectrum Sys.*, 581 N.E.2d at

---

[2] Ms. Delgado's few cites on the scope of the privilege do not apply New York law, making them of questionable relevance.  In any event, Ms. Delgado invokes these cases for the generic proposition that non-privileged matter does not become privileged because it is sent to someone who is an attorney.  *See* Opp. at 7–8.  That is true but beside the point.

1060–61.  Ms. Delgado also speculates that non-attorneys would have been included on some communications with Mr. McGahn, and she insists that "[if] a non-attorney were copied, this would also render the document ineligible for privilege-protection."  Opp. at 7.  Again, that is not the law.  The presence of *third parties* on a communication generally destroys privilege, but the presence of *non-attorneys* obviously does not—after all, clients are typically non-attorneys.

**c.**  Rule 45(d)(3)(A)(iii) provides that "the court for the district where compliance is required *must quash* … a subpoena that … requires disclosure of privileged or other protected matter."  Courts in this District (and elsewhere) have followed that unambiguous directive, granting motions to quash as opposed to insisting that the movant prepare and submit a privilege log.  Memorandum of Law at 7 (citing 11 such cases).  There is thus no basis for Ms. Delgado to insist that Mr. McGahn "utilize a privilege log."  Opp. at 9.  Nor does insistence on a privilege log account for the likelihood that questions at a deposition would intrude upon privilege.  Ms. Delgado would no doubt contend that Mr. McGahn must show up and repeatedly assert privilege in response to every such question.  But again, that is not what either Rule 45(d)(3)(A)(iii) or the case law requires.  Memorandum of Law at 6–8.

**3.  Executive Privilege.**  Ms. Delgado does not deny that if she were to depose Mr. McGahn, she would ask him about White House decisions regarding security clearances.  Nor does Ms. Delgado dispute that such questions would almost certainly implicate executive privilege.  Opp. at 9.[3]  Instead, Ms. Delgado says that Judge Parker already resolved this issue in Ms.

---

[3] Ms. Delgado suggests in passing that it is not enough for Mr. McGahn to use phrases such as "almost certainly" "threaten" to "intrude upon" executive privilege.  Opp. at 9; *see also id.* ("None of this sounds very definite.").  But Mr. McGahn cannot speak more definitely because he does not have the final say on whether something is subject to a claim of executive privilege.  That is up to the President.  *See, e.g.*, *Assertion of Executive Privilege Over Deliberative Materials Generated in Response to Congressional Investigation Into Operation Fast and Furious*, 26 Op. O.L.C. 1 (2012) (Attorney General Holder) (advising President Obama that he may assert

Delgado's favor when Judge Parker approved the subpoena of Mr. McGahn, and that Mr. McGahn cannot have "another bite at the apple." *Id.* at 9–10.

This argument is baseless. There is no indication that anyone raised executive privilege in connection with Ms. Delgado's request to subpoena Mr. McGahn. There is no mention of executive privilege in Judge Parker's order approving the subpoena. It is improbable that Judge Parker decided the executive privilege issue *sub silentio*. And even if she had, it would not somehow preclude Mr. McGahn from raising the argument here. *See Taylor v. Sturgell*, 553 U.S. 880, 891–85 (2008) (explaining the general rule against offensive non-mutual estoppel).

**4. Undue Burden.** Ms. Delgado offers four responses to Mr. McGahn's argument that the subpoena imposes an undue burden, especially since he is a non-party. None holds water.

*First*, Ms. Delgado says that "in this age of electronic mail, it takes mere *seconds* to search years of email communications." Opp. at 10. But that is not always true; documents are sometimes on external servers or in hardcopy, and it takes time (and expense) to make them readily searchable. In any event, Ms. Delgado misses the point. Mr. McGahn would have to search for *and then review* all potentially responsive documents. In doing so, he would have to make determinations about attorney-client privilege. That cannot be done with CTRL+F. And that is part of the burden.

*Second*, Ms. Delgado denies that a privilege log could be a burdensome undertaking because, she says, Mr. Thatch has already told her that "nothing was found." *Id*. But Mr. Thatch has never made any representation to Ms. Delgado about the universe of responsive documents. As explained above, Mr. Thatch merely represented that the search he ran for files attached to

---

executive privilege in response to a legislative subpoena and formally requesting that he do so); *see also Trump v. Thompson*, 142 S. Ct. 680, 681 (2022) (statement of Kavanaugh, J.). If a deposition proceeds, then, Mr. McGahn may have to consult executive branch officials, and that only aggravates the obvious undue burden here. *See* Memorandum of Law at 12.

emails, using Ms. Delgado's keywords, yielded nothing. *Supra* at 3.

*Third*, Ms. Delgado says it is "patently false" for Mr. McGahn to have stated that the subpoena demands documents over "the course of many years." Opp. at 10. Perhaps this is just a debate about semantics—what counts as "many years"—but here is the time period for each of the nine categories of requested documents: (1) "2015–March 2017"; (2) "any time"; (3) "December 2016 onward"; (4) "December 2016 onward"; (5) "2015–January 2017"; (6) "2015–2017"; (7) "December 2016–May 2017"; (8) "December 2016–May 2017"; and (9) "November 2016–April 2018." Memorandum of Law, Exh. A, at 4. The subpoena speaks for itself.

