## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

Arlene J. Delgado,
    Plaintiff,

    Case No.: 19-cv-11764 (AT) (KHP)

    vs.

Donald J. Trump for President, et al.
    Defendants

    **PLAINTIFF'S OBJECTION TO MAGISTRATE JUDGE'S ORDER and MOTION FOR REVIEW**
    Date: May 28, 2024

_____

## PLAINTIFF'S OBJECTION TO MAGISTRATE JUDGE'S ORDER and MOTION FOR REVIEW

NOW COMES the above-named, ARLENE J. DELGADO, Plaintiff herein, and, pursuant to Federal Rule of Civil Procedure 72(a), moves with Honorable Court to revise Magistrate Judge Parker's May 14, 2024 Order (ECF 312) (hereinafter, "**May 14th Order**"), and states as follows:

Federal Rule of Civil Procedure 72(a) provides:

When a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision. A party may serve and file objections to the order within 14 days after being served with a copy. A party may not assign as error a defect in the order not timely objected to. The district judge in the case must consider timely objections and **modify or set aside any part of the order that is clearly erroneous or is contrary to law**.

-F.R.C.P. 72(a) (emphasis added)

Plaintiff respectfully and humbly requests that Hon. Analise Torres correct the following erroneous and/or contrary-to-law rulings in the May 14th Order.

I.    <u>ERRONEOUS RULING ON MOTION TO COMPEL CLIENT'S IDENTITY</u>

On May 6, 2024, the Plaintiff submitted a letter-motion which read, in part:

*MOTION TO COMPEL AS TO CLIENT'S IDENTITY*
*Plaintiff hereby files a Motion to Compel, regarding the identity of the Defendant-Campaign client. It is readily apparent that, despite claiming Donald J. Trump for*

1

*President, Inc. (which became Make America Great Again PAC), exists 'only on paper' and has 'no executives or employees', there is an actual person/s with control. Indeed, Mr. Blumetti clearly confers with a person or persons who has control: (a) He repeatedly has made statements, throughout this case, such as "I will need to check with the client" and (b) most recently suffered an "irreparable breakdown" with the Campaign-client, meaning with a person or persons (it is not possible to have a "breakdown" with an entity).*

*Plaintiff asked Mr. Blumetti during a brief call on Wednesday afternoon, May 1st, to identify the client and Mr. Blumetti refused, stating that such is privileged. It is not. The Southern District of New York and, more importantly, the Second Circuit, has made this clear. See HSH Nordbank AG New York Branch v. Swerdlow, 259 F.R.D. 64 (S.D.N.Y. 2009) "there is no privilege as to a client's identity", citing Lefcourt v. United States, 125 F.3d 79, 86 (2d Cir.1997).*

-Plaintiff's May 6, 2024 letter-motion

But, in the May 14th Order, Judge Parker DENIED this request. Plaintiff believes this was erroneous and that it misstated Plaintiff's argument, when it held: "[Cases] do not stand for the proposition that a corporate party's counsel must reveal the names of **all** the individual representatives of the company who interact with counsel." (emphasis added)

Such was as strawman argument, given that Plaintiff's motion did *not* ask for the Campaign to reveal "all" the individual representatives it interacts with –merely to admit it does interact with and name *some* human being (**particularly given that the Defendants' long-standing – since 2019—counsel, Mr. Blumetti, abruptly moved to withdraw on April 26, 2024, citing an "irreparable breakdown with the client**.")

Why is the client's identity relevant? The Campaign has taken the position that the 2024 Campaign is a wholly different entity, wholly distinct entity, which has nothing whatsoever to do with this litigation. This about as believable as the Bigfoot theory. It *is* relevant and proportional to the needs of the case because it goes to motives *and* identifies individuals who could be called as a witness at trial.

There is one person with control over the litigation, whom Defendants' counsel constantly referred to as "the client." Yet the Defendant-Campaign refuses to state who the "client" is, claiming it is privileged. It is not. Judge Parker should have GRANTED the request.

