May 29, 2024

Hon. Magistrate Parker
United State District Court, S.D.N.Y.
500 Pearl Street, Courtroom 17D
New York, NY 10007
<u>**RE**</u>: *request for modified order and for Campaign declaration*
<u>VIA</u>: electronic submission through *Pro-Se* Intake Unit

Your Honor,

I am the *pro-se* Plaintiff in the above-mentioned matter, hereinafter referred to in first person or as "Plaintiff."

I write to address a critical and key matter in this case, which is integral to the case but on which I am being denied any reasonable, actual level of discovery. This letter is filed today, **given a recent admission (May 28, 2024) by Defendants that there was, in fact, no HR director in the 2020 Campaign. As such, this renders the Court's May 14, 2024, seemingly confident that "written internal complaints" would exist, inadequate and guaranteed to result in no production, as** *there was no one <u>to</u> whom one could complain.*

BACKGROUND
The word 'discovery' in the legal context is meant to as it reads: an opportunity for both sides to discover information and further prove their case. Granting a party a discovery avenue yet making it impossible to *actually* obtain the discovery intended…is to deny the discovery.

That is, regrettably, what has occurred in this case, regarding the issue of complaints by other staffers. This Court granted me the ability to obtain information on other, similar complaints made by other staffers (in the 2016 and 2020 Campaigns) yet then effectively made it so that I cannot obtain the actual information. I respectfully ask that the Court correct this.

On April 24, 2024, this Court granted my request that Defendants produce any and all complaints made by other staffers, regarding gender discrimination, pregnancy discrimination, and or sexual harassment. Although caselaw clearly supports granting this (and it would have been contrary to existing precedent to deny me this request), it was an uphill battle—including multiple letters, *and* combatting Defendants on this topic, to obtain such. (The Campaign had, during the March 2024 30(b)(6) deposition, referenced four complaints – mine, Jessica Denson's, Alva Johnson's, and Elizabeth Davidson's – but only for *2016* and only, astonishingly, as the result of a search the witness conduct based on 'what was already on the internet.')

The information was to be turned over by May 7th.

Two days later, on April 26th, clearly due to a battle with the client over turning over this information, Mr. Blumetti moved to withdraw, citing an "irreparable breakdown" with the client. Even the *NY Times* reported on this, given that anyone could see what was occurring. This, one hopes, was illuminating to the Court, in that it is **highly likely that the client is resisting production. As such, extra care and detail should be taken in requiring this production.**

1

On Wednesday, May 2nd, Plaintiff and Mr. Blumetti spoke, at which point Mr. Blumetti mentioned that the method he would use to identify the complaints was to do a search in the… Campaign's work-emails storage server. In other words, a keyword search, and one searching staffers' *work* emails – versus speaking to former Campaign counsel (e.g., Justin Clark); speaking to former HR staffers; etc. – was how the "complaints" would be ascertained.

The Plaintiff brought this to the Court's attention. **Plaintiff can find no case in which "We're just going to type in some keywords into our *work-emails storage*, and that will be how we 'locate' these complaints" was done, much less considered a reasonable search** (as is required by law), **when it is clearly a vastly inferior method, and <u>knowingly designed to find nothing</u>**.

On May 7th, as this Court is aware given my subsequent filing, Mr. Blumetti (Defendants' then-counsel) 'produced' the documents. But was a 'document dump', containing nothing from 2020 and consisting mostly of public court-filings in the case of Jessica Denson, a 2016 campaign staffer, currently proceeding in N.Y. State Court. (To be clear, this would mean that, in a team involving 1000 staff members, with intense activity from at least 2019 through most of 2020 – two years – not a single person from that team raised any complaint of sexual harassment, gender discrimination, or pregnancy discrimination. This is not credible, by any reasonable standard.)

I filed another motion, in part requesting access to the storage vendor that stores the Campaign's emails, 2M. That was denied *and*, worse yet, **an order on May 14, 2024 made it even *easier* for Defendants to produce nothing, as follows:**

<u>MAY 14, 2024 ORDER</u>
This Court's response to my letter-motions was to (a) deny access to the storage vendor, claiming no discovery abuse has been shown (though it had – *see e.g.*, documents produced on May 7th); and (b) finding that it was necessary to clarify what "complaints" means. (It is entirely unclear why the Court felt the need to clarify.) The Court then clarified that "complaints" means **"only written internal complaints and charges of discrimination filed with human rights agencies or courts…. To clarify, the Campaign need only produce written internal complaints and complaints filed with human rights agencies and courts."**

Surely this Court is aware that the Trump Campaign did not function the way complaints at a typical, serious company function, e.g., a Bank of America, with a specific HR team and, moreover, clear HR policies on documenting concerns raised.
- As this Court is aware, the Trump Campaign has admitted that, though the 2016 Campaign had an "HR Director," the staff was not informed of such, nor were any HR policies distributed to staff. **How, then, would there be "written internal complaints", when the 2016 staff (by the Campaign's own admission) was not told an HR Director existed?**
- As the Defendant-Campaign's counsel admitted in email yesterday, there was no HR Director at all for the 2020 Campaign. **How, then, would there be "written internal complaints", when the 2020 team had no HR director?**

**Thus, the Court's 'you only need to provide written internal complaints,' despite knowing that such is not the appropriate vehicle to ascertain the existence of such in this matter, is resulting in effectively denying the Plaintiff access to this information – giving the Defendants an escape hatch -- while *pretending* to have granted Plaintiff access. <u>To be clear, the Court can claim,</u>**

2

**"We granted her motion for the complaints" but, in reality, the Court made it so the Campaign could withhold and produce, essentially, no complaints.**

