

Michael T. Madaio, Esq.
Partner
mmadaio@habbalaw.com
Admitted to practice in NJ, NY & PA

June 4, 2024

**Via ECF**

The Honorable Katharine H. Parker
United States District Court
Southern District of New York
500 Pearl Street, Room 750
New York, New York 10007

   *Re:* *Delgado v. Donald J. Trump for President, Inc., et al.,* No. 19-cv-11764 (AT)(KHP)
     <u>Opposition to Motion to Compel</u>

Dear Judge Parker:

   Please be advised that my office represents non-party witness, Eric Trump ("Mr. Trump"), in connection with the above-referenced action. In accordance with Your Honor's Order dated May 28, 2024 (ECF 330), please accept this letter brief in opposition to the motion to compel (ECF 321) filed by the plaintiff, Arlene Delgado ("Plaintiff").

   Plaintiff's motion seeks to compel Mr. Trump to: (i) provide a revised privilege log which cures purported deficiencies with his initial log; and (ii) produce certain documents which were previously withheld by Mr. Trump as privileged. In response, Mr. Trump, by and through his counsel, has provided Plaintiff with a revised privilege log and produced an additional 70 documents that had previously been withheld. As a result, we respectfully submit that the issues raised in Plaintiff's motion have now been resolved.

<u>**Privilege Log**</u>

   In her motion, Plaintiff contends that Mr. Trump's initial privilege log was deficient because it "violates the S.D.N.Y. requirement that the relationship amongst the listed individuals should be described if not apparent" and because "multiple entries list no sender or recipient at all." ECF 321 at 2. We believe we have now remedied any such issues.

   On June 4, 2024, Mr. Trump provided to Plaintiff a revised privilege log (the "Revised Privilege Log"), a copy of which is annexed hereto as **Exhibit 1**. The Revised Privilege Log conforms with S.D.N.Y. Local Rule 26.2(a) in all respects. For each entry, it lists "the type of document…the general subject matter of the document…the date of the document… the author of the document…[and] any other recipients" of the document." Local Rule 26.2(a)(2)(a); *see also* **Ex. 1**. There are no longer any blank entries for the sender(s) or recipient(s). *See generally* Ex. 1. Further, although the relationship between the senders and recipients are "apparent" in each instance, the Revised Privilege Log nonetheless describes said relationships. *Id.*

For these reasons, the Revised Privilege Log rectifies any purported deficiencies with the initial privilege log. Therefore, Plaintiff's request that Mr. Trump provide "an appropriate privilege log" is moot. ECF 321 at 1.

## **Documents Withheld as Privileged**

In his initial production, Mr. Trump withheld 145 documents as privileged. After the filing of Plaintiff's motion, counsel for Mr. Trump re-reviewed those documents that had been withheld for privilege. As a result of that review, 42 of the 145 documents that had been previously withheld were produced to Plaintiff in their entirety, 28 were produced with privileged portions redacted, 73 documents were withheld under a claim of privilege and 2 documents were withheld as non-responsive. For reference, a list of the documents falling within each of these categories is annexed hereto as **Exhibit 2**.

For the 100 total documents for which Mr. Trump is still asserting a claim of privilege, Plaintiff contends that the attorney-client privilege has been waived because a "non-party/non-attorney" is copied on those communications. ECF 321 at 2. We respectfully disagree and contend that these communications are protected by the common interest privilege.

"The principle underlying the 'common interest' privilege is that it is an exception to the traditional rule that the presence of a third party…at a communication between counsel and a client is sufficient to deprive the communication of the confidentiality which is one of the pillars of the privilege." *Aetna Cas. & Sur. Co. v Certain Underwriters at Lloyd's, London,* 176 Misc.2d 605, 611 (Sup. Ct., N.Y. County 1998), *aff'd* 263 A.D.2d 367, 367 (1st Dep't 1999). The purpose of the common interest privilege is to "protect[] documents shared by parties facing common problems in pending or threatened civil litigation." *Aetna,* 176 Misc.2d at 611. Protection of such disclosures are "deemed necessary to mount a common claim or defense, at a time when parties are most likely to expect discovery requests and their legal interests are sufficiently aligned." *Ambac Assur. v. Countrywide,* 27 N.Y.3d 616, 629 (2016).

The common interest privilege has two prerequisites: (i) it "'requires that the communication otherwise qualify for protection under the attorney-client privilege'" and (ii) the communication must "'be made for the purpose of furthering a legal interest or strategy common to the parties asserting it.'" *Stafford v. A&E Real Estate Holdings, LLC,* 192 A.D.3d 648, 649 (1st Dep't 2021) (citing *Matter of San Diego Gas & Elec. Co. v Morgan Stanley Senior Funding, Inc.,* 136 A.D.3d 547, 548 (1st Dep't 2016). Here, both elements are satisfied.

