IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARLENE J. DELGADO,<br><br>              Plaintiff,<br><br>v.<br><br>DONALD J. TRUMP FOR PRESIDENT, INC., *et al*.,<br><br>              Defendants. | Case No. 19-cv-11764 (AT) (KHP) |

**DEFENDANTS' MEMORANDUM OF LAW IN
OPPOSITION TO PLAINTIFF'S OBJECTION**

Defendants Donald J. Trump for President, Inc. (the "Campaign"), Sean Spicer, and Reince Priebus (collectively, "Defendants") respectfully submit this memorandum of law in opposition to Plaintiff Arlene Delgado's ("Plaintiff" or "Delgado") May 30, 2024[1] objection to Magistrate Judge Kathleen Parker's May 14, 2024 discovery order (ECF No. 312 (the "Order")).

**PRELIMINARY STATEMENT**

In asking this Court to reverse Judge Parker's Order, Plaintiff does not cite a single piece of authority demonstrating that Judge Parker's decisions were wrong or contrary to the law. Instead, Plaintiff's objection to the Order amounts to little more than her self-serving belief that additional evidence relevant to her claims exists, if only Judge Parker were willing to indulge her

---

[1] Plaintiff filed a series of objections—ECF Nos. 331, 332, 333, and 337—each of which was entered on the docket on May 30, 2024. This opposition directly refutes the arguments made in ECF No. 333, as that objection seeks to overturn decisions regarding Defendants' discovery obligations. However, the arguments below regarding Plaintiff's failure to meet the Fed. R. Civ. P. 72(a) standard, Plaintiff's own delay being the cause of the issues she now raises, and the overwhelming need for discovery to close so that the parties can properly brief summary judgment, all apply with equal force to ECF Nos. 331, 332, and 337.

1

repeated speculations and subject Defendants to undue burden and expense as she seeks to extend discovery indefinitely in search of this evidence. However, as Judge Parker has appropriately recognized, Plaintiff's desire for untethered, unending discovery is plainly not permissible under the law. Judge Parker has permitted Plaintiff to take all of the discovery to which she is entitled in this case. That Plaintiff wishes she had evidence to support her claim does not make the Order clearly erroneous or contrary to the law. Simply put, Plaintiff's dissatisfaction with the state of her case is not a basis for reversal.

This is particularly true in the instant case, where Plaintiff has been given ample time, including several discovery extensions, to obtain the discovery she seeks. Yet, time and again, Plaintiff (and her previous attorneys) have ignored deadlines and asked Judge Parker to excuse their lack of diligence and provide additional time to find evidence to support Plaintiff's frivolous claims. However, as Judge Parker has explained, after all of this time, "discovery in this case must come to a close." ECF No. 324 at p. 3. Indeed it must. Defendants are in the process of preparing their summary judgment papers; providing Plaintiff with additional time to take further discovery would prejudice Defendants' ability to marshal the relevant evidence in support of their arguments. Accordingly, for the reasons set forth herein, Plaintiff's objection to the Order should be overruled.

## ARGUMENT

### I. Legal Standard

Rule 72 of the Federal Rules of Civil Procedure, which governs objections to a magistrate judge's discovery rulings, states that this Court may only set aside Judge Parker's Order if it "is clearly erroneous or is contrary to the law." Fed. R. Civ. P. 72(a). Particularly in the context of discovery rulings, as is the case with the Order, the decisions of a magistrate judge are "entitled to substantial deference." Ramgoolie v. Ramgoolie, No. 16-cv-3345 (VEC)(SN), 2018 WL 4266015, at *7 (S.D.N.Y. Sept. 6, 2018); see also U2 Home Ent., Inc. v. Hong Wei Int'l Trading Inc., No.

04-cv-6189 (JFK), 2007 WL 2327068, at *1 (S.D.N.Y. Aug. 13, 2007) (explaining that because a "magistrate judge is best qualified to judge the entire atmosphere of the discovery process . . . [her] rulings on discovery matters are entitled to substantial deference"); Williams v. Rosenblatt Sec., Inc., 236 F. Supp. 3d 802, 803 (S.D.N.Y. 2017) (explaining that where a magistrate judge's decision was "a reasonable one," it "was certainly not clearly erroneous or contrary to the law").

