June 12, 2024

Hon. Magistrate Parker
United State District Court, S.D.N.Y.
500 Pearl Street, Courtroom 17D
New York, NY 10007
<u>RE</u>: ***Parscale Motion to Compel and Response - filings***
<u>VIA</u>: electronic submission through *Pro-Se* Intake Unit and to chambers

Your Honor,

I am the *pro-se* Plaintiff in the above-mentioned matter.  I write to the Court regarding an administrative error that resulted in the Court not receiving a filing.[1]

On June 4, 2024, by the appropriate deadline, I submitted my Motion to Compel Answers, regarding Mr. Parscale's deposition, to the Pro-Se Intake Unit. (*See* Attachment) I received the customary system notification, confirming receipt. (*See* Attachment)

A few minutes later, I also emailed it to Mr. Parscale's attorney, Stanley Woodward, so that Mr. Parscale and Mr. Woodward would not need to wait until the item was docketed, and would therefore have the full amount of time to review and respond, before their June 11th deadline. (*See* Attachment)

On Monday, June 10th, I called the Pro Se Intake Unit to inquire why my Motion to Compel had yet to reflect on the docket but was told that the Unit was behind on processing and "we'll get to it."

On Tuesday, June 11, 2024, at 11:58 pm, Mr. Woodward provided me their Response but noted that, as my Motion had never docketed, he would refrain from docketing their Response. (*See* Attachment) I responded to Mr. Woodward, informing I would provide the filings to the Court, if the Intake Unit had not docketed by that morning. (*See* Attachment)

I promptly called the Pro-Se Intake Unit, again, on Wednesday morning, June 12th. This time, I was told that my PDF filing was 'corrupted' (but Mr. Woodward was able to open and review the same PDF without issue) and such is likely why it had not been uploaded, due to technical difficulty.  I was told I should "write a letter to the Court" and could also resubmit the filing in that letter. I do so herein. I also attach Mr. Parscale's Response, so that the Court has both filings.

Respectfully submitted,

*s/Arlene Delgado*
Arlene Delgado
Plaintiff

---

[1] While I recently sought, and obtained, permission from this Court to be able to e-file, even though I am unable to take the required course, the actual e-filing system department has yet to return my call.

<u>ATTACHMENTS</u>

## for filing

A Delgado <ajdelgado@outlook.com>

Tue 6/4/2024 8:12 PM

To: Temporary Pro Se Filing NYSD <pro_se_filing@nysd.uscourts.gov>

📎 1 attachments (47 KB)

Motion to Compel Answers to Depo Questions Brad Parscale June 4 2024.pdf;

Greetings,

Attached please find a filing. Thank you!

Arlene Delgado
Plaintiff, pro-se

Case #: 19-cv-11764 (AT) (KHP)
Arlene Delgado
1065 SW 8th St PMB 609 Miami ,FL 33130
786-349-3186



PF  Pro Se Filing
To: You



Tue 6/4/2024 8:12 PM

# IMPORTANT INFORMATION, PLEASE REVIEW

Your email has been received by the Pro Se Intake Unit of the United States District Court for the Southern District of New York.  (This is not the United States Bankruptcy Court.)
Documents from pro se litigants that meet the required standards for electronic filing will be filed and will appear on the ECF docket within two business days of receipt (see required standards below).  If you send your document by email and it is accepted for filing, you should not deliver a hard copy version to the court.

Requirements for Filing a New Action by Email:
·      Documents must be attached to the email in PDF format, no larger than 10 megabytes;
·      Documents must be signed by the filing party by either
        ·      (a) signing by hand and then scanning the document;
        ·      (b) signing electronically using a digital signature; or
        ·      (c) by typing: "/s/Filer's Name" on the signature block;

**From:** A Delgado <ajdelgado@outlook.com>
**Sent:** Tuesday, June 4, 2024 8:21 PM
**To:** Stanley Woodward <stanley@brandwoodwardlaw.com>; jgavenman@schulmanbh.com
**Subject:** Motion to Compel

Gentlemen:

Attached please find the Motion to Compel deposition answers of Mr. Parscale.

Given that it takes the Pro-Se Intake Unit a couple of days to process filings into the docket, and given that there is a deadline by which you are to respond, I am sending it to you, simultaneous to submitting to the Unit, to ensure you are not penalized for time by the delay in receiving it via the docket.

Thank you,

AJ

**Re: Motion to Compel**

A Delgado <ajdelgado@outlook.com>

Wed 6/12/2024 6:21 AM

To: stanley@brandwoodwardlaw.com <stanley@brandwoodwardlaw.com>;  jgavenman@schulmanbh.com
<jgavenman@schulmanbh.com>

Cc:  'Mark Nobile' <mark@brandwoodwardlaw.com>

Received. My Motion to Compel was submitted to the Pro Se Intake Unit for processing on June 4th at 8:12 pm. I will call to ascertain why it has still not been docketed. If the Intake Unit is unable to remedy and docket it this morning, I will submit to the Court directly my Motion and your Response, with a cover letter explaining the matter, so that a ruling is not delayed due to the this administrative delay.

---

stanley@brandwoodwardlaw.com <stanley@brandwoodwardlaw.com>

Tue 6/11/2024 11:58 PM

To: 'A Delgado' <ajdelgado@outlook.com>;  jgavenman@schulmanbh.com <jgavenman@schulmanbh.com>

Cc: 'Mark Nobile' <mark@brandwoodwardlaw.com>

📎 4 attachments (537 KB)

MOL IOT Motion to Compel Parscale Responses.pdf; JSG Decl IOT Motion to Compel Parscale.pdf; Ex A - Mtn to Compel Parscale.pdf; Ex B - Mtn to Compel Parscale.pdf;

Ms. Delgado – as your motion has yet to be docketed, a memorandum in opposition cannot be filed on the docket with the CM/ECF system. Accordingly, should your motion be docketed, we will promptly file the attached memorandum in opposition thereto.

Thank you,

Stanley

**Brand | Woodward**
[www.brandwoodwardlaw.com](www.brandwoodwardlaw.com)
+1.202.996.7447 (o)
+1.202.302.7049 (m)
+1.202.996.0113 (f)

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

ARLENE J. DELGADO,
Plaintiff,

-vs-                                                      No. 19-cv-11764 (AT) (KHP)

DONALD J. TRUMP FOR PRESIDENT, INC.,
TRUMP FOR AMERICA, INC., SEAN SPICER,
individually, REINCE PRIEBUS, individually,
and STEPHEN BANNON, individually,

Defendants.


**MOTION TO COMPEL DEPOSITION ANSWERS BY BRADLEY PARSCALE**

Plaintiff, Arlene J. Delgado, pursuant to the Court's May 29, 2024 order (ECF 330), hereby files this Motion to Compel Deposition Answers by Bradley Parscale, under F.R.C.P. 37 and all applicable rules and law, and respectfully requests that Mr. Parscale be ordered to answer the following questions:

FROM PART 1 OF THE DEPOSITION

QUESTION on p. 40 from Part 1 of the deposition

Plaintiff: [in regards to Mr. Parscale stating he had spoken to various attorneys regarding her, in the past], Plaintiff: "Was that about my lawsuit, or potential lawsuit, against the Campaign?"

Mr. Stanley Woodward (hereinafter, "Mr. Woodward") instructed his client not to answer, as such is privileged. But it is not.. Plaintiff was clearly not asking about the actual substance or content of the communication but merely the topic – the equivalent of the "re" line in an email. Per Southern District of New York privilege log rules, even oral communications' privilege logs require revelation of what the communication was *about*. Per the S.D.N.Y. rules:

> For oral communications: (i) the name of the person making the communication and the names of persons present while the communication was made and, where not apparent, the relationship of the persons present to the person making the communication; (i) the date and place of communication; **and (i) the general subject matter of the communication**. (emphasis added)

1

What conversations the witness had about Plaintiff, particularly in the years when he was Campaign Manager of the Defendant-Campaign (2018-2020), are of course highly relevant and reasonably inquiring as to what or why the Campaign Manager was having conversations about the Plaintiff, and the general nature of such, is certainly something about which Plaintiff is entitled to briefly inquire. Note Mr. Woodward did not object on the basis of relevance (because he knows it is relevant) but merely on the basis of privilege – but, as the S.D.N.Y. rules make clear, such information is not considered privileged.


FROM PART 2 OF THE DEPOSITION

QUESTION on p. 184

[When Mr. Parscale explained that the Campaign paid its Senior Advisor, Mr. Miller, via a third party, due to Mr. Miller wanting to hide his income because "he was going through things"…]
Plaintiff: "What things?"

Mr. Woodward objected as to relevance.

First, the deponent opened the door to the question, by positing that the Defendant-Campaign essentially agreed to hide Mr. Miller's compensation, routing it via a middleman, because Mr. Miller was going "through things." In light of the deponent opening the door, it is difficult to sustain an objection as to relevance, when the question is merely following up on/seeking clarification on what the deponent himself just stated.

