<u>UNITED STATES DISTRICT COURT</u>
<u>FOR THE SOUTHERN DISTRICT OF NEW YORK</u>

ARLENE J. DELGADO,
Plaintiff,

-vs-                                             No. 19-cv-11764 (AT) (KHP)

DONALD J. TRUMP FOR PRESIDENT, INC.,
TRUMP FOR AMERICA, INC., SEAN SPICER,
individually, REINCE PRIEBUS, individually,
and STEPHEN BANNON, individually,

Defendants.

<u>RENEWED MOTION TO RECUSE</u>

NOW COMES the above-named, ARLENE DELGADO, Plaintiff herein, and respectfully moves to recuse Magistrate Judge Kathleen Parker ("Magistrate Judge Parker"), from the above-entitled matter, under 28 U.S.C. Sec. 455(a), as follows:

28 U.S.C. Sec. 455(a) states: "Any justice, judge, or magistrate, of the United States **shall** disqualify himself/herself in any proceeding in which his/her impartiality **might reasonably be questioned**." (emphasis added)  *See also* Code of Judicial Conduct, Canon 3C(1) ("A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned.")

The U.S. Supreme Court held, decades ago:  "The neutrality requirement helps to guarantee that life, liberty, or property will not be taken on the basis of an erroneous or distorted conception of the facts or the law." *Marshall v. Jerrico, Inc.* (446 US 238, 242, 100 S. Ct. 1610, 64 L. Ed. 2d 182 (1980))

Plaintiff filed a motion to disqualify Magistrate Judge Parker on January 30, 2024. On February 5th, Magistrate Judge Parker denied the motion. [It should be noted that the denial order contained some misrepresentations (one example is found in Footnote 1[i]).]

The affidavit in a Section 455 motion to recuse need only be **'sufficient' to provide 'fair support' for the charge of partiality**. See *Apple v. Jewish Hosp. and Medical Center*, 829 F.2d 326, 333  (2d Cir. 1987) (quoting *Wolfson v. Palmieri*, 396 F.2d at 124) (emphasis added). See also *Hoatson v. N.Y. Archdiocese*, No. 05 Civ. 10467(PAC), 2006 WL 3500633, at *2 (S.D.N.Y. Dec. 1, 2006)

Plaintiff respectfully requests that Magistrate Parker recuse, in light of the conduct noted in the attached Affidavit, which would lead any reasonable individual to reasonably question Magistrate Parker's impartiality and some of which even includes bias based on outside factors, an element that only further strengthens the motion.

Respectfully submitted,

*s/ Arlene Delgado*

Arlene Delgado

Plaintiff, *pro-se*

I verify, under penalty of perjury, that the following is true and correct.

Executed on July 15, 2024

*s/Arlene Delgado*

## AFFIDAVIT OF ARLENE J. DELGADO

I, Arlene J. Delgado, am the Plaintiff in this case, hereinafter referred to as the Plaintiff or in first person. Magistrate Judge Parker's bias against me (and/or in favor of Defendants) is so pervasive that I have no choice but to file this renewed motion. **I do not intend any of what I write herein to be construed as disrespecting the Court. I am, however, obligated to speak plainly in an affidavit and put forth the biased actions of this particular Court.**

I explain such in no particular order. I realize Magistrate Judge Parker will deny this motion and there is almost no chance of it being granted, precisely because of her personal bias/animus towards me, possible favoritism towards the Trump Campaign, and personal bias towards protecting well-heeled New York law firms, given her husband's position with the New York Bar. But it is critical that this all be documented in the record, both for those interested in this case or even in general judicial bias, as this is a textbook example of how a magistrate judge can make or break a case, and utterly deny a litigant his or her right to establish his or her case. I will also file a Rule 72 Motion if and when this is denied, as I believe it is imperative for Hon. Analisa Torres to understand what has occurred and consider whether this Motion was, in fact, one meriting a grant or a denial.

COMMON INTEREST PRIVILEGE LAW APPLICATION

Recently, Magistrate Judge Parker evaluated whether emails, held by third-party witness Eric Trump, qualified for the common interest privilege that Eric Trump was asserting. Not surprisingly, in the resulting Order (June 26, 2024, ECF 366) she sided with Mr. Trump and held that most of the emails qualified for the common interest privilege. But (a) the erroneous reasoning therein, as well as (b) when one compares her order to another, similar order from another case she presided over, in which she explained and applied the common interest privilege *very* differently, reveal the bias: **the point is not to apply the law to the facts -- the point is to rule against the Plaintiff at every turn.**

As Plaintiff noted in her Motion for Reconsideration (ECF 379), the order had a material error on its face. For the common interest privilege to apply, New York law is clear that there must be two entities/individuals as **"co-plaintiffs or persons who reasonably anticipate that they will become co-litigants" concerning pending or reasonably anticipated litigation.** Magistrate Judge Parker, *in order to justify the common interest privilege* (and thus help Mr. Trump), wrote in her Order that Plaintiff had asserted "counterclaims against the Campaign and Eric Trump" in the 2017 AAA arbitration. But there is zero basis for this in the record. Not even Eric Trump's filings, invoking the privilege with long-winded attempts, claimed this! Though Eric Trump's June 4th letter included misleading wording that gave this *impression*, it did not outright state that Plaintiff had made such claims, much less in the AAA arbitration.

That, in and of itself, was already concerning. But it then the bias and disparate treatment became even clearer:

Upon researching, Plaintiff came across another opinion/order, written by Magistrate Judge Parker herself, on the very same issue. Therein, however, Magistrate Parker's tone was markedly

different, even going so far as to call the common-interest-privilege's invocation "frivolous" and

denying such:

> Plaintiffs argue that they did not waive work product protection by sharing protected materials with Sater due to the common interest doctrine. This argument is **frivolous**. As explained *supra*, **the test for "common interest" under New York law is narrow and demanding, applying only to "codefendants, coplaintiffs or persons who reasonably anticipate that they will becomes colitigants.** *Ambac Assurance Corp*., 27 N.Y.3d at 628, 36 N.Y.S.3d at 845. Thus, there is no common legal interest between Plaintiffs and Sater under this test.

-*City of Almaty v. Ablyazov*, 15-CV-05345 (AJN) (KHP) (S.D.N.Y. Jul. 3, 2019)
(Magistrate Judge Parker) (emphasis added)

This is how Magistrate Judge Parker explained the common law privilege, in *that* case:

> ### 4. Common Interest Doctrine
>
> The common interest doctrine, also referred to as the joint defense privilege, recognizes that separate parties may share a common legal interest and protects communications shared between them in furtherance of that common interest. ... This doctrine does not establish separate grounds for privilege, but rather is an exception to the rule that voluntary disclosure of privileged material to a third party waives protection from disclosure. ....Like the attorney-client privilege, here, the application of the common interest doctrine is governed by New York law. However, because New York courts frequently look to federal courts for guidance on how to apply the doctrine, this Court will look to both New York and federal case law to determine whether the doctrine applies. ...
>
> The common interest doctrine is narrowly construed because it is contrary to truth-finding and liberal discovery standards. ... For the doctrine to apply: "(1) the party who asserts the rule must share a common legal interest with the party with whom the information was shared and (2) the statements for which protection is sought [must have been] designed to further that interest." ....
>
> **To meet the first element of this test, the parties must show that they are "coplaintiffs or persons who reasonably anticipate that they will become colitigants" concerning "pending or reasonably anticipated litigation."** ... With respect to the second element, the parties must show that an oral or written agreement between them embodies "a cooperative and common enterprise towards an identical *legal* strategy" and that their communications were made in furtherance of that strategy. *Globalrock Networks*, *Inc*. *v. MCI Commc'ns Servs*., *Inc*., No. 1:09-CV-1284(MAD)(RFT), 2012 WL 13028650, at *2 (N.D.N.Y. May 7, 2012) (emphasis added) … It is paramount that each party to the agreement understand that the communications between and amongst them are provided in confidence….

