UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

ARLENE DELGADO*,*

                            Plaintiff,

              -against-

DONALD J. TRUMP FOR PRESIDENT, INC.,
TRUMP FOR AMERICA, INC., SEAN SPICER,
individually, REINCE PRIEBUS, individually,
STEPHEN BANNON, individually,

                          Defendants.
------------------------------------------------------------X

**19-CV-11764 (AT) (KHP)**

**<u>ORDER</u>**

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE:**

Plaintiff Arlene Delgado has moved to reopen discovery for purposes of deposing

Michael Glassner concerning discrimination complaints filed against Donald J. Trump For

President, Inc. (the "Campaign") and the decision to initiate an arbitration proceeding against

her. (ECF Nos. 361, 365, 367 and 380.)  Plaintiff asserts that she was unable to timely subpoena

and depose Glassner because the Clerk of Court's office delayed issuing Glassner's subpoena.

Plaintiff also states that Jenna Ellis, a former lawyer for the Campaign, disclosed to Plaintiff that

the Campaign had settled several claims of gender-based discrimination against an individual

identified as "Boris" and advised Plaintiff to subpoena Glassner.  Finally, Plaintiff references

transcripts from a deposition in an unrelated case in which Glassner testified that he made the

decision to sue Plaintiff for violating a nondisclosure agreement (the "NDA") with the Campaign.

Defendants oppose Plaintiff's motion on the grounds that Plaintiff failed to exercise diligence

during discovery when she could have deposed Glassner and that reopening discovery now

would be prejudicial because the parties have commenced summary judgment briefing. (ECF

Nos. 374, 378.)  Defendants also state that Plaintiff already received discovery from Glassner

regarding complaints because they searched Glassner's ESI pursuant to the Court's May 14, 2024 Order and produced responsive documents.

"A district court has wide latitude to determine the scope of discovery." *In re Agent Orange Prod. Liability Litig.*, 517 F.3d 76, 103 (2d Cir. 2008). District courts may limit discovery if, among other reasons, they determine certain discovery sought is unreasonably cumulative or duplicative, if the party seeking discovery already had ample opportunity to obtain the information sought, if the discovery is disproportional to the case, or if the burden or expense of the discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1-2). Importantly, under Rule 16(b), district courts are required to enter scheduling orders "that limit the parties' time to complete discovery." *McKay v. Triborough Bridge & Tunnel Auth.*, No. 05 Civ. 8936(RJS), 2007 WL 3275918, at *1 (S.D.N.Y. Nov. 5, 2007). Reopening discovery after the discovery period has closed requires a showing of good cause. *Eng–Hatcher v. Sprint Nextel Corp.*, No. 07 Civ. 7350 (BSJ)(KNF), 2008 WL 4104015, at *1 (S.D.N.Y. Aug. 28, 2008).

Here, Plaintiff has not shown good cause to reopen discovery for purposes of deposing Glassner. The Court's April 3, 2024 Order extending discovery instructed Plaintiff to alert the Court by April 10, 2024 if she had not received the signed subpoenas from the Clerk's office. (ECF No. 231.) Despite this explicit instruction, Plaintiff waited until April 22, 2024 to file the Glassner subpoena request. (ECF No. 260.) Such conduct does not demonstrate diligence. Further, Plaintiff has already been granted extensions of discovery for purposes of exploring complaints of discrimination and harassment and has received the results of a search of Glassner's ESI. This Court has previously denied Plaintiff's request to obtain information about settlements of suits. (ECF No. 371.) The information Ellis provided about settlements does not

justify revisiting this Court's prior orders or suggest that the search of Glassner's ESI was incomplete.  The other information Glassner has knowledge about could have been sought earlier in discovery and that Plaintiff now knows Glassner made the decision to initiate the arbitration against her does not justify reopening discovery, particularly when she took a Rule 30(b)(6) deposition during which she could have explored information about commencement of the arbitration. Finally, the deadline for the parties to file motions for summary judgment is fast approaching.  Reopening discovery would risk further delaying motion practice and prejudice the Defendants.  For all these reasons, Plaintiff's motion is DENIED.  This Order is without prejudice to Plaintiff subpoenaing trial witnesses of her choice, including Glassner or others with information that reveals admissions of a party.

**The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 361, 365, and 367.**

**SO ORDERED.**

New York, New York
July 10, 2024

_____
Katharine H. Parker
U.S. Magistrate Judge

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

ARLENE J. DELGADO,
Plaintiff,

-vs-                                                          No. 19-cv-11764 (AT) (KHP)

DONALD J. TRUMP FOR PRESIDENT, INC.,
TRUMP FOR AMERICA, INC., SEAN SPICER,
individually, REINCE PRIEBUS, individually,
and STEPHEN BANNON, individually,

Defendants.

## MOTION FOR ADDITIONAL LIMITED DISCOVERY GIVEN CRITICAL NEW INFORMATION: THE DEPOSITION OF MICHAEL GLASSNER

Plaintiff, Arlene J. Delgado, hereby files this Motion for Additional Limited Discovery Given Critical New Information: The Deposition of Michael Glassner, based on new information, under F.R.C.P. Rule 16 and all applicable law, as follows:

Plaintiff styles this as a motion for additional discovery as it is not apparent when discovery closes, or if it has closed, given that, e.g., answers to requests for admission, and more, were still being filed by Defendants, just a few days ago and may result in additional production; motions to compel remain outstanding and may result in additional production; privilege logs are still under review (E. Trump) and may result in additional production; the D.C. district judge has yet to rule on the deposition of Mr. McGahn, which would also result in additional production; requests to compel answers to deposition questions are still under review (B. Parscale), which may result in additional information; and Defendants have not yet produced relevant documents that were owed in production and have been explicitly requested and re-requested. To the extent deposition discovery has closed, at least, this motion can be treated as a motion to re-open

deposition discovery. *__New__ information has arisen, on __two__ separate fronts, both of which provide good cause for Mr. Michael Glassner's deposition.*

SUMMARY GLASSNER-DEPOSITION-REQUEST HISTORY

This request is particularly worthy, given that Plaintiff had originally requested Mr. Glassner's deposition – i.e., this request is not out of the blue. Plaintiff provides a brief reminder regarding the history of Mr. Glassner's deposition. Plaintiff indeed requested[1] Mr. Glassner's deposition at the time of time set by the Court for the third-party deposition requests. At the time, Plaintiff noted Mr. Glassner was relevant, in part, to the breach of contract issue. (*See* Plaintiff's February 27, 2024 Request for depositions)

Mr. Glassner was, interestingly enough, selected (one of only four individuals) by the Court as someone whose deposition Plaintiff was 'permitted' to take (*See* March 1, 2024 Order[2]). At long last, on March 1, 2024, Plaintiff at least now had the opportunity to depose, she thought, these four selected individuals (though, that was seemingly incorrect*: It would later emerge that the Court had *severely* limited each deposition to a topic listed by the Court itself, in its March 1,

---

[1] Plaintiff had been prevented from simply subpoenaing the deposition/s and, instead, per the Court's directive in January 2024, Plaintiff would first have to seek permission from the Court, in a letter due February 28th, as to any depositions she wished to take, and the Court would thereupon select which depositions would be permitted. This resulted in Plaintiff losing out on **two months** during which she could have taken depositions and conducted related, resulting discovery.

[2] "**Michael Glassner**, who was identified as counsel for the Campaign during a mediation between the Campaign and Plaintiff to which the breach of contract claim pertains, and is likely to have information relevant to the breach of contract claim."

2024 Order and that, as such, the only topic about which Plaintiff could ask Mr. Glassner would be about the breach of contract issue).

This time, however, the deposition was delayed not due to the deposition-request-process inflicted upon Plaintiff by the Court but by the *Clerk's* office, which inexplicably opted to *mail the issued subpoenas to the Plaintiff* (via U.S. mail) and refused to upload the signed subpoenas to the docket (or otherwise provide them electronically to Plaintiff). (***Such is just one of many hurdles, obstacles, and severe disadvantages faced by pro-se litigants –obstacles to which the judicial system turns a willing blind eye, in order to continue society's necessary fallacy that the legal system is open to all, regardless of whether one can afford a $500/hour attorney.***) The subpoenas did not arrive until March 30, 2024. The Plaintiff diligently alerted the Court, even prior to March 30th (she alerted the Court as soon as it became clear the subpoenas had not arrived in due course), and the Court extended the deadline for those depositions from April 15th to May 7th. The subpoenas now naturally needed to be re-drafted and re-submitted for the Clerk's signature, with *new* deposition dates listed, as the dates originally listed had come and gone. Yet, once *again*, the Clerk caused delay: Though the Clerk did upload the re-issued subpoenas to the docket, this time the Clerk inexplicably delayed a full week in doing so (finally doing so only after repeated calls from Plaintiff), when this customarily is done in one day. The subpoenas were not signed/issued until the afternoon of April 29, 2024 (with the deadline a mere week away). While Plaintiff moved swiftly to try to serve the subpoenas (and has documentation of swift outreach to process servers), to do so would have been pointless, unethical, and in bad faith, *as it would not provide the deponents reasonable notice* (e.g., the Glassner deposition date, listed on the issued subpoena, was Monday, May 6th but, with the subpoena not uploaded to the docket until Monday afternoon, April 29th, the earliest Glassner would be served, even assuming

Plaintiff had the correct address, was likely Wednesday, May 1st, providing Glassner only two business days to prepare, at most, which is not proper.) Yes, Plaintiff could have 'served' the subpoena and told the Court, 'At least I served him before May 7th!" but Plaintiff believed (rightly so) it would be improper to serve someone a subpoena, listing a date certain, despite knowing that date is not the date on which the deposition will take place. Additionally, confusion and chaos was caused by the Defendants' longtime counsel, Mr. Blumetti, filing a sudden motion to withdraw on Friday afternoon, April 26th, and a complete lack of clarity as to how/whether the depositions would move forward, given the sudden dramatic withdrawal.

