July 26, 2024

Hon. Magistrate Parker
United State District Court, S.D.N.Y.
500 Pearl Street, Courtroom 17D New
York, NY 10007
<u>RE</u>: response to Defendants' July 25, 2024 letter (ECF 384)

CASE: 19-cv-11764

Your Honor,

I am the Plaintiff in the above-mentioned matter, hereinafter referred to as Plaintiff or in first-person.

The Defendants' July 25th letter's (ECF 329) misrepresentations require a response.

<u>CAMPAIGN'S LETTER OMITS KEY INFORMATION ON RELEVANCE</u>
Plaintiff had hoped this letter would not be necessary, and trusted that Defendants would not omit necessary information. To be sure, Plaintiff even *reminded* Defendants' counsel of the obligation (as an officer of the Court, one must inform the court of facts or law *even if contrary to one's side*, if relevant to the discussion at hand), in an email earlier this week. (*See* **Attachment A**). Specifically, Plaintiff reminded Defendants' counsel that, in his letter to the Court as to the relevance of these documents, he should be sure to address (and explain) how it is that his client (Campaign) mentioned Ms. Denson's (frivolous) complaint about Plaintiff in its answers during the 30b6 deposition (March 2024) <u>and</u> also asked if Plaintiff had made any derogatory remarks to/about Ms. Denson (in the deposition the Campaign took of the Plaintiff in June 2023) yet claims these emails are irrelevant. *See* **Attachment B**. Defendants completely omitted such.

Consider the absurdity of Defendants noting, 'This employee complained that you and others harassed her' while *also* claiming that emails showing that particularly employee's lack of professionalism and disturbing behavior (seemingly providing her mother private contact information, so her mother could email Campaign top-brass, attacking a senior advisor and superior, Plaintiff, as a "slut") is "irrelevant!" ***They cannot have it both ways.***

<u>DID THE COURT PREJUDGE THIS ISSUE?</u>
Plaintiff fears that the Court was readying itself to again deny the Plaintiff her requested relief, even prior to the July 25th letter. Plaintiff is particularly concerned with the Order's wording that discovery "need not be perfect", given that said caselaw refers to *searches* – yet Plaintiff's motion to compel had nothing to do with searches or whether Defendants' searches for documents were adequate (e.g., Plaintiff never claimed these documents were in the Defendants' email archives but rather simply that that Defendants came to have the documents through another avenue – a production – and had them). Defendants acknowledge they have the documents – they simply refuse to turn them over. Why, then, is there discussion in the Court's Order pertaining to the standard for *searches* and thereupon discussion of *searches* in the Defendant's July 25th letter?

<u>WHETHER FROM DENSON OR FROM HER MOTHER, IT MATTERS NOT</u>
There is no mistaking, from any reasonable standard, that these were emails sent with the employee (Ms. Denson's) knowledge – given that they were sent to Mr. Bannon's *private* email address, which was known only to Campaign employees, and not publicly available. (Ms. Denson's mother would have no way of possessing Mr. Bannon's private email address, absent Ms. Denson providing it to her for these harassing emails, defaming and abusing Plaintiff.) Similarly, Ms. Denson's proxy (her mother) also sent what the Campaign described in court as a "threatening" voicemail to Mr. Camilo Sandoval, a Hispanic employee on the Campaign. Mr. Sandoval's cell phone number was also not publicly available and Ms. Denson's mother would only have it if Ms. Denson provided it to her. It is thus reasonable to conclude that, despite Defendants' claim that this was Ms. Denson's mother and not Ms. Denson, this is a clearly a '***distinction without a difference***.' And, even if it had

1

come from Ms. Denson's mother, without any knowledge from Ms. Denson (a laughably absurd position), it was still sent to Plaintiff's workplace and still relevant to the toxic environment, **_given that Mr. Bannon (a Campaign executive) should have taken action on this when he received an email referring to a hard-working and dedicated Hispanic advisor as a "slut"_**_. He did nothing, which is relevant to Plaintiff's claims._

