August 12, 2024

Hon. Analisa Torres, U.S. District Judge
U.S. District Court for the Southern District of New
York 500 Pearl Street, Room 750
New York, New York 10007
(via ECF)

Re: <u>Delgado v. Donald J. Trump for President, Inc., et al.</u>, No. 19 Civ. 11764 (AT) (KHP)

Your Honor,

I am the pro-se Plaintiff in the above referenced matter, hereinafter referred to in the first person or as "Plaintiff." A key purpose of the discovery period in the case is to ascertain if any additional causes of action, or any additional parties, need be named. Now that discovery completed (as of July 3rd, with one additional set of documents produced by Defendants on July 29th), I humbly and respectfully come before Your Honor seeking leave to file an amended Complaint.

As a *pro-se* litigant who possesses, per Magistrate Judge Parker's recent description, a "limited" understanding of litigation, Plaintiff apologizes in advance for any errors in this request and humbly asks for the Court's solicitude. Plaintiff has endeavored to file this in accordance with Your Honor's Individual Rules and practice.

The Court may also deem this pre-motion letter to be Plaintiff's actual motion, and grant that motion without any further submissions or formal briefing. <u>See, e.g.</u>, *S. Dhanesh Shah v. IPIC-Gold Class Entmt., LLC, et al.*, No. 19 Civ. 2942 (PMH) (S.D.N.Y. Dec. 4. 2020, Docket No. 37) (treating pre-motion letter as, and granting, motion to amend). (Plaintiff does not attach a redline of what the amended Complaint would read, as it is unclear from the Court's Individual Rules if such is to be submitted along *with* this letter, or if one is to await leave to do so.)

1

Specifically, Plaintiff seeks leave to amend the complaint <u>to add three *necessary* defendants</u>:

(a) Michael Glassner ("**Glassner**"), who was an executive, including Chief Operating Officer of the Campaign, with the Defendant-Campaign from 2015-2020;

(b) Eric Trump ("**Trump**"), who was directly involved retaliation against Plaintiff (the $1.5 million lawsuit against Plaintiff due to her December 2016 complaints of discrimination and her 'threatening' to file a discrimination lawsuit in court); and

(c) Jason Miller ("**Miller**"), Plaintiff's supervisor (who impregnated Plaintiff) who subsequently maneuvered to keep Plaintiff out of the White House.

Glassner and Trump are key defendants on the claim of retaliation, which is already a formal cause of action in Plaintiff's complaint (*See* Amended Complaint, ECF #94, March 28, 2022), and Miller is a key defendant on the issue of pregnancy discrimination.

It will be far more judicially efficient to add the Defendants to this existing cause of action, where there is already an existing claim for retaliation, than to commence a separate action.

***The adding of these Defendants directly comes about as a result of information learned in the discovery process, which was not previously known. (Additionally, Defendants themselves have been well aware of this matter for years and have, or should have, expected to be named.) As noted earlier, the discovery process concluded in this case in early July 2024.[1] Thus, Plaintiff is moving for leave in a timely manner.***

---

[1] While there was a technical discovery deadline of May 7th, the fact is that the Court continued to set deadlines far past that, on a multitude of items, including, e.g., documents by third-party Eric Trump, which Trump was given until July 3rd to provide. Similarly, answers to Requests for Admission by defendants were not due until June 7th. Similarly, the Court did not issue another order, granting a motion by Plaintiff, to compel certain documents, until July 29, 2024.

As this Court may recall, one of Plaintiff's causes of action against the Defendant-Campaign is for retaliation – namely that, when Plaintiff informed the Campaign that she was considering filing a discrimination lawsuit, and 'tweeted' about the discrimination she was experiencing on her own personal social media account, the Defendant-Campaign turned around and sued Plaintiff for $1.5 million dollars, claiming such was in violation of her NDA. [That AAA matter, which caused a delay in this case's progression of roughly two years, was ultimately adjudicated in Plaintiff's favor.) Plaintiff's then-counsel moved to amend the complaint, to add the retaliation claim, which Your Honor granted. The Amended Complaint was then submitted on March 28, 2022 (ECF #94). Glassner, subsequent to Donald Trump's election-win in 2016, remained on Campaign staff as the Chief Operating Officer. In May 2017, he attended the mediation that Judge Betty Ellerin presided over, with Plaintiff. That was the sole extent of Glassner's involvement, *to Plaintiff's knowledge*. In June 2024, however, Plaintiff briefly skimmed over the freshly filed summary judgment motions, in another employment-discrimination case against the Trump campaign (the "Denson" case), which is pending in New York State Court. Much to Plaintiff's shock, one of the deposition-exhibits was a deposition that Ms. Denson's counsel had taken of Glassner (unlike Plaintiff, Ms. Denson was permitted to depose Glassner. In *this* case, Plaintiff was only permitted, by Magistrate Parker, to depose Glassner about a 'breach of contract' claim,[2] a ruling that this Court affirmed recently affirmed denying the Plaintiff's Rule 72a Objection regarding this limitation). In said deposition, Glassner explicitly admits that he was a key decisionmaker in the arbitration action not only against Ms. Denson but also against Plaintiff (i.e., he was a key decision maker in what the Plaintiff alleges was retaliation). Glassner's involvement

