**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

ARLENE J. DELGADO,

                    Plaintiff,

v.

DONALD J. TRUMP FOR PRESIDENT, INC.,
*et al*.,

                    Defendants.

Case No. 19-cv-11764 (AT) (KHP)


**<u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT</u>**


Jeffrey S. Gavenman
Schulman Bhattacharya, LLC
6116 Executive Boulevard, Suite 425
North Bethesda, Maryland 20852
Telephone: (240) 356-8550

*Counsel for Defendants Donald J. Trump For President, Inc.*
*Reince Priebus, and Sean Spicer*

September 20, 2024

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ....................................................................................................... iii

PRELIMINARY STATEMENT ................................................................................................... 1

SUMMARY OF RELEVANT FACTS ........................................................................................ 2

   I.   Background .......................................................................................................................... 2

   II.   Plaintiff's Relationship with Jason Miller .......................................................................... 3

   III.   Plaintiff's Decision to Publicly Tweet about Her Relationship with Jason Miller ........... 4

ARGUMENT ................................................................................................................................. 5

   I.   LEGAL STANDARD ......................................................................................................... 5

   II.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S
   DISCRIMINATION CLAIMS ........................................................................................... 6

      A.   Plaintiff's Discrimination Claims Against Mr. Spicer and Mr. Priebus Should Be
      Dismissed Because There is No Evidence that They Played Any Role In Any Employment
      Decisions Concerning the Campaign. ...................................................................................... 7

      B.   Plaintiff's Discrimination Claims Against the Campaign Should Be Dismissed
      Because She Cannot Establish a Prima Facie Case of Discrimination. .............................. 8

      C.   Plaintiff's Discrimination Claims Against the Campaign Should Be Dismissed
      Because It Had Legitimate, Nondiscriminatory Reasons for Any Actions Taken Against
      Plaintiff. ................................................................................................................................ 12

      D.   Plaintiff Cannot Demonstrate That the Campaign's Legitimate, Nondiscriminatory
      Reasons for Terminating Her Consultancy were Pretextual. ............................................. 13

   III.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S
   RETALIATION CLAIMS ................................................................................................. 14

      A.   Legal Standard .................................................................................................................. 14

B.    Summary Judgment Is Warranted On Plaintiff's Retaliation Claim Based on the Termination of her Consultancy. ......................................................................................... 14

C.    Summary Judgment Is Warranted on Plaintiff's Retaliation Claim Based on the Arbitration Filed by the Campaign ................................................................................ 16

IV.  DEFEENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIM. .................................................................. 18

V.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S AIDING AND ABETTING CLAIMS ...................................................................................... 20

VI.  DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S BREACH OF CONTRACT CLAIM .................................................................................... 21

VII. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S PROMISSORY ESTOPPEL CLAIM ................................................................................... 23

VIII. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S INTERFERENCE CLAIM .................................................................................................. 24

IX.  DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S VICARIOUS LIABILITY CLAIM ..................................................................................... 25

X.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM FOR TORTIOUS INTERFERENCE.................................................................... 25

XI.  DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S PRIMA FACIE TORT CLAIM........................................................................................... 29

CONCLUSION.................................................................................................................................. 30

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Abrams v. Dep't of Pub. Safety*,
   764 F.3d 244  (2d Cir. 2014)................................................................................. 13

*Agress v. Clarkstown Cent. Sch. Dist.*,
   69 A.D.3d 769 (2d Dep't 2010) ......................................................................... 23

*Allen v. St. Cabrini Nursing Home, Inc.*,
   198 F. Supp. 2d 442 (S.D.N.Y. 2002) .........................................................16-17

*Annunziata v. Int'l Bhd. of Elec. Workers Loc. Union # 363*,
   No. 15-cv-03363 (NSR), 2018 WL 2416568 (S.D.N.Y. May 29, 2018) ................. 19

*Arnone v. Deutsche Bank AG*,
   No. 02-cv-4915 (MGC), 2003 WL 21088514 (S.D.N.Y. May 13, 2003)................. 21

*Aspilaire v. Wyeth Pharms., Inc.*,
   612 F. Supp. 2d 289 (S.D.N.Y. 2009) .................................................................. 16

*Big Apple Tire, Inc. v. Telesector Res. Grp., Inc.*,
   476 F. Supp. 2d 314 (S.D.N.Y. 2007).................................................................. 12

*Brook v. Peconic Bay Med. Ctr.*,
   181 N.Y.S.3d 884 (1st Dep't. 2023) .................................................................... 28

*Chen v. City Univ. of N.Y.*,
   805 F.3d 59 (2d Cir. 2015)................................................................................... 27

*Chromalloy Am. Corp. v. Universal Housing Systems of America, Inc.*,
   495 F. Supp. 544 (S.D.N.Y. 1980)...................................................................... 22

*Compass Prods. Int'l LLC v. Charter Commc'ns, Inc.*,
   No. 22-254, 2023 WL 2358479 (2d Cir. Mar. 6, 2023) ......................................... 21

*Delaney v. Bank of Am. Corp.*,
   766 F.3d 163 (2d Cir. 2014)................................................................................. 13

*Delgado v. Donald J. Trump for President, Inc.*,
   No. 19-cv-11764 (AT), 2024 WL 3639541 (S.D.N.Y. Aug. 1, 2024)..................... 28

*DeMarco v. CooperVision, Inc.*,
   369 F. App'x 254 (2d Cir. 2010)........................................................................... 13

*Denson v. Donald J. Trump for President, Inc.*,
   168 N.Y.S.3d 681 (1st Dep't 2022) ..................................................................... 18

iii

*Fitzgerald v. We Co.*,
  No. 20-cv-5260 (AT), 2022 WL 952963 (S.D.N.Y. Mar. 30, 2022) ........................................ 15

*Freud v. New York City Dep't of Educ.*,
  No. 21-cv-2281 (MKV), 2022 WL 889213 (S.D.N.Y. Mar. 25, 2022), *aff'd*,
  No. 22-879, 2023 WL 3103588 (2d Cir. Apr. 27, 2023) ........................................................ 19

*Grady v. Affiliated Cent., Inc.*,
  130 F.3d 553 (2d Cir. 1997) .................................................................................................. 10

*Hardwick v. Auriemma*,
  983 N.Y.S.2d 509 (1st Dep't 2014) ...................................................................................... 20

*Hernandez v. Kwiat Eye & Laser Surgery, PLLC*,
  No. 20-cv-42(FJS)(CFH), 2023 WL 372105 (N.D.N.Y. Jan. 24, 2023) ................................. 28

*Jean-Pierre v. Citizen Watch Co. of Am., Inc.*,
  No. 18-cv-0507, 2019 WL 5887479 (S.D.N.Y. Nov. 12, 2019) ....................................... 6, 18

*Jeffreys v. City of New York*,
  426 F.3d 549 (2d Cir.2005) .................................................................................................. 14

*Keles v. Yearwood*,
  254 F. Supp. 3d 466 (E.D.N.Y. 2017) .................................................................................. 24

*Kotlyarsky v. New York Post*,
  195 Misc. 2d 150 (NY Sup. Ct. 2003) .................................................................................. 23

*Leizerovici v. HASC Ctr., Inc.*,
  No. 17-CV-3605 (BMC), 2018 WL 1114703 (E.D.N.Y. Feb. 27, 2018) ................................ 24

*Livingston v. City of New York*,
  563 F. Supp. 3d 201 (S.D.N.Y. 2021) .................................................................................... 6

*Magnoni v. Smith & Laquercia, LLP*,
  701 F. Supp. 2d 497 (S.D.N.Y. 2010) .................................................................................. 20

*Mayers v. Emigrant Bancorp, Inc.*,
  796 F. Supp. 2d 434 (S.D.N.Y. 2011) .................................................................................. 15

*Maynard v. Montefiore Med. Ctr.*,
  No. 18-CV-8877 (LAP), 2021 WL 396700 (S.D.N.Y. Feb. 4, 2021) ...................................... 19

*McGhee v. Montefiore Med. Ctr.*,
  No. 16-cv-03417, 2018 WL 4538901 (S.D.N.Y. Sept. 20, 2018) ............................................ 5

*Miller v. Livanis*,
    137 N.Y.S.3d 15 (1st Dep't 2020) ............................................................................. 26

*Mullins v. Consol. Edison Co. of New York, Inc.*,
    No. 13-cv-6800(LGS), 2015 WL 4503648 (S.D.N.Y. July 22, 2015) ...................................... 19

*Nieblas-Love v. New York City Hous. Auth.*,
    165 F. Supp. 3d 51 (S.D.N.Y. 2016) ...................................................................... 25

*Nugent v. St. Luke's/Roosevelt Hosp. Ctr.*,
    No. 05 CIV. 5109 (JCF), 2007 WL 1149979, at *11 (S.D.N.Y. Apr. 18, 2007) ...................... 17

