IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARLENE J. DELGADO,<br><br>               Plaintiff,<br><br>v.<br><br>DONALD J. TRUMP FOR PRESIDENT, INC., *et al*.,<br><br>               Defendants. | Case No. 19-cv-11764 (AT) (KHP) |

**DECLARATION OF MICHAEL GLASSNER**

MICHAEL GLASSNER pursuant to 28 U.S.C. § 1746, declares and says as follows:

      1.      I am a former employee of Donald J. Trump for President, Inc. (the "Campaign"). From July 2015 to March 2016, I was the Political Director for the Campaign. Between March 2016 and January 2017, I was the Deputy Campaign Manager for the Campaign and from January 2017 through June 2020, I was its Chief Operating Officer. Subsequently, from June 2020 until December 2020 I was a Senior Advisor to the Campaign.

      2.      I have extensive experience in politics and working on presidential campaigns, which have included Senator Bob Dole's 1998 and 1996 presidential campaigns, President Bush's 2000 presidential campaign, Senator John McCain's 2008 presidential campaign, and President Trump's 2016 and 2020 presidential campaigns.

      3.      It is extremely important for a presidential campaign to be able to maintain a private environment where it can formulate ideas, strategies, and decisions, create messaging, and engage in the strategic work required to successfully elect, or re-elect, a presidential candidate.

4. In order to facilitate this process, presidential campaigns must be able to expect that their employees, consultants and volunteers are going to maintain the confidentiality of the campaign's overall strategic plan and its associated data and information.

5. To assist in maintaining the confidentiality that was central to the Campaign's operations, each employee and independent contractor was required to sign a non-disclosure agreement ("NDA") designed to enable the Campaign to safeguard its secrets from the public and from competing campaigns.

6. These NDAs prevent unsanctioned disclosures of private and confidential information that could be detrimental to the Campaign's goals and could be used by competing campaigns to learn confidential information about, *inter alia*, campaign strategy and messaging.

7. A presidential campaign may use and implement some of the same strategies during more than one election cycle; therefore, the importance of maintaining confidentiality extends past the date of the election.

8. As such, following the 2016 Presidential Election, the Campaign wanted it to be know that it had a "zero tolerance" approach to actual or threatened breaches of its confidentiality rights as embodied in the NDAs, because scandalous or embarrassing leaks of certain private and sensitive information would distract from, and damage, the Campaign's messaging, and reflect poorly on then President Trump, who was in his first term in office and eligible for re-election.

9. To that end, the Campaign brought legal action against individuals who divulged, or threatened to divulge, confidential, proprietary or strategic information about the inner workings of the Campaign, its strategic goals and/or its messaging priorities, among other things.

10. In or around March 2017, I learned that former Campaign consultant Arlene Delgado intended to file a lawsuit against the Campaign that threatened to reveal confidential

information concerning the Campaign that was not necessary to pursue her legal claims, the purpose of which was to embarrass the Campaign and to obtain publicity at the Campaign's expense. The Campaign also believed that Ms. Delgado would not be willing to take necessary and simple steps to balance her unquestioned right to file claims against the Campaign with her confidentiality responsibilities pursuant to her NDA, such as by filing any potential legal filings under seal.

11. Ms. Delgado had also previously revealed confidential information in a series of tweets that she published in or around December 2016 concerning one of the Campaign's former employees, Jason Miller. Specifically, in one of her tweets, Plaintiff stated that there was "an announcement **forthcoming** concerning the new Comms [Communication] Director," for the White House and identified Jason Miller as the individual who would be appointed to that position. In other words, Ms. Delgado revealed Mr. Miller's posting prior to it having been publicly announced, a clear violation of her NDA.

12. In light of her repeated breaches and/or threatened breaches of her NDA, the Campaign felt that it was required to enforce its contractual rights to confidentiality and to ensure that Ms. Delgado realized that such breaches would not be acceptable moving forward.

13. The Campaign never challenged Ms. Delgado's ability to file a lawsuit litigating her discrimination and/or retaliation claims and did not initiate an arbitration against her for filing her claims in this court. Rather, the Campaign initiated the arbitration because it had a good faith belief that she had breached her NDA and it further believed it was important to enforce the Campaign's contractual rights to discourage any other confidentiality breaches, whether by Ms. Delgado or other former employees and/or consultants of the Campaign.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: 9/20/24

_____
Michael Glassner