## Message

| | |
|---|---|
| **From**: | AJ Delgado [ajdelgado@donaldtrump.com] |
| **Sent**: | 12/5/2016 5:24:27 PM |
| **To**: | Monica Block [monica.j.block@ptt.gov] |
| **CC**: | Charles Gantt [charles.a.gantt@ptt.gov]; Julia Johnson [julia.b.johnson@ptt.gov] |
| **Subject**: | Re: TFA Consultant Contract - Arlene Delgado |
| **Attachments**: | 11.17.16 5.11 p.m. PETT Certification Form-pdffiller.pdf; 11.17.16 5.11 p.m. PETT Code of Ethical Conduct-pdffiller.pdf; 11.27.16 12.27 p.m. PETT Confidentiality Agreement-pdffiller.pdf; PETT - CONSULTANT AGREEMENT - Delgado_1_-pdffiller.pdf |
| **Flag**: | Follow Up |

Team,

Attached please find all 4 of the forms, signed. Thanks!

---

**From:** AJ Delgado <ajdelgado@donaldtrump.com>
**Date:** Monday, December 5, 2016 at 10:54 AM
**To:** Monica Block <monica.j.block@ptt.gov>, Arlene Delgado <arlene.delgado@ptt.gov>
**Cc:** Charles Gantt <charles.a.gantt@ptt.gov>
**Subject:** Re: TFA Consultant Contract - Arlene Delgado

Sure thing, Monica — I'll get all this signed and over to you this afternoon. Thank you

---

**From:** Monica Block <monica.j.block@ptt.gov>
**Date:** Monday, December 5, 2016 at 10:50 AM
**To:** AJ Delgado <ajdelgado@donaldtrump.com>, Arlene Delgado <arlene.delgado@ptt.gov>
**Cc:** Charles Gantt <charles.a.gantt@ptt.gov>
**Subject:** TFA Consultant Contract - Arlene Delgado

Hi AJ,

Attached is your consultant contract from the Transition. As I understand it, you will be being paid half of your monthly retainer from the Transition and half from the campaign which is why the number in this contract is half of what you will actually receive. Could you please review, sign, and send back to me along with an invoice for your Transition work from 11/11 - 11/30? We would like to get this money wired to you today so anything you can do to have this signed this morning is greatly appreciated.

I've also attached our three legal forms that will need you to sign and send back as well. I apologize if you've already signed these, but we don't have them in our records so I would appreciate you signing one more time.

Please let me know if you have any questions!

Sincerely,
Monica

# President-Elect's Transition Team
## Certification Form

By signing below, I hereby certify that I am not currently registered and reporting as a federal lobbyist, as defined by the Lobbying Disclosure Act, as amended, or as a compensated lobbyist at the state level in any state.  If I was listed as a lobbyist on the most recent lobbying disclosure form or report required to be filed by federal or state law, I hereby notify the President-Elect's Transition Team ("PETT") that I have filed the necessary form(s) with the appropriate government agencies to terminate my status as a registered lobbyist.  I will provide the PETT with written evidence of my federal or state lobbyist termination as soon as practicable.

I further certify that I am not currently registered as an agent of a foreign principal under the Foreign Agent Registration Act, as amended ("FARA").  If I filed as an agent of a foreign principal for the most recent filing period, I hereby notify the PETT that I have filed the necessary forms with the Department of Justice to terminate my registration under FARA.  I will provide the PETT with written evidence of my FARA termination as soon as practicable.

12/5/16
Date

Arlene Delgado
Name (print):

*[signature]*
Signature

DEF-00001686

# PRESIDENT-ELECT'S TRANSITION TEAM
# CODE OF ETHICAL CONDUCT

As a condition of being permitted to serve as a member of the President-Elect's Transition Team ("PETT"), I agree to abide by the following requirements:

1. I will disqualify myself from involvement in any particular transition matter which to my knowledge may directly conflict with a financial interest of mine, my spouse, minor child, partner, client or other individual or organization with which I have a business or close personal relationship. Where there is no such direct conflict, but there may be an appearance of a conflict, I will address this issue for resolution to the PETT General Counsel. I currently have no knowledge of any such conflicts.

2. I will disqualify myself from involvement in any particular transition matter if I have engaged in regulated lobbying activities with respect to such matter, as defined by the Lobbying Disclosure Act, within the previous 12 months.

3. I will not accept or solicit any money or thing of value in exchange for a promise to support or use influence on behalf of any person who is a potential candidate for any appointive office or place in the United States Government or advocate for or advance any policy or action.

4. I understand that in my transition-related activities, unless given specific authorization, I am not permitted to make any representation on behalf of President-elect Donald J. Trump, his designees, or any official of the transition.

5. I understand that authorization is required from the transition Chairman, Executive Director, or a designee of one of them before seeking, on behalf of the transition, access to any non-public information.

