## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

ARLENE J. DELGADO,
Plaintiff,

-vs-                                                    No. 19-cv-11764 (AT) (KHP)

DONALD J. TRUMP FOR PRESIDENT, INC., et. al.
Defendants.

### MOTION TO STRIKE THE DECLARATION OF MICHAEL GLASSNER AND ANY RELIANCE ON ADVICE OF COUNSEL DEFENSE and, alternatively, MOTION TO COMPEL RELEASE OF COMMUNICATIONS WITH PRIOR COUNSEL

Plaintiff, Arlene J. Delgado, hereby files this MOTION TO STRIKE THE DECLARATION OF MICHAEL GLASSNER AND DEFENSE OF ADVICE OF COUNSEL and, alternatively, MOTION TO COMPEL RELEASE OF COMMUNICATIONS WITH PRIOR COUNSEL, and states as follows:

On September 30, 2024, this Court granted Plaintiff the right to depose Michael Glassner ("**Mr. Glassner**") (ECF #452), given that Defendants had attached a Declaration by Mr. Glassner (ECF #438) ("**the Declaration**"), to their September 20, 2024 summary judgment motion (ECF #436), to try to dismiss Plaintiff's retaliation claim.

Defendants, desperate to avoid the deposition, moved for reconsideration of the order, which was denied (ECF #458). The deposition occurred on October 22, 2024. As a refresher, Mr. Glassner's September 20, 2024 Declaration ("**the Declaration**") read, in part, as follows:

> ….
> 8. As such, following the 2016 Presidential Election, the Campaign wanted it to be know that it had a "zero tolerance" approach to actual or threatened breaches of its confidentiality rights as embodied in the NDAs, because scandalous or embarrassing leaks of certain private and sensitive information would distract from, and damage, the Campaign's messaging, and reflect poorly on then President Trump, who was in his first term in office and eligible for re-election.

9. To that end, the Campaign brought legal action against individuals who divulged, or threatened to divulge, confidential, proprietary or strategic information about the inner workings of the Campaign, its strategic goals and/or its messaging priorities, among other things.

10. In or around March 2017, <u>I learned</u> that former Campaign consultant Arlene Delgado <u>intended to file a lawsuit</u> against the Campaign <u>that threatened to reveal confidential information concerning the Campaign that was not necessary to pursue her legal claims, the purpose of which was to embarrass the Campaign and to obtain publicity at the Campaign's expense. The Campaign also believed</u> that Ms. Delgado would not be willing to take necessary and simple steps to balance her unquestioned right to file claims against the Campaign with her confidentiality responsibilities pursuant to her NDA, such as by filing any potential legal filings under seal.

11. <u>Ms. Delgado had also previously revealed confidential information in a series of tweets</u> that she published in or around December 2016 concerning one of the Campaign's former employees, Jason Miller. Specifically, in one of her tweets, Plaintiff stated that there was "an announcement **forthcoming** concerning the new Comms [Communication] Director," for the White House and identified Jason Miller as the individual who would be appointed to that position. In other words, Ms. Delgado <u>revealed Mr. Miller's posting prior to it having been publicly announced, a clear violation of her NDA</u>.

12. In light of her repeated breaches and/or threatened breaches of her NDA, <u>the Campaign felt</u> that it was required to enforce its contractual rights to confidentiality and to ensure that Ms. Delgado realized that such breaches would not be acceptable moving forward.

13. <u>The Campaign never challenged Ms. Delgado's ability to file a</u> lawsuit litigating her discrimination and/or retaliation claims and did not initiate an arbitration against her for filing her claims in this court. <u>Rather, the Campaign initiated the arbitration because it had a good faith belief that she had breached her NDA</u> and it further believed it was important to enforce the Campaign's contractual rights to discourage any other confidentiality breaches, whether by Ms. Delgado or other former employees and/or consultants of the Campaign. I declare under penalty of perjury that the foregoing is true and correct.

-Mr. Glassner's Declaration, September 20, 2024 (underline emphasis added; bold in original)

<u>I.    THE DECLARATION SHOULD BE STRICKEN, BASED ON WITNESS'S ADMISSION THAT HE DOES NOT RECALL, OR HAVE PERSONAL KNOWLEDGE OF, THE MATTERS HE SWORE TO IN HIS DECLARATION</u>

Aside from the eyebrow-raising fact that **his September 2024 Declaration explicitly** *contradicts* **his own June 2020 Declaration in the arbitration on the same topics**[1], Mr. Glassner

---

[1] **First**, his June 2020 declaration claims Plaintiff Delgado's NDA violation was her December 2016 tweets, whereas his September 2024 declaration now claims it was two-fold: the tweets *and* the threat to sue.
**Second**, his June 2020 declaration claims Plaintiff Delgado posted a series of tweets "soon after" Mr. Miller as

answered "**I don't recall**" **over 30 times** when questioned on the very topics *in* his Declaration, which is certainly peculiar, given that he has presented a *sworn* Declaration *on the very issues about which he was being questioned*.

