UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Arlene J. Delgado,<br>    Plaintiff, | Case No.: 19-cv-11764 (AT) (KHP) |
| vs. | |
| Donald J. Trump for President, et al.<br>    Defendants | **PLAINTIFF'S MOTION FOR SANCTIONS ON THIRD-PARTY ERIC TRUMP AND COUNSEL**<br>Date: November 18, 2024 |

## MOTION FOR SANCTIONS ON THIRD-PARTY ERIC TRUMP

NOW COMES the above-named, ARLENE J. DELGADO, Plaintiff herein, and files Plaintiff's Motion for Sanctions on Third-Party Eric Trump ("Mr. Trump") and Eric's Trump's counsel, Michael Madaio of the Habba, Madaio & Associates firm, and states as follows:

RELEVANT FACTS

In June and July 2024, Mr. Trump was forced to produce a batch of previously withheld documents, per a court order denying privilege-protection over said documents. In that production, it was revealed that Mr. Trump was involved in the retaliation against the Plaintiff (see "Retaliation" claim in Amended Complaint, ECF 94). This was heretofore entirely unbeknownst to Plaintiff; never revealed by any witness or party; never revealed in a previously produced document; and certainly never revealed by Mr. Trump in his March 2024 deposition in this matter.

On August 12, 2024 (i.e., promptly following the revelation), Plaintiff moved to add Mr. Trump as a defendant (ECF #403). Hon. Analise Torres referred the matter to Magistrate Judge Parker for a Report & Recommendation (ECF #404).

On August 15, 2024, Mr. Trump, via counsel, filed an objection/response to the request. (ECF #405) Said objection/response is the basis for this Motion for Sanctions. Mr. Trump and his

1

counsel argued that the Plaintiff had known of his involvement for "years" and thus unduly delayed in adding him as a defendant. As a result, they said, Plaintiff should not be permitted to add him now as a defendant. It read:

> ***Plaintiff has acknowledged that she expressly considered "nam[ing] Mr. Trump" as a defendant as early as August 2019***, see ***ECF 379 at*** 1, *and ultimately decided against doing so.... Further, Plaintiff has not offered any explanation for her delay. Nor can she. Plaintiff has conceded that **she contemplated including Mr. Trump as a defendant as early as August 2019, going so far as sending him a draft complaint with him as a named defendant**. **See ECF 379 at 1**. Yet, she deliberately chose not to include him in her initial Complaint filed in December 2019, see ECF 1, or her First Amended Complaint filed in March 2022, see ECF 94.*

-Eric Trump's "Opposition", August 15, 2024, ECF #405, p. 1

This was a self-serving and false misrepresentation, made in bad faith as a last ditch effort to avoid becoming a defendant.

First, Mr. Trump writes: "*Plaintiff has acknowledged that she expressly considered "nam[ing] Mr. Trump" as a defendant as early as August 2019, see ECF 379 at 1, and ultimately decided against doing so.*" This is textbook bad faith and knowingly false. Plaintiff never considered adding Mr. Trump as a defendant on the Retaliation claim and knew nothing of his involvement. Plaintiff once considered naming him as a defendant on a completely separately issue -- a tortious interference claim pertaining to her PAC job and events in 2018.[1]

Notice they do not include a direct quote of this alleged 'acknowledgement' by Plaintiff in an earlier filing. Why? **Because it was all meant to mislead – and it succeeded! – this Court into thinking that Plaintiff had said she considered naming Eric as a defendant *on the retaliation claim*.** Yet such is knowingly false.

---

[1] Indeed, even the tortious interference claim was one on which Plaintiff could not move forward, hence its withdrawal, given the Campaign's threats of "Rule 11 sanctions" on her attorneys and "going scorched earth on her" if she dared move forward on that claim, given that she had no evidentiary support "whatsoever" to support it.

It appears, unfortunately, that this Court also committed error by not even confirming if, in fact, Plaintiff had made such a representation in ECF #379.]The fact is, as EFC #379 makes clear, Plaintiff said no such thing. That is, arguably, understandable, however, given that courts routinely rely on representations made by attorneys, trusting in their ethics as officers of the court. Unfortunately, that trust was misplaced here.

One can easily view ECF #379 (which is a motion regarding Eric Trump's privilege claims, filed July 8, 2024), to see if Eric Trump/Mr. Madaio properly characterized what Plaintiff stated therein. The footnote ("1") therein is what Mr. Madaio grabbed onto and distorted. Let us review what exactly Plaintiff said in that prior footnote. Plaintiff wrote:

> *Plaintiff does concede that Mr. Trump may take that position for emails dated August 2019 or later. Why? In August 2019, Plaintiff did mention to an attorney that she might name Mr. Trump in a separate cause of action. But this had nothing to do with her 2017 claims, her counterclaims in the AAA, or any action that existed in 2017, even remotely. In fact, the issue concerned harm and actions that began in 2018 and had nothing to do with the 2017 threatened litigation or the 2017 AAA / counterclaims.*

**Clearly, nowhere does Plaintiff indicate, as Mr. Trump falsely represented, that she had considered naming – and even drafted a complaint reflecting – Eric Trump as a defendant on the retaliation cause of action -** ***it was regarding a different issue/events/claim.***

Mr. Madaio chose to deceptively characterize Plaintiff's ECF #379 statement to the Court, and the Court, in reliance on what an attorney conveys, did not confirm if Mr. Madaio's representation was correct, understandably so. To be sure, Plaintiff even attaches herein the portion of the potential complaint draft referred to. The *only* mention of Eric is a claim regarding 2018 and her PAC job – and is a tortious interference claim. (*See* **Attachment A**).

3

But before Plaintiff could correct this, Magistrate Parker ruled – just three business days later. On August 20, 2024, Magistrate Parker entered an Order (ECF 411), denying Plaintiff the ability to add all three of the defendants she sought to add: Michael Glassner, Jason Miller, and Eric Trump. In regards to Eric Trump, Magistrate Parker expressly cited Mr. Trump's exact argument (undue delay) as her reason for denying Plaintiff the ability to move to amend and add Mr. Trump.[2] (The other reasoning provided by Magistrate Judge Parker – that Plaintiff could have moved to add Mr. Trump before discovery ended – was surely done in error, given that Eric Trump produced the revelatory information in July 2024, *and discovery ended in May 2024*.)

Mr. Trump and his counsel's tactics…. had worked.

Plaintiff promptly contacted Trump's counsel, asking that they fix their error, which had resulted in a clearly erroneous order. Out of ethics to the Court, most attorneys would easily do so. **Instead, Trump's counsel haughtily retorted that it would not be fixed, because it was** *technically, literally* **true that Plaintiff had considered naming Trump as** *a* **"defendant"** (albeit

---

[2] The Order reads:

*Plaintiff's explanation for her delay in seeking leave to amend is unpersuasive and fails to demonstrate good cause. With regard to Eric Trump, Plaintiff does not provide any specificity as to the content of new documents or why Trump's alleged involvement would not have been clear earlier. Plaintiff's assertion that she only just learned Mr. Trump was a "key player in the retaliation" against her strains credulity given that she identified Trump as someone with knowledge of her claims at the outset of this litigation and knew of his involvement in the arbitration that preceded this case.* ***Indeed, in an earlier discovery motion concerning documents produced by Mr. Trump, Plaintiff suggested she considered including Mr. Trump as a defendant a few months before the case was originally filed in December 2019, that is, almost five years ago. (ECF No. 379.)*** *Further, Plaintiff herself notes that she took Mr. Trump's deposition in March 2024, two months before the end of discovery. Therefore, Plaintiff could have sought leave to amend before the end of discovery.*

4

on *some* other issue!), which is what the letter *technically, literally* read. **Never mind that the letter was written in such a way (deliberately refusing to quote Plaintiff's prior filing, in order to mischaracterize what Plaintiff said) to make it** *sound* **as though Plaintiff's 2019 consideration-of-naming Trump as a defendant** *was as a defendant on the Retaliation claim.* 'The fact that we used clever wording to mislead the Court into thinking that it was regarding a claim in *this* case, and that you had known of Trump's involvement in the Retaliation claim, is the intended result. We're not going to walk it back now! We got what we wanted! Too bad!' That was, essentially, the response.

After several filings (including a Motion for Reconsideration by Plaintiff, ECF #412, #413) **and even a Declaration³ from Plaintiff's former attorney (ECF #421), attesting that neither Plaintiff nor her attorneys through 2022 were ever aware of Eric Trump's involvement**, Eric Trump and counsel filed a Response, on September 3, 2024.  **Buried  tin he second paragraph, they attempt to covering themselves, by sort of/somewhat 'walking back' their claim**, confident that, at this point, it does not matter since the Court *already* ruled against Plaintiff based on their falsehood and they 'got away with it':

---

³ It read, in part:

....Plaintiff informs me that counsel for Eric Trump has taken the position that Ms. Delgado considered naming Eric Trump as a defendant on her retaliation claim several years ago (see the Amended Complaint, Docket No. 94), but failed to do so. Based on my own information and experience, that is incorrect.
5. During my time working on this matter, I was never aware of any indication or documentation, nor had any reason to believe, that Eric Trump had any involvement in the presently-named Defendants' retaliatory acts against Plaintiff – when they sabotaged her efforts to obtain White House employment during the first Trump Administration in 2016 or 2017, and/or shortly thereafter when they filed and litigated a frivolous arbitration against her, both in response to her complaints of pregnancy discrimination and gender-based harassment.
6. Moreover, Eric Trump was not listed in Defendants' Rule 26 disclosures or their November 2022 responses to Plaintiff's Interrogatory No. 2, which asked Defendants to identify any individuals "likely to have knowledge pertaining to the allegations in the First Amended Complaint." (True and correct copies of Defendants' responses to Plaintiff's interrogatories are attached as Exhibit A.) The retaliation claim was clearly one of the claims in the already existing Amended Complaint....

5

> *More importantly, **Plaintiff's claim that the undersigned purportedly "misled" the Court is verifiably false**....The passages .... conveyed **the unextraordinary (and undisputed) proposition that Plaintiff considered asserting a cause of action against Trump in August 2019**. See ECF 405 at 1, 3. **It was never specified [in Trump's August 15th letter] that Plaintiff sought to assert a retaliation claim against Trump,** nor would such a distinction bear any relevance to the arguments advanced by Trump in his August 15, 2024 letter. (**underline** emphasis added)*

One has to read this over several times to truly digest the bravado of what they did. **Far from showing that Plaintiff's claim (that Trump and his counsel misled the Court) is "false," they now (finally) hurriedly admit that Plaintiff's claim is correct! Only after several emails and filings (and even a Declaration from Plaintiff's former attorney calling out their lie), did they now admit it**: **Plaintiff never discussed or considered naming Trump as a defendant on the Retaliation claim, or any claim pled in this case, in August 2019 or otherwise. They then try to backpedal to fix the mess, essentially writing:** 'It was never specified that Plaintiff sought to assert a *Retaliation* claim against Trump! Who cares if we heavily implied it?'

This is textbook bad faith. **Mr. Trump's August 15th Objection most certainly indicated that the Plaintiff had, in 2019, sought to name Trump on as a defendant on the *Retaliation* claim – otherwise, what would be the relevance/what would be the point of mentioning that?** Indeed, their argument was "undue delay" / 'She waited too long!'…. Why, then, would it be relevant to bring up that Plaintiff had considered/discussed adding Trump as a defendant... *if it was about something else altogether*? They clearly represented that it was on the Retaliation claim – and that is exactly how Judge Parker took it. **Trump and his counsel knew full well what they were doing, and worded their August 15th letter in such a way as to mislead Judge Parker into thinking that Plaintiff had discussed/considered naming Trump as a defendant on this claim** ... but had 'dilly-dallied' and had waited to do it until years later. It is, moreover, *specifically* the grounds on which Judge Parker denied the addition-of-Trump.

The matter is currently pending: Before Magistrate Judge Parker could rule on the reconsideration, an Order by Hon. Analisa Torres stated that Plaintiff's Motion for Reconsideration would be treated as a Rule 72(a) Objection (ECF #416).[4] There has been no ruling the past three months.

PLAINTIFF PATIENTLY HOPED TO AVOID MOVING FOR SANCTIONS

Plaintiff, a *pro-se* litigant, does not submit unnecessary filings -- she simply does not have the time (or even the expertise) to engage in unnecessary submissions, nor is Plaintiff interested in seeking sanctions when not merited, as she has no personal animus towards any attorney, party, or third-party in this case. Thus, Plaintiff patiently waited to see if the Motion for Reconsideration would be granted because if so, while that would not wholly remedy what Mr. Trump and his counsel had done, the result would mean Plaintiff was not *materially* affected by it and, in the end, was not denied her right to move to add Mr. Trump.

That said, it has now been three months. There is still no ruling from the Court as to whether Plaintiff may move to add Mr. Trump. It is three months wasted, as a result of severe, bad faith misrepresentation to the Court. Sanctions are merited.

THIS COURT HAS MULTIPLE SOURCES OF AUTHORITY TO IMPOSE SANCTIONS

Parties, witnesses, and counsel must be truthful and not misrepresent facts to opposing parties or the Court. When they are not, federal courts "possess broad inherent power to protect

---

[4] On September 6, 2024, Plaintiff filed "Reply to Eric Trump's September 3, 2024 letter, which Plaintiff did "In Lieu of Rule 72a Formal Objection to Magistrate Parker's R&R"

the administration of justice by levying sanctions in response to abusive litigation practices." *Penthouse Int'l, Ltd. v. Playboy Enters.*, 663 F.2d 371, 386 (2d Cir. 1981).

Plaintiff does not move under **Rule 11** sanctions, *per se*: The main mechanism of Rule 11 is to first give the offending actor (herein, Mr. Trump and his counsel) a chance to withdraw their improper representation or claim. But such would be pointless here, as the harm has *already* been suffered. Withdrawing the improper objection/misrepresentation would be futile, as the harm caused remains in place. The window for withdrawal-of-the-improper-representation would have been between (a) the time they made the false claim and (b) the Court's ruling. But, because the Court ruled so quickly, that window spanned a mere three business days. (And, moreover, a safe-harbor letter would have been a waste of time – Plaintiff did ask Trump and counsel to withdraw their improper representation and they refused. Only later did they, somewhat walk it back, after the Court had already ruled.) Plaintiff never even had a *chance* to first send a safe-harbor-letter warning. The Court immediately ruled. Even if they agree to explicitly withdraw the misrepresentation and apologize to the Court and Plaintiff, it will have no effect on the order entered and would not undo the harm caused. *The fact is that Plaintiff was denied the ability to add Mr. Trump because of their deliberately misleading representation. That harm has already occurred and no safe-harbor-letter request, even if they walk back their claim, will undo it.* Thankfully, the Court has inherent sanction powers and need not rely on requiring the Rule 11 safe harbor letter. To the extent the Court still wishes to cite Rule 11 – namely, that Mr. Trump and his counsel violated Rule 11(b) (which they did[5]), the circumstances here negate the need for a safe harbor letter.

---

[5] F.R.C.P. Rule 11(b) reads:

The misconduct outlined in this Motion is undisputably sanctionable and the Court may issue sanctions pursuant to **several sources of authority**. First, this Court retains inherent authority "to fashion . . . appropriate sanction[s] for conduct which abuses the judicial process"—particularly when "a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–46 (1991); *see also Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017) ("**Federal courts possess certain 'inherent powers,' not conferred by rule or statute,** to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.") *Sussman v. Bank of Israel*, 56 F.3d 450, 459 (2d Cir. 1995) (**noting court's "inherent power" to "sanction counsel or a litigant for bad-faith conduct**").

The Court's inherent authority to impose sanctions may be used where "false testimony, **material misrepresentations [by counsel]** and foot-dragging were used….." *Penthouse Int'l, Ltd.*, 663 F.2d at 392. A fraud on the court may occur "[w]hen an attorney **misrepresents** or omits **material facts** to the court, or acts on a client's perjury or distortion of evidence." *E. Fin. Corp. v. JSC Alchevsk Iron & Steel Works*, 258 F.R.D. 76, 85 (S.D.N.Y. 2008) (emphasis added)  See also *S.E.C. v. Smith*, 710 F.3d 87, 97 (2d Cir. 2013) (noting that "sanctions are appropriate when an

---

(b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
(3) the **factual contentions have evidentiary support** or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery….

individual has made a false statement to the court and has done so in bad faith"); *Margo v. Weiss*, No. 96 CIV. 3842 (MBM), 1998 WL 765185, at *3 (S.D.N.Y. Nov. 3, 1998), (sanctions warranted when parties and lawyers make false statements).

SANCTIONS ARE APPROPRIATE UNDER THESE CIRCUMSTANCES

Eric Trump's attorneys' misconduct, which resulted in the Court relying upon a false and misleading statement, warrant meaningful sanctions.

The Court has "wide discretion" to determine appropriate sanctions and has inherent authority to award a variety of sanctions. *Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 267 (2d Cir. 1999). When fashioning a remedy, courts often consider the following factors: "(i) whether the misconduct was the product of intentional bad faith; (ii) whether and to what extent the misconduct prejudiced the injured party; (iii) whether there is a pattern of misbehavior rather than an isolated instance; (iv) whether and when the misconduct was corrected; and (v) whether further misconduct is likely to occur in the future." *Passlogix, Inc. v. 2FA Tech., LLC,* 708 F.Supp.2d 378, 394 (S.D.N.Y.2010); *see also Almeciga v. Ctr. for Investigative Reporting, Inc.*, 185 F. Supp. 3d 401, 435 (S.D.N.Y. 2016). These factors all favor sanctions.

First, the misconduct here was intentional. This is not difficult. This was done to help their client, the president-elect's son, avoid liability.

Second, the misconduct was highly prejudicial, as it outright led the Court to error and denied the Plaintiff her right to add a key defendant, of whose involvement she had only recently learned. There can hardly be a greater example of prejudice.

Third, Mr. Trump's conduct was not isolated. There has been a pattern of questionable conduct in this case by Mr. Trump's attorneys. Consider:

- Ms. Habba appeared at Eric Trump's March 2024 deposition, as his attorney, yet had not entered any Notice of Appearance in the case;
- It took three rounds of production for Mr. Trump to produce documents (which he initially hid behind a privilege claim); *and*
- their initial privilege log did not comply with S.D.N.Y. rules for such yet, when Plaintiff politely raised this during the deposition, she was mocked and told she was wrong.

Worth noting, Habba Madaio and Associates firm was **sanctioned nearly $1 million by federal judge Hon. Donald Middlebrooks last year, for making "baseless arguments."[6]**

Indeed, one of Mr. Trump's attorneys in this matter, Alina Habba, recently appeared at the Madison Square Garden rally coming out dancing to a track entitled, "All I Do Is Win." Mr. Trump's attorneys brag of their conduct, for the world to see, and boast of that which they have been permitted to evade or achieve.

Fourth, Mr. Trump and his counsel did not correct their conduct when it was brought to their attention. Specifically, the Plaintiff immediately notified Mr. Trump's counsel of the severe and prejudicial error. They refused to correct.

---

[6] https://storage.courtlistener.com/recap/gov.uscourts.flsd.610157/gov.uscourts.flsd.610157.302.0_1.pdf

**CONCLUSION**

As the Solicitor General once recognized "counsel have a duty to zealously advocate on behalf of their client, but they also have duties to this Court and to the Bar." *Hargan v. Garza,* No. 17-654 *Cert. Pet.* at 28. And as the Supreme Court wrote, "[e]specially in fast-paced, emergency proceedings like those at issue here, it is critical that lawyers and courts alike be able to rely on one another's representations." *Azar v. Garza*, 138 S. Ct. 1790, 1793 (2018).

There is no denying what occurred here: Mr. Trump and his counsel made a self-serving misrepresentation, which led the Court to error. As a result, the Plaintiff has been denied (at least thus far) the ability to add a key defendant. Justice, in short, has been denied… because of their conduct.

For these reasons, the Court should impose appropriate sanctions on Eric Trump and the Habba Madaio and Associates firm for leading the Court to error and the materially prejudicial effect it had on Plaintiff's rights to put on her case and ensure justice.

Respectfully submitted,

*s/ Arlene Delgado*
Arlene Delgado
Plaintiff, *pro-se*

# ATTACHMENT A

## COUNT NINE
## TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE
### (Against Eric Trump)

183. Delgado had actual prospective business relationships with America First as an at-will employee.

184. Eric Trump was aware of these prospective business relationships with America First and Delgado's at-will employment status.

185. Eric Trump, either directly or through his agents, unlawfully and maliciously interfered with Delgado's business relationships to harm her.

186. The interference from Eric Trump was unlawful because, among other things, it was illegal for him to encourage America First to end its employment of Delgado, since he was attempting to extract a release of her claims against the Campaign in exchange for compensation from America First.