**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| ARLENE J. DELGADO,<br><br>                    Plaintiff,<br><br>v.<br><br>DONALD J. TRUMP FOR PRESIDENT, INC.,<br>    *et al.*,<br><br>                    Defendants. | Case No. 19-cv-11764 (AT) (KHP) |

**DEFENDANTS' MEMORANDUM OF LAW IN**
**OPPOSITION TO PLAINTIFF'S MOTION TO**
**STRIKE THE AFFIDAVIT OF MICHAEL GLASSNER**

Jeffrey S. Gavenman
Schulman Bhattacharya, LLC
6116 Executive Boulevard, Suite 425
North Bethesda, Maryland 20852
Telephone: (240) 356-8553

*Counsel for Defendants Donald J. Trump for President, Inc.*
*Reince Priebus, and Sean Spicer*

## **Table of Contents**

TABLE OF AUTHORITIES…………………………………………………………………...ii

FACTUAL BACKGROUND ...................................................................................................... 1

ARGUMENT .............................................................................................................................. 3

    I.  Plaintiff is Not Permitted to Strike the Glassner Declaration Pursuant to FRCP 12. ....... 3

    II.  Even Putting Aside the Procedural Failing of Plaintiff's Motion, Plaintiff Is Not
        Entitled to Strike the Glassner Declaration ..................................................... 4

    III. Defendants Have Not Waived the Attorney Client Privilege as to the Reasons they
         Initiated the Arbitration Against Plaintiff. .................................................. 10

CONCLUSION........................................................................................................................... 18

# **TABLE OF AUTHORITIES**

**Cases**

*AIU Ins. Co. v. TIG Ins. Co.*,
No. 07-cv-7052(SHS)(HBP) 2008 WL 5062030 (S.D.N.Y. Nov. 25, 2008) .......................... 13

*Arista Recs. LLC v. Lime Grp. LLC*,
No. 06-cv-5936(KMW) 2011 WL 1642434 (S.D.N.Y. Apr. 20, 2011) .................................... 16

*Brown v. Barnes & Noble, Inc.*,
No. 16-CV-07333(MKV)(KHP) 2020 WL 5037573 ................................................................ 16

*Chartwell Therapeutics Licensing, LLC v. Citron Pharma LLC*,
No. 16-cv-3181(RPK)(CLP), 2020 WL 7042642 (E.D.N.Y. Nov. 30, 2020) ........................... 4

*Deutsche Bank Tr. Co. of Americas v. Tri-Links Inv. Tr.*,
43 A.D.3d 56 (1st Dep't 2007) ................................................................................................ 15

*Gardner v. Major Auto. Companies, Inc.*,
No. 11-cv-1664(FB)(VMS)  2014 WL 1330961 (E.D.N.Y. Mar. 31, 2014)……………….14, 18

*Granger v. Gill Abstract Corp.*,
566 F. Supp. 2d 323 (S.D.N.Y. 2008)................................................................................... 3, 17

*In re Cnty. of Erie*,
546 F.3d 222 (2d Cir. 2008) ................................................................................................... 16

*In re Grand Jury Proc.*,
219 F.3d 175 (2d Cir. 2000) .....................................................................................................11

*In re Keurig Green Mountain Single Serve Coffee Antitrust Litig.*,
No. 14-MD-2542(VSB)(HBP), 2019 WL 2724269 (S.D.N.Y. July 1, 2019) .......................... 17

*In re Kidder Peabody Sec. Litig.*,
168 F.R.D. 459 (S.D.N.Y. 1996) ............................................................................................. 16

*In re von Bulow*,
828 F.2d 94, 100 (2d Cir. 1987) .............................................................................................. 15

*Leviton Mfg. Co. v. Greenberg Traurig LLP*,
No. 09-cv-8083(GBD)(THK) 2010 WL 4983183 (S.D.N.Y. Dec. 6, 2010) ............................ 12

*Markowski v. S.E.C.*,
34 F.3d 99 (2d Cir. 1994) ........................................................................................................ 12

*Martin v. Giordano*,
No. 11-CV-4507 (ARR) 2016 WL 2354239 (E.D.N.Y. May 4, 2016)..................................... 14

*Medpace, Inc. v. Biothera, Inc.*,
    No. 12-CV-179 2013 WL 5937040 (S.D. Ohio Nov. 4, 2013)..................................... 13

*Miteva v. Third Point Mgmt. Co.*,
    218 F.R.D. 397  (S.D.N.Y. 2003) ........................................................................ 13, 17

*Newmarkets Partners, LLC v. Sal. Oppenheim Jr. & Cie. S.C.A.*,
    258 F.R.D. 95 (S.D.N.Y. 2009) .............................................................................. 17

*Park Plaza Condo. Ass'n v. Travelers Indem. Co. of Am.*,
    No.17-cv-112(GF)(JTJ) 2018 WL 5785946 (D. Mont. Nov. 5, 2018)...................... 15

*Phoenix Asset Grp., LLC v. URS Sols. LLC*,
    No. 21-CV-382V(SR), 2024 WL 2804436 (W.D.N.Y. May 31, 2024) ...................... 9

*Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*,
    No. 14-cv-04394(AJN)(BCM)  2017 WL 9802844 (S.D.N.Y. Sept. 15, 2017)....................... 10

*Schneidermesser v. NYU Grossman Sch. of Med.*,
    No. 21-cv-7179 (DEH), 2024 WL 4054372 (S.D.N.Y. Sept. 5, 2024) ...................... 4

*Scott v. Chipotle Mexican Grill, Inc.*,
    67 F. Supp. 3d 607 (S.D.N.Y. 2014)...................................................................... 16

*Sec. & Exch. Comm'n v. Honig*,
    No. 18 -cv-8175 (ER) 2021 WL 5630804 (S.D.N.Y. Nov. 30, 2021) ...................... 15

*Shamrock Power Sales, LLC v. Scherer*,
    No. 12-cv-8959(KMK)(JCM), 2016 WL 7647597 (S.D.N.Y. Dec. 8, 2016)....................... 9, 10

*Sierra v. United States*,
    No. 97-cv-9329 (RWS), 1998 WL 599715 (S.D.N.Y. Sept. 10, 1998) ...................... 4

*Soho Generation of New York, Inc. v. Tri-City Ins. Brokers, Inc*.
    653 N.Y.S.2d 924 (1st Dep't 1997) ...................................................................... 17

*State St. Glob. Advisors Tr. Co. v. Visbal*,
    462 F. Supp. 3d 435 (S.D.N.Y. 2020)...................................................................... 10

*Xuedan Wang v. Hearst Corp.*,
    No. 12-cv-793(HB) 2012 WL 6621717 (S.D.N.Y. Dec. 19, 2012).......................... 15

## **Statutes**

Fed R. Civ. P. 12 ……………………………………………………………………..3, 4

Defendants Donald J. Trump for President, Inc. (the "Campaign"), Sean Spicer, and Reince Priebus (collectively, "Defendants") respectfully submit this memorandum of law in opposition to Plaintiff Arlene Delgado's ("Plaintiff" or "Delgado") motion to strike the declaration of Michael Glassner dated September 20, 2024 (the "Glassner Declaration") submitted in connection with their motion for summary judgment ("Plaintiff's Motion"). *See* ECF No. 471.

## **FACTUAL BACKGROUND**

Defendants submitted their motion for summary judgment in this case on September 20, 2024 ("Defendants' Motion"), seeking judgment in their favor on all twelve of Plaintiff's causes of action. ECF No. 434. Defendants' Memorandum of Law in support of Defendants' Motion cited the Glassner Declaration precisely one time. ECF No. 436 at p. 18. In the section addressing Plaintiff's claim of retaliation predicated on the Campaign's decision to institute an arbitration in response to Plaintiff's repeated actual/threatened breaches of her NDA with the Campaign (the "Arbitration"), Defendants cited the Glassner Declaration solely to demonstrate the reasons for the Campaign's decision to institute the Arbitration. Specifically, the Glassner Declaration was cited as support for the statement that "the Campaign only decided to institute an arbitration against Plaintiff after she had already breached the NDA by revealing confidential information about one of the Campaign's employees, Mr. Miller, and threatened to disclose confidential information about the Campaign publicly that the Campaign believed to be unnecessary to prosecuting her claims." ECF No. 436 at pp. 17-18.

Subsequently, on September 24, 2024, Plaintiff filed a motion pursuant to FRCP 56(d) seeking to compel Mr. Glassner's deposition, claiming that she lacked sufficient evidence to oppose Defendants' motion for summary judgment on her retaliation claim in light of the statements in the Glassner Declaration ("Plaintiff's 56(d) Motion"). ECF No. 444. In granting

Plaintiff's 56(d) Motion, Judge Parker held that "Because Defendants have submitted a declaration of Glassner and Plaintiff has averred that she cannot present facts to oppose the statements made in Glassner's declaration, the Court will grant Plaintiff's request to depose Glassner" (the "<u>Order</u>"). ECF No. 452 at p. 1.  However, Judge Parker limited the grant of relief sought by Plaintiff's 56(d) Motion by holding that "the deposition must be limited to three hours and ***limited to the topics and allegations contained in Glassner's declaration*.**"  *Id.* at pp. 1-2 (emphasis added).

Defendants subsequently moved for reconsideration of the Order.  ECF No. 454. Defendants argued, in part, that Plaintiff already had ample opportunity to seek discovery concerning her retaliation claim and had failed to do so, a fact confirmed both by this Court and Judge Parker.  Defendants further argued that Plaintiff's failure to take Mr. Glassner's deposition in a timely manner barred her from taking Mr. Glassner's deposition at this late juncture, well after the close of discovery, and after several previous attempts to depose Mr. Glassner had been rejected.  *Id.* at pp. 4, 6-7.  Although Judge Parker denied Defendants' motion for reconsideration, she further reiterated the limited scope and justification for granting Plaintiff's 56(d) Motion: "Because Defendants have submitted a declaration of Glassner and ***Plaintiff has averred that she cannot present facts to oppose the statements made in Glassner's declaration***, the Court will grant Plaintiff's request to depose Glassner."  ECF No. 458 at p. 2 (emphasis added).

Subsequently, as Defendants had feared, Plaintiff abused the Order allowing her to conduct a limited, FRCP Rule 56(d) deposition of Mr. Glassner, to instead conduct a wide-ranging inquiry into topics unrelated to the Glassner Declaration.  *See generally* ECF No. 472.  By way of example only, Plaintiff sought to ask questions to Mr. Glassner about his current occupation, *id.* at p. 3, the Campaign's decision to hold the Arbitration in abeyance for a period of time, *id*. at p. 6, the Campaign's actions in a separate, unrelated arbitration, *id. at* pp. 6-9, complaints of discrimination

purportedly (but, not actually) made by other female employees of the Campaign, *id.* at pp. 11-12, and, incredibly, Mr. Glassner's opinions, as a non-party and non-lawyer, about the allegations contained in the Complaint that she had filed in the instant case.  *Id*. at pp. 10-11.  Of course, counsel objected that such questions were outside the scope of Judge Parker's clear order; not to be deterred, Plaintiff subsequently moved to compel responses to these and other questions.  ECF No. 469.

Judge Parker denied Plaintiff's motion to compel in its entirety. ECF No. 476.  In doing so, Judge Parker once again made clear the limited purposes for which Plaintiff was permitted to depose Mr. Glassner: "the relevant limitation was the Court's explicit directive that Glassner's deposition had to be limited to the topics discussed in Glassner's declaration." *Id.* at p. 2.  As Judge Parker further explained, "the Court permitted Plaintiff to depose Glassner on the narrow topics raised in his declaration.  The Court did not permit Plaintiff to ask Glassner about every argument raised in Defendants' motion for summary judgment." *Id.* at p. 6.

## ARGUMENT

### I.    Plaintiff is Not Permitted to Strike the Glassner Declaration Pursuant to FRCP 12.

As a threshold matter, Plaintiff grounds her motion to strike on FRCP 12(f).  ECF No. 471 at pp. 5, 11.  However, on its face, FRCP 12 does not apply to the Glassner Declaration and Plaintiff's Motion should be denied on that ground alone.

FRCP 12 states that "The court may strike ***from a pleading*** an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f) (emphasis added).  However, "motions, declarations and affidavits are not pleadings," and are therefore not subject to a motion to strike under the Federal Rules.  *Granger v. Gill Abstract Corp.*, 566 F. Supp. 2d 323, 335 (S.D.N.Y. 2008) (citing Fed R. Civ. P. 7(a) (defining pleadings)); *see also Chartwell*

3

*Therapeutics Licensing, LLC v. Citron Pharma LLC*, No. 16-cv-3181(RPK)(CLP), 2020 WL 7042642, at *9 (E.D.N.Y. Nov. 30, 2020) ("Numerous courts have held that they are not authorized by Rule 12(f) to strike matters in documents other than pleadings") (collecting cases).

Thus, Plaintiff's motion to strike pursuant to FRCP 12(f) fails as a matter of law. *Id.* ("By moving to strike the Declaration and portions of Plaintiff's Opposition, defendants seek a remedy that is not available under the Federal Rules of Civil Procedure. I therefore deny their motions to strike").

## II.    Even Putting Aside the Procedural Failing of Plaintiff's Motion, Plaintiff Is Not Entitled to Strike the Glassner Declaration

Plaintiff's efforts to strike the Glassner Declaration also fail on their merits. As courts have explained, "motions to strike are not favored and will be denied unless the allegations have no possible relation to the controversy.... If there is any doubt whether the challenged matter may raise an issue of fact or law, the motion to strike should be denied." *Sierra v. United States*, No. 97-cv-9329 (RWS), 1998 WL 599715, at *9 (S.D.N.Y. Sept. 10, 1998). A party seeking to strike evidence, such as that contained in a declaration, "faces a heavy burden in demonstrating that the drastic remedy of striking [evidence] is justified." *Schneidermesser v. NYU Grossman Sch. of Med.*, No. 21-cv-7179 (DEH), 2024 WL 4054372, at *1 (S.D.N.Y. Sept. 5, 2024).

Here, Plaintiff claims that Mr. Glassner's answers to various questions indicating that he consulted with counsel prior to making certain decisions render his declaration a "sham." However, this argument is, at best, grossly misleading, and, in any case, does not warrant striking the Glassner Declaration.

In this case, Defendants have offered the Glassner Declaration for a single purpose: to explain the reason that the Campaign instituted the Arbitration. As set forth in the Glassner Declaration, the Arbitration was instituted because the Campaign believed that Plaintiff had

previously breached her NDA by sending out a series of tweets on December 22, 2016 about the White House's upcoming appointment of Jason Miller to the position of Communications Director (the "Tweets"), and was threatening to do so again by revealing confidential information concerning the Campaign unnecessary to prosecute her claims in a complaint she intended to file with the New York City Commission of Human Rights (the "NYCCHR Complaint").  As the Glassner Declaration explained:

> In or around March 2017, I learned that former Campaign consultant Arlene Delgado intended to file a lawsuit against the Campaign that threatened to reveal confidential information concerning the Campaign that was not necessary to pursue her legal claims, the purpose of which was to embarrass the Campaign and to obtain publicity at the Campaign's expense. The Campaign also believed that Ms. Delgado would not be willing to take necessary and simple steps to balance her unquestioned right to file claims against the Campaign with her confidentiality responsibilities pursuant to her NDA, such as by filing any potential legal filings under seal.

> Ms. Delgado had also previously revealed confidential information in a series of tweets that she published in or around December 2016 concerning one of the Campaign's former employees, Jason Miller. Specifically, in one of her tweets, Plaintiff stated that there was "an announcement **forthcoming** concerning the new Comms [Communication] Director," for the White House and identified Jason Miller as the individual who would be appointed to that position.  In other words, Ms. Delgado revealed Mr. Miller's posting prior to it having been publicly announced, a clear violation of her NDA.

> In light of her repeated breaches and/or threatened breaches of her NDA, the Campaign felt that it was required to enforce its contractual rights to confidentiality and to ensure that Ms. Delgado realized that such breaches would not be acceptable moving forward.

ECF No. 438 at pp. 2-3.

Thus, the reasons that the Campaign thought the Tweets and the NYCCHR Complaint violated her NDA, in turn motivating the Campaign to institute the Arbitration, were the *only* facts

that were relevant to Defendants' summary judgment motion, and were also the only facts that Judge Parker permitted Plaintiff to inquire about during the deposition of Mr. Glassner. Importantly, and contrary to what Plaintiff's Motion claims, Mr. Glassner provided his own reasoning as to why he believed that the Tweets and the allegations in the NYCCHR Complaint violated Plaintiff's NDA.

First, as it pertains to the Tweets, Mr. Glassner testified that:

> Q. Okay. Can you explain to me what you wrote there, that that tweet was a clear violation of the NDA?
> A. ***Based on my reading of the quote – of the statement, yes***.
> Q. How is it a violation of the NDA?
> . . .
> A. Your quote stated that you were making, you know, you were – there was an announcement forthcoming. ***And you gave … the statement prior to the release of the information by the campaign***. . .
> Q. So it was a violation of the confidentiality clause because it released confidential information prior to the announcement; is that correct?
> A. Correct.

Ex. A at pp. 18-19 (emphasis added).

> Q: Could you explain to me how it is you read the tweet to mean that I am announcing Mr. Miller as the communications director versus saying that I have an announcement forthcoming about the newly appointed communications director?
> A. That's what it reads to me, that you're making an announcement prior to his announcement.
> Q. ***That's your interpretation.***
> A. ***Correct***.

*Id.* at pp. 30-31 (emphasis added).

Mr. Glassner's testimony concerning the NYCCHR Complaint was even more comprehensive. Plaintiff went through each and every one of the factual allegations in her threatened NYCCHR Complaint and elicited testimony from Mr. Glassner as to how the allegations violated the NDA in Mr. Glassner's opinion. Ex. A at pp. 113-128.

In fact, it is important to note that Mr. Glassner only made clear that he consulted with counsel in the first instance *after* Plaintiff challenged his ability to render an opinion about why the Tweets violated the NDA given that he was not himself a lawyer:

> Q. Mr. Glassner, you wrote – you're not – are you an attorney?
> A. I am not.
> Q. But you wrote – these are your words, are they not, that to you
>     it was a clear violation of the NDA; is that correct?
> A. On advice of counsel at the time, yes.

*Id.* at 24. It is clear that Mr. Glassner only explained that he made decisions in consultation with counsel because Plaintiff challenged his opinions of what constituted a violation of the NDA given that he was not a lawyer. In other words, Mr. Glassner was not, as Plaintiff claims, stating that counsel made the decision that the Tweets and the NYCCHR Complaint violated the NDA, but was instead testifying that ***Mr. Glassner made those decisions himself*** and those decisions were supported by counsel[1]:

> Q: Okay. Some of the bases that you explained when going through those
>    paragraphs of what you thought was confidential information and what you
>    thought was derogatory information, do you recall having those ideas in mind
>    as the base for why the arbitration was filed in 2017?
> A. Yes.

---

[1] Notably, in the testimony quoted by Plaintiff on pages 6-9, Plaintiff "omitted" Mr. Glassner's counsel's form and foundation objections "for clarity of reading" and failed to attach the relevant transcript showing those objections. ECF No. 471 at p. 6, n.2. However, counsel's objections are important to note, as those objections were made to object to poorly constructed, convoluted, and confusing questions, which continuously sought a legal opinion from a non-lawyer, and led to the confusing transcript segments presented to the Court. Plaintiff is now seeking to take advantage of her improper questions and the confusion they sowed when, in reality, counsel's objections would be upheld (just as his objections were upheld in ECF No. 476) and such questions and answers accorded no weight. One of the most notable examples of this confusion is on page 7, where Plaintiff quotes her question "how would a staffer know what is considered confidential, proprietary, or private?" and Mr. Glassner responds, "Based on counsel's advice." ECF No. 471 at p. 7. It is clear that Mr. Glassner is testifying that a staffer would need to consult his or her own counsel to determine what is considered confidential, proprietary, or private, yet Plaintiff puts this forth in her motion as an example of Mr. Glassner relying on the advice of his own counsel, which is not supported by the quote. Hence, even Plaintiff is confused by the testimony elicited by her objectionable questions.

. . .

    Q.   At the time the arbitration was filed in 2017, was it your understanding that the December 22nd tweet about the forthcoming announcement was a violation of the NDA because it gave confidential information about who was going to be named White House communication director.

    A.   Yes.

*Id.* at pp. 189-190.

Plaintiff's claims that the Glassner Declaration is also a sham because it purportedly contradicts the declaration that he filed in the Arbitration and/or a declaration that he filed in another case are both wrong and irrelevant. The declaration Mr. Glassner filed in the Arbitration on June 11, 2020 (the "<u>Arbitration Declaration</u>") references:

> In December 2016, Ms. Delgado posted a series of tweets on Twitter regarding Jason Miller, a former independent contractor of the Campaign, soon after he was named to become the White House Communications Director for the Trump Administration.

> Ms. Delgado's tweets insinuated that Mr. Miller was involved in some sort of salacious scandal that was going to require him to resign from the role of White House Communications Director.

Ex. B at ¶¶10-11.

While Plaintiff argues that this statement contradicts the Glassner Declaration, Plaintiff's claim is simply incorrect. The Glassner Declaration discusses tweets that were filed prior to the announcement of Mr. Miller's appointment to the position of White House Communications Director. *See* ECF No. 442-17. In contrast, the Arbitration Declaration discusses separate tweets that Ms. Delgado sent two days after Mr. Miller's appointment to the White House Communications Director position had been announced. *See* ECF No. 442-18. During his deposition, Mr. Glassner explained this distinction to Plaintiff:

> Q. Can you explain to me why you filed the declaration in 2020 that said I posted that tweet after he was announced, yet you filed a sworn declaration in federal court a month ago saying the opposite?

A. Both can be true.
Q. How so?
A. You post -- you could post tweets before or after the announcement.
Q. Please elaborate, sir.
A. It's possible for you, that you – and you did post tweets before the announcement was made and after the announcement was made.

Ex. A at p. 45.

The contradiction to which Plaintiff cites does not exist. The Arbitration Declaration references separate tweets, but for a different purpose, and never once states that the Campaign decided to file the Arbitration based on the tweets that Plaintiff sent after the announcement.

However, even if the two declarations were in contradiction with each other (which they are not), this would still not justify Plaintiff's Motion. Rather than providing grounds to strike the Glassner Declaration, any supposed inconsistencies are only relevant to the weight that the Court should afford the Glassner Declaration in adjudicating Defendants' summary judgment motion. *See, e.g., Shamrock Power Sales, LLC v. Scherer*, No. 12-cv-8959(KMK)(JCM), 2016 WL 7647597, at *7 (S.D.N.Y. Dec. 8, 2016), *report and recommendation adopted*, No. 12-cv-8959(KMK)(JCM), 2017 WL 57855 (S.D.N.Y. Jan. 4, 2017) ("Plaintiff's arguments that the statements are false and contrary to law merely go to the weight the Court should give to them in light of all of the evidence submitted in this case. The drastic remedy of striking them is not warranted here").

Based on the foregoing, Plaintiff has not met her "heavy burden" in seeking to have the Court strike the Glassner Declaration. Plaintiff has not demonstrated that the Glassner Declaration is somehow abusive. *See Phoenix Asset Grp., LLC v. URS Sols. LLC*, No. 21-CV-382V(SR), 2024 WL 2804436, at *7 (W.D.N.Y. May 31, 2024) (refusing to grant a motion to strike where the declaration did not contain statements that the court deemed to "be abusive or otherwise improper

under the circumstances"). Nor has Plaintiff identified any prejudice that would inure to her if the Glassner Declaration remained a part of the record, particularly in light of the fact that she was permitted to depose Mr. Glassner pursuant to FRCP 56(d). *Shamrock Power Sales, LLC* at *7 (denying motion to strike where the plaintiff could not offer any arguments "as to why the assertions sought to be stricken will result in even a scintilla of prejudice to the Plaintiff").

Finally, the cases to which Plaintiff cites are clearly distinguishable. In *State St. Glob. Advisors Tr. Co. v. Visbal*, 462 F. Supp. 3d 435, 440 (S.D.N.Y. 2020), the court struck a fraudulent inducement affirmative defense because the defendants failed to plead the necessary legal elements required to support such a defense. In *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.,* No. 14-cv-04394(AJN)(BCM), 2017 WL 9802844 (S.D.N.Y. Sept. 15, 2017), the court again struck an affirmative defense, stating that "Plaintiff's claims are barred, in whole or in part, because the Trustee relied upon the work, advice, professional judgment, and opinions of others upon which it was entitled to rely as a trustee." *Id.* at *2. Notably, the defendants' attorney conceded that this defense encompassed an advice of counsel defense. *Id.* The critical distinction in the instant case, however, is that Defendants are *not* relying on the advice of counsel defense. Rather, the Glassner Declaration sets forth the reasons that the *Campaign* brought an Arbitration against Plaintiff and Mr. Glassner himself testified as to the basis for his personal belief that Plaintiff's conduct violated the NDA, prompting the Arbitration. Thus, this is not a case where Defendants are explicitly relying on the advice of counsel (rather than their own, independent beliefs) as the basis for their actions.

### III. Defendants Have Not Waived the Attorney Client Privilege as to the Reasons they Initiated the Arbitration Against Plaintiff.

Finally, Plaintiff's argument that Defendants have waived the attorney client privilege because Mr. Glassner indicated he consulted with an attorney in response to a number of Plaintiff's

questions at his deposition is misplaced.  In making this argument, Plaintiff misstates both Defendants' arguments on summary judgment and the relevant case law.

Initially, it bears repeating that Plaintiff was only permitted to take Mr. Glassner's deposition—despite both this Court and Judge Parker previously finding that Plaintiff had failed to demonstrate the requisite diligence in taking the deposition during the discovery period (*see* ECF No. 402 at p. 7, No. 381 at pp 2-3)—under FRCP 56(d).  As a result, as Judge Parker explained, the scope of the permissible questions that Plaintiff could ask Mr. Glassner at the deposition was "limited to the topics and allegations contained in Glassner's declaration."  ECF No. 444 at pp. 1-2.  Thus, many of the questions to which Mr. Glassner responded by stating that he consulted with counsel, such as, *inter alia*, decisions made in other cases and Defendants' damages calculations in this case, were not relevant, or permitted, areas of inquiry in the first instance.  ECF No. 476 at p. 6 ("the Court permitted Plaintiff to depose Glassner on the narrow topics raised in his declaration.  The Court did not permit Plaintiff to ask Glassner about every argument raised in Defendants' motion for summary judgment").  In other words, contrary to what Plaintiff's Motion argues, Defendants never attempted to use Mr. Glassner's beliefs as a "sword" in the instant case as to those topics at all.  There is therefore no question that the attorney client privilege properly shields such topics from Plaintiff's inquiries.  *See In re Grand Jury Proc.*, 219 F.3d 175, 191 (2d Cir. 2000) (finding that waiver of privilege is only appropriate "where there was deliberate, affirmative and selective use of privileged work-product materials by a party").

Moreover, because of the limited nature of the FRCP 56(d) deposition permitted by Judge Parker, the *only* relevant topic was the one addressed explicitly in the Glassner Declaration – namely, that the Campaign instituted the Arbitration because it believed that Plaintiff's Tweets and her proposed NYCCHR Complaint disclosed confidential information in violation of Plaintiff's

NDA.  As explained above, however, Mr. Glassner provided testimony about his own belief as to why the challenged conduct violated the NDA.  *See supra* at pp. 6-8.  Accordingly, Defendants are relying solely on Mr. Glassner's own opinion – rather than any purported advice given to him by an attorney – as to why Plaintiff's conduct violated her NDA to demonstrate that their decision to institute the Arbitration was not motivated by a retaliatory animus.  In such a situation, Defendants cannot be said to have waived the attorney client privilege.

Plaintiff's Motion argues that Defendants' purported invocation of the "advice of counsel" or "good faith" defenses acts to create an implicit waiver of any attorney-client material.  ECF No. at pp. 12-15.  But this argument misstates the law.  Specifically, the advice of counsel defense only applies where a party claims that "he made complete disclosure to counsel, sought advice as to the legality of his conduct, received advice that his conduct was legal, and relied on that advice in good faith." *Markowski v. S.E.C.*, 34 F.3d 99, 105 (2d Cir. 1994).  Similarly, the good faith defense applies where a party asserts a "good faith belief in the lawfulness of its actions."  *Leviton Mfg. Co. v. Greenberg Traurig LLP*, No. 09-cv-8083(GBD)(THK), 2010 WL 4983183, at *3 (S.D.N.Y. Dec. 6, 2010), *objections overruled*, No. 09-cv-8083(GBD)(THK), 2011 WL 2946380 (S.D.N.Y. July 14, 2011) (internal citations omitted).  In other words, the proponent of the privilege must be stating that it took specific actions specifically in reliance on the advice of counsel.

Neither of these defenses apply in the instant case, for one simple reason – the Campaign is not *affirmatively* relying on privileged information as a basis for its conduct in the instant case. *See, e.g., id.* at *4 (explaining that "New York courts will not find an at issue waiver merely because privileged information is relevant to the issues being litigated; [r]ather, at issue waiver occurs when the party has asserted a claim or defense that he intends to prove by use of the privileged materials" and further holding that the plaintiff did not waive the attorney-client privilege because it "will not

rely on privileged advice to prove its claims against Defendants. And, it does not intend to rely on any privileged communications in advancing its claims") (internal citations and quotations omitted); *AIU Ins. Co. v. TIG Ins. Co.*, No. 07-cv-7052(SHS)(HBP), 2008 WL 5062030, at *5 (S.D.N.Y. Nov. 25, 2008) ("AIU has not placed the protected communications at issue because it does not intend to rely upon the ***contents*** of the privileged communications in order to prove its breach of contract claim") (emphasis in original); *Medpace, Inc. v. Biothera, Inc.*, No. 12-cv-179, 2013 WL 5937040, at *3 (S.D. Ohio Nov. 4, 2013) ("Only affirmative reliance on the advice of counsel as an aspect of a claim or defense waives the privilege. Thus, the test for invading attorney-client privilege communications is not simply relevance but affirmative waiver") (cleaned up).

Here, Defendants are not affirmatively arguing that they relied on the advice of counsel to bring the Arbitration against Plaintiff, nor are they claiming that they made the decision in good faith – that they believed that otherwise unlawful conduct was permissible based on the opinions of their attorneys.  Rather, as demonstrated above, Defendants intend to rely solely on Mr. Glassner's own beliefs as to why Plaintiff's Tweets and the NYCCHR Complaint violated her NDA, prompting the Campaign to institute an Arbitration against her.[2]   The mere fact that he consulted with counsel prior to doing so does not, as Plaintiff's Motion contends, act as a waiver of the attorney-client privilege.

---

[2]  Indeed, the fact that Defendants have explicitly disclaimed any intention to rely on the advice of counsel is itself fatal to Plaintiff's argument that the Campaign is putting such legal advice at issue so as to effectuate a waiver of the attorney client privilege.  *See, e.g., Miteva v. Third Point Mgmt. Co.*, 218 F.R.D. 397, 398 (S.D.N.Y. 2003) (finding no waiver of the attorney client privilege where the defendants "explicitly represented to the Court, through counsel in the record of this proceeding, that, despite Loeb's deposition statement to the contrary, it is not asserting nor relying on the advice of counsel defense").

The court's decision in *Gardner v. Major Auto. Companies, Inc.*, No. 11-cv-1664(FB)(VMS), 2014 WL 1330961 (E.D.N.Y. Mar. 31, 2014) is squarely on point. During a deposition of the defendants' corporate secretary and general counsel, he repeatedly refused to divulge his reasons for taking particular actions, instead testifying, much as Mr. Glassner did in the instant case, that, *inter alia*, "we sought the advice of counsel and we followed the advice of counsel regarding any and all of these things." *Id.* at *2. The plaintiffs therefore argued that these responses placed the advice that the defendants received "at issue" and therefore sufficed to waive the attorney client privilege. *Id.* The defendants, in contrast, asserted that they had "no intention of asserting an advice-of-counsel defense or similar claim in this action" and that their defense instead was that "***they did nothing wrong***." *Id.* at *5 (internal quotations omitted and emphasis added). In quashing a subpoena that the plaintiffs served on the defendants' attorneys, the court held that the fact that the defendants made decisions after consulting with counsel did not put the at attorney-client communications *at issue* or indicate that they intended to rely on these communications. *Id.* (collecting cases). The same reasoning applies here, where Defendants are not relying on any advice that they have received from their attorneys and are instead relying on Mr. Glassner's own opinions to prove that they, like the defendants in *Gardner*, "did nothing wrong." *See also Martin v. Giordano*, No. 11-cv-4507 (ARR), 2016 WL 2354239, at *5 (E.D.N.Y. May 4, 2016) ("it is not the case that a client who refers to the existence of attorney-client privileged communications prior to making a decision or taking an action thereby asserts reliance on counsel with respect to that decision or action").

Indeed, if Plaintiff's argument were accepted, it would vitiate the attorney client privilege. Virtually every individual who brings a lawsuit consults with an attorney prior to doing so. If disclosing that fact, or stating that the decision was only made after discussions with an attorney,

were sufficient to waive the privilege, then it is impossible to anticipate a situation where the privilege would survive. In effect, Plaintiff's exception would swallow the rule. *See, e.g., Deutsche Bank Tr. Co. of Americas v. Tri-Links Inv. Tr.*, 43 A.D.3d 56, 64 (1ˢᵗ Dep't 2007) ("Of course, that a privileged communication contains information relevant to issues the parties are litigating does not, without more, place the contents of the privileged communication itself 'at issue' in the lawsuit; if that were the case, a privilege would have little effect"); *Park Plaza Condo. Ass'n v. Travelers Indem. Co. of Am.,* No.17-cv-112(GF)(JTJ), 2018 WL 5785946, at *3 (D. Mont. Nov. 5, 2018) ("No insurer would seek the advice of coverage counsel, if an insurer's mere reliance on the advice of counsel would operate as a waiver of the attorney-client privilege").

It is for this reason that the cases to which Plaintiff cites are clearly distinguishable from the instant case. In each of those cases, the party seeking to invoke the privilege took some affirmative action to place communications with its attorney directly at issue, whether by pleading an affirmative defense or by engaging in some other affirmative conduct. *See, e.g., In re von Bulow*, 828 F.2d 94, 100 (2d Cir. 1987) (finding the attorney-client privilege waived where the client allowed his attorney to write a book which published privileged communications); *United States v. Bilzerian*, 926 F.2d 1285, 1293 (2d Cir. 1991) (finding waiver of attorney-client privilege where the defendant argued that his conduct was undertaken in good faith after consulting with counsel but, importantly, noting that the result would have been different if the defendant, as Defendants do in this case, sought to, "deny criminal intent [] without asserting good faith"); *Sec. & Exch. Comm'n v. Honig*, No. 18 -cv-8175 (ER), 2021 WL 5630804, at *14 (S.D.N.Y. Nov. 30, 2021) (finding a waiver of the attorney client privilege where the defendant explicitly asserted an intention to rely on a good faith defense); *Xuedan Wang v. Hearst Corp.*, No. 12-cv-793(HB), 2012 WL 6621717, at *2 (S.D.N.Y. Dec. 19, 2012) (same); *Arista Recs. LLC v. Lime Grp. LLC*, No. 06-

cv-5936(KMW), 2011 WL 1642434, at *2 (S.D.N.Y. Apr. 20, 2011) (same); *Scott v. Chipotle Mexican Grill, Inc.*, 67 F. Supp. 3d 607, 614 (S.D.N.Y. 2014) ("Chipotle has invoked two affirmative defenses that require showings of good faith").

Indeed, one case to which Plaintiff cites, *In re Cnty. of Erie*, 546 F.3d 222 (2d Cir. 2008), undermines the arguments in Plaintiff's Motion and demonstrates instead why Defendants have not waived the attorney-client privilege in this case.  In *Erie*, the Second Circuit rejected the claim that the mere fact that privileged attorney-client communications might be *relevant* to a litigation resulted in waiver of the privilege.  Instead, the Second Circuit held that, in order for the privilege to be waived, "a party must **rely** on privileged advice from his counsel to make his claim or defense."  *Id*. at 229 (emphasis in original).  Here, as demonstrated above, Defendants are not relying on any privileged communications, thereby preserving the privileged nature of their communications with counsel.

Plaintiff also cites cases for the proposition that the attorney-client privilege is waived where the proponent makes factual assertions that can only be assessed by examination of the privileged communication.  ECF No. 471 at p. 17.  But this is not the case here.  As demonstrated above, Mr. Glassner provided his own *independent* bases for believe that the Tweets and the NYCCHR Complaint violated Plaintiff's NDA.  Those independent beliefs do not rely on, or require the disclosure of, the advice of counsel.  As such, Plaintiff's cases are clearly distinguishable.  *See*, *e.g.*, *In re Kidder Peabody Sec. Litig.*, 168 F.R.D. 459, 467 (S.D.N.Y. 1996) (finding that that the defendants were required to disclose portions of interview notes with their employees where they publicly released a report "which appears to embody or rely upon many of the witness statements" and used it in the litigation); *Brown v. Barnes & Noble, Inc.*, No. 16-CV-07333(MKV)(KHP), 2020 WL 5037573, at *2 (S.D.N.Y. Aug. 26, 2020) (finding that the good

faith reliance defense under the FLSA inherently implicated the issue of "whether the defendant acted contrary to legal advice when classifying a position as exempt from overtime or minimum wage requirements"); *Newmarkets Partners, LLC v. Sal. Oppenheim Jr. & Cie. S.C.A.*, 258 F.R.D. 95, 108 (S.D.N.Y. 2009) (finding that the plaintiffs waived the attorney client privilege where it alleged that the defendant acted in bad faith by refusing to bring a derivative suit on their behalf); *In re Keurig Green Mountain Single Serve Coffee Antitrust Litig.*, No. 14-MD-2542(VSB)(HBP), 2019 WL 2724269, at *4 (S.D.N.Y. July 1, 2019) (finding that a good faith defense necessarily implicated the advice of counsel where, unlike in the instant case, the defendants could not demonstrate any independent basis for its beliefs).

Finally, Plaintiff argues that Defendants should be found to have waived the attorney client privilege by virtue of Mr. Glassner's testimony that he consulted with counsel in connection with certain decisions, which, she claims, constitutes impermissible selective disclosure of privileged information. ECF No. 471 at p. 15. Again, Plaintiff proffers an argument about waiver that is far broader than any that can be supported under the case law. To the contrary, the case law is clear that merely mentioning that he consulted with counsel is insufficient to constitute a waiver of the attorney client privilege. *See, e.g., Soho Generation of New York, Inc. v. Tri-City Ins. Brokers, Inc.*, 653 N.Y.S.2d 924, 925 (1st Dep't 1997) ("By merely mentioning at his deposition that he had withdrawn plaintiff's claim upon the advice of counsel, plaintiff's president Mr. Mosery did not waive any attorney-client privilege by placing the subject matter of counsel's advice in issue or by making selective disclosure of such advice"); *Miteva v. Third Point Mgmt. Co.*, 218 F.R.D. 397, 398 (S.D.N.Y. 2003) ("Loeb's limited acknowledgment of reliance on advice of counsel in Third Point's preparation of Miteva's termination letter is not sufficient to constitute disclosure of the full content of the advice, or serve as a basis for compelling that the balance of the communication

17

be revealed"); *Gardner*, 2014 WL 1330961 at *8 (refusing to find selective disclosure warranting waiver of the attorney client privilege where the defendants' witness testified at a deposition that they relied on their attorneys' advice, explaining that the prejudice to the adversary in a deposition is insufficient to warrant waiver of the privilege).

## **<u>CONCLUSION</u>**

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's Motion in its entirety.

Dated: December 10, 2024
      New York, New York

**SCHULMAN BHATTACHARYA, LLC**

By:    /s/ Jeffrey S. Gavenman
        Jeffrey S. Gavenman
        6116 Executive Boulevard, Suite 425
        North Bethesda, Maryland 20852
        and
        240 West 40th Street
        New York, NY 10018
        Tel.: (240) 356-8553
        Facsimile: (240) 356-8558
        Email: jgavenman@schulmanbh.com
