**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

ARLENE J. DELGADO,

                Plaintiff,

v.

DONALD J. TRUMP FOR PRESIDENT, INC.,
*et al.*,

                Defendants.

Case No. 19-cv-11764 (AT) (KHP)

---

**DEFENDANTS' MEMORANDUM OF LAW IN FURTHER**
**SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Jeffrey S. Gavenman
Schulman Bhattacharya, LLC
6116 Executive Boulevard, Suite 425
North Bethesda, Maryland 20852
Telephone: (240) 356-8550

*Counsel for Defendants Donald J. Trump For President, Inc.*
*Reince Priebus, and Sean Spicer*

TABLE OF CONTENTS

ARGUMENT .................................................................................................................... 1

  I.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S
  DISCRIMINATION CLAIMS ................................................................................................ 1

  II.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S
  RETALIATION CLAIMS ..................................................................................................... 5

  III.  DEFEENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S
  HOSTILE WORK ENVIRONMENT CLAIM. ............................................................................ 8

  IV.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S
  AIDING AND ABETTING CLAIMS ...................................................................................... 10

  V.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S
  INTERFERENCE CLAIM .................................................................................................... 10

  VI.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S
  CLAIM FOR TORTIOUS INTERFERENCE ............................................................................ 12

  VII.  DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S
  PRIMA FACIE TORT CLAIM ............................................................................................. 15

CONCLUSION ............................................................................................................... 16

# TABLE OF AUTHORITIES

## Cases

*Brogdon v. City of New York*, 16-cv-8076(LAK)(RWL), 2018 WL 4762981 (S.D.N.Y. Aug. 8, 2018) .................................................................................................................... 13

*Bryant v. Verizon Commc'ns, Inc.*, 550 F. Supp. 2d 513 (S.D.N.Y. 2008) .................................. 6

*Caro Cap., LLC v. Koch*, 653 F. Supp. 3d 108 (S.D.N.Y. 2023) ................................................ 10

*Carter v. New York*, 310 F. Supp. 2d 468 (N.D.N.Y. 2004) ........................................................ 7

*Carvel Corp. v. Noonan*, 3 N.Y.3d 182 (2004) ......................................................................... 14

*Curtis v. Airborne Freight Corp.*, 87 F. Supp. 2d 234 (S.D.N.Y. 2000) ...................................... 8

*DiStiso v. Cook*, 691 F.3d 226 (2d Cir. 2012) ............................................................................. 6

*Ehrbar v. Forest Hills Hosp.*, 131 F. Supp. 3d 5 (E.D.N.Y. 2015) .............................................. 7

*Garcia v. Westchester Cnty.*, 19-cv-2167(CS), 2021 WL 706413 (S.D.N.Y. Feb. 22, 2021) .......... 1

*Gass v. Evergreen Aviation Ground Logistics Enter., Inc.*, 07-cv-402(ENV)(RER), 2008 WL 11437035 (E.D.N.Y. Oct. 15, 2008) ........................................................................................ 2

*Hines v. Hillside Children's Ctr.*, 73 F. Supp. 2d 308 (W.D.N.Y. 1999) ...................................... 3

*Keles v. Yearwood*, 254 F. Supp. 3d 466 (E.D.N.Y. 2017) ......................................................... 11

*Leroy v. Delta Air Lines*, 21-cv-267, 2022 WL 12144507 (2d Cir. Oct. 27, 2022) ...................... 9

*McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70 (2d Cir. 2010) ................................................. 9

*McPherson v. New York City Dep't of Educ.*, 457 F.3d 211 (2d Cir. 2006) .................................. 7

*Mi-Kyung Cho v. Young Bin Cafe*, 42 F. Supp. 3d 495 (S.D.N.Y. 2013) .................................... 12

*Miller. v. Mount Sinai Med. Ctr.*, 733 N.Y.S.2d 26 (1st Dep't 2001) ........................................ 14

*Mitura v. Finco Servs., Inc.*, 712 F. Supp. 3d 442 (S.D.N.Y. 2024) .......................................... 11

*Mullins v. Consol. Edison Co. of New York, Inc.*, 13-cv-6800(LGS), 2015 WL 4503648 (S.D.N.Y. July 22, 2015) ........................................................................................................................... 10

*Nieblas-Love v. New York City Hous. Auth.*, 165 F. Supp. 3d 51 (S.D.N.Y. 2016) ...................... 11

*Robinson v. De Niro*, 739 F. Supp. 3d 33 (S.D.N.Y. 2023) ............................................................ 6

*Sanderson v. New York State Elec. & Gas Corp.*, 560 F. App'x 88 (2d Cir. 2014) ........................ 8

*Schanfield v. Sojitz Corp. of Am.*, 663 F. Supp. 2d 305 (S.D.N.Y. 2009) ....................................... 8

*Shumway v. United Parcel Serv., Inc.,* 118 F.3d 60 (2d Cir. 1997) .................................................. 4

*Slifer-Weickel, Inc. v. Meteor Skelly, Inc.*, 527 N.Y.S.2d 553 (2d Dep't 1988) ............................. 15

*Twin Lab'ys, Inc. v. Weider Health & Fitness*, 900 F.2d 566 (2d Cir. 1990) ................................. 15

*Vuona v. Merrill Lynch & Co.*, 919 F. Supp. 2d 359 (S.D.N.Y. 2013) ............................................ 5

*White v. Pacifica Found.*, 973 F. Supp. 2d 363 (S.D.N.Y. 2013) .................................................... 2

Defendants Donald J. Trump for President, Inc. (the "Campaign"), Sean Spicer, and Reince Priebus (together "Defendants") respectfully submit this memorandum of law in further support of their Motion for Summary Judgment against Plaintiff Arlene Delgado ("Plaintiff" or "Delgado").

## ARGUMENT

### I.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S DISCRIMINATION CLAIMS.

As a threshold matter, it appears that Plaintiff is now claiming that Defendants discriminated against her by denying her a role in the White House. However, Plaintiff previously affirmed that she was not bringing such a failure to hire claim, a fact that this Court expressly acknowledged. *See* ECF No. 63 at pp. 3-4. As such, this argument is improper and, even if it was proper, is entirely meritless.

First, "it is black letter law that a party may not raise new claims for the first time in opposition to summary judgment," even where the party is *pro se*. *Garcia v. Westchester Cnty.*, 19-cv-2167(CS), 2021 WL 706413, at *5 (S.D.N.Y. Feb. 22, 2021)(internal quotations omitted). Here, Plaintiff's conduct is especially egregious because, not only is she raising a new claim, she previously explicitly disavowed any intention of asserting this precise claim.[1] Defendants were entitled to rely on Plaintiff's prior statements and the Court's prior rulings in litigating this case, which they did.

---

[1]    While Plaintiff seeks to elide this fact by claiming that Defendants "interfered" with her potential White House role, Spicer alone made the decision not to hire Plaintiff to the White House. ¶¶90-94. He quite literally failed to hire her. And Plaintiff cannot revive her dead failure to hire claim by arguing that Spicer interfered with his own decision, as there is no such cognizable legal theory. *See infra* at p. 14.

Second, Plaintiff's attempts to seek liability against Priebus are absurd.  She cannot demonstrate any liability against Priebus for her failure to obtain a White House position.  The evidence is clear that he had no role in the decision not to offer Plaintiff a White House job.  ¶¶95-99; ECF No. 442-1 at 207, 253-254; ECF No. 442-4 at 35-37, 59, 73-76.  The evidence is undisputed that he never discussed Plaintiff's potential employment at the White House with anyone, did not have knowledge about her being offered any such position, had minimal interactions with Plaintiff, and was not employed by the Campaign.  *Id.*  Plaintiff cannot point to any evidence to the contrary, which is itself fatal to her claims against Priebus.  *White v. Pacifica Found.*, 973 F. Supp. 2d 363, 374-75 (S.D.N.Y. 2013) (summary judgment granted where no evidence individual took part in termination decision).  Instead, she relies on baseless speculation that Priebus must have played a role in that decision based on his job as incoming Chief of Staff.[2]  But Plaintiff's speculations are not evidence sufficient to defeat summary judgment.  *Gass v. Evergreen Aviation Ground Logistics Enter., Inc.*, 07-cv-402(ENV)(RER), 2008 WL 11437035, at *6 (E.D.N.Y. Oct. 15, 2008) ("speculation and conjecture [] is insufficient to survive summary judgment").

---

[2]    For example, Plaintiff points to the involvement of Katie Walsh in certain White House hiring decisions as evidence that Priebus must have been involved.  However, even if Walsh were involved in some hiring decisions, there is no evidence that she was involved in Plaintiff's.  Moreover, after the election, Walsh volunteered for the TFA, and was not reporting to Priebus, who never spoke with Walsh about Plaintiff.  *See* Priebus Aff. at ¶¶4-6.  Similarly, Plaintiff points to an e-mail sent by Monica Block expressing her opinion about Plaintiff's White House job prospects, but the email shows that Ms. Block was a member of the TFA and does not prove that Block discussed her opinions with Spicer or Priebus.  *See* PLAEx. 84.  Plaintiff's conclusory allegation that Block worked closely with Spicer and Priebus is not supported by any evidence.  Nor is there any evidence that she ever spoke to them at all about Plaintiff's potential hire at the White House.  Finally, Spicer testified that he alone made the decision to deny Plaintiff a White House job.  ¶90; ECF No. 442-8 at 32-33.

Third, Plaintiff cannot demonstrate that the Campaign had any role in denying her a White House position.  *See* ECF No. 436, p. 26, n.6.  Plaintiff seeks to dispute this fact by citing to e-mails that Lucia Castellano sent about another employee, but as Castellano explained in her sworn testimony, she was professing her personal opinion but "my word didn't mean anything" to White House hiring decisions.[3]  PLAEx. 37 at 231-32.  Moreover, Plaintiff does not, and cannot, cite any evidence about any employee of the Campaign taking part in the decision to deny *her* a White House job.  Such fatally undermines her argument.

Fourth, the evidence is clear that Spicer believed Plaintiff was not qualified for a role in the White House given her prior experience, her demonstrated lack of judgment, and the complaints made by employees of the Campaign about her.  ECF No. 436 at pp. 26-28.  While Plaintiff disagrees that she was not qualified for a job in the White House, her "subjective opinion about [her] own qualifications is insufficient to give rise to a triable issue of fact concerning whether the employer's proffered reason for its actions is a pretext for discrimination."  *Hines v. Hillside Children's Ctr.*, 73 F. Supp. 2d 308, 315 (W.D.N.Y. 1999).  Here, the evidence makes clear that Mr. Spicer had legitimate reasons for not hiring Plaintiff to the White House.  Plaintiff cannot produce any evidence to refute this fact.  There is no other employee of the Campaign that Mr. Spicer hired to work in the White House who invited public scrutiny into her own personal life, and, in the process, embarrassed the incoming Administration and created a media firestorm on the eve of the Inauguration.  Indeed, Plaintiff herself concedes that, prior to sending out the Tweets, no one told her that she would not be receiving a job in the White House, further

---

[3]    Plaintiff also claims that Mr. Glassner admitted that the Campaign played a role in making hiring decisions with the White House, but this is a clear distortion of the record.  Mr. Glassner testified that he personally had no role in any White House hiring decisions and was merely assuming (without knowing) that the Campaign participated in such decisions.  PLAEx. 27 at pp. 27-28.

underscoring the fact that it was the Tweets that motivated Mr. Spicer not to hire Ms. Delgado, rather than purported unlawful animus. ¶74; ECF No. 442-1 at 220-221, 231.

Plaintiff's discrimination claims against the Campaign[4] for purportedly denying her work after the election and for terminating her consultancy fare no better. Plaintiff claims that the Campaign refused to assign her work after the election. However, that claim is squarely contradicted by the record. *See* ¶¶58, 129; ECF No. 442-14; ECF No. 442-51. Furthermore, Plaintiff did not tell anyone in the Campaign other than Miller[5] about her pregnancy until December 20, 2016. ¶59; ECF No. 442-1 at 181; ECF No. 442-15 at DEF-00000840-DEF-00000841. However, Plaintiff has not presented any admissible evidence concerning any specific work which she was denied after that date, the identity of the individual(s) who participated in the decision or any basis for imputing discriminatory animus onto them.[6] Similarly, Plaintiff has

---

[4]    Although Plaintiff claims that Priebus and Spicer should be held liable for these decisions, she cannot point to any evidence demonstrating that either of them had any role in any actions taken by the Campaign. Her claim that they both worked for the TFA is irrelevant, as she has not presented any evidence that the TFA had any input in the Campaign's employment decisions. Indeed, Plaintiff has not identified any discriminatory comments or conduct by Priebus.

[5]    Plaintiff may fruitlessly claim that Miller denied her work after learning about her pregnancy. But she has failed to identify any work that Miller denied her, or even that he was assigning work to anyone in the Campaign after he lost his White House role. To the contrary, the evidence is clear that he continued to recommend Plaintiff for a White House job until his position was rescinded, undermining any claim that he was motivated by unlawful animus in the employment decisions in which he participated.

[6]    While Plaintiff points to the fact that Epshteyn was given a role for the Inauguration after the election, she never demonstrates that a) she was ever qualified, or applied, for the job, or b) who made that decision such that their conduct could be considered discriminatory. Moreover, unlike Plaintiff, Epshteyn had a role in the White House and he is therefore not similarly situated to her. *Shumway v. United Parcel Serv., Inc.,* 118 F.3d 60, 64 (2d Cir. 1997) ("to be 'similarly situated,' the individuals with whom Shumway attempts to compare herself must be similarly situated in ***all material respects***"). Finally, Epshteyn was given this role on November 29, 2016, PLAEx. 65, which was before Plaintiff's first e-mail to the Campaign on December 20, 2016 alerting them to her pregnancy, and thus, this decision could not have been motivated by animus

presented zero evidence as to who made the decision to end her consultancy or that this individual was motivated by a discriminatory animus. Plaintiff has also not identified any similarly situated individuals who remained with the Campaign after the Inauguration. *See Vuona v. Merrill Lynch & Co.*, 919 F. Supp. 2d 359, 377 (S.D.N.Y. 2013) (granting summary judgment where plaintiffs' jobs were eliminated and they could not identify similarly situated retained employees).

Simply put, Plaintiff has presented no evidence of gender and/or pregnancy discrimination against the Campaign. Plaintiff's vague, scattershot allegations of discrimination fail as a matter of law.

## II.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S RETALIATION CLAIMS.

Notwithstanding Plaintiff's concession that she was not asserting a failure to hire claim in this case, Plaintiff also alleges that Defendants retaliated against her by denying her, through interference or otherwise, a position in the White House. However, Plaintiff's retaliation claims fail as a matter of law.

First, Plaintiff cannot point to any evidence that Priebus or the Campaign had any role, or interfered in any way, with her ability to work in the White House. To the contrary, Miller, who was the employee from the Campaign who knew about Plaintiff's pregnancy first, included her on several organizational charts for White House positions up until his own employment there was rescinded. *See* PLAEx. 60, pp. 5-9. Plaintiff's failure to produce evidence demonstrating that Priebus and/or the Campaign interfered in any way with a potential job at the White House is fatal to her retaliation claim against them. *See Vuona* at 383-384 (granting summary judgment where the defendant did not play any role in making the termination decision).

---

based on her pregnancy. Although Plaintiff might argue that Miller was aware of her pregnancy at this time, there is no evidence that Miller made the decision to give Epshteyn this position.

Second, as to Spicer,[7] as discussed above, he had legitimate, non-retaliatory reasons for denying her a job in the White House, including her decision to send out the Tweets. *See supra* at pp. 3-4. While Plaintiff argues that the Tweets themselves constitute protected activity, and thus Spicer's admission is "an admission of unlawful retaliation," ECF No. 498 at p. 24, Plaintiff misstates the law. The Tweets themselves do not constitute protected activity. *See Robinson v. De Niro*, 739 F. Supp. 3d 33, 103 (S.D.N.Y. 2023) (granting summary judgment where the plaintiff failed to "mention any facts, words, or allegations that even arguably could be interpreted as raising claims of gender discrimination or other unlawful practices under the NYCHRL"). Plaintiff claims that she did not make an explicit complaint of discrimination because she was bound by an NDA. ECF No. 498 at p. 24. But Plaintiff fails to demonstrate why she believed her Tweets were permissible, but would have breached the NDA had they included a complaint of discrimination. Regardless, the only relevant question is whether the Tweets can be read as conduct "to protest or oppose statutorily prohibited discrimination." *Bryant v. Verizon Commc'ns, Inc.*, 550 F. Supp. 2d 513, 537 (S.D.N.Y. 2008). They cannot here.

---

[7]    Although Plaintiff disputes that fact that Spicer alone made the decision not to offer her a position in the White House, she has presented no evidence to that effect. Instead, she cites to a declaration submitted by Omarosa Manigault Newman, who claims that this "does not seem accurate to me." PLAEx. 3. However, while Ms. Newman did eventually work in the White House (as a subordinate or Mr. Spicer), there is no evidence that Ms. Newman was *ever* involved in the hiring decisions for White House roles, much less hiring decisions made during the period at issue. As her statement is mere speculation and not based on appropriate personal knowledge, it is improper for a declaration and cannot be considered evidence for summary judgment. *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) ("where a party relies on affidavits or deposition testimony to establish facts, the statements must be made on personal knowledge") (quoting FRCP 56(c)(4)).

Plaintiff also contends that Defendants' decision to terminate her consultancy and/or deny her work was retaliatory. However, once again, Plaintiff has not presented any evidence about who made those decisions or that they were motivated by retaliatory animus. Plaintiff cannot point to any similarly situated employees who performed work that she was qualified to perform after the election. Similarly, Plaintiff has not produced any evidence concerning any similarly situated employees who were retained by the Campaign after the election, or about who made those decisions. In short, there is no evidence to support Plaintiff's retaliation claims against the Campaign for terminating her consultancy or denying her work.

Finally, the evidence undermines all of Plaintiff's arguments to sustain a retaliation claim against the Campaign for filing the arbitration against her. Plaintiff claims that the four-month period between her sending her draft charge to the Campaign and the Campaign deciding to institute the arbitration should be excused because there was a "time out" between the parties during that time period. Plaintiff cites no legal authority for her argument. Instead, the law requires a much closer relationship between the protected activity and the adverse action. *See Carter v. New York*, 310 F. Supp. 2d 468, 478 (N.D.N.Y. 2004) (explaining that temporal proximity is "typically on the order of days or weeks, not months").

In any event, temporal proximity alone is insufficient to demonstrate pretext. *Ehrbar v. Forest Hills Hosp.*, 131 F. Supp. 3d 5, 36 (E.D.N.Y. 2015). Here, the Campaign had a valid basis for bringing claims against Plaintiff – enforcing its rights under the parties' NDA.[8] Enforcing its

---

[8]     Although Plaintiff contends that the Tweets did not reveal confidential information because they were purportedly sent after Miller was announced as Communications Director, this fact, even if true, would be irrelevant. In employment discrimination cases, the analysis is not based on the validity of the employer's reasons, but instead on whether the employer was motivated by an unlawful animus. *McPherson v. New York City Dep't of Educ.*, 457 F.3d 211, 216 (2d Cir. 2006) ("[W]e are decidedly not interested in the truth of the allegations against plaintiff. We are interested

rights is clearly a valid, non-retaliatory basis for the arbitration.  *See Schanfield v. Sojitz Corp. of Am.*, 663 F. Supp. 2d 305, 342 (S.D.N.Y. 2009) ("I can see nothing in Title VII or any other anti-discrimination statute that should prevent an employer from bringing a legitimate claim against a current or former employee simply because that employee has complained about what the employee believes to be discriminatory behavior").

### III.  DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIM.

Plaintiff seeks to salvage the untimely acts of alleged harassment that predicate her hostile work environment claim through a misplaced reliance on the continuing violations doctrine. However, the continuing violations doctrine only applies if "the timely incident [was] sufficiently related to the prior events so that they can be said to be part of the 'same' hostile work environment."  *Sanderson v. New York State Elec. & Gas Corp.*, 560 F. App'x 88, 91 (2d Cir. 2014).

Here, Plaintiff relies on four discrete examples of supposedly timely events sufficient to warrant application of the continuing violations doctrine.  All four fall short of the mark.

First, Plaintiff cites Miller's supposed harassment of her by calling a classmate and asking about her law school graduation date.  However, there is no evidence that this harassment was in any way motivated by Delgado's gender and/or pregnancy, as neither were mentioned or even referenced in the supposed phone call.  *See* PLAEx. 8.  The anti-discrimination laws "only protect[] employees from improper discriminatory intimidation; it does not reach so far as to protect plaintiffs from undiscriminating intimidation by bullish and abusive supervisors."  *Curtis v. Airborne Freight Corp.*, 87 F. Supp. 2d 234, 250 (S.D.N.Y. 2000).

---

in what motivated the employer.") (internal quotations omitted).  Here, the Campaign had a good faith belief that Plaintiff's Tweets revealed confidential information. ECF No. 438 at ¶¶10-11.

Second, Plaintiff references an alleged remark made by Spicer about her pregnancy. However, Spicer did not work for the Campaign and Plaintiff cannot point to any comments that he (or Priebus, for that matter), made during the limitations period. *See McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 78 (2d Cir. 2010) (finding that comments made by an employee in a different department from previous harassment not sufficiently related to trigger continuing violations doctrine).

Third, Plaintiff references a comment made by a third party referring to her as a "slut." Again, this third party was not an employee of the Campaign, itself defeating any finding it was part of a continuing violation. Moreover, the Second Circuit has explained that an employer can only be held liable for the conduct of a non-employee where: "(1) the employer exercises a high degree of control over the behavior of the non-employee, and (2) the employer's own negligence permits or facilitates that non-employee's discrimination." *Leroy v. Delta Air Lines*, 21-cv-267, 2022 WL 12144507, at *3 (2d Cir. Oct. 27, 2022). Plaintiff cannot point to any evidence showing that the Campaign exercised *any* control over another employee's mother or that it facilitated, or could have prevented, this person from sending an unsolicited email to a member of the Campaign. Further, the record is clear that Plaintiff was not even aware of this email until many years after her employment ended. ECF No. 390 at p.2 (admitting Plaintiff only learned of the e-mails in May 2024).

Fourth, Plaintiff points to a phone call made by Mr. Miller in which he purportedly berated Delgado. Again, Plaintiff fails to provide any evidence demonstrating that this phone call was related to her gender or pregnancy, or any facts concerning the phone call at all. As a result, Plaintiff cannot avail herself of the continuing violations doctrine.

Even if Plaintiff's harassment claim was timely (is it not), it would nevertheless need to be dismissed as legally deficient. Many of the examples upon which Plaintiff relies are plainly inadmissible.[9] The remainder are sporadic comments made by various different employees, who worked for different parts of the Campaign, and are the type of "petty slights and trivial inconveniences which are not actionable under the NYCHRL." *Mullins v. Consol. Edison Co. of New York, Inc.*, 13-cv-6800(LGS), 2015 WL 4503648, at *13 (S.D.N.Y. July 22, 2015) (internal quotations omitted).

## IV.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S AIDING AND ABETTING CLAIMS.

Plaintiff's sole argument in support of her aiding and abetting claims against Spicer and Priebus are that they allegedly participated in the purported "interference with the White House job." ECF No. 498 at p. 34. However, as discussed above, Plaintiff cannot sustain a claim under the NYSHRL or the NYCHRL for any discriminatory and retaliatory conduct related to her employment with the White House. *See supra* at pp. 2, 3, 5-6.

## V.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S INTERFERENCE CLAIM.

Plaintiff's interference claim fails for a simple reason: she has failed to identify any threats made by any Defendant towards her, to say nothing of a threat tied to her "exercise of a protected right" under the NYCHRL. *See, e.g., Keles v. Yearwood*, 254 F. Supp. 3d 466, 476 (E.D.N.Y. 2017) ("threats are required to state a claim for violation of New York City Administrative Code

---

[9]    For example, Plaintiff repeatedly cites to allegations in her draft charge of discrimination to be submitted to the NYCCHR. *See* ECF No. 498 at ¶55. However, "it is blackletter law that an unverified complaint is not evidence that can be relied upon at summary judgment." *Caro Cap., LLC v. Koch*, 653 F. Supp. 3d 108, 132 (S.D.N.Y. 2023) (collecting cases). Although styled a "Verified Complaint," the document upon which Plaintiff relies is unsigned and unverified, and its allegations are therefore inadmissible.

§8-107(19)") (cleaned up); *Nieblas-Love v. New York City Hous. Auth.*, 165 F. Supp. 3d 51, 78 (S.D.N.Y. 2016).

Plaintiff's reliance on *Mitura v. Finco Servs., Inc.*, 712 F. Supp. 3d 442 (S.D.N.Y. 2024), a case deciding a motion to dismiss, is inapposite. In *Mitura,* the plaintiff alleged that the defendant threatened to countersue her if she filed her lawsuit. *Id.* at 462. In contrast, Plaintiff has not pointed to any evidence of any threats made by Defendants merely for exercising her rights under the NYCHRL. Rather, she claims that the Campaign initiated an arbitration in response to her decision to file a public charge with the NYCCHR, and subsequently revived that arbitration after she had filed the instant action, but not that they threatened her beforehand. ECF No. 498 at p. 39. However, her failure to identify any threats specifically tied to her exercise of her rights under the NYCHRL is fatal to her interference claim.

Similarly, Plaintiff's claim that Mr. Miller's purported comments constitute interference are similarly devoid of merit. Even if he made those comments, they were not connected to her exercise of rights under the NYCHRL at all. Rather, they referred to the reported optics of her pregnancy.[10]

Finally, Plaintiff's desperate attempts to impute liability on Priebus and Spicer are similarly futile. Plaintiff has not identified any threats at all made by Mr. Priebus. As to Spicer, she points to his alleged statements pressuring her to remove her Tweets. Plaintiff appears to have created this allegation out of whole cloth for her summary judgment opposition. Mr. Spicer's testimony was they he told Plaintiff not to send *additional* public tweets about her relationship with Mr.

---

[10]    That these comments were not threatening in any way is further supported by the fact that Mr. Miller continued to recommend Plaintiff for a White House job up until he lost his position as Communications Director. *See* PLAEx. 60, pp. 5-9.

Miller.  ECF No. 442-8 at 89.  He did not, however, threaten her with any consequences for failing to do so or make any other threats required to sustain an interference claim.

## VI.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM FOR TORTIOUS INTERFERENCE.

Plaintiff's claim for tortious interference similarly fails.  As with her discrimination and retaliation claims, Plaintiff's reliance on speculation and guesswork are simply insufficient to carry her burden at summary judgment.

By way of example only, even in her opposition papers, Plaintiff has not identified a single job that was actually promised to her or any concrete offer that she had received.  Instead, she relies on vague statements allegedly made by President Trump, before the election, that Plaintiff would be "coming with" him.  However, such vague statements, even if true, simply cannot support a valid tortious interference claim.  *See Mi-Kyung Cho v. Young Bin Cafe*, 42 F. Supp. 3d 495, 510 (S.D.N.Y. 2013) ("Plaintiff has failed to identify any ***specific business relationships*** with which defendants interfered, and, thus, this claim fails as a matter of law") (emphasis added).

Plaintiff further claims that Mr. Miller's purported inclusion of her in draft organizational charts indicates that she had a job in the White House with which Defendants interfered.  Again, the evidence squarely contradicts Plaintiff's version of events.  At most, the record evidence demonstrates that Plaintiff was being considered for a job by Mr. Miller when he was being considered for the role of Communications Director.  ¶77; ECF No. 442-4 at 49-50, 71-72, 75; ECF No. 442-20.  However, after the Tweets, Mr. Miller was removed from his role, and no longer in any position to make hiring decisions, including for Plaintiff.  ¶93; ECF No. 442-3 at 126.  Plaintiff cannot point to any evidence that Mr. Miller's removal was made out of an unlawful and malicious motive to harm *Plaintiff*, as is necessary for a tortious interference claim.  Rather, the evidence is clear that the White House (and not Defendants) removed him because of the negative

publicity generated by Plaintiff's Tweets.  This does not support a tortious interference claim against Plaintiff.

Plaintiff's tortious interference claim further fails because she cannot show that any of the Defendants took any wrongful, malicious conduct to interfere with her ability to obtain a position within the White House.  As to Mr. Priebus, Plaintiff has cited no evidence that he had any role in the decision not to hire her for a White House job.  The closest she comes is citing an e-mail sent by a third party indicating that Mr. Priebus would ultimately approve Mr. Miller's hiring decisions, but there is no evidence that this e-mail was ever sent to Mr. Priebus (nor would it have been since Mr. Miller lost his hiring authority shortly thereafter), or that Mr. Priebus ever took any action to undermine Plaintiff's employment prospects.  Rather, she relies instead on her conclusory belief that Mr. Priebus must have played such a role based on his position as incoming Chief of Staff. Plaintiff also points to other employment decisions that Mr. Priebus is said to have made (importantly, concerning other employees, and not Plaintiff herself) as purported evidence that he must have taken some action against her.  But absent evidence of specific conduct in which Mr. Priebus engaged (of which there is none in the record), Plaintiff's own speculation is "the type of conjectural and conclusory assertion that is insufficient to withstand summary judgment."  *See Brogdon v. City of New York*, 16-cv-8076(LAK)(RWL), 2018 WL 4762981, at *19 (S.D.N.Y. Aug. 8, 2018).

Plaintiff's tortious interference claim against the Campaign fails for similar reasons. Plaintiff cannot point to any evidence that anyone from the Campaign participated in the decision to deny her a position in the White House.  Again, the closest Plaintiff comes is alleging that e-mails demonstrate that the Campaign's HR Director expressed her opinions about whether certain

employees should be hired by the White House.[11]  Even putting aside the fact that there is no evidence that these opinions played any role in the ultimate hiring decisions, Plaintiff cannot show that anyone at the Campaign interfered with *her* ability to receive a White House job, which is the only relevant issue in this case.

Plaintiff's tortious interference claims against Spicer likewise fails.  According to Plaintiff, Spicer interfered with her ability to obtain a job with the White House by denying her this role.  However, as the New York Court of Appeals has explained, "conduct constituting tortious interference with business relations is, by definition, conduct directed not at the plaintiff itself, but at the party with which the plaintiff has or seeks to have a relationship."  *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 192 (2004).  Here, Spicer was working in his capacity as White House Communications Director when he made the decision not to hire Plaintiff, a fact that Plaintiff does not dispute.  Such is fatal to her claim, as Spicer cannot tortiously interfere with his own decision not to hire Plaintiff.  *See Miller. v. Mount Sinai Med. Ctr.*, 733 N.Y.S.2d 26, 27 (1st Dep't 2001) (no tortious interference where an individual's purported tortious conduct "was within the scope of her employment duties").  Moreover, Plaintiff cannot identify any wrongful conduct that Spicer took *towards the White House* as necessary to prove a tortious interference claim.  Simply stated, Plaintiff cannot identify any third party with which Spicer interfered.

Relatedly, a valid tortious interference claim requires that Plaintiff demonstrate that Spicer acted with the "***sole*** purpose of inflicting intentional harm on" her.  *Id.* at 190 (emphasis added and internal citations omitted).  However, it is important to note that a party cannot be held liable for

---

[11]    Plaintiff also cites to Miller's comments about her pregnancy as evidence of the Campaign interfering with her White House job.  However, the evidence is clear that Miller continued to recommend Plaintiff for a job as late as December 21, 2016, well after learning that she was pregnant.  *See* PLA Ex. 60.  She cannot point to *any* evidence that Miller had any role in denying her a position at the White House.

tortious interference where it had any other motivations, such as its own "self-interest." *Id.* As Plaintiff cannot reasonably dispute, Spicer believed that Ms. Delgado's Tweets were damaging to the Campaign's reputation. That Spicer had other reasons for his conduct besides interfering with Plaintiff's potential employment is also fatal to her tortious interference claim. *See Slifer-Weickel, Inc. v. Meteor Skelly, Inc.*, 527 N.Y.S.2d 553, 555 (2d Dep't 1988) (tortious interference requires that the defendant act "with the intent to harm the plaintiffs, without economic or other lawful excuse or justification").

## VII. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S PRIMA FACIE TORT CLAIM.

Finally, Plaintiff's cause of action for prima facie tort also fails. As to Spicer, Plaintiff disputes the fact that he had other reasons for denying her a job in the White House than the "disinterested malevolence" necessary for a prima facie tort claim. *Twin Lab'ys, Inc. v. Weider Health & Fitness*, 900 F.2d 566, 571 (2d Cir. 1990). However, Plaintiff's own position is that Spicer believed that Plaintiff's pregnancy was damaging to "a Republican family values campaign and administration." ECF No. 498 at p. 23. This is precisely the type of other motive "such as profit, self-interest, or business advantage [that] will defeat a prima facie tort claim." *Twin Lab'ys* at 571 (internal quotations omitted). Moreover, although Plaintiff disputes Spicer's assessment that she was not qualified for the role of Deputy Press Secretary, she provides no evidence to substantiate her claim. Instead, she cites to her own personal opinions about her qualifications and points to the qualifications of other individuals who were hired for less prestigious position. *See* ECF No. 498 at p. 38 (citing ECF No. 499 at ¶¶114-116). Plaintiff's self-serving claims that she was qualified for the position of Deputy Press Secretary are not evidence that can sustain her claim.

Finally, as to Plaintiff's claim that the Campaign's decision to file an arbitration against her was a prima facie tort, this is not claimed in her Complaint. As noted above, Plaintiff cannot raise

new claims in her opposition to summary judgment.  In any event, Plaintiff cannot identify the

requisite special damages associated with that decision sufficient to create a prima facie tort.

## <u>CONCLUSION</u>

For the foregoing reasons, as well as those in Defendants' moving papers, Defendants'

motion for summary judgment should be granted in its entirety.


Dated: February 13, 2025
     New York, New York


                  **SCHULMAN BHATTACHARYA, LLC**

           By:    <u>/s/ Jeffrey S. Gavenman</u>
                  Jeffrey S. Gavenman
                  6116 Executive Boulevard, Suite 425
                  North Bethesda, Maryland 20852
                  and
                  240 West 40th Street
                  New York, NY 10018
                  Tel.: (240) 356-8550
                  Facsimile: (240) 356-8558
                  Email: jgavenman@schulmanbh.com

## CERTIFICATE OF COMPLIANCE

I hereby certify that this motion complies with the type-volume limitation of this Court's Individual Rules of Practice III(D) and ECF No. 508 because it contains 5,183 words, excluding the parts exempted by this Court's Individual Rules of Practice and the Local Rules of the Southern District of New York.

Dated: February 13, 2025                Respectfully submitted,

_/s/ Jeffrey S. Gavenman_
Jeffrey S. Gavenman

*Counsel for Defendants*