**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

ARLENE J. DELGADO,

               Plaintiff,

v.

DONALD J. TRUMP FOR PRESIDENT, INC.,
*et al.*,

               Defendants.

Case No. 19-cv-11764 (AT) (KHP)

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

Jeffrey S. Gavenman
Schulman Bhattacharya, LLC
6116 Executive Boulevard, Suite 425
North Bethesda, Maryland 20852
Telephone: (240) 356-8550

*Counsel for Defendants Donald J. Trump For President, Inc.
Reince Priebus, and Sean Spicer*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT.................................................................................... 1

SUMMARY OF FACTS ............................................................................................. 3

   I.   PLAINTIFF SENDS A SERIES OF PUBLIC TWEETS THAT CAUSED DEFENDANT SPICER TO REFUSE TO HIRE HER FOR A POSITION IN THE WHITE HOUSE. ...... 3

   II.   THE CAMPAIGN DECIDES TO BRING AN ARBITRATION AGAINST PLAINTIFF FOR BREACHING HER NDA WITH THE CAMPAIGN ................................................ 5

   III.   THE CAMPAIGN AND PLAINTIFF AGREE TO THE AMOUNT OF A SETTLEMENT PAYMENT BUT NO AGREEMENT IS EVER FINALIZED, EXECUTED, OR EFFECTIVE. .............................................................................................................. 6

ARGUMENT ............................................................................................................. 7

LEGAL STANDARD ................................................................................................. 7

   I.   THE COURT SHOULD DENY PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT ON HER BREACH OF CONTRACT CLAIM............................................ 7

      A.   The Campaign Made an Express Reservation Not To Be Bound During the Course of the 2017 Negotiations ............................................................................. 10

      B.   There was No Partial Performance of the Draft Settlement Agreement by Either Party ................................................................................................................... 11

      C.   The Essential Terms of the Agreement Had Not Been Finalized ............................ 12

      D.   The Draft Settlement Agreement was the Type of Contract Usually Committed to Writing ................................................................................................................. 12

      E.   Plaintiff Cannot Sue Under a Purported Agreement When She Has Failed to Provide Consideration ......................................................................................................... 14

   II.   PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT ON HER RETALIATION CLAIMS SHOULD BE DENIED ...................................................... 14

      A.   Plaintiff Cannot Sustain a Retaliation Claim Against Priebus................................. 15

      B.   Plaintiff Cannot Raise New Claims at the Summary Judgment Stage .................... 15

      C.   Plaintiff Cannot Sustain a Retaliation Claim Against Spicer.................................... 17

      D.   Plaintiff Cannot Sustain a Retaliation Claim Against the Campaign........................ 20

      i.   Loss of Work Assignments ..................................................................................... 20

      ii.   The Termination of Plaintiff's Consultancy with the Campaign ............................. 21

      iii.   The Decision to Institute the Arbitration ................................................................ 22

CONCLUSION.......................................................................................................... 27

# TABLE OF AUTHORITIES

## Cases

*Aberra v. City of New York*, No. 18-cv-01138(LAK)(SLC), 2020 WL 11772386 (S.D.N.Y. July 31, 2020).................................................................................................................................... 9

*Abromavage v. Deutsche Bank Sec. Inc.*, No. 21-668, 2022 WL 4360950 (2d Cir. Sept. 21, 2022) ...................................................................................................................................................... 15

*Alali v. DeBara*, 07-cv-2916(CS), 2010 WL 11712774 (S.D.N.Y. Sept. 30, 2010)...................... 16

*Allen v. St. Cabrini Nursing Home, Inc.*, 198 F. Supp. 2d 442 (S.D.N.Y. 2002) ................... 22, 23

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .................................................................. 7

*Aspilaire v. Wyeth Pharms., Inc.*, 612 F. Supp. 2d 289 (S.D.N.Y. 2009) ............................... 15, 18

*Beckman v. U.S. Postal Serv.*, 79 F. Supp. 2d 394 (S.D.N.Y. 2000) ........................................... 16

*Benn v. City of New York*, 482 F. App'x 637 (2d Cir. 2012) ........................................................ 18

*CDO Plus Master Fund Ltd. v. Wachovia Bank, N.A.*, 07-cv-11078(LTS)(AJP), 2009 WL 2033048 (S.D.N.Y. July 13, 2009) .......................................................................................... 14

*Ciaramella v. Reader's Digest Ass'n, Inc.*, 131 F.3d 320 (2d Cir. 1997) .................................... 12

*Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196 (2d Cir. 1995) ............................................................ 7

*Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775 (2d Cir. 2003).......................................... 7

*Demand Elec., Inc. v. Innovative Tech. Holdings, LLC*, 665 F. Supp. 3d 498 (S.D.N.Y. 2023) ..... 8

*Denson v. Donald J. Trump for President, Inc.*, 168 N.Y.S.3d 681 (1st Dep't 2022)................... 25

*EMA Financial, LLC v. Flitways Tech., Inc.*, 20-cv-324(JPO), 2022 WL 1910078 (S.D.N.Y. June 3, 2022)...................................................................................................................................... 12

*Express Indus. & Terminal Corp. v. N.Y. State Dep't of Transp.*, 93 N.Y.2d 584 (1999)................ 8

*Fernandez v. HR Parking Inc.*, 577 F.Supp.3d 254 (S.D.N.Y. 2021 ............................................ 11

*Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276 (2d Cir. 1998 ........................... 18

*Godfrey v. Ethan Allen, Inc.*, 113 F.3d 1229 (2d Cir. 1997)........................................................ 22

*Gonzalez v. City of New York*, 845 F. App'x 11 (2d Cir. 2021) ..................................................... 19

*Grewal v. Cuneo Gilbert & LaDuca LLP*, No. 13-CV-6836 (RA), 2018 WL 4682013, at *4 (S.D.N.Y. Sept. 28, 2018 .................................................................................................................. 7

*Hand v. N.Y.C. Hous. Pres. & Dev.*, 11-cv-1076, 2017 WL 4296751, at *4 (E.D.N.Y. Sept. 25, 2017) .................................................................................................................................................. 12

*Hines v. Hillside Children's Ctr.*, 73 F. Supp. 2d 308 (W.D.N.Y. 1999) ...................................... 20

*Holt v. KMI-Cont., Inc.*, 95 F.3d 123 (2d Cir. 1996) ...................................................................... 19

*Hostcentric Techs., Inc. v. Republic Thunderbolt, LLC*, No. 04-cv-1621(KMW), 2005 WL 1377853, at *4 (S.D.N.Y. June 9, 2005) .......................................................................................... 9

*Kaczmarcysk v. Dutton*, 414 Fed. App'x. 354 (2d Cir. 2011) ........................................................ 10

*Klein v. AT&T Corp.*, 23-cv-11038(DEH), 2024 WL 2959166 (S.D.N.Y. June 10, 2024) ........... 11

*Lan v. AOL Time Warner, Inc.,* 2012 WL 13388978 (S.D.N.Y. Aug. 13, 2012) ........................... 14

*LiDestri Foods, Inc. v. 7-Eleven, Inc.*, 17-cv-6146(FPG), 2019 WL 6875236 (W.D.N.Y. Dec. 16, 2019) ................................................................................................................................................ 13

*McPherson v. New York City Dep't of Educ.*, 457 F.3d 211 (2d Cir. 2006) .................................. 25

*Nat'l Laws. Guild v. Att'y Gen.,* 94 F.R.D. 592 (S.D.N.Y. 1982) .................................................... 9

*Nguyen v. Department of Corrections and Community Services*, 169 F.Supp.3d 375 (S.D.N.Y. 2016) ................................................................................................................................................ 19

*Nugent v. St. Luke's/Roosevelt Hosp. Ctr.*, No. 05-cv-5109 (JCF), 2007 WL 1149979 (S.D.N.Y. Apr. 18, 2007) .............................................................................................................................. 24

*Oparah v. The New York City Dep't of Educ.,* No. 12-cv-8347(JGK)(SN), 2015 WL 4240733 (S.D.N.Y. July 10, 2015) ................................................................................................................... 9

*Oscar Prods., Inc. v. Zacharius*, 893 F. Supp. 250 (S.D.N.Y. 1995) .............................................. 9

*Paulose v. New York City Dep't of Educ.*, 05-cv-9353(DLC), 2007 WL 137151 (S.D.N.Y. May 10, 2007) .......................................................................................................................................... 19

*Prepared Food Photos, Inc. v. Park Place Restaurant, LLC*, 23-cv-170 (FJS)(ML), 2024 WL 1626015 (N.D.N.Y. March 25, 2024) ............................................................................................ 10

*Raji v. Societe Generale Ams. Sec., LLC*, 15-cv-1144(AT)(JLC), 2018 WL 1363760 (S.D.N.Y. Feb. 28, 2018) ............................................................................................................................... 15

*Ramsaran v. Booz & Co. (N.A.) Inc.*, 14-cv-708-GHW, 2015 WL 5008744 (S.D.N.Y. Aug. 24, 2015)..................................................................................................................................... 26

*Ray Legal Consulting Group v. DiJoseph*, 2016 WL 1451547 (S.D.N.Y. Apr. 12, 2016)........... 12

*Rivera-Mora v. Corcoran Group Real Estate*, 2021 WL 11691900 (E.D.N.Y. Jan. 25, 2021)..... 12

*RKG Holdings, Inc. v. Simon*, 182 F.3d 901 (2d Cir. 1999)......................................................... 10

*Roge v. NYP Holdings, Inc.*, 257 F.3d 164 (2d Cir. 2001) ........................................................... 26

*Rogers v. Bank of New York Mellon*, 09-cv-8551(HBP), 2017 WL 4157376(S.D.N.Y. Sept. 19, 2016)..................................................................................................................................... 19

*Schanfield v. Sojitz Corp. of Am.*, 663 F. Supp. 2d 305 (S.D.N.Y. 2009) ................................... 25

*Scheinmann v. Dykstra*, 2017 WL 1422972 (S.D.N.Y. Apr. 21, 2017).................................. 11, 13

*Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597 (2d Cir. 2006) ............................................. 14

*Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77 (2d Cir. 2004) ........... 7

*Slade v. Alfred Univ.*, 11-cv-396, 2013 WL 6081710 (W.D.N.Y. Nov. 19, 2013)........................ 16

*Stoddard v. Eastman Kodak Co.*, 309 F. App'x 475 (2d Cir. 2009).............................................. 22

*Sykes v. Rachmuth*, No. 22-cv-3989(JPC), 2023 WL 2752865 (S.D.N.Y. Mar. 31, 2023)........... 21

*Turner v. NYU Hosps. Ctr.*, 470 F. App'x 20 (2d Cir. 2012) ....................................................... 22

*Unequal Tech. Co. v. Dynamic Apparel Design, LLC*, 23-cv-261(MAD)(ML) 2024 WL 4802754 (N.D.N.Y. Nov. 15, 2024)..................................................................................................... 11

*Xie v. Caruso, Spillane, Leighton, Contrastano, Savino & Mollar, P.C.*, 632 F.Supp.3d 262 (S.D.N.Y. 2022).................................................................................................................. 8, 11

*Ya-Chen Chen v. City Univ. of New York*, 805 F.3d 59 (2d Cir. 2015).......................................... 19

Defendants Donald J. Trump for President, Inc. (the "Campaign"), Sean Spicer, and Reince Priebus (together "Defendants") respectfully submit this memorandum of law in opposition to the Cross-Motion for Partial Summary Judgment submitted by Plaintiff Arlene Delgado ("Plaintiff" or "Delgado") dated January 13, 2025 ("Plaintiff's Motion"). *See* ECF No. 501.

## PRELIMINARY STATEMENT

Plaintiff's Motion is nothing more than a transparent attempt to muddy the record and distract from the fact that, as Defendants have demonstrated in their own motion for summary judgment, Plaintiff's claims should be dismissed in their entirety. Apparently, Plaintiff hopes that by moving for summary judgment herself, she can elide the fact that her own claims have no legal basis or support in the evidentiary record. However, as will be explained further below, Plaintiff's Motion is wholly without merit and should be denied in its entirety.

Plaintiff's Motion as to her breach of contract claim contends that there was a binding settlement agreement between the parties to resolve Plaintiff's claims. However, in making this argument, Plaintiff ignores the relevant case law, as well as the facts of the case. The facts indisputably demonstrate that the parties had only reached an agreement on one term: the amount of money that the Campaign was willing to pay in order to settle Plaintiff's claims. Outside of that term, the record clearly demonstrates that both parties recognized the need to negotiate every other term associated with a settlement – including, *inter alia*, the payment timing; the scope of the release, the No Disparagement provision, and the Confidentiality provision; the Arbitration Provision; and the Liquidated Damages provision – and document their agreement in a formal writing signed by the parties. Before they were able to do so, and indeed, before the parties were able to reach an agreement on any of the other material terms underlying a potential settlement,

1

including, importantly, the consideration Plaintiff was to provide in exchange for any payment from the Campaign, the settlement talks broke down and no agreement was reached.

Plaintiff's Motion as to her retaliation claims fares no better. As a threshold matter, it is entirely unclear what the scope of Plaintiff's Motion is as to her retaliation claim. Plaintiff's Motion takes a scattershot approach, impermissibly raising theories of liability for the first time on summary judgment, mentioning theories of liability in passing, and bringing claims against Defendants who clearly had no role in the actions of which she complaints. But, even putting those issues aside, Plaintiff's Motion would fail on the merits.

First, Plaintiff has failed to produce any evidence that Priebus was involved in any of the retaliatory conduct of which she claims. Second, as to Spicer, he had no role in any of the actions taken by the Campaign, and thus she cannot seek liability against him for *inter alia*, terminating her consultancy with the Campaign, failing to provide her with assignments after the 2016 election, or instituting an arbitration against her. To the extent that she seeks to assert a failure to hire claim against Spicer for his role in denying her a job with the White House, Plaintiff's has previously affirmatively represented that she was not asserting such a claim in this case. Moreover, the record is clear that Spicer had legitimate, non-retaliatory reasons for his decision, which Plaintiff cannot demonstrate were pretextual. Finally, as to the Campaign, the evidence is clear that it, too, had legitimate non-retaliatory reasons for its conduct. Specifically, after the election, the Campaign ceased to function as an ongoing entity for all intents and purposes and surrogates such as Plaintiff were no longer necessary. Similarly, the Campaign had a legitimate reason for instituting an arbitration against Plaintiff – its need to protect its confidential information. To that end, the Campaign has sued several individuals, irrespective of whether they engaged in protected activity.

For the foregoing reasons, and for those set forth below, Plaintiff's Motion should be denied in its entirety.

## SUMMARY OF FACTS[1]

### I.    PLAINTIFF SENDS A SERIES OF PUBLIC TWEETS THAT CAUSED DEFENDANT SPICER TO REFUSE TO HIRE HER FOR A POSITION IN THE WHITE HOUSE.

On or about December 21, 2016, then-President-elect Trump made the decision to appoint Jason Miller as the Communications Director for the White House, a decision that was publicly announced the next day.  ¶¶101-102;[2] ECF No. 442-8 at 25; ECF No. 442-16d.   As the incoming White House Communications Director, Mr. Miller had the authority to make all of the hiring decisions for the Communications Department.  ¶116; ECF No. 442-8 at 27.  To that end, Mr. Miller originally had Ms. Delgado on a list of people being considered for jobs within the White House Communications Department.  Mr. Miller continued including Ms. Delgado on the list of potential White House employees through the date that he was appointed Communications Director.  ¶¶117-119; ECF No. 442-8 at 74-75; PLAEx. 65 at 22-29.

Prior to any official announcement by the White House, Plaintiff sent out a series of tweets concerning Mr. Miller.  Specifically, she sent out a tweet stating that "so, an announcement forthcoming concerning the new Comms Director @JasonMillerinDC tonight."  ¶103; ECF No. 442-17.  Plaintiff sent out another tweet referring to Mr. Miller as her "baby daddy," and a final one calling him "the 2016 version of John Edwards."  ¶104; ECF No. 442-1 at 215-216; ECF No.

---

[1]    For clarity of the record, Defendants only summarize the facts relevant to their opposition to Plaintiff's Cross-Motion for Partial Summary Judgment.  For a more fulsome discussion of the facts in this case, Defendants respectfully refer the Court to their Memorandum of Law in Support of Defendants' Motion for Summary Judgment.  ECF No. 436.

[2]    All citations to "¶__" refer to paragraphs in Defendants' Response to Plaintiff's Local Rule 56.1 Statement and Defendants' Counterstatement of Material Facts, filed herewith.

442-17.   Shortly thereafter, on or about December 24, 2016, Plaintiff sent out another series of tweets referencing the need for Mr. Miller to resign.[3]  ¶110; ECF No. 442-1 at 229-230; ECF No. 442-18.   Importantly, none of the Tweets explicitly referenced discrimination, harassment or retaliation in any way.  ¶111; ECF No. 442-17; ECF No. 442-18.

Following the Tweets, on December 24, 2016, Mr. Miller's appointment to the position of White House Communications Director was withdrawn, and he was never employed by the White House for the first Trump Administration.  ¶114-115; ECF No. 442-4 at 49-50, 71-72, 75; ECF No. 442-8 at 37; ECF No. 442-20.  Thereafter, Mr. Spicer became responsible for making the ultimate hiring decisions for the White House Press Department and Communications Department.  ¶121; ECF No. 442-8 at 39-41.  In that capacity, he made the decision not to hire Plaintiff for a position in the White House.  ¶¶122-123; ECF No. 442-8 at 32-33; PLAEx. 65 at pp. 30-31.  Mr. Spicer believed that Ms. Delgado's Tweets demonstrated poor judgment that disqualified her from a position in the White House. ¶¶124, 127, 128 ECF No. 442-8 at 30, 57-58.  In addition, Plaintiff threatened the incoming Trump Administration by telling Mr. Spicer that, in the event that the press (which the Trump Administration obviously did not control) wrote articles about her or her Tweets, she intended to issue additional tweets disparaging other potential employees of the Trump Administration.  ¶126; ECF No. 442-23 at PL000278.  She also spoke with reporters about the Tweets.  ¶129; ECF No. 442-8 at 62-63.  Taken together, this behavior created a distraction for the incoming Trump Administration and demonstrated a lack of professional judgment incompatible with a White House employee.  ¶¶125, 130-133; ECF No. 442-5 at 22-23; ECF No. 442-8 at 57-

---

[3]    The December 22, 2016 tweets and the December 24, 2016 tweets are referred to collectively herein as the "Tweets."

4

62; ECF No. 442-24 at TFA_DG_00002569; ECF No. 442-25 at TFA_DG_00007397; ECF No. 442-26 at TFA_DG_00010664; ECF No. 442-27.

Additionally, Mr. Spicer believed that Plaintiff did not have the experience or qualifications for a position in the White House.  ¶¶136-139; ECF No. 442-8 at 30, 59-61.  Mr. Spicer also believed that Plaintiff's history of personality conflicts with members of the Campaign, the RNC, and the incoming Trump Administration further made her a poor fit with the White House.  ¶¶140-149; ECF No. 442-1 at 107-108; ECF No. 442-4 at 74-75; ECF No. 442-8 at 51, 66-67; ECF Nos. 442-28-442-39.

## II.    THE CAMPAIGN DECIDES TO BRING AN ARBITRATION AGAINST PLAINTIFF FOR BREACHING HER NDA WITH THE CAMPAIGN.

As part of her initial consultancy with the Campaign, Plaintiff signed an NDA. *See* ¶52; PLAEx. 12.  The NDA contained language preventing Plaintiff from revealing any confidential information that would be detrimental to the Campaign or taking any action that would publicly disparage the Campaign.  *Id*. at pp. 6-7.

On or about March 29, 2017, Plaintiff's counsel sent the Campaign a draft charge of discrimination to be filed with the New York City Human Rights Commission setting forth various claims against, *inter alia*, the Campaign, Mr. Priebus, Mr. Spicer, and Stephen Bannon (the "Draft Complaint").  ¶42, PLAEx. 21.  The Campaign believed that Plaintiff's Draft Complaint contained more information than what was necessary to prosecute her claims and that this extraneous information was included solely to embarrass and disparage the Campaign.  ¶75; ECF No. 438 at ¶10.  The Campaign also believed that Plaintiff had previously breached her NDA through the information revealed in the Tweets.  ¶75; ECF No. 438 at ¶11.  As a result, the Campaign made the decision to institute an arbitration action against Plaintiff for breaching her NDA (the "Arbitration").  ECF No. 438 at ¶12.

Notably, however, the Campaign never sought to prevent Plaintiff from litigating her discrimination claims. ¶158; ECF No. 438 at ¶¶5-9, 13. Instead, it merely sought to prevent her from gratuitously publicizing information for the sole purpose of damaging the Campaign's reputation. *Id.* Indeed, the Campaign has sued several other employees who breached their NDAs, even where these employees had never threatened to sue the Campaign. ¶¶154-155; ECF No. 442-42; ECF No. 442-43.

## III. THE CAMPAIGN AND PLAINTIFF AGREE TO THE AMOUNT OF A SETTLEMENT PAYMENT BUT NO AGREEMENT IS EVER FINALIZED, EXECUTED, OR EFFECTIVE.

On or about May 10, 2017, Plaintiff and the Campaign attended a mediation session in an effort to resolve her claims. ¶2; PLAEx. 30. On June 4, 2017, the Campaign's counsel e-mailed Plaintiff's counsel explaining that the parties had reached an agreement as to the amount of the settlement, but that the remaining terms needed to be negotiated and "reduce[d] to a formal writing." ¶160; ECF No. 442-44 at P000158-159. On June 5, 2017, Plaintiff's counsel responded, acknowledging the need to "move to documentation of the settlement." ¶161; ECF No. 442-44 at P000160-161. Thereafter, the parties exchanged multiple draft settlement agreements. ¶¶163, 167, 169; ECF No. 442-45; ECF No. 442-46 at P000191-202; ECF No. 442-50. Ultimately, the parties were unable to agree on several trenchant terms of the proposed settlement, including, *inter alia*, the timing of the payment to be made to Plaintiff, the scope of the release to be provided to Plaintiff, the scope of the Confidentiality provision, the scope of the No Disparagement provision, the No Waiver of Child Support provision, the scope of the No Interference with Future Employment provision, the Entire Agreement provision, the scope of the Arbitration provision, and the Liquidated Damages provision. ¶18; *compare* PLAEx. 30 at P0000166-P0000177 with PLAEx.

30 at DEF-00002048-DEF-2056.  Due to the disagreements on those provisions, the parties never

finalized, and never executed, a settlement agreement.

## ARGUMENT

## LEGAL STANDARD

Summary judgment is only appropriate where "there is no genuine issue as to any material

fact." FRCP 56(c). The party seeking summary judgment bears the burden of showing that no

genuine factual dispute exists. *See Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir. 1995)

(citation omitted).  On summary judgment, the court construes the facts, resolves all ambiguities,

and draws all permissible factual inferences in favor of the non-moving party.  *See Dallas*

*Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003) (citing *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  If there is any evidence from which a reasonable inference

could be drawn in favor of the non-moving party on the issue on which summary judgment is

sought, summary judgment is improper.  *See Sec. Ins. Co. of Hartford v. Old Dominion Freight*

*Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004) (quotation omitted)

## I.    THE COURT SHOULD DENY PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT ON HER BREACH OF CONTRACT CLAIM.

In order to establish a valid breach of contract under New York law, a plaintiff must

demonstrate, "(1) the existence of a contract between [herself] and defendant; (2) performance of

the plaintiff's obligations under the contract; (3) breach of the contract by that defendant; and (4)

damages to the plaintiff caused by that defendant's breach."  *Grewal v. Cuneo Gilbert & LaDuca*

*LLP*, No. 13-CV-6836 (RA), 2018 WL 4682013, at *4 (S.D.N.Y. Sept. 28, 2018), *aff'd*, 803 F.

App'x 457 (2d Cir. 2020) (internal quotations omitted).

Plaintiff cannot dispute that "[u]nder New York law, applicable here, the proponent of a

contract has the burden of proving the existence of a binding contract by a preponderance of the

evidence." *Xie v. Caruso, Spillane, Leighton, Contrastano, Savino & Mollar, P.C.*, 632 F.Supp.3d 262, 267 (S.D.N.Y. 2022). In order to determine whether a binding contract between the parties exists, courts look to whether there is "a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to ***all material terms***." *Demand Elec., Inc. v. Innovative Tech. Holdings, LLC*, 665 F. Supp. 3d 498, 504 (S.D.N.Y. 2023) (emphasis added and quoting *Express Indus. & Terminal Corp. v. N.Y. State Dep't of Transp.*, 93 N.Y.2d 584, 589 (1999)). Here, Plaintiff's breach of contract claim fails for myriad reasons, the foremost of which is that she cannot demonstrate that the parties reached an agreement on "all material terms."

Plaintiff seeks to elide this fact by arguing that the only material term in this case was "the amount of the settlement." ECF No. 501 at p. 11. It is obvious why Plaintiff has chosen to frame her argument in this manner – the evidence is clear that the parties did not reach an agreement on any other material term aside from the amount of the proposed settlement. Specifically, in the same e-mail in which it confirmed that the Campaign[4] had reached a preliminary agreement as to the amount of the settlement, the Campaign's counsel explicitly stated that the parties "***need to work out payment and other terms*** and reduce [it] to a formal signed writing." ¶162; ECF No. 442-44 at P000160-161 (emphasis added). At no point did Plaintiff's counsel dispute the fact that there were "other terms" that needed to be negotiated before a settlement could be finalized. After Plaintiff sent a draft of the proposed settlement agreement, the Campaign sent a redline containing substantial changes to Plaintiff's proposal, including to the timing of the payment, the scope of the releases the parties were to sign, the scope of the confidentiality provision, the scope of the non-

---

[4] Although Plaintiff repeatedly claims that she is entitled to summary judgment against "Defendants" for her breach of contract claim, neither Mr. Priebus nor Mr. Spicer was ever a party to the proposed settlement agreement, nor were they intended to be signatories thereto and cannot be held liable for its alleged breach.

disparagement provision, the no-rehire provision, the arbitration provision, and the liquidated damages provision. *See* P000160-161. In other words, none of the consideration that Plaintiff would be providing to the Campaign in exchange for a settlement payment had been agreed to by the parties, obviating any argument that a valid contract existed. *Oscar Prods., Inc. v. Zacharius*, 893 F. Supp. 250, 255 (S.D.N.Y. 1995) (valid contract requires "offer, acceptance, and consideration"). Indeed, the Campaign's changes were so extensive that Plaintiff's counsel responded by stating that they were "stunned" by the edits and, further, that "this feels like someone on your side is ***trying to crater the deal***," a telling acknowledgement that "the deal" had not been finalized. ¶168; ECF No. 442-46 at P000203-204 (emphasis added).

Thereafter, Plaintiff sent the Campaign a revised settlement agreement. ¶169; *See* ECF No. 442-50. However, the parties still had not reached an agreement as to many of the same material terms above. Plaintiff once again admitted that the settlement had not been finalized, noting "we really do need to close this thing this week ***if it's going to be closed at all***." ¶171; ECF No. 442-46 at P000205 (emphasis added). At that point, the Campaign made clear that it was not moving forward with the settlement. Accordingly, there is simply no argument that the parties had reached a binding settlement agreement.[5]

---

[5] The fact that the parties had not reached an agreement on several material terms, a fact that was acknowledged by Plaintiff's counsel on multiple occasions – distinguishes this case from those cited by Plaintiff. *See Nat'l Laws. Guild v. Att'y Gen.,* 94 F.R.D. 592, 598 (S.D.N.Y. 1982) (the plaintiff's "proposal set forth all elements of the arrangement"); *Oparah v. The New York City Dep't of Educ.,* No. 12-cv-8347(JGK)(SN), 2015 WL 4240733, at *1 (S.D.N.Y. July 10, 2015) ("plaintiff unequivocally agreed on the record that he had settled all of his claims"); *Hostcentric Techs., Inc. v. Republic Thunderbolt, LLC,* No. 04-cv-1621(KMW), 2005 WL 1377853, at *4 (S.D.N.Y. June 9, 2005) (plaintiff "listed all of the essential terms of the settlement"); *Aberra v. City of New York,* No. 18-cv-01138(LAK)(SLC), 2020 WL 11772386, at *2 (S.D.N.Y. July 31, 2020) (parties represented to court that they had agreed to a settlement and filed stipulation of dismissal).

Plaintiff's reliance on the *Winston* factors does not change this analysis. To the contrary, each factor conclusively weighs against a finding of a binding settlement in this case.

A.    **The Campaign Made an Express Reservation Not To Be Bound During the Course of the 2017 Negotiations.**

The first *Winston* factor – viewed by courts as the most important - easily weighs against enforcement of the would-be settlement agreement. Under well-settled Second Circuit precedent, "where 'there is a writing between the parties showing that [one party] did not intend to be bound ... a court need look no further than the first factor.'" *Kaczmarcysk v. Dutton*, 414 Fed. App'x. 354, 355 (2d Cir. 2011) (*quoting RKG Holdings, Inc. v. Simon*, 182 F.3d 901, 901 (2d Cir. 1999)).

Here, Plaintiff asserts that "no party expressed a desire not to be bound absent a written agreement." ECF No. 501 at p.11. Plaintiff has cited no evidence to support her claim, and it is squarely contradicted by the evidence. The Campaign's June 4, 2017 e-mail states its desire to memorialize the settlement in "a formal writing." ¶160; ECF No. 442-44 at P000158-159. The Campaign confirmed its intention the next day, writing that the parties "need to work out payment and other terms and reduce to a formal signed writing." ¶162; ECF No. 442-44 at P000160-161. Thus, the parties' correspondence "make[s] clear that, although the parties agreed to an amount necessary to settle the case, they also agreed that a written agreement was necessary to settle this matter." *Prepared Food Photos, Inc. v. Park Place Restaurant, LLC*, 23-cv-170 (FJS)(ML), 2024 WL 1626015, at *5 (N.D.N.Y. March 25, 2024) (finding the defendants' argument that no written agreement was contemplated by the parties to be "incredible based on Defendant's counsel's conduct in trading versions of the written parameters of an agreement").

Furthermore, the Campaign's counsel stated explicitly that his client's approval was needed prior to agreeing to a settlement. ¶170; ECF No. 442-46 at P000205-207. "This alone strongly favors denying Plaintiff's motion." *Unequal Tech. Co. v. Dynamic Apparel Design, LLC*, 23-cv-

10

261(MAD)(ML) 2024 WL 4802754, at *4-5 (N.D.N.Y. Nov. 15, 2024) (finding the first *Winston* factor weighed against enforcement where counsel had expressly conditioned the agreement's binding effect on final client approval).

Finally, the text of the draft agreements contain language stating that it "is executed, final, and binding *upon the signatures* of the representative for Claimant and the representative for Respondents," PLAEx. 30 at P000174 (emphasis added), further demonstrating a written agreement was required. *See Taub v. Arrayit Corp.*, 15-cv-01366(ALC)(JLC), 2023 WL 8368886, at *3 (S.D.N.Y. Dec. 4, 2023) (finding no contract where "the agreement contains a provision which specifically references written execution"). The agreement also contains a merger clause at Paragraph 10, which similarly weighs against a finding of a final agreement. *Id.* at P000173; *see also Fernandez v. HR Parking Inc.*, 577 F.Supp.3d 254, 259 (S.D.N.Y. 2021).

## B. **There was No Partial Performance of the Draft Settlement Agreement by Either Party.**

The second *Winston* factor also militates against an enforceable agreement. Plaintiff appears to concede this point, half-heartedly asserting that "[t]he second factor is often not relevant because the settlement is repudiated before reduced to writing, as occurred here." ECF No. 501 at 11 (*citing Scheinmann v. Dykstra*, 2017 WL 1422972, at *4 (S.D.N.Y. Apr. 21, 2017)). However, because no payment was made and there was no performance by either party, this factor weighs against enforcement. *See Klein v. AT&T Corp.*, 23-cv-11038(DEH), 2024 WL 2959166, at *4 (S.D.N.Y. June 10, 2024).

Furthermore, a factor that courts look at is whether the parties ceased attempting to litigate their dispute. *Xie*, 632 F.Supp.3d at 268. Here, both parties did the opposite by affirmatively *commencing* litigation. Contrary to Plaintiff's position, therefore, this factor is not neutral but rather supports a denial of her Motion on the breach of contract claim.

11

C.  **The Essential Terms of the Agreement Had Not Been Finalized.**

The third *Winston* factor can only be considered "satisfied when there was literally nothing to negotiate." *EMA Financial, LLC v. Flitways Tech., Inc.*, 20-cv-324(JPO), 2022 WL 1910078, at *4 (S.D.N.Y. June 3, 2022) (internal quotations omitted). Further, "even minor or technical points of disagreement in draft settlement documents [are] sufficient to forestall the conclusion that a final agreement on all terms had been reached." *Hand v. N.Y.C. Hous. Pres. & Dev.*, 11-cv-1076, 2017 WL 4296751, at *4 (E.D.N.Y. Sept. 25, 2017) (internal quotation marks omitted).

Here, as explained above, virtually none of the material terms of a final settlement had been agreed upon, including the terms of the consideration that Plaintiff was to provide to the Campaign. *See supra* at pp. 8-10.

D.  **The Draft Settlement Agreement was the Type of Contract Usually Committed to Writing.**

"The Second Circuit has recognized that 'settlements of any claim are generally required to be in writing or, at a minimum, made on the record in open court.'" *Ray Legal Consulting Group v. DiJoseph*, 2016 WL 1451547, at *8 (S.D.N.Y. Apr. 12, 2016) (*quoting Ciaramella v. Reader's Digest Ass'n, Inc.*, 131 F.3d 320, 326 (2d Cir. 1997)). Furthermore, "[w]here, as here, the parties are adversaries and the purpose of the agreement is to forestall litigation, prudence strongly suggests that their agreement be written in order to make it readily enforceable, and to avoid still further litigation." *Winston*, 777 F.2d at 83.

The sophistication of the parties involved is relevant to this factor. Here, it is hard to imagine a scenario in which a Presidential campaign would not contemplate an agreement such as the one here to be memorialized in a writing clearly setting forth all of the material terms. Both parties were represented by counsel at the time, and the Campaign was a large entity. *See Rivera-Mora v. Corcoran Group Real Estate*, 2021 WL 11691900, at *6 (E.D.N.Y. Jan. 25, 2021) ("Nor

is a settlement between sophisticated parties typically embodied in email and letter exchanges like the ones between Ms. Evers and Mr. Daaleman. After all, lawyers representing a large client facing potential federal litigation would surely want all of the terms of any agreement—including assurances of finality—embodied in a formal agreement.").  Furthermore, even without looking at its terms, the fact that multiple drafts of the would-be written settlement were exchanged further establish that it had to be memorialized in a formal writing. *See, e.g., LiDestri Foods, Inc. v. 7-Eleven, Inc.*, 17-cv-6146(FPG), 2019 WL 6875236, at *6 (W.D.N.Y. Dec. 16, 2019).

"The complexity of an agreement also informs the determination of whether it would be expected to be reduced to writing." *DiJoseph*, 2016 WL 1451547, at *8. Plaintiff's contention that the agreement was not complex is frivolous. Plaintiff relies on *Scheinmann v. Dykstra*, 2017 WL 1422972 (S.D.N.Y. Apr. 21, 2017) as authority for her proposition that there did not have to be a final written agreement. The posture of *Scheinmann*, however, illustrates why it has no relevance here. There, the Court had concluded that "[t]he agreement was not complex" after citing to the relatively small settlement amount of $15,000. *Id.* at *5. The amount at issue here was *eight hundred* times greater. The *Scheinmann* Court also found that the parties' obligations would terminate "on entry of the boilerplate judgment" whereas here the settlement placed ongoing obligations on both the parties. *Id.*  But most importantly, the *Scheinmann* defendant never insisted on a written agreement, whereas here, the Campaign's counsel made clear that not only was a finalized written agreement necessary, it would only be binding upon the parties signatures. *See id.*

As such, Plaintiff has failed to establish the existence of a binding contract based on her theory of a finalized settlement having been reached and the *Winston* factors each support a denial of her motion for summary judgment.

**E. Plaintiff Cannot Sue Under a Purported Agreement When She Has Failed to Provide Consideration.**

Even assuming, *in arguendo*, that Plaintiff was correct in asserting the existence of a valid contract under *Winston* (she is not), her commencement of the instant lawsuit alleging a myriad of claims extending beyond enforcement of the contract itself bars the same. By doing so, Plaintiff is essentially seeking a windfall in the amount of $1.2 million while denying the Campaign the release and confidentiality which were to be consideration in exchange the settlement payment.

Plaintiff cannot contend she has performed under the terms of the contract, particularly because she herself would be in breach of the agreement's confidentiality provisions by having publicized its existence and terms. *See Lan v. AOL Time Warner, Inc.,* 2012 WL 13388978, at *3 (S.D.N.Y. Aug. 13, 2012). Furthermore, Plaintiff has failed to establish that she provided notice of the alleged breach before commencing the instant lawsuit. *See CDO Plus Master Fund Ltd. v. Wachovia Bank, N.A.*, 07-cv-11078(LTS)(AJP), 2009 WL 2033048 at *6-7 (S.D.N.Y. July 13, 2009).

As such, even if Plaintiff could establish the existence of a valid contract, her summary judgment motion on her breach of contract claim must still be denied.

**II. PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT ON HER RETALIATION CLAIMS SHOULD BE DENIED.**

Plaintiff seeks summary judgment on her claims for retaliation. To establish a *prima facie* case of retaliation under the NYSHRL, Delgado must establish that: (1) she engaged in a legally protected activity; (2) Defendants were aware of her participation in the protected activity; (3) Plaintiff was subject to an adverse action by Defendants; and (4) there is a causal connection between Plaintiff's protected activity and Defendants' alleged adverse action. *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 608-609 (2d Cir. 2006). If Plaintiff can make out such a *prima*

*facie* case, Defendants must "articulate a legitimate, non-retaliatory rationale for [their] actions." *Aspilaire v. Wyeth Pharms., Inc.*, 612 F. Supp. 2d 289, 308 (S.D.N.Y. 2009). Plaintiff must then show that the reason is pretextual and that retaliation was the "but-for" cause of Defendants' purported adverse actions. *Abromavage v. Deutsche Bank Sec. Inc.*, No. 21-668, 2022 WL 4360950 (2d Cir. Sept. 21, 2022). While retaliation claims under the NYCRL are not subject to the same *McDonnell-Douglas* burden shifting framework, Plaintiff must nevertheless show that she "took an action opposing her employer's discrimination . . . and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Raji v. Societe Generale Ams. Sec., LLC*, 15-cv-1144(AT)(JLC), 2018 WL 1363760, at *8 (S.D.N.Y. Feb. 28, 2018)(Torres, J) (citation omitted).

### A. **Plaintiff Cannot Sustain a Retaliation Claim Against Priebus.**

Plaintiff seeks summary judgment against "Defendants" for retaliation. Although Plaintiff notes in a footnote that Priebus did not retaliate against her "for her grievance airing tweets," *see* ECF No. 501 at p. 32 n.8, the scattershot nature of Plaintiff's Motion, *see infra*, makes it impossible to determine if she is seeking summary judgment against Priebus for any of the other supposed retaliatory conduct of which she complains. However, there is no evidence that Priebus participated in *any* of the decisions underlying Plaintiff's retaliation claim, nor is there any evidence that he harbored any retaliatory animus towards Plaintiff. Plaintiff's Motion, to the extent that it seems summary judgment against Priebus at all, should be denied.

### B. **Plaintiff Cannot Raise New Claims at the Summary Judgment Stage.**

As a threshold matter, it is unclear what adverse actions form the predicate of the retaliation claims in Plaintiff's Motion. Plaintiff's Motion largely focuses on "the Campaign's pursuit of the Arbitration." *See* ECF No. 501 at 15, 20-21, 24-33. However, at other points, Plaintiff briefly mentions the decision to terminate her consultancy with the Campaign, *id.* at 18, the failure to hire

15

her for a White House job, *id.*, the Campaign's decision to restart the Arbitration in 2019, *id.* at 21, and the Campaign's decision not to rehire her in 2019 for the 2020 election cycle. *Id.* at 22. Accordingly, it is impossible to determine the scope of Plaintiff's Motion as it relates to her retaliation claim.

To the extent that Plaintiff is seeking summary judgment based on the Campaign's decision to reinstate the Arbitration in 2019, or on the Campaign's decision not to rehire her in 2019 for the 2020 election cycle, Plaintiff's Motion should be denied outright as neither of these claims are raised in Plaintiff's Amended Complaint. Plaintiff does not mention the decision to not hire her for the 2020 election cycle at all in her Amended Complaint. *See generally* ECF No. 94. Likewise, to the extent that she mentions the decision to reinstate the Arbitration in 2019, it is in a section entitled "Defendants Filed a Meritless Arbitration Demand that Has Since Been Dismissed on Summary Judgment," and is only discussed as purported proof that the Arbitration was not brought in good faith. *Id.* at ¶¶ 71-72.

It is well established that a party cannot "raise new claims or theories of liability" for the first time at the summary judgment stage. *Alali v. DeBara*, 07-cv-2916(CS), 2010 WL 11712774, at *17 (S.D.N.Y. Sept. 30, 2010) (collecting cases); *see also Slade v. Alfred Univ.*, 11-cv-396, 2013 WL 6081710 (W.D.N.Y. Nov. 19, 2013) (noting that a plaintiff cannot "rais[e] a new theory, based upon facts not alleged in the complaint" at the summary judgment stage). Here, Defendants never took discovery as to why Plaintiff was not hired by the 2019 Campaign because that claim was never raised, nor was the 2020 Campaign even discussed in the Amended Complaint, which, it should be noted, was filed in March 2022, well after the relevant events occurred. *Beckman v. U.S. Postal Serv.*, 79 F. Supp. 2d 394, 407 (S.D.N.Y. 2000) ("Although a complaint need not correctly plead every legal theory supporting the claim, at the very least, plaintiff must set forth facts that

will allow each party to tailor its discovery to prepare an appropriate defense"). Likewise, Plaintiff's failure to clearly allege that she was grounding her retaliation claim on the Campaign's decision to reinstate the Arbitration in 2019 bars any attempt to litigate that claim at this juncture.

Indeed, it is apparent that Plaintiff's Motion does not legitimately believe that these actions are properly before the Court given that both arguments are given unusually short shrift – mentioned only in passing in a thirty-page brief.

### C.  **Plaintiff Cannot Sustain a Retaliation Claim Against Spicer.**

Plaintiff's Motion seeking summary judgment against Spicer should be denied for several reasons. First, Spicer was never an employee of the Campaign, and there is no evidence at all that Plaintiff can point to demonstrating that he had any role in any decisions made by the Campaign towards its employees or contractors. ¶¶92-94; ECF. No. 442-8 at 12-16. Thus, to the extent that Plaintiff is claiming that the Campaign's decision to file the Arbitration, to terminate her employment, or to deny her work opportunities after the 2016 election were retaliatory, Plaintiff has not presented a single shred of evidence that Spicer had any role in those decisions.

To the extent that Plaintiff is claiming that Spicer engaged in retaliation for failing to hire her to the White House, Plaintiff has already disclaimed any intention of bringing a failure to hire claim, as this Court has previously noted. *See* ECF No. 63 at pp. 3-4 ("Even if her complaint could be construed to state a failure-to-hire claim, Delgado twice made her position clear in no uncertain terms"). As explained above, Plaintiff cannot use summary judgment to assert new claims in this case, especially ones she has explicitly stated that she was not pursuing.

Even if this were not the case, Plaintiff cannot demonstrate that Spicer's decision was motivated by a retaliatory animus. Rather, as the evidence demonstrates, Spicer decided not to hire Plaintiff because, *inter alia*, her conduct showed a complete lack of the type of sound judgment and discretion necessary to work in the White House, she lacked the experience necessary for a

White House job, Spicer did not believe that she was qualified for such a position, and her poor relationships with her colleagues further undermined her candidacy.  ¶¶122-133; ECF No. 442-5 at 22-23; ECF No. 442-8 at 30-33, 57-58, 62-63; ECF No. 442-23 at PL000278; ECF No. 442-24 at TFA_DG_00002569; ECF No. 442-25 at TFA_DG_00007397; ECF No. 442-26 at TFA_DG_00010664; ECF No. 442-27; PLAEx. 65 at pp. 30-31.

Plaintiff seeks to avoid this finding by arguing that the Tweets were themselves protected activity, and Spicer's reliance on them itself represents retaliatory animus.  However, this is clearly contradicted by the law. As one court has explained:

> mere complaints of unfair treatment by an individual are not protected speech because unfair treatment by an employer does not implicate a public interest concern. . . The onus is on the speaker to clarify to the employer that he is complaining of unfair treatment due to his membership in a protected class and that he is not complaining merely of unfair treatment generally. . . While plaintiff may have believed that she was the victim of discrimination, an undisclosed belief of such treatment will not convert an ordinary employment complaint into a protected activity.

*Aspilaire v. Wyeth Pharms., Inc.*, 612 F. Supp. 2d 289, 308-309 (S.D.N.Y. 2009); *see also Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998) (finding that the plaintiff had not engaged in protected activity where  her complaints "in no way intimated that she believed Simon's conduct to be influenced by her gender"); *Benn v. City of New York*, 482 F. App'x 637, 639 (2d Cir. 2012) (general complaints of mistreatment "could not reasonably have been understood to protest statutorily prohibited discrimination").  Here, while Plaintiff's Tweets mention her pregnancy, they do not mention her employment at all.  Nor does she even imply that she was mistreated by the Campaign because of her gender or pregnancy.  Her generalized complaints about Mr. Miller's appointment to the Communications Director position (a decision in which the Campaign had no role) do not constitute protected activity under the law.

Even if Plaintiff could demonstrate a prima facie case of retaliation against Spicer, which she cannot, he has presented legitimate, non-retaliatory reasons for not hiring Plaintiff – namely her lack of professional judgment, relevant experience and her personality conflicts with colleagues. *See Paulose v. New York City Dep't of Educ.*, 05-cv-9353(DLC), 2007 WL 1371517, at *11 (S.D.N.Y. May 10, 2007) (the plaintiff's "lack of qualifications" was a legitimate, non-retaliatory basis for adverse action); *Gonzalez v. City of New York*, 845 F. App'x 11, 15 (2d Cir. 2021) (same); *Ya-Chen Chen v. City Univ. of New York*, 805 F.3d 59, 71 (2d Cir. 2015) (an employee's demonstrated "poor judgment" and issues with "collegiality" are a non-retaliatory basis for adverse action). Importantly, Plaintiff has not even attempted to address these legitimate bases for the decision not to hire her to the White House. In any event, the law is clear that Plaintiff's own disagreements with an employer's evaluation are not sufficient to demonstrate pretext. *See, e.g., Rogers v. Bank of New York Mellon*, 09-cv-8551(HBP), 2017 WL 4157376 at *5 (S.D.N.Y. Sept. 19, 2017)("Plaintiff's personal belief that she was the most qualified person for the various positions, without evidentiary support, is insufficient to create a genuine issue of material fact to defeat summary judgment")(internal quotation marks omitted) (quoting *Holt v. KMI-Cont., Inc.*, 95 F.3d 123, 130 (2d Cir. 1996)); *Nguyen v. Department of Corrections and Community Services*, 169 F.Supp.3d 375, 390 (S.D.N.Y. 2016)("Yet, a plaintiff's opinion about his own qualifications does not suffice to give rise to an issue of fact about whether he was discriminated against, and that is particularly true where the employer's decision whether to promote [the employee] did not depend simply on whether he was qualified, but on whether he was the best candidate for the job") (internal quotation marks omitted) (quoting *Hines v. Hillside Children's Ctr.*, 73 F. Supp. 2d 308, 320 (W.D.N.Y. 1999)).

**D. <u>Plaintiff Cannot Sustain a Retaliation Claim Against the Campaign.</u>**

Similarly, Plaintiff cannot make out a prima facie case of retaliation against the Campaign, be it for denying her work assignments, terminating her consultancy, or for instituting the Arbitration.[6]

i.     <u>Loss of Work Assignments</u>

First, in terms of denying her work assignments, Plaintiff has not presented any evidence to substantiate this claim. Plaintiff has alleged that the Campaign stopped communicating with her and denied her work after learning of her pregnancy. But she has not submitted admissible evidence concerning what specific work she was denied, similarly situated employees who did not have White House jobs who were treated better than she was, or who made those decisions such that it could be found that they were motivated by retaliatory animus. The closest she comes is saying that Kellyanne Conway was no longer friendly towards Plaintiff after her purported protected activity (without providing any details). ECF No. 501 at 19. However, Plaintiff has not provided any evidence to support this allegation beyond her vague, conclusory statements, which, even if true are not evidence of unlawful animus. *Sykes v. Rachmuth*, No. 22-cv-3989(JPC), 2023 WL 2752865, at *8 (S.D.N.Y. Mar. 31, 2023)(claim that a defendant "grew colder" after a complaint not evidence of animus). In any event, there is no evidence that Ms. Conway had any

---

[6]      It is important to note that the evidence is uncontroverted that the Campaign did not have any role in White House hiring decisions. Rather, as a matter of federal law, those decisions were made by the Presidential Transition Team. ¶¶79-80; ECF No. 442-2 at 84, 86-88. Importantly, Plaintiff has not produced any evidence that anyone at the Campaign was involved in hiring decisions for the White House, and certainly not as it pertained to her employment. The closest she comes is citing to e-mails from Lucia Castellano, the Campaign's HR Director about another employee of the Campaign going into the White House. However, as she testified in a sworn deposition, Ms. Castellano had no role in making White House hiring decisions and was merely expressing her personal opinions. ¶82; PLAEx. 37 at 231-32. Thus, Plaintiff cannot seek summary judgment against the Campaign for her failure to obtain a White House job.

role in denying Plaintiff any work for the Campaign given that she was preparing for her role in the White House.

      ii.      <u>The Termination of Plaintiff's Consultancy with the Campaign</u>

Plaintiff's claims for retaliation based on the termination of her consultancy with the Campaign are similarly devoid of merit. Plaintiff has failed to provide any evidence about who made the decision to terminate her consultancy with the Campaign or that this individual was motivated by a retaliatory animus.

Moreover, as is the case with both Plaintiff's claims based on her purported post-election loss of assignments and on the termination of her consultancy, the Campaign has a legitimate, non-retaliatory basis for its conduct. Plaintiff was retained by the Campaign to be a surrogate for President Trump's election efforts. ECF No. 442-10 at P000451-P000453. This was reflected by Plaintiff's Consulting Agreement, which contemplated a role of a fixed duration. *Id.* Plaintiff has not presented any evidence demonstrating that the Campaign retained *any* surrogates after the Inauguration in January 2017. Similarly, Plaintiff has not presented any evidence that the Campaign assigned work after the Inauguration to individuals who had not been given positions in the White House. To the contrary, the only individuals to whom Plaintiff claims she was similarly situated were Omarosa Newman, Sarah Huckabee Sanders, and Boris Epshteyn, all of whom were hired by the White House. ¶88; ECF No. 442-1 at 92-93, 97, 118; ECF No. 94 at ¶32. Plaintiff has also not presented any evidence that anyone similarly situated to her who were not selected for a position in the White House, continued to receive assignments in the period before the Inauguration. To the contrary, the evidence is clear that Plaintiff had been asked to perform work during this period and refused to do so. ¶¶135; 151; ECF No. 442-1 at 268 ECF No. 442-51.

21

The law is clear that a job elimination in these circumstances constitutes a legitimate, non-retaliatory basis for a termination. *See*, *e.g.*, *Stoddard v. Eastman Kodak Co.*, 309 F. App'x 475, 480 (2d Cir. 2009)(affirming summary judgment on a retaliation claim where the plaintiff's job was eliminated and she could not present evidence concerning "others similarly situated [who] were assigned to better jobs"); *Godfrey v. Ethan Allen, Inc.*, 113 F.3d 1229 (2d Cir. 1997)(affirming summary judgment where plaintiff's job was eliminated and she was not replaced by someone outside of protected class); *Turner v. NYU Hosps. Ctr.*, 470 F. App'x 20, 25 (2d Cir. 2012)(job elimination was a non-retaliatory basis for termination). Plaintiff cannot demonstrate that the Campaign's legitimate reasons were pretextual and therefore her motion for summary judgment should be denied.

<blockquote>iii.    <u>The Decision to Institute the Arbitration</u></blockquote>

Finally, Plaintiff cannot demonstrate that the Campaign's decision to institute the Arbitration because it believed that Plaintiff breached her NDA was retaliatory, warranting denial of her summary judgment motion. Here, there is no evidence to demonstrate that the decision to institute the Arbitration was motivated by retaliatory animus. To demonstrate retaliatory animus, a plaintiff needs to show that "the retaliatory action was close in time to the protected activities; that other similarly situated employees were treated differently; or by offering direct proof of retaliatory animus." *Allen v. St. Cabrini Nursing Home, Inc.*, 198 F. Supp. 2d 442, 450 (S.D.N.Y. 2002). There is absolutely no evidence of such temporal proximity warranting a finding of retaliatory animus

Plaintiff first complained that she was being treated differently because of her pregnancy on December 20, 2016. ECF No. 442-19 at P00003-P00004. According to Plaintiff's Amended Complaint, she informed the Campaign of her intention to file her purported discrimination claim

on March 29, 2017.  ECF No. 94 at ¶60.  The Campaign instituted the arbitration on July 28, 2017,

over four months later. ¶51, PLAEx. 22.  To support an inference of retaliation, the time between

the protected activity and the adverse action must be very short, generally less than three months:

"Claims of retaliation are routinely dismissed when as few as three months elapse between the

protected activity and the alleged act of retaliation."  *Allen*, 198 F. Supp. 2d at 450 (collecting

cases).  Thus, Plaintiff cannot demonstrate a retaliatory animus based on temporal proximity.[7]

Plaintiff also cannot demonstrate that similarly situated employees were treated differently

than she was.  The record is clear that the Campaign has sued several other employees for

breaching their NDAs, even where those employees had not engaged in protected activity.  ¶¶154-

155; ECF No. 442-42; ECF No. 442-43.  Far from being motivated by an unlawful animus, this

evidence demonstrates that the Campaign was zealous about protecting its rights under the NDA

it had with its employees and consultants.  Plaintiff's Motion admits as much: "Mr. Cannon

testified that the Campaign had literally put the world on notice that ***the Campaign would enforce***

***the NDA against any signatory who engaged in any speech deemed detrimental to the***

***Campaign***."  ECF No. 501 at p. 23 (emphasis added and citation missing in original).  Nor does

the fact that the NDAs were eventually found to be unenforceable change this analysis.  At the

time that the Campaign instituted these actions, it clearly believed that the NDAs were enforceable.

Of course, there was no way for the Campaign to know that a court would rule otherwise in the

future.  This type of across-the-board treatment of employees defeats any argument about

retaliatory animus.  *Nugent v. St. Luke's/Roosevelt Hosp. Ctr.*, No. 05-cv-5109 (JCF), 2007 WL

---

[7]    Plaintiff attempts to escape this conclusion by claiming that the intervening period was a "time out" and should not be counted.  However, Plaintiff has not offered any support for this claim.  Nor is it relevant given the Campaign's legitimate non-retaliatory reasons for filing the Arbitration, as discussed below.

1149979, at \*11 (S.D.N.Y. Apr. 18, 2007)(holding that the plaintiff "has not raised an inference of retaliatory animus because she cannot demonstrate that she was treated differently from other similarly situated employees").  Because Plaintiff has also not identified any proof of retaliatory animus, the Campaign is entitled to summary judgment on her retaliation claim.

Plaintiff claims that the fact that the Campaign cited the confidential information contained in the Tweets as a basis for the Arbitration is itself retaliatory evidence of animus, because, she claims, the Tweets were protected activity.  However, as explained above, the Tweets simply do not fit within the legal definition of protected activity to support Plaintiff's arguments.  *See supra* at pp. 18-19.  Plaintiff also claims that the Campaign's removal of her Draft Complaint as a basis for the Arbitration in their amended filing on August 1, 2017 is evidence of its bad faith, or, alternatively as evidence that Mr. Glassner was lying when he said both the Draft Complaint and the Tweets were the reasons that the Campaign filed the Arbitration.  Neither argument has merit.  Mr. Glassner's Declaration in this case related solely to the reasons that Arbitration was filed in the first instance, and did not touch on any of the subsequent litigation strategy, as Judge Parker has already found.  *See* ECF No. 476 at 4 (explaining that Mr. Glassner's Declaration "focuses on the ***initiation*** of the arbitration proceeding against Plaintiff") (emphasis added).  Moreover, the record is clear that *after* the Campaign initially filed the Arbitration, Plaintiff agreed to file the Draft Complaint under seal, thereby mooting the Campaign's need to take legal steps to prevent a public filing. ¶159; Gavenman Decl., Ex. A.

Even if Plaintiff could establish a *prima facie* claim of retaliation against the Campaign, the Campaign had a legitimate, non-retaliatory basis for its decision to institute claims against Plaintiff for breaching her NDA.  Specifically, the Campaign made the decision to bring the Arbitration because it legitimately believed that Plaintiff breached the NDA by revealing

confidential information about one of its employees, Mr. Miller, and threatened to disclose confidential information about the Campaign itself publicly that was not necessary for prosecuting her claims.  ¶¶156-158; ECF No. 438 at ¶¶ 5-11, 13.  As the First Department held in a similar case involving the same NDA because the Campaign presented evidence that it "in good faith believed plaintiff violated the NDA by making factual allegations that exceeded the facts necessary to state a viable claim," the Campaign had a legitimate, non-retaliatory basis for instituting an arbitration against the plaintiff.  *Denson v. Donald J. Trump for President, Inc.*, 168 N.Y.S.3d 681 (1st Dep't 2022); *see also Schanfield v. Sojitz Corp. of Am.*, 663 F. Supp. 2d 305, 342 (S.D.N.Y. 2009)("I can see nothing in Title VII or any other anti-discrimination statute that should prevent an employer from bringing a legitimate claim against a current or former employee simply because that employee has complained about what the employee believes to be discriminatory behavior").

Plaintiff has argued that the fact that the Tweets were supposedly sent after the announcement of Mr. Miller to the position of White House Communications Director is evidence that the Campaign's stated justification for initiating the Arbitration was pretextual.  Again, Plaintiff's argument is untenable under the law.  Even assuming, *arguendo*, that the Tweets were sent after the announcement of Mr. Miller's White House role, the only relevant analysis focuses on what the Campaign believed at the time.  *See McPherson v. New York City Dep't of Educ.*, 457 F.3d 211, 216 (2d Cir. 2006)("[W]e are decidedly not interested in the truth of the allegations against plaintiff. We are interested in what motivated the employer.") (internal quotations omitted); *Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 169 (2d Cir. 2001)(employer's good faith belief that employee engaged in misconduct is legitimate basis for adverse action irrespective of whether the employee actually engaged in misconduct).  As one court has explained:

> the question is not whether the employer reached a correct conclusion but whether the employer made a good-faith business determination.  And while it is possible to dispute whether various pieces of evidence about Plaintiff's performance really justified her termination, to do so would require a court to sit as a super-personnel department' to reexamine whether an employee's performance was really deficient, something that courts should not do.

*Ramsaran v. Booz & Co. (N.A.) Inc.*, 14-cv-708-GHW, 2015 WL 5008744, at *11 (S.D.N.Y. Aug. 24, 2015) (cleaned up).

Here, Mr. Glassner made the decision to initiate the Arbitration against Plaintiff.[8]  PLAEx. 2 at 56-57.  He provided his reasons for doing so (his belief that the Tweets and the Draft Complaints violated Plaintiff's NDA) and the Campaign's reasons for believing that Plaintiff had violated the NDA (the language in the Tweets and the Draft Complaint).  ECF No. 438 at ¶¶10-12. Plaintiff cannot demonstrate that the Campaign's reasons were pretextual, even assuming that its belief was not accurate.  There is no evidence that Mr. Glassner saw the Tweets prior to the announcement of Mr. Miller's White House role or knew that the Tweets were sent before that announcement.  Rather, based on the language in the Tweets and its reference of a "forthcoming" announcement, Mr. Glassner, and the Campaign, had a good faith belief that Plaintiff had divulged confidential information in violation of her NDA at the time it initiated the Arbitration.  Thus, Plaintiff's motion for summary judgment should be denied.

---

[8]    It is for this reason that Plaintiff's citation to a declaration submitted by Mr. Spicer in a different case where he expresses his belief that the Tweets were sent after the announcement of Mr. Miller's White House role is misplaced.  Mr. Spicer was not an employee of the Campaign and does not purport to know the Campaign's reasons for initiating the Arbitration.  His opinion is simply irrelevant on this issue.

## CONCLUSION

For the foregoing reasons, Plaintiff's cross-motion for partial summary judgment should be denied in its entirety.

Dated: February 13, 2025
        New York, New York

                                        **SCHULMAN BHATTACHARYA, LLC**

                          By:     /s/ Jeffrey S. Gavenman
                                  Jeffrey S. Gavenman
                                  6116 Executive Boulevard, Suite 425
                                  North Bethesda, Maryland 20852
                                  and
                                  240 West 40th Street
                                  New York, NY 10018
                                  Tel.: (240) 356-8550
                                  Facsimile: (240) 356-8558
                                  Email: jgavenman@schulmanbh.com

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that this motion complies with the type-volume limitation of this Court's Individual Rules of Practice III(D) because it contains 8,518 words, excluding the parts exempted by this Court's Individual Rules of Practice and the Local Rules of the Southern District of New York.

Dated: February 13, 2025                                   Respectfully submitted,

                                                    _/s/ Jeffrey S. Gavenman_
                                                    Jeffrey S. Gavenman

                                                    *Counsel for Defendants*