UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

ARLENE J. DELGADO,
Plaintiff,

-vs-                                                                                   No. 19-cv-11764 (AT) (KHP)

DONALD J. TRUMP FOR PRESIDENT, INC.,
TRUMP FOR AMERICA, INC., SEAN SPICER,
individually, REINCE PRIEBUS, individually

Defendants.

### RESPONSE TO DEFENDANTS' MOTION FOR RECONSIDERATION

Plaintiff, Arlene J. Delgado, hereby respectfully files her Response to Defendant's September 25, 2025 Motion for Reconsideration ("**the Motion**"), seeking reconsideration of the Court's September 11, 2025 Order ("**the Order**"), and states as follows:

INCONSIDERATION
Plaintiff must first note that there are inconsistencies in the Motion. Defendants' Notice (ECF #551) gives notice that they seek reconsideration of the Court's Order…

> ….to the extent that it denied Defendants' motion for summary judgment as to Plaintiff's claims against Mr. Priebus of discrimination and retaliation under the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law (the "NYCHRL") and for tortious interference with prospective economic advantage, and against all Defendants to the extent that it denied summary judgment as to Plaintiff's failure to hire claim under the NYSHRL and NYCHRL.

-Defendants' Notice, ECF #551

Already, this Notice is unclear because there is no "failure to hire" claim in Plaintiff's summary judgment filings, nor does the Court's Order discuss any "failure to hire" claim.

Second, the Memorandum (ECF #552) is inconsistent with the Notice (ECF #551). While the *Notice* speaks of reconsidering a 'failure to hire' claim, the *Memorandum's* Table of Contents and the headings refer to the 'tortious interference' claim (*See* its Table of Contents and "Part B").

1

Third, even the Memorandum is inherently inconsistent: the introductory paragraph refers to Plaintiff's "failure to hire claims" (p. 2) to be addressed, but the corresponding section has no such references and refers to the tortious interference claim (See p. 11-12).

Plaintiff realizes that the Defendants are being cute, and continuing their years-long accusation that Plaintiff's tortious interference claim is actually a failure to hire claim, but enough is enough. This Court already, years ago, ordered the Defendants to cease doing so (*See* ECF #43).

Fourth, the Notice states they seek reconsideration on the 'failure to hire' claim as to "all defendants"…yet the (quick, two paragraph) section in the Memorandum only addresses Priebus.

As such, it is unclear what the Defendants are arguing, as their filings are inconsistent and contradictory. Plaintiff is thus deprived of requisite notice and plain arguments, so that she may understand what they seek and thereupon craft an informed Response.

Plaintiff respectfully requests that this alone is sufficient for the Court to deny their Motion. The Motion's confusing nature is further augmented by the fact that its arguments are scattered and repetitive, making it impossible to respond a cohesive manner. Nonetheless, and reserving the above position, she responds as best as she can, given the confusion, as follows:

PART I: JUDGE TORRES WAS CORRECT TO DENY SUMMARY JUDGMENT TO DEFENDANT PRIEBUS, AND THE STANDARD FOR RECONSIDERATION IS NOT MET

The law is clear: "Reconsideration is justified where the moving party demonstrates an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Henderson v. Metro. Bank & Tr. Co.*, 502 F. Supp. 2d 372, 376 (S.D.N.Y. 2007). But none of that is present here. Defendant Priebus merely is unsatisfied with the Order and wants another bite at the apple.

**The Court's extensive 38-page Order is replete with citations to the record, caselaw, and detailed explanation for its rulings**. It GRANTED the Defendants (which includes Priebus)

2

summary judgment on *several* claims – interference; breach of contract; promissory estoppel; and prima facie tort. It even carefully separated out Priebus when appropriate, e.g., granting Priebus summary judgment as to the portion of the retaliation claim concerning the Arbitration suit. (Order, p. 23, fn 11) The Court only declined to grant the Defendants summary judgment on a couple of Plaintiff's claims, rightly finding there were disputed issues of fact.

And the Court also DENIED Plaintiff summary judgment on *both* the claims on which *she* moved for summary judgment (retaliation and breach of contract).

Still, not content with the above, Defendants nonetheless move for reconsideration, to obtain even more summary judgment, claiming this court erred.

Standard for reconsideration: As Magistrate Judge Parker has noted, in various motions wherein Plaintiff's motions for reconsideration were denied (*See* #ECF #327, #346, #392), the standard for reconsideration is exceedingly high. Error is particularly unlikely when a Court is highly experienced, as is this one, *and* enters a detailed order. The standard is:

> Local Rule 6.3 governs reconsideration, which is "**an extraordinary remedy** to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *In re Health Mgmt. Sys., Inc. Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000)(internal citation omitted). The Rule aims to "prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional maters.'" *SEC v. Ashbury Capital Partners, L.P.*, No. 00 Civ. 7898, 2001 WL 604044, at *1 (S.D.N.Y. May 31, 2001) (quoting *Carolco Pictures, Inc. v. Sirota,* 700 F. Supp. 169, 170 (S.D.N.Y. 1988)). Courts must "narrowly construe and strictly apply Local Rule 6.3, so as to avoid duplicative rulings on previously considered issues, and to prevent the rule from being used as a substitute for appealing a final judgment*." Schoolcraft v. City of New York*, 298 F.R.D. 134, 137 (S.D.N.Y. 2014). Accordingly, the Second Circuit has held that the standard for granting a motion to reconsider "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked -- maters, in other words, that might reasonably be expected to alter the conclusion reached by the court." S*hrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). (emphasis added)

Reconsideration is only permitted when the moving party demonstrates an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice. *Henderson,* at 376. But none of that is present here. What *is* present is an attempt to re-litigate one of the (few) angles on which Defendants were denied summary judgment. A motion for reconsideration should be denied "where the moving party seeks solely to relitigate an issue already decided." *Shrader*, at 257.

It is abundantly clear there was no error in the Court's Order. The only way that Priebus should have been allowed a premature exit, on the few remaining issues, is if "there is no dispute as to any material fact." Fed. R. Civ. P. 56(a). A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party [herein, Plaintiff]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Electra v. 59 Murray Enters.*, 987 F.3d 233, 248 (2d Cir. 2021). Moreover, at the summary judgment stage, courts are obligated to construe the evidence and draw all reasonable inferences in the non-moving party's [herein, Plaintiff's] favor. *Electra*, 987 F.3d at 248. In deciding a summary judgment motion, the Court "resolve[s] all ambiguities, and credit[s] all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment [herein, Plaintiff]." *Cifra v. Gen. Elec. Co.,* 252 F.3d 205, 216 (2d Cir.2001). "Summary judgment is appropriate only if no jury could find defendant liable under **any** of the evidentiary routes -- *McDonnell Douglas*, mixed motive, 'direct' evidence, or some combination thereof." *Rowe v. Google LLC*, No. 19 Civ. 8655 (LGS), 2022 WL 4467194 (S.D.N.Y. Sept. 26, 2022) at 14, citing *Bennett v. Health Mgmt. Sys., Inc.*, 936 N.Y.S.2d 112 (1st Dep't 2011) (emphasis added) Additionally, courts are cautious in granting summary judgment in employment discrimination cases in particular, because "the ultimate issue to be resolved in such cases is the employer's intent, an issue not particularly suited to summary adjudication." *Eastmer*

4

*v. Williamsville Cent. Sch. Dist.,* 977 F.Supp. 207, 212 (W.D.N.Y.1997) (citing *Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1224 (2d Cir.1994))

So, how can Defendants actually argue that the Court erred when it did not grant the (extreme) relief to Priebus of summary judgment? (And the Court *did*, incidentally, grant him such, on the retaliation-by-way-of-Arbitration-lawsuit issue, showing it took a careful approach in sorting through the myriad of facts and exhibits) How can Defendants make such baseless, unilateral proclamations, such as "The evidence is clear that he had no role"? (p. 2) The Motion repeats this, *ad nauseum,* in a variety of forms, e.g., "there is no evidence that Priebus played any part" (p. 1); "there is **absolutely no evidence in the record** demonstrating that Priebus had ***any*** role" (emphasis theirs) (p. 1); there is no evidence that Priebus "actually participated in the discriminatory and/or retaliatory actions alleged…." (p. 4) Repeating this over and over will not make it so. The record shows this is very much in dispute – enough for it to go before a jury versus Priebus being allowed an early escape hatch via summary judgment.

Their position is essentially that it is impossible a reasonable jury would find Priebus was involved. Such is astonishing. **Indeed, there is a multitude of *disputed* material facts regarding Priebus,** as shown, in part, in #'s 95 – 100, 107-108, and 133 of Plaintiff's Response to Defendants' Statement of Facts (ECF #531, March 14 2025). Second, as the Order rightly notes:

> Press releases from that period likewise show significant overlap between Campaign and Transition staff and leadership. *See* Pl. Ex. 74 at 2 (November 13, 2026 press release announcing that Bannon and Priebus "are highly qualified leaders who worked well together on our campaign and led us to a historic victory . . . [and] will also work together . . . to help lead the transition process in the run-up to Inauguration Day"); *id.* at 10 (December 22, 2016 press release announcing appointment of Spicer as incoming White House Press Secretary and stating that Spicer was a "key member[] of [Trump's] team during the campaign and transition").
> Moreover, the record reflects that Spicer and Priebus exercised authority over the hiring decisions of the Campaign, Transition, and eventually, the White House. Priebus, who served on the Transition's executive committee and was the incoming

5

> White House Chief of Staff, Pl. Ex. 74 at 8, was involved in hiring decisions, *see* Pl. Ex. 58 at P-41 (email stating that Priebus "would like to sit down" with Miller and "give [him] an update on W[hite] H[ouse] structure"); Pl. Ex. 65 at DEF-1092. Together, this evidence raises a factual dispute as to whether Spicer and Priebus were sufficiently involved in employment-related decision making at the Campaign, including the decision to terminate Delgado's employment and deny her a place in the White House, to establish liability under the NYSHRL. Even if they were not the ultimate decisionmakers, there is a triable issue as to whether they aided and abetted the discriminatory conduct alleged by Delgado. *See McHenry*, 510 F. Supp. 3d at 68 ("A co-worker who actually participates in the conduct giving rise to a discrimination claim can be held liable . . . even though that co-worker lacked authority to either hire or fire the plaintiff." (alteration adopted) (citation omitted)).

-Order, p. 13-14

The Order also notes:

> Delgado proffers evidence suggesting that Defendants acted with a discriminatory motive. She details how, mere days after she told Spicer, Priebus, and other Campaign and Transition workers that she was pregnant, she stopped being included on certain communications, received fewer opportunities for media appearances, and was taken off a list of potential White House employees. *See* Pl. Mem. at 18–19, ECF No. 501; Def. Ex. 1 at 264:11– 266:5; Pl. Ex. 60 at DEF-691–92, DEF-2315–19, DEF-2394 (December 6, 21, and 27, 2016 draft White House organization charts listing Delgado as "Director of Hispanic Media"); *id.* at TFA-DG-7514–15 (January 11, 2017 White House staff list omitting Delgado).

-Order, p. 16

And, Order *also* notes:

> It is also reasonable to infer that Priebus, who served on the Transition's executive committee and was the incoming White House Chief of Staff, Pl. Ex. 74 at 8, was involved in hiring decisions, *see* Pl. Ex. 58 at P-41 (email stating that Priebus "would like to sit down" with Miller and "give [him] an update on W[hite] H[ouse] structure"); Pl. Ex. 65 at DEF-1092…. It was only after Spicer, Priebus, and other Campaign and Transition staff learned of her pregnancy that Delgado's work dried up, raising a question of fact as to the ultimate reason for her termination.

-Order, p. 14, 17

Additionally, Priebus acknowledged in his deposition that, at a minimum, the Chief of Staff has "influence" in the process of appointing the senior White House staffers. (DEFEx. 4, p. 14-15); Priebus was one of the three whom Delgado contacted in her critical December 23, 2016 email (DEFEx. 19), just before discrimination and interference began; while Priebus testified he does

6

not specifically recall the conversation on the plane with Miller about everyone from the "Comms shop" (which would include Plaintiff) going into the White House, he did concede that perhaps a meeting happened afterward to go over the org chart (DEFEx. 4, p. 39-41); Miller told Delgado that he had spoken with Priebus and Priebus told him 'no one will care' about the pregnancy (DEF Ex. 10); Priebus discussed the org charts of the Comms group; on December 29, 2016, Priebus was one of the few individuals Delgado emailed, accusing them of discrimination and permitting harassment of a pregnant team member (DEF Ex. 21); on December 29, 2016, Priebus was one of the few individuals Delgado emailed, accusing them of discrimination and permitting harassment of a pregnant team member (DEF Ex. 21); when asked if he made any suggestion as to Plaintiff's White House job after the tweets, Priebus testified that he was going to let the "Department head [Sean or Miller] make a decision" (DEFEx. 4, p. 54-55), which is an act in and of itself; Priebus also admitted to being aware of Delgado's pregnancy; aware of Delgado's tweets (an origin of the retaliation), stating he is the one who then "got Don McGahn [Jones Day] involved" (DEFEx. 4, p. 48); when asked why he got McGahn involved, he answered "Because if you were pregnant by Jason Miller, I would think that would be an issue." (DEFEx. 4, p. 49); and when asked, name by name, Priebus conceded that the 'Comms shop' members, no matter how junior, went into the White House, even in the media booker (DEFEx. 4, p. 150-151).

  In sum, to name but a few topline matters: Priebus had influence over the appointments; discussed Plaintiff's group going into the White House; was one of the few aware of, and had discussions about, her pregnancy, with Miller and others; made remark/s about her pregnancy; and even brought in outside counsel, all as Plaintiff was constructively discharged and her White House job interfered with. Defendants, for example, want this Court to believe that Priebus went as far as

7

to hire employment counsel (Don McGahn/Jones Day) and then never had any involvement, sealing his eyes and ears shut.

The Motion becomes even more bold, arguing that this Court's rationale means that "the CEO of any company could be held individually liable for the employment decision affecting any employee by virtue of her senior role in the company…." (p. 1-2) Nonsense! Priebus, unlike the hypothetical CEO ignorant of what is happening, was clearly involved, in various ways that are documented and/or testified to, including by Priebus himself. [It is why, when this case was first drafted, by esteemed counsel Andrew Celli (of Emery Celli Brinckerhoff Abady LLP), Priebus was included as a defendant – in a conservatively drafted Complaint by an ethical and careful lawyer.] Plaintiff does appreciate, however, that Defendants' 'CEO and senior employee' analogy does at least (finally) acknowledge that Plaintiff was indeed 'working under Priebus.' The Motion repeats the same inaccurate argument elsewhere, on p. 8, writing that the Court is holding that Priebus "would be liable" for each employment decision "simply by virtue of his position as Chief of Staff." (p. 7-8) No, no such thing was argued in Plaintiff's filings, nor held by the Court. The Court held that his position, coupled with other factors, is partly why a jury deserves to explore this. (The Court also never said Priebus would be held liable – that is up to a jury.)

This is simply re-litigating the issue and 'plugging in gaps', presenting argument (and even caselaw) not previously provided, such as the *Leykis* case (p. 8), which is pointless, as *Leykis* is easily distinguishable. In that 1995 case in E.D.N.Y., *New York Post* employees named Rupert Murdoch as a defendant, claiming they could because the ADEA, which they were suing under, imposes liability on an "employer" or "agent of such a person". But Murdoch was merely the *owner* of the paper. As such, his motion to dismiss was granted. Dishonestly, the Motion's invocation of this case is fast and loose, providing an inaccurate summary, in which it tries to make the case

8

applicable. This is how the Motion summarizes *Leykis*: "finding that plaintiffs could not hold a CEO of a company liable for discrimination absent evidence that had an "intent to discriminate against plaintiffs, or that Murdoch was even involved in the alleged discriminatory scheme". (p. 8) This is false. Murdoch was not the CEO, nor does the case address CEO's.

Relatedly, Defendants' description of *McHenry v. Fox News*, *et al.* is not exactly accurate. In that case, a Fox News Nation host, Britt McHenry, sued Fox News; Fox Corp; her co-host; Finley (a Fox VP); a Human Resources representative; and an executive producer. The Court dismissed Finley (the Fox VP) from the suit because there was no documentation that Finley was anything other than in the dark. This is a far-cry from Priebus, who was not only one of the few Plaintiff informed of her pregnancy but had discussions with Miller; with outside counsel; was involved in decisions and org charts; and more.

Yet the Motion's surprising arguments are everywhere, such as:

> Priebus has submitted evidence that he: had no role in the decision not to hire Plaintiff for a position in the White House; never discussed the possibility of Plaintiff being employed at the White House; and was not even aware whether Plaintiff was offered a position at the White House. Def. 56.1 ¶¶40-41. There is no evidence to the contrary and, as such, summary judgment should have been granted.

-Motion, p. 7

But Priebus has *not* submitted any such evidence, other than his self-serving deposition testimony (unsurprisingly) claiming he had nothing to do with any of this (and, even then, his deposition does admit involvement[1]). What there *is* is evidence placing much in dispute.

Defendants then cite *White v. Pacifica* (p. 8). This is a case they *already* included in their summary judgment Reply, yet include again because… they are re-litigating the issue. (This is the type of act that merits denial of a reconsideration motion.) The Court was not persuaded by *White*

---

[1] Priebus's deposition does little to help him. He admits therein to involving lawyers, having discussions about Delgado after the pregnancy was known, and more.

9

*v. Pacifica* for good reason -- because it is markedly different. Therein, the plaintiff worked for a local radio station and alleged discrimination. He named Brown, one of the Board of Directors (of the parent company, no less), as a defendant. Brown, moreover, did "not have the authority to make personnel decisions or terminate employees." He was simply one of 24 Board members. The Court unsurprisingly noted that "Brown's mere membership on the 24–person board" of the parent company would alone provide no basis for holding him liable. This is tantamount to someone being fired from a local NPR station but suing a member of the NPR national Board. This is not analogous and it is a waste of time for Defendants to bother invoking this case.

The Motion also misrepresents that Plaintiff "conceded" that "she did not know whether Priebus had any role in making decisions concerning her position, but she claimed that it would be highly unlikely that he did not, given that he was Chief of Staff." (p. 4) This is a misrepresentation of Plaintiff's deposition testimony. In it, Plaintiff explains how it is in writing that Priebus was bringing the Comms group into the White House (of which she was a part). She is then asked if she knows whether Priebus, "in fact", *ultimately* took *those* steps, to which she answers that it would be unlikely if he didn't. (DEFEx. 1, p. 253)

The Motion even misrepresents the Order. It bemoans that "the Court rejected Priebus's argument that he was not employed by the Campaign." (p. 2) But the Court did not, in fact, reject that Priebus was not *technically* a Campaign employee; Rather, it wisely found that there was overlap between the entities, and distinctions were vague. ("The Court rejects the artificial distinction that Defendants draw between the Campaign and the Transition and their respective leadership.") Indeed, the overlap was so pervasive that the Campaign has represented Priebus for years, free of charge! (DEFEx 4, p. 10) The Court was right to see straight through this.

In some sections, the Motion ventures into outright puzzling statements. E.g., In one section, it writes, "even assuming, *arguendo*, that Priebus did have some such role… with the Campaign and/or the TFA…." (p. 4) Assuming *arguendo*? It is undisputed that Priebus was, at a minimum, Transition Team leadership – Defendants even state so later, in the Motion itself! ("Priebus served on the TFA's [sic] executive committee…", p. 6).

The Motion then claims that there is "absolutely no evidence that Priebus harbored any discriminatory animus, as Plaintiff herself could not identify any discriminatory statements or conduct on the part of Priebus." While it is true that Priebus, a sophisticated actor, is not foolish enough to make any *overt statement* reflecting such to Plaintiff, since when is that a basis to grant someone summary judgment in an employment case? The 2nd Circuit is clear that valid employment cases typically lack a clear "smoking gun." (*Rosen v. Thornburgh*, 928 F.2d 528, 533 (2d Cir. 1991))

The Motion then switches to another angle, and accuses Plaintiff and this Court of rank 'speculation and conjecture.' This is an argument they already made, in their Reply summary judgment brief (p. 2, ECF #511), yet they again try to relitigate. This is a second bite at the apple – they simply switch the case they cite. They now cite *Flores v. United States*, 885 F.3d 119, 122 (2d Cir. 2018) and *Goenaga v. Mar. of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (p. 6-7) But *those* cases truly are examples of speculation or conjecture pulled out of thin air, unlike the facts here. Consider: In *Flores*, an Ecuadorian couple filed suit against the federal government, claiming the interview USCIS / Immigration scheduled was motivated by unlawful grounds. But it was a standard interview and there was no basis for any of the allegations. In *Geonaga*, a Hispanic plaintiff was laid off after 33 years at a Foundation, as part of a reduction in force, and granted generous severance. He sued for discrimination and his basis was largely that "the

11

Foundation had no affirmative action program and Hispanics were historically underrepresented." He even admitted his layoff was purely economic. The Court unsurprisingly held his case was based on speculation. Such is not the case here.

But perhaps the Motion's most outlandish argument is that "the record is undisputed that Spicer alone made the decision not to hire Plaintiff." (p7) . Undisputed? This is very much disputed, e.g., by the org charts themselves and emails; by Spicer's own communications with Delgado; and by the sworn declarations (See e.g., PLAEx. 3)[2] of senior Campaign advisors who became White House officials, attesting that Spicer would *not* have had the ability, on his own, to push someone as senior as Plaintiff (who was far more favored by Donald Trump than Spicer was – *See e.g.*, Bannon email noting Plaintiff was "close with DJT")[3] out of her White House role.

### PART II: JUDGE TORRES WAS CORRECT TO DENY SUMMARY JUDGMENT ON THE TORTIOUS INTERFERENCE CLAIM

Defendants' Notice (ECF #551) states they also seek reconsideration of the Order "**against all Defendants** to the extent that it denied summary judgment as to Plaintiff's **failure to hire** claim under the NYSHRL and NYCHRL." (emphasis added)  But there is no failure to hire claim, nor is that claim anywhere in the Order. As such, Plaintiff is unable to respond. Early in the Memorandum, Defendants again refer to a "failure to hire" claim but then, when it comes time for Part B (which is two paragraphs, at the end of the Motion), we're back to "tortious interference."

Second, to add to the confusion, the entirety of the two-paragraph section refers solely to *Priebus*, in contrast to the Notice stating they seek reconsideration as to "*all Defendants*".

---

[2] Declaration of Omarosa Manigault Newman reads:
> Ms. Delgado also informed me that Sean Spicer has taken the position that he was responsible for, and solely responsible, for Ms. Delgado not receiving a White House job. Based on all I witnessed and experienced during this time period, and my knowledge base of this time period, this does not seem accurate to me. Mr. Spicer did not have the sole authority to deny or remove anyone, at least not of Ms. Delgado's senior level, from a White House position.

[3] DEF-00001978

This all makes it impossible for Plaintiff to understand what is being argued or requested, and thus respond. That notwithstanding, and reserving said objection, Plaintiff at least will do her part to point out the facially false statements therein:

a) Defendants yet again argue the falsehood that the "record is undisputed that Spicer acted alone." (p. 11) This is, again, very much disputed (*See* supra) and it is surprising they continue to make this argument.

b) Defendants accuse the Court of having ignored "that there is no evidence that Priebus played any role in the decision not to offer Ms. Delgado a job with the White House." The Court did not ignore this – it considered it and disagreed… because, *again*, there clearly *is* a genuine dispute as to such (*See* supra).

c) Defendants then argue that Plaintiff did not show "wrongful means" because there was no overt discriminatory statements or conduct by Priebus. Even assuming this, purely *arguendo*, such misunderstands what that factor requires: Tortious interference requires that the defendant acted "for a wrongful purpose or used dishonest, unfair, or improper means." This factor means the interference is not excused because it was done as part of legitimate conduct e.g., business competition; interference because safety practices are not being observed, etc. The Court is correct.

CONCLUSION
In conclusion, "Reconsideration is justified where the moving party demonstrates "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Henderson v. Metro. Bank & Tr. Co.*, 502 F. Supp. 2d 372, 376 (S.D.N.Y. 2007)." Here, there was no change in the law, new evidence, or a "clear error" presenting manifest injustice. Plaintiff respectfully and humbly requests that the Motion be denied.

DATED: October 16, 2025                                            *s/Arlene Delgado*

Arlene Delgado, Plaintiff, *pro-se*