UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

No. 19-cv-11764 (AT) (KHP)

ARLENE J. DELGADO, Plaintiff,

-vs-

DONALD J. TRUMP FOR PRESIDENT, INC.,
TRUMP FOR AMERICA, INC., SEAN SPICER,
individually, REINCE PRIEBUS, individually

Defendants.

## NOTICE OF MOTION FOR RECONSIDERATION

Please take notice that Plaintiff Arlene J. Delgado shall, upon her MOTION FOR RECONSIDERATION OF SEPTEMBER 11, 2025 ORDER DENYING MOTION TO STRIKE (October 16, 2025), filed herewith, move this Court, at Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, Courtroom 15D, New York, New York 10007, on such date and time as the Court may direct, for an Order pursuant to Local Rule 6.3 granting her motion for reconsideration of the Court's September 11, 2025 Order to the extent that it denied her Motion to Strike Michael Glassner's September 20, 2024 Declaration.

PLEASE TAKE FURTHER NOTICE THAT pursuant to the Court's October 2, 2025 Order, a response is due October 23, 2025.

DATED: October 16, 2025

*s/Arlene Delgado*
Arlene Delgado
Plaintiff, *pro-se*

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

ARLENE J. DELGADO,
Plaintiff,                                                           No. 19-cv-11764 (AT) (KHP)

-vs-

DONALD J. TRUMP FOR PRESIDENT, INC.,
TRUMP FOR AMERICA, INC., SEAN SPICER,
individually, REINCE PRIEBUS, individually

Defendants.

**MOTION FOR RECONSIDERATION OF ORDER DENYING MOTION TO STRIKE**

Plaintiff, Arlene J. Delgado (" "**Delgado**"), pursuant to Local Civil Rule 6.3, respectfully moves for reconsideration of Hon. Analisa Torres's September 11, 2025 Order denying her Motion to Strike Glassner's (second) Declaration (ECF #471), as follows:

PROCEDURAL SUMMARY

On November 12, 2024, Delgado filed a Motion to Strike Glassner's November 12, 2024 Declaration (ECF #471). On December 10, 2024, Defendants filed an Opposition/Response (ECF #489). On January 15, 2025, Delgado filed her Reply (#ECF #506).

DELGADO RESPECTFULLY ARGUES THAT THE COURT ERRED IN DECLINING TO STRIKE MICHAEL GLASSNER'S 2024 DECLARATION

In 2020, Delgado and the Campaign arbitrated the issue of whether Delgado had violated the Campaign NDA's non-disparagement and non-disclosure clauses via the "series of tweets" she posted on December 22nd and December 24th, 2016 (hereinafter, "**the tweets**").

In such, the Campaign had Campaign-executive Michael Glassner submit a Declaration (the "**2020 Declaration**"), in which he swore that Delgado was being sued because she had "posted a series of tweets on Twitter regarding Jason Miller… soon after he was named to become the White House Communications Director…" (PLAEx. 12) Screenshot below:

1

> 9. The Agreement contains, among other material terms, confidentiality and non-disparagement obligations. *Id.*, ¶¶ 1–2, 6.
>
> 10. In December 2016, Ms. Delgado posted a series of tweets on Twitter regarding Jason Miller, a former independent contractor of the Campaign, soon after he was named to become the White House Communications Director for the Trump Administration.
>
> 11. Ms. Delgado's tweets insinuated that Mr. Miller was involved in some sort of salacious scandal that was going to require him to resign from the role of White House Communications Director.
>
> 12. Ms. Delgado's tweets regarding Mr. Miller were very embarrassing and damaging to the Campaign. Ms. Delgado's tweets and Mr. Miller's abrupt resignation were reported on by

The Declaration is clear. Delgado was, he says, subject to non-disparagement and confidentiality terms; she "posted a series of tweets regarding Jason Miller… soon after he was named to become the White House Communications Director", insinuating that "Mr. Miller was involved in some sort of scandal" and this was "embarrassing and damaging" to us. Clear enough. Even though the very subject of the Declaration is Delgado's tweets, and how/if they violated the NDA, notice there is nothing about Delgado posting a 'spoiler alert' about Miller's appointment. On the contrary, Mr. Glassner swears the "series of tweets" came "***soon after***." (true) The gripe is, rather, that this was embarrassing to the Campaign.

As for how she had violated her *confidentiality* clause, the pregnancy and involvement with Miller was, the Campaign (astonishingly) claimed, "private" and thus "confidential"/owned by the Campaign.[1] Yes, the Campaign actually took the position that a woman's own pregnancy, by her supervisor, was information that Donald Trump owned.

---

[1] The Campaign's June 16, 2020 filing explains (PLAEx. 13): *There is no dispute that information regarding the existence of a scandal involving Mr. Miller was private at the time of Ms. Delgado's tweets. Indeed, Ms. Delgado expressly acknowledged this fact in her December 23 email to Sean Spicer where she stated that the disclosure of this private information "could embarrass" the Campaign. Because the information that Ms. Delgado publicly disclosed in her December 22 and 24 tweets was of a "private nature," this information constituted "Confidential Information" under*

2

Similarly, Spicer's 2020 Declaration said the same, stating her tweets were posted "later" in the day, after the public announcement about Miller. (PLAEx. 10)

> 2. On December 22, 2016, the Transition Team made a public announcement that Jason Miller was selected to become the White House Communications Director for the Trump Administration.
>
> 3. Later that same day, Arlene Delgado posted a series of tweets on Twitter referring to Jason Miller, a married man, as "the baby-daddy" and the "2016 version of John Edwards." These tweets plainly implied to me that Ms. Delgado was in possession of private information pertaining to Mr. Miller being involved in an embarrassing scandal.

The Campaign lost in Arbitration, with the Arbitrator finding the tweets did not violate any of the provision of the NDA. Four years later, the Campaign, now in summary judgment filings, summoned Mr. Glassner once again, drafting a Declaration for him (hereinafter, the "**2024 Declaration**"). **This time, the Campaign had Mr. Glassner *change* his story**. Knowing that the "she violated the non-disparagement clause" and "her pregnancy was confidential" won't fly, the Campaign scrambled for a *new* angle. So it went with: '*Er, actually, we sued her because she posted a spoiler-alert about Miller's appointment! We've never said so in seven years – in fact, we've all said the opposite – but just trust me, she did!*' which was, it says, a "clear violation of her NDA." To do so, the Campaign claims that a tweet wherein Delgado said she had an upcoming announcement \*about\* the (*already announced*) Communications Director (posted *after* Miller had

---

*the express terms of the Agreement. Glassner Decl., Exh. 1, ¶ 6(a). As such, Ms. Delgado breached paragraphs 1(a) and (c) of the Agreement by both publicly disclosing, disseminating, and publishing "Confidential Information" and using "Confidential Information" in a manner that was detrimental to the Campaign. Indeed, her tweets not only detracted from the Campaign's ongoing messaging and communications to the public, but they also cast the Campaign in a negative light before President Trump even assumed office for his initial term.*

3

already been announced as such) was actually, the Campaign now claims, posted before the announcement and was, as such, Delgado announcing that Miller was being named as such.

> 11. Ms. Delgado had also previously revealed confidential information in a series of tweets that she published in or around December 2016 concerning one of the Campaign's former employees, Jason Miller. Specifically, in one of her tweets, Plaintiff stated that there was "an announcement **forthcoming** concerning the new Comms [Communication] Director," for the White House and identified Jason Miller as the individual who would be appointed to that position. In other words, Ms. Delgado revealed Mr. Miller's posting prior to it having been publicly announced, a clear violation of her NDA.

This is indisputably a falsehood, per the record. Why? One need not take Delgado's word for it. Take the *Campaign's* own word, when the Campaign said that that very same tweet came "after" the public announcement. PLAEx. 13, Campaign's June 16, 2020 filing in the Arbitration

> Specifically, on December 22nd, just hours after the announcement of the selection of Mr. Miller, Ms. Delgado published the following three tweets:
> - Congratulations to the baby-daddy on being named WH Comms Director!
> - The 2016 version of John Edwards
> - So, an announcement forthcoming concerning the new Comms Director @JasonMillerinDC tonight.

[One can only assume that the Campaign counsel (who is different from the Campaign's counsel in 2020) was simply unaware of the document, because it is hard to imagine how they dared make this claim. For whatever reason, the Campaign thought it could get away with it.]

To go from Glassner saying Delgado posted her "series of tweets" "after" Miller's announcement (or, as Spicer swore in 2020, she posted them "later that day", PLAEx. 10) to… Glassner saying she posted her "series of tweets" "prior" to the public announcement…. is not just inconsistency – this is flat out 'Opposite Day.' Glassner's 2024 Declaration is not simply inconsistent with earlier testimony – it is flat out the exact opposite of:

- his own Declaration in 2020;

4

- Spicer's Declaration in 2020;
- Spicer's deposition testimony in 2024 (which never says Delgado prematurely announced the Miller-appointment, despite detailed remembrance, as he experienced it all in real time); *and*
- the Campaign's own filing in 2020, which states that the entire series of tweets was posted "after" Miller's announcement.

When confronted with this dishonesty, including Delgado pointing out the June 16, 2020 filing, the Campaign had no real answer, other than say 'Oh, Glassner's Declaration isn't even that important! Relax!' But, if it's not, surely the Campaign should not oppose it being stricken. And, moreover, such is false: In reality, their entire Opposition on this topic (p. 24-26), to which the Court specifically cited in its Order, hangs its hat on "We had a good faith belief! Look at Glassner's 2024 Declaration!" It specifically says Delgado's summary-judgment-motion should be denied… because of Glassner's 2024 Declaration. It reads:

> Specifically, the Campaign made the decision to bring the Arbitration because it legitimately believed that Plaintiff breached the NDA by revealing confidential information about one of its employees, Mr. Miller, **and** threatened to disclose confidential information about the Campaign itself publicly that was not necessary for prosecuting her claims…..
>
> Plaintiff has argued that the fact that the Tweets were supposedly sent after the announcement of Mr. Miller to the position of White House Communications Director is evidence that the Campaign's stated justification for initiating the Arbitration was pretextual. Again, **Plaintiff's argument is untenable under the law. Even assuming, *arguendo*, that the Tweets were sent after the announcement of Mr. Miller's White House role, the only relevant analysis focuses on what the Campaign believed at the time**….
>
> Here, Mr. Glassner made the decision to initiate the Arbitration against Plaintiff.[8] PLAEx. 2 at 56-57. **He provided his reasons for doing so (his belief that the Tweets and the Draft Complaints violated Plaintiff's NDA) and the Campaign's reasons for believing that Plaintiff had violated the NDA (the language in the Tweets and the Draft Complaint). ECF No. 438 at ¶¶10-12 [Glassner's 2024 Declaration]**. Plaintiff cannot demonstrate that the Campaign's reasons were pretextual, even assuming that its belief was not accurate. There is no evidence that Mr. Glassner saw the Tweets prior to the announcement of Mr. Miller's White House role or knew that the Tweets were sent before that announcement. Rather, based on the language in the Tweets and its reference of a "forthcoming" announcement, Mr. Glassner, and the Campaign, had a good faith belief that Plaintiff had divulged

5

> confidential information in violation of her NDA at the time it initiated the Arbitration. **Thus, Plaintiff's motion for summary judgment should be denied.**

-Defendants' Opposition, ECF #510 (p. 24-26) (emphasis added)

In a footnote therein, the Campaign attempts to explain away Spicer's 2020 Declaration, which stated that Delgado's tweets were after Miller's appointment ("later that day"), by stating:

> Plaintiff's citation to a declaration submitted by Mr. Spicer in a different case where he expresses his belief that the Tweets were sent after the announcement of Mr. Miller's White House role is misplaced. Mr. Spicer was not an employee of the Campaign and does not purport to know the Campaign's reasons for initiating the Arbitration. His opinion is simply irrelevant on this issue.

-Defendants' Opposition, ECF #510 (p. 26)

This is surprisingly bold. First, not that it would matter but Spicer's declaration is not "in a different case" but rather in the Arbitration related to this case. Second, Spicer did not express it as a "belief" ("I think…") but rather as fact. Third, unlike Glassner's 2024 Declaration, Spicer's 2020 Declaration is closer in time to the events; Spicer's deposition represented that he remembered events, vs. Glassner's 2024 deposition claiming he does not remember anything, even that to which he swore in his 2024 Declaration; and Glassner testified in his deposition that does not actually have a belief if Delgado revealed anything confidential or what she tweeted but rather 'the *attorney* told me'.  The Campaign concludes by calling Spicer's sworn, matter-of-fact Declaration in 2020 mere "opinion." But… Glassner's is fact? The Campaign never even explains how Glassner had a good faith belief, in suing Plaintiff, when Glassner, in his deposition, constantly hid behind, 'Hm, I didn't actually see anything or have an opinion –the *lawyer* at the time is the one who thought so.' When Delgado then deposed him a month later, Glassner, likely nervous about his own implication in perjury, bizarrely claimed he did not remember anything, even about the matters to which he had (authoritatively and confidently!) stated as fact in a Declaration just a few weeks earlier! Not

6

remembering events from seven year earlier, and not having witnessed the tweets oneself, is perfectly understandable – but then do not file a Declaration about those very events!

Amazingly, **Campaign's position seems to be that it can say "We believed XYZ", no matter the lack of basis in the record, and that alone creates an issue of material fact.** Imagine that: All a party need say is 'This is what we thought at the time. You'll just have to go with it.' No, this is why the standard is a *genuine* dispute – not a self-serving, fabricated one.

THE CLAIM DOES NOT EVEN MAKE SENSE, AS A MATTER OF FACT AND LAW: The Declaration is *also* a sham because, while Glassner's 2020 Declaration claimed that Delgado's tweets violated the non-disparagement clause, the 2024 Declaration claims the tweets violated the confidentiality clause of her Campaign NDA. But that is impossible, as, even if Delgado had posted a spoiler (which she did *not* – and did not even know) and shared the announcement minutes or an hour earlier than it was public: (a) Why would the Campaign even care? Why would it matter?; (b) Miller's appointment was information coming out of the *Transition Team*, and not information of the *Campaign* (DEFEx. 10, Spicer's declaration[2]); (c) Nor, moreover, does the record show that the Campaign had informed Delgado of the pending appointment and, as such, the Campaign does not/cannot even claim this was information the *Campaign* provided to her, which she then chose to premature share with the public. Thus, there was no breach of confidentiality.

THE ORDER: On Delgado's Motion to Strike Glassner's Declaration, the Court ruled:

> Delgado moves to strike the declaration of Michael Glassner, ECF No. 438, filed in connection with Defendants' summary judgment motion, ECF No. 471; *see also* ECF Nos. 489, 506. **Because the Court's ruling on this motion may affect whether**

---

[2] Spicer's 2020 Declaration read: *On December 22, 2016, **the Transition Team made a public announcement** that Jason Miller was selected to become the White House Communications Director for the Trump Administration.* (emphasis added)

>   **Delgado is able to prevail on summary judgment, the Court addresses the motion first.**
>
>   Delgado asks the Court to strike Glassner's declaration, arguing that there are inconsistencies between his declaration and deposition testimony. ECF No. 471 at 2–5. For example, Glassner's declaration states that in March 2017, he learned that Delgado "intended to file a lawsuit against the Campaign that threatened to reveal confidential information" and had "previously revealed confidential information in a series of tweets that she published in or around December 2016 concerning one of the Campaign's former employees, Jason Miller." ECF No. 438 ¶¶ 10–11. At his deposition, however, Glassner testified that he "d[id]n't recall the filing of the arbitration," could not recollect what "confidential information" was contained in Delgado's tweets, and did not remember the tweets themselves. Pl. Ex. 2 at 47:15–48:14, 55:17– 56:8. Delgado contends that this deposition testimony establishes that Glassner's declaration is an "improper sham" that "cannot be considered by the Court." ECF No. 471 at 4.
>
>   Delgado is correct that Glassner's deposition testimony casts doubt on the credibility of his declaration, and *vice versa*. **But "[t]he mere fact that testimony is inconsistent is insufficient to justify striking an entire document."** *Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 553 (S.D.N.Y. 2013); *see also Vista Food*, 627 F. Supp. 3d at 416 (explaining that striking evidence in connection with summary judgment is a "'harsh remedy' that 'should be imposed only in rare situations.'" (alteration adopted) (quoting *Update Art, Inc. v. Modiin Publ'g, Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988))). **"Where there are alleged discrepancies between affidavits and depositions," those inconsistencies ordinarily "go to the credibility of the declarant—and therefore to the weight to be given his or her testimony—rather than the admissibility of the testimony."** *Trinidad*, 962 F. Supp. 2d at 553 (citing *Lujan v. Cabana Mgmt., Inc.*, 284 F.R.D. 50, 67 (E.D.N.Y. 2012)). Because the Court does not weigh the evidence or make credibility determinations at summary judgment, *see Jeffreys v. City of New York*, 426 F.3d 549, 551 (2d Cir. 2005), any discrepancies in Glassner's statements do not justify striking his declaration.

-Order, p. 8-10 (emphasis added)

The Court cites caselaw regarding *inconsistencies*, such as: "But [t]he mere fact that testimony is **inconsistent** is insufficient to justify striking an entire document. *Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 553 (S.D.N.Y. 2013)" and "Where there are alleged discrepancies between affidavits and depositions, those **inconsistencies** ordinarily go to the credibility of the declarant—and therefore to the weight to be given his or her testimony—rather than the admissibility of the testimony." (Order, p. 9, emphasis added)

8

But, respectfully, Delgado argues that such is not applicable here as, here, we do not have mere inconsistencies, such as those found in the *Trinidad* case. Taking a look at *Trinidad*, it is clear why the court declined to strike the affidavits, as they were indeed mere 'inconsistencies' and not major contradictions. The *Trinidad* court even states so explicitly and indicates it would have stricken the affidavits if there were "major discrepancies":

> **The Court does not find sufficiently major discrepancies between plaintiffs' declarations and their deposition testimony to warrant striking any of their declarations**. Pret cites numerous examples of inconsistent testimony, *see* Def. MTS Br. 1–3; however, when read in context, these inconsistencies are, in the main, less consequential than Pret suggests. For example, Pret cites a statement in Jason Fermin's declaration that he "observed that other Team members also did not receive their proper wages and overtime." Def. MTS Br. 1 (citing Jason Decl. ¶ 2). … However, Jason went on to state:
>
> Well, I obviously saw my brother's checks ... and then my friend Julio Almonte.... Well, I don't think I saw all his checks, but I remember like a few times.... But for some of them, people like Julio that I have seen… **The other inconsistencies alleged by Pret are similarly minor and, for the most part, evidently attributable to imprecision or otherwise explainable**. The Court declines to strike these declarations at this preliminary stage.

*Trinidad*, at 554 (emphasis added)

'Mere inconsistencies' is not what we have here. Most respectfully, Delgado believes that the Court overlooked that the 2024-Declaration is a direct **contradiction** of Glassner's *own* prior sworn testimony in 2020. Delgado respects and understands why her other arguments in her Motion to Strike may not merit striking – but the 2020 v. 2024 contradiction *does* merit striking. Here, rather, the declarant is flat out saying the direct *opposite*. This merits striking, per caselaw. Consider *Mack v. United States*, 814 F.2d 120, 124 (2d Cir. 1987) (emphasis added):

> **It is well settled in this circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment**. *Miller v. International Telephone.,* 755 F.2d 20, 24 (2d Cir.), *Reisner v. General Motors Corp.*, 671 F.2d 91, 93 (2d Cir.); *Perma Research and Development Co. v. Singer* Co., 410 F.2d 572, 578 (2d Cir. 1969). As we stated in *Perma Research*:

9

> **"If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact**.

Or, consider *Lawrence v. Chemprene, Inc*. No. 18-CV-2537 (CS) (SDNY) (Oct 24, 2019) (emphasis added):

> It is well settled in this circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment." *Mack v. United States*, 814 F.2d 120, 124 (2d Cir. 1987); *see Moll v. Telesector Res. Grp., Inc.*, 760 F.3d 198, 205 (2d Cir. 2014) **"[F]actual issues that a party creates by filing an affidavit crafted to oppose a summary judgment motion that contradicts that party's prior testimony are not 'genuine' issues for trial**.").

Imagine a long-running employment case, in which, Mike, an Asian-American man, sues for racial discrimination and retaliation. In the long-running suit, seven years later, an executive of the company suddenly files a Declaration, drafted by the company's attorney, and filed the day the company is moving for summary judgment against Mike.  It states, for the first time ever, that Mike was sued for missing a key company event in 2016. However, a previous Declaration, in 2020, *by the same executive*, explicitly says Mike attended the company event.  Moreover, when Mike's lawyers move to depose the executive, and the deposition takes place a mere month after the Declaration, the executive answers that he does not actually recall whether Mike attended or not and cannot explain why he filed a Declaration saying Mike hadn't, a month earlier, other than passing the buck onto the attorney, whom he routinely cites as the person who told him XYZ. First, why is the company allowed to trot out the same executive to say the exact opposite thing, four years later? Second, if the executive subsequently concedes that he does not remember the events to which he swore, what business did he have, filing a sworn Declaration a few weeks earlier?

As discussed in *The Sham Affidavit Doctrine in Summary Judgment Practice*, the doctrine permits a court to disregard conflicting affidavits that "**flatly contradict**" earlier sworn testimony. ("When an offsetting affidavit flatly contradicts prior deposition testimony without explanation, as

in *Dercacz*, an inference of its credibility is not reasonable, its disregard is warranted, and summary judgment is justified.") The same is found in other states and districts across the country. *See e.g., Robinson v. Hank Roberts, Inc.*, 514 So. 2d 958, 961 (Ala. 1987) (a party cannot, without explanation, later create such an issue with an affidavit that contradicts previous clear testimony).

Overall, Delgado does not question "that striking evidence in connection with summary judgment is a harsh remedy that 'should be imposed only in rare situations,'" as the Order states. But it is allowed. And this certainly is a rare situation deserving of it. If not this, then what would qualify? If not when a party is caught putting forth **two directly contradictory Declarations, by the same person**, saying the opposite from one another… then when? As a reminder:

Glassner's 2020 Declaration stated (emphasis added):

> In December 2016, Ms. Delgado posted **a series of tweets on Twitter regarding Jason Miller**, a former independent contractor of the Campaign, **soon after** he was named to become the White House Communications Director for the Trump Administration. Ms. Delgado's tweets insinuated that Mr. Miller was involved in some sort of salacious scandal that was going to require him to resign from the role of White House Communications Director. Ms. Delgado's tweets regarding Mr. Miller were very embarrassing and damaging to the Campaign.

Glassner's 2024 Declaration says the opposite (emphasis added):

> Ms. Delgado had also previously revealed confidential information **in a series of tweets** that she published in or around December 2016 **concerning** one of the Campaign's former employees, **Jason Miller**. Specifically, in one of her tweets, Plaintiff stated that there was "an announcement forthcoming concerning the new Comms [Communication] Director," for the White House and identified Jason Miller as the individual who would be appointed to that position. In other words, Ms. Delgado revealed Mr. Miller's posting **prior** to it having been publicly announced, a clear violation of her NDA.

One Declarations says she posted the series about Miller "after" and the other that she did so "prior." This is not just an inconsistency – this is a deliberate contradiction and self-serving lie. The reason for this is clear: When the second Declaration was drafted, the Campaign was in search of some new justification for the Arbitration Action. This merits striking of the Declaration **– it also**

**merits sanctions, which the Court is able to enter, of its own volition, including but not limited to granting Delgado summary judgment on this issue, which Delgado requests.**

Of particular note, the Order's wording indicated that the Court may have granted Delgado summary judgment on this narrow issue, but for Glassner's 2024 Declaration. ("**Because the Court's ruling on this motion may affect whether Delgado is able to prevail on summary judgment, the Court addresses the motion first." Order, p. 8)** The Second District is clear that the Campaign cannot pull what it tried to pull here – defeating what would otherwise-be-a-successful-summary-judgment-motion by creating an issue of fact via testimony contradicting earlier testimony. *See Margo v. Weiss*, 213 F.3d 55, 60-61 (2d Cir. 2000) **(refusing to allow the plaintiffs to "defeat a motion for summary judgment by responding with affidavits recanting that earlier testimony"**). *See also Hayes v. New York City Dep't of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996) ( "factual issues created solely by an affidavit, crafted to oppose a summary judgment motion, are not 'genuine' issues for trial")

There is no *genuine* dispute here. Delgado, respectfully, requests the Declaration's striking or, at least, disregarding such, and requests that the Court thereupon reconsider its denial of her motion for summary judgment, which was largely based on Glassner's 2024 Declaration.

"Reconsideration is justified where the moving party demonstrates an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Henderson v. Metro. Bank & Tr. Co.*, 502 F. Supp. 2d 372, 376 (S.D.N.Y. 2007). Delgado believes that is met here and humbly requests that the Court reconsider.

Respectfully submitted,

<u>s/Arlene Delgado</u>
Arlene Delgado, Plaintiff, pro-se

DATED: October 16, 2025