*Fourth*, Ms. Delgado denies the suggestion that she should instead seek from Mr. Priebus the documents she is seeking from Mr. McGahn. Opp. at 12. Ms. Delgado says that "Mr. Priebus is not the only individual who would have forwarded materials" to Mr. McGahn and that she has "already tried to obtain the documents from Mr. Priebus." *Id.* But it is Ms. Delgado who has always tried to justify this subpoena by reference to documents *Mr. Priebus* supposedly sent to Mr. McGahn. Ms. Delgado told Judge Parker that "Mr. McGahn should be subpoenaed … as to those documents forwarded to him by [Reince] Priebus." Letter at 4, ECF 202. Judge Parker did not think Ms. Delgado needed that particular discovery, *see supra* at 2, but the key point here is that Ms. Delgado did not even mention anyone else. And even now, Ms. Delgado does not state whether she has availed herself of more conventional remedies for Mr. Priebus's alleged failure to cooperate in discovery, such as a Rule 37(a) motion to compel directed to him. This Court should not permit a party to subpoena a non-party as a kind of workaround to a motion to compel.[4]

---

[4] Perhaps Ms. Delgado is using a non-party subpoena in lieu of a motion to compel because she wishes to avoid having Judge Parker rule on such a motion. Ms. Delgado previously asked Judge Parker to recuse on the ground that Judge Parker is supposedly "partial in favor of the Defendants" as evidenced by her "remarks, tone, demeanor and overall hostility"; "prior career role as an employment-defense lawyer at Proskauer Rose, a firm notorious for its hard-charging

Not only has Ms. Delgado failed to rebut Mr. McGahn's showing of undue burden, but there is new reason to doubt that Ms. Delgado even thinks it necessary to subpoena Mr. McGahn. In Ms. Delgado's March 25 letter to Judge Parker seeking additional time to complete the four non-party depositions that Judge Parker had approved—in which Ms. Delgado represented that she had not been able to serve Mr. McGahn with the subpoena, despite having done so weeks earlier, *see* Status Report at 2—Ms. Delgado also asked that "she be permitted to, at this point, request four *alternate* depositions, including that of Kellyanne Conway (already requested) and three others, rather than the three requested."  Letter at 3, *Delgado v. Donald J. Trump for President, Inc.*, No. 19-cv-11746 (S.D.N.Y. Mar. 25, 2024), ECF 218 (emphasis added).  Ms. Delgado explained that her "timeline and strategy has been completely altered by the SDNY errors."  *Id.*  Mr. McGahn is not sure whether Judge Parker ruled on that portion of Ms. Delgado's request.  But the fact that Ms. Delgado has told Judge Parker that she is prepared to take "alternate" depositions (and presumably forgo Mr. McGahn's deposition entirely) undermines her claim to need Mr. McGahn's testimony.

**5. Place of Compliance.**  Finally, Ms. Delgado disputes that the subpoena is invalid because it fails to specify a place of compliance.  Opp. at 12–14.  She does not deny that Rule 45(a)(1)(A)(iii) requires specifying a place of compliance.  But she says "Zoom" is adequate and accuses Mr. McGahn of "misus[ing] caselaw in an attempt to mislead this Court."  Opp. at 13.

Specifying "Zoom" without more is *not* adequate.  As Mr. McGahn has argued, "[c]ourts have … refused to compel compliance with subpoenas that list 'Zoom' rather than a physical

---

posture against employment-suit plaintiffs—and who, moreover, are minorities, same as me"; "turning beet red with rage"; and "reviews … on the 'Robing Room,' a site where attorneys often post their experiences with judges."  Motion to Recuse, Attach., at 3–5, *Delgado v. Donald J. Trump for President, Inc.*, No. 19-cv-11746 (S.D.N.Y. Jan. 30, 2024), ECF 184.

location," and "[t]his Court should do the same."  Memorandum of Law at 13.  Mr. McGahn cited

*Federal Ins. Co. v. Tungsten Heavy Powder & Parts, Inc.*, 2022 WL 2820667 (S.D. Cal. July 18,

2022), as an example.  *Id*.  In that case, the subpoena listed "VIA ZOOM VIDEO

CONFERENCING" as the place of compliance.  2022 WL 28200667, at *1, *8.  The court denied

a motion to compel, reasoning that "the subpoena did not command [the recipient] to attend and

testify at a 'specified time and place' as required by [Rule 45]."  *Id.* at *2; *see also id.* at *8 ("A

'ZOOM VIDEO CONFERENCE,' however, is not a place.").  Ms. Delgado objects that *Tungsten

Heavy* is just one cite.  Opp. at 13 ("Notice that, despite claiming that 'courts' (plural) have held

such, ***he only cites a single case*.**" (emphasis in original)).  But Mr. McGahn cited the part of the

decision that in turn cited three similar cases.  Memorandum of Law at 14 (citing to *7).  There

was thus no misuse of case law, much less an attempt to mislead.

*     *     *

Mr. McGahn is not "stonewalling" Ms. Delgado.  Opp. at 12.  He has no animosity toward

her.  He takes no position on the merits of her underlying lawsuit.  But the subpoena directed to

him is invalid several times over.  This Court should therefore grant the motion to quash.

Dated: April 26, 2024

Respectfully submitted,

JONES DAY

Michael R. Shumaker
  DC Bar No. 434578
Christopher N. Thatch
  DC Bar. No. 980277
David K. Suska
  DC Bar No. 1520967
51 Louisiana Avenue, NW
Washington, DC 20001
(202) 879-3939
mrshumaker@jonesday.com
cthatch@jonesday.com
dsuska@jonesday.com

By: /s/ Christopher N. Thatch
    Christopher N. Thatch

*Counsel for Donald F. McGahn II*

## CERTIFICATE OF SERVICE

I hereby certify that on April 26, 2024, I filed the foregoing document via CM/ECF and

served Arlene Delgado with a true and correct copy of the same via email and courier.

<u>/s/ Christopher N. Thatch</u>
Christopher N. Thatch