## II. ERRONEOUS RULING REGARDING COMPLAINTS BY OTHERS

In the May 6, 2024 letter-motion, Plaintiff wrote that the Defendants had **refused to produce the complaints by other staffers**, of similar alleged misconduct, which they were ordered to produce, per the Court's April 24, 2024 Order:

> *The Defendant-Campaign waited until the very deadline, May 7, 2024, to produce documentation that it strongly resisted producing but was ordered to produce, in the Court's April 24th Order: namely, complaints of gender and pregnancy discrimination ,and sexual harassment, not just from the 2015-2016 cycle but through the 2020-election cycle. **As this Court is aware, this directive led to a complete implosion in the case, covered by national media, when Mr. Blumetti moved to withdraw 24 hours later, citing an "irrevocable breakdown" with a client (Defendant-Campaign) – a client his firm has had on this case since June 2017.***
>
> *What was produced on May 7th -- there is no reasonable doubt -- is a **continued refusal to produce the requested documents**. The Campaign has clearly taken the position of "Hide the documents, who's going to know?" What was produced on May 7th is a 'document dump,' 98% of which is public court filings from the Denson v. Trump Campaign case (a 2016-cycle matter, already widely known); a one page complaint from another already-disclosed 2016-matter that was dropped; and a one-page quickly resolved email, saying nothing, from a CA staffer in 2020. **The Campaign expects this Court to believe that, in the thousands of employees it had in the 2020 cycle; in a cycle that spanned four years; and even though the 2016-Campaign had at least four lawsuits... the 2020 cycle was pure as the driven snow and no one raised any concerns, in four years, of gender, pregnancy, or sexual harassment.** It is true that this Court cannot force the Defendant-Campaign to be honest. That would be to make wine out of water. But it does have options and mechanisms available to it, precisely for circumstances such as this, when a reasonable inference can and must be made that the Campaign-Defendant is more likely than not engaging in bad faith, obstruction, and dishonesty...*

-Plaintiff's motion to compel, May 6, 2024 (ECF 298), p. 2-3 (emphasis in original)

In her May 14th Order, addressing this, Judge Parker's order created further confusion. The May 14th Order reads:

> ***INFORMATION REGARDING OTHER COMPLAINTS OF GENDER, PREGNANCY DISCRIMINATION, SEXUAL HARASSMENT*** *This Court previously ordered Defendants to produce complaints of gender discrimination, sexual harassment and pregnancy discrimination filed by employees of the 2016 and 2020 campaigns. This is consistent with case law holding that evidence regarding similar acts is relevant to the plaintiff's claim. See, e.g., Ortega v. Fedcap Rehab. Servs., Inc., 2003 WL 21383383, at \*1 (S.D.N.Y. June 16, 2003) ("[b]ecause intent is in issue [in discrimination cases] ... similar act evidence may be admissible.") (citing Fed. R. Evid. 404(b).*

Already, Judge Parker's Order here is causing confusion. Judge Parker's previous Order she references, April 24, 2024 Order (ECF 265), did not reference "employees." The wording matters because much, if not most, of the Campaigns workers/staffers were independent contractors, not "employees." This is just the kind of technicality the Trump Campaign would rely on, to omit information. This should be corrected, via Order directing Judge Parker to do so. The Order then continues:

> *Nonetheless, the Court now recognizes the need to clarify what constitutes a "complaint" consistent with its prior order.* ***Typically, only written internal complaints and charges of discrimination filed with human rights agencies or courts are ordered to be produced****, as wholesale production of discovery about other complaints and cases is disproportionate to the needs of a case and diverts the parties' attention to the merits of other people's claims rather than the claims in their action.* ***To clarify, the Campaign need only produce written internal complaints and complaints filed with human rights agencies and courts****.*

-May 14th Order (emphasis added)

Again, the Order only causes confusion. What, exactly, qualifies as a "written internal complaint"? Is it ones filed with Human Resources only? If so, the Order absolutely merits correction, as the Trump Campaign in 2020 did not even have an official "HR Director"! **In**

**other words, there was no one specific to approach with one's complaint, and certainly no**

**one who would write up the existence of the complaint. And, in 2016, the Campaign did not**

**even inform the staff that there was an HR director.** (Judge Parker is aware of this, making

her ruling all the more baffling, as this arose in an earlier hearing, regarding a question the 30b6

witness would not answer with clarity). Once again, Judge Parker seems to be giving the

Defendants 'wiggle room' to omit/withhold key information. The Order continues:

> *With the above clarification, I address Plaintiff's motion. As the Court understands it, Defendants' prior counsel produced certain other complaints of discrimination. Plaintiff now seeks disclosure of unwritten complaints. This request is unreasonable and inconsistent with the type of discovery that is ordered by courts in this Circuit and that was contemplated by this Court. However, to the extent Plaintiff has now identified Megan Powers, Brad Parscale and Michael Glassner as individuals who might have received an email or text message complaint of gender discrimination, sexual harassment or pregnancy discrimination, the Campaign shall, if it has not done so already, conduct a search of such individuals' ESI as well as the ESI of Lucia Castellano and, if she served in a Human Resources Role, Stephanie Alexander, to locate any such complaints and produce them. The Campaign has until* **May 31, 2024** *to produce this information.* **The search shall include the terms "pregnant," "pregnancy," "expecting w/in 3 words of child or baby," "hostile work environment," "harassment or harassed," "discriminated or discriminating."** *The Campaign also shall confirm that it has produced any complaints of gender discrimination, sexual harassment and pregnancy discrimination filed by employees of the 2016 and 2020 campaigns with any state human rights agency or court. Thus, Plaintiff's motion is GRANTED in part and DENIED in part consistent with the above.*

Judge Parker's order and logic here are erroneous, as she knows, without a clear HR

director of which staff was notified (2016 election team) and with no HR director at all (2020

election team), there is no way any *formal* written internal complaints would exist. The Order

should clarify that "employees" refers to any staffer (whether W-2 or independent contractor) and

should also specify that production of complaints includes emails raising such concerns, and not

formal, "internal complaints."

Lastly, Judge Parker should have provided the Plaintiff the opportunity to propose the search terms. The ones she proposes are poorly crafted (e.g., "harassment" and "harassed" but not "harassing" – as in "He is harassing me"; or the inexplicable "expecting within 3 words of baby."

III. <u>ERRONEOUS ORDER REGARDING $4.1 MILLION IN PAYMENTS FROM CAMPAIGN TO FIRM OF KASOWITZ BENSON TORRES</u>

In her May 6, 2024 letter-motion, Plaintiff asked that the Court order the Campaign to provide a sworn explanation regarding the $4.1 million in mysterious payments from the Campaign to the Kasowitz Benson law firm, over a mere 59 day period, right after the November 2020 election, as it is clear these were settlement payments, paid out through the firm:

> *MOTION TO COMPEL REGARDING KASOWITZ PAYMENTS Plaintiff seeks leave from the Court to compel the Defendant-Campaign to provide a sworn explanation for the **$4.1 million in payments by it to Kasowitz Burgos firm, between November 2020 and January 2021**. Plaintiff, upon information (which she is not at liberty to disclose herein) and belief, informs this Court that some or all of said payments are directly related, and reflective of, complaints and settlements against the Campaign which, if gender, pregnancy, or sexual harassment related, are already required under Court order. (emphasis added)*

--Plaintiff's motion to compel, May 6, 2024 (ECF 298), p. 2

To be sure, this was not speculation on Plaintiff's part: Plaintiff filed a sworn declaration into the docket, on May 8, 2024 (ECF 303), explaining how it is she knows that Campaign settlements to women were being routed through Marc Kasowitz's firm: because, in 2017, when the Trump Campaign sought to settle with *her*, that was the method of payment that the Trump Campaign proposed (the Campaign pays Kasowitz's firm and Kasowitz then cuts a check) in order to keep the-fact-that-the-Campaign-settled and made a payment… hidden from the FEC disclosures and the public donors. Yet, the May 14th Order DENIED this critical request, writing:

***MOTION TO COMPEL REGARDING KASOWITZ PAYMENTS:*** *The Court is in receipt of Plaintiff's request to move to compel information regarding payments received from the Kasowitz firm. This request is DENIED.* ***Plaintiff is not entitled to discovery of how other cases may or may not have been resolved***.

The notion that Plaintiff is not entitled to know how whether other (highly similar) cases were resolved, or if other women made serious allegations similar to hers, is erroneous and not based in any caselaw. Notice Judge Parker cites no caselaw, though she does so elsewhere and in other orders, when caselaw supports her position. Of course a plaintiff is entitled to know if a defendant-entity, particularly in an employment-discrimination case, settled other cases and faced other serious, similar allegations by similarly situated individuals. Indeed, settlements are often disclosed, hence why settlement agreements often have a provision in the Confidentiality clause that the matter will be confidential *but* confidentiality is limited to the extent the information is sought by subpoena or court order. The May 14th Order continues:

> Such information is **not relevant** or necessary for the prosecution of this case and, **given the information that has been produced or will be produced pursuant to this Order,** the additional information sought from the Kasowitz firm is not proportional to the needs of this case.

This is simply astounding and also clearly erroneous. Judge Parker's Order actually holds that whether the Trump Campaign faced a litigation threat/s, in a case/s similar to the Plaintiff's, from women making serious allegations similar to those of the Plaintiff… is "not relevant" and "not proportional to the needs of the case."

Moreover, it is likely the *only* avenue by which the Mother will learn of other complaints made. Judge Parker erroneously states that it is not necessary "given the information that has been produced or will be produced pursuant to this Order." She means here that, given that the Campaign has to produce "written internal complaints," the Mother will obtain the complaints via

that avenue. But this is completely erroneous, once again. Most complaints, particularly in a political campaign (!), where everyone is on edge about what reporters may learn, are not made in *writing* – at certainly not, at least, using work emails. For instance, the **Plaintiff herself never made any written internal complaint, nor did she write about anything concerning her experience in the work emails.** If someone were to search the Campaign's server now for complaints, nothing would come up regarding Plaintiff. Yet that is exactly the only emails (work emails in the Campaign's server) that the Campaign will search and produce. Complaints of a serious nature are unlikely to be stored in the Campaign's work-email servers – rather, it would likely be handled via a letter, from an attorney, to the Campaign's attorney, and then a mediation or discussion, followed by a settlement agreement. **None of this would be reflected in the Campaign's work-email server and thus none will be produced**. **The payments-to-Kasowitz are indeed the only way to obtain the existence of these complaints.**

Indeed, Kasowitz's firm has admitted as much, issuing a non-denial denial to the Daily Beast journalist stating on May 11, 2024, stating: "Ms. Delgado's accusations that there were FEC violations or that the firm acted as a 'middleman' to 'hid[e] settlement payments to women' from the Campaign are pure fantasy and false." Notice this is not a denial. It merely denies that such was an "FEC violation"; denies that the firm acted as a "middleman" and/or that the main purpose was to "hide" the payments.

**At the very least, Judge Parker should have – and could –order the Campaign to file into the docket a sworn declaration attesting that no payments were made to Kasowitz's firm, regarding any complaints by 2016 or 2020 staffers regarding pregnancy**

discrimination, gender discrimination, or sexual harassment. **This should be simple enough. This should be ordered**. The Order continues:

> *Additionally,* **Plaintiff has had ample time to seek discovery from the Kasowitz firm and did not do so in the many years this case has been pending**. *Thus, the Court will not extend discovery for the purpose of seeking this discovery or entertain any further motions regarding this topic. Accordingly, Plaintiff's motion is DENIED as to this request.*

This is clearly erroneous and, thus, under Rule 72(a) merits reversal of Judge Parker's denial. How, exactly, has Plaintiff had "ample time to seek this information" when it was only in the *March 21, 2024* '30(b)(6)' deposition of the Campaign that the Campaign acknowledged the "Make America Great Again PAC", *from which these payments to Kasowitz are made*, is indeed the Defendant-Campaign under its new name? And how exactly has the Plaintiff had "many years" to seek this information when document production did not occur until November 2022; Defendants did not even take Plaintiff's deposition until June 2023; and third-party discovery request was withheld by Judge Parker until January *2024*, at which time Plaintiff was directed to seek *permission* prior to any third party discovery?

This is also where, respectfully, Judge Parker's personal, outside bias is evident. Judge Parker's husband, Plaintiff was recently informed, is the Executive Director of the New York Bar. Thus, Judge Parker brings with her to the bench a personal disposition that is favorable to those she and her husband routinely engage with – the well-heeled attorneys, such as Marc Kasowitz and his firm. Notice the tone of *protectiveness* in this Order, over Mr. Kasowitz, to the detriment of the *pro-se*, financially humble Plaintiff and her discovery rights.

## IV. ERRONEOUS ORDER DENYING DEPOSITIONS

Yet again, an error within the Southern District of New York, whereby the Clerk took a week to sign and provided the subpoenas to Plaintiff (as a *pro-se* litigant, Plaintiff must first submit the subpoenas to the Clerk for issuance), resulted in Plaintiff being unable to serve the third-party deponents by the May 7th deadline.

First, some history: The Court did not grant the Plaintiff leave to take third-party depositions, until its March 1, 2024 Order. (In January 2024, Plaintiff was told she would first need to seek permission from the Court, and those requests would be discussed at a February 28, 2024 conference.) The Plaintiff moved promptly to submit the subpoenas to the Clerk but the Clerk, upon signing, *mailed* them, and the subpoenas did not arrive until nearly a month later. So the Plaintiff had to seek a new issuance of the subpoenas, with new dates listed. By the time these subpoenas were issued (April 29th), with the Clerk inexplicably delaying a week to sign the subpoenas, the deponents would have received the subpoenas with almost no notice or time to prepare for May 3 – May 6 depositions. As such, service would have been in bad faith. Yet, the May 14th Order DENIES the Plaintiff a brief extension for these depositions, ruling:

> ***JARED KUSHNER, LUCIA CASTELLANO, MICHAEL GLASSNER, STEPHEN BANNON DEPOSITIONS:*** *Plaintiff requests an extension of discovery to conduct the depositions of Jared Kushner, Lucia Castellano, Michael Glassner, and Stephen Bannon. The subpoenas for Glassner, Castellano and Kushner were originally issued on March 7 and issued a second time on April 29. The subpoena for Bannon was originally issued on April 4 and a second time on April 29. The Court extended the deadline for third-party depositions several times already and in connection with the last extension did so only if the subpoenas could be served and the depositions conducted by May 7, 2024. The Court allowed for this in an abundance of solicitude to the Plaintiff and noted that Plaintiff, previously represented by counsel, has had more than adequate time to conduct third-party depositions. That they did not conduct all of the discovery Plaintiff wants does not justify extending discovery. "Absent extraordinary circumstances, a client assumes the risk of his attorney's actions and is bound even by the consequences of his attorney's negligence" even if that results in a party not obtaining certain discovery. Lustra v. Weil, Gotshal & Manges LLP, No. 03CIV.8756(RJH)(RLE),*

*2005 WL 551996, at \*4 (S.D.N.Y. Mar. 8, 2005); Chira v. Lockheed Aircraft, Corp., 634 F .2d 664, 666-67 (2d Cir.1980); Gadsden v. Jones Lang Lasalle Americas, Inc., 210 F.Supp.2d 430, 436-37 (S.D.N.Y.2002). See also Scott v. City of New York Dept. of Correction, 2007 WL 4178405 (S.D.N.Y. Nov. 26, 2007).*

*At this point, Plaintiff fails to show good cause for further extending discovery for purposes of the above depositions because the subpoenas have not even been served by the deadline of May 7, 2024. The Second Circuit has emphasized that "the primary consideration" in determining whether good cause has been shown "is whether the moving party can demonstrate diligence." Kassner v. 2nd Avenue Delicatessen Inc, 496 F.3d 229, 244 (2d Cir.2007); see also Morales v. City of New York, No. 18CV1573 (JGK) (DF), 2020 WL 2571029, at \*2 (S.D.N.Y. May 20, 2020).*

*That Plaintiff herself, at the last minute, decided to obtain subpoenas for multiple witnesses to conduct discovery that was not conducted over the course of this case does not demonstrate diligence.*

This is erroneous. At what point did Plaintiff wait "until the last minute" to obtain subpoenas? It is, respectfully, entirely unclear to what Judge Parker is even referring.

*Moreover, the Court expressed skepticism that the discovery could be conducted within the timeframe set and was clear that if it could not be completed by May 7, then it would simply not be obtained.*

It is true the Court aimed for all discovery to be completed by May 7th but why does the Court fault the Plaintiff for the errors of S.D.N.Y. staff, who (a) delayed in processing the subpoena request (Pro-Se Intake Unit) and (b) the Clerk delayed a week in even signing the subpoenas?

*The Court must consider the burdens of additional discovery and prejudice to other parties. In considering all of the discovery that has been conducted, which has included depositions of the individual defendants, a 30(b)(6) deposition of the Campaign, and some non-party depositions as well as extensive document discovery, Plaintiff has already obtained sufficient information to prosecute her case.*

It is improper for the Court to state that "Plaintiff has already obtained sufficient information to prosecute her case." That is not a call for the Court to make. Moreover, there has certainly not been "extensive document discovery in this case." There was one round of document

exchange, in November 2022.Thatis all. Judge Parker did not permit another round or additional Requests for Production.

> *Extending discovery further to allow service of non-party subpoenas that may be subject to objections and further motion practice threatens to drag out discovery even longer than it already has been dragged out, and at the expense of non-parties. For all these reasons, Plaintiff is not permitted to serve these subpoenas or to pursue these non-party depositions, as the time to do so has expired.*

How does a brief discovery extension cause any harm to the non-parties?

The May 14th Order is clearly erroneous in that it faults Plaintiff for the delays caused by the S.D.N.Y. operational/administrative staff. At the very least, Plaintiff should be permitted to use the depositions of the deponents, three of whom were deposed in another case with another plaintiff, in this case.

Lastly, the Order even states that Plaintiff should have, upon receiving the signed/issued notices on April 29th, "served" the deponents at least, by the May 7th deadline. But this would be unethical. The Plaintiff is not comfortable with serving someone with a subpoena on April 30th, requiring said individual to appear on May3rd. It is knowingly serving a subpoena that cannot be met and causing annoyance as a result. Plaintiff did not do so, in good faith. She should not be punished for her restraint.

On each of the aforementioned requests, the Plaintiff respectfully and humbly requests that this Honorable Court grant these objections to the May 14th Order and enter a corrective order.

Respectfully and humbly submitted,

*s/ Arlene Delgado*
Arlene Delgado
Plaintiff, *pro-se*