Second, why does this Court limit complaints to agencies and courts … as only those actually "**filed**"[1]? As this Court is well aware, given her past as an employment-defense partner at Proskauer Rose, the usual chain of events is a demand-letter is usually sent by an attorney representing the staffer, along with a draft of what will be filed with the human rights agency and/or filed with a court. If the matter settles, or the person is bullied out of settling, the matter *is never filed, anywhere*. Because of the Court's May 14, 2024 wording, requiring that the Campaign only produce that which was actually filed with an agency or court, all such complaints (ironically, the strongest complaints) would not be part of what must be produced. **To be clear, a staffer could have threatened to sue for gender discrimination, settled for millions of dollars, and so long as the staffer (a) never filed an "internal written complaint" (again -- a written paper trial is unlikely , in a sensitive Campaign atmosphere, but definitely in one with no HR director) or (b) "filed in Court" or "filed with a human rights agency"… the Campaign would not need to produce this bit of information.** [Moreover, the May 14thOrder does not even define a human rights agency – does that include the **EEOC**?]

Additionally, the Plaintiff is informed that **Hannah Castillo**, a staffer with the 2020 Campaign who had a baby in early 2020, allegedly threatened to sue the Campaign, after she was allegedly fired circa late summer 2020, but the matter was quietly settled. It is almost certain that no "written internal complaint" exists in the Campaign's "work-email" servers, particularly given that there was no HR director in that Campaign. And there is no filing with any court or agency, as the matter settled. Yet, under the recent May 14th Order, the Campaign would not need to produce or disclose this, even though it is key to the Plaintiff's case.

The May 14th Order then even came up with **its own search terms**, making it even easier for the Campaign to withhold information that is critical to Plaintiff's case.[2] E.g., The Order states Defendants need only search for "harassment or harassed." So, if someone complained, "Mitchell is harassing me," that need not be produced. And, additionally, the May 14th Order mistakenly uses the word "**employees**" (that word was not in the original April 24, 2024 Order), which also gives the Campaign wiggle room, given that most staffers were independent contractors and not "employees" (not in the way that the Campaign will self-servingly interpret the word).

In light of all this, the Plaintiff respectfully requests that the Court issue a new order. A proposed order is found in Attachment A.

Respectfully and humbly submitted,
*s/ Arlene Delgado*
Plaintiff, *pro-se*

---

[1] The Order reads: "*The Campaign also shall confirm that it has produced any complaints of gender discrimination, sexual harassment and pregnancy discrimination filed by employees of the 2016 and 2020 campaigns with any state human rights agency or court. Thus, Plaintiff's motion is GRANTED in part and DENIED in part consistent with the above.*"

[2] The Order reads: "*The search shall include the terms "pregnant," "pregnancy," "expecting w/in 3 words of child or baby," "hostile work environment," "harassment or harassed," "discriminated or discriminating.""*

## ATTACHMENT A: proposed Order

Given that the Defendants, on May 28, 2024, acknowledged that there was no Human Resources director for the 2020-Campaign team, the Court is now aware that the likelihood of complaints being properly memorialized as "internal written complaints," much less stored complaints stored in the Campaign's email server, is highly unlikely.

The Court is also cognizant that caselaw from this district, from the 2d Circuit, and from other federal districts and circuits, does provide the plaintiff the right to obtain information on complaints made by similarly situated staffers.

As such, to ensure Plaintiff's right to this information, particularly as Plaintiff was already granted the right to obtain this information (April 24, 2024 Order), the Court modifies its May 14, 2024 Order, as follows, to enable the Plaintiff to receive the information in the most efficient way possible for all parties:

- The term "**employees**" is to include both W-2 staff-members *and* independent contractor staff members.
- The term "**filed**" is replaced by "filed, or indicated a possibility of filing." As such, any individuals who indicated they may file a complaint, or threatened to file a complaint, in court or with an agency, but did not ultimately do so, must also be included. This includes indication to file, or threats to file, made via counsel representing the staffer.
- "**agency**" includes the E.E.O.C. and any state or human rights entity/commission.
- search terms shall include the word "**harassing**"

Counsel for Defendant-Campaign is to confer with **Justin Clark**, who has recently been identified by the Campaign as a representative of the Defendant-Campaign, and was in a top official in the 2020 Campaign, regarding any complaints that were made, including but not limited to complaints that resulted in settlement.

The Campaign is to file a **sworn declaration**, by June 4, 2024, either by (a) Defendant-Campaign representative Justin Clark OR (b) if authored by Defendants' counsel, asserting that it conferred with its client, Mr. Clark; identifying the name of any staffer who raised a complaint (whether internally OR externally via an attorney), but only if the complaint was related to gender discrimination, pregnancy discrimination, and/or sexual harassment; include the nature of the complaint raised (whether gender discrimination, pregnancy discrimination, and/or sexual harassment); and attest whether the Campaign entered into any settlements, regarding any staffer, but only if related to gender discrimination, pregnancy discrimination, and/or sexual harassment. The declaration should also state if Plaintiff is correct that Hannah Castillo, a mother with a newborn threatened to sue the Campaign and/or if any documentation on such exists, whether in the Campaign server or elsewhere. The declaration should also state whether any of the Campaign's $4.1 million in payments to Kasowitz Benson Torres, from November 2020 to January 2021, were related to complaint/s of gender discrimination, pregnancy discrimination, and/or sexual harassment. The amount of

4

the settlement need not be disclosed. This information need not be filed into the docket but can be provided to Plaintiff directly.

The Plaintiff is also permitted a limited, <u>written</u> deposition of the following individuals identified by the Campaign as persons with knowledge: Justin Clark, Megan Powers, and Stephanie Alexander. The deposition is limited to two written questions: whether the individual is aware of any complaints of gender discrimination, pregnancy discrimination, and/or sexual harassment, and, if so, to list the staffer.

SO ORDERED.