*First*, all of the communications that have been withheld are protected by the attorney-client privilege because they involve some mixture of Mr. Trump, defendant Donald J. Trump for President, Inc. (the "Campaign"), and outside counsel—Larry Rosen, Esq. of the LaRocca Hornik law firm—who simultaneously represented both parties. By virtue of his dual representation, any legal advice rendered by Mr. Rosen to Mr. Trump or the Campaign is subject to attorney-client privilege with respect to each respective client. *See generally* CPLR 4503(a)(1); *Rossi v. Blue Cross & Blue Shield of Greater N.Y.*, 73 N.Y.2d 588, 593 (1989).

Some of the communications also include Alan Garten, General Counsel for the Trump Organization. Mr. Garten's communications with Mr. Trump are privileged in at least two ways. First, to the extent Mr. Garten rendered legal advice to Mr. Trump concerning his engagement in pending or threatened litigation in his *professional* capacity, attorney-client privilege exists between Mr. Garten, as corporate counsel, and Mr. Trump, as an executive of the Trump Organization, *see, e.g., Rossi*, 73 N.Y.2d at 593 (noting that attorney-client privilege applies to "communications with attorneys, whether corporate staff counsel or outside counsel" as long as the communications are "made for the purpose of obtaining legal advice and directed to an attorney who has been consulted for that purpose."). Second, to the extent the communications relate to Mr. Trump's involvement in pending or threatened litigation in his *personal* capacity, privilege attaches where, as here, the advice is offered for that express purpose. *See, e.g., United States v. International Brotherhood of Teamsters*, 119 F.3d 210, 215 (2d Cir. 1997) ("[i]n order to claim an individual as opposed to a corporate attorney/client privilege, when corporate officers approach corporate counsel for personal legal advice, it must be explicitly made clear to counsel that the advice is sought individually rather than in a corporate capacity.").

Therefore, there are several independent streams of attorney-client privilege which apply to the communications at issue: privilege between Mr. Trump and Mr. Rosen; privilege between the Campaign and Mr. Rosen; and privilege between Mr. Trump and Mr. Garten. This coverage is broadened even further when the common interest doctrine is applied, as it creates a direct line of privilege between all respective parties to the joint defense, regardless of the presence of their counsel. *See, e.g., Millennium Health v. Gerlach,* No. 15-CV-7235-WHP-JLC, 2015 WL 9257444, at *2 (S.D.N.Y. Dec. 18, 2015) ("The joint defense privilege may apply as between two individuals within a joint defense effort, regardless of the presence of an attorney."); *Kelly v. Handy & Hartman*, No. 08-CV-0163-KMK-GAY, 2009 WL 2222712, at *2 (S.D.N.Y. July 23, 2009) ("[T]he privilege is not forfeited even though no attorney either creates or receives that communication.").

*Second,* Mr. Trump and the Campaign have, at all relevant times, shared a common legal interest. For courts to find a common legal interest, the parties must have come to an agreement, "though not necessarily in writing, embodying a cooperative and common enterprise towards an identical legal strategy." *Lugosch v. Congel*, 219 F.R.D. 220, 237 (N.D.N.Y. 2003).[1] "[A] non-party to the litigation can join a joint defense agreement, receive all of the benefit inured under such agreement, and be obligated to the same degree as the co-parties." *Lugosch v. Congel*, 219 F.R.D. 220, 239 (N.D.N.Y. 20023). In determining whether a common legal interest exists, courts look towards whether "multiple persons are represented by the same attorney" or any other evidence to demonstrate the existence of "coordinated . . . legal efforts." *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 446, 448 (S.D.N.Y. 1995). Another relevant consideration is whether "the parties asserting the privilege were coparties to litigation or

---

[1] While "[s]ome case law suggests that a party seeking to invoke the common interest doctrine must have an `identical' legal interest[,]…more recent cases have held that the parties need not have 'total identity of interest' as long as 'a limited common purpose necessitates disclosure to certain parties.'" *Fresh Del Monte Produce, Inc. v Del Monte Foods, Inc.*, 13 CIV. 8997 JPO GWG, 2015 WL 3450045, at *3 (S.D.N.Y. May 28, 2015) (citing cases). *see also Guiffre v. Maxwell*, No. 15-cv-7433 (RWS), 2016 WL 1756918, at *6 (S.D.N.Y. May 2, 2016) ("A limited common purpose necessitating disclosure is sufficient, and a total identity of interest among the participants is not required under New York law.").

reasonably believed that they could be made a party to litigation." *Ambac Assur.*, 27 N.Y.3d at 631 (citation omitted).

Here, Mr. Trump and the Campaign were simultaneously represented by the same counsel, Mr. Rosen. This fact gives rise to a powerful inference that the common interest privilege applies. *See, e.g.*, *Ambac Assur.*, 27 N.Y.3d at 631 ("In the joint client or co-client setting…the clients indisputably share a complete alignment of interests in order for the attorney, ethically, to represent both parties."); *MacKenzie-Childs LLC v. MacKenzie-Childs*, 262 F.R.D. 241, 249 (W.D.N.Y. 2009) ("[T]he common interest doctrine typically applies when an attorney has provided joint or simultaneous representation of the parties.") (citation omitted); *Hayden v. Intl. Bus. Machines Corp.*, 21-CV-2485-VB-JCM, 2023 WL 4622914, at *8 (S.D.N.Y. July 14, 2023) ("At its core, '[t]he common interest doctrine applies when multiple persons are represented by the same attorney. In that situation, communications made to the shared attorney to establish a defense strategy remain privileged as to the rest of the world.'") (citing *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.,* 160 F.R.D. 437, 446 (S.D.N.Y. 1995)).

Further, the withheld communications contain legal advice rendered to Mr. Trump and the Campaign in connection with pending and/or anticipated litigation to which they shared a common interest. *Kindred Healthcare, Inc. v. SAI Global Compliance, Inc.*, 169 A.D.3d 517, 518 (1st Dep't 2019) (noting that common interest privilege applies when there is a "pending or reasonably anticipated litigation."). Two time periods are relevant to this analysis:

- Communications from September 2017 through November 2019.[2] These communications relate to a prior arbitration proceeding which was commenced by the Campaign against Plaintiff on July 28, 2017. *See* **Exhibit 3**, Demand for Arbitration dated July 28, 2017. Larry Rosen represented the Campaign in the arbitration proceedings, *id.*, wherein the Campaign sought to enforce a confidentiality agreement, *see* **Exhibit 4**, which it alleged Plaintiff had breached. Mr. Trump and the Trump Organization are amongst the third-party beneficiaries of the confidentiality agreement and also maintain the explicit right to enforce its terms. *See* **Ex. 4** ¶¶ 1(c), 2, 5, 6(a)-(c), 7(d). The communications between Mr. Trump, the Campaign (a party to the arbitration), Larry Rosen (Mr. Trump's counsel and counsel for the plaintiff in the arbitration), and/or Alan Garten (representing the Trump Organization, a third party beneficiary of the confidentiality agreement, and also rendering legal advice to Mr. Trump in a professional and/or personal capacity) involve the facilitation and coordination of legal strategy for the 2017 arbitration action. Therefore, these communications are shielded by common interest privilege.

- Communications from December 2019 through the present.[3] These communications relate to the instant litigation. Notably, prior to commencing of this action on December 23, 2019, Plaintiff had repeatedly threatened to include Mr. Trump as an individual defendant. By virtue of these threats, Mr. Trump has, at all relevant times, had a reasonable belief that he could be named as a party defendant. As such, common interest privilege applies to the communications by and among Mr. Trump, the Campaign (a defendant in this action), Larry Rosen (Mr. Trump's counsel and counsel for a defendant in this action), and/or Alan Garten (advising Mr.

---

[2] Documents ranging from TRU1_15371_00000061 through TRU1_15371_00000231 in Mr. Trump's production.
[3] Documents ranging from TRU1_15371_00000238 through TRU1_15371_00004480 in Mr. Trump's production.

Trump in a professional and/or individual capacity for this action). All of the documents redacted or withheld pertain to legal advice rendered in connection with the instant litigation and therefore are shielded from disclosure.

In sum, Mr. Trump has asserted privilege over communications between himself, his anticipated co-parties, their joint counsel, and his corporate counsel (who, at all relevant times, was either representing the Trump Organization or rendering legal advice to Mr. Trump in a professional and/or personal capacity). All the communications in question relate to the formulation of litigation strategy between these parties and/or attorneys for matters which they share a common legal interest.[4] In this scenario, the common interest privilege applies.

## Conclusion

Based on the foregoing, it is respectfully requested that Plaintiff's motion to compel be denied in its entirety.

Respectfully submitted,

Michael T. Madaio, Esq.
For HABBA MADAIO & ASSOCIATES LLP

cc: All Counsel of Record (via ECF)

---

[4] To the extent necessary, Mr. Trump is prepared to provide copies of the withheld documents to the Court for an in-camera review.

5