A decision is only "clearly erroneous" if the district court "on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Collymore v. City of New York, No. 16-cv-8270 (LTS)(OTW), 2021 WL 2269538, at *1 (S.D.N.Y. June 3, 2021) (cleaned up). As another court in this district has explained, "under the clearly erroneous standard of review, the magistrate judge's finding should not be rejected merely because the court would have decided the matter differently." Graves v. Deutsche Bank Sec. Inc., No. 07-cv-5471 (BSJ), 2010 WL 997178, at *7 (S.D.N.Y. Mar. 18, 2010), aff'd, 548 F. App'x 654 (2d Cir. 2013); see also Edmonds v. Seavey, No. 08-cv-5646 (HB), 2009 WL 2150971, at *2 (S.D.N.Y. July 20, 2009) ("A showing that reasonable minds may differ on the wisdom of granting the defendant's motion is not sufficient to overturn a magistrate judge's decision)(internal citations and quotations omitted).

Similarly, a magistrate judge's discovery order is "contrary to the law" only "when it fails to apply or misapplies relevant statutes, case law or rules of procedure." Id. Notably, the "failure to identify controlling authority that prohibits the magistrate judge from reaching the challenged ruling is 'fatal' to a party's objection under this test." Abbott Lab'ys v. H&H Wholesale Servs., Inc., No. 17-cv-3095 (CBA)(LB), 2018 WL 11446490, at *1 (E.D.N.Y. Dec. 11, 2018).

In short, "magistrate judges have broad discretion in resolving nondispositive matters, and a party seeking to overturn a discovery order bears a heavy burden." Gorman v. Polar Electro,

Inc., 124 F. Supp. 2d 148, 150 (E.D.N.Y. 2000). Here, Plaintiff's arguments in support of her objections do not even remotely satisfy her "heavy burden" in seeking to overturn Judge Parker's Order.

## II. Plaintiff is Not Entitled to Information about the "Identity" of the Individual with whom the Campaign's Attorneys Are Discussing this Case.

Plaintiff first argues that the Order should be overruled insofar as it denied her request that the Campaign be forced to identify the individual with whom Defendants' counsel is speaking about matters related to the instant case. As Judge Parker explained in the Order, Plaintiff did not offer any support for her position "that a corporate party's counsel must reveal the names of all the individual representatives of the company who interact with counsel." ECF. No. 312 at p. 3. Indeed, Plaintiff has not even satisfied her threshold showing of demonstrating how the information she seeks is in any way relevant to her claims in this case. The closest Plaintiff comes is her tortured argument that this information is necessary to somehow allow her to demonstrate that the 2024 Campaign is not a "different entity" from the 2016 Campaign, which is the only entity that is relevant in this case. However, Plaintiff has not demonstrated how the identity of a single individual – with whom Defendants' attorneys are consulting with about *this litigation* – would be relevant to that point, or to any of her claims in this case.

Plaintiff also fails to address Judge Parker's other reason for denying Plaintiff's motion to compel, namely that she had ample opportunity during the discovery process to adduce information about the Campaign, to the extent that it was relevant:

> Here, Defendants' identity as the Trump Campaign is known. It is not being withheld from Plaintiff. Plaintiff is also aware of the identity of a Campaign representative, Justin Clark. Plaintiff has also deposed a 30(b)(6) witness and others affiliated with the Campaign. Defendants' counsel is not required to inform Plaintiff of the identity of each individual who speaks with counsel on behalf of the Defendant Campaign.

<u>Id.</u>  Notably, despite her objections to a litany of Judge Parker's other statements, Plaintiff does not even attempt to dispute the accuracy of Judge Parker's statements about her having been able to obtain information about the Campaign during discovery.  That Ms. Delgado wants more information simply does not make the Order "clearly erroneous" under the law.

### III. **Plaintiff is Not Entitled to Further Electronic Discovery in This Case.**

Plaintiff next argues that the Order did not provide her with sufficient discovery concerning other complaints of gender discrimination that *may* have been made by the Campaign's employees during the 2016 and 2020 election cycles.  Plaintiff's argument is premised on several claims, all of which are wrong, as Plaintiff resorts to a complete distortion of the record to justify the relief she seeks.

First, Plaintiff claims that the fact that the Campaign did not have an HR Director during the 2020 cycle somehow "proves" that the Order should not have been limited to written complaints of discrimination.  According to Plaintiff, the lack of an HR Director means that "there was no one specific to approach with one's complaint, and certainly no one who would write up the existence of the complaint."  ECF No. 333 at p. 5.  This is simply not true.  As the Campaign has informed Plaintiff, although no one had the formal title of "HR Director" during the 2020 campaign cycle, "that role was filled first by [Megan] Powers in her capacity as Director of Operations and then by Stephanie Alexander, in her capacity as Chief of Staff."  ECF No. 343-1 at p. 1.  The Campaign also confirmed that Ms. Alexander was "the de facto HR Director, as she had primary responsibility for HR matters" during the 2020 election cycle.  <u>Id.</u>, pp. 1-2.  Importantly, the Order required the Campaign to conduct searches in which *both* Ms. Powers and Ms. Alexander were custodians.  <u>See</u> ECF No. 312 at pp. 4-5.

Moreover, in ruling on Plaintiff's motion for reconsideration of the Order, Judge Parker already addressed Plaintiff's claim that the lack of a titled HR Director meant that the ESI search mandated by the court was insufficient. See ECF No. 346. As Judge Parker explained, the custodians the Order identified was based on Plaintiff's own claims about which individuals were most likely to have received complaints:

> The only purportedly new information Plaintiff raises is Defendants' statement that no individual possessed the title of "HR Director" during the 2020 campaign cycle. Such information does not constitute "new evidence" and is inapposite because the May 14, 2024 Order did not limit Defendants to a search of the Campaign's "HR Director." Rather, the Order directed Defendants to conduct a search of the individuals Plaintiff identified as those who might have received complaints of gender discrimination, sexual harassment, or pregnancy discrimination, including via email or text message. Therefore, Defendants informing Plaintiff that no one held the title of "HR Director" during the 2020 campaign cycle has no bearing on the May 14, 2024 Order.

Id. at p. 3. Plaintiff cannot propose custodians and then demand that Defendants incur the substantial cost of additional discovery simply because she is unhappy with the information those custodians possess.

Second, Plaintiff speculates, without any evidence whatsoever, that the Campaign is attempting to withhold documents to avoid its discovery obligations. Again, this is completely false. After receiving the Order, the Campaign ran searches, using the mandated search terms, on Ms. Alexander, Ms. Powers and three other individuals identified by the Order (Brad Parscale, Michael Glassner and Lucia Castellano). The Campaign then reviewed nearly 20,000 documents before producing nearly 400 pages of additional document discovery to comply, in full, with the Order. Similarly, contrary to Plaintiff's claim – which is again, nothing more than speculation – that the Campaign would attempt to use the language of the Order to withhold documents about complaints made by non-employees, the Campaign did not withhold a single complaint on the

6

basis that the individual making the complaint was a 1099 independent contractor rather than an employee.[2]

Third, Plaintiff argues that the search terms that the Order required the Campaign to run were themselves inadequate and poorly constructed. Again, this argument was placed before Judge Parker, and properly rejected: "the Court notes that it carefully considered the search terms and, indeed, they resulted in production of additional documents." ECF No. 346 at p. 3. There is simply no reason to believe that alternative search terms would uncover any additional evidence that Plaintiff seeks. Further, Plaintiff has not presented any argument that alternative search terms would be appropriately proportionate based on the needs of the case.

Finally, it is important to note that, to the extent that Plaintiff believed document discovery would not be sufficient to allow her to receive information about the supposed complaints of gender discrimination made against the Campaign, seeking discovery by way of documents was her choice. Specifically, on April 24, 2024, Judge Parker issued a discovery order pertaining to Plaintiff's request for complaints of discrimination against the Campaign which stated that:

> Defendants may provide such information [about complaints of gender discrimination during the 2016 and 2020 election cycles] either through a continued 30(b)(6) deposition, interrogatory responses, or by producing documentation of such complaints. Unless the parties agree otherwise, ***the Court assumes the information will be provided via a continued deposition***, which must take place by the discovery deadline, May 7, 2024, and be limited to the topic of gender-based discrimination complaints filed against the Campaign during the 2016 and 2020 campaign cycles.

See ECF No. 265 at p. 2 (emphasis added).

---

[2] Plaintiff also claims that Defendants should be forced to disclose "emails" raising complaints of gender discrimination. However, the Order already required Defendants to produce all "written" complaints of gender discrimination after conducting the required ESI search, and Defendants have done so, including any e-mails containing such complaints.

Subsequently, Defendants attempted to comply with the Court's order by making a witness available for a deposition pursuant to Fed. R. Civ. P. 30(b)(6).  See ECF No. 272 at p. 2 (explaining the "defendants intend to provide this information to plaintiff by May 7th by way of a continued 30(b)(6) deposition, as the Court expressly permitted in the April 24th Order").  However, it was only when Plaintiff refused to schedule the continued deposition that Defendants produced documents instead.  Viewed in the context of this information, it is clear that Plaintiff's objections to the Order represent nothing more than her unhappiness that she has not been able to adduce evidence of discriminatory conduct by Defendants to revive her baseless claims in the instant case.  However, Plaintiff's self-serving and rampant speculation that she could have found this evidence if given an opportunity to conduct discovery again does not make Judge Parker's Order "clearly erroneous" warranting reversal.

### IV. Plaintiff is Not Entitled to Information about the Campaign's Payments to the Kasowitz Firm.

Plaintiff also objects to the Order to the extent that it denied her information about payments purportedly made by the Campaign to the law firm of Kasowitz, Benson and Torres LLP ("Kasowitz").  In making her objection, Plaintiff once again distorts the record in this case.

Specifically, Plaintiff claims that information about payments made by the Campaign to Kasozwitz (which was the Campaign's law firm at time), is somehow relevant to show that there were other complaints of gender discrimination against the Campaign during the 2016 and 2020 election cycle.  Indeed, Plaintiff goes so far as to claim that discovery about payments to Kasowitz is "likely the *only* avenue by which [Delgado] will learn of other complaints made."  ECF No. 333 at p. 7 (emphasis in original).  This is simply not true.  As detailed herein, Judge Parker has already ordered Defendants to produce the actual written complaints of gender discrimination against the Campaign during the 2016 and 2020 election cycles, and Defendants have done so.  Thus, Plaintiff

already has the discovery about other complaints of gender discrimination she seeks. What Plaintiff is seeking is information about the potential *settlement* of other claims of gender discrimination against the Campaign. The law does not permit her access to such information, as Judge Parker explained:

> Plaintiff is not entitled to discovery of how other cases may or may not have been resolved. Such information is not relevant or necessary for the prosecution of this case and, given the information that has been produced or will be produced pursuant to this Order, the additional information sought from the Kasowitz firm is not proportional to the needs of this case.

ECF No. 312 at p. 5.

This is especially true, where, as here, Plaintiff had years to conduct discovery into any payments made by the Campaign to Kasowitz and instead chose to wait until the day discovery closed to make her application for such discovery. Id. Although Plaintiff disputes this fact, she herself states that she purportedly knew that Kasowitz was paying victims of gender discrimination on behalf of the Campaign as early as 2017. See ECF No. 333 at p. 6. Thus, Plaintiff could have sought information from and/or about Kasowitz at any point since discovery in this case started, two years ago. That she, and her previous counsel, failed to do so, does not constitute the good cause required for modifying a court-mandated scheduling order, and it certainly does not make Judge Parker's decision to deny her such an extension "clearly erroneous."

Plaintiff does not cite to any case law that Judge Parker overlooked in holding that she is not entitled to evidence about how other complaints of discrimination. Nor has she pointed to any facts that indicate that the Order was clearly erroneous. Rather, she again and again resorts to pure speculation to justify her fanciful claims that she would obtain relevant evidence if Judge Parker had permitted her to follow every rabbit hole that she identified in this case. This is not the standard for discovery and does not warrant reversing the Order.

## CONCLUSION

For the foregoing reasons, Delgado cannot establish that Judge Parker's Order was clearly erroneous or contrary to the law. As a result, Defendants respectfully requests that the Court overrule Plaintiff's objections in their entirety.

Dated: June 13, 2024
      New York, New York

|  |  |
|---|---|
|  | **SCHULMAN BHATTACHARYA, LLC** |
| By: | /s/ Jeffrey Gavenman |
|  | Jeffrey S. Gavenman |
|  | 6116 Executive Boulevard, Suite 425 |
|  | North Bethesda, Maryland 20852 |
|  | and |
|  | 240 West 40th Street |
|  | New York, NY 10018 |
|  | Tel.: (240) 356-8550 |
|  | Facsimile: (240) 356-8558 |
|  | Email: jgavenman@schulmanbh.com |