Second, upon information and basic common sense, those "things" were a child support litigation Mr. Miller had ongoing at the time, against Plaintiff. Of course it is relevant if the Campaign engaged in any conduct, or conspired to, or facilitated any conduct, that harmed, or Defendant should have known would harm, Plaintiff.  It directly goes to, and is evidence of, retaliation against Plaintiff, one of the claims in this case. It is proportional, as well, to the needs of the case to know if Defendant-Campaign engaged in retaliatory conduct, given that retaliation is against Plaintiff is a claim in the case and retaliation, per New York law, can take various forms.

However, given that the Defendant-Campaign, essentially run by Mr. Miller, is a client of Mr. Parscale, and given that the Plaintiff was prevented from obtaining an answer on the spot, as she was entitled to do, it is undoubtedly the case that Mr. Parscale's answer, even if compelled, will simply be, "I do not recall" or will say it was something else entirely.

QUESTION on p. 186

Plaintiff: "Are you neutral in this case, Brad?"

Mr. Woodward objected on the basis that the question had already been asked in "Part 1" of the deposition, a month earlier. As the transcript shows, Plaintiff asked Mr. Woodward to please inform as to where in the Part 1 transcript, which both had in their possession, the Plaintiff has asked the same question; Mr. Woodward refused to say; and the two then went on the record. The two come back on the record and Plaintiff recites for the record Mr. Woodward's position, which is that, in Part 1 of his deposition, Plaintiff asked, "Brad, is there any personal animus towards me regarding any issue that would prevent you from giving honest answers here today?"
But that is not the same question as to whether the deponent is neutral. Thus the objection was not valid The objection was improper, as the question was clearly distinct from the prior question. One asked whether there was a personal animus towards the deposing party. The other asked whether the person was neutral in the case. The two are distinct.

Although Mr. Woodward did not object on the grounds of relevance, Plaintiff nonetheless notes herein that he did not do so because, clearly, the question is undoubtedly relevant, as it goes to the witness's credibility. Similarly, the question is proportional to the needs of the case, as it is standard to reasonably probe and question a key witness's credibility or bias.


QUESTION on p. 189

Plaintiff: "Brad, are you hoping the campaign wins this case? (p. 189 of transcript)"

Mr. Woodward objected as to relevance. But of course this is relevant, as well as proportional to the case. Whether the deponent, a key witness, is 'rooting' for one side or the other directly goes to the heart of the witness's credibility and "[t]he credibility of a witness (whether or not a party) is always relevant." *Shih v. Petal Card, Inc.*, 18-CV-5495 (JFK) (BCM) (S.D.N.Y. Nov. 12, 2021) p. 8


QUESTION on p.  194

Plaintiff: "Are your interests in this case aligned with the Campaign's?"

Mr. Woodward objected as to form but, more importantly, on grounds of attorney-client privilege, and directed his client not to answer, claiming that the question (whether the deponent believes his interests are aligned with the Campaign's) is attorney-client privileged.

This is an objection with no basis in law or logic. Attorney-client privilege is meant to protect communications between an attorney and his client for purposes of receiving or render legal advice. Not only did this question not inquire about legal advice sought or received, it did not even ask about *any* sort of communication between Mr. Parscale and Mr. Woodward. This question merely asked the deponent about his own belief.

Although Mr. Woodward did not object on the basis of relevance, Plaintiff nonetheless notes herein that this question is clearly relevant and proportional to the needs of the case, as any bias on the part of the witness, particularly a key witness, goes directly to the heart of the witness's credibility. "The credibility of a witness (whether or not a party) is always relevant." *Shih v. Petal Card, Inc.*, 18-CV-5495 (JFK) (BCM) (S.D.N.Y. Nov. 12, 2021) p. 8

<u>CONCLUSION</u>

In sum, this is a simple Motion to Compel, as the questions to which answers are sought were direct and easily justified questions, which any litigant/attorney would have also reasonably asked.

All are undoubtedly relevant and proportional to the needs of this case (these are not questions off on a remote tangent, to which depositions often stray).

Aside from the brief case citation above, Plaintiff does not burden this Court with a memorandum of law, given the simple nature of the questions.

The excerpt of the questions/objections is attached (with highlighting for ease of the Court's reference).

Dated: June 4, 2024

Respectfully submitted,

*s/Arlene Delgado*
Arlene Delgado
Plaintiff, *pro-se*

4

*April 12, 2024 in re: Delgado v Trump for President*
*Deposition of Bradley Parscale*

1          So that -- so you understand that is what

2     my narrowing down is about.

3          So --

4                    (Simultaneous Speakers)

5     MS. DELGADO:  So if you'd like to take a

6     minute and discuss it with him, I'm happy to

7     wait.

8          MR. WOODWARD:  Do you want to rephrase the

9     question?

10     MS. DELGADO:  Well, I think it's --

11 BY MS. DELGADO:

12     Q    Mr. Parscale, you said you had

13 conversations or communications about me with

14 attorneys in the past, aside from, obviously, your

15 appearance here today; is that correct?

16     A    Yes.

17     Q    Okay.  And without telling me the content

18 of those communications, what were they about or

19 pertaining to?

20          MR. WOODWARD:  I'm still going to object.

21     Why don't you ask him who he spoke with.  And

22     if it was on Twitter, then I won't have any

23     concerns.

24          MS. DELGADO:  Well, I wouldn't limit it to

25     Twitter.



*April 12, 2024 in re: Delgado v Trump for President*
*Deposition of Bradley Parscale*

1              MR. WOODWARD:  Why don't you ask him --

2                      (Simultaneous speakers)

3    BY MS. DELGADO:

4         Q    Let's go -- what -- who -- what attorney

5    did you speak with that you're recalling?

6         A    It would have been the campaign attorneys,

7    my campaign attorneys.

8         Q    What year, approximately?

9         A    My guess it would be -- I mean, I talked

10   to them multiple times over the years about you,

11   depending on the situation.  But they would always

12   have been my campaign attorneys or my personal

13   attorney.  I have a lot of attorneys unfortunately

14   after Trump world.

15              They would have all been my

16   attorneys.  I don't know exactly who you're talking

17   about.

18              If you want to ask me if I spoke to a

19   certain person, ask me.  I don't know who that would

20   have been.

21        Q    Do you recall who the attorneys were that

22   you spoke to about me?

23        A    The only one I remember multiple times is

24   Alex Cannon.  Who's both --

25                      (Simultaneous speakers)



*April 12, 2024 in re: Delgado v Trump for President*
*Deposition of Bradley Parscale*

1  BY MS. DELGADO:

2       Q    Was that about -- I'm sorry.  Go ahead.

3       A    He was my campaign attorney and then

4  became my personal attorney after leaving the

5  campaign.

6       Q    Okay.  Was that about my lawsuit or

7  potential lawsuit against the campaign?

8            MR. WOODWARD:  Don't answer that.

9            MS. DELGADO:  I'm allowed to ask what

10           the -- the content of -- not the content

11           specifically, but what it pertained to not

12           whether -- does she have bad hair.  They can

13           have a conversation about anything pertaining

14           to me that might not be legally related.

15           So I -- that -- I don't believe that's

16           privileged at all.  The question is not trying

17           to get to the core of what they discussed.

18           MR. WOODWARD:  Ms. Delgado, I'm

19           instructing my client not to answer questions

20           about his conversations with his attorneys.

21           MS. DELGADO:  I'm allowed to ask if it was

22           about or related to the Trump campaign lawsuit.

23           MR. WOODWARD:  Ms. Delgado --

24                   (Simultaneous speakers)

25           MR. WOODWARD:  Ms. Delgado, I'm



1    instructing my client not to answer questions

2    about discussions he had with his attorneys.

3        MS. DELGADO:  But I'm not asking him to

4    detail the discussions or what the

5    communications were with the attorneys.  I'm

6    asking what the communication was about.

7        Mr. Woodward, I trust you're familiar with

8    a privilege log.  A privilege log has to

9    identify when communications with an attorney

10   were had, what they were about and who the

11   attorney was granted you do not then disclose

12   the actual communications, but that is

13   revealed.

14       Now, are you telling me privilege logs

15   violate attorney-client privilege?  Please, we

16   have a limited amount of time today, so I'd

17   appreciate not making frivolous objections.

18   I'm asking the date.  This is standard

19   privilege log information.  Who the attorney

20   was and what the general content or issue was

21   that was being discussed.  Not the actual

22   communications.

23       MR. WOODWARD:  I -- I strongly suggest

24   that we move on.

25       MS. DELGADO:  Are you still claiming that



*April 12, 2024 in re: Delgado v Trump for President*
*Deposition of Bradley Parscale*

1      that's privileged?

2            MR. WOODWARD:  Yes, ma'am.

3   BY MS. DELGADO:

4      Q    Were any of those communications, Brad, in

5   writing, e-mails for instance, text messages?

6      A    I don't remember.  The ones that I think

7   that I remember were not -- they were phone calls.

8   But they were -- I'm not saying they were not any,

9   but the ones I remember were by phone.

10     Q    And the attorney was Alex Cannon?

11     A    That's the one I remember.

12     Q    Any others?

13     A    AJ, I don't even remember the names of our

14  other attorneys.

15     Q    Do you remember speaking to a Larry Rosen?

16     A    I don't think I've ever spoke to Larry.

17  If I did, I don't remember.  I possibly did.  I know

18  the name.

19     Q    You know the name?

20     A    I mean, it's been on TV -- I don't know if

21  I know it from TV or if I know it from myself.

22     Q    Let's' -- okay.

23            Do you recall why or did you ever --

24  let me rephrase that.

25            Do you have any understanding or



Page 181

1  person doing that.
2          I don't remember that exact incident.
3  I remember incidents like that. I couldn't even
4  tell you who their faces were now. If anything,
5  they were -- they were -- I don't -- I can't
6  remember names and -- none of it was so was dramatic
7  that it made it an incident in my life.
8      Q    Do you remember Jessica Ditto making any
9  sort of --
10     A    No, I don't believe it was Jessica Ditto.
11 I barely had any conversations with Jessica Ditto.
12 Only thing I remember about Jessica Ditto is Bannon.
13     Q    Is what?
14     A    Only thing I remember about Jessica Ditto
15 is Bannon. That's the only thing -- you know.
16 Isn't that the -- isn't that the -- is that --
17     Q    Is Bannon?
18     A    Oh, wait, no. That's not Bannon. That's
19 the other one.
20          No, I don't -- I -- I -- that --
21 sorry, I'm messing up people. It's been a long
22 time.
23          No. I mean, I -- I don't remember if
24 that -- that incident was with -- with her or not.
25 I don't believe so. I -- I think -- I don't think

Page 182

1  she would have done that.
2          I -- the -- I can't remember who it
3  was. I don't think it was her.
4      Q    What about Ashley?
5      A    No. I don't think it would've been her
6  either.
7      Q    Okay.
8      A    They might have been around. I don't
9  remember who. I do remember a couple of those
10 incidents, though; and I remember conversations with
11 you talking about them. But I can't remember now
12 who it was. Honestly, it's almost been eight --
13 it's been ten years. Those would have been from
14 2016.
15     Q    Any on 2019, including any work trips?
16     A    No, not that -- no.
17     Q    Okay.
18     A    I would say, towards '19, '20, I -- I -- I
19 wasn't in places where that would have been, you
20 know, as readily -- you know, I was a much lower
21 person and hung out with the staff in 2016.
22     Q    Right.
23          And you also had mentioned, because
24 of COVID, I presume --
25     A    And COVID, I was stuck at -- you know, I

Page 183

1  was stuck in my house in my...
2      Q    Fair. Okay. Okay. And I'm sorry that
3  happened to you, by the way.
4      A    It's okay. I got over it.
5      Q    Okay. Okay.
6          Let's see.
7          You testified that Jason Miller had
8  been paid through Jamestown because he didn't want
9  his salary to be public. Do you recall why that
10 was?
11         MR. WOODWARD:   Object to the form.
12     A    Ask that question exactly how you asked it
13 again. I want to make sure I answer as perfectly
14 honest as I can what you asked.
15 BY MS. DELGADO:
16     Q    Did you testify earlier that Jason Miller
17 wanted to be paid his 2020 campaign compensation
18 through Jamestown?
19     A    Yes.
20     Q    Okay. If so, do you recall why he wanted
21 to be paid through Jamestown?
22     A    I cannot remember if I was told why. I
23 could tell why I -- why I believed why.
24     Q    Please tell me.
25     A    Why I believe why is he didn't want it on

Page 184

1  the FEC report.
2      Q    Do you know why he didn't want to be on
3  the FEC report?
4          MR. WOODWARD:   Object to the form.
5      A    I -- I could only assume why. I don't
6  remember if I -- under oath, I cannot remember if I
7  was told why. I can only tell what I -- what my
8  brain is telling me what I thought it was.
9      Q    Okay. Please do.
10     A    I just think he didn't want it on the FEC
11 report because he was going through things and
12 didn't want the world and public to know how much he
13 was getting paid.
14     Q    What things?
15     A    Well --
16         MR. WOODWARD:   I'm going to object at this
17 point to relevance to this litigation.
18         MS. DELGADO:   He was a campaign employee.
19 I disagree.
20 BY MS. DELGADO:
21     Q    Go ahead, Brad. You can answer.
22         MR. WOODWARD:   I'm going to instruct
23 Mr. Parscale not to answer insofar as this is a
24 topic that is not relevant to the claims and
25 defenses in this action.

Page 185

1    MS. DELGADO:   That's not a basis to
2  instruct your client not to answer.  We've been
3  over --
4    MR. WOODWARD:   Actually, pursuant to the
5  Court's April 24th, '24 order, Paragraph 2 on
6  Page 3, quote, Questioning must be limited to
7  topics that are relevant to the claims and
8  defenses in this action.
9    MS. DELGADO:   Right.  And it is relevant.
10    MR. WOODWARD:   I maintain our objection --
11    MS. DELGADO:   He's already opened the
12  door -- he's already opened the door.
13    MR. WOODWARD:   I maintain our objection
14  and will instruct the witness not to answer.
15    THE WITNESS:   I don't think -- okay.
16    MS. DELGADO:   All this does it make -- is
17  make it so you make it obvious that the
18  campaign is protecting Jason Miller, and now
19  even third-party witness' attorneys.  That's
20  not helpful to the campaign.
21    MR. BLUMETTI:   Objection to form.
22    MS. DELGADO:   So, Mr. Woodward, to be
23  clear, you're saying that actions the campaign
24  in 2020 took that may have resulted in harm to
25  me are not relevant to this campaign, correct?

Page 186

1    MR. WOODWARD:   I'm not testifying,
2  Ms. Delgado.
3    MS. DELGADO:   No.  You're -- but you're
4  making an objection on relevance.  So I'm
5  trying to --
6    (Simultaneous speakers.)
7    MS. DELGADO:   -- understand why you --
8  what your position is that a question about
9  harm that the campaign might have caused by
10  hiding Mr. Miller's salary is not relevant.
11    MR. WOODWARD:   I'm happy to discuss this
12  with you off the record.
13    MS. DELGADO:   Sure.  Okay.  We can do
14  that.  Okay.  We'll circle back to that at the
15  end to not waste time.
16  BY MS. DELGADO:
17    Q   Okay.  Are you neutral in this case, Brad?
18    MR. WOODWARD:   Objection.  You asked him
19  that in his prior deposition.  The Court's
20  April 24th, 2024 order also instructs you not
21  to ask redundant questions previously posed to
22  Mr. Parscale.
23    I will instruct the witness --
24    MS. DELGADO:   I'm well-aware of the order.
25  Can you point me to -- I'm happy to stand

Page 187

1  corrected.  Can you point me to where I asked
2  this already?  I'm not looking to repeat.  I
3  have the transcript you sent me.
4    MR. WOODWARD:   We'll stand by our
5  objection.
6    MS. DELGADO:   Can you point me to the page
7  number?
8    MR. WOODWARD:   No.
9    MS. DELGADO:   I'm -- I'm opening it now.
10  I didn't ask this already, Mr. Woodward.
11    Are you going to allow your client to
12  answer, then, since --
13    MR. WOODWARD:   No, ma'am.
14    MS. DELGADO:   Hmm?
15    MR. WOODWARD:   No.  I'm instructing the
16  witness not to answer.
17    MS. DELGADO:   Okay.  Do you want to
18  conclude and go to the -- see if the Judge is
19  available?  Because, at this point, this is
20  just bad faith.
21    I'm asking you to please point me -- we
22  both have the transcript.  Where did I ask it?
23  And if I did, I'm happy not -- to withdraw the
24  question.
25    MR. WOODWARD:   And I'm not --

Page 188

1    MS. DELGADO:   That's perfectly reasonable.
2    MR. WOODWARD:   And I'm not testifying, but
3  I'm happy to go off the record and discuss it
4  with you.
5    MS. DELGADO:   You want to go off the
6  record to discuss how I already asked him a
7  question?
8    MR. WOODWARD:   Yes, ma'am.
9    MS. DELGADO:   We can always go back on the
10  record.  Okay.
11    We'll go off the record for a minute,
12  Court Reporter.
13    THE STENOGRAPHER:   Off the record.
14    (Recess.)
15    THE STENOGRAPHER:   Back on the record.
16    MS. DELGADO:   All right.  We're back on
17  the record.
18    Mr. Woodward is taking the position that
19  this has already been asked given Page 49 of
20  the transcript in which, in Part 1 of his
21  deposition, I asked, quote, Brad, is there any
22  personal animus towards me regarding any issue
23  that would prevent you from giving honest
24  answers here today?  Unquote.
25    Mr. Woodward's position is that that's

Page 189

1   essentially the same thing as asking if
2   Mr. Parscale is neutral. And he's directed his
3   client not to answer.
4   BY MS. DELGADO:
5       Q   Brad, are you hoping the campaign wins
6   this case?
7           MR. WOODWARD:   Objection to relevance.
8           MS. DELGADO:   It goes to credibility of
9   the witness.
10          MR. WOODWARD:   No, it doesn't.
11          MS. DELGADO:   Yes, it does.
12  BY MS. DELGADO:
13      Q   You can answer.
14          MR. WOODWARD:   No. I'm instructing him
15  not to answer.
16          MS. DELGADO:   Okay. You -- you are out of
17  control, sir. This -- I've done multiple
18  depositions in this case. Nothing has been
19  like your conduct. You're not allowed to
20  instruct the witness not to answer.
21          Now, it's not based on already asked.
22  Now, the objection is what?
23          MR. WOODWARD:   Pursuant to the Court's
24  April 24th, 2024 order, Questioning must be
25  limited to topics that are relevant to the

Page 190

1   claims and defenses in this action.
2           MS. DELGADO:   Sure. Versus going outside
3   of that.
4           The witness' credibility is not an issue
5   in this action?
6           MR. WOODWARD:   We stand by our objection,
7   Ms. Delgado.
8   BY MS. DELGADO:
9       Q   Brad, are you aware that your attorney --
10  not Mr. Woodward -- your other attorney is seeking
11  to represent the campaign in this case?
12          MR. WOODWARD:   Objection to relevance.
13          MS. DELGADO:   So again, he's not
14  permitted -- you're blocking your client from
15  answering?
16          MR. WOODWARD:   He can answer.
17      A   Can I -- there's a lot that's been said.
18  Can you ask again what you asked me?
19          MS. DELGADO:   I want to get the case law
20  on the record. The credibility of a witness,
21  whether or not a party, is always relevant.
22  That's a direct quote from Shih vs. Petal Card.
23  It's a Southern District of New York case,
24  November 2021. It can be found at 2021 US
25  District Lexis 221324.

Page 191

1           So, Mr. Woodward, you're really going to
2   take the position that Mr. Parscale cannot
3   answer on issues that affect his credibility
4   and speaks to his credibility even though
5   there's Southern District of New York case law
6   that specifically says that a party's
7   credibility is always relevant?
8           THE WITNESS:   Didn't you just say I could
9   answer?
10          MS. DELGADO:   Sorry?
11          MR. WOODWARD:   I did -- I did just --
12          THE WITNESS:   He just said I could answer.
13  BY MS. DELGADO:
14      Q   Oh, I'm -- I'm referring to the other two
15  that he's also instructed you not to answer.
16      A   Oh. I'm sorry. Okay.
17      Q   But go ahead. We can -- go ahead and
18  answer this one.
19      A   I don't -- I --
20          MR. WOODWARD:   Can you repeat the
21  question?
22      A   Honestly, I can't remember which question
23  it was not. There's a lot going on here.
24  BY MS. DELGADO:
25      Q   Oh, I agree.

Page 192

1           The question was: Are you aware that
2   your other attorney, Mr. Gavenman, is seeking to
3   represent the campaign in this case?
4           MR. WOODWARD:   Object to the form.
5       A   I just found that out this morning that
6   that might -- that might be changing.
7   BY MS. DELGADO:
8       Q   So you found it out this morning?
9       A   I found out this morning it was him, yeah,
10  yeah, yeah. He -- I literally -- this is only the
11  second time I've ever met him, so he just said that
12  he might be representing the case this morning. And
13  I just asked what that meant.
14      Q   And you're okay with that?
15      A   Yeah --
16          MR. WOODWARD:   Sorry. Object to the form.
17      A   I mean, yes. He's not my -- it doesn't
18  bother me if he left or was with me or anything.
19  They're not advising me on what to answer any
20  questions, so I -- I'm -- I'm answering everything
21  truthfully.
22  BY MS. DELGADO:
23      Q   But you've shared information with them
24  that you haven't with me, correct?
25      A   I -- I don't think that's correct. I

Page 193

1  don't know.  I mean, I don't think so.  I've
2  answered every one of your questions.  I've --
3  I've -- I'm honest, so...
4       Q    Well, your attorney has claimed
5  attorney-client privilege multiple times.
6            You're not waiving that privilege,
7  are you?
8       A    Well, I don't know what you mean by all
9  that, so.  I'm not an attorney, so...
10      Q    Your attorney --
11           MR. WOODWARD:   Object to the form.
12  BY MS. DELGADO:
13      Q    -- explained there is -- there is
14  information or documentation that is between you two
15  that I am not able to be privy to.
16           MR. WOODWARD:   Object to the form.
17      A    I mean, I -- you're asking me -- I talk to
18  my attorney, yes.  I don't know what that -- I don't
19  know -- I don't know the laws of privilege.  I'm not
20  an attorney.  I stayed at a Holiday Inn Express
21  once.
22  BY MS. DELGADO:
23      Q    So I understand you don't -- you're not an
24  attorney and you're stating you don't understand
25  attorney-client privilege.

Page 194

1       A    I understand attorney-client privilege.
2  I'm saying that I don't -- I don't have secrets out
3  there.  I don't know what that means.  You asked if
4  I have secrets.  I don't have secrets.  I don't
5  know.  There's no secrets or -- you're asking me the
6  question.  I'm answering what you did.  I have no
7  reason to not answer your questions, so I don't know
8  what we're talking about now.
9       Q    So any question from the prior deposition
10  on which your attorney claims attorney-client
11  privilege on your behalf?
12      A    I don't remember what those are.  I
13  haven't read the transcript.  I don't -- I don't
14  know.
15           No.  If -- if he says they are -- I
16  don't -- he's my attorney.
17      Q    Are your interests in this case aligned
18  with the campaign's?
19           MR. WOODWARD:   Object to the form.  Object
20  to attorney-client privilege.
21           Don't answer.
22           MS. DELGADO:   You're claiming that's
23  attorney-client privileged?
24           MR. WOODWARD:   Yes.
25           MS. DELGADO:   Whether he believes his

Page 195

1       interest are aligned with the campaign's
2       interests?
3            MR. WOODWARD:   Yes.
4            MS. DELGADO:   How is that attorney-client
5       privilege, Mr. Woodward?
6            MR. WOODWARD:   I'm not testifying,
7       Ms. Delgado.  I'm happy to go off the record
8       and discuss this with you.
9            MS. DELGADO:   No.  I think this is going
10      to have to stay on the record for the Judge.
11  BY MS. DELGADO:
12      Q    Okay.  Let's do some exhibits.
13           Okay.  Let's talk about alignment of
14  interest with the campaign.
15           Mr. Parscale, I'm going to show you a
16  document which is an AP article that came out
17  yesterday.
18           Did you happen to read that article?
19      A    Yes -- well, there's a bunch of versions
20  of it; but yes, I read several -- one of the
21  versions.
22      Q    Okay.  Showing you a portion I
23  highlighted.
24           It says, Since last year, Campaign
25  Nucleus and other Parscale-linked companies have

Page 196

1  been paid more than 2.2 million by the Trump
2  campaign, the RNC and their related political action
3  fund -- and fundraising committees, campaign records
4  show -- campaign finance records show.
5            Is that accurate?
6            MR. WOODWARD:   Object to the form.
7       A    Actually, I -- I disagree with the AP's
8  assumption of Parscale-linked companies.  I'm not --
9  I'm not denying that the Trump campaign is a
10  customer; but as you know, AJ, they like to take any
11  soft link of what they think I own or think I'm
12  partnered with and add all those totals up together.
13           I disagree with the Parscale-linked,
14  but the AP writes what the AP writes.
15      Q    But it's correct that Campaign Nucleus has
16  been paid by the Trump campaign since last year?
17      A    Yes.  I just disagree with the total.
18      Q    Okay.
19           THE STENOGRAPHER:   That will be Number 17.
20           MS. DELGADO:   Thank you.
21           (Exhibit 17 was marked for
22               identification)
23  BY MS. DELGADO:
24      Q    And then I'm going to show you -- sorry.
25  I'm going to put up the same.

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **ARLENE DELGADO,** | ) |
| | ) |
| Plaintiff, | ) No. 1:19-cv-11764 (AT) (KHP) |
| | ) |
| v. | ) |
| | ) |
| **DONALD J. TRUMP FOR PRESIDENT, INC., et al.,,** | ) |
| | ) |
| Defendant. | ) |
| | ) |

**BRADLEY PARSCALE'S MEMORANDUM OF LAW IN
OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**

Non-party Bradley Parscale ("Mr. Parscale") respectfully submit this memorandum of law in opposition to Plaintiff Arlene Delgado's ("Plaintiff" or "Delgado") motion to compel answers to certain deposition questions dated June 4, 2024.[1] ("Plaintiff's Motion").  For the reasons contained herein, Mr. Parscale respectfully requests that the Court deny Plaintiff's Motion.

**PROCEDURAL BACKGROUND**

Mr. Parscale's relevance to the operative complaint in this action is tenuous, at best. Plaintiff filed the operative Complaint in this action on March 28, 2022, ECF No. 94, alleging, in sum and substance, that she suffered from discrimination concerning the Trump Administration's decision not to hire Plaintiff to work at the White House.  For his part, Mr. Parscale never worked at the White House.  Although he was a contractor for then candidate-Trump's 2016 Presidential campaign, he had no supervision over Plaintiff.  Following the 2016 election, Mr. Parscale went on to, *inter alia*, went on to work for the Make America Great Again PAC, which eventually would

---

[1] This motion to compel has not yet been docketed, but Plaintiff provided Mr. Parscale with a copy of the letter, purportedly as filed.  Mr. Parscale will cite the motion as "Pl. Mtn." given that no ECF Number has been assigned at the time that Mr. Parscale's response is due.

also employ Plaintiff, but, again, enjoyed no supervisory role over Plaintiff.  Mr. Parscale had no involvement in the hiring of White House personnel and he has now been asked about (and declined any knowledge of) the decision not to hire Plaintiff at the White House.  Ultimately, Mr. Parscale would leave the PAC to serve as campaign manager of President Trump's 2020 reelection campaign.  Although Mr. Parscale chose not to hire Plaintiff to work for that campaign, she does not here allege this decision was discriminatory in any way.  Accordingly, Plaintiff's fishing expedition concerning Mr. Parscale yielded no bounty and should be considered concluded.

## ARGUMENT

I.    **The Court Should Deny Plaintiff's Motion to Compel an Answer to the Question That Seeks Information Protected from Disclosure by the Attorney-Client Privilege**

On the first day of Mr. Parscale's deposition, Plaintiff asked Mr. Parscale to disclose the contents of discussions he had with a lawyer for Defendant Donald J. Trump for President, Inc. (the "Campaign") at a time when Mr. Parscale worked for the Campaign.  Pl. Mtn. pp. at 1-2.  Mr. Parscale objected and refused to answer on the advice of his current counsel that any responsive communication would be subject to the attorney-client privilege.  Plaintiff asks the Court to compel Mr. Parscale's response.  However, the information Plaintiff seeks is clearly privileged and Mr. Parscale should not be required to answer Ms. Delgado's question.

During the initial questioning of Mr. Parscale, Ms. Delgado asked him whether he had "ever spoken to an attorney about me or anything involving me, aside from your, of course attendance here today."  Ex. A at p. 36:17-19.  Mr. Parscale answered in the affirmative.  Id. at 36:20.   When Ms. Delgado impermissibly asked Mr. Parscale about the content of the conversations that he had with his attorneys, his attorney and the Campaign's attorney both objected on the grounds that the information Ms. Delgado sought was protected from disclosure by the attorney-client privilege.  *Id.* at 36:22-24.  Ms. Delgado argued then, as she does in

Plaintiff's Motion, that she was somehow entitled to information about the content of the conversation between Mr. Parscale and his attorneys.  *Id.* at 37:1-4.  Mr. Parscale's attorney explained that Mr. Parscale had already testified to what he spoke with his attorneys about (e.g. issues pertaining to Ms. Delgado), and she therefore possessed information about the subject of the conversation.  *Id.* at 37:1-7.  He then explained that she was not entitled to additional information about the content of the conversation.  *Id.*  When Ms. Delgado continued along this line of questioning, Mr. Parscale confirmed that the only attorneys he spoke with about Plaintiff, to his recollection, were the Campaign's attorneys and his personal attorneys (as opposed to, *inter alia*, a conversation with an individual on social media who happened to be an attorney, which, of course, would not have been privileged).  *Id.* at 37:8-13; 39:6-40:5.  However, when Ms. Delgado continued to inquire into the substance of the conversations between Mr. Parscale and his attorneys, his attorney objected on the grounds of attorney-client privilege.

Now, Plaintiff asserts she is entitled to broad information about any discussions between Mr. Parscale and his attorneys that may have occurred.  This assertion is incorrect, particularly where, as here, the nature of Plaintiff's question makes clear that the subject of any communication cannot be disclosed without waiving the privilege.  *Id.* at 40:21-22 ("Ms. Delgado: I'm allowed to ask if [Mr. Parscale's discussion with a Campaign attorney] was about or related to the Trump campaign lawsuit.").  Of course, Mr. Parscale is permitted not to disclose information, where such disclosure would waive attorney-client privilege.  Indeed, privileged material is outside the scope of permissible discovery.  *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter . . . .") (emphasis added).

Plaintiff claims that she is entitled to information about "what conversations the witness had about Plaintiff, particularly in the years when he was Campaign Manager of the Defendant

Campaign." Pl. Mtn. at p. 2. However, any communication between Mr. Parscale and an attorney that represented the Campaign (Mr. Parscale's then-employer) relating to legal advice is a privileged communication, and the nature of Plaintiff's question, as well as the arguments that she advances in Plaintiff's Motion, makes clear she is seeking information about privileged conversations. *See e.g. Au New Haven, LLC v. YKK Corp.*, 2016 U.S. Dist. LEXIS 160602, at *4-5 (S.D.N.Y. Nov. 18, 2016) ("The attorney-client privilege applies only to (1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice. . . [c]ourts examine whether the predominant purpose of the communication was to render or solicit legal advice, defined as the interpretation and application of legal principles to guide future conduct or to assess past conduct. (cleaned up) (citing *In re County of Erie*, 473 F.3d 413, 419-20 (2d Cir. 2007)).

Plaintiff also points to Local Rule 26.2 as purportedly requiring the disclosure of information from Mr. Parscale relating to his communications with his attorneys. However, Local Rule 26.2 merely requires that the party asserting privilege identify "the general subject matter of the communication." Local Rule 26.2(a)(2)(B)(iii). Here, Mr. Parscale already confirmed the general subject matter of his communications with Plaintiff – namely, issues concerning Ms. Delgado. Ex. A at 36:17-37. Any additional information concerning these conversations would plainly be privileged and, thus, not subject to disclosure. *See* Local Rule 26.2(a)(2) ("The following information shall be provided. . . *unless divulgence of such information would cause disclosure of the allegedly privileged information*[.]") (emphasis added).

On the basis of attorney-client privilege, Mr. Parscale respectfully requests that the Court deny Plaintiff's request to compel a response to questions concerning his conversations with counsel.

## II.     The Court Should Deny Plaintiff's Motion to Compel Questions Concerning Jason Miller

Plaintiff's Motion also seeks to compel an answer to a question concerning non-party Jason Miller, namely, the reason (or reasons) that he was paid compensation through a third-party company, Jamestown. Mr. Parscale did not answer this question on advice of counsel based upon relevance. Plaintiff justifies her attempts to question Mr. Parscale about a plainly irrelevant topic – namely, how compensation was paid to a non-party employee – by claiming that Mr. Parscale somehow "opened the door" to the question through his responses.

At the outset, Plaintiff distorts the nature of Mr. Parscale's testimony that allegedly "opened the door" for this question. Plaintiff incorrectly claims that Mr. Parscale testified that, "Mr. Miller want[ed] to hide his income[.]" Pl. Mtn. at p. 2. This is incorrect. Plaintiff initially posed the question in a way which suggested that Mr. Miller did not want his salary to be public, before rephrasing her question to remove the reference to Mr. Miller's alleged purpose. *See id.*, at 183:7-19 ("Q: You testified that Jason Miller had been paid through Jamestown because he didn't want his salary to be public. . . A: Ask that question exactly how you asked it again. . . . Q: Did you testify earlier that Jason Miller wanted to be paid his 2020 campaign compensation through Jamestown? A: Yes."). Thus, Mr. Parscale simply testified that he knew Mr. Miller was paid through an entity called Jamestown. *See e.g.* Ex. B at 183:16-19. Contrary to Plaintiff's claim, Mr. Parscale never stated that Mr. Miller wanted to hide his income for any nefarious purpose.

To the contrary, Mr. Parscale made clear that he had no direct knowledge of why Mr. Miller wanted to be paid by Jamestown and could only testify as to why Mr. Parscale "believed" Mr. Miller had made the request, based on what he "assumed," and not based on any actual evidence. *Id.* at 183:22-184-9. When Ms. Delgado inquired into why Mr. Parscale believed that Mr. Miller wanted to be paid by the Campaign through a third-party entity, Mr. Parscale's attorney instructed

him not to answer, on the basis that the Court's April 24, 2024 discovery order had required that the "questioning [of Mr. Parscale] *must be limited to topics that are relevant to the claims and defenses in this action*." ECF No. 265 at p. 3 (emphasis added).

Mr. Miller is not a party to this case and his compensation, to say nothing of what entity paid his compensation, simply has nothing to do with any of the claims and defenses in this action. Given that fact, Mr. Parscale's personal beliefs about why Mr. Miller wanted to be paid through a third-party entity (when he testified that he could not recall ever being told by anyone about the reason) is certainly not relevant to any issues in this case. Ms. Delgado attempts to make this information relevant by speculating that "common sense" dictates that Mr. Miller wanted to "hide" his compensation because of a child support litigation brought by Plaintiff, which in turn is relevant to her retaliation claim. Pl. Mtn. at p. 2. However, Ms. Delgado has never claimed that the manner in which the Campaign paid Mr. Miller his compensation is in any way part of her retaliation claims. Even if this were not the case, Ms. Delgado cannot demonstrate how *another employee's speculation* about the reasons that Mr. Miller sought to have his compensation paid to a third party would bear on any claim or defense in this case. On the basis of relevance and because of the conditions implemented by the Court's April 24, 2024 Discovery Order, Mr. Parscale respectfully requests the Court to deny Plaintiff's request to compel a response to question two.

## III.    The Court Should Deny Plaintiff's Motion to Compel Answers to Repetitive Questions

Finally, Plaintiff's Motion asks the Court to require Mr. Parscale to answer questions about his alleged biases in this case. According to Plaintiff's Motion, this information is relevant to demonstrate Mr. Parscale's supposed credibility as a witness and that alone should be sufficient for this Court to compel a response. Plaintiff's argument is both incorrect and misleading.

During the first day of Mr. Parscale's deposition, Plaintiff repeatedly inquired about Mr. Parscale's supposed biases and whether he could be a credible witness in this case.  See Ex. A at 49:4:11 ("Q: Brad is there any personal animus towards me regarding any issue that would prevent you from giving honest answers here today. . . A: No"); 111:17-21 ("Q: Brad isn't it true that my informing Eric and my bringing this up in an e-mail in July of 2023 has soured your ability to be truthful here today? A: No"); 113:3-10 ("AJ, if it was true, I would tell the truth under oath, and I would do it in a heartbeat. . . I owe [the Campaign] nothing"); 7:22-25, 8:1-8 ("Q: And who is paying for Mr. Woodward to represent you in this matter? . . . [i]t is relevant to this case and Mr. Parscale's ability to be credible in this matter."); 117:14-21 ("Q: Do [the employment contracts] provide you'll receive covered legal services?  A: Yeah. . . I had myself indemnified from lawsuits over the years.  That's what I've been told by my attorneys.  Q: Okay . . . [Mr. Parscale's legal fees are] being covered by some element of the Trump Org?  A: A hundred percent.  Yes.  A: Okay. That's all I needed.").  The questions about Mr. Parscale's supposed credibility that are the subject of Plaintiff's Motion all asked some form of the same question: whether Mr. Parscale has any interest in ensuring a particular outcome to this litigation.  See Pl. Mtn. at pp. 3-4 ("Are you neutral in this case, Brad? . . . Brad, are you hoping the campaign wins this case? . . . Are your interests in this case aligned with the Campaign's?").  Plaintiff proffers that each of these repeat questions addresses Mr. Parscale's credibility and that that alone is reason for the Court to compel a response. Id.

However, as Mr. Parscale's counsel notified Plaintiff, Plaintiff's second deposition was limited by the Court's April 24, 2024 Discovery Order, with the Court stating that the "[q]uestioning [of Mr. Parscale] must be limited to topics that are relevant to the claims and defenses in this action and *should not be redundant of questions previously posed to Parscale*."

ECF No. 265 at p. 3. (emphasis added).  In light of the fact that Plaintiff had already questioned Mr. Parscale about issues related to his credibility, Plaintiff's Motion to Compel further answers to similar questions should be denied.

Plaintiff seeks to justify her attempt to require answers to repeated questions seeking information concerning Mr. Parscale's supposed biases by citing to *Shih v. Petal Card* for the proposition that questions attacking a witness' credibility are always relevant and therefore always subject to discovery.  This misstates the holding of *Shih* and the law.  As the *Shih* Court explained, "although the credibility of a witness (whether or not a party) is always relevant. . . courts have historically been wary of discovery *sought solely for impeachment purposes*."  *Shih v. Petal Card*, 2021 U.S. Dist. LEXIS 221324, at *14 (S.D.N.Y. Nov. 12, 2021) (emphasis added).  *See also id.* ("[T]he mere possibility of obtaining impeachment evidence cannot be enough to justify discovery into matters otherwise unrelated to the parties' claims and defenses, because the areas to be probed to test a witness' credibility are virtually limitless. . . It would obviously be intolerable for the party seeking disclosure to embark on an examination of every statement ever made by a witness in the hope of unearthing a falsehood." (cleaned up) (quoting *Davidson Pipe Co. v. Laventhol & Horwath*, 120 F.R.D. 455, 462-63 (S.D.N.Y. 1988)).

Here, there is no legitimate claim that questions purportedly designed to uncover impeachment material are relevant and proportional to the needs of the case, particularly where, as here, Plaintiff has already had an opportunity to inquire into this topic.  On the basis of relevance and redundancy, and due to the conditions implemented by the Court's April 24, 2024 Discovery Order, Mr. Parscale respectfully requests the Court to deny Plaintiff's request to compel a response to questions concerning Mr. Parscale's credibility.

## **CONCLUSION**

For the foregoing reasons, Brad Parscale respectfully requests that the Court deny Plaintiff's motion to compel additional deposition answers in its entirety.

Dated: June 11, 2024                    Respectfully submitted,

                                       */s/ Stanley E. Woodward, Jr.*

Stanley E. Woodward, Jr. (*pro hac vice*)
BRAND WOODWARD LAW, LP
400 Fifth Street, Northwest, Suite 350
Washington, DC  20001
202-996-7447 (telephone)
202-996-0113 (facsimile)
Stanley@BrandWoodwardLaw.com

                                       /s/ Jeffrey Gavenman

Jeffrey S. Gavenman
**SCHULMAN BHATTACHARYA, LLC**
6116 Executive Boulevard, Suite 425
North Bethesda, Maryland 20852
and
240 West 40th Street
New York, NY 10018
Tel.: (240) 356-8550
Facsimile: (240) 356-8558
Email: jgavenman@schulmanbh.com

*Counsel for Non-Party Brad Parscale*

9

**<u>CERTIFICATE OF SERVICE</u>**

On June 11, 2024, the undersigned hereby certifies that a true and correct copy of the

foregoing was electronically filed and served via the CM/ECF system, which will automatically

send electronic notification to all parties of record.


<u>        /s/ Stanley E. Woodward, Jr.        </u>
Stanley E. Woodward, Jr. (*pro hac vice*)
BRAND WOODWARD LAW, LP
400 Fifth Street, Northwest, Suite 350
Washington, DC  20001
202-996-7447 (telephone)
202-996-0113 (facsimile)
Stanley@BrandWoodwardLaw.com

*Counsel for Non-Party Brad Parscale*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **ARLENE DELGADO,** | ) | |
| | ) | |
| | ) | No. 1:19-cv-11764 (AT) (KHP) |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **DONALD J. TRUMP FOR PRESIDENT, INC., et al.,,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DECLARATION OF JEFFREY GAVENMAN IN
## SUPPORT OF BRADLEY PARSCALE'S MEMORANDUM OF
## LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

Jeffrey S. Gavenman declares and says:

1.      I am an attorney admitted to practice in this Court and am local counsel for non-party witness Bradley Parscale ("Mr. Parscale") in the above-captioned matter.  I make this declaration upon personal knowledge in support of Mr. Parscale's opposition to Plaintiff Arlene Delgado's Motion to Compel Additional Responses to his deposition.

2.      Attached hereto as Exhibit A are true and correct excerpts from the deposition of Brad Parscale dated April 12, 2024.

3.      Attached hereto as Exhibit B are true and correct excerpts from the deposition of Brad Parscale dated May 7, 2024.


I declare under penalty of perjury that the foregoing is true and correct.

1

Dated: June 11, 2024
      North Bethesda, Maryland

                                         /s/ Jeffrey Gavenman
                                         Jeffrey S. Gavenman

1                UNITED STATES DISTRICT COURT

2            FOR THE SOUTHERN DISTRICT OF NEW YORK

3                CASE NO. 19-CV-11764 (AT) (KHP)

4

5    ARLENE DELGADO,

6            Plaintiff,

7    vs.

8    DONALD J. TRUMP FOR PRESIDENT,
     ET AL.,

9

10           Defendants.
     _____

11

12   LOCATION:              Remote Audio-Video
                            Communication

13   DATE:                  April 12, 2024

14   TIME:                  10:00 AM ET to 12:34 PM ET

15

16

17           DEPOSITION OF BRADLEY PARSCALE

18       Taken before Leila Harris, LCR, FPR,

19   Stenographic Court Reporter, Notary Public State of

20   Florida, pursuant to Notice of Taking Deposition in

21   the above-styled cause.

22

23

24

25



*April 12, 2024 in re: Delgado v Trump for President*
*Deposition of Bradley Parscale*

```
 1    APPEARANCES:

 2

 3    ARLENE DELGADO, PRO SE PLAINTIFF
      136 SW 33rd Avenue
 4    Miami, FL 33135
      Telephone:305-510-3400
 5    Email:adelgado@harvard.edu; ajdelgado@outlook.com

 6

 7      Pro Se Plaintiff

 8

 9

10    JARED BLUMETTI, ESQUIRE
      LHGKC&M
11    40 Wall Street
      32nd Floor
12    New York, NY 10006
      Telephone: 212-530-4831
13    Email: jblumetti@lhrgb.com; pmcppartland@lhrgb.com

14

15              Attorney for Defendant

16

17

18    STANLEY WOODWARD, ESQUIRE
      Brand Woodward Law
19    2001 K Street NW
      Washington, DC 20006
20    Telephone:202-302-7049
      Email:stanley@brandwoodwardlaw.com;
21    skylar@brandwoodwardlaw.com

22
                Attorney for the Witness
23

24

25
```

1     Q    Okay.  Your deposition notice had an

2   attachment requesting that you provide certain

3   documents for this deposition.

4              Were you aware of the attachment to

5   the notice?

6              MR. WOODWARD:  We don't have any

7        documents, Ms. Delgado.

8              MS. DELGADO:  You have no documents for

9        any of the requested categories?

10             MR. WOODWARD:  No, ma'am.

11   BY MS. DELGADO:

12     Q    Could you please state your full name for

13   the record?

14     A    Bradley James Parscale.

15     Q    Where do you reside?  You don't need to

16   tell me the address on the record, just a city and

17   state please?

18     A    Midland, Texas.

19     Q    Okay.  And your lawyer in this matter is

20   Stanley Woodward?

21     A    Yes, ma'am.

22     Q    And who is paying for Mr. Woodward to

23   represent you in this matter?

24             MR. WOODWARD:  Don't answer that.

25

1        MS. DELGADO:  Mr. Woodward, are you

2    claiming a privilege?

3        MR. WOODWARD:  Why is that relevant?

4        MS. DELGADO:  It is relevant to this case

5    and Mr. Parscale's ability to be credible in

6    this matter.  So I'm going to ask unless you're

7    claiming that that's attorney/client privilege,

8    which it is not.

9        MR. WOODWARD:  Okay.  I'm directing the

10   client -- my client not to answer the question.

11       MS. DELGADO:  On what ground?

12       MR. WOODWARD:  My advice.

13       MS. DELGADO:  Mr. Woodward, he could only

14   be directed not to answer in you're asserting a

15   privilege.

16       MR. WOODWARD:  Okay.  We can spend time

17   arguing about this.  Why don't you ask all the

18   questions you have in the time that you have.

19   And we can circle back on any that I've

20   directed him not to answer.

21       MS. DELGADO:  Again, you're directing him

22   to answer based on a privilege of any kind?

23       MR. WOODWARD:  Ms. Delgado, we can take

24   this up with the Court or we can move on.

25       MS. DELGADO:  You're telling your client

*April 12, 2024 in re: Delgado v Trump for President*
*Deposition of Bradley Parscale*

```
 1   BY MS. DELGADO:

 2       Q    Is it still your position that you did not

 3   speak to Eric Trump about my --

 4                       (Simultaneous speakers)

 5           MR. BLUMETTI:  Objection.

 6           THE WITNESS:  I don't remember.

 7           MR. WOODWARD:  That misstates what he was

 8       asked, Ms. Delgado.  Or what he -- he answered,

 9       Ms. Delgado.

10   BY MS. DELGADO:

11       Q    Did you speak to Eric Trump?

12       A    I don't remember.

13       Q    You don't remember.  Okay.

14       A    It's six years ago.

15       Q    Did you speak to an attorney?

16       A    I don't remember.

17       Q    Have you ever spoken to an attorney about

18   me or anything involving me, aside from your, of

19   course, attendance here today?

20       A    Yes.

21       Q    Okay.  What was that about?

22           MR. WOODWARD:  Objection.

23           MR. BLUMETTI:  Don't -- everybody

24       attorney-client privilege.  I'm sorry, Stanley.

25
```

1          MS. DELGADO:  Not -- nope, not asking what

2     was said or what the conversation was.  I'm

3     asking what it pertained to.  What lawsuit?

4     What issue?  That's not privilege.

5          MR. WOODWARD:  You asked if he'd ever

6     spoken to an attorney about you, so he said,

7     yes.  So now you know what it pertained to.

8          MS. DELGADO:  No, about me, sir, can

9     literally be a conversation with an attorney on

10     Twitter about whether I had a good performance

11     on TV.  I'm asking what was it about, i.e., was

12     it about, for instance, a lawsuit or the PAC

13     termination.

14          I'm permitted to ask that.  That's not

15     privileged.

16          MR. WOODWARD:  Okay.  I'm going to have to

17     talk to him about that to understand whether

18     his answer is going to reveal privilege or not.

19     So we'll have to take a break.

20          MS. DELGADO:  Fair enough.  Fair enough.

21     But I -- but clearly I need to narrow it down

22     because Brad knows many individuals who happen

23     to be attorneys, and they could be talking

24     about anything regarding me that has nothing to

25     do with a lawsuit or potential lawsuit.

April 12, 2024 in re: Delgado v Trump for President
Deposition of Bradley Parscale

1              So that -- so you understand that is what

2       my narrowing down is about.

3              So --

4                    (Simultaneous Speakers)

5       MS. DELGADO:  So if you'd like to take a

6       minute and discuss it with him, I'm happy to

7       wait.

8       MR. WOODWARD:  Do you want to rephrase the

9       question?

10      MS. DELGADO:  Well, I think it's --

11 BY MS. DELGADO:

12      Q    Mr. Parscale, you said you had

13 conversations or communications about me with

14 attorneys in the past, aside from, obviously, your

15 appearance here today; is that correct?

16      A    Yes.

17      Q    Okay.  And without telling me the content

18 of those communications, what were they about or

19 pertaining to?

20      MR. WOODWARD:  I'm still going to object.

21      Why don't you ask him who he spoke with.  And

22      if it was on Twitter, then I won't have any

23      concerns.

24      MS. DELGADO:  Well, I wouldn't limit it to

25      Twitter.



*April 12, 2024 in re: Delgado v Trump for President*
*Deposition of Bradley Parscale*

1          MR. WOODWARD:  Why don't you ask him --

2                    (Simultaneous speakers)

3    BY MS. DELGADO:

4          Q    Let's go -- what -- who -- what attorney

5    did you speak with that you're recalling?

6          A    It would have been the campaign attorneys,

7    my campaign attorneys.

8          Q    What year, approximately?

9          A    My guess it would be -- I mean, I talked

10   to them multiple times over the years about you,

11   depending on the situation.  But they would always

12   have been my campaign attorneys or my personal

13   attorney.  I have a lot of attorneys unfortunately

14   after Trump world.

15               They would have all been my

16   attorneys.  I don't know exactly who you're talking

17   about.

18               If you want to ask me if I spoke to a

19   certain person, ask me.  I don't know who that would

20   have been.

21         Q    Do you recall who the attorneys were that

22   you spoke to about me?

23         A    The only one I remember multiple times is

24   Alex Cannon.  Who's both --

25                    (Simultaneous speakers)

*April 12, 2024 in re: Delgado v Trump for President*
*Deposition of Bradley Parscale*

1    BY MS. DELGADO:

2         Q     Was that about -- I'm sorry.  Go ahead.

3         A     He was my campaign attorney and then

4    became my personal attorney after leaving the

5    campaign.

6         Q     Okay.  Was that about my lawsuit or

7    potential lawsuit against the campaign?

8              MR. WOODWARD:  Don't answer that.

9              MS. DELGADO:  I'm allowed to ask what

10             the -- the content of -- not the content

11             specifically, but what it pertained to not

12             whether -- does she have bad hair.  They can

13             have a conversation about anything pertaining

14             to me that might not be legally related.

15             So I -- that -- I don't believe that's

16             privileged at all.  The question is not trying

17             to get to the core of what they discussed.

18             MR. WOODWARD:  Ms. Delgado, I'm

19             instructing my client not to answer questions

20             about his conversations with his attorneys.

21             MS. DELGADO:  I'm allowed to ask if it was

22             about or related to the Trump campaign lawsuit.

23             MR. WOODWARD:  Ms. Delgado --

24                       (Simultaneous speakers)

25             MR. WOODWARD:  Ms. Delgado, I'm

1     question.

2         MS. DELGADO:  I'll break it up.

3  BY MS. DELGADO:

4     Q    Brad, is there any personal animus towards

5  me regarding any issue that would prevent you from

6  giving honest answers here today?

7         MR. WOODWARD:  Objection.  Compound

8     question.

9  BY MS. DELGADO:

10    Q    You can answer.

11    A    No.  But I'm also under oath, and you're

12 telling, me -- asking me about very specific moments

13 that I don't remember, compared to sitting at a bar

14 having a drink and me trying to remember things.

15 Those are two different things in my book.

16            And if you want me to specifically

17 remember exactly who said something under oath, I

18 don't remember.

19    Q    Do you recall telling me that Trump was

20 encouraging that I be placed on TV to defend him

21 during the Russia probe?

22         MR. BLUMETTI:  Objection.  Hearsay.

23         THE WITNESS:  I -- I don't remember.  I

24    don't -- AJ, I don't remember.

25         MR. WOODWARD:  Let's take a break,

*April 12, 2024 in re: Delgado v Trump for President*
*Deposition of Bradley Parscale*

```
 1  BY MS. DELGADO:
 2       Q    So if I ask you, Brad, how have you paid
 3  for this deposition; for your representation in this
 4  deposition, have you paid for it?
 5       A    No.  No, I've --
 6       Q    Sorry?
 7       A    No, I've not.
 8       Q    Okay.  How did you prepare for this
 9  deposition?
10       A    Just talking to Stanley, the lawyer.
11       Q    Did you speak to Mr. Blumetti?
12       A    Who's that?
13       Q    The Trump campaign attorney.
14       A    I never met him.
15       Q    Okay.  Did you speak to Mr. -- I'm sorry,
16  I don't want to mispronounce the name, Mr. Googleman
17  (sic)?
18       A    I don't know who that is either, AJ.
19            MR. WOODWARD:  Gavenman, is that --
20            MS. DELGADO:  Gavenman, I apologize,
21       Gavenman.
22            THE WITNESS:  I just met him ten minutes
23       ago.
24  BY MS. DELGADO:
25       Q    Okay.  Thank you.
```



1      was --

2                         (Simultaneous speakers)

3           THE WITNESS:  AJ, if it was true, I would

4      tell the truth under oath, and I would do it in

5      a heartbeat.  It's not true.  And it never

6      happened.  So whatever you think happened,

7      didn't happen.

8           So it's not about me to lie.  I don't need

9      to lie.  And if it was true, I would

10     100 percent say it.  I owe them nothing.

11   BY MS. DELGADO:

12     Q    The Trump campaign is a client of yours;

13   correct?

14     A    Yes.  Not my biggest anymore.

15     Q    Correct.

16          And your position is that Eric Trump

17   has never contacted you?

18          MR. WOODWARD:  Objection.  That's not what

19     he said.

20          THE WITNESS:  I said we've had very

21     little --

22                         (Simultaneous speakers)

23   BY MS. DELGADO:

24     Q    Your position is that Eric Trump has never

25   contacted you about this?

1  that indemnify me from these lawsuits.  And under my

2  agreement of the contracts, Mr. Trump or whatever

3  organization was -- was to pay for them.

4           I -- you would have to ask their

5  attorneys and their people who that actually is.

6  I'm not -- I don't have transparency to that.

7  BY MS. DELGADO:

8      Q    Do you have a copy of those contracts?

9      A    The campaign would have them.  You'd have

10  to ask the '16 campaign.  I don't know where --

11  where those exist now.  It's a long time ago.

12     Q    Do they provide that you'll receive

13  covered legal services?

14     A    Yeah.  When I originally joined -- I had

15  myself indemnified from lawsuits over the years.

16  That's what I've been told by my attorneys.

17     Q    Okay.  So the Trump campaign -- you're not

18  paying anything for Mr. Woodward's fees.  They're

19  being covered by some element of the Trump Org?

20     A    A hundred percent.  Yes.

21     Q    Okay.  That's all I needed.

22           And I think there was one other

23  question to circle back on.

24           Oh, yeah.  It's about the attorneys

25  you have spoken to.

*April 12, 2024 in re: Delgado v Trump for President*
*Deposition of Bradley Parscale*

1   STATE OF FLORIDA        )

2   COUNTY OF WALTON        )

3            I, Leila Z. Harris, LCR (Tennessee), Court

4   Reporter, certify that I was authorized to and did

5   stenographically report the foregoing deposition;

6   and that the transcript is a true record of the

7   testimony given by the witness; Per Federal Civil

8   Procedure Rule 30(e) deponent witness did request to

9   read and sign transcript.

10            I further certify that I am not a

11   relative, employee, attorney, or counsel of any of

12   the parties, nor am I a relative or employee of any

13   of the parties' attorney or counsel connected with

14   the action, nor am I financially interested in this

15   action.

16

17   _____

18   Leila Z. Harris, LCR, FPR
     Stenographic Court Reporter

19

20

21

22

23

24

25

1               UNITED STATES DISTRICT COURT

2          FOR THE SOUTHERN DISTRICT OF NEW YORK

3              CASE NO. 19-CV-11764 (AT) (KHP)

4

5    ARLENE DELGADO,

6          Plaintiff,

7    vs.

8    DONALD J. TRUMP FOR PRESIDENT,
     ET AL.,
9
           Defendants.
10   _____

11
     LOCATION:            Remote Audio-Video
12                        Communication

13   DATE:                May  7, 2024

14   TIME:                10:00 AM ET to 12:35 PM ET

15

16                   Volume 2

17     CONTINUATION DEPOSITION OF BRADLEY PARSCALE

18       Taken before Leila Harris, LCR, Stenographic

19   Court Reporter, Notary Public State of Florida,

20   pursuant to Notice of Taking Deposition in the

21   above-styled cause.

22

23

24

25



```
1    APPEARANCES:

2

3    ARLENE DELGADO, PRO SE PLAINTIFF
     1065 SW 8th Street, PMB 609
4    Miami, FL 33130
     Telephone:305-510-3400
5    Email:adelgado@harvard.edu; ajdelgado@outlook.com

6

7               Pro Se Plaintiff

8

9    JARED BLUMETTI, ESQUIRE
     LHGKC&M
10   40 Wall Street
     32nd Floor
11   New York, NY 10006
     Telephone: 212-530-4831
12   Email: jblumetti@lhrgb.com; pmcppartland@lhrgb.com

13             Attorney for Defendant

14

15   STANLEY WOODWARD, ESQUIRE
     Brand Woodward Law
16   2001 K Street NW
     Washington, DC 20006
17   Telephone:202-302-7049
     Email:stanley@brandwoodwardlaw.com;
18   skylar@brandwoodwardlaw.com

19   -and-

20   JEFFREY GAVENMAN, ESQUIRE
     Schulman Bhattacharya
21   6166 Executive Boulevard, Suite 425
     North Bethesda, MD 20852
22   Telephone:240-356-8553
     Email:jgavenman@schulmanbh.com

23

24             Attorneys for the Witness

25
```



1  **was stuck in my house in my...**

2      Q    Fair.  Okay.  Okay.  And I'm sorry that

3  happened to you, by the way.

4      **A    It's okay.  I got over it.**

5      Q    Okay.  Okay.

6              Let's see.

7              You testified that Jason Miller had

8  been paid through Jamestown because he didn't want

9  his salary to be public.  Do you recall why that

10  was?

11              MR. WOODWARD:  Object to the form.

12      **A    Ask that question exactly how you asked it**

13  **again.  I want to make sure I answer as perfectly**

14  **honest as I can what you asked.**

15  BY MS. DELGADO:

16      Q    Did you testify earlier that Jason Miller

17  wanted to be paid his 2020 campaign compensation

18  through Jamestown?

19      **A    Yes.**

20      Q    Okay.  If so, do you recall why he wanted

21  to be paid through Jamestown?

22      **A    I cannot remember if I was told why.  I**

23  **could tell why I -- why I believed why.**

24      Q    Please tell me.

25      **A    Why I believe why is he didn't want it on**



1  **the FEC report.**

2      Q    Do you know why he didn't want to be on

3  the FEC report?

4          MR. WOODWARD:  Object to the form.

5      **A    I -- I could only assume why.  I don't**

6  **remember if I -- under oath, I cannot remember if I**

7  **was told why.  I can only tell what I -- what my**

8  **brain is telling me what I thought it was.**

9      Q    Okay.  Please do.

10     **A    I just think he didn't want it on the FEC**

11 **report because he was going through things and**

12 **didn't want the world and public to know how much he**

13 **was getting paid.**

14     Q    What things?

15     **A    Well --**

16         MR. WOODWARD:  I'm going to object at this

17     point to relevance to this litigation.

18         MS. DELGADO:  He was a campaign employee.

19     I disagree.

20 BY MS. DELGADO:

21     Q    Go ahead, Brad.  You can answer.

22         MR. WOODWARD:  I'm going to instruct

23     Mr. Parscale not to answer insofar as this is a

24     topic that is not relevant to the claims and

25     defenses in this action.



```
1   STATE OF FLORIDA          )

2   COUNTY OF WALTON          )

3            I, Leila Z. Harris, LCR (Tennessee), Court

4   Reporter, certify that I was authorized to and did

5   stenographically report the foregoing deposition;

6   and that the transcript is a true record of the

7   testimony given by the witness; Per Federal Civil

8   Procedure Rule 30(e) deponent witness did request to

9   read and sign transcript.

10           I further certify that I am not a

11  relative, employee, attorney, or counsel of any of

12  the parties, nor am I a relative or employee of any

13  of the parties' attorney or counsel connected with

14  the action, nor am I financially interested in this

15  action.

16

17

18  Leila Z. Harris, LCR, FPR
    Stenographic Court Reporter

19

20

21

22

23

24

25
```