The burden is on the party seeking to invoke the common interest doctrine to make a "substantial showing . . . of the need for a common defense as opposed to the mere existence of a common problem." ... Thus, for example, the doctrine "does not encompass a joint business strategy which happens to include as one of its elements a concern about litigation," and, instead, requires that parties have "demonstrated cooperation in developing a common legal strategy." ....

The burden of showing that parties share a common legal interest is on the party asserting it and can be met only "through competent evidence," such as the admission of affidavits, deposition testimony or other admissible evidence and not "unsworn motion papers authored by attorneys."…

(emphasis added)

Magistrate Judge Parker, in that case, explicitly explains that the key test to apply is whether the two are "codefendants, coplaintiffs or persons who reasonably anticipate that they will becomes colitigants."

**Yet that same common-interest-privilege test is never cited/noted in Magistrate Judge Parker's order in *this* case. Instead, this is how Magistrate Judge Parker's recent Order explains the common interest privilege:**

C.    **Common Interest Doctrine**

The common interest doctrine and/or so-called joint defense privilege recognizes that separate parties may share a common legal interest and protects communications shared between them in furtherance of their common interest.  *See, e.g., Sokol v. Wyeth, Inc.*, No. 07

9

CIV. 8442, 2008 WL 3166662, at *5 (S.D.N.Y. Aug. 4, 2008). This doctrine has been described as an exception to the rule that voluntary disclosure of privileged material waives privilege. *Id.* It also has been described as an extension of the attorney-client privilege. *U.S. v. Schwimmer*, 892 F.2d 237, 243-44 (2d Cir. 1989); *Globalrock Networks, Inc. v. MCI Commc'ns Servs.*, Inc., No. 109CV1284, 2012 WL 13028650, at *2 (N.D.N.Y. May 7, 2012) (citation omitted); *Gulf Islands Leasing Inc. v. Bombardier Capital, Inc.*, 215 F.R.D. 466, 471 (S.D.N.Y. 2003). The common interest doctrine also applies to the work product doctrine.  *Pilkington*, 341 F.R.D. at *16.

For the common interest doctrine and/or joint defense privilege to apply, there must be an oral or written agreement that embodies "a cooperative and common enterprise towards an identical *legal* [as opposed to a commercial] strategy." *Globalrock,* 2012 WL 13028650 at *2 (emphasis added) (citing *Shamis v. Ambassador Factors Corp.*, 34 F. Supp. 2d 879, 893 (S.D.N.Y. 1999)). It is paramount that each party to the agreement understand that the communications between and amongst them are provided in confidence. *United States v. Weissman,* 195 F.3d

96, 99 (2d Cir. 1999); *Bank Brussels Lambert v. Credit Lyonnais Suisse S.A.*, 160 F.R.D. 437, 447

(S.D.N.Y. 1995) (explaining that commonality of interest is more than concurrent interest).

Further, "[o]nly those communications made in the course of an ongoing common enterprise

and intended to further the enterprise are protected." *Weissman*, 195 F.3d at 99; *see generally*

*Lugosch v. Congel*, 219 F.R.D. 220, 235-39 (N.D.N.Y. 2003).

Thus, the party invoking the common interest doctrine must show not only that it shares

a common legal interest with the other party to the communication, but also that the

communication was aimed at furthering that interest. *Lazare Kaplan Int'l, Inc. v. KBC Bank N.V.*,

No. 11-CV-9490 (ALC), 2016 WL 4154274, at *3 (S.D.N.Y. July 22, 2016); *In re Rivastigmine*

10

*Patent Litig.*, No. 05 MD 1661 (HB)(JCF), 2005 WL 2319005, at *2 (S.D.N.Y. Sept. 22, 2005)

(collecting cases).

Where is the key language, which she used in the other/earlier case, explaining what she

herself described as "the" test for the common interest privilege (requiring a clear showing of

actual or reasonably anticipated codefendants, co-plaintiffs, etc.)? What reasonable explanation is

there for Magistrate Judge Parker declining to utilize *her own* prior explanation of common-

interest-privilege? The omission clearly *harms* Plaintiff (and *helps* Eric Trump), given **that her**

**earlier/other case's explanation stressed that "the" test is the 'co-plaintiffs/co-defendants,**

**etc.' test.** In *this* case's order, **she omitted that entirely** – what she herself has said is the test for

the common interest privilege. It appears to be deliberate for, had she done so, it would have been

difficult to nevertheless grant Eric Trump the use of the privilege – **after all, doing so would have**

***highlighted*** **that the entire application of the privilege** *comes down to whether Plaintiff indeed*

*had made claims or counterclaims against Eric Trump in the relevant time period,* or that he

was reasonably expecting claims. This appears to be why, quickly on p. 11, she adds that Plaintiff

8

made "counterclaims against… Eric Trump". But Plaintiff never did and that is nowhere to be found, in the record/filings.

This would, respectfully, lead any person to reasonably question Magistrate Judge Parker's impartiality. After all, here is a judge who, depending on the case, uses a different explanation of common-interest privilege – and, herein, even cited to non-existent information in the record to justify the privilege and rule against Plaintiff. Under 28 U.S.C. Sec. 455(a), a judge must ("shall") recuse whenever impartiality may reasonably be questioned. **Outside factors** (her opinion in another case) also form the finding of the bias, making the case for recusal even stronger.

BIZARRE LIMITS PLACED ON THE FOUR PERMITTED THIRD-PARTY DEPOSITIONS
It still shocks the conscience, and leaves anyone who has read the Order in awe, that Magistrate Judge Parker made Plaintiff list, in a public filing, the third parties she wished to depose and explain why each was relevant. [This also resulted in at least a month-long delay, which is ironic given that Magistrate Judge Parker continues to claim that the Plaintiff did not move quickly enough on depositions. It cost a month because Magistrate Judge Parker said, at the January 30, 2024 CMC, that this is how the third-party depositions would be requested and granted and that she would not review the request until the February 28th CMC. The resulting order did not come down until March 1st.] The Plaintiff, not wanting to waste time, had no choice but to engage in the exercise, forced to list strategy publicly.

Out of the many third party depositions Plaintiff requested, the Court only granted four: JARED KUSHNER; MICHAEL GLASSNER (Campaign COO); LUCIA CASTELLANO (Campaign HR); and DON MCGAHN (Campaign counsel and White House counsel).

Notice, already, the bias and cruelty: Magistrate Judge Parker refused to include Jason Miller. *Even though Mr. Miller was listed by the Campaign itself in its main Interrogatory*

*response (!),* as shown below. Thus, the Campaign itself admits, "This person is relevant and possesses relevant information" and Magistrate Judge Parker says, "Nah, no need for the Plaintiff to depose him."

> 2.    Identify (by first and last name, mailing address, e-mail address, and telephone number): any current or former owner, officer, executive, principal, manager, employee,

3

contractor, or agent of the Campaign who has or is likely to have knowledge pertaining to the allegations in the First Amended Complaint as revised on March 28, 2022 (Docket No. 94).

**RESPONSE NO. 2:**

In addition to the General Objections, the Campaign objects to this interrogatory, including, but not limited to, the term "likely to have," on the grounds that it is vague, ambiguous, and overbroad. The Campaign further objects to this interrogatory to the extent it seeks information that is not relevant to the claims or defenses in this action. Subject to these objections, (1) Kellyanne Conway, last known address of 11 Litchfield Way, Alpine, New Jersey; (2) Lucia Castellano, last known address of 31 John Adams Court, Monroe, New Jersey; (3) Michael Glassner, last known address of 34 Maple Avenue, Mendham, New Jersey; (4) Steve Bannon; and (5) Jason Miller.

But it gets worse. Out of the four she chose, Magistrate Judge Parker did something that, to this day, no one who has seen this order can explain how any judge entered such an order: **She limited each and every one of the four depositions, to a particular, extremely narrow topic!** Below is a screenshot from the Order (March 1, 2024):

otherwise denied the request. **Specifically, as discussed at the Case Management Conference,**

**Plaintiff is permitted to subpoena and depose the following individuals:**

- **Lucia Castellano**, who was identified as the head of Human Resources for the Campaign, and is thus likely to have information relevant to employment decisions by the Campaign.

- **Michael Glassner**, who was identified as counsel for the Campaign during a mediation between the Campaign and Plaintiff to which the breach of contract claim pertains, and is likely to have information relevant to the breach of contract claim.

- **Jared Kushner**, who was identified as having a role in the decision not to hire Plaintiff for a position at the White House, and thus likely to have information relevant to the discrimination claim.

- **Donald McGahn**, who was identified as an individual involved in the security clearance process for White House personnel during the relevant period, and is likely to have information relevant to Defendants' defense that Plaintiff would not have qualified for a position at the White House due to security clearance issues.

:

Admittedly, judges have discretion to limit depositions in certain circumstances where that discretion is warranted – for instance, if this is a litigant's second time taking a person's deposition, a court is within its rights to limit the additional deposition in time or to a specific topic. But that is not the case here. How can a magistrate judge entering orders such as this remain on this case and not be seen as not only biased but bias to a destructive degree? How is this not an atrocious violation of a litigant's due process and extreme bias in favor of ruining one side's ability to put on their case? It must be read through several times to be believed. Consider:

- '**You can depose the HR director <u>but</u> you cannot ask her about anything except the 'employment decisions by the Campaign'**.' Thus, asking the HR director about one's work performance? Cannot ask that! Asking the HR director about others' performance? Cannot ask that! Asking the HR director about policies for reporting harassment or discrimination? Cannot ask that!

- '**You can depose Michael Glassner, Campaign COO, <u>but</u> you can only ask him about the breach of contract claim**.' 'Were you aware of complaints?' No, cannot

ask that! 'Were you part of the team that decided to retaliate against me?' No, cannot ask that, either!

**Even when Plaintiff** (in tandem with Jones Day, representing third-party deponent Don McGahn) **sought clarification from Judge Parker (ala, 'Did you really intend to limit the depositions to that wording, or was that just descriptive phrasing providng an example of each deponent's relevance?'), Magistrate Judge Parker assured that it was indeed the former – she really _did_ enter an order saying Plaintiff could depose the HR director (a person identified as a key witness possessing relevant information, by the Defendants themselves!!) but Plaintiff could only ask Ms. Castellano about "employment decisions."**

Magistrate Judge Parker <u>denied</u> Plaintiff the most basic ability to engage in discovery and determine which depositions were needed for her case, instead micro-managing the case to try to ensure it will fail. This is a tragic, destructive level of bias.

<u>REFUSES TO PERMIT THE DEPOSITION OF MICHAEL GLASSNER</u>

Recently, in June, Plaintiff learned, via summary judgment filings in another case pending in New York State Court, that Michael Glassner (Campaign COO) had, in his deposition taken in that case, admitted to being a key decision maker in the retaliation against Plaintiff (the Campaign's suing her for $1.5 million when she indicated an intend to file suit).

Plaintiff dutifully brought this information before the Court, naturally, effectively noting, 'As the Court can see, I really did need to depose Mr. Glassner. I meet the standard for re-opening of limited discovery, for this purpose, given that the standard is whether I had ample opportunity to obtain this discovery. Clearly, I did not, **as you prevented me from asking Mr. Glassner anything other than questions about the 'breach of contract' claim** (a five minute deposition, at best). Moreover, Defendants violated their disclosure duties because **they never identified, as**

**they are required to do, Mr. Glassner – in either their Rule 26 disclosures or Interrogatory responses – as possessing information or being relevant to the retaliation claim**.'

There is not a single judge in this country's federal courts that would have or could have denied such straightforward, clearly merited relief. In fact, Magistrate Judge Parker should have been embarrassed by it – respectfully – given that it highlighted just what a mess she created with the "limits" on the depositions and what an egregious violation of Plaintiff's rights to discovery those limits were.

Rather than rectify that mess, however, and swiftly grant Plaintiff leave to take the deposition of Mr. Glassner, Magistrate Judge Parker *denied* it. The bias has resulted in orders that no one can comprehend or wrap their minds around.

To do so, Magistrate Judge Parker complete ignores and refuses to acknowledge the limits she placed on Mr. Glassner's deposition. There is no mention of it, conveniently so. She also does not address the Defendants' disclosure violations. *So how does she justify claiming that the Plaintiff had opportunity to obtain this information previously, given that she herself tied Plaintiff's hands?* She does so via a (Hail Mary) argument opposing counsel threw into a single line of their opposition brief – the 'P.S., hm, Plaintiff could have simply asked about he retaliation against her, during the 30b6 deposition she took!' It is a painful thing to read, because surely the Court itself does not believe something so silly – thus, to see the Court invoke it, only cements the frightening reality that this Court's bias is *extreme*.

Thus, at least according to the Court's order, litigants are not entitled to depositions of key individuals because they should simply ask those questions …. in a 30b6 deposition and have the 30b6 witness answer? That's good enough? No, that is not at all an appropriate substitute. Moreover, no answers would result: the 30b6 witness, even if well-prepared on the topic, would

not be able to answer the same way a  decision maker himself would, or be able to answer related/follow-up questions. (And, worth noting, to say that the 30b6 witness provided by the Campaign in this case was evasive and coy… is an understatement of epic proportions, as this Court is well aware. The answer would have been that such is "attorney client privileged" or some other ridiculous obstacle, as the witness did on even the most basic of matters. And, even if the witness had answered, "Michael Glassner" – what then? The witness has no other information.)

Again, no judge would have or could have denied this motion. It shocks the *conscience* that Magistrate Judge Parker did so – but it does not shock. Why? It is in line with Magistrate Judge Parker's dislike and disdain for the Plaintiff – law and facts do not rule this case but rather "What will harm the Plaintiff?"

## PROTECTS A NON-PARTY, WELL-CONNECTED LAW FIRM, AT THE EXPENSE OF A LITIGANT'S DUE PROCESS

The Plaintiff, in an earlier motion this year, noted that the Trump Campaign had made over $4 million in payments to the Kasowitz Burgos Torres law firm ("Kasowitz firm"), in a mere 59 days, immediately following the November election. This is indisputably odd, given that the Kasowitz firm did not perform much work *at all* for Trump or the Campaign (Mr. Kasowitz having been unceremoniously, abruptly dismissed from all Trump matters in summer 2017), in the current or preceding years. This stuck out at Plaintiff as relevant, given that Plaintiff had personal knowledge and experience with the Kasowitz firm: Specifically, the Kasowitz firm had offered to serve as a middleman when the Campaign had agreed to settle with the Plaintiff for $1.2 million – in order to secretly route the payments and conceal them as payments for 'legal services.' Plaintiff then dutifully filed a Declaration regarding her firsthand knowledge of the Kasowitz firm at least

once offering to serve as a middleman for hiding of settlement payments, routing them through the firm as payments for legal services.

The nature of the payments was clearly relevant because, if settlements existed, that would, in turn, *obviously mean that <u>complaints</u> existed* (which the Trump Campaign had been ordered to produce, on April 24, 2024 yet had produced nothing). (Indeed, when questioned a few days later, by a reporter at the Daily Beast, the Kasowitz firm issued a non-denial denial, making it all the more obvious to any astute observe that the Plaintiff had hit the nail on the head.)

Strangely, Magistrate Judge Parker, rather than ordering the Campaign to *at least* attest whether any such payments were related/relevant to complaints (moreover, any neutral judge would want to know if the Defendants had violated a court order), **swooped in to *block* this, protecting the Campaign but, just as importantly, *protecting the Kasowitz firm***. After all, if those payments were indeed, even partly, for payoffs to women – yet were listed in the FEC disclosures as payments for "legal services" – the Kasowitz firm could face trouble from the FEC. So Magistrate Judge Parker quickly entered an order resoundingly stating that the Plaintiff had "no right" to know how the Campaign "resolved" other complaints and that the Campaign need provide a thing to the Court, or to the Plaintiff. 'Move on!'

The only explanation is a biased judge. Consider what the Court is saying here – 'You do not have a right to know how the Defendants 'resolved' another matter.' OK – but the Court has already said that Plaintiff has a right to the *complaints* themselves. **And what are the settlements reflecting, if not the existence of underlying complaints?** Thus, when a defendant says, "We have no complaints! We were pure as the snow!" yet there is clear indication they may have paid out millions in settlements, and in the relevant time period (!), clearly there were indeed complaints

and they are indeed hiding them. Second, plaintiffs *are* routinely, in employment discrimination cases, granted the ability to learn of other settlements. While the degree to which that is probed varies from case to case (e.g., Will the plaintiff be entitled to learn the amount, or just the fact that it was settled?), ***the existence of* underlying complaints, leading to a settlement, is clearly relevant information to which the plaintiff is entitled in a case**, regarding similarly situated individuals with similar claims. Third, Magistrate Judge Parker surely was aware that her order engaged a strawman argument: the Plaintiff did *not* seek to learn how the Campaign "resolved" other complaints (i.e., specific dollar amount of each) but **rather that these settlements (in general terms) *existed* – thus revealing that underlying *complaints indeed existed* and thus that those complaints, *already court-ordered*, needed to be produced.** A fair and neutral judge would have issued something along the lines of the following:

> On April 24, 2024, this Court ordered the Defendant-Campaign to produce all complaints of gender-related discrimination, pregnancy-discrimination, and sexual harassment. Plaintiff informs the Court that, effectively, no complaints were produced, which Defendants do not deny. The Plaintiff has come before the Court with additional information, which she believes demonstrates a likelihood that Defendant is withholding said complaints – namely, a public FEC disclosure reflecting approximately $4 million in payments to a law firm, across roughly two months period, following the conclusion of the November 2020 election. Plaintiff has also submitted a sworn declaration, noting this was the same law firm that offered to serve as a middleman for *her* 2017-settlement, in order to, according to Plaintiff, conceal the settlement from the public. While none of this is documentation of actual withholding of complaints, it is enough to raise concern from the Court, particularly as to whether a party withheld information that this Court clearly ordered it to produce. In the interests of judicial economy and swift resolution of this question, Defendant-Campaign is to file a sworn declaration, attesting whether any of the amount, reflected in the FEC disclosure referenced by Plaintiff, pertained to any settlement or resolution *of any complaint of gender discrimination, pregnancy discrimination, or sexual harassment*. This Court will then consider whether to require additional information, or hold a hearing on such, pending the outcome of the declaration.

But, that is not what Magistrate Judge Parker did. Instead, she outright denied the Plaintiff access to information to which Plaintiff had a right and any other judge would have permitted.

An individual in New York, who follows the docket and was surprised by this Order, then contacted Plaintiff with a tip. This tip led Plaintiff to discover information that *also merits the recusal of Magistrate Judge Parker and would explain her biased and fervent protection of the Kasowitz firm* -- even if means depriving a litigant of information she has a right to receive. As Plaintiff was informed and confirmed for herself, **Magistrate Judge Parker's husband is the Executive Director of the New York Bar.** It stands to reason that Magistrate Judge Parker should recuse herself from matters in which a law firm, particularly one as connected and locally involved as the Kasowitz firm, is implicated in any external-to-the-case wrongdoing (e.g., wrongdoing aside from the typical sanctions motions, etc., inherent *in* the litigation before the Court). [The Court would likely retort, 'No, that means I would have to withdraw from any case where there is a law firm that is supportive in Bar endeavors, which is unrealistic.' But no, that is not what Plaintiff if arguing. Recusal is warranted only in those (unique) situations where more than just the typical representation – and case-internal sanctions – is before this judge. These are *not* common scenarios and would only require Magistrate Judge Parker to recuse herself once in a blue moon. (And, again, it is limited to those firms with a clear connection to Mr. Parker's work and endeavors, which not many firms have.) **The Plaintiff learned that the Kasowitz firm is not just a supporter and funder of various Bar endeavors[1] (its partners sitting on committees with Magistrate Judge Parker's husband) but is also a steadfast supporter and funder of Mr. Parker's**

---

[1] https://www.tnybf.org/wp-content/uploads/2020/11/Foundation_Annual-Report-18.pdf

(commendable) role as co-chair of the Michael J Fox Foundation, a charitable endeavor to which the Kasowitz firm has been a generous donor.

Magistrate Judge Parker, via her husband, is not at all removed or disconnected from the attorneys who practice before her, as a judge should be – at least not to a degree that inspires reasonably confidence in her neutrality in this case, where much is a stake, including FEC violations. That favoritism and predisposition towards New York's well-connected firms is even more pervasive when it is a pro-se litigation on one side. While it should not disqualify her from being judge – but it should at least merit recusal in those instances where a particularly supportive law firm faces particularly eyebrow raising, external exposure.

In other words, recusal is warranted when the issue is unique and directly involves potential for external repercussions (e.g., potential FEC violations) for a particular firm. Magistrate Judge Parker, via her husband's connection to the Michael J Fox Foundation and given Kasowitz's support of same, is especially not removed from the Kasowitz firm (and others) in particular. Her impartiality when it comes to the Kasowitz firm can and should reasonably be questioned. As such, under Subsection(a) (and also (b)), she should have recused herself from the case at that point, unable to rule on this motion in a way that inspires confidence. Certainly, the ruling itself shows she did not, by any reasonable standard, approach the matter neutrally but rather clearly approached it from a position of wanting to protect the Kasowitz firm, versus respecting the litigant's due process rights to relevant discovery.

This is bias **stemming from an extrajudicial source** and results in an opinion other than what the judge learned from his participation in the case." *United States v. Grinnell Corp.,* 384 U.S. 563, 583 (1966).

<u>PROTECTING WELL-HEELED ATTORNEYS AGAIN, MAGISTRATE PARKER EVEN
PREVENTED PLAINTIFF FROM FILING A MOTION TO DISQUALIFY COUNSEL,
BEFORE IT HAS EVEN BEEN FILED</u>

In the midst of the chaos caused by the Campaign's counsel withdrawal and the
Campaign's attempt to find substitute counsel, Plaintiff's filing noted she would file a motion to
disqualify the new counsel. But then, out of nowhere, on Monday, May 13th, Magistrate Judge
Parker suddenly enters an order stating that she would "not entertain" any of such, and that any
**motion to disqualify [opposing counsel]… would be frivolous**."

The song remains the same. Magistrate Judge Parker's constant, default posture is to
protect and safeguard the attorneys.

<u>MAGISTRATE JUDGE PARKER *SUA SPONTE* EDITS HER OWN PRIOR ORDER, TO GIVE
DEFENDANTS AN ESCAPE HATCH</u>

Magistrate Judge Parker repeatedly rules against the Plaintiff, on every request, without
fail. The only time Magistrate Judge Parker actually granted a request of the Plaintiff's was because
it would have been egregious to rule otherwise, given the abundant caselaw supporting Plaintiff's
position. Specifically, the Campaign was claiming that Plaintiff was only entitled to complaints
made during the 2016-election cycle, even though they concede that the 2020-election cycle was
still the exact same entity. The argument was nothing short of absurd. Nevertheless, even then,
Plaintiff submitted a well-argued filing, with caselaw, including from this very district and from
the 2nd Circuit. There was no denying that the caselaw was clear that plaintiffs are entitled to
multiple years of such information, backwards and forwards in time. To rule otherwise would have
been too obvious. Thus, the Court ordered that the Campaign had to turn over the 2020 complaints,
as well.

Yet, 36 hours later, clearly caused by an intense argument over whether to continue to hide the information, the Campaign's longtime counsel (Jared Blumetti) moved to withdraw, on Friday, April 26th, citing an "irreparable breakdown" with his *longtime* client, the Campaign. It is not rocket science to discern, as the public and press instantly did, what was occurring here – the Campaign was still refusing to hand the material over and the attorney knew he needed to, so his only option was to move to withdraw. On May 7th, the Campaign, and Mr. Blumetti on his way out (being replaced by new counsel shortly), produced a document-dump of… essentially nothing.

Provided filings about all this, and now realizing the gravity of her earlier order and the trouble it was causing the Campaign, Magistrate Judge Parker then rushed to provide the Campaign an escape hatch,. *Although neither litigant had moved to amend the Order*, Magistrate Judge Parker entered an order in which she, *sua sponte*, declared that she now realized it was necessary to 'clarify' what the Campaign needed to turn over: only written complaints and, moreover, the Campaign need only search the (work) email archives (!) and, even then, only of certain custodians (!), and, even then, only using certain keywords/phrases.

The Campaign could hardly believe its luck. Sure enough, on the date the renewed production was due, they boasted that they had complied with the Order's (literal) wording.

After Plaintiff brought this to the Court's attention, Magistrate Judge Parker engaged in a cursory 'fix', seemingly to try to hide the bias, claiming she had never intended for the May 14th Order to serve as a limit on how the search should be conducted, only what it must include, and adding that the production should include, e.g., any outreach from attorneys about someone's complaint. By then, however, the escape hatch was provided, utilized, invoked, and done. At this point, the Campaign was not going to 'go back on' its previous claims and knew it now only had to say "we produced what we had! Nothing has changed. This issue is closed." So it did. To date,

thanks to Magistrate Judge Parker's providing the Campaign clear wiggle room and conveniently worded escape hatches in orders, the Campaign has never produced a single complaint, other than those from 2016 that were *already* in the *public* domain.

**Last month, the Plaintiff, through sheer happenstance, learned from a 2020 senior legal advisor, Jenna Ellis, Esq., that, indeed, there had been multiple complaints and the Campaign had allegedly, according to what Ms. Ellis was told by Michael Glassner, Chief Operating Officer, settled several sexual harassment suits involving advisor Boris Epshteyn**. The Plaintiff also filed a screenshot of the messages with the Ms. Ellis, in which Ms. Ellis explicitly states so.

What did Magistrate Judge Parker do? Go into 'protection mode' of the Campaign again, and again horrifically denying the Plaintiff access to information to which the Plaintiff is entitled (and to which the Court had *already* stated the Plaintiff was entitled!) It refused to permit any discovery whatsoever into the matter, seemingly not even caring that the Campaign had hidden court-ordered production and thus seemingly rolled its eyes at even the Court's own authority. Again, the point is to harm the Plaintiff (whom Magistrate Judge Parker clearly dislikes, intensely) and thus help the Campaign.

MAGISTRATE JUDGE PARKER TREATS THE HISPANIC, PRO-SE, INDIGENT PLAINTIFF AS 'LESS THAN' THE ATTORNEYS, EVEN THOSE OF THIRD PARTIES

Magistrate Judge Parker's favoritism towards the attorneys, due to her husband's role leading the New York Bar, is readily apparent. But Magistrate Judge Parker has overtly treated the Plaintiff, a pro-se, indigent, Hispanic single mother (a far cry from the very wealthy, white, married mother of two, Magistrate Judge Parker), as less worthy than the attorneys, to a humiliating degree. Consider, e.g.: Third-party witness Brad Parscale had delayed his deposition since August 2023 (Plaintiff's prior counsel had attempted to set such). He was evasive in coordinating, evasive in

being served, and so forth. Finally, the deposition was set for a date certain, March 13, 2024. Such required a hearing at which the Court set the date. At said hearing, Plaintiff inquired words to the effect of, 'What happens if they then try to cancel this date, too?' and the Court assured, to which Mr. Woodward nodded, that such would not happen because this date was court-ordered. Just as Plaintiff suspected, however, at the 11th hour, Mr. Woodard filed a letter claiming he had a scheduling conflict. But Mr. Parscale's deposition had been set for weeks and, again, a court-ordered date.

Magistrate Judge Parker issued an order resolving the matter as follows: Plaintiff's deposition of Mr. Parscale would be limited to 2.5 hours. One can hardly believe the level of bias and disdain towards the pro-se litigant, in favor of the well-heeled attorney. By right, depositions in federal court are seven hours. Here was Magistrate Judge Parker, limiting Plaintiff to not even *half* of the time to which Plaintiff, per the Federal Rules, is entitled. To cover herself, the order stated that if, subsequent to the 2.5 hour deposition, Plaintiff felt she needed more time, she could simply request such from the Court. Sure enough, more time was needed, so Plaintiff requested such, naturally thinking the request would only be a mere formality. Even then, however, Magistrate Judge Parker stated Plaintiff would now need to explain *why* more time was needed and would need to explain exactly which questions and topics she was unable to address in the 2.5 hour deposition. The exercise required Plaintiff to reveal strategy and climb through hoops for, again, what she is entitled to under the Rules – and thus prevented her from obtaining a genuine, off the cuff answer to her questions, the day of the subsequent deposition. Even upon reluctantly permitting a brief 'Round 2' to go forward, Magistrate Judge Parker managed to cause problems and again interfere in Plaintiff's discovery rights, by including wording in the resulting order, to the effect that that the questions asked must be "relevant." But questions must *always* be relevant.

The language was bizarrely superfluous. However, by inserting such language in the order, it was a green-light to allow Mr. Woodward, who then certainly took advantage and did so during the deposition, to instruct his client not to answer at all, on "relevance" grounds, citing the Order and claiming it permitted him to instruct his client not to answer, versus simply making and preserving his relevance objection.

<u>MAGISTRATE JUDGE PARKER REWARDS ATTORNEYS FOR UNETHICAL ANTICS, OVER THE RIGHTS OF THE PRO-SE, HISPANIC LITIGANT</u>

Again, Magistrate Judge Parker's disposition towards protecting and rewarding attorneys is alarming. During the deposition of Mr. Parscale, his attorney, Mr. Woodward, prevented him from answering a question by claiming the question asked for attorney-client privileged information. The question was, "Are you neutral in this case?"

Plaintiff naturally included this question in the subsequent Motion to Compel she filed, seeking a court order for Mr. Parscale to answer.

Magistrate Judge Parker's resulting order, denying the motion in full, is something to behold: In it, Magistrate Judge Parker notes that, while it was incorrect for Mr. Woodward to claim the question fell under attorney-client privilege, 'No worries! Not worth re-deposing Mr. Parscale over that question, because Mr. Parscale sort of answered on that general topic elsewhere' (he certainly did not – and the Plaintiff has a right to ask the questions). In other words, Magistrate Judge Parker *rewarded* the attorney (versus reprimanding or even sanctioning him or, in the least, at least ordering the question be answered), at the expense of the litigant's RIGHT to ask and have questions answered. Would not a fair, neutral judge be offended – even *angered* – by a highly paid attorney being too-cute-by-half, in a deposition, and claiming that "Are you neutral?" is a question that calls for attorney-client privileged information? Most judges would be angry and offended. In

the least, they would order the question answered. Magistrate Judge Parker did not, this time not only protecting the well-heeled attorneys but rewarding them.

REFUSES TO GRANT PLAINTIFF A PACER FEES EXEMPTION, *AND* DELAYS RULING ON SUCH

Plaintiff is indigent and unable to afford to pay her PACER balance or ongoing PACER fees. It is common for PACER to grant exemptions for indigent, pro-se clients; students; researchers; and similarly situated individuals. PACER informed the Plaintiff that the procedure entails seeking a simple order from the Court, upon which PACER then processes the exemption. Thus, on June 25, 2024, Plaintiff diligently filed a brief request with the Court, and even included an indigency application (albeit not required) to further solidify her request and provide the Court abundant information, even though such is humiliating. Plaintiff explained she had been locked out of PACER since June 24th and unable to access her docket or case history.

Days went by and on July 1st, an order came in. Rather than grant the pro-se Plaintiff the exemption, the order stated that Magistrate Judge Parker needed more information and noted it was entirely unclear why Plaintiff would need an exemption, given that PACER provides "one free copy" of each filing in her case.

The Order was, to any reader, unnecessarily degrading. Magistrate Judge Parker practiced for many years as an attorney: She is aware that there are many reasons why a litigant needs access to PACER, aside from the the one-time, free copy – e.g., litigants often need to retrieve past copies that one does not have readily available or cannot easily locate (especially in a docket this old) *and* litigants often even need to review dockets from other cases, too. (Additionally, the link to the free 'courtesy copy' regularly fails to function and often instead leads to a prompt to agree to pay for the document.) Nonetheless, Plaintiff promptly responded and filed the required additional explanation, further degrading herself.

That was July 2nd. It is now July 15th. *Knowing Plaintiff is locked out of PACER, Magistrate Judge Parker has still not entered an order.*

<u>BLOCKED PLAINTIFF FROM VARIOUS AVENUES TO PROVE DAMAGES</u>

Magistrate Judge Parker's dislike of Plaintiff goes so far as to prevent Plaintiff from proving key damages in her case.

As is already known, Magistrate Judge Parker prevented Plaintiff from utilizing an expert in the case by, at the January 2023 settlement conference, announcing an enforcing deadline for expert discovery in early February*, even though the parties had not even taken depositions of one another and document-exchange had just occurred a few weeks earlier.*

The Plaintiff then at least diligently tried to establish damages via the deposition of Boris Epshteyn, a counterpart of hers on the Campaign who went into the White House and currently earns roughly $1 million per year. Plaintiff explained such in her request. Did Magistrate Judge Parker permit it? Of course not. The point is to ruin Plaintiff's case.

Thirdly, Plaintiff then, at least, sought to prove the damages, as alleged in her complaint, regarding the loss of media jobs (again, this is alleged in her complaint, explicitly). To do so, she subpoenaed Fox News who, just a few weeks before the Defendants' discriminatory actions, had assured Plaintiff she would have her own show soon.

Fox News, unsurprisingly, filed a set of (rather boilerplate) objections. On April 24th, Magistrate Judge Parker set the matter for hearing on May 9th, and ordered Plaintiff to inform Fox News's counsel of the upcoming hearing. That hearing date that was reset when Plaintiff's dog abruptly passed away. The hearing was re-set for May 15th.

In a turn of events that shocks the conscience, however, a few days before the hearing was due to take place, Magistrate Judge Parker entered an order suddenly announcing, effectively, 'I

changed my mind! No need for a hearing! I can decide this on the filings!' and canceled the hearing

that she had already set and reset and *on which the Plaintiff was relying, to make oral argument*.

Magistrate Judge Parker's basis was that, based on the filings, the subpoena (which merely

requested emails pertaining to the Plaintiff – and none of these emails even pertainin to Fox News

reporting, as Fox News never reported on the Plaintiff) would present an "undue burden" on Fox.

Apparently, **searching their email archives, digitally, which takes mere minutes, and an**

**attorney review of emails, taking a few hours, would be an "undue burden."**

Consider: The Plaintiff explicitly alleges lost media jobs in her Complaint. The Plaintiff

somberly and efficiently only subpoenas *one* media company (i.e., it is not as if the Plaintiff was

engaging in a phishing expedition, subpoenaing every media company with which she had a

relationship or appeared regularly, such as MSNBC, etc.). It is also a media company that, on

paper, had essentially promised Plaintiff a job (a job that disappeared after the Defendants'

actions), a document Magistrate Judge Parker is aware of.

There can hardly be a better example of discovery that must be permitted.  Moreover, the

discovery sought was somber – it is not a deposition but rather simply a request for documents.

Again, however, the point is to block and prevent Plaintiff from prevailing. **Magistrate**

**Judge Parker blocked Plaintiff, effectively, from using an expert on damages; she then**

**blocked Plaintiff from using a counterpart to show damages; she then even blocked Plaintiff**

**from at least showing her loss-of-media-jobs damages.**

NO, MAGISTRATE JUDGE PARKER HAS NOT GRANTED PLAINTIFF VARIOUS
EXTENSIONS

Magistrate Judge Parker often claims, presumably to counter allegations of bias, that she

has been generous in giving Plaintiff multiple discovery extensions. But this is incorrect. In fact,

the only extensions given were those *directly* tied to Magistrate Judge Parker's decision to allow

an attorney out of the case. Given that a court cannot allow an attorney to withdraw if the withdrawal will prejudice the client, it stands to reason that, if a Court decides to permit the withdrawal in the middle of discovery, it obviously must, hand-in-hand, also extend discovery – otherwise, it is allowing the attorney (who stopped working and ran out the clock) to leave a mess and walk away. A summary of the withdrawals-and-extension history in this case is found in Endnote 1.[ii]

Moreover, Magistrate Judge Parker has granted even a greater number of extensions in plenty of *other* cases. *See e.g.*, <u>Spectrum Dynamics Medical Limited v. General Electric Company et al</u>, No. 1:2018cv11386 - Document 579 (S.D.N.Y. 2022), in which Magistrate Judge Parker granted five extension requests on discovery.

And, given that Defendants did not take Plaintiff's deposition until June 2023 (during the discovery period which was to close in September 2023), at most only the extensions commencing *after September 2023* date should be considered extensions that were caused by need on the *Plaintiff's* side for more time. It does not even total one year – compared to the nearly two-years-plus of lost time in this case, caused by Plaintiff's frivolous NDA-based arbitration.

Again, it is clear the Plaintiff was not granted a typical extension request, much less several. Rather, the first extension one can say she received was that which reset the September 15, 2023 deadline, due to Mr. Phillips withdrawing in the midst of depositions. These were not simply "I need more time", or "I have encountered difficulty on a certain matter," etc., extensions. Each one was related to a withdrawal of counsel (that the Court chose to grant) or an error caused by the Clerk. **By way of contrast, an example of a plaintiff actually receiving multiple extension requests in an employment discrimination case... is found in a fellow N.Y. district court case, in which <u>nine</u> motions for extension were granted, extending discovery for two years, and**

**only the tenth was denied**. Moreover, as noted below, the extension-requests in that case were all

due to the Plaintiff's excuses for her own conduct or simply needing more time:

> On February 12, 2021, this case was removed from state court. See DE 1. On May 26, 2021, Magistrate Judge Anne Y. Shields (to whom this case was previously assigned) ordered that **fact discovery be completed by July 30, 2021**, and expert discovery be completed by August 31, 2021. See May 26, 2021 Order. **In the years that followed**, first Judge Shields and then the undersigned (to whom this case was reassigned on June 13, 2022) **granted nine motions to extend those deadlines**. See July 26, 2021 Order; September 30, 2021 Order; December 8, 2021 Order; February 9, 2022 Order; June 8, 2022 Order; October 4, 2022 Order; February 21, 2023 Order; June 8, 2023 Order; October 2, 2023 Order. Many of these extensions were necessary **due to Plaintiff's repeated failure to meet court-ordered deadlines**. See, e.g., DE 20 at 2 (**extension necessary because Plaintiff failed to appear for her independent medical examination**); DE 25 (**discussion of Plaintiff's failure to produce discovery**); DE 29 (same); DE 35 at 4 (**extension necessary because Plaintiff was unable to appear for her independent medical examination "due to calendar conflict involving plaintiff's calendar"**). In fact, **Plaintiff's inability to comply with her discovery obligations and court-ordered deadlines was the subject of discussion at many of the status conferences with the undersigned since June 13, 2022.** See Fed. R. Civ. P. 1 (addressing the obligation of "the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding")..... During a status conference **on June 8, 2023** (that Plaintiff's counsel attended), the Court was explicit that no further extensions would be granted "unless the request (1) is filed 7 days before the relevant deadline(s), and (2) is supported by a sworn declaration providing good cause for the requested extension." DE 33. On December 6, 2023, the Court conducted a status conference during which a new attorney appeared.... During the December 6, 2023 conference, it was clear to the Court that Plaintiff's counsel was unprepared and had no knowledge about the Court's prior orders and the lengthy history of delays, extensions, and missed deadlines. As a result, the Court denied Plaintiff's oral request to extend the schedule for a tenth time...Plaintiff now seeks to reopen fact and expert discovery, asks the Court to "accept Plaintiff's mea culpa and grant this final extension," and proposes several new extended deadlines, including January 22, 2024 to conduct the deposition of a representative of Defendants, April 11, 2024 to complete expert discovery, and May 13, 2024 to commence dispositive motion practice. DE 40 at 2. Plaintiff claims that there is "good cause" to grant this relief, citing, for example, (1) Plaintiff's failure to meet deadlines since the June 8, 2023 status conference was the result of his law firm's administrative error and "none of the dates were inputted into the system" (DE 40-1 at 2); (2) Plaintiff's requested discovery is "absolutely no surprise for the defendants" (id. at 3); (3) Plaintiff should not be "punished for [her attorney's] mistake" (id. at 2); and (4) Plaintiff has acceded to the Defendants' prior requests for extensions over time (id. at 5). Defendants oppose Plaintiff's motion,

setting forth a detailed chronology of Plaintiff's failure to comply with court orders in this case, the lack of good cause to warrant any further extensions, and the prejudice to Defendants if the Court were to reopen fact and expert discovery.

*CUTRONE v. BJ WHOLESALE CLUB INC* 2:21-CV-00787 (OEM) (LGD) (E.D.N.Y., December 19, 2023)

In contrast, Plaintiff has not received multiple extension requests, much less to any degree that is unorthodox in the New York area federal district courts or in the purview of the 2nd Circuit. Magistrate Judge Parker has *not* extended to the Plaintiff the solicitude that some other *pro-se* plaintiffs are extended, by other courts/judges, yet it claims it has.


## SET SUMMARY JUDGMENT DEADLINES EVEN THOUGH INFORMATION STILL COMING IN

Even though discovery is still being provided to Plaintiff (e.g., Magistrate Judge Parker ordered requests for admissions to be answered by Defendants by July 12th; McGahn's deposition has not taken place; Eric Trump's updated production was not ordered due until July 3rd and more), Magistrate Judge Parker has failed to adjust the summary judgment deadline she had set of July 30th. And, she continues to fail to do so even upon seeing the Defendants claim in filings that they are working on the summary judgment motions (in filings last month) – all while Magistrate Judge Parker knows the Plaintiff is, in contrast, sitting there still waiting for the information she needs.


The aim is clear – to give Defendants an unfair advantage. Plaintiff still wonders how it is Magistrate Judge Parker can consider herself anything but biased given that Plaintiff should have the right to do a summary judgment motion on the issue of retaliation – yet Magistrate Judge Parker denied her the right to depose the individual (evne for 30 minutes) with the information on such.

For all of the above reasons, I respectfully request that Magistrate Judge Parker recuse herself, as the law requires.

*s/Arlene Delgado*
Arlene Delgado

---

i For instance, on p. 8, the Order reads: "To say Plaintiff is spinning the facts about what occurred would be generous. In any event, a Court is within its right to sanction a party for violating a court order. Fed. R. Civ. P. 16(f). When the Court scheduled the settlement conference, it stated in a written order that parties needed to appear in person. (ECF No. 113.) The individual defendants also were required to attend in person. On January 10, 2023, the day before the long-scheduled settlement conference, and after the deadline for such requests in the undersigned's Individual Rules of Practice, Plaintiff's counsel filed a letter stating that Plaintiff would not be able to attend the long-scheduled settlement conference in person due to child-care responsibility and requested permission for Plaintiff to attend virtually." This is misleading. Plaintiff's counsel's letter actually took full responsibility, and explained that he had neglected to inform the Plaintiff of the upcoming settlement conference, until the evening prior (thus rendering it impossible for the Plaintiff to fly to New York on no notice – there would likely be no flights even, at that point, that would get the Plaintiff there on time). Magistrate Parker omits this and instead claims that the 'excuse' was lack of childcare. Magistrate Judge Parker also omits that she, on at least four occasions, including in the private breakout sessions (for reasons the Plaintiff cannot possibly comprehend, SDNY permits a magistrate presiding over a case to also function as mediator in the case), and prior to the prior breakout session, in open court, berated the Plaintiff for not being there in person, despite Plaintiff's counsel having taken responsibility.

ii It is undeniable that this case has been pending a long time (filed December 26, 2019). That is not, however, due to Plaintiff's actions (whether her actions *pro-se* or her prior attorneys' actions) but rather largely due to Defendants': As this Honorable Court is aware, Defendants chose to take a position early on this case (a position which was ultimately found to be meritless, in this case and in others) that, due to the Non-Disclosure Agreement ("NDA") that Plaintiff had signed when employed by Defendant Campaign in 2016, Plaintiff was precluded from pursuing this action in court. Ultimately, Defendant Campaign would lose this argument in arbitration (and, indeed, the Trump Campaign subsequently admitted the NDA was unenforceable, submitting a sworn declaration in S.D.N.Y. that it would never again seek to enforce the NDA, in the summer of 2022. *See* Case 20-cv-04737) **but not before it caused <u>two years</u> of this case to be lost with unnecessary delays and rabbit holes that led nowhere.**

In fact, due to these dilatory practices of Defendants, **it was not until September of 2022 that discovery began (nearly three years after the case was filed)**, with both sides submitting their initial requests for production in September 2022. Both sides provided Responses (to the document requests and interrogatories served) in November 2022, with the Defendant Campaign objecting to most document requests and, even what was provided (the day before Thanksgiving 2022), was merely a 2000-page 'document dump' with no labeling by category nor identifying markers whatsoever. Given the upcoming holidays, and given that documents must first be reviewed prior to (a) ascertaining the third parties that must be deposed; and (b) even deposing the parties, *the case entered 2023 without either side having yet taken a party's deposition.*

At the time Magistrate Judge Parker held a settlement conference in January 2023 (three years into the case), only an initial round of document production and interrogatories had been exchanged. Thus, **the original January 2023 discovery deadline was not realistic, for <u>either</u> side**. At said conference, Magistrate Judge

Parker was nevertheless annoyed and essentially prevented Plaintiff from being able to utilize an expert (e.g., damages expert), **stating that all expert discovery (including expert reports and depositions) would have to be completed by early February** (i.e., less than a month's time to ascertain, retain/hire, debrief, permit expert to conduct research and interviews, submit expert report, and produce for deposition said expert/s). Given the tension caused by the essential denial of the ability to utilize a damages expert/s, Plaintiff's counsel filed to withdraw, stating they felt Plaintiff preferred a change of counsel. Although Plaintiff opposed the withdrawal, feeling such would be prejudicial this late in the case and mid-discovery, Magistrate Judge Parker allowed said-counsel's withdrawal (*See* March 10, 2023 Order, ECF 140) and stayed the case until May 31, 2023, giving Plaintiff about two-to-three months to find new counsel, which is no small feat in a case wherein Plaintiff is a contingency-fee client and against the known-to-be-litigious Trump Campaign.

In May 2023, Plaintiff found an attorney out of Jacksonville (with, she would later learn, five Bar complaints in the past 18 months), John Phillips, who entered the case on May 15, 2023. The Court issued a new deadline for both sides to take the parties' depositions by June 30, 2023, and for all other discovery of September 15, 2023.  (*See* May 17, 2023 Order, ECF 145) (It merits highlighting that this new deadline was also for *Defendants'* benefit, and necessary for Defendants, because Defendants themselves had not yet taken Plaintiff's deposition!) In June 2023, the case made progress, with Defendants taking Plaintiff's deposition, as well Plaintiff taking one of the Defendants' depositions (Sean Spicer's). Plaintiff's then-counsel also successfully scheduled two Defendants' depositions (Reince Priebus and Steve Bannon) for early August 2023 and effectuated service of subpoenas on various third-party deponents, e.g., Jason Miller, also for August. However, in part due to Plaintiff's criticism (on her personal social media page) of Judge Aileen Cannon (who presides over the top-secret documents / Jack Smith case, and who has made numerous rulings that many in the legal community have openly described as questionable and possibly biased towards Mr. Trump), Plaintiff's then-counsel moved to withdraw on August 9, 2023 and stopped doing any work whatsoever, because Plaintiff's then-counsel has a case pending before Judge Cannon. Plaintiff thus found herself in an unfortunate position, through no fault of her own. Plaintiff expressed concern that, again, withdrawal would prejudice her case. Magistrate Judge Parker's order on August 23, 2023 (EFC 157), granting the withdrawal, negated this, writing, "This action is still in the discovery stage and no trial has been scheduled. Accordingly, although the withdrawal has caused delays in this case, including **the need to reschedule depositions, this impact is not so significant as to warrant denial of the motion**." This quote is particularly relevant now. That was August 23, 2023.

Judge Parker denied Plaintiff's request for a Stay, noting, that, because Plaintiff practiced law at a large firm (only for a few years, mostly in document review), she is experienced in litigation (Plaintiff is not) and thus "There is no need to stay the case to afford Plaintiff time to find new counsel, and the case can proceed immediately with only a short discovery extension." The order added, "The Court does not find it necessary or useful to stay this case to allow Plaintiff time to find new counsel" but left discovery open until November 14, 2023.

Plaintiff valiantly attempted to proceed *pro-se*, only to be dismissed because of her *pro-se* status (e.g., Stanley Woodward, a Trump-PAC funded attorney who represents various Trump World figures, and who claimed to represent a third-party deponent here, Brad Parscale, essentially told the Plaintiff on September 11, 2023 to let him know once she was represented by counsel). It is hard enough for Plaintiff to be taken seriously as a woman, as a single mother, as non-litigator, and as a Latina – but certainly more so when all of that is combined with the dreaded "*pro-se* status."  This, plus the complexity of the case, left Plaintiff with no option but to continue searching for representation.

An attorney (with whom Plaintiff was connected through a mutual friend), located in Kansas City, MO, entered the case on October 27, 2023. Mr. Odle appeared at the November 2, 2023 status conference. Mr. Odle explained that he naturally could not complete discovery within two weeks (November 14, 2023) and requested until March 2024. The Court's resulting November 2, 2023 Order extended the deadline only until December 29, 2023 for Mr. Priebus's (a defendant's) deposition and a 30b6 deposition, which, given the Thanksgiving, Hanukkah, Christmas holidays in that period, was essentially no extension at all.  (ECF 164) The Court stated it would continue to consider and take under advisement Mr. Odle's request that discovery be extended through March (which would permit him about four months).

Notably, Judge Parker's November 2, 2023 Order also stated that **Mr. Odle, a seasoned litigator, would need to seek permission from the Court, in a letter to be submitted no later than November 14, 2023, as**

**to the third-party depositions he wished to take and explaining why each was relevant**.[ii] (ECF 164) This, even though parties are granted 10 depositions, as a matter of course, per the Federal Rules of Civil Procedure, and only need seek leave from the Court for additional depositions *beyond* those 10. Mr. Odle felt this was wildly improper. Mr. Odle then moved to withdraw on December 1st and ceased all work on the case, in part due to this (and in part due to a wholly separate action Plaintiff filed with separate counsel, which he, improperly, felt required his explicit permission and involvement). The Plaintiff appeared at a December in-camera hearing with Judge Parker. Judge Parker entered an Order on December 19, 2023 (ECF 164), granting Mr. Olde's withdrawal. Over Plaintiff's objections, again (for the third time), Judge Parker again permitted the withdrawal and again held that this would not prejudice the Plaintiff ("Additionally, although the withdrawal has caused delays in this case, the impact is not so significant as to warrant denial of the motion.") That would only be true for an attorney wealthy enough to immediately hire new counsel to be paid on an ongoing basis (versus contingency) and, even then, most attorneys do not want to enter a case mid-discovery.

The Order did extend discovery for the benefit of both parties, to February 15, 2024 (it include a "motion to compel" that she anticipated Defendants would file). The Order directed Mr. Odle to provide the Order to Plaintiff but Mr. Odle failed to do so. Inquiries to Mr. Olde's office as to the status of any order went ignored. In January 2024, the Plaintiff responsibly contacted chambers to inquire as to the status of any decision on Mr. Olde's order. Due to this series of events, Plaintiff was not informed, until *late January 2024*, that Mr. Odle's withdrawal had been granted. (*See* January 12, 2024 Order.)

At a January 30, 2024 Case Management Conference, discovery was discussed with a resulting Order issued the following day. In that January 31, 2024 Order (ECF 187), discovery was extended only until ***April 15, 2024***. That is the date that remains.

Plaintiff has ably moved the case forward, including dutifully completing Defendant Priebus's deposition before the February 15th deadline for such (on February 8, 2023), a third-party deponent on March 13th, and serving various subpoenas.