Plaintiff explained all of this to the Court, but the Court nonetheless to extend the deadlines for the depositions (including Glassner's), simply because the depositions had not been taken by May 7th, as commanded, *even though the delay was first caused by the Court's unorthodox requirement that Plaintiff seek 'permission', and then twice by negligence by the Clerk*. (*See* May 14th Order, ECF 312)

**This Court's May 14, 2024 Order did indicate, however, that, if good cause were shown, the depositions could proceed.** (e.g., "At this point, Plaintiff fails to show good cause for further extending discovery…." May 14th Order, p. 9, ECF 312)

NEW INFORMATION, PREVIOUSLY UNKNOWN, NOW MAKES THE DEPOSITION NECESSARY AND GOOD CAUSE EXISTS TO PERMIT SAID DISCOVERY

On June 13, 2024, a senior member of the 2020 Campaign disclosed to Plaintiff that, in late 2020/early 2021, Michael Glassner (then the C.O.O. of the Campaign) informed this senior advisor that **the Campaign had "settled several" gender-related complaints, some of which**

*involved a particular male member of the Campaign*.[3] This is, at a minimum, highly relevant as to whether Plaintiff also experienced improper gender-related discrimination and is relevant to the claim of hostile work environment. (This Court has already held that complaints of gender-related matters are relevant to this case, as per existing precedent in this circuit.)

***There is clearly no way the Plaintiff could have, or would have, known this information sooner. And, there is no doubt that the information is relevant and is information that this Court already held is relevant*** *(See April 24th Order, ECF 265).*

[It stands to reason that individuals from the Campaign did not speak up sooner, trusting instead that this information would be provided to the Plaintiff (the Court's April 24th Order, requiring the Campaign to produce all complaints of gender discrimination, pregnancy discrimination, and/or sexual harassment, from both the 2016 and 2020 cycle, was widely publicized, including even in the *New York Times*). But, when it became clear that the Campaign did not, in fact, disclose this information (relying instead on the May 14th Order's *sua sponte* modification of the April 24th Order), some, to their credit, were motivated to speak up.]

Plaintiff promptly contacted opposing counsel, Mr. Gavenman, to confer and give the Defendant-Campaign a chance to amend their prior productions and misrepresentations. Instead, unfortunately, Mr. Gavenman responded with attacks, speculating that Plaintiff was inventing such. (This was particularly disappointing, as Plaintiff has been patient, polite, and responsive in all her email communications with Mr. Gavenman, since he entered the case.) Plaintiff will not

---

[3] The Plaintiff herein refrains from stating the exact type of complaint herein, or the name of the male advisor who was the subject of some of the complaints, purely because the Plaintiff is, to her credit, willing to provide this information in camera or under seal.

be intimidated. Moreover, Plaintiff is ready, willing, and able to provide the written correspondence from the advisor. In fact, Plaintiff *insists* on such, given Mr. Gavenman's questioning her ethics, integrity, and honesty, by denying that the information was indeed provided to Plaintiff.

## *ADDITIONAL* NEW INFORMATION THAT MAKES THE DEPOSITION NECESSARY

As this Court is aware, Hon. Analisa Torres granted Plaintiff leave to amend and add a <u>retaliation</u> claim to her suit. In a deposition that Glassner gave in another case (also an employment discrimination case against the Trump Campaign, pending in state court), the transcript of which was docketed last month, **Glassner states that he is the person who made the decision to retaliate against Plaintiff herein** (in July 2017, suing her for $1.5 million, claiming her December 2016 tweets and her indication that she planned to file suit were also a violation of her NDA).[4] *See* **Attachment A**. Mr. Glassner must, as such, be deposed. There can hardly be an example of greater 'good cause' to permit a key deposition.

## GOOD CAUSE EXISTS, PARTICULARLY GIVEN NEW INFORMATION

The caselaw on this is clear. It supports permitting the deposition. According to Fed. R. Civ. P. 16(b)(4) (and per this Court's own May 14th Order). "The 'good cause' inquiry turns on the diligence of the party." <u>Saray Dokum ve Madeni Aksam Sanayi Turizm A.S. v. MTS Logistics, Inc.</u>, 335 F.R.D. 50, 51 (S.D.N.Y. 2020). "To satisfy the good cause standard 'the party must

---

[4] Mr. Glassner worked for the 2016 Campaign since 2015, and ultimately became its Deputy Campaign Manager. In 2017 and 2018, he served as its Executive Director and then became Chief Operating Officer in 2019.

show that, despite its having exercised diligence, the applicable deadline could not have been reasonably met." Id. (internal quotations omitted).

Here, that standard is clearly met as the Plaintiff did not have, and could not possibly have, this (new) information any earlier. "A party seeking to reopen discovery bears the burden of establishing good cause and discovery should not be extended **when there was ample opportunity to pursue the evidence during discovery**." Volpe v. Ryder, No. 19-CV-2236, 2022 WL 16553231, at *2 (E.D.N.Y. Oct. 31, 2022) Clearly there was not "ample" opportunity -- or any -- to pursue the evidence during discovery, when **this is all new information**.

**As for earlier diligence, the Plaintiff certainly demonstrated such overall**: Plaintiff (a) requested this deposition (ironically, even before she knew of Mr. Glassner's unique significance), in her February 27, 2024 request; (b) Plaintiff could not move to take the deposition any sooner than she did, because this Court prevented her/tied her hands from issuing deposition-subpoenas, instead making her lose two months and go through hoops, of 'requesting permission', all of which would be granted/denied on March 1st, *a mere six weeks before discovery was due to close*; (c) when the Clerk caused delay by negligently mailing the subpoenas, Plaintiff moved promptly to alert the Court; (d) Plaintiff re-issued the new subpoenas but, again, the Clerk lost a critical week of time which, given the tight turnaround, rendered the subpoenas impossible to issue in good faith, a delay compounded by confusion caused by Defendants' counsel moving to withdraw the business day prior.

Other than diligence, **other factors also support the deposition**. In determining whether to reopen discovery, the controlling caselaw considers: (1) whether trial is imminent, (2) whether the request is opposed, (3) whether the non-moving party would be prejudiced, (4) whether the

moving party was diligent in obtaining discovery within the guidelines established by the court, (5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and (6) the likelihood that the discovery will lead to relevant evidence. *See e.g.,* <u>Fed. Ins. Co. v. Mertz</u>, 12-cv-1597-NSR-JCM (S.D.N.Y. Sep. 29, 2015) Applying these factors herein, it is clear the request is merited:

(1) Trial has not even been set, much less imminent (This factor weighs in favor of granting the request.);

(2) The request is surely opposed but that is because Defendants (naturally) do not want Plaintiff to prove her case and they know Glassner is relevant to such. Defendants have stressed that 'discovery must close' and that they are already preparing their summary judgment papers. But that only ***highlights how this Court's actions have unfairly given an advantage to Defendants*** – here is Plaintiff, still awaiting answers to requests for admission and rulings on such; rulings on motions to compel; rulings on privilege logs, etc., while the Defendants have already started running the race. Moreover, as noted below, in the <u>Jacobs</u> case, and others, courts have granted re-opening of discovery, including for multiple depositions, even *months after* Defendants have filed their summary judgment motions! (This factor is thus, at worst, neutral.);

(3) The non-movant party (Defendants) would not be prejudiced by a simple deposition being taken in the next month (it is worth noting, the Defendants caused a nearly two-year delay in this case, by pursuing a frivolous claim that the NDA, which it later had to abandon altogether, prevented the Mother from filing suit). "**The deposition of predictable fact witnesses is not so prejudicial [to the non-movant party] [so as] to bar the reopening of discovery**." <u>Jacobs v. NYC Dep't of Educ.</u>, 11-CV-5058, at 8 (MKB) (RML) (E.D.N.Y. Nov. 24, 2015), citing <u>Scott</u>

v. City of New York Dep't of Corr., No. 04-CV-9638, 2007 WL 4178405, at *8 (S.D.N.Y. Nov. 26, 2007) (**permitting after the close of discovery seven previously noticed depositions, and explaining it is a small burden to allow these depositions to take place).** (This factor weighs in favor of granting the request.)

(4) Plaintiff clearly has been diligent: e.g., Despite being a *pro-se* litigant, she has moved the case forward; conducted depositions professionally and "efficiently" (as this Court itself has stated), each only lasting about three hours. (This factor weighs in favor of granting the request.);

(5) It was foreseeable to the Court that there would be additional need for discovery, given the Court's 'you must first request permission'; the negligence by the Clerk; and the tight turnaround time. (This factor weighs in favor of granting the request.)

(6) It is not only likely, but apparent, that the additional discovery will lead to admissible evidence, *given what Mr. Glassner already admitted in a separate deposition, under oath*, regarding retaliation against Plaintiff, and given his knowledge of gender-related complaints. (This factor weighs in favor of granting the request.)

<u>IT IS INCORRECT THAT THE PLAINTIFF HAS RECEIVED MULTIPLE EXTENSIONS</u>

It is worth noting that the Court's recent representations, in various orders, that the Plaintiff has received multiple discovery extensions is, respectfully, incorrect. All re-set discovery dates have been related to withdrawal of counsel -- and one was related to negligence on the part of the Clerk. Consider:

- Following Plaintiff's (longtime) counsel's January 31, 2023 motion to withdraw, the Court granted the longtime counsel's motion (the attorney alleged no wrongdoing from the client but believed that the client had terminated his services and preferred to have

other representation). On March 10, 2023, the Court granted the withdrawal and stayed the case until May 31, 2023, "to afford Plaintiff the opportunity to obtain new counsel and get up to speed on the case." Such is standard, and certainly given that Plaintiff had had the same attorney since the commencement of the case, in December 2019, for over three years. To be sure, this was not an extension on discovery but rather a Stay.

- Plaintiff's replacement counsel, Mr. Phillips out of Jacksonville, FL, entered the case on May 15, 2023 (ECF 142). The Court noted that "discovery deadlines will be discussed" at the upcoming May 17, 2023 Conference (ECF 143). At that conference, the discovery deadlines were set as June 30th for party depositions and September 15, 2023 for non-party depositions. **To be sure, to the extent this was an "extension" of discovery, it was not an extension granted to Plaintiff, given that Defendants *also* needed an extension, as Defendants had not yet taken Plaintiff's deposition.** (In June 2023, Defendants took Plaintiff's deposition, and Plaintiff's attorney took the deposition of one of the defendants, Sean Spicer. The other Defendant's deposition, Reince Priebus's, was postponed due to a bee-sting illness suffered by Plaintiff's counsel, to take place in early August.)

- Mr. Phillips (whom Plaintiff came to learn had five recent Bar complaints against him in the past 18 months alone, in Florida) noticed and served several third-party deposition-subpoenas for August but moved to withdraw on August 9, 2023 (ECF 153), mere days before these depositions, claiming Plaintiff had terminated him (and also irate that Plaintiff had, on her personal social media page, expressed criticism of Judge Aileen Cannon ,presiding over Donald Trump/Jack Smith's matter in Florida, in front of whom Mr. Phillips seemingly had another case pending). Plaintiff inquired as to the discovery deadlines and the Court indicated that would be addressed later. The Court essentially allowed the attorney to cease all work, despite the pressing deadlines, and in the midst of noticed depositions, including Mr. Priebus's, which he simply did not take. On August 23, 2023, the Court granted the withdrawal and set a Case Management Conference for the end of October, later rescheduled for November 2nd (ECF 157, 158)

- On October 27, 2023, Plaintiff's replacement counsel, Mr. Odle out of Kansas City, entered the case and, on October 30th, filed a motion regarding necessary discovery extensions. (ECF 160-162)

- At the November 2, 2023 Case Management Conference, the Court agreed to extend the discovery deadline for party depositions (Reince Priebus) and the 30b6 deposition until December 29th . As for third party depositions, Mr. Odle would need to file a letter advising the Court what depositions he wished to take, and outlining why these depositions were relevant. Mr. Odle generally refused to submit said letter, finding it improper. (ECF 164)

- Mr. Odle moved to withdraw on December 1, 2023 (ECF 168). On December 19, 2023, the Court granted the withdrawal but, as the attorney did not properly provide Plaintiff with the order, Plaintiff did not learn of the withdrawal until mid-January 2024 and thus entered her pro-se appearance on January 21, 2024. (ECF 179)

- A Case Management Conference was held on January 31, 2024, at which the deadline for discovery was reset for April 15, 2024. (ECF 187)

As such, it is clear the Plaintiff was not granted a typical extension request, much less several. Rather, the first extension one can say she received was that which reset the September 15, 2023 deadline, due to Mr. Phillips withdrawing in the midst of depositions. These were not simply "I need more time", or "I have encountered difficulty on a certain matter," or "I am having surgery", etc., extensions. Each one was related to a withdrawal of counsel (that the Court chose to grant) or an error caused by the Clerk. ***By way of contrast, an example of a plaintiff actually receiving multiple extension requests in an employment discrimination case… is found in a fellow N.Y. district court case, in which nine motions for extension were granted, extending discovery for two years, and only the tenth was denied***. Moreover, as noted below, the extension-requests in that case were all due to the Plaintiff's excuses for her own conduct or simply needing more time:

> On February 12, 2021, this case was removed from state court. See DE 1. On May 26, 2021, Magistrate Judge Anne Y. Shields (to whom this case was previously assigned) ordered that **fact discovery be completed by July 30, 2021**, and expert discovery be completed by August 31, 2021. See May 26, 2021 Order. **In the years that followed**, first Judge Shields and then the undersigned (to whom this was case was reassigned on June 13, 2022) **granted nine motions to extend those deadlines**. See July 26, 2021 Order; September 30, 2021 Order; December 8, 2021 Order; February 9, 2022 Order; June 8, 2022 Order; October 4, 2022 Order; February 21, 2023 Order; June 8, 2023 Order; October 2, 2023 Order. Many of these extensions were necessary **due to Plaintiff's repeated failure to meet court-ordered deadlines**. See, e.g., DE 20 at 2 (**extension necessary because Plaintiff failed to appear for her independent medical examination**); DE 25 (**discussion of Plaintiff's failure to produce discovery**); DE 29 (same); DE 35 at 4 (**extension necessary because Plaintiff was unable to appear for her independent medical examination "due to calendar conflict involving plaintiff's calendar"**). In fact, **Plaintiff's inability to comply with her discovery obligations and court-ordered deadlines was the subject of discussion at many of the status conferences with the undersigned since June 13, 2022.** See Fed. R. Civ. P. 1 (addressing the obligation of "the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding")….. During a status conference **on June 8, 2023** (that Plaintiff's counsel attended), the Court was explicit that no further extensions would be granted "unless the request (1) is filed 7 days before the relevant deadline(s), and (2) is supported by a sworn declaration

providing good cause for the requested extension." DE 33. On December 6, 2023, the Court conducted a status conference during which a new attorney appeared…. During the December 6, 2023 conference, it was clear to the Court that Plaintiff's counsel was unprepared and had no knowledge about the Court's prior orders and the lengthy history of delays, extensions, and missed deadlines. As a result, the Court denied Plaintiff's oral request to extend the schedule for a tenth time…Plaintiff now seeks to reopen fact and expert discovery, asks the Court to "accept Plaintiff's mea culpa and grant this final extension," and proposes several new extended deadlines, including January 22, 2024 to conduct the deposition of a representative of Defendants, April 11, 2024 to complete expert discovery, and May 13, 2024 to commence dispositive motion practice. DE 40 at 2. Plaintiff claims that there is "good cause" to grant this relief, citing, for example, (1) Plaintiff's failure to meet deadlines since the June 8, 2023 status conference was the result of his law firm's administrative error and "none of the dates were inputted into the system" (DE 40-1 at 2); (2) Plaintiff's requested discovery is "absolutely no surprise for the defendants" (id. at 3); (3) Plaintiff should not be "punished for [her attorney's] mistake" (id. at 2); and (4) Plaintiff has acceded to the Defendants' prior requests for extensions over time (id. at 5). Defendants oppose Plaintiff's motion, setting forth a detailed chronology of Plaintiff's failure to comply with court orders in this case, the lack of good cause to warrant any further extensions, and the prejudice to Defendants if the Court were to reopen fact and expert discovery.

See CUTRONE v. BJ WHOLESALE CLUB INC 2:21-CV-00787 (OEM) (LGD) (E.D.N.Y., December 19, 2023)

Plaintiff has not received multiple extension requests, much less to any degree that is unorthodox in the New York area federal district courts or in the purview of the 2nd Circuit. With respect, this Court has not extended to the Plaintiff the solicitude that some other *pro-se* plaintiffs are extended, by other courts/judges. Plaintiff has not received – nor sought -- typical extension-requests, e.g., due to her own inability or due to her own failure to move discovery forward.

***Plaintiff does not have a history of requesting and receiving general extensions, and, as such, this should be granted.***

FEDERAL COURTS, PARTICULARLY THOSE IN THE NEW YORK AREA, OFTEN FAVOR RE-OPENING OR EXTENDING DISCOVERY IN EMPLOYMENT DISCRIMINATION CASES

Federal courts, particularly those in New York districts, often favor re-opening or extending discovery in employment discrimination cases. A perfect example is that of <u>Jacobs v. NYC Dep't of Educ.</u>, 11-CV-5058 (E.D.N.Y. Nov. 24, 2015). That case involved the plaintiff, Pamela Jacobs, suing for employment discrimination and retaliation, much as in this case. From the commencement of the action through the close of discovery in January 2014, Ms. Jacobs was represented by counsel. Five weeks after the close of discovery (early March 2014), her counsel moved to withdraw, which was granted a few weeks later (March 31, 2014). For the next five-to-six months (until September 2014), Ms. Jacobs was *pro-se*. She then had (appointed) counsel for a few months, for purposes of settlement negotiations, who also then moved to withdraw – a withdrawal that was granted in early January 2015. Ms. Jacobs was then *pro-se* again. On April 30, 2015, Defendants filed their motion for a summary judgment. ***On July 6, 2015, without having filed any response, Ms. Jacobs, who had obtained new counsel, requested that the Court re-open discovery so that she could depose four witnesses.*** Defendants opposed such, arguing no good cause existed "because she knew the identities of at least two of the individuals she sought to depose since the commencement of discovery, discovery had been concluded over a year and five months prior, Plaintiff should be bound by the discovery conduct of her retained counsel, and the pending summary judgment motion was proper and should not be disturbed." The magistrate judge, Judge Levy, granted Ms. Jacobs's request. The Defendants objected with a Rule 72 filing, to the main judge in the case, Judge Brodie. Because Judge Levy did not explain his rationale in his order, Judge Brodie reviewed *de novo*. Even still, ***Judge Brodie made the same finding, granting Ms. Jacobs the right to re-open discovery, even though discovery had closed over a year earlier and even though Defendants' summary judgment motion had been filed months earlier!*** Moreover, even though the deposition-request was not based on new

information, as this motion's request is, Judge Brodie nonetheless still found there was good cause. Judge Brodie also noted that, although Plaintiff had waited one year and five months since the close of discovery to request these depositions, she had been *pro-se* for much of that time, a factor the Court should consider. She further found that, while litigants are *generally* bound by the poor decisions of their prior counsel (Ms. Jacobs' original counsel had failed to seek these depositions), such is not a bright-line rule or dispositive: "While the negligence of [a] former attorney may not alone be sufficient to demonstrate good cause, the Second Circuit has not articulated that such facts diminish the Court's discretion to excuse a failure to conduct depositions or to find that the presence of other evidence nevertheless satisfies the movant's burden to demonstrate good cause to reopen discovery." Thus, while noting that one or two factors weighed against re-opening discovery, Judge Brodie made the same finding as Judge Levy and re-opened it.

The Plaintiff herein does not ask for anything as ambitious as that sought (and granted) in the Jacobs case. ***She merely submits to this Court that she has undisputed, new information – on two separate grounds (complaints by similarly situated individuals, and retaliation against her) – both of which require the deposition of Mr. Glassner. (While this Court has stated that Plaintiff is not entitled to know how the complaints were resolved[5] – i.e., the dollar figure paid***

---

[5] This Court held such, in blocking Plaintiff from ascertaining whether the $4.1 million in payments to Kasowitz Benson Torres, in a mere 58 days, immediately following the November 2020 election, were for settlement payments, stating Plaintiff does not have a right to know "how" the complaints were resolved. That may be (Plaintiff disagrees, and such is at odds with precedent) but, nevertheless, that ruling is separate and distinct from the issue here – ascertaining the complaints' existence. Whether Plaintiff is entitled to know "how" they were resolved (i.e., the terms of the settlement or dollar amount) is a separate issue and what the prior order seemed to pre-emptively address. (May 14, 2024 Order, ECF 312, p. 5-6)

*out to the victims -- Plaintiff does, however, have the right to know that the complaints*

<u>*existed*</u>*.)*

Plaintiff respectfully requests the deposition be granted, as good cause is shown.

DATED: June 19, 2024

<u>s/Arlene Delgado</u>
Arlene Delgado
Plaintiff, pro-se

## ATTACHMENT A

True and correct excerpts of p. 75-78 and 28-29 of Mr. Glassner's deposition, in the <u>Jessica Denson v. Donald J. Trump for President, Inc.</u> case, pending in New York state court



16          You were involved in the decision to

17    sue each those individuals under the NDAs; is

18    that right?

19          A.    Yes.

20          Q.    Anybody else involved?

21          A.    Counsel.

22          Q.    Anybody else in the campaign

23    involved?

24          A.    I don't recall.

4      Q.    Okay.  So it's your testimony that

5   you personally and no one else made the

6   decision to sue Miss Denson in arbitration?

7      A.    Correct.

8      Q.    You did not do that in consultation

9   with any attorneys?

10          MR. BLUMETTI:  Objection as to form.

11     A.    I consulted with our counsel.

12     Q.    Which counsel was that?

13     A.    Larry Rosen.

6      A.    Upon being made aware of the -- of

7   her complaint and reading it, I determined that

8   she had breached her NDA.

9      Q.    You determined that?

10     A.    Correct.

11     Q.    Did you determine that in

12   consultation with counsel or did you make your

13   own decision about that?

14     A.    I don't recall, but it was my

15   decision.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

ARLENE J. DELGADO,

            Plaintiff,

v.

DONALD J. TRUMP FOR PRESIDENT, INC.,
*et al*.,

            Defendants.

Case No. 19-cv-11764 (AT) (KHP)

## DEFENDANTS' MEMORANDUM OF LAW IN
## OPPOSITION TO PLAINTIFF'S MOTION TO REOPEN DISCOVERY

Defendants Donald J. Trump for President, Inc. (the "Campaign"), Sean Spicer, and Reince Priebus (collectively, "Defendants") respectfully submit this memorandum of law in opposition to Plaintiff Arlene Delgado's ("Plaintiff" or "Delgado") Motion to Extend Discovery for the ostensible purpose of taking the deposition of Michael Glassner, the Campaign's former Executive Director ("Plaintiff's Motion").  See ECF Nos. 361, 365, 367.

## ARGUMENT

### I.    Legal Standard

As this Court has previously explained, "[a] party seeking to re-open discovery bears the burden of showing good cause, for which the primary consideration is whether there has already been adequate opportunity for discovery."  City of Almaty, Kazakhstan v. Ablyazov, No. 15-cv-05345(AJN)(KHP), 2019 WL 11662228, at *2 (S.D.N.Y. Oct. 24, 2019) (Parker, J.)  The party seeking to reopen discovery must also "show why the court's deadlines could not reasonably have been made despite its diligence."  Castillio v. ELG Parking Inc., No. 21-cv-2550 (AT)(KHP), 2023 WL 9491724, at *1 (S.D.N.Y. Apr. 4, 2023) (Parker, J).

1

Consistent with the "wide latitude" courts have to determine the scope of discovery:

> District courts may limit discovery if, among other reasons, they determine certain discovery sought is unreasonably cumulative or duplicative, if the party seeking discovery already had ample opportunity to obtain the information sought, if the discovery is disproportional to the case, or if the burden or expense of the discovery outweighs its likely benefit.

Williams v. NYC Bd. of Elections, No. 23-cv-5460 (AS)(KHP), 2024 WL 3084993, at *1

(S.D.N.Y. June 20, 2024) (Parker, J).

In the instant case, the record is clear that Plaintiff has not exercised any diligence in seeking to take Mr. Glassner's deposition. To the contrary, as this Court has explained, Plaintiff has been extraordinarily dilatory in seeking to take third party depositions in this case, including that of Mr. Glassner. Plaintiff has certainly failed to demonstrate the requisite "good cause" required to excuse her repeated failure to comply with the Court's discovery deadlines such that discovery should be reopened for a deposition that Plaintiff could have taken at any point since the inception of this case.

## II.   Plaintiff is Not Entitled to Reopen Discovery In this Case.

### A. Plaintiff Has Had Ample Opportunity to Obtain Discovery About Other Complaints of Gender-Based Discrimination, Including by Deposing Mr. Glassner.

As explained above, the single most important factor courts consider in determining whether good cause exists to reopen discovery "is whether there has already been adequate opportunity for discovery." Ablyazov at *2. In the instant case, there is no question that Plaintiff has had more than sufficient time and opportunities to obtain evidence concerning other complaints of gender discrimination, sexual harassment, or pregnancy discrimination (referred to collectively

herein as "Gender-based Discrimination") against the Campaign during the 2016 and 2020 election cycles, which alone warrants denying Plaintiff's Motion in its entirety.

This Court has previously made numerous efforts to allow Plaintiff sufficient time and opportunity to take discovery on other complaints of Gender-based Discrimination against the Campaign during the relevant time period.  Defendants have conducted multiple ESI searches in this case, including using the search terms and custodians requested by Plaintiff herself, and those previously ordered by the Court (which were based on Plaintiff's own statements regarding the individuals who might have received complaints of Gender-based Discrimination (See ECF No. 346 at p. 3)).  Pursuant to these searches, Defendants have located and produced hundreds of pages of relevant documents.  As a result, "at this point, Plaintiff has sufficient information regarding other complaints to prosecute her case and additional searches and additional discovery is not proportional to the needs of the case."  ECF No. 346 at p. 2.  As will be demonstrated below, Plaintiff's speculation that other complaints exist, backed by nothing more than vague and facially incredible claims by an unidentified individual who purportedly worked for the Campaign, does not change the basic fact that Plaintiff has had sufficient opportunity to obtain the discovery about other complaints of Gender-based Discrimination necessary to prosecute her claims.

Similarly, Plaintiff has also had ample opportunity to depose Mr. Glassner.  Plaintiff's Motion attempts to excuse her failure to depose Mr. Glassner by falsely stating that Plaintiff had previously identified Mr. Glassner as a potential deponent "at the time [] set by the Court for third-party depositions."  ECF No. 361 at p. 2.  This is simply not true.  As relevant here, after previously granting Plaintiff multiple discovery extensions – during which time Plaintiff was free to subpoena Mr. Glassner as a witness without any restrictions as to the subject matter of the deposition – the Court had set a discovery cutoff date of November 14, 2023, and further explained, "no further

3

extension requests will be entertained." ECF No. 157. Despite this warning, shortly before the November 14, 2023, discovery deadline, Plaintiff's counsel requested yet another discovery extension, seeking more than three additional months to complete discovery. ECF No. 162. The Court denied this request, but agreed to extend discovery until December 29, 2023, for the purpose of allowing Plaintiff to depose Mr. Priebus and a FRCP 30(b)(6) representative of the Campaign. ECF No. 164. Moreover, despite previously making clear that it would not entertain any additional discovery extensions, the Court nevertheless gave Plaintiff yet another opportunity to depose Mr. Glassner (her second), or any other third party witness she believed to be relevant, merely requiring her to submit a letter by November 14, 2023 identifying any third party depositions she sought, and explaining why these individuals would be relevant to the claims in the case. Id. Incredibly, by Plaintiff's own admission, her attorney "refused to submit said letter," for no other reason than his unilateral (and incorrect) belief that the requirement that Plaintiff identify her potential third-party deponents beforehand was supposedly "improper." ECF No. 361 at p. 10.

After having made the tactical decision to not comply with the Court's discovery order, Plaintiff nevertheless sought to reopen discovery. In granting Plaintiff's motion, on January 31, 2024, the Court stated that Plaintiff was required to seek leave of the Court to obtain any third-party discovery and must demonstrate that any such proposed discovery could be completed by the new April 15, 2024, discovery cutoff. ECF No. 187. It was only on February 27, 2024, nearly one month later, that Plaintiff first identified Mr. Glassner as a potential deponent in this case. ECF No. 202. The Court granted Plaintiff's request to depose Mr. Glassner on March 1, 2024. ECF No. 204. Plaintiff thus was given *a third* opportunity to take Mr. Glassner's deposition. She once again failed to do so.

Instead, on March 25, 2024, Plaintiff submitted yet another request to extend the discovery deadline, this time blaming the Clerk of the Court for purportedly failing to issue the subpoenas in a timely manner. ECF No. 218. As a result, on April 3, 2024, the Court again extended the discovery deadline, this time until May 7, 2024, giving Plaintiff yet *another* opportunity to depose Mr. Glassner, her fourth. ECF No. 231.

Incredibly, Plaintiff once again failed to exercise even the bare minimum of diligence required to take Mr. Glassner's deposition in a timely manner. Plaintiff's Motion once again seeks to blame the Clerk of the Court's office for purportedly failing to timely issue the third-party deposition subpoenas she sought, including the one for Mr. Glassner. However, in doing so, Plaintiff's Motion elides several critical facts that underscore her own dilatory conduct.

In likely recognition of Plaintiff's previous complaints about the Clerk of the Court not executing her deposition subpoenas in a timely fashion, the Court's April 3, 2024 order extending discovery specifically stated that "Plaintiff shall promptly re-file her subpoena requests with revised dates and shall advise the Court by <u>Wednesday April 10, 2024</u> if she has not received the signed subpoenas from the Clerk's office." ECF No. 231 at p. 5 (emphasis in original). Despite writing to the Court on other issues on or about April 10, 2024, <u>see</u> ECF No. 236, 237, 240, Plaintiff did not inform the Court that she was unable to receive the signed subpoenas from the Clerk by April 10, 2024. Indeed, as is apparent from Plaintiff's Motion, she did not even *submit* the subpoenas to the Clerk's office until April 22, 2024. ECF No. 260. In other words, despite knowing from her own experience that the Clerk's Office took up to several weeks to execute subpoena requests, Plaintiff inexplicably waited ***three weeks*** from the Court's April 3, 2024 order extending her time to take depositions to even file the subpoena requests with the Clerk's Office. In the process, she simply ignored the Court's April 10, 2024, deadline to inform the Court that

5

she had not received executed subpoenas (and to seek judicial assistance to expedite the process). Thus, Plaintiff's Motion's attempt to blame her failure to obtain Mr. Glassner's subpoena on the Clerk's Office is squarely contradicted by the record in this case. Instead, Plaintiff's own dilatory behavior is the sole reason she was not able to previously depose Mr. Glassner. That same dilatory behavior forecloses her request to reopen discovery at this stage.

### B. Plaintiff Never Previously Sought Discovery about the Decision Maker Concerning the Campaign's Decision to File an Arbitration Against Her for Breaching her NDA.

Plaintiff also seeks to justify her request for additional discovery by pointing to a filing in a separate case, which she says indicates that Mr. Glassner made the decision to file an arbitration against her for breaching her NDA with the Campaign. But this is nothing more than a red herring, added to mislead the Court.

Notably, Plaintiff never states that Defendants concealed the identity of the individual who made the decision to file the arbitration against her. To the contrary, Plaintiff has not sought this information from Defendants at any point during discovery in this case. Plaintiff's Interrogatories did not ask Defendants to identify the individual(s) who played a role in deciding to bring a claim against her for breaching her NDA with the Campaign. See Gavenman Decl., Ex. A. Similarly, Plaintiff's Notice of Deposition for the Campaign's 30(b)(6) witness did not even list the arbitration against her as a topic to be discussed, to say nothing of the individual who made the decision to bring claims against her. See Gavenman Decl., Ex. B. Relatedly, she never asked the Campaign's 30(b)(6) representative during his deposition about the identity of the individual who made the decision to bring a claim against her for breaching her NDA.

Plaintiff has had ample opportunities to seek discovery about the individual who made the decision to bring a claim against her, to the extent that she believed it was relevant. She made the

tactical reason not to do so at any point during the discovery process.  She should not be permitted to reopen discovery on an issue she made no previous effort to litigate, despite being able to do so.

### C. The Other Factors Considered by Courts Also Warrant Denial of Plaintiff's Request to Reopen Discovery.

Even if Plaintiff had not had ample opportunity to seek discovery about other complaints of Gender-based Discrimination, to learn the identity of the individual who made the decision to initiate the arbitration against her, and to depose Mr. Glassner – which, to be clear, she has – she still cannot demonstrate that good cause exists to reopen discovery.  In determining whether good cause exists to reopen discovery, aside from the primary factor of Plaintiff's opportunity to seek discovery during the discovery period, courts in this circuit also consider the following secondary factors:

> (1) whether trial is imminent, (2) whether the request is opposed, (3) whether the non-moving party would be prejudiced, (4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, (5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and (6) the likelihood that the discovery will lead to relevant evidence.

Bakalar v. Vavra, 851 F. Supp. 2d 489, 493 (S.D.N.Y. 2011).  Here, none of these factors support granting Plaintiff's motion.

First, although a trial date has not been set, the Court has set a summary judgment briefing schedule and Defendants are marshalling their evidence, based on the existing evidentiary record, to support their motion for summary judgment.  This factor weighs in favor of denying Plaintiff's Motion.  See, e.g., City of Almaty, Kazakhstan v. Ablyazov, No. 15-cv-05345(AJN)(KHP), 2019 WL 11662228, at *2 (S.D.N.Y. Oct. 24, 2019) (Parker, J) (denying a motion to reopen discovery

and explaining that "Discovery has ended, and although trial in the Underlying Action has not been scheduled, the parties will begin briefing summary judgment motions in the near future").

Second, Defendants firmly oppose Plaintiff's Motion. Third, Defendants would clearly be prejudiced were Plaintiff's Motion granted. Having to prepare for Mr. Glassner's deposition would take time away from Defendants' preparation of their summary judgment papers. Additionally, Defendants would also be required to incur substantial legal fees from preparing for, and potentially defending, Mr. Glassner's deposition. See, e.g., Gao v. Savour Sichuan Inc., No. 19-cv-2515(JPC)(KHP), 2021 WL 4892864, at *2 (S.D.N.Y. Oct. 20, 2021) (Parker, J) ("as the non-moving party, the Court finds that Defendants would be prejudiced should discovery be reopened given the additional legal fees related to preparing for and holding depositions and reviewing documents to be produced").

Fourth, as explained above, Plaintiff was clearly not diligent in seeking Mr. Glassner's deposition. As this Court has previously explained, "Plaintiff, previously represented by counsel, has had more than adequate time to conduct third-party depositions. *That they did not conduct all of the discovery Plaintiff wants does not justify extending discovery*." ECF No. 312 at p. 8 (emphasis added). Had Plaintiff, through her prior counsel, sought to take Mr. Glassner's deposition at any point between August 16, 2022 (when the Scheduling Order was initially entered in this case, ECF No. 103) and November 14, 2023, she would have been free to depose Mr. Glassner about any subject related to this case. She did not do so.[1] Subsequently, Plaintiff was

---

[1]    Although Plaintiff seeks to blame her prior counsel for failing to complete discovery, including third party discovery, in a timely fashion, as this Court has explained, "'Absent extraordinary circumstances, a client assumes the risk of his attorney's actions and is bound even by the consequences of his attorney's negligence' even if that results in a party not obtaining certain discovery." ECF No. 312 at p. 8 (quoting Lastra v. Weil, Gotshal & Manges LLP, No. 03-cv-8756(RJH)(RLE), 2005 WL 551996 at *4 (S.D.N.Y. Mar. 8, 2005)).

given at least three additional opportunities to depose Mr. Glassner.  Again, she failed to do so, based in large part on Plaintiff and her counsel's unilateral belief that this Court's efforts to manage the discovery process were somehow "improper."

Plaintiff's most recent failure to secure Mr. Glassner's deposition is particularly instructive. Plaintiff claimed that she was unable to comply with the Court's previous deadline to take third party depositions, including Mr. Glassner's, because of the purported negligence on the part of the Clerk's Office, which she contended took over three weeks to return the executed deposition subpoenas.  The Court, "in an abundance of solicitude to the Plaintiff" granted her yet another extension to take these third party depositions, until May 7, 2024.  See ECF No. 312.  In yet another example of the "solicitude" the Court showed towards Plaintiff, the Court specifically instructed her to submit a letter by April 10, 2024, in the event that she was not able to receive the signed subpoenas back from the Clerk's Office by that date.  Not only did Plaintiff fail to write to the Court by April 10, 2024, she did not even request the subpoenas until April 22, 2024, three weeks after she was first permitted to do so.  Plaintiff offers no excuse for her dilatory behavior.[2]  Instead, she unfairly maligns the Clerk's Office for delaying a week before sending her the executed subpoenas.  Given that Plaintiff knew it could take several weeks for the Clerk's Office to return executed subpoenas, her failure to act in a diligent manner is the sole reason that she has not already deposed Mr. Glassner to date.

---

[2]    Given that Plaintiff had previously drafted third party deposition subpoenas for the same witnesses and submitted them to the pro se office in March 2024, it would have been simple and straightforward for her to send those same subpoenas, with new dates, to the pro se intake office immediately after receiving the Court's April 3 Order.  Had she done so, she would have either received the executed subpoenas by April 10, 2024, or could have written to the Court by that date informing Your Honor that she had not received the subpoenas.  Then, the Court could have taken steps to ensure that they were filed on the docket immediately, giving Plaintiff ample time to serve the subpoenas, and take the third party depositions, prior to the close of discovery.

Plaintiff's lack of diligence is further underscored by the very text messages she uses to support her argument that the Campaign is withholding documents concerning other complaints of Gender-based Discrimination (the "Text Messages"). Plaintiff's Motion attempts to frame the Text Messages as an example of a former supposed employee of the Campaign voluntarily reaching out to Plaintiff after becoming "motivated to speak up" in light of developments in this case. ECF No. 261 at p. 5. However, the Text Messages themselves depict a far different story. It was Plaintiff who proactively reached out to the individual in the Text Messages last month, *after* discovery had already closed. Plaintiff has offered no explanation as to why she did not ask this individual about their knowledge about supposed Gender-based Discrimination complaints at any point in the last two years during which discovery was pending.[3] It was incumbent upon Plaintiff to reach out to this person earlier to determine what information they knew that would be relevant to this case. Instead, she waited until June 12, 2024 to do so, well after every discovery cutoff in this case, and in the process denying Defendants any opportunity to test the veracity of these claims during discovery. Once again, Defendants should not be punished by having to submit to the time and cost associated with additional discovery due to Plaintiff's lack of diligence.

Fifth, reopening discovery at this stage would undoubtedly require additional discovery in this case. At a minimum, Defendants would need to depose the unidentified individual who is claiming that Mr. Glassner told them about other complaints of discrimination, given this person's representations to Plaintiff. Moreover, given Plaintiff's pattern of conduct in this case, constantly seeking additional discovery based on the thinnest of reasons, allowing her to depose Mr. Glassner

---

[3]   If Plaintiff knew that she had access to a supposedly high-ranking official with the Campaign who was aware of potentially relevant information, that individual should have been identified in Plaintiff's Initial Disclosures. Again, because Plaintiff unilaterally concealed the name of the individual in the Text Messages, it is impossible to determine whether Plaintiff has complied with her own discovery obligations in this case.

would undoubtedly lead to additional motion practice (and motions for reconsideration, and Rule 72 motions to Judge Torres) about various fishing expeditions in which she intends to engage for additional discovery.

Sixth, there is no reason to believe that the deposition of Mr. Glassner would lead to additional relevant evidence. Defendants have already compiled Mr. Glassner's available ESI, conducted searches of his ESI pursuant to the terms set forth in the Court's May 14, 2024, discovery order, and produced the responsive documents. ECF No. 312. Plaintiff relies on the Text Messages to support her argument that the Campaign is withholding documents concerning other complaints of Gender-based Discrimination. Plaintiff's argument is incorrect, distorts the record in this case, and is based on speculation that is not even supported by the Text Messages.

As a threshold matter, Plaintiff has unilaterally (and improperly[4]) redacted several key pieces of information from the Text Messages and has also edited the Text Messages by, *inter alia*, seemingly cutting and pasting only parts of the conversations contained therein and excluding others. ECF No. 367. Based on Plaintiff's redactions, it is simply impossible to tell the identity of the individual with whom Plaintiff is communicating; what his or her title/position was with the Campaign to assess whether his or her claims that Mr. Glassner told this person about purported settlements is in any way credible; who was the subject of these supposed complaints; or the subject matter of the complaints. Without this information, it is impossible for the Court or

---

[4] As Plaintiff herself admits, the information that she has redacted "did not seem to meet the standard" for this Court's Individual Rules of Practice for filing material under seal. ECF No. 367 at p. 4. Plaintiff should not be allowed to conduct an end-run around this Court's rules by making unilateral decisions about what information she can and cannot withhold from Defendants, and the public.

Defendants to properly assess the validity of this information.[5]  It cannot be that Plaintiff can establish good cause to reopen discovery merely by providing an unverifiable statement from an unidentified individual – amounting to double hearsay – claiming to know that the Campaign settled Gender-based Discrimination lawsuits.

Separately, the Text Messages themselves do not indicate that Mr. Glassner has any additional information to which Plaintiff is entitled.  There is no evidence that any of the complaints referenced in the Text Messages were ever submitted to anyone in the Campaign in writing.  To the extent that the individual in the Text Messages is contending that the Campaign received unwritten complaints of Gender-based Discrimination, this Court has already held that any request for "unwritten complaints" of Gender-based Discrimination "is unreasonable and inconsistent with the type of discovery that is ordered by courts in this Circuit and that was contemplated by this Court."  ECF No. 312 at p. 4.

In terms of written complaints, Defendants have now conducted two separate ESI searches in this case, the first based on custodians and search terms that Plaintiff herself proposed and the second based on custodians and search terms that the Court required.  As a result of these searches, Defendants have already produced hundreds of pages of documents in discovery.  There is simply nothing in the Text Messages to support the fact the supposed "multiple" suits that the Text Messages reference were not already included in Defendants' previous production, nor can

---

[5]      On June 28, 2024, Defendants requested that Plaintiff produce the unredacted version of the Text Messages to allow them to properly respond to Plaintiff's Motion, and have offered to allow her to designate them "Confidential" pursuant to the parties' Protective Order in this case. To date, Plaintiff has not responded to this request.  To the extent that the Court allows Plaintiff to submit unredacted portions of the Text Messages, Defendants respectfully request that she be required to produce the full, unedited conversation of the Text Messages.  Moreover, Defendants also respectfully request the opportunity to supplement their opposition to Plaintiff's Motion to address the information that Plaintiff is actively concealing.

Plaintiff claim otherwise. There is therefore no basis to reopen discovery to allow Plaintiff to depose Mr. Glassner.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully requests that the Court deny Plaintiff's Motion in its entirety.

Dated: July 3, 2024

**SCHULMAN BHATTACHARYA, LLC**

By:     /s/ Jeffrey S. Gavenman
        Jeffrey S. Gavenman
        6116 Executive Boulevard, Suite 425
        North Bethesda, Maryland 20852
        and
        240 West 40th Street
        New York, NY 10018
        Tel.: (240) 356-8553
        Facsimile: (240) 356-8558
        Email: jgavenman@schulmanbh.com

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

ARLENE J. DELGADO,
Plaintiff,

-vs-                                                    No. 19-cv-11764 (AT) (KHP)

DONALD J. TRUMP FOR PRESIDENT, INC.,
TRUMP FOR AMERICA, INC., SEAN SPICER,
individually, REINCE PRIEBUS, individually,
and STEPHEN BANNON, individually,

Defendants.


## REPLY TO DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO REOPEN DISCOVERY

Plaintiff, ARLENE DELGADO, hereby replies to "Defendants' Memorandum of Law In Opposition of Plaintiff's Motion to Reopen Discovery" (ECF #374), to correct material misrepresentations, as follows:

On June 19th, Plaintiff filed "Motion for Additional Limited Discovery Given Critical New Information: The Deposition of Michael Glassner," in which Plaintiff explained that new information had arisen regarding two separate grounds (Plaintiff's formal retaliation claim and the gender-related complaints), which made it clear that Mr. Glassner must be deposed. There is no denying the need for Mr. Glassner's deposition, and its relevance and proportionality to the issue in this case. Second, this information was not previously known (e.g., Glassner's direct involvement in the retaliation against Plaintiff became known as a result of a deposition, in another case, being made public). Third, there is also no denying the **Plaintiff never had the opportunity to probe Glassner on this during discovery**, a factor the Defendants would have to show in order to prevail. Why? Though Plaintiff sought Glassner's deposition, **the Court**

limited it to questions about the 'breach of contract' claim. Fourth, there is no denying that plaintiffs in New York federal districts are routinely granted such requests. One case the Plaintiff cited entailed re-opening discovery after summary judgment motions had been completed, and nine extensions on discovery. Not surprisingly, Defendants' memorandum refuses to address this. It demands that this Court deny what similar plaintiffs are routinely granted.

I. Plaintiff Did *Not* Have Ample Opportunity to Depose Glassner, Much Less On These Topics

The Opposition's misrepresentations are rampant throughout, beginning with the claim that Plaintiff "had ample opportunity to depose Mr. Glassner." (p. 3) **As the record shows, Plaintiff diligently sought the deposition of Mr. Glassner.** (Recap: In its January 30, 2024 CMC, the Court stated the Plaintiff could file the list of the third-party depositions she wished to take, and that the Court would consider such at the upcoming February 28th hearing. Plaintiff submitted her list, on time, and included Glassner[1]). **The Court granted Glassner's deposition, on March 1st, but only insofar as asking Glassner about the breach of contract claim (i.e., a five-minute deposition on a single, limited topic). In other words, even if, once the Court green-lit the request on March 1st, the Plaintiff had been able to subpoena Glassner in time (Clerk errors prevented such), the Plaintiff would have only been able to ask Glassner about the breach-of-contract claim (and not about any complaints of gender discrimination; nor about the retaliation against Plaintiff).** As such, respectfully, it would be an abuse of discretion of this Court to deny the Plaintiff the ability to depose Glassner. Plaintiff

---

[1] The Plaintiff's Request describes Glassner as having relevance to the breach of contract claim but, of course, the Plaintiff intended to ask Glassner about more. The Plaintiff was, per the Court's directive, not required to list ALL of the topics on which the witness would have relevance (as this is a public filing) but rather just give an idea of one or the reasons why the witness would be relevant, which is what Plaintiff did.

never had the opportunity to do so, given that she was drastically limited and forbidden from asking about either the retaliation against Plaintiff or about complaints of gender-discrimination.

The misrepresentations in the Opposition filing continue. Page 4 contains a long-winded, misleading claim that Plaintiff had ample opportunity for third-party discovery in general. Incorrect: Plaintiff has already explained, *ad nauseum*, in other filings why third-party discovery could not even *begin* until late summer 2023 (Defendants had not even taken her deposition, or produced Defendant-Spicer, until summer 2023) and why the Court's decision to grant two attorneys' withdrawals led to two minor, necessary extensions. (Defendants' concern with the timeline is particularly disingenuous, given that **Defendants caused a two year delay in this case**, pursuing frivolous claims in arbitration and delaying the progression of this case.)

The misrepresentations continue, including about the delay in serving Mr. Glassner for deposition, once the Court green-lit that request (which did not occur until March 1, 2024!). The Plaintiff relegates the correction of those misrepresentations to a footnote,[2] rather than clog the

---

[2] Defendants write: "*Instead, on March 25, 2024, Plaintiff submitted yet another request to extend the discovery deadline, this time blaming the Clerk of the Court for purportedly failing to issue the subpoenas in a timely manner…. As a result, on April 3, 2024, the Court again extended the discovery deadline, this time until May 7, 2024, giving Plaintiff yet another opportunity to depose Mr. Glassner, her fourth…."*

The request was <u>not</u> because the Clerk failed "to issue the subpoenas in a timely manner." Defendants' counsel would do well to read the filings before making argument. It was because the Clerk (improperly) *mailed* the subpoenas rather than issuing them electronically into the docket. Yes, the Court granted the extension, as most courts would have, given the error was by the SDNY itself. Of particularly note is the remark that the Court was thus "giving Plaintiff yet another opportunity to depose Mr. Glassner." (This is false. As Defendants know, an "opportunity to depose Mr. Glassner. This was an opportunity to depose Mr. Glassner for a paltry five minutes, purely on the breach of contract issue.) It is also quite unclear from whether Defendants get the idea that this would be her "fourth" opportunity – in fact, she had yet to receive her first.

And then, more misrepresentations:

*Not only did Plaintiff fail to write to the Court by April 10, 2024, she did not even request the subpoenas until April 22, 2024, three weeks after she was first permitted to do so. Plaintiff offers no excuse for her dilatory behavior.*

main body of this filing, as such arguments are entirely irrelevant: All of argument concerns whether the Mother 'could've/should've' moved faster on **what would have been a five-minute deposition, only on the breach of contract issue**! It is therefore irrelevant regarding whether the Plaintiff had ample opportunity to depose Glassner as to retaliation and complaints.

II. No, Plaintiff Did Not Have "Sufficient" Time and Opportunities to Obtain the Complaints

Defendants write:  *"there is no question that Plaintiff has had more than sufficient time and opportunities to obtain evidence concerning other complaints of gender discrimination, sexual harassment, or pregnancy discrimination… against the Campaign during the 2016 and 2020 election cycles, which alone warrants denying Plaintiff's Motion in its entirety." (p. 2)*

It is difficult to know where to begin in dissecting such a dishonest statement. First, the statement makes no sense because the complaints-topic is just *one* of the two reasons why Glassner's deposition is merited -- yet they claim this "alone warrants denying Plaintiff's motion in its entirety"?? Even as to the gender-related complaints, however, this is also false: Plaintiff never had ample opportunity to obtain this information. **In fact, it was only beginning on April**

---

For purposes of correcting the facts, however, it merits noting nonetheless: When the Clerk re-issued the subpoenas, Plaintiff did not immediately move to serve them because *she could not locate addresses for three of the four*: Mr. Kushner is impossible to locate, other than a business address; Ms. Castellano had moved; and Mr. Glassner no longer resides at his former address. Plaintiff was working with an investigatory provider to ascertain the addresses, to then serve the subpoenas, which she moved to do as soon as she could. But, again, this is neither here nor there as, again, this would have only been for a deposition of Mr. Glassner concerning the breach of contract claim!

And if Plaintiff had taken the deposition of Glassner in, say, April, and even if the Court had not limited her (which it did) in scope, this would be grounds for a new deposition. Why? This is how the deposition of Glassner (again, if no limited-scope existed, which it did!), would have gone, given that the Defendants had taken the position that 2020-cycle was not relevant.
*Were there any gender-related complaints you knew of in the 2020 team?*
*Attorney: Objection. Not relevant.*

**24, 2024 (just a few weeks ago!) that this Court ordered that Defendants could not continue to claim that 2020-election-cycle was irrelevant, when asked about such complaints, and Plaintiff was indeed entitled to complaints from that election cycle**. Nevertheless, even then, they stalled: Defendants' counsel dramatically moved to withdraw 36 hours later (citing an irreparable breakdown with the client), and, sure enough, Defendants produced nothing on May 7th. Then, they relied on the Court's (confusing) literal wording in its May 14, 2024 Order, which seemed to indicate that they need only *search email archives*, worse yet only of certain custodians and only with certain keywords, for complaints' existence. Even now, after the Court has clarified that Defendants' obligation includes reviewing outreach from attorneys about potential litigation, etc., and the May 14th Order was never intended to limit the obligation to ESI searches of certain custodians, etc., they still *rely* on the "searches" and "unable to *locate*, sorry!" posture.

It is, as such, unethical to write that such constituted "more than sufficient time and opportunities." The Plaintiff has been made to climb through hoops, even after the late April order, and, even then, Defendants have relied upon literal-wording loopholes to avoid production. **If the Court were to deny Plaintiff's Motion, it would be taking the position that the Plaintiff having a few weeks** (which were obstructed by confusing wording in orders, granting Defendants loopholes to continue avoiding production, and Defendants swapping counsel midway through) **was indeed ample opportunity (and would be taking the position that the retaliation claim – a formal cause of action in her suit – is non-existent)!**

Defendants then write: *"Pursuant to these searches, Defendants have located and produced hundreds of pages of relevant documents."* (p. 3) This is, also, comically misleading.

Yes, Defendants produced a 'document dump' that technically did have over 100 pages – of <u>public</u> legal filings from the *Denson v. Trump Campaign* case. Notice, moreover, Defendants continue to hide behind 'we conducted searches.' The Court should not continue to permit this Twilight-Zone level boldness. Consider if the Plaintiff is asked: "**Were you, Ms. Delgado, ever accused of gender-related discrimination by any employee?" and Plaintiff's answer is to have her attorney engage in semantics and technicality games: "Well, I conducted a *search* of Ms. Delgado's work-email and cannot locate any such complaints."** This is not that complicated! There are either complaints or there were not. The Defendant-Campaign knows if there were (especially given that some were serious enough to result in legal settlements!) – there is no need to hide behind 'searches' or fall back on 'locating.' This is abundant bad faith.

III. Defendants' Complaints About the Messages Are Now Moot

Defendants also attack the messages Plaintiff produced, with the 2020-Advisor, as "vague and facially incredible." (p. 3) This makes no sense: There is nothing "vague" or "incredible" about the messages, which are straightforward and direct. Defendants also complain that the advisor is "unidentified"; sneer that the individual "purportedly" worked for the Campaign (p. 3); and refer to the "former supposed employee of the Campaign." (p. 10). They later again complaint that it is: "simply impossible to tell the identity of the individual with whom Plaintiff is communicating; what his or her title/position was with the Campaign to assess whether his or her claims that Mr. Glassner told this person about purported settlements is in any way credible; who was the subject of these supposed complaints; or the subject matter of the complaints." (p. 11-12) **In response to this feigned outrage, Plaintiff filed the unredacted**

**version on July 4th**. Thus, the individual has been subsequently identified. This objection is revealed to be meritless -- and certainly now moot.[3]

The feigned outrage continues, writing, "Plaintiff has offered no explanation as to why she did not ask this individual about their knowledge about supposed Gender-based Discrimination complaints at any point in the last two years during which discovery was pending." (p. 10) For starters, the information was not ordered to be produced until *late April 2024*! Second, Plaintiff did not ask this individual in May 2024 for various reasons, including that Plaintiff did not know this individual across the past two years and, more importantly, trusted Defendants would produce this information in the course of discovery. Plaintiff should not have to become Nancy Drew, probing advisors, simply to get information that any other defendant would have turned over ages ago. They also claim Plaintiff waited until "well after every discovery cutoff in this case." It is not "well after discovery" -- in fact, on July 3rd court-ordered production was still pouring in (from both Defendants and third parties).

IV. Defendants' Argument Regarding the Disclosures and Interrogatories Actually Supports Plaintiff's Motion

Defendants then try another angle: *"If Plaintiff knew that she had access to a supposedly high-ranking official with the Campaign who was aware of potentially relevant information, that individual should have been identified in Plaintiff's Initial Disclosures."* (p. 10) This is perhaps

---

[3] Defendants also misstate what Plaintiff wrote in her Motion, as usual, attacking Plaintiff's integrity. Plaintiff never claimed that the individual reached out to her about this, as the Opposition falsely alleges. "Speaking up" does not mean someone necessarily reaches out to another – it can also mean that a person speaks up *when asked*. (The fact that Plaintiff has to waste time addressing these petty attempts to question her honesty is a shame on this docket and legal process.)

the most unserious of all the arguments in the Opposition (though it is tough to beat the "Plaintiff had ample opportunity to take Glassner's deposition" when there is a public court order requiring Plaintiff to seek court permission for third-party depositions, even when Plaintiff obtained permission for Glassner, was limited to only asking him about the 'breach of contract' matter!). Plaintiff had no way to know that this advisor had information relevant to her case, up until very recently. That said, **Plaintiff certainly appreciates that Defendants raised the topic of Rule 26 disclosure obligations, this provides a nice segue into noting that it is Defendants who violated their Rule 26 duties, leading to this situation.** Defendants' disclosures are, under Rule 26, supposed to list not just the name of each individual likely to have information regarding their own claims or defenses (and name and address, if known) but also the "**subjects of that information**." Instead, (a) even though retaliation had been formally added as a claim in the case earlier that year; and (b) even though Defendants knew that Glassner was intimately involved in that, this is what the extremely vague description read: "Information regarding plaintiff's work for the Campaign and Trump for America, Inc. and other facts and circumstances alleged in plaintiff's first amended complaint." That is contrary to Rule 26. **Defendants' Rule 26 Disclosures *should have* read: "Michael Glassner [address and number, if known]: retaliation allegation defense; NDA; and breach of contract claim defense"** (or words to that effect). They refused to do so. This violates Rule 26's requirement of listing a clear subject matter – not just the overall "complaint". **This Court should request briefing on whether sanctions against Defendants are merited. <u>Defendants hid the fact that Glassner had information on not just one but two relevant aspects of this case – and now when, the Plaintiff, through sheer luck, learns of this, they demand that the discovery be denied.</u>**

Relatedly, Defendants then try claiming that Plaintiff's Interrogatories on Defendant (September 2022) should have asked Defendants to identify the individual(s) who played a role in deciding to bring a claim against her for breaching her NDA with the Campaign (the retaliation). (p. 6) As Defendants are aware, this would have been objected to, due to wording and on privileged grounds. Notwithstanding, Plaintiff's Interrogatories *did* contain several interrogatories pertaining to retaliation – not a single answer by Defendants named Glassner.

## IV. Additional Misrepresentations

The baseless attacks continue: *Moreover, given Plaintiff's pattern of conduct in this case, constantly seeking additional discovery based on the thinnest of reasons, allowing her to depose Mr. Glassner would undoubtedly lead to … various fishing expeditions in which she intends to engage for additional discovery.* (p. 10-11) Again, this is a baseless attack – there is no 'fishing expedition' here, as is clear. **Glassner possesses relevant information, <u>indisputably</u>, and has even admitted to such under oath**. **Notice Defendants never deny (because they cannot!) that Glassner admitted, under oath, in another case, in NY state court, that he was a key player in the retaliation against Plaintiff.** It is also unclear what "pattern" Defendants refer to – on the contrary, **this Court has previously complimented Plaintiff on her efficient conduct of the depositions.** [Plaintiff has taken only a handful of depositions and all of those have been limited to a three-hour'ish mark, and all conducted efficiently, respectfully, cordially, with no complaints from witness or their counsel. Plaintiff has also not posted details about the case on social media, nor has spoken to reporters or press – she has kept her head down, focused on discovery and obtaining the relevant facts for her case.] Indeed, Plaintiff has, despite pro-se and lack of litigation-particulars experience, diligently moved this case forward and accomplished a

significant amount in the mere few months between the requesting-of-depositions (Feb 28th hearing) and today.

Further unserious arguments continue, with Defendants claiming that "*there is no reason to believe that the deposition of Mr. Glassner would lead to additional relevant evidence.*" (p. 11) This argument defies logic and reveals the desperate extreme to which Defendants will go. **How is it possible an officer of this Court typed out "there is no reason to believe that the deposition of Mr. Glassner would lead to additional relevant evidence," when a deposition exists** (of which the Campaign is aware as it is the Defendant in that case!), **in which Mr. Glassner states, under oath, that he was a decision-maker in the $1.5 million retaliation against Plaintiff when she 'threatened' to file a lawsuit in 2017?**

In another disingenuous argument, Defendants claim that "*the Text Messages themselves do not indicate that Mr. Glassner has any additional information to which Plaintiff is entitled. There is no evidence that any of the complaints referenced in the Text Messages were ever submitted to anyone in the Campaign in writing",* adding that they are only obligated to produce complaints of which there is a mention in writing (p. 12). The text messages speak of several complaints that were settled. The Defendants' are incredibly arguing that complaints, so serious as to result in *settlement*… have no written footprint, anywhere. This nonsense must stop.

For all of the reasons above, the Plaintiff again respectfully requests that her Motion be granted.

DATED: July 8, 2024

<u>*s/Arlene Delgado*</u>
Arlene Delgado
Plaintiff, *pro-se*