COURT'S REQUEST FOR THE DOCUMENTS TO BE SUPPLIED IN-CAMERA AND EX-PARTE VIOLATED PLAINTIFF'S RIGHTS AND TRANSPARENCY NORMS
It also appears that the Court has violated Plaintiff's (and the public's) right to an open judicial process, by requesting the emails be provided *in camera*, purely to determine *relevance*. (Plaintiff fears this Court is doing so to once again rule against Plaintiff, with the basis/rationale for the denial of Plaintiff's motion thus completely hidden from the public and from the movant/Plaintiff herself. "The emails are not relevant, just trust the Court on this" is essentially what the ruling would be.) ***Respectfully, Plaintiff sees no justification for the Court reviewing these documents in private.*** Courts are permitted to do so when evaluating *privilege* claims (and some judges prefer not to even do such, as they do not wish to expose themselves to material that either --or both – party/parties prefer they not read); trade secrets; or highly sensitive/confidential information (e.g., a party's medical history). ***The content of these emails is already publicly known, based on the public letters describing the emails in this case's docket _and_ in the publicly filed depositions in Ms. Denson's case, in which Ms. Denson's proxy-bully (her mother) boasts of sending the emails to the Campaign (claiming she 'knew' Plaintiff was a 'slut' because she has is a "prophetess" in the Christian Science religion). What then is the basis for the emails to be hidden?***

This appears to violate existing New York precedent. New York judges and magistrate judges in the Southern District of New York (and other federal court districts) have repeatedly declined to review emails for "relevance" in camera and ex-parte. Consider, e.g., the magistrate judge's order in Rozell v. Ross-Holst, 2006 WL 163143 (S.D.N.Y. Jan. 20, 2006):

> **The defendants maintain that, at a minimum, I should review the additional e-mails in camera to evaluate their relevance. But "[s]uch review is ordinarily utilized only when necessary to resolve disputes concerning privilege; it is rarely used to determine relevance.**" *Collens v. City of New York*, No. 03 Civ. 4477, 2004 WL 1395228, at *2 (S.D.N.Y. June 22, 2004).
> **Indeed, in camera inspection is the exception, rather than the rule**….

Id. (emphasis added)

Moreover, particularly due to this Court's repeated rulings *against* the Plaintiff (including in uncommon ways, such as 'granting' the Plaintiff four depositions but then limiting each deposition to a single, specific topic), rulings against Plaintiff call for transparency, to maintain confidence in the judiciary. The Court should not ask for the Defendants to provide documents in private, review those in private, and then make a ruling, for which the basis is hidden. ***This alone now merits production of the documents, whether the Court would have found them relevant or not. Plaintiff has a right to review what the Court has reviewed, unless it was a document claimed to be privileged, a trade secret, or highly confidential/sensitive information.*** The rationale and reasons behind a judge's decision – particularly a magistrate, whose orders are subject to review by the Article 3 judge – should be clear and apparent. Respectfully, it is Plaintiff's position that the Court should have never asked to be provided documents in secret (in camera and ex-parte), merely to determine relevance. ***It should now, by virtue of that alone, order the emails produced.***

CLARIFICATION ON RELEVANCE
This Court has previously stated (April 24, 2024 'housekeeping' remarks at the commencement of hearing) that letter-motions to the Court (which this Court limits to three pages) should not and need not contain "all" arguments because the letters are simply meant to provide color as to an issue on which a party seeks the Court's intervention and on which the Court will later set a hearing. Therefore, Plaintiff did not include *every single possible argument*, per this Court's guidance, in her motion to compel, as to why these two emails were relevant. Per the Court's order, however, it appears the Court is not going to set this for argument. Plaintiff thus herein provides clarity: As

Plaintiff noted in her motion to compel, this goes to the hostile work environment claim (this was a junior employee – hired for the data department -- who terrorized the Plaintiff and others when they would not facilitate her every whim and grant her the authority and duties of a senior tea member) ***but also to the pregnancy discrimination claim***: Specifically, Defendants have questioned why Plaintiff did not seek help from the Human Resources (the department, to be clear, was a single person) when she felt she was being discriminated against. Yet the Human Resources "department" was worthless, e.g., as demonstrated by that fact that Plaintiff and others, such as Mr. Camilo Sandoval, sought help regarding this employee yet nothing was done. Additionally, this shows that Campaign top-brass did nothing to protect women, such as Ms. Delgado, with Mr. Bannon receiving these harrowing e mails and taking no action. Under the broad Request for Production served on Plaintiffs, for anything related to the Complaint, this was clearly responsive.

<u>STRAWMAN ARGUMENTS</u>
Defendants' July 25, 2024 letter is also replete with strawman arguments. E.g., Defendants claim "there is no absolutely no evidence that Defendants ever considered the opinions of Ms. Denson's mother in any way in connection with Plaintiff's employment." Again, these are not the attacks from Ms. Denson's "mother" but rather Ms. Denson. Second, part of the case is the hostile work environment claim. This goes directly to that. Third, this also speaks to Defendants' own position **that Plaintiff could have and should have gone to HR instead of tweeting about the discrimination.** But HR was, as these emails show, utterly worthless: Plaintiff had gone to HR about the problematic Ms. Denson (as had Mr. Sandoval) and HR had done *nothing*. Fourthly, this also speaks to the Campaign (Mr. Bannon and others) keeping onboard employees who displayed disturbing behavior and bullied others. ***Why did the Campaign (Mr. Bannon) receive a disturbing email railing against a Hispanic senior advisor as a "slut" and do nothing about it?***

Additionally, since when is "you need to show <u>evidence</u> that X [the document sought] was considered"… the standard for production? Defendants do not dispute that the emails were indeed sent to Mr. Bannon, a defendant and high-ranking decision-maker in the Campaign. This "You must show evidence that X was considered/had an effect, for it to be responsive" is certainly **a brand new standard in the law!** Was the *Plaintiff* permitted to withhold documents *she* was asked to produce, on the basis of "Well, there is no *evidence* that this played a direct role in the decisions, so I do not have to hand it over!"? Of course not. To allow Defendants not to produce this is for this Court to acknowledge that ***there is one standard for the Plaintiff and another for the Defendants.***

Another strawmen argument Defendants make is that the Campaign had "no control" over Ms. Denson and her other's attacks on the Plaintiff. But Plaintiff has never claimed the Campaign could have controlled these messages or are liable for the messages, *per se*. It is a strawman argument meant to deflect and confuse the Court. e.g., Plaintiff is *not* claiming that these emails caused her emotional harm and the Campaign should be held liable for such – rather, she argues that they are relevant because they shed light on various aspects of her pled claims. But that is the confusion that Defendants are trying to cause, in this analysis.

<u>DEFENDANTS CONTINUE TO REFUSE TO TURN OVER INFORMATION</u>
Surprisingly, Defendants have not turned over the alleged written "complaint" made Ms. Denson about Plaintiff, or at least the Bates number, although Plaintiff requested it three days ago, upon seeing Defendants' earlier letter's reference to such. (*See* Attachment A).
.
<u>CONCLUSION</u>
It is unfortunate that it has taken three letters from Plaintiff to obtain a mere two emails from Defendants, which are clearly responsive per the Defendants' own actions in this case and per the pled claims. Plaintiff again respectfully requests that the emails be ordered produced. Discovery is meant to be "broad" (*See* <u>Hollander v. Am. Cyanamid Co.</u>, 895 F.2d 80, 85 (2d Cir. 1990) holding that discovery in employment cases in particular is generally broad because plaintiffs often must build their cases from pieces of circumstantial evidence). Plaintiff is certainly entitled to these documents.

Respectfully submitted,

*s/ Arlene Delgado*
Plaintiff, *pro-se*

<u>ATTACHMENT A</u>

(email from Plaintiff to Defendants' counsel, July 23, 2024)

Tue 7/23/2024 3:27 PM

To: jgavenman@schulmanbh.com <jgavenman@schulmanbh.com>

Mr. Gavenman,

In the 30b6 deposition, Mr. Binnall stated that Ms. Denson had made a complaint of "harassment" against me. Can you point me to the Bates stamp where that was produced?

Also, I presume you will be contesting the responsiveness of the two emails, but I expect you will mention this to the Court.

It will be interesting to see how the Campaign justifies taking the position that someone claimed I was harassing him or her, yet the Campaign withheld producing two emails where a proxy for this person was sending emails that referred to me as a slut. I hope you will provide the Court the full picture, even information that goes against your argument, as you are obligated to do as an officer of the Court.

I hope you will also include Mr. Blumetti's questioning me about Ms. Denson, during his deposition of me.

Thank you,

AJ

ATTACHMENT B

(excerpt from 30b6 deposition taken by Plaintiff of Defendant-Campaign):

```
        A.   No, ma'am.  As far as I was able to
find there was no performance reviews.  There was a
complaint of harassment by Jessica Denson against
you.
        Q.   And you stated that you've looked at
public filings including Ms. Denson; correct?
        A.   Yes, ma'am.
        Q.   So you're aware of the campaign's
position on Ms. Denson; correct?
```

(excerpt of question asked by Defendant-Campaign in its deposition of Plaintiff):

```
4           Q.   Did you ever make any insulting or
5       derogatory comments to Jessica Denson?
6           A.   No.  I had very limited
7       interaction with her.
```