---

[2] *See* Magistrate Parker's March 1, 2024 Order

3

comes from his own mouth and his own admission, under oath. This was not known until now – in fact, in a Declaration that Glassner submitted in the AAA arbitration involving Plaintiff, there is no mention of Glassner's decision-making. There is also no way Plaintiff would have known this sooner because Glassner was not identified in the Defendant-Campaign's Interrogatory answers as possessing information on the issue of retaliation. [And, again, even if Plaintiff had deposed him, as she coincidentally requested to do (despite not knowing this), Magistrate Parker had limited his deposition to only asking Glassner about the 'breach of contract' claim.]

As for Eric Trump, Trump was deposed in this case in March 2024, on other issues. A part of such, the Plaintiff served on Trump a subpoena for documents in his possession, concerning Plaintiff. His attorney, Alina Habba, Esq. and her partner, put together some documents. The Plaintiff filed a Motion to Compel in which, in part, Plaintiff noted that Trump's privilege log was deficient. On June 4th, Trump provided a new, revised privilege log, as well as a response to the motion to compel. Both the documents themselves, and the Response, contained a large surprise – based on the documents, it was abundantly clear Trump was intimately involved in the retaliatory action against Plaintiff. Indeed, his Response to the Motion to Compel admits as much. The Court ordered additional documents produced by Trump, granting in part Plaintiff's Motion to Compel. That additional production (on July 3rd), of court-ordered, previously-withheld documents, showed the same – Trump was a key player in the retaliation. This was all, moreover, a product of Defendants' willful refusal to include Trump in their Rule 26 disclosures or Interrogatory answers, listing him as someone who had knowledge or information on the issue of retaliation. (Plaintiff inquired with Defendants' counsel why Defendants had not listed Trump in their 2022 Interrogatory Answers or Rule 26 disclosures, as someone who had knowledge. The

4

Defendants' counsel refused to say.)

As for Jason Miller, Miller had testified, under oath, in another matter, in December 2017, that he had not discriminated against Plaintiff upon learning she was pregnant, testifying that he had placed her on the White House list and that Plaintiff was on the White House list at the time he was removed from decision-making. In light of this, there were no reasonable grounds, absent speculation, to name Miller, originally. Discovery revealed, however, that Miller had, in realty, cleverly placed Plaintiff in a particular role he that he felt Plaintiff would decline, and in a department different from what in which she worked (Communications). Moreover, Defendant Spicer testified last year that the role Miller promised Plaintiff "did not exist."

Federal Rule of Civil Procedure 15(a) states that leave to amend "shall be freely given when justice so requires." It is thus "rare that such leave should be denied, especially when there has been no prior amendment." *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991) (internal citation omitted). (Plaintiff amended her Complaint once, in 2022, to add a cause of action but has not had *any* amendments to add Defendants. This would be her first time doing so.) **"In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, [or] undue prejudice to the opposing party," leave "should, as the rules require, be 'freely given.' "** *Rachman Bag Co. v. Liberty Mutual Ins. Co*., 46 F.3d 230, 235 (2d Cir. 1995). The only other ground to deny leave to amend is that the amendment would be "futile." *See, e.g., Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 55 (2d Cir. 1995). "While the party seeking to amend its pleading must explain any delay, the party opposing the amendment

5

bears the burden of showing prejudice, bad faith, and futility of the amendment." *Allianz Glob. Inv'rs GmbH v. Bank of Am. Corp.*, No. 18 Civ 10364 (LGS) (SDA), 2020 WL 4140304, at *3 (S.D.N.Y. July 20, 2020). In this case, Defendants cannot meet their burden of showing bad faith, prejudice, *or* futility, so leave to amend should be granted.

Plaintiff's Delay in Amending the Complaint Is Not in Bad Faith

Plaintiff here has not delayed. Regarding Glassner and Trump, she only obtained this information about a month ago. Regarding Miller, she obtained the information in 2023 but prudently waited the remainder of discovery as remaining depositions and document production may have shown additional light, either in the direction of naming him or *not* naming him, and also Plaintiff, out of judicial economy, believed it best to seek leave to amend once, versus piecemeal, out of respect for this honorable Court's time.

Even if Plaintiff had delayed – and she did not --the Second Circuit has "held repeatedly that 'mere delay' is not, of itself, sufficient to justify denial of a Rule 15(a) motion." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339 (2d Cir. 2000). Thus, "[s]imply alleging that the plaintiff could have moved to amend earlier than she did . . . is insufficient to demonstrate undue delay." *Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 452 (S.D.N.Y. 2016). Even when a plaintiff fails to offer a satisfactory explanation, courts have allowed amendment despite *years* of delay between the discovery of relevant facts and filing of an amended pleading. *Id.* at 453 (citing *Richardson Greenshields Secs., Inc. v. Lau*, 825 F.2d 647, 653 n.6 (2d Cir. 1987) (collecting cases granting leave to amend after 2-5 year delays) (emphasis added); and *Duling v. Gristede's Operating Corp.*, 265 F.R.D. 91, 98 (S.D.N.Y. 2010) (allowing amendment 2.5 years after complaint, noting: "even vague or 'thin' reasons [for delay] are sufficient, in the absence of prejudice

or bad faith")). In short, absent prejudice, "delay will only rarely justify denial of leave to amend." *Nenninger v. Vill. of Port Jefferson*, No. 07 Civ. 4116 (TCP) (AKT), 2010 WL 11629520, at *4 (E.D.N.Y. Mar. 16, 2010). A court should not find "any bad faith or dilatory motive" when "[m]any of the amendments . . . are as a result of information recently obtained by plaintiffs." *Vulcan Soc. of Westchester Cty., Inc. v. Fire Dep't of City of White Plains*, 82 F.R.D. 379, 386 (S.D.N.Y. 1979).

Plaintiff's Amendments to the Complaint Will Cause Defendants No Undue Prejudice

Plaintiff's amendments to the Complaint are made in good faith and they will not prejudice Defendants. Amendment is generally *not* prejudicial when the "new claim is substantially related to the original claims," so "minimal additional discovery will be needed," the same documents will be relevant to the new allegations, and the defendant will not need to "re-vamp its trial strategy or prepare to defend against claims based on new legal theories." *Franco v. Ideal Mortg. Bankers, Ltd.*, No. 07 Civ. 3956 (JS) (AKT), 2009 WL 3150320, at *3-4 (E.D.N.Y. Sept. 28, 2009). Here, the amendment involves naming Defendants whose names are already repeatedly found across key documents *and* whose naming is tied to existing causes of action: retaliation and pregnancy discrimination.

And, amendment is especially appropriate when the amendment incorporates information better known to the defendants than to the plaintiffs. *State Teachers Retirement Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981). The Defendants – both current and those Plaintiff seeks to add – knew all this (knew of Glassner, Trump, and Miller's roles).

As for the additional discovery needed, it would be minimal: a deposition of Miller (which Plaintiff sought in February 2024 but was denied by Magistrate Judge Parker, with no reason given); a deposition of Glassner (which Plaintiff sought but was limited to a different topic by Magistrate Judge Parker); and perhaps an additional, brief deposition of Trump. In a case where

7

*Plaintiff has only taken five depositions*, it can hardly be prejudicial to allow a few more of these newly named defendants.

Additionally, the **summary judgment deadlines were reset two weeks ago,** per joint request, in part because the Defendants acknowledged that Plaintiff was going to seek leave to amend the Complaint. The *new* deadlines are: "Defendants' Motion for Summary Judgment due September 20, 2024. Plaintiff's Opposition to the Motion and Cross-Motion for Summary Judgment due October 18, 2024. Defendants' Opposition to the Cross-Motion and Reply in Support of their Motion due November 1, 2024. Plaintiff's Reply in Support of the Cross-Motion due November 15, 2024." (*See* ECF #396) Thus, no motions have been filed and, moreover, even the earliest deadline (September 20th), over a month away, can be paused to accommodate the amendment.

Plaintiff's Amendments Are Not Futile

Plaintiff's amendments are clearly not at all futile but rather well-grounded and, indeed, documented in Defendants and third-party allies' own documents. The documentation provided by third-party discovery-subpoena show Trump was involved in the retaliation. Similarly, Glassner admitted under oath, in another case, that he was a key player in the retaliation against Plaintiff. And Miller's actions were made plain in the documents produced by Defendants and via Defendant-Spicer's testimony. For all of the above reasons Plaintiff respectfully seeks leave to move to amend her Complaint. Plaintiff seeks permission to supply the Court with a proposed amended Complaint, as well as a redline for the Court's convenience.

Respectfully and humbly submitted,

*s/Arlene Delgado*
Arlene Delgado
Plaintiff, *pro-se*