*Panzarino v. Deloitte & Touche LLP*,
    No. 05-cv-8502(BSJ)(RLE), 2009 WL 3539685 (S.D.N.Y. Oct. 29, 2009) ........................... 20

*Prospect St. Ventures I, LLC v. Eclipsys Sols. Corp.*,
    804 N.Y.S.2d 301 (1st Dep't 2005) ........................................................................ 21

*Raedle v. Credit Agricole Indosuez*,
    670 F.3d 411 (2d Cir. 2012) ............................................................................... 25

*Ramos v. City of New York*,
    No. 96-cv-3787 (DLC), 1997 WL 410493 (S.D.N.Y. July 22, 1997) ................................. 15

*Randall v. Kaleida Health*,
    No. 08-CV-925S, 2012 WL 400780  (W.D.N.Y. Feb. 7, 2012) ......................................... 14

*Raspardo v. Carlone*,
    770 F.3d 97 (2d Cir. 2014) ................................................................................ 11

*Register.com, Inc. v. Verio, Inc.*,
    356 F.3d 393 (2d Cir. 2004) ............................................................................... 21

*Rojas v. Roman Cath. Diocese of Rochester*,
    660 F.3d 98 (2d Cir. 2011) ............................................................................ 6, 16

*Rosenberg v. Cheaspeake Pharmaceutical and Health Care Packaging*,
    888 F. Supp.2d 302 (E.D.N.Y.2012) ...................................................................... 12

*Rosinski v. Am. Axle and Mfg., Inc.*,
    402 Fed. App'x 535 (2d Cir. 2010) ....................................................................... 14

*Smith v. Calypso Charter Cruises Inc.*,
    No. 19 CIV. 7076 (PAE), 2021 WL 4084182 (S.D.N.Y. Sept. 8, 2021) ................................. 9

*St. Mary's Honor Center v. Hicks,*
  509 U.S. 502 (1993) ................................................................................................ 13

*Schanfield v. Sojitz Corp. of Am.,*
  663 F. Supp. 2d 305 (S.D.N.Y. 2009) ..................................................................... 18

*Scott v. YSB Servs. Inc.,*
  No. 21-CV-7711 (VSB), 2024 WL 1330043 (S.D.N.Y. Mar. 28, 2024) ................. 25

*Shetel Indus. LLC v. Adin Dental Implant Sys., Inc.,*
  493 F. Supp. 3d 64 (E.D.N.Y. 2020) ....................................................................... 23

*Smalls v. New York Hosp. Med. Ctr. of Queens,*
  No. 13-CV-1257 (RRM)(CLP), 2015 WL 5437575 (E.D.N.Y. Sept. 15, 2015) ...... 20

*Sotomayor v. City of New York,*
  862 F. Supp. 2d 226  (E.D.N.Y. 2012) ..................................................................... 18

*StarVest Partners II, L.P. v. Emportal, Inc.,*
  957 N.Y.S.2d 93 (1ˢᵗ Dep't 2012) ............................................................................ 24

*Taylor v. Loc. 32E Serv. Emps. Int'l Union,* 1
  18 F. App'x 526 (2d Cir. 2004) ................................................................................ 13

*Thor Props., LLC v. Willspring Holdings LLC,*
  118 A.D.3d 505 (1st Dep't 2014) ............................................................................. 22

*Twin Lab'ys, Inc. v. Weider Health & Fitness,*
  900 F.2d 566 (2d Cir. 1990) ..................................................................................... 29

*Uttarwar v. Lazard Asset Mgmt. LLC,*
  No. 22-cv- 8139 (DEH), 2024 WL 1251177 (S.D.N.Y. Mar. 22, 2024) ................... 6

*Vargas v. St. Luke's-Roosevelt Hosp. Ctr.,*
  No. 16-CV-5733 (JPO), 2020 WL 2836824 (S.D.N.Y. June 1, 2020) .................... 13

*Warren v. Ultimate Fitness Grp., LLC,*
  No. 19-cv-10315 (KMK), 2021 WL 4239246 (S.D.N.Y. Sept. 17, 2021) ............... 20

*Weinstock v. Columbia Univ.,*
  224 F.3d 33 (2d Cir. 2000) ......................................................................................... 5

*Wrobel v. County of Erie,*
  692 F.3d 22 (2d Cir. 2012) ......................................................................................... 5

*Ximines v. New York City Dep't of Educ.,*

No. 05-CV-1214, 2011 WL 2607935 (E.D.N.Y. July 1, 2011) .................................................. 5

**Statutes**
New York State Human Rights Law Art. 15 §290 *et. seq.*................................................6-7, 9, 19

New York City Administrative Code §8-101 *et. seq.*.................................................6-7, 18-20, 25

**Rules**
Fed. R. Civ. P. 56(a) ....................................................................................................................... 5

Defendants Donald J. Trump for President, Inc. (the "Campaign"), Sean Spicer, and Reince Priebus (together "Defendants") respectfully submit this memorandum of law in support of their Motion for Summary Judgment against Plaintiff Arlene Delgado ("Plaintiff" or "Delgado").

### PRELIMINARY STATEMENT

Plaintiff's claims in this case ultimately stem from a misguided attempt to blame someone else, anyone else, for the fact that her political "career" – which consisted of just over two months working for the Campaign and sporadic freelance commentary – did not result in a job in the White House, unquestionably one of the most coveted and competitive political positions in the country. However, after nearly two years of discovery, Plaintiff has not been able to present any proof in support of any one of her *twelve* causes of action in this case.

First, as to Plaintiff's discrimination and retaliation claims, Plaintiff has failed to present any evidence demonstrating that her gender, pregnancy, or her complaints about those characteristics, had a role in any decisions that Defendants took concerning her. In fact, the evidence in the record is uncontroverted that Mr. Spicer and Mr. Priebus did not have any role in any action taken with respect to Plaintiff's work with the Campaign. Neither of them ever worked for the Campaign at all, much less with Plaintiff, nor is there any evidence in the record demonstrating that they had any authority to make any decisions about the Campaign's employees, consultants and/or volunteers. To the extent that Plaintiff seeks to bring claims against the Campaign for terminating her employment, there is simply no evidence that it did so for any unlawful motive. Rather, Plaintiff's employment with the Campaign ended for the simple fact that there was no need for the role of a campaign surrogate after the inauguration, as can be seen from the fact that all of the other employees in similar roles moved on to other jobs.

Second, as to Plaintiff's claims for breach of contract and/or promissory estoppel stemming from the parties' failed attempt to agree on a pre-litigation resolution of Plaintiff's claims, such

claims fail because the parties never reached a binding agreement. Although the parties agreed on the payment amount, both parties acknowledged that they needed to negotiate several meaningful terms, including the terms of the consideration that Plaintiff would provide in exchange for any payment by the Campaign. At most, the parties merely reached an agreement to agree, which is not enforceable under New York law.

Third, Plaintiff's common law tort claims also fail. Plaintiff has failed to demonstrate that she ever received a job offer from any entity or that Defendants took any actions to interfere with any such offer, let alone that they did so with the type of malicious intent that the law requires.

All of Plaintiff's claims in this case stem from her baseless speculation that Defendants somehow wronged her and denied her the career opportunities to which she believes she was entitled. However, Plaintiff's speculations and conclusory statements are insufficient at the summary judgment stage, where the claims in her case can finally be resolved on the strength of the evidentiary record. That evidentiary record conclusively demonstrates that Plaintiff's failure to obtain a job in the White House did not result from any unlawful conduct taken by Defendants, but from her own actions and behavior, which made her patently unqualified for the positions she sought. Accordingly, and as demonstrated in further detail below, Defendants' motion for summary judgment should be granted in its entirety.

## SUMMARY OF RELEVANT FACTS[1]

### I.  Background

The Campaign retained Plaintiff in September 2016, as an Independent Contractor. ¶27; Ex. 10. Prior to working for the Campaign, Ms. Delgado had never worked for a political campaign at any level. Instead, she had a series of legal jobs and wrote freelance articles about

---

[1]     All cites to "Ex. __" refer to the exhibits attached to the Declaration of Jeffrey S. Gavenman in Support of Defendants' Motion for Summary Judgment, filed herewith.

politics.  ¶¶22-26; Ex. 1 at 12, 15-20.  Plaintiff's responsibilities as an Independent Contractor for the Campaign included providing policy advice, coordinating Spanish language media appearances on behalf of the Campaign, appearing as a surrogate for the Campaign, and advising the Campaign on Hispanic outreach efforts.  ¶29; Ex. 10.  Several members of the Campaign complained about Plaintiff's behavior while she worked for the Campaign.  ¶¶121-126; Ex. 4 at 74-75; Ex. 28-38, 41.  By way of example only, Hope Hicks, one of the most senior members of the Campaign, stated that she would not accept a job with the White House if Plaintiff were also given a job at the White House. ¶121; Ex. 28-30.  Members of the Republican National Convention (the "RNC") also complained about Plaintiff's behavior while working for the Campaign.  ¶128; Ex. 32.

## II.    <u>Plaintiff's Relationship with Jason Miller</u>

Beginning in October 2016, Plaintiff engaged in a sexual relationship with Jason Miller, another employee of the Campaign.  ¶¶47-48; Ex. 1 at pp. 119, 128.  While the relationship was ongoing, Plaintiff never told anyone at the Campaign that she was involved in a sexual relationship with Mr. Miller, and she does not believe that anyone treated her differently based on her gender or sex prior to the 2016 election.  ¶¶49, 55; Ex. 1 at pp. 129-130, 138-139.

In late November 2016, Plaintiff learned that she was pregnant with Mr. Miller's child. ¶56, Ex. 1 at 171. Plaintiff first informed other employees of the Campaign of her pregnancy on December 20, 2016.  ¶59, Ex. 1 at 181; Ex. 15 at DEF-840-DEF-841.  Notably, in the email in which she disclosed her pregnancy to the Campaign, she never complained about disparate treatment resulting from her pregnancy.  *Id*.  Instead, she complained about the more favorable treatment she believed was being afforded to Hope Hicks and Corey Lewandowski, two members of the Campaign, with the suggestion that such favorable treatment was being afforded because they are white, while Plaintiff is Hispanic.  ¶78; Ex. 15 at DEF-840-DEF-841.

**III.**     <u>Plaintiff's Decision to Publicly Tweet about Her Relationship with Jason Miller</u>

On December 22, 2016, the incoming administration for President-elect Trump (the "<u>Trump Administration</u>"), announced that it had named Jason Miller to the post of Communications Director for the White House.  ¶62; Ex. 16.  Prior to any announcement by the Trump Administration, however, Plaintiff sent out a tweet stating that "so, an announcement forthcoming concerning the new Comms Director @JasonMillerinDC tonight."  ¶63; Ex. 17.  In other words, Plaintiff publicly announced Mr. Miller's appointment to the Communications Director position before that information had been released by the Trump Administration, in violation of the confidentiality provisions of her NDA.  Subsequently, within hours of the announcement, Plaintiff sent out a series of tweets publicly announcing that she was pregnant with Mr. Miller's baby, and issued another set of tweets about their relationship on December 24, 2016 (together, the "<u>Tweets</u>").  ¶69; Ex. 1 at pp. 215-216; Ex. 17.  Notably, Plaintiff's Tweets never accused the Campaign of any wrongdoing, nor did they mention that she believed herself to be a victim of discrimination or harassment.  To the contrary, she referred to Mr. Miller as the "2016 John Edwards," a reference, she testified, to the fact that the one-time Democratic presidential candidate had impregnated his mistress, during a consensual affair.  ¶70; Ex. 1 at 218.  Plaintiff's Tweets set off a media firestorm and were a distraction to the Trump Administration at a time where they were busy preparing for the upcoming Presidential Inauguration.  ¶103; Ex. 5 at pp. 22-23; Ex. 24 at TFA_DG_00002569; Ex. 25 at TFA_DG_00007397; Ex. 26 at TFA_DG_00010664; Ex. 27.  Mr. Spicer learned from members of the media that Plaintiff had been speaking with them about her Tweets in the same time period.  ¶107; Ex. 8 at 62-63.

On December 23, 2016, Plaintiff first complained to the Campaign that she believed she was being treated differently because of her pregnancy.  ¶82; Ex. 19 at P00003-P00004.  After Ms.

Delgado lodged her complaints, the Campaign decided to retain an outside law firm, Jones Day, to conduct an independent investigation into Plaintiff's complaints.  ¶86; Ex. 8 at 47-49; Ex. 23 at P000281; Ex. 4 at 49-54; Ex. 2 at 47-48.

Subsequently, on December 24, 2016, Mr. Miller's consideration for appointment to the position of Communications Director was withdrawn.  ¶77; Ex. 4 at 49-50, 71-72, 75; Ex. 20.

## ARGUMENT

## I.    Legal Standard

A party is entitled to summary judgment when there are no genuine issues of material fact, and the undisputed facts warrant judgment for the moving party as a matter of law. Fed. R. Civ. P. 56(a).  Once the moving party meets its initial burden of demonstrating the absence of any genuine issue of material fact, the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).  However, "[t]o survive a summary judgment motion, a non-movant needs to create more than a metaphysical possibility that her allegations were correct; she needs to come forward with specific facts showing that there is a genuine issue for trial," *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (cleaned up), and "cannot rely on the mere allegations or denials contained in the pleadings" or on "conclusory statements, conjecture, or speculation . . . ." *McGhee v. Montefiore Med. Ctr.*, No. 16-cv-03417, 2018 WL 4538901, at *4-5 (S.D.N.Y. Sept. 20, 2018) (citations omitted).  This is true even in employment discrimination cases, which often turn on issues of intent.  *See Ximines v. New York City Dep't of Educ.*, No. 05-CV-1214, 2011 WL 2607935, at *2 (E.D.N.Y. July 1, 2011) ("the purpose of summary judgment would be rendered sterile ... if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion") (internal citations and quotations omitted).

II.    **DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S DISCRIMINATION CLAIMS**

Plaintiff has brought discrimination claims under the NYSHRL and the NYCHRL, which are governed under the familiar *McDonnell-Douglas* burden shifting framework.  To establish a *prima facie* case of discrimination under the NYSHRL, Plaintiff must show: (1) membership in a protected class covered by the law; (2) that she was qualified for the position at issue; (3) an adverse employment action; and (4) circumstances surrounding that action giving rise to an inference of discrimination.[2] *See Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 107-108 (2d Cir. 2011).  Although discrimination claims under the NYCHRL are construed more liberally than under the NYSHRL, courts have recognized that "the NYCHRL is not a general civility code and petty slights, and trivial inconveniences are not actionable under it."  *Uttarwar v. Lazard Asset Mgmt. LLC*, No. 22-cv- 8139 (DEH), 2024 WL 1251177, at *17 (S.D.N.Y. Mar. 22, 2024) (internal quotations and citations omitted).  The standard for causation under the NYCHRL "closely mirrors" the NYSHRL, and in either case "the plaintiff must show that discrimination played a role in the employer's decision-making." *Jean-Pierre v. Citizen Watch Co. of Am., Inc.*, No. 18-cv-0507, 2019 WL 5887479, at *13 (S.D.N.Y. Nov. 12, 2019) (internal citations omitted).  Under both statutes, if a plaintiff can establish a *prima facie* case, the employer must provide a legitimate, nondiscriminatory reason for the employment decision, at which point the employee must demonstrate that the employer's stated justification is pretextual.  *Id.*

---

[2]    Although the NYSHRL was amended in 2019, the conduct in which Plaintiff alleges Defendants engaged occurred prior to the effective date of the amendments, which are not intended to be retroactive.  *Livingston v. City of New York*, 563 F. Supp. 3d 201, 233 (S.D.N.Y. 2021) ("these amendments only apply to claims that accrue on or after the effective date of October 11, 2019; they do not apply retroactively to Plaintiff's claims here").

**A.    Plaintiff's Discrimination Claims Against Mr. Spicer and Mr. Priebus Should Be Dismissed Because There is No Evidence that They Played Any Role In Any Employment Decisions Concerning the Campaign.**

Plaintiff's discrimination claims based on gender and/or pregnancy stemming from any actions taken with respect to the work she performed for the Campaign[3] fail as a matter of law against Mr. Spicer and Mr. Priebus because there is no evidence in the record that either defendant made any decisions on behalf of the Campaign.

Mr. Spicer never worked for the Campaign. ¶36; Ex. 8 at p. 12.  Instead, during the relevant time period, he worked for the Republican National Committee. ¶35; Ex. 8 at pp. 11-12.  Mr. Spicer never directly or indirectly supervised Ms. Delgado concerning her employment with the Campaign and neither Mr. Spicer nor the Republican National Committee had any role in staffing decisions for the Campaign. ¶¶37-38; Ex. 8 at pp. 12-13, 15-16.  Plaintiff cannot demonstrate that Mr. Spicer had any responsibility or influence in any decision that the Campaign took against her, foreclosing any discrimination and/or retaliation claims against him under the NYSHRL and the NYCHRL.

Similarly, Mr. Priebus also never worked for the Campaign. ¶39; Ex. 1 at 207; Priebus Decl. at ¶2.  While Ms. Delgado assumed Priebus had a role in denying her a position in the White

---

[3]    Plaintiff has previously conceded that she is not bringing a failure to hire claim based on discrimination or retaliation under the NYSHRL and the NYCHRL for Defendants' purported role in preventing Plaintiff from obtaining a job with the White House.  *See* ECF No. 63 at pp. 3-4.  To the extent that Plaintiff attempts to change her previous position to assert such a claim at this juncture, Defendants reserve the right to address such arguments in their opposition to Plaintiff's motion for summary judgment and/or reply to the instant motion.  For the purposes of this motion however, any such argument by Plaintiff would fail because, as Defendants explained in their motion to dismiss; Title VII offers the exclusive remedy for discrimination claims concerning positions within the federal government and Plaintiff has not brought Title VII claims.  *See* ECF No. 37 at pp. 8-9.  Defendants also respectfully refer the Court to the arguments set for herein for the legitimate and nondiscriminatory/nonretaliatory reasons for Mr. Spicer's decision not to hire Ms. Delgado for a role in the White House Press and/or Communications departments.  *See infra* at pp. 26-28.

House simply by virtue of the fact that he was the White House Chief of Staff, she herself admitted that she did not "know for sure if he made those decisions." ¶44; Ex. 1 at 253-254. By Plaintiff's own admission, she had "hardly" any interaction with Mr. Priebus at all and the record evidence is clear that Mr. Priebus never even met Plaintiff during the relevant time period, nor did he have any role in any employment decisions made by the Campaign or the White House concerning Plaintiff. ¶¶42-43; Ex. 1 at 207; Priebus Decl. at ¶¶3-6. Moreover, and contrary to Ms. Delgado's speculation, Mr. Priebus was not aware of Plaintiff's pregnancy, or her relationship with Mr. Miller, prior to the Tweets. ¶71; Ex. 4 at 45-46, 49.

The uncontradicted evidence in the record demonstrates that Mr. Priebus and Mr. Spicer had zero involvement in any decisions that the Campaign took in relation to Plaintiff. Plaintiff has not presented any evidence that either Mr. Spicer or Mr. Priebus had any role in staffing decisions for the Campaign, in work assignments for people associated with the Campaign, or with termination decisions made by the Campaign. Because neither Mr. Spicer nor Mr. Priebus ever worked for the Campaign, they also never had an employment relationship with Plaintiff. Thus, there is no employment relationship that could serve as the predicate for a discrimination claim in this case. As a result, Plaintiff's discrimination and retaliation claims against Mr. Spicer and Mr. Priebus should be dismissed in their entirety.

**B.      Plaintiff's Discrimination Claims Against the Campaign Should Be Dismissed Because She Cannot Establish a *Prima Facie* Case of Discrimination.**

Accordingly, the only discrimination claim that remains in this case stems from the Campaign's purported decisions to deny Plaintiff job assignments after the election and to subsequently terminate her consultancy. However, Plaintiff cannot state a *prima facie* claim of discrimination against the Campaign.

First, there is no question that Plaintiff was an independent contractor for the Campaign, a fact that she herself admits in her Amended Complaint.  *See* ECF No. 94 at ¶ 22.  This is further confirmed by her Consulting Agreement, which specifically stated that Plaintiff was an independent contractor and not an employee.  ¶¶27; Ex. 10 at P000451-P000453.  Furthermore, Plaintiff was: paid on a 1099; responsible for all of her own costs associated with her work on behalf of the Campaign; could not bind the Campaign in any way; and did not receive any benefits. Accordingly, because the NYSHRL does not cover independent contractors, Plaintiff's claims for discrimination and/or retaliation must be dismissed.  *Smith v. Calypso Charter Cruises Inc.*, No. 19 CIV. 7076 (PAE), 2021 WL 4084182, at *7 (S.D.N.Y. Sept. 8, 2021) (explaining that "NYSHRL protected only employees" and not independent contractors).

Second, to the extent that Plaintiff claims her termination from the Campaign was discriminatory, any such argument fails as a matter of law.  Plaintiff was a surrogate for the Campaign.  Her job responsibilities were all related to helping with the election efforts, appearing in the press advocating for the election of President Trump and reaching out to Hispanic voters. ¶29; Ex. 10 at P000453.  Once President Trump had been elected and the Trump Administration had been sworn in, the Campaign had no need for Plaintiff's services.  Indeed, this was consistent with Plaintiff's Consulting Agreement with the Campaign, which specifically stated that her services would only be required for a limited, fixed duration.  ¶30; Ex. 10 at P000451.  Plaintiff has failed to present any evidence whatsoever about any roles within the Campaign for which she was qualified and for which she was not hired.  She has similarly failed to identify any other individuals who, like her, worked as Campaign surrogates and were retained by the Campaign after the Inauguration.  There simply was no job available for Plaintiff with the Campaign after

the time she was terminated, and Plaintiff's failure to produce evidence demonstrating otherwise is fatal to her discrimination claim stemming from the termination of her consultancy.

Third, although Plaintiff has alleged that she was denied the opportunity to make television appearances at the time of the Presidential Inauguration, there is no evidence in the record about what these media appearances were, or how Defendants played any role in denying her these opportunities. Nor has Plaintiff identified any male and/or non-pregnant employees of the Campaign who were permitted to make these appearances instead of Plaintiff during the time period after she announced her pregnancy. To the contrary, the record demonstrates that Ms. Delgado herself declined opportunities to conduct media appearances on behalf of the Campaign on December 17, 2016, saying that she was "no longer doing anything in the media for the team." ¶58; Ex. 14. Notably, this was before she had informed Defendants of her pregnancy and certainly was not a decision made by the Campaign. Furthermore, Plaintiff herself admitted that no one ever told her that she was being denied assignments or responsibilities at any point after the election. ¶¶112-113; Ex. 1 at 265-266, 268, 270. The reason for this is clear – the Campaign never denied her any opportunities in favor of non-pregnant employees; rather, she was never asked to perform additional work because her services were no longer needed by the Campaign.

Fourth, Plaintiff cannot point to any evidence that would give rise to an inference of discrimination against the Campaign. As to her gender discrimination claims, Plaintiff herself admits that no one associated with the Campaign discriminated against her prior to the 2016 election. ¶¶54-55; Ex. 1 at pp. 136-139. It therefore simply defies belief that the Campaign, which had hired Plaintiff knowing her gender and, by her own admission, treated her fairly up until the November 2016 election, would have reversed course and terminated her because of her gender, or denied her job duties after the election because of her gender. *See, e.g., Grady v.*

*Affiliated Cent., Inc.*, 130 F.3d 553, 560 (2d Cir. 1997) (granting summary judgment and finding no discriminatory animus where the same decision makers hired and fired the plaintiff within a short time period).

Plaintiff's pregnancy discrimination claims fare no better. Specifically, as the Second Circuit has explained, raising an inference of discrimination "requires the plaintiff to show that the employer treated him or her less favorably than a similarly situated employee outside of the protected group." *Raspardo v. Carlone*, 770 F.3d 97, 126 (2d Cir. 2014) (internal quotations omitted). However, "to be 'similarly situated,' the individuals with whom Shumway attempts to compare herself must be similarly situated in ***all material respects***." *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997) (emphasis added).

Here, Plaintiff cannot identify a single employee with whom she was similarly situated and who continued to work for the Campaign after she was terminated. Plaintiff has identified Boris Epshteyn, Omarosa Manigault Newman and Sarah Huckabee Sanders as her "counterparts" on the Campaign. ¶11; Ex. 1 at 92-93, 97, 118. However, each of these individuals were subsequently hired for positions in the White House, and therefore no longer worked for the Campaign. *See* ¶12; Ex. 8 at p. 33. Because Plaintiff cannot demonstrate that the Campaign treated any similarly-situated employees more favorably than it did Plaintiff, Plaintiff's pregnancy discrimination claims against the Campaign fail as a matter of law.

Finally, the record is also clear that Plaintiff believed that she was being treated differently by the Campaign because she had an *affair* with Mr. Miller, and not because of her pregnancy. Indeed, in an e-mail to Mr. Spicer and another individual, Ms. Delgado specifically stated that "it seems the ***campaign is penalizing me for an 'affair'*** despite it being with my superior." ¶80; Ex. 21 at DEF-00001542-DEF-00001543 (emphasis added). Of course, having an affair is not a

protected characteristic, and even if Plaintiff could prove the Campaign fired her because of her affair with Mr. Miller (and she cannot), it would not sustain an actionable discrimination claim.

Because Plaintiff cannot satisfy her *prima facia* burden, summary judgment should be granted on her discrimination claims.

### C.    Plaintiff's Discrimination Claims Against the Campaign Should Be Dismissed Because It Had Legitimate, Nondiscriminatory Reasons for Any Actions Taken Against Plaintiff.

Even if Plaintiff had established her *prima facie* case of discrimination, which she clearly has not, summary judgment would nevertheless be warranted on Plaintiff's discrimination claim. Under the *McDonnell-Douglas* framework, a defendant can rebut the *prima facie* showing by producing evidence "that the allegedly discriminatory actions were taken for a legitimate, nondiscriminatory reason. If a defendant produces such evidence, the presumption raised by the prima facie case is rebutted, and drops from the case." *Big Apple Tire, Inc. v. Telesector Res. Grp., Inc.*, 476 F. Supp. 2d 314, 325 (S.D.N.Y. 2007) (internal quotations omitted). Defendants' burden of producing evidence of such legitimate reasons is not demanding. *Rosenberg v. Cheaspeake Pharmaceutical and Health Care Packaging*, 888 F. Supp.2d 302, 309 (E.D.N.Y.2012) (employer's burden "is not a particularly steep hurdle").

Here, there is no question that there is sufficient evidence demonstrating that the Campaign had legitimate, non-discriminatory reasons for terminating Plaintiff's consultancy. As explained above, Plaintiff's role with the Campaign ceased to exist after the Presidential Inauguration. After President Trump had been elected the Campaign simply had no need for the services that Plaintiff had been providing up to that point. As a result, other employees in her position left the Campaign for other jobs and Plaintiff has not identified anyone that performed the same duties that she did who remained working for the Campaign. There is no question that a job elimination such as what

occurred in the instant case constitutes a legitimate, non-discriminatory reason for an employment decision. *See, e.g.*, *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 169 (2d Cir. 2014) (finding that elimination of a plaintiff's job was legitimate, nondiscriminatory reason for termination); *DeMarco v. CooperVision, Inc.*, 369 F. App'x 254, 256 (2d Cir. 2010) (granting summary judgment where the defendant demonstrated that the plaintiff's job responsibilities were eliminated).

### D. Plaintiff Cannot Demonstrate That the Campaign's Legitimate, Nondiscriminatory Reasons for Terminating Her Consultancy were <u>Pretextual.</u>

Finally, Plaintiff cannot demonstrate that the Campaign's reasons for terminating her consultancy were pretext for discrimination.  To show that a reason is pretext, a plaintiff must show "*both* that the reason was false, *and* that discrimination was the real reason." *Taylor v. Loc. 32E Serv. Emps. Int'l Union*, 118 F. App'x 526, 527 (2d Cir. 2004) (emphasis in original and quoting *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 515–516 (1993)); *see also Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 251 (2d Cir. 2014) ("[T]he final and ultimate burden is on the plaintiff to establish that the defendant's reason is in fact pretext for unlawful discrimination.") Importantly, Plaintiff cannot offer speculation or conclusory assertions to demonstrate that the stated reason was pretextual. *Vargas v. St. Luke's-Roosevelt Hosp. Ctr.*, No. 16-CV-5733 (JPO), 2020 WL 2836824, at *10 (S.D.N.Y. June 1, 2020)

Here, the evidence makes clear that the Campaign had legitimate reasons for terminating Plaintiff's consultancy and not hiring her for a different position.  Plaintiff cannot produce any evidence to refute this fact.  There is no other employee that Plaintiff can identify with similar experience and qualifications who was retained after Plaintiff's consultancy was terminated.  The Campaign simply no longer had any use for a surrogate and thus Plaintiff's role was eliminated.

Though Plaintiff might be unhappy about that fact, her conclusory objections are not sufficient to support an actionable discrimination claim. *See Randall v. Kaleida Health*, No. 08-CV-925S, 2012 WL 400780, at *6 (W.D.N.Y. Feb. 7, 2012) (explaining that, to show pretext, the plaintiff must present "some hard evidence showing that [his] version of the events . . . is not wholly fanciful") (quoting *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir.2005)). Accordingly, summary judgment is warranted on Plaintiff's discrimination claims.

## III.  DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S RETALIATION CLAIMS

### A.  Legal Standard

Plaintiff's retaliation claims are evaluated under the same *McDonnell-Douglas* burden shifting framework as are her discrimination claims. To establish a *prima facie* case of retaliation, Plaintiff must prove: (i) she engaged in protected activity; (ii) Defendants were aware of the protected activity; (iii) Defendants took an adverse employment action against her; and (iv) a causal connection exists between the protected activity and the adverse employment action. *Rosinski v. Am. Axle and Mfg., Inc.,* 402 Fed. App'x 535, 537-38 (2d Cir. 2010). As with Plaintiff's discrimination claims, if Plaintiff satisfies her *prima facie* burden, Defendants must produce a non-retaliatory reason for the adverse action and Plaintiff must then demonstrate that the non-retaliatory reason was pretextual.

### B.  Summary Judgment Is Warranted On Plaintiff's Retaliation Claim Based on the Termination of her Consultancy.

As explained above, neither Mr. Priebus nor Mr. Spicer had any role in any decision taken by the Campaign concerning Plaintiff, *see supra* at pp. 7-8, and thus they are entitled to summary judgment on Plaintiff's retaliation claims. Moreover, even assuming, *arguendo* that Plaintiff can satisfy her *prima facie* case as to the Campaign, as explained above, it had a legitimate, non-

retaliatory basis for any decisions it made concerning Plaintiff's role and the termination of the same. Plaintiff's role as a surrogate for the Campaign was no longer necessary after the 2016 election and her job responsibilities were eliminated, as were the responsibilities of all similarly situated employees. *See Fitzgerald v. We Co.*, No. 20-cv-5260 (AT), 2022 WL 952963, at *7 (S.D.N.Y. Mar. 30, 2022) (Torres, J.) (granting summary judgment on a retaliation claim where the defendants terminated Plaintiff because they "eliminated every employee in her role").

Plaintiff might argue that she was terminated in response to the Tweets, and, because the Tweets themselves constituted protected activity, the termination itself was retaliatory. However, any such argument would fail as a matter of law. First, there is no evidence that Plaintiff's termination was because of the Tweets themselves. Plaintiff has failed to present any evidence that they played any role in the decision to terminate her consultancy with the Campaign. Even if this were not the case, however, the law is clear that the Tweets cannot constitute protected activity. Under the law, in order to engage in protected activity, "the complainant must put the employer on notice that the complainant believes that discrimination is occurring." *Ramos v. City of New York*, No. 96-cv-3787 (DLC), 1997 WL 410493, at *3 (S.D.N.Y. July 22, 1997). In addition, vague and non-specific complaints generally will not constitute protected activity. Rather, the complaint must contain sufficient detail such that "the employer must have understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by the employment discrimination laws." *Mayers v. Emigrant Bancorp, Inc.*, 796 F. Supp. 2d 434, 448 (S.D.N.Y. 2011) (internal quotations omitted).

In the instant case, Plaintiff's Tweets never even hinted that she was complaining about discrimination and/or harassment based on a protected characteristic. ¶73; Ex. 17; 18. Although she discussed her relationship with Mr. Miller, she never alleged that it was involuntary. To the

contrary, she compared Mr. Miller to John Edwards, the disgraced former senator who had a consensual affair with a staffer.  ¶¶69-70; Ex. 1 at pp. 216-216, 218; Ex. 17.  Accordingly, there was no reason for Defendants to even suspect that she was engaging in protected activity, which is fatal to a retaliation claim.  *See*, *e.g.*, *Rojas v. Roman Cath. Diocese of Rochester*, 660 F.3d 98, 108 (2d Cir. 2011) ("generalized complaints of mistreatment are insufficient to constitute protected activity); *Aspilaire v. Wyeth Pharms., Inc.*, 612 F. Supp. 2d 289, 308–09 (S.D.N.Y. 2009) ("The onus is on the speaker to clarify to the employer that he is complaining of unfair treatment due to his membership in a protected class and that he is not complaining merely of unfair treatment generally . . . While plaintiff may have believed that she was the victim of discrimination, an undisclosed belief of such treatment will not convert an ordinary employment complaint into a protected activity").

### C.  Summary Judgment Is Warranted on Plaintiff's Retaliation Claim Based on the Arbitration Filed by the Campaign

Similarly, the Campaign[4] is also entitled to summary judgment on Plaintiff's claim for retaliation stemming from her breach of her NDA.  First, Plaintiff cannot demonstrate that the Campaign's decision to institute claims against her was motivated by a retaliatory animus.  To demonstrate retaliatory animus, a plaintiff needs to show that "the retaliatory action was close in time to the protected activities; that other similarly situated employees were treated differently; or by offering direct proof of retaliatory animus."  *Allen v. St. Cabrini Nursing Home, Inc.*, 198 F. Supp. 2d 442, 450 (S.D.N.Y. 2002).  Plaintiff cannot show any such evidence demonstrating that the Campaign was motivated by a retaliatory animus.

---

[4]    As there is no evidence that Mr. Priebus or Mr. Spicer had any role in the decision to institute legal proceedings against Plaintiff, summary judgment should be granted to them on this claim.

Plaintiff first complained that she was being treated differently because of her pregnancy on December 23, 2016.  ¶82; Ex. 19 at P00003-P00004.  According to Plaintiff's Amended Complaint, she informed the Campaign of her intention to file her purported discrimination claim on March 29, 2017.  ECF No. 94 at ¶60.  The Campaign instituted the arbitration on July 31, 2017, over four months later.  To support an inference of retaliation, the time between the protected activity and the adverse action must be very short, generally less than three months: "Claims of retaliation are routinely dismissed when as few as three months elapse between the protected activity and the alleged act of retaliation."  *Allen*, 198 F. Supp. 2d at 450 (collecting cases).  Thus, Plaintiff cannot demonstrate a retaliatory animus based on temporal proximity.

Plaintiff also cannot demonstrate that similarly situated employees were treated differently than she was.  To the contrary, it is well publicized that the Campaign has brought claims for similar breaches of employees' NDAs, even where those employees had not sued the Campaign. ¶¶135, 136; Ex. 42-43.  Accordingly, it is clear that the Campaign sued every employee it believed had divulged confidential information in violation of their NDA, undermining any retaliatory inference in this case.  *Nugent v. St. Luke's/Roosevelt Hosp. Ctr.*, No. 05 CIV. 5109 (JCF), 2007 WL 1149979, at *11 (S.D.N.Y. Apr. 18, 2007) (holding that the plaintiff "has not raised an inference of retaliatory animus because she cannot demonstrate that she was treated differently from other similarly situated employees").  Because Plaintiff has also not identified any direct proof of retaliatory animus, the Campaign is entitled to summary judgment on her retaliation claim.

Even if Plaintiff could establish a *prima facie* claim of retaliation against the Campaign, the Campaign had a legitimate, non-retaliatory basis for its decision to institute claims against Plaintiff for breaching her NDA.  Specifically, the Campaign only decided to institute an arbitration against Plaintiff after she had already breached the NDA by revealing confidential information

about one of the Campaign's employees, Mr. Miller, and threatened to disclose confidential information about the Campaign publicly that the Campaign believed to be unnecessary to prosecuting her claims.  ¶¶137-139; Glassner Decl. at ¶¶ 5-11, 13.  As the First Department held in a case under almost identical facts, because the Campaign presented evidence that it "in good faith believed plaintiff violated the NDA by making factual allegations that exceeded the facts necessary to state a viable claim," the Campaign had a legitimate, non-retaliatory basis for instituting an arbitration against the plaintiff.  *Denson v. Donald J. Trump for President, Inc.*, 168 N.Y.S.3d 681 (1st Dep't 2022).  The same holds true in the instant case.  *See also Schanfield v. Sojitz Corp. of Am.*, 663 F. Supp. 305, 342 (S.D.N.Y. 2009) ("I can see nothing in Title VII or any other anti-discrimination statute that should prevent an employer from bringing a legitimate claim against a current or former employee simply because that employee has complained about what the employee believes to be discriminatory behavior").

## IV.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIM.

As a threshold matter, Plaintiff only alleges that she was subjected to a hostile work environment under the NYCHRL.  ECF No. 94 at ¶ 114.  It is important to note that the NYCHRL does not differentiate between hostile work environment and discrimination claims.  *Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 261 (E.D.N.Y. 2012).   In order to prevail on such a claim, Plaintiff must show that she "has been treated less well than other employees" because of her gender and/or pregnancy.  *Id.* (internal quotations omitted).  Additionally, the NYCHRL "is not a general civility code" and "sporadic" comments will not suffice to create a hostile work environment.  *Jean-Pierre v. Citizen Watch Co. of Am., Inc.*, No. 18-CV-0507 (VEC), 2019 WL 5887479, at *15 (S.D.N.Y. Nov. 12, 2019).

Plaintiff filed this case on December 23, 2019. The statute of limitations for claims under the NYSHRL and/or the NYCHRL is three years. *See, e.g., Freud v. New York City Dep't of Educ.*, No. 21-cv-2281 (MKV), 2022 WL 889213, at *6 (S.D.N.Y. Mar. 25, 2022), *aff'd*, No. 22-879, 2023 WL 3103588 (2d Cir. Apr. 27, 2023) (explaining that "[NY]SHRL and [NY]CHRL claims are additionally subject to a three-year statute of limitations"). Therefore, any comments that Plaintiff alleges occurred before December 23, 2016, including any comments made during Plaintiff's term as an independent contractor with the Campaign, are time barred, and therefore not actionable. *See, e.g., Maynard v. Montefiore Med. Ctr.*, No. 18-CV-8877 (LAP), 2021 WL 396700, at *14 (S.D.N.Y. Feb. 4, 2021) (refusing to consider pre-limitations conduct in a hostile work environment claim). Similarly, Plaintiff cannot seek to revive these untimely claims by citing to the continuing violations doctrine because Plaintiff cannot demonstrate that the pre-limitations conduct was sufficiently related to the conduct that occurred after December 23, 2016, such that they would be sufficiently related, particularly since the pre-limitations conduct involves different individuals making sporadic, and isolated comments. *Annunziata v. Int'l Bhd. of Elec. Workers Loc. Union # 363*, No. 15-cv-03363 (NSR), 2018 WL 2416568, at *16 (S.D.N.Y. May 29, 2018) (no continuing violation because "the pre-limitations harassing behavior was largely sexual in nature," whereas the comments during the limitations period were not).

Moreover, as discussed above, Plaintiff cannot point to any evidence that she was treated less well as a result of her gender and/or pregnancy. Indeed, she cannot identify any actions taken by Defendants that were because of her gender or pregnancy. In addition, to the extent that Plaintiff seeks to transform a handful of isolated comments by different employees about women into a hostile work environment claim, even under the more liberal NYCHRL, such "petty slights and trivial inconveniences, [] are not actionable." *Mullins v. Consol. Edison Co. of New York, Inc.*, No.

13-cv-6800(LGS), 2015 WL 4503648, at *13 (S.D.N.Y. July 22, 2015) (internal quotations omitted).  Importantly, courts routinely grant summary judgment even in the case where the plaintiff alleges far more severe misconduct.  *See*, *e.g.*, *Panzarino v. Deloitte & Touche LLP*, No. 05-cv-8502(BSJ)(RLE), 2009 WL 3539685, at *9 (S.D.N.Y. Oct. 29, 2009) (cursing and comments about pregnant women were not actionable) *Magnoni v. Smith & Laquercia, LLP*, 701 F. Supp. 2d 497, 505-06 (S.D.N.Y. 2010) (denying a plaintiff's NYCHRL hostile work environment claim where the defendant told plaintiff explicit details of his sex life and touched her knee).  Plaintiff's hostile work environment claim should be similarly dismissed.

## V.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S AIDING AND ABETTING CLAIMS

Plaintiff's claims for aiding and abetting must similarly fail.  "Where no violation of the SHRL by an employer has been established, an individual employee cannot be held liable for aiding or abetting such a violation."  *Smalls v. New York Hosp. Med. Ctr. of Queens*, No. 13-CV-1257 (RRM)(CLP), 2015 WL 5437575, at *14 (E.D.N.Y. Sept. 15, 2015).  Here, because Plaintiff cannot demonstrate that the Campaign discriminated and/or retaliated against her, she cannot sustain claims for aiding and abetting against Mr. Spicer or Mr. Priebus.  Plaintiff's claims independently fail because, to be found liable, the defendants "must actually participate" in the discriminatory conduct at issue.  *Warren v. Ultimate Fitness Grp., LLC*, No. 19-cv-10315 (KMK), 2021 WL 4239246, at *5 (S.D.N.Y. Sept. 17, 2021) (internal citations omitted).  Here, there is no evidence that Mr. Priebus or Ms. Spicer participated in the decision to terminate Plaintiff's consultancy with the Campaign and there is likewise no evidence that Mr. Priebus or Mr. Spicer had any role in the decision to bring a claim against Plaintiff for breaching her NDA.  Moreover, a defendant cannot be held liable for aiding and abetting its own conduct.  *Hardwick v. Auriemma*, 983 N.Y.S.2d 509 (1st Dep't 2014). Thus, summary judgment should be granted on these claims.

## VI.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S BREACH OF CONTRACT CLAIM

To recover on a breach of contract claim under New York law, a plaintiff must establish the following four elements: (1) the existence of an enforceable contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages.  *Arnone v. Deutsche Bank AG*, No. 02-cv-4915 (MGC), 2003 WL 21088514, at *2 (S.D.N.Y. May 13, 2003).  In addition, "to form a valid contract under New York law, there must be an offer, acceptance, consideration, mutual assent and intent to be bound." *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004) (internal quotation omitted).  In this case, there was no acceptance, no consideration, no mutual assent and no intent to be bound, thus precluding Plaintiff's claim that the proposed settlement agreement constituted a valid and enforceable contract.

As the record in this case demonstrates, although the parties had agreed on the financial component of a settlement of Plaintiff's claims, both sides acknowledged the "need to work out payment and other terms" and to reduce the settlement to a "formal signed writing."  ¶148, Ex. 44 at P000158-159.  Contrary to what Plaintiff now claims, the "payment and other terms" were not only essential terms to the parties' agreement, they set forth the terms of the consideration that Plaintiff would provide in exchange for any payment from Defendants.  *Compass Prods. Int'l LLC v. Charter Commc'ns, Inc.*, No. 22-254, 2023 WL 2358479, at *2 (2d Cir. Mar. 6, 2023) ("Under New York law, Compass must establish there was a meeting of the minds on all essential terms of the contract").  Because the parties never agreed on the terms of the consideration that Defendants would receive in exchange for their purported settlement payment, there can be no enforceable contract as a matter of black-letter law. *Prospect St. Ventures I, LLC v. Eclipsys Sols. Corp.*, 804 N.Y.S.2d 301, 302 (1st Dep't 2005) (explaining that "a mere 'agreement to agree'" is not an enforceable contract).

21

Subsequently, the parties exchanged multiple draft settlement agreements. ¶¶151-153, 155, 157; Ex. 45 at P000194-195; Ex. 46 at P000212-214; Ex 50. Most notably, Plaintiff rejected the terms offered by Defendants on July 7, 2017 and sent Defendants a revised agreement on July 10, 2017. ¶¶155, 157; Ex. 45; Ex. 50. By proposing a new settlement agreement, Plaintiff rejected Defendants' previous proposal under New York law. *See Thor Props., LLC v. Willspring Holdings LLC*, 118 A.D.3d 505, 508 (1st Dep't 2014) ("If instead the offeree responds by conditioning acceptance on new or modified terms, that response constitutes both a rejection and a counteroffer which extinguishes the initial offer") (emphasis added)). There is no question that Defendants never accepted this new offer proposed by Plaintiff, instead making clear that they were not willing to proceed with the settlement.

Finally, the fact that neither side signed any of the drafts of the settlement agreement also forecloses Plaintiff's breach of contract claim. Under New York law, "if the parties contemplate a reduction to writing of their agreement before it can be considered complete, there is no contract until the writing is signed." *Chromalloy Am. Corp. v. Universal Housing Systems of America, Inc*., 495 F. Supp. 544, 550 (S.D.N.Y. 1980). Here, both parties acknowledge that the settlement would need to be documented in writing before it could be finalized. ¶¶148-150; Ex. 44 at P000158-161. Similarly, the draft agreement prepared by Plaintiff acknowledged that the settlement agreement would need to be signed by both sides to be valid and enforceable and that neither party was relying on any prior agreements or representations concerning the proposed settlement. ¶¶151-153; Ex. 45 at P000194-195. Given that the settlement was never reduced to writing, Plaintiff cannot seek to enforce a contract that never existed under New York law.[5]

---

[5]    It is important to note that Plaintiff never alleged her breach of contract claim as an alternative to her discrimination and/or retaliation claims. Because Plaintiff's waiver of her employment claims against Defendants were an essential part of the consideration in any

**VII.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S PROMISSORY ESTOPPEL CLAIM**

To state a promissory estoppel claim, a plaintiff must offer: "(i) a clear and unambiguous promise, (ii) reasonable and foreseeable reliance by the party to whom the promise is made, and (iii) an injury sustained in reliance on that promise." *Agress v. Clarkstown Cent. Sch. Dist.*, 69 A.D.3d 769, 771 (2d Dep't 2010). In order to state such a claim, a party must have relied so heavily upon the promise that it would be unconscionable to deny enforcement of the oral agreement. *Kotlyarsky v. New York Post*, 195 Misc. 2d 150, 155 (NY Sup. Ct. 2003).  Plaintiff cannot satisfy any of the elements of her promissory estoppel claim in the instant case.

Here, the only purported promise that Plaintiff has identified stems from Defendants' agreement to pay her money to settle all of her claims.  But any such promise is subsumed by the settlement agreements that the parties contemplated.  As a matter of law, a promissory estoppel claim is deemed duplicative of a breach of contract claim, and therefore fatally flawed, unless the defendant had a duty independent of the contract. *See Shetel Indus. LLC v. Adin Dental Implant Sys., Inc.*, 493 F. Supp. 3d 64, 114 (E.D.N.Y. 2020) (explaining that promissory estoppel claims are "are precluded by the fact that a simple breach of contract claim may not be considered a tort unless a legal duty independent of the contract—i.e., one arising out of circumstances extraneous to, and not constituting elements of, the contract itself—has been violated") (internal quotations omitted).   In the instant case, there is no duty independent of the contract that the parties contemplated and Plaintiff's promissory estoppel claim must therefore be dismissed as being duplicative of her (frivolous) breach of contract claim.

---

contemplated settlement, Plaintiff cannot proceed under both a breach of contract claim and under the remainder of her claims in this case.  Thus, to the extent that the Court finds that Plaintiff's breach of contract claim is viable, the remainder of her claims should be dismissed with prejudice.

Even if Plaintiff's promissory estoppel claim was not preempted by her breach of contract claim (which it unquestionably is), it must nevertheless fail on the merits. Plaintiff cannot demonstrate that Defendants ever promised to pay her any money, or that she relied on such promises. As demonstrated above, any supposed promise made by Defendants to pay Plaintiff money was conditioned on the parties' agreement to agree upon and document "the payment and other terms." ¶¶148-150; Ex. 44 at P000158-161. Thus, Defendants never made a clear and unambiguous promise upon which Plaintiff could reasonably rely, but instead made a *conditional* promise that could not be relied upon until the conditions were met. *StarVest Partners II, L.P. v. Emportal, Inc*., 957 N.Y.S.2d 93, 96 (1st Dep't 2012) ("Where a term sheet or other preliminary agreement explicitly requires the execution of a further written agreement before any party is contractually bound, it is unreasonable as a matter of law for a party to rely upon the other party's promises to proceed with the transaction in the absence of that further written agreement").

Finally, Plaintiff cannot demonstrate that she ever relied upon any promise that Defendants purportedly made or that she sustained any injury as a result of that reliance. After Defendants made clear that they were not agreeing to a settlement, Plaintiff proceeded to file the instant action. Similarly, Plaintiff has been publicizing this case and the circumstances surrounding her dealings with Defendants for years. Thus, Plaintiff is in the same position as if the parties had never agreed to a settlement in the first instance – litigating her employment discrimination claims in court. Plaintiff cannot show that she relied on Defendants' purported promises in any manner, nor can she demonstrate that such a reliance injured her in any way.

## VIII.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S INTERFERENCE CLAIM

Plaintiff's interference claim also fails as a matter of law. In order to state an actionable interference claim, Plaintiff must demonstrate that Defendants threatened her in some way. *See*,

*e.g.*, *Keles v. Yearwood*, 254 F. Supp. 3d 466, 476 (E.D.N.Y. 2017) ("threats are required to state a claim for violation of New York City Administrative Code §8-107(19)") (cleaned up).  A "threat" under Second Circuit law is "the creation of an impression of impending injury."  *Leizerovici v. HASC Ctr., Inc.*, No. 17-CV-3605 (BMC), 2018 WL 1114703, at *12 (E.D.N.Y. Feb. 27, 2018) (internal quotations omitted).  Moreover, it is not merely enough for a plaintiff to demonstrate that a defendant threatened her.  Rather, she must also demonstrate that the threats were made to interfere with the plaintiff's "exercise of a protected right" under the NYCHRL.  *Nieblas-Love v. New York City Hous. Auth.*, 165 F. Supp. 3d 51, 78 (S.D.N.Y. 2016).  Here, Plaintiff cannot demonstrate that any of the Defendants ever threatened her in this case.  Even if Plaintiff could point to any such threats – of which there is no evidence in the record – she certainly cannot demonstrate that Defendants threatened her because of her exercise of her rights under the NYCHRL.  Summary judgment should be granted on Plaintiff's interference claim.

## IX.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S VICARIOUS LIABILITY CLAIM

Plaintiff's tenth cause of action is one for vicarious liability under the NYCHRL.  However, "it is well-established that the NYCHRL employer liability provision does not create a substantive cause of action."  *Scott v. YSB Servs. Inc.*, No. 21-CV-7711 (VSB), 2024 WL 1330043, at *7 (S.D.N.Y. Mar. 28, 2024).  Plaintiff's claim is duplicative of the underlying discrimination claims. *Id.*  Defendants are therefore entitled to summary judgment on Plaintiff's vicarious liability cause of action.

## X.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM FOR TORTIOUS INTERFERENCE

In order to sustain a claim for tortious interference with prospective economic advantage, Plaintiff must show "(1) business relations with a third party; (2) defendants' interference with those business relations; (3) that defendants acted with the sole purpose of harming the plaintiff or

used dishonest, unfair, or improper means; and (4) injury to the relationship." *Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 417 (2d Cir. 2012). Plaintiff's tortious interference claim fails as a matter of law.

To the extent that Plaintiff claims that Defendants tortiously interfered with her ability to obtain a job with the White House, this claim fails for several reasons. First, Plaintiff cannot identify any job offer that she had received from the White House at any point. Instead, she only points to vague statements from President Trump that she was "coming with" him when he won the election. Ex. 1 at p. 142. However, such a vague statement clearly cannot support a tortious interference claim. *See, e.g., Miller v. Livanis*, 137 N.Y.S.3d 15, 16 (1st Dep't 2020) ("vague aspirations of future employment are insufficient" to support a tortious interference claim).

Instead, as the record demonstrates, Plaintiff, at most, was being considered for a job within the White House by Mr. Miller. However, after the Tweets, Mr. Miller was withdrawn from consideration for that potential appointment within two days of the original announcement. ¶77; Ex. 4 at 49-50, 71-72, 75; Ex. 20. Because he was merely in the position to receive a potential appointment as Communications Director, and only for two days, Mr. Miller never had any authority to make hiring decisions for the White House. ¶93; Ex. 3 at p. 126. Instead, Mr. Spicer made the decision as to who would be hired for roles in the White House Press and/or Communications Departments.[6] ¶94; Ex. 8 at pp. 39-41.

Far from being motivated solely by a desire to harm Plaintiff, the record is clear that Mr. Spicer had ample justification for not considering Plaintiff for a role within the White House.

---

[6]    There is no evidence that Mr. Priebus played any role in the decision not to offer Ms. Delgado a job with the White House.  ¶¶ 40-41, 43; Ex. 4 at 35-37, 59, 73-76; Priebus Decl. at ¶¶3-6.  Similarly, the Campaign could not play any role in the decision to not hire Plaintiff for a role in the White House as a matter of federal law.  ¶¶3-6; Ex. 2 at pp. 16, 17, 84, 86-88, 94-95; Ex. 3 at pp. 27-28, 31-32; Ex. 4 at pp. 16-17, 93-94.

Plaintiff did not have the requisite experience or capabilities to work in the White House Press or Communications Departments.  Plaintiff sought a job that would allow her to work from Florida, which she stated she required for assistance with childcare.  ¶98; Ex. 8 at pp. 75-76.  However, every employee with the White House was required to work from Washington D.C. and report to the office.  ¶¶99-100; Ex. 8 at pp. 41-42, 74-76.  The job Plaintiff sought simply did not exist. ¶¶95; Ex. 8 at pp. 75-76.

Moreover, Plaintiff's position on the Campaign was fundamentally different than a job in the White House Communications Department.   By way of example only, the primary responsibility of a surrogate for the Campaign was to conduct interviews and appear on various television news programs as an advocate for the political candidate.  ¶¶29, 117; Ex. 8 at pp. 60-61; Ex. 10 at P000451-P000453.   In contrast, members of the White House Communications Department never gave interviews, nor did they appear in the press. ¶117; Ex. 8 at pp. 60-61. This caused Mr. Spicer to believe that she was not qualified for a role in the White House.   Although Ms. Delgado might disagree with this assessment, her disagreement is insufficient to raise an inference of discrimination or to allow the Court to "sit as a super-personnel department that reexamines" Mr. Spicer's hiring decision.  *Chen v. City Univ. of N.Y.*, 805 F.3d 59, 73 (2d Cir. 2015).

Moreover, Mr. Spicer believed that the circumstances surrounding Plaintiff's Tweets disqualified her from working in the White House.  ¶¶102, 105-106, 108; Ex. 8 at pp. 30, 57-59, 61-62.  Plaintiff's Tweets were a distraction for the Campaign at a time when it should have been preparing for the upcoming Inauguration. ¶103; Ex. 5 at pp. 22-23; Ex. 24 at TFA_DG_00002569; Ex. 25 at TFA_DG_00007397; Ex. 26 at TFA_DG_00010664; Ex. 27.  Incredibly, when Mr. Spicer spoke to Ms. Delgado about Plaintiff's Tweets, she exacerbated her inappropriate conduct, and

demonstrated further poor judgment, by *threatening* the incoming administration, stating if any articles appeared in the press (something that was almost assured given Plaintiff's publicity seeking behavior) she would respond by issuing additional tweets disparaging other members of the Trump Administration.  ¶104; Ex. 8 at p. 30.   The decision to publicly announce her relationship with Mr. Miller, coupled with Plaintiff's decision to speak with members of the media about her Tweets showed poor judgment unbefitting of a White House employee.  ¶¶109-111; Ex. 8 at 57-59, 65-66.   The primary function of a member of the White House Communications Department was to further the message of the President.  ¶109; Ex. 8 at p. 59.  Any conduct that did not comport with this served as a distraction that detracted from the Administration's message. By publicly tweeting that she was involved in a sexual relationship with Mr. Miller, and by speaking to the press afterwards, Plaintiff made *herself* the story, which was not compatible with a job in the White House Communications Department.  ¶110; Ex. 8 at pp. 57-59.   In any case, Plaintiff cannot demonstrate that Mr. Spicer was motivated solely by a desire to harm her, as necessary to support a tortious interference claim.

In her Amended Complaint, Plaintiff identifies several government agencies that she claims would have extended her offers of employment but for Defendants' conduct.  ECF No. 94 at ¶¶55-56.  However, there is no evidence that Plaintiff ever received an actual job offer from any of these organizations, itself fatal to Plaintiff's tortious interference claim.[7]  *Brook v. Peconic Bay Med. Ctr.*, 181 N.Y.S.3d 884, 885 (1st Dep't. 2023) ("Plaintiff failed to raise an issue of fact as to the existence of a job offer that would have been extended to him but for defendant's conduct;

---

[7]      To the extent that Plaintiff seeks to rely on an e-mail that she received from chief programming officer of Fox News, this Court has already ruled that "this broadly encouraging email does not indicate a "business relationship"—much less a job offer—as required for a tortious interference claim." *Delgado v. Donald J. Trump for President, Inc.*, No. 19-cv-11764 (AT), 2024 WL 3639541, at *2 (S.D.N.Y. Aug. 1, 2024)

accordingly, the claim alleging tortious interference with prospective economic advantage was properly dismissed"); *Hernandez v. Kwiat Eye & Laser Surgery, PLLC*, No. 20-cv-42(FJS)(CFH), 2023 WL 372105, at \*11 (N.D.N.Y. Jan. 24, 2023) (granting summary judgment where the plaintiff had no more than speculation about job offers she might have obtained).  Moreover, even if Plaintiff were able to produce evidence that she had a concrete job offer or other business opportunity in this case, she has failed to produce any evidence that Defendants ever communicated with any of these organizations about Plaintiff at all, much less that these communications in any way interfered with Plaintiff's ability to secure these jobs or that their conduct was motivated solely by malice, warranting summary judgment.

## XI.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S PRIMA FACIE TORT CLAIM

Finally, Plaintiff's cause of action for prima facie tort should be dismissed.  "The elements for such a tort are: (1) intentional infliction of harm; (2) resulting in special damages; (3) without excuse or justification; (4) by an act that would otherwise be lawful." *Twin Lab'ys, Inc. v. Weider Health & Fitness*, 900 F.2d 566, 571 (2d Cir. 1990).  To satisfy the first prong, Plaintiff must show that Defendants' conduct was motivated solely by "disinterested malevolence." *Id*.  In other words, if Defendants had *any* other motive, "such as profit, self-interest, or business advantage [it] will defeat a prima facie tort claim." *Id*. (internal quotations omitted).  Here, as explained above, Defendant Spicer had other motives for refusing to hire Plaintiff aside from pure malevolence. *See supra* at pp. 26-28.  Similarly, the Campaign was not motivated by malevolence when it decided to bring suit against Plaintiff; it was protecting its legitimate confidentiality interests. *See supra* at pp. 16-18.  Finally, Plaintiff's *prima facie* tort claim is premised on her theory that she "would have almost certainly been named Deputy Press Secretary" but for Defendants' actions.  ECF No. 94 at p. 23.  However, there is not a scintilla of evidence adduced in discovery supporting this

claim.  The White House jobs were understandably in high demand and there were more people interested in them than there were positions available.  Plaintiff's unsubstantiated belief that she was entitled to a White House job, much less that of Deputy Press Secretary, does not satisfy her burden of identifying a specific business opportunity that resulted in specific special damages. Thus, Plaintiff's *prima facie* tort claim must fail.

## **CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment should be granted in its entirety.

Dated: September 20, 2024
       New York, New York

**SCHULMAN BHATTACHARYA, LLC**

By:    /s/ Jeffrey S. Gavenman
       Jeffrey S. Gavenman
       6116 Executive Boulevard, Suite 425
       North Bethesda, Maryland 20852
       and
       240 West 40th Street
       New York, NY 10018
       Tel.: (240) 356-8550
       Facsimile: (240) 356-8558
       Email: jgavenman@schulmanbh.com