6. I will keep confidential any non-public information provided to me in the course of my duties with the transition and will use such information exclusively for purposes of the transition.

7. I will not use or permit to be used any non-public information provided to me in the course of my duties with the transition, in any manner, for any private gain for myself or any other party, at any time during or after the transition.

8. During my service with the PETT, I will not, on behalf of any person or entity, engage in regulated lobbying activities, as defined by the Lobbying Disclosure Act, with or before any federal department or agency with respect to a particular matter for which I have direct and substantial responsibility as part of the PETT.

9. For 6 months after I leave, I will not on behalf of any other person or entity, engage in regulated lobbying activities, as defined by the Lobbying Disclosure Act, with respect to a particular matter for which I had direct and substantial responsibility during my service with PETT.

DEF-00001687

10. I will conserve and protect any federal property entrusted to me and shall not use such property, including equipment and supplies, other than for purposes directly related to transition activities.

11. I understand that my commitment to abide by these requirements may be made public and that this document will be made available to any department or agency to which I may be assigned. I will seek guidance from the PETT General Counsel, or the designated agency ethics official, as appropriate, to ensure compliance with these standards of conduct. I furthermore acknowledge that failure to comply with the above provisions may result in my dismissal from the transition and that other sanctions may be imposed as appropriate.

12. I and my immediate family members will not accept a gift from:

   a. Anyone seeking a job with the federal government. The Code of Ethical Conduct and federal law specifically prohibit you from receiving anything of value in return for a promise to support or use influence in obtaining an appointive office for any person.

   b. Anyone who seeks action by PETT or the Trump administration.

   c. A federal employee in any department or agency within the scope of your PETT responsibilities.

   d. Any person or organization that conducts activities regulated by, or has a matter pending before, a department or agency within the scope of your PETT responsibilities.

   e. Any person or organization under circumstances where it may reasonably appear that the gift is being given in order to influence the performance or nonperformance of your duties with PETT.

13. I will not represent, aid or advise a foreign government or foreign political party for the duration of service to PETT.


I, __Arlene Delgado_____, hereby acknowledge that I have read, understand, and will abide by this Code of Ethical Conduct.


_____[signature]_____
Signature


___12/5/16_____
Date

DEF-00001688

# PRESIDENT-ELECT'S TRANSITION TEAM
# CONFIDENTIALITY AGREEMENT

As an employee, contractor, volunteer, or other participant in the President-Elect's Transition Team (the "PETT"), I, the undersigned "Recipient," agree as follows.

1.     Recipient is participating in various projects related to the Presidential transition and has or will have access to the PETT's Confidential Information. Recipient may serve as an officer, director, employee, consultant, representative, or volunteer of the PETT, now or in the future. Recipient further acknowledges that the Recipient's service creates a relationship of confidence and trust between the PETT and Recipient with respect to Confidential Information.

2.     Recipient agrees not to communicate, directly or indirectly, with any member of the news media on behalf of, for, or about the PETT, or any operation connected with the PETT, without express written authorization from the Executive Director of the PETT.

3.     "Confidential Information" means one or more of the following items that have actual or potential value to the PETT from not being generally known to, or not being readily ascertainable through proper means by, the public or persons and entities that can obtain actual or potential value from its disclosure or use: research papers, policy briefings, draft research papers and draft policy briefings; any work product on policy implementation; any work product on presidential appointees; designees, or personnel; contributors and contributions to the PETT and information with respect thereto;  potential contributors and contributions to the PETT and information with respect thereto;  fundraising goals and plans; budgets, proposed budgets, and other financial information;  contributions and expenditures made by the PETT, to be made by the PETT, and proposed to be  made by the PETT; mailing lists; plans, proposed plans, schedules, and proposed schedules for  appearances, events, fundraisers, receptions, roundtables, and speeches; the persons to be invited  and who have been invited to events, fundraisers, receptions, and roundtables, and the responses  to invitations; issue and position papers and proposed issue and position papers; arrangements  and contracts with consultants and other vendors; compensation, benefits, and skills of the PETT's  personnel, and the assignments and projects on which the PETT's personnel have worked and plan  to work; computer object code, programs, software, source code, and systems; compilations,  concepts, configurations, data, designs, ideas, methods, models, and techniques; proposed  trademarks and service marks and applications therefor; trade secrets and works of authorship.

In terms of the foregoing, Confidential Information shall include all such information or data regardless of form, whether written, oral, photographic, electronic, magnetic, computer or otherwise.

4.     Exclusions from the Definition of Confidential Information. The confidentiality and non-use obligations of this Confidentiality Agreement (the "Agreement") shall not apply to the following: (a) information that at the  time of disclosure is in the public domain; or (b) information that, after disclosure, becomes part  of the public domain by publication or otherwise, except through a breach of this Agreement; or (c) information that Recipient can establish was in its possession prior to the earlier of the execution of this Agreement or the commencement of the Recipient's services to the PETT; or (d) information that was subsequently and independently

developed by Recipient or on behalf of Recipient without use, direct or indirect, of information required to be held confidential hereunder; or (e) information that is or was received by Recipient from a third party having legal right to transmit the same, free of any obligation of confidence.

5.   Recipient acknowledges that he or she has not acquired, and will not acquire, any property interest in, licensing rights to, and any other rights in Confidential Information. Recipient further acknowledges that the PETT will exclusively own all Confidential Information that becomes known to Recipient during his or her involvement with the PETT.

6.   Whenever requested by the PETT, Recipient shall sign all applications, assignments, and powers of attorney, and perform all other acts to apply for, procure, perfect, maintain, and enforce any copyright, patent, service mark, trademark, registration, and other protection for Confidential Information. The PETT shall pay the expenses of performing these acts.

7.   Except as required to perform Recipient's duties for PETT, Recipient shall not copy, disclose, disseminate, misappropriate, remove, or use any Confidential Information.

8.   Recipient shall immediately report to the PETT's management if he or she reasonably knows or suspects that the terms of this Agreement have been breached. Recipient shall immediately return or destroy all Confidential Information (including copies thereof), which is in tangible form (including electronic imaging of Confidential Information) and any documents created by the PETT containing Confidential Information in his or her possession or control, upon the PETT's request or upon termination of his or her relationship with the PETT.

9.   Recipient acknowledges that if he or she were to breach this Agreement, the breach would cause the PETT immediate and irreparable harm for which no adequate remedy at law exists. In the event of a breach or threatened breach by Recipient, the PETT will be entitled to injunctive relief, as well as all other remedies available at law or in equity without any obligation to post a bond. The Recipient expressly acknowledges and agrees that the foregoing remedies are in addition to, and not in limitation of, other rights and legal and equitable remedies that the PETT may have as a result of a breach of this Agreement by the Recipient, including specific performance.

10.   Notwithstanding any provision herein to the contrary, in the event that the Recipient hereafter becomes obligated by applicable law, regulation or judicial or administrative order to disclose any Confidential Information to any third party, government authority or court, Recipient shall immediately notify the PETT of each such requirement and identify the Confidential Information so required thereby, so that he or she may seek an appropriate protective order or other remedy with respect to narrowing the scope of the requirement and/or waive Recipient's compliance with the terms hereof. Recipient agrees that he or she will cooperate in any action by the PETT to obtain an appropriate protective order or other reliable assurance that the information will be treated as confidential.

11.   This Agreement does not create any obligation for the PETT to employ Recipient for any period of time or to consummate any other agreement or relationship.

12.   This Agreement contains all of the terms of the Agreement between the parties with respect to this subject matter.

13.  Recipient shall not assign his or her rights and obligations under this Agreement. The PETT in its sole discretion may assign its rights and obligations under this Agreement.

14.  The PETT's waiver of any breach of this Agreement by Recipient will not be a waiver of any subsequent breach by Recipient. The PETT's delay or omission in exercising any right or pursuing any remedy against any other Recipient for similar breaches will not operate as a waiver by the PETT of any breach of this Agreement by Recipient.

15.  The parties shall bring all claims and disputes arising out of or related to this Agreement exclusively in a federal or state court in New York. This Agreement is governed by New York law without regard to its principles of conflict of laws.

16.  All provisions of this Agreement are to be construed so as to be enforceable under law. If a court determines that any provision of this Agreement is unenforceable, then to the extent permitted by law the court is to revise the provision to the minimum extent necessary to make it enforceable, or disregard the provision to the extent that revision is not permitted by law. Regardless of whether a court revises or declines to revise an unenforceable provision, that decision will not affect the enforceability of any other provision of this Agreement. In addition, the unenforceable provision will remain as written in all circumstances other than the one in which the court determines it to be unenforceable.

17.  Any amendment to this Agreement must be made with the written consent of the PETT and Recipient. Any course of dealing, or delay or omission in exercising any right or pursuing any remedy, will not result in an amendment to this Agreement.

18.  All notices, requests, demands and other communications to be given under this Agreement will be in writing and will be deemed to have been duly given if delivered by hand, sent by facsimile or means of electronic communication with confirmation, sent by a nationally recognized overnight delivery service, or certified mail return receipt requested, to the address and contact details set forth alongside the signature block.

RECIPIENT:

_____         ____1825 Ponce de Leon Bldv, Coral Gables, FL 33134_
Signature                                                             Physical Address

_____Arlene Delgado_____         ____ajdelgado@donaldtrump.com_____
Printed Name                                                       Email Address

_____12/5/16_____
Date