Why, then, did Mr. Glassner file a Declaration in this case, in his own name, personally swearing as to matters that he, when pressed, admits he does not recall and/or claims were simply the opinion of the outside-attorney? He – Michael Glassner – is attesting to XYZ, *personally*. Yet, during his deposition, he backtracks and claims he does not recall the very matters to which he swore in the Declaration and/or states, 'It was the attorney.' **Which is it? They cannot have it both ways.**

Consider that Mr. Glassner, in his deposition, suddenly claims to not even remember the 2017 filing [the arbitration action against Plaintiff for $1.5 million] at all. Consider just two, of various, examples:

> Q. Why then are you suddenly in your new affidavit, let's call it, the one last month, why are you now giving[,]as the basis for the arbitration[,] [also] the threatened lawsuit in 2017? ….
> A. **I don't recall the 2017 action. It was made on – by the counsel at the time**.
>
> ….
>
> Q. So why would tweets after [the White House announcement] be considered [a] violation of the NDA warrant[ing]--
> A. I don't -- you posted [the tweets] before and after, yes.
> Q. So why would tweets after the announcement be a problem?
> A. **Based on advice of counsel, it was understood that you were releasing confidential information.**
> **Q. What was the confidential information?**
> **A. I don't recall. I don't recall.**

---

White House Communications Director announcement, whereas his September 2024 declaration claims Plaintiff Delgado posted the tweets "prior" to the announcement!

Notice that Mr. Glassner says he does not even recall what "confidential information" Plaintiff released and even uses the passive voice ("it was understood that") to say that Plaintiff released confidential information – yet, in stark contrast, he unequivocally <u>swears</u> (Paragraphs 10-11) in his September 2024 Declaration that Plaintiff released confidential information. Which is it? Both of these are testimonies under oath, one month apart.

Moreover, during the deposition, Mr. Glassner's counsel repeatedly objected to any question outside of the "2017" *filing*, claiming that is what the Declaration is entirely *about* [it is not] and thus that to which the deposition's scope was limited by court order…. yet Mr. Glassner states he does not recall the "2017" filing. **So how did Mr. Glassner file an entire Declaration about something he does not even recall?**

The Declaration should be stricken. It is a sham. Mr. Glassner cannot file a Declaration in his own name, *swearing* to certain matters and making certain statements of fact, and then, during a deposition about said Declaration a month later (a deposition they expected to cleverly avoid), claim he **has almost no knowledge or recollection of that to which he swore**, instead he hid behind 'the attorney told me you released confidential information' or 'the attorney told us do XYZ'.

They cannot have it both ways. Quite simply, the deposition reveals that Mr. Glassner, per his own admission, 'does not recall' and/or has no opinion/knowledge *of his own* Declaration's "facts" or opinions. It reveals the Declaration to be an improper sham, which cannot be considered by the Court and must be stricken.

Under Fed. R. Civ. P. 12(f), a court should exercise its discretion to strike an "insufficient defense" where (1) the factual allegations supporting it are "implausible…." *State Street Glob. Advisors Trust Co. v. Visbal*, 462 F. Supp. 3d 435, 438-39 (S.D.N.Y. 2020). This meets the standard. Not only is Mr. Glassner's September 2024 Declaration contradicted by his June 2020 Declaration but he admits, in his deposition, that he "does not even recall" the arbitration action *and* repeatedly 'passes the buck' onto the then-attorney.

## II. THE DECLARATION SHOULD ALSO BE STRICKEN, AS WELL AS ANY REFERENCE TO 'ON ADVICE OF COUNSEL', UNLESS THE COMMUNICATIONS WITH THE PRIOR COUNSEL ARE RELEASED

During his deposition, Mr. Glassner 'passed the buck' onto the Campaign's then-outside-counsel, Larry Rosen, hiding behind 'my attorney said so, by repeatedly stating that specific facts and findings in his Declaration were "**on the advice of counsel**." **To be sure, this is not simply a party confirming that an attorney was "consulted" in general**. That would likely not raise any issues of privilege-waiver. No, this is: 'The attorney told us you did this', and the 'The attorney advised us to do XYZ.' He did so, moreover, even though the Declaration is *in his own name* and there is no reference to "on the advice of counsel" anywhere in the Declaration.

Per ample controlling caselaw, the 'it was on advice of counsel' position requires release of the communications with the Campaign's then-outside-counsel, Larry Rosen. Otherwise, this is all hearsay *and*, moreover, it impossible to probe the bona fides of said advice. They cannot have it both ways. Yet Mr. Glassner repeatedly backtracked away from the Declaration and attempted

to cover himself by invoking 'on advice of counsel,' as evidenced in the following numerous examples (emphasis added[2]).

> Q. So why would tweets after [the White House announcement] be considered [a] violation of the NDA warrant[ing]--
> A. I don't -- you posted [the tweets] before and after, yes.
> Q. So why would tweets after the announcement be a problem?
> A. **Based on advice of counsel, it was understood that you were releasing confidential information.**
> Q. What was the confidential information?
> A. I don't recall. I don't recall.
> *****************************************************

> Q. Oh, the truth is, Mr. Glassner, **there was no way to bring this lawsuit without your considering it a violation of the NDA; is that not correct?**
> **A. Based on advice of counsel, yes.**
> Q. And there was no way for me to publicly air my grievance about Mr. Miller being promoted while I had yet to receive my job due to my pregnancy without me violating the NDA, correct?
> A. **It [the arbitration] was filed based on advice of counsel.**
> *************************************************

> Q. Mr. Glassner, in your 2024 deposition you said in paragraph 11 that I violated the NDA because I posted, according to you… a post announcing Mr. Miller as White House comms director. You made no mention of that in your 2020 declaration, did you?
> A. **The declaration is <u>based on advice of counsel</u>, both declarations.**
> Q. Your understanding at the time was that it was possible I was going to file without putting it under seal?
> A. That was my belief at the time, which is what my statement says.
> Q. **And what was that belief based on?** Did someone --
> A. **Presumably advice of counsel** but I don't recall.
> *************************************************

> Q. Mr. Glassner, you're saying in your declaration that I threatened to file a lawsuit with "information concerning the campaign that was not necessary to pursue by legal claims." What information? Are you claiming now that you never saw a draft?
> A. I don't recall. Well, I don't understand your question. In my declaration it doesn't say that I saw [the draft Complaint]. It says that **I learned it from counsel**

---

[2] Mr. Glassner's counsel's objections are omitted, for clarity of reading.

presumably.

Q. So you greenlit a $1.5 million arbitration when you had not seen a draft?

A. I don't recall.

**************************************************

Q. Okay. I also want to ask you, I believe it's paragraph 6 – [correction] paragraph 12, you make references to ["]the campaign believed["] in paragraph 10, also "the Campaign felt" in paragraph 12. The campaign is not a person, Mr. Glassner, so in those two paragraphs I just quoted, who had that belief and who had that feeling?

A. The campaign is a corporate entity, right? So **that was the belief of counsel to the campaign**.

Q. Larry Rosen?

A. Yes.

**************************************************

Q. Okay. Mr. Glassner, how would someone know what the campaign considers confidential, private, or proprietary?

A: **Based on advice of counsel.** I'm not a lawyer.

Q. I mean a staffer, Mr. Glassner. How would a staffer -- how would a staffer know what is considered confidential, proprietary, or private?

A. **Based on counsel's advice.**

**************************************************

Q. Why then are you suddenly in your new affidavit, let's call it, the one last month, why are you now giving[,] as the **bases for the arbitration**[,] [also] the threatened lawsuit in 2017?

A. I don't recall the 2017 action. It was made on -- **by the counsel at the time.**

Q. Sorry. Can you repeat that, sir? I just couldn't hear you well.

A. I don't -- **I don't recall the filing of the arbitration -- this paper [the filing] that was done by counsel.**

Q. Did you approve that filing?

A. I don't recall.

Q. **Who would have approved the arbitration action against me?**

**A. I assume it was counsel.**

**Q. Well, but was your counsel acting in a rogue manner, sir[?]**

**A. No, I have no recollection of this filing.**

Q. From whom would Larry Rosen receive approval for filings?

A. At the time, me.

**************************************************

Q. How does the campaign expect a staffer, whether it's myself or someone else to know ahead of time what is considered confidential?

A. Well, that's -- that's **based on what counsel says.**

**************************************************

7

Q. Did Mr. Trump approve this arbitration filing?

A. Not to my knowledge.

Q. Would he have been consulted on this?

A. Not to my knowledge.

Q. Why not, given that the NDA places heavy emphasis on what Mr. Trump considered confidential?

A. **It was filed on advice of counsel at the time.**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Q. So you don't know when my tweet was posted, sir?

A. It was my belief, **based on advice of counsel at the time, that it was posted prior to the announcement.**

Q. But Mr. Glassner, your declaration never says "on the advice of counsel." You say that you swear this happened.

A. Correct, based on my -- on advice of counsel at the time seven years ago, correct.

....

Q. Okay. Well, yet you filed a declaration sworn under penalty of perjury assuring a federal court that I tweeted this out prior to it being public information, Mr. Glassner, did you not?

A. **That was my -- that was my belief at the time based on advice of counsel.**

Q. But Mr. Glassner, that's not at the time. This declaration, am I mistaken that it's dated September 20th, 2024. It was your belief on September 20th, 2024, correct?

A. **Based on the advice of counsel seven years ago, yes.**

....

Q. Could you explain to me how it is you read the tweet to mean that I am announcing Miller as the communications director versus saying that I have an announcement forthcoming about the newly appointed communications director?

A. That's what it reads to me, **that you're making an announcement prior to his announcement.**

Q. That's your interpretation?

A. Correct.

Q. Okay.

A. **And that was the advice of counsel at the time, as I recall.**

Q. Do you have a copy of these tweets with timestamps anywhere?

A. No.

Q. Okay. **So how do you know I tweeted that tweet prior to the announcement -- to the public announcement, excuse me?**

A. **That was the judgment at the time based on advice of counsel.**

Q. And when you say "counsel," who was the counsel you keep referring to?

A. Larry Rosen.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Q. But you wrote -- **these are *your* words, are they not[?],** that to you it was a clear violation of the NDA; is that correct?

A. **On advice of counsel at the time, yes.**

Q. Do *you* feel it was a violation of the NDA?
A. I'm not a lawyer.
Q. **But *you* wrote here that it is, sir?**
A. **Based on advice of counsel.**
Q. And I'm asking, do *you* --
A. I believe that **based on the advice of counsel, yes.**
….
Q. Okay. You said in the first clause of Paragraph 11[,]["]Ms. Delgado revealed confidential["], is that correct?
A. **Based on the advice of counsel, yes, that's my belief.** That was my belief. I'm not a lawyer. ************************************************

Q. Can you explain why you feel that an appointment to a White House job would be confidential or private information of the campaign and not of the White House or transition team?
A. Releasing that information prior to the campaign releasing it was a violation of a confidentiality agreement **based on advice of counsel at the time, yes.**
**************************************************

<u>Denson Deposition reveals the bad faith</u>: As a brief aside/sidebar, it is worth noting that another deposition, taken of Mr. Glassner in a similar case (in N.Y. state court), further highlights the bad faith found within Mr. Glassner's Declaration, given that Mr. Glassner did *not* take the "on advice of counsel" approach when he was deposed in that case, last year. Jessica Denson, a staffer on the 2016 Campaign, is also suing the Campaign for, in part, retaliation: The Campaign filed an arbitration action against Ms. Denson in December 2017, roughly a month after she filed a lawsuit against the Campaign in November 2017. Similar to its arbitration action against Plaintiff Delgado (filed summer 2017), the Campaign alleged Ms. Denson had violated her NDA by filing her lawsuit in November 2017, which 'disclosed confidential information and disparaged the Campaign' and sought the same amount in damages: $1.5 million. Ms. Denson's legal team deposed Mr. Glassner last year (2023). Mr. Jared Blumetti, at the time counsel for the Campaign, represented Mr. Glassner in the deposition (whereas, this time, given Mr. Blumetti's mysteriously abrupt withdrawal earlier this year, Mr. Glassner is represented by the current counsel for the Campaign, Mr. Gavenman). The deposition transcript (filed as an exhibit in Ms. Denson's case;

9

**attached herewith** is a true and correct copy of such) is illustrative for this motion's purposes. Although *both* depositions inquire about (a) a 2017 arbitration filing, (b) and said filing accuses a 2016-staffer of an NDA-violation over a lawsuit filing (or, in Plaintiff's case, a threatened filing), and (c) Mr. Glassner made the decision on both… Mr. Glassner's answers are markedly different from one deposition to another. **Nowhere in his deposition in the Denson case does Mr. Glassner cite "on advice of counsel,"** which is odd, given that Larry Rosen filed both the arbitrations against Plaintiff and against Ms. Denson. *The phrase is nowhere to be found*. If Mr. Glassner indeed relied on "advice of counsel" in these actions – as he claims he did in his deposition last month – how is it there is no mention of such in his deposition last year? Consider some of the exchanges from the deposition in the Denson case (*See* footnote).[3] It is clear that, at

---

[3] When Mr. Glassner is asked to describe the decision to sue Ms. Denson for her alleged NDA violation, he answers that, upon counsel informing him that the lawsuit had been filed, he read [her filed Complaint] and "determined that she had breached her NDA." He adds that he personally did so. (p. 28) Compare *that* to how he answered similar questioning in last month's deposition, instead saying he does not recall seeing a draft of Plaintiff's complaint and that all was based on the counsel's " belief" and "on the advice of counsel."

When Mr. Glassner is asked to explain the Campaign's claim that it was injured (suffered damages) by Ms. Denson's filing, he is able to answer, saying it was "the sensationalist allegation[s] in the complaint and the public disclosure of confidential information." (p. 32) And when Mr. Glassner is asked to explain how the allegations damaged the Campaign, he answers that "It made the Campaign appear disorganized, chaotic, you know, unprofessional." (p. 34) But when Plaintiff asked such at last month's deposition, Mr. Glassner refused to answer.

When Ms. Denson's attorney asks Mr. Glassner if the bases/grounds, for suing Ms. Denson, were the 'sensationalist allegations and confidential information released', Mr. Glassner answers "Yes." Her attorney then asks if there was any other reason, to which Mr. Glassner answers, "No, it's just strictly on the basis of disclosing confidential information and breaching confidentiality." (p. 41) Yet, when Plaintiff asked in the deposition in this case about the bases for the suit against Plaintiff, Mr. Glassner's answer was: "I don't recall the 2017 action. It was made on -- by the counsel at the time."

When Ms. Denson's attorney asked if all "normal, internal operations", such as "somebody gets a cup of coffee", were considered confidential, Mr. Glassner answered that "all internal operation[s] of the campaign are confidential." (p. 68-69) But when Plaintiff asked if her pregnancy was confidential, or if a person would be able to make a police report if a staffer was physically violent, Mr. Glassner stated he would not answer a hypothetical.

And, lastly, when Ms. Denson's attorney asks if Mr. Glassner was involved in the decision to endorse the NDA's against Plaintiff and two others mentioned, Mr. Glassner simply answers, "Yes." (p. 78) There was no 'well, on the advice of counsel.'

some point between January 2023 (Mr. Glassner's deposition in the Denson case) and September 2024 (his deposition in the instant case), Mr. Glassner and his (new) counsel decided to try to go with an 'on advice of counsel' defense. They are, perhaps, free to try to change tactics – but then must release the communications with counsel.

**In short, notwithstanding this last minute tactic, the caselaw is clear: Unless they voluntarily forfeit the Declaration and all references to 'advice of counsel,' or unless such is stricken by the Court, Plaintiff is entitled, per ample caselaw in this district and in the controlling Circuit, to obtain[4] the communications related to the Declaration's topics** (i.e., everything related to the arbitration action), regardless of any claim of privilege, as the privilege has been implicitly waived.

It is unlikely that Defendants will voluntarily withdraw their Glassner Declaration and all references to advice of counsel or 'good faith.' (Defendants, as is clear in the reference to "good faith" on p. 18 of their summary judgment motion, are clearly going for a 'we acted in good faith!' approach.) Thus, the Court should strike.

Under Fed. R. Civ. P. 12(f), a court should exercise its discretion to strike an "insufficient defense" where (1) the factual allegations supporting it are "implausible"; (2) there is "no question of law that might allow the defense to succeed"; and (3) the plaintiff would be "prejudiced by the inclusion of the defense." *State Street Glob. Advisors Trust Co. v. Visbal*, 462 F. Supp. 3d 435, 438-39 (S.D.N.Y. 2020) "[A]n affirmative defense is improper and should be stricken if it is a legally insufficient basis for precluding a plaintiff from prevailing on its

---

[4] via subpoena to: Mr. Rosen's prior firm; the Trump Campaign server at 2M; and all third parties possessing any such emails, such as Mr. Eric Trump who was part of various email strings with Mr. Rosen about the arbitration.

claims." *GEOMC Co., Ltd. v. Calmare Therapeutics, Inc.,* 918 F.3d 92, 98 (2d Cir. 2019). **Where a defendant asserts the defense of good faith 'reliance on counsel' but <u>refuses to waive privilege</u>, courts conclude that neither an issue of fact nor a question of law would allow the defense to succeed (absent a waiver), and that the defense should be <u>stricken</u> to avoid prejudice to the plaintiff**. E.g., *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Trust Co.*, 14 Civ. 4394 (AJN) (BCM), 2017 WL 9802844, at 6 (S.D.N.Y. Sept. 15, 2017) (striking advice- of-counsel defense where defendant refused to waive privilege, holding that defendant had withheld all documents that could potentially support the defense, leaving neither question of fact or law which might allow defense to succeed, and prejudiced plaintiff by leaving open the possibility that defendant might one day assert it).

What Defendants and Mr. Glassner have done is beyond the pale – **they have suddenly utilized an "on advice of counsel" position**, yet *also* wish to hide said communications with counsel. They cannot have it both ways. Such would be permitting 'sword and shield,' not to mention such is rife with additional error. For starters: *How is it even known that the attorney actually made these recommendations or held these views, much less whether such was reasonable and in good faith?* Such is not permitted. This is quintessential **sword-and-shield**. **Mr. Glassner and the Campaign cannot hide behind 'our attorney made us do it'; 'our attorney told us you tweeted confidential information!' and then also hide said communications.** The caselaw is clear: they have implicitly waived privilege.

<u>Implicit waiver clearly occurred</u>: "A client may ... by his actions impliedly waive the privilege or consent to disclosure." *In re von Bulow*, 828 F.2d 94, 101 (2d Cir. 1987). Generally, courts have identified waiver by implication in the following three scenarios: "when a client

testifies concerning portions of the attorney-client communication, ... when a client places the attorney-client relationship directly at issue, ... **and when a client asserts reliance on an attorney's advice as an element of a claim or defense.**" *In re City. of Erie*, 546 F.3d 222, 228 (2d Cir. 2008) (emphasis added)  The third instance is what the Campaign has done here.

"The key to a finding of implied waiver in the third instance is some showing by the party arguing for a waiver [Plaintiff herein] that the opposing party relies on the privileged communication as a claim or defense or as an element of a claim or defense." *Id.* at 14. That is clearly present here – the Defendant-Campaign and its agent, Mr. Glassner, are attempting to hide behind 'the attorney said so, thus we had a good faith belief' in order to try to defend against the Plaintiff's retaliation claim.

**"The assertion of an 'advice-of-counsel' defense has been properly described as a 'quintessential example' of an implied waiver of the privilege.**" *In re City. of Erie*, 546 F.3d 222, 228 (2d Cir. 2008). **"The attorney-client privilege cannot at once be used as [both] a shield and a sword.**" *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991) (citing *In re von Bulow*, 828 F.2d at 103). Courts have repeatedly held that attorney-client privilege may implicitly be waived when [a] defendant takes a position that, in fairness, "requires examination of protected communications." *Id.* Where a party asserts an advice-of-counsel defense, "that party impliedly waives any privilege that would otherwise attach to communications between him and his counsel." *United States v. Wells Fargo Bank N.A.*, No. 12 Civ. 7527 (JMF), 2015 WL 3999074, at 1 (S.D.N.Y. June 30, 2015)

The caselaw on this point is so clear and overwhelming. Consider additional caselaw:

> "[A] 'good faith' defense is grounded in a party's subjective belief that its behavior complied with the law, thus putting at issue any legal advice it received bearing on that question. [citing *John Doe Co. v. U.S.*, 350 F.3d 299 (2d Cir. 2003)] In other words, **a party cannot . . . affirmatively rely on privileged communications to support its claim or defense and then shield the underlying communications from scrutiny by the opposing party**....The critical question in deciding whether the attorney-client privilege is impliedly waived is whether it puts at issue questions about the defendant's state of mind or their reliance on counsel's advice, regardless of whether the defense is stylized as 'good faith' or something else."

*Sec. & Exch. Comm'n v. Ripple Labs*, 20-CV-10832 (AT) (SN) (S.D.N.Y. May. 30, 2021) at 4–7 (emphasis added)

> The thrust of the SEC's argument for striking this defense and any related references is that Ladd **impermissibly and unfairly seeks to wield attorney-client privilege as both sword and shield**....The rationale underlying this waiver principle is that **it would be unfair for a party asserting contentions [of good faith] to then rely on its privileges to deprive its adversary of access to material that might disprove or undermine the party's contentions**.

*Sec. & Exch. Comm'n v. Honig*, 18 Civ. 8175 (ER) (S.D.N.Y. Nov. 30, 2021) at 19, 24

<u>See also</u> *Wang v. Hearst Corp.*, No. 12 Civ 793 (HB), 2012 WL 6621717 (S.D.N.Y. Dec. 19, 2012) (**granting plaintiff's motion to compel production of documents, withheld as privileged, in light of defendant's defense of good faith**).

Underlying these decisions is the notion of basic fairness. "[I]t would be unfair for a party asserting contentions [of good faith] to then rely on its privileges to deprive its adversary of access to material that might disprove or undermine the party's contentions." *Arista Recs. LLC v. Lime Grp. LLC, No. 06 Civ. 5936 (KMW), 2011 WL 1642434, at 2-3 (S.D.N.Y. Apr. 20, 2011) (*precluding defendant from testifying to his good-faith belief in the lawfulness of his actions, where he had asserted the privilege to block discovery into counsel's advice received). Also informing these decisions is the courts' concern with protecting the integrity of the process and ensuring that the jury is presented with the full story, not just the one the defendant finds most

favorable. As the Second Circuit held in *Bilzerian* in affirming the trial court's decision to allow inquiry into the advice counsel had provided defendant, "if [defendant] asserted his good faith, the jury would be entitled to know the basis of his understanding that his actions were legal." 926 F.2d at 1294.

Selective disclosure waives the privilege: *Deutsche Bank v. Tri-Links,* 43 A.D.3d 56, 837 N.Y.S.2d 15 (N.Y. App. Div. 2007) is also illustrative, holding that a key example of an act that *does* constitute "at issue" waiver of privilege is a party's asserting its "reliance upon the advice of counsel" (citing *Village Bd. of Vil. of Pleasantville v Rattner*, 130 AD2d 654, 655). "Moreover, **selective disclosure is not permitted**, as a party may not rely on the protection of the privilege regarding damaging communications while disclosing other self-serving communications". *Id.* See also *Oreo Bank v Proteinas Del Pacifico*, 179 AD2d 390 (attorney-client privilege was waived by client's "selective disclosure" of legal advice) Mr. Glassner selectively disclosed some of the attorney's advice, repeatedly, e.g., the attorney's alleged finding that Plaintiff had tweeted confidential information.

To be sure, simply that an attorney was <u>consulted</u> in general would not be of concern. But here, ***in contrast***, the Mr. Glassner did not simply confirm that an attorney was generally consulted but, rather, overtly and specifically represented, what advice was received, and even what *'facts'*, relayed by the attorney, were relied on (e.g., purportedly, Mr. Rosen informing Mr. Glassner that Plaintiff had allegedly tweeted a White House announcement information prior to it being public). Worse yet, Mr. Glassner did so to try to relieve responsibility for such, and, moreover, such appears to be in bad faith, given that he took no such position in the Denson deposition.

<u>Claiming they will not rely on the advice of counsel is irrelevant</u>:  And, even if Mr. Glassner and the Campaign would now suddenly reverse course and claim that they will offer only non-privileged evidence of his good faith (though it is impossible to imagine how they would, given that their entire basis, per Mr. Glassner's own deposition, was repeatedly 'advice of counsel'), such would be insufficient, *anyway*, to avoid the waiver: Courts in this district have rejected similar promises by parties to restrict their evidence in this way, holding that even merely the assertion of 'good faith' opens the door to full discovery of anything— including counsel's advice— that might have colored their state of mind. <u>See, e.g.</u>, *Abromovage*, 2019 WL 6790513, at 4 (rejecting defendant's argument that it did not intend to rely on advice of counsel in establishing its good faith and ordering production of privileged communications or withdrawal of defense); *Scott v. Chipotle Mexican Grill Inc.* 67 F. Supp. 3d 607, 618 (S.D.N.Y. 2014) (same); *In re Keurig*, 2019 WL 2724269, at 4 (rejecting plaintiff's offer to restrict its proof of good faith defense to counter-claims to non-privileged evidence that it had consulted counsel about its rights and obligations, holding privilege waived); *Wang v. The Hearst Corp*., No. 12 Civ. 793 (HB), 2012 WL 6621717, at 2 (S.D.N.Y. Dec. 19, 2012) (rejecting defendant's offer to establish good-faith defense with evidence other than privileged advice of counsel, and finding waiver of privilege as to communications with attorneys). In sum, **courts within the Southern District of New York have repeatedly prohibited parties from invoking a defense based on a 'good faith belief in the lawfulness of their actions,'** ***even if*** **such parties argue that they will not utilize 'advice of counsel.'**

<u>One need not *explicitly* plead 'advice of counsel' as an affirmative defense</u>: Even if Mr. Glassner and the Campaign claim that, rather than asserting a classic "advice of counsel" defense, his is a general good-faith defense—that he believed in good faith that he was acting lawfully—in

this Circuit, such distinction makes no difference: Because even a 'good faith' defense puts counsel's advice at issue, fairness dictates that they now make full disclosure of the nature and circumstances of all advice received on any matter as to which 'good faith' is asserted. The privilege holder [herein, the Campaign] need not *explicitly* attempt to make use of a privileged communication in order to trigger a waiver but, rather, "may waive the privilege if he makes factual assertions, the truth of which can only be assessed by examination of the privileged communication." *In re Kidder Peabody*, 168 F.R.D. at 470 (citing *Bilzerian*, 926 F.2d at 1292). Similarly, in *Parneros v. Barnes & Noble, Inc.*, 332 F.R.D. 482, 501 (S.D.N.Y. 2019), the court held that "[t]he waiver doctrine, however, does not apply exclusively to situations where a party explicitly relies – or states that it intends to rely – on attorney-client communications." And, in *Sec. & Exch. Comm'n v. Honig*, 18 Civ. 8175 (ER) (S.D.N.Y. Nov. 30, 2021), Magistrate Judge Moses opined that even **"[t]aking [the defendant] at its word – that its *pleading* does not assert any advice of counsel defense – it is difficult to imagine any ground on which it could credibly oppose [the plaintiff's] motion [to strike].**" See also *Brown v. Barnes & Noble, Inc.*, No. 16 Civ. 7333 (MKV) (KHP), 2020 WL 5037573, at 2–3 (S.D.N.Y. Aug. 26, 2020) (finding that **any requirement that a party needed to have 'explicitly' invoked 'advice of counsel' as a defense "is too narrow and ignores contrary law"** because "[w]hen a defendant invokes a good faith defense, he necessarily puts the mindset of the decision maker at issue". In sum, where the proponent asserts a good faith belief in the lawfulness of his actions, he will have waived the privilege, **even without expressly invoking 'advice of counsel'**. *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991) (affirming district court's order refusing to preclude prosecution from cross examining defendant about his counsel's advice where defendant sought to testify to his good faith belief that he had complied with law); *In re Cty. of Erie*, 546 F.3d at 228-29

(reaffirming *Bilzerian* and holding that "assertion of a good- faith defense involves an inquiry into state of mind, which typically calls forth the possibility of implied waiver of the attorney client privilege"). See *Newmarkets Partners, LLC v. Sal. Oppenheim Jr. & Cie. S.C.A.*, 258 F.R.D. 95, 106 (S.D.N.Y. 2009) (precluding defendants from offering evidence or argument at trial regarding their purported belief in the lawfulness of their conduct, even if defendants did not rely on 'advice of counsel' for their good faith defense).

The Courts are clear: withdraw/forfeit the position, or release the communications: Courts in this district have ordered either (a) full disclosure of privileged materials surrounding advice in the face of similar good-faith reliance defenses, or (b) defendants' withdrawal of the defense. E.g., *Abromovage v. Deutsche Bank Secs., Inc.*, 18 Civ. 6621 (VEC); 2019 WL 6790513, at 5 (S.D.N.Y. Dec. 11, 2019) (**ordering defendant to waive privilege and produce documents relating to good-faith defense, or, in the alternative, allowing defendant to withdraw its defense**); *In re Keurig Green Mountain Single Serve Coffee Antitrust Litig.*, 14 MD 2542 (VSB)(HBP), 2019 WL 2724269, at 1 (S.D.N.Y. July 1, 2019) (motion to compel disclosure of communications with attorneys granted unless plaintiff "withdraws its good faith defense").

Burden: "The party seeking to assert a claim of privilege [the Campaign and Mr. Glassner] has the burden of demonstrating both that the privilege exists and that it has not been waived." *Granite Partners v. Bear, Stearns & Co.*, 184 F.R.D. 49, 52 (S.D.N.Y. 1999) (citing *von Bulow v. von Bulow*, 811 F.2d 136, 144 (2d Cir. 1987); *MBIA Ins. Corp. v. Patriarch Partners VIII, LLC*, No. 09 Civ. 3255 (RWS), 2012 WL 2568972, at 9 (S.D.N.Y. July 3, 2012)

<u>Striking</u>: As noted in *Sec. & Exch. Comm'n v. Honig*, 18 Civ. 8175 (ER) (S.D.N.Y. Nov. 30, 2021), any evidence or argument that relies on 'advice of counsel' must be stricken, unless the party agrees to waive the privilege:

> Relatedly, **courts generally grant <u>motions to strike</u> such a defense [in this case, that would be striking of the Declaration], including any evidence or argument concerning the party's reliance on the advice of counsel, <u>unless</u> the party waives the attorney-client privilege over the evidence at issue [i.e., withdraws the Declaration which was, per the Declarant's admission in his deposition, all actions done on the advice of counsel].** For example, in *Royal Park Investments SA/NV v. Deutsche Bank National Trust Company*, the court adopted Magistrate Judge Moses' report and recommendation recommending that the court grant the plaintiffs motion to strike the defendant's affirmative defense of reliance on the advice of counsel. No. 14 Civ. 4394 (AJN), 2018 WL 1750595, at 21-22 (S.D.N.Y. Apr. 11, 2018) (citing Magistrate Judge Moses' Report and Recommendation, *Deutsche Bank,* No. 14 Civ. 4394 (AJN) (S.D.N.Y. Sept. 15, 2017) (Doc. 471) (emphasis added)

*Id.* at 16 (emphasis added)

<u>CONCLUSION</u>

Advice of counsel, *if* **properly** invoked **<u>and</u>** *if* **satisfactorily proven**, can *sometimes* provide a defense, to try to show that a defendant acted in good faith. That said, however, invoking the advice-of-counsel defense puts "at issue" privileged communications, requiring waiver of the attorney-client privilege as to communications related to those topics, in order to establish the bona fides of the defense and prevent the privilege from being used both as a sword and a shield.

Plaintiff respectfully requests that the Court either strike the Declaration, and all related references to advice of counsel, or, in the alternative, order Mr. Glassner and Defendants to release all communications with prior counsel, about the topics concerning the alleged NDA violation / arbitration, be released, and re-open discovery for the purpose of exploring Defendants' 'good faith' defense. Indeed, even absent the issue of the implicit waiver (i.e., even if Mr. Glassner had

not repeatedly invoked 'it was my attorney's belief' or 'it was on advice of counsel'), the Declaration would *still* need to be stricken, given that, in his deposition, Mr. Glassner completely walked back his own Declaration's sworn representations -- statements that *he* put forth in his name -- which he now claims were simply understandings he had based on 'advice of counsel' and that, moreover, he does not even *recall* or have personal knowledge of almost any of the 'facts' in his Declaration. The Declaration is, quite simply, a sham.

Dated: November 12, 2024                                Respectfully submitted,


                                                        *s/Arlene Delgado*
                                                        Arlene Delgado
                                                        Plaintiff, *pro-se*