IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARLENE J. DELGADO,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>DONALD J. TRUMP FOR PRESIDENT, INC., *et al*.,<br><br>　　　　　　Defendants. | Case No. 19-cv-11764 (AT) (KHP) |

**<u>MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANTS' MOTION FOR RECONSIDERATION</u>**

Jeffrey S. Gavenman
Jeremy W. Schulman
Schulman Bhattacharya, LLC
6116 Executive Boulevard, Suite 425
North Bethesda, Maryland 20852
Telephone: (240) 356-8550

*Counsel for Defendants Donald J. Trump for President, Inc.
Reince Priebus, and Sean Spicer*

October 30, 2025

Defendants Donald J. Trump for President, Inc. (the "Campaign"), Sean Spicer, and Reince Priebus (together, "Defendants") respectfully submit this memorandum of law in further support of their motion for reconsideration of the Court's September 11, 2025 Order (the "Order") to the extent that it denied Defendants' motion for summary judgment as to the claims brought by Plaintiff Arlene Delgado ("Plaintiff") as set forth below (the "Motion").  See ECF No. 546.

**ARGUMENT**

**I.   THE COURT'S DECISION TO DENY DEFENDANTS' MOTION AS TO PLAINTIFF'S FAILURE TO HIRE CLAIMS WARRANTS RECONSIDERATION.**

In response to Defendants' Motion that the Court reconsider its decision to deny summary judgment as to Plaintiff's failure to hire claim based on the failure to hire her for a White House position, Plaintiff states that "there is no 'failure to hire' claim in Plaintiff's summary judgment filings, nor does the Court's Order discuss any 'failure to hire' claim." ECF No. 557 at 1.  Given that Plaintiff is again conceding that she is not bringing a discrimination or retaliation claim under the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL") based on the failure to hire her for a position in the White House, that is more justification to grant Defendants' Motion on this issue.

Contrary to what Plaintiff argues, the Order repeatedly references Defendants' purported failure to hire Plaintiff for a role in the White House as part of her discrimination and retaliation claims.  See, e.g., ECF No. 546 at 14 ("Spicer and Priebus were sufficiently involved in employment-related decision making at the Campaign, including the decision to . . . deny her a place in the White House, to establish liability under the NYSHRL"); 23, n.11 ("Priebus and Spicer are not entitled to summary judgment on Delgado's retaliation claim to the extent the claim encompasses her . . . denial of a role in the White House").  As Plaintiff acknowledges, she is not

1

arguing that Defendants should be held liable for the supposed failure to hire her for a White House role and "this Court already, years ago, ordered the Defendants to cease" even contending that Plaintiff is bringing a claim under the anti-discrimination laws for a failure to hire.  ECF No. 557 at 2.  Thus, for the reasons set forth in Defendants' opening brief, Defendants' Motion as to these claims should be granted.[1]

## II. THE COURT'S DECISION TO DENY DEFENDANTS' MOTION AS TO PRIEBUS WARRANTS RECONSIDERATION.

### A. The Discrimination and Retaliation Claims.

Plaintiff argues that there are a "multitude" of disputed evidentiary facts that support the Court's decision to deny Plaintiff's summary judgment motion as to Priebus under the NYSHRL and the NYCHRL.  However, as discussed in Defendant's opening brief, and below, none of those supposed facts demonstrates that Priebus had a role in any employment decision as to *Plaintiff* herself.

In addition to the purported examples of Priebus's participation in employment decisions discussed in the Order (which Defendants addressed in their opening brief), Plaintiff points to the fact that Priebus supposedly acknowledged that he had "influence" in appointing senior White House staffers, that he purportedly spoke with Miller about appointments to the Communications Department, and that he was aware that certain members of the Communications Department for

---

[1]  Plaintiff also appears to take issue with the fact that Defendants did not include a separate section in their opening brief about Plaintiff's failure to hire claim.  However, given that Defendants' Notice of Motion makes clear that they are seeking reconsideration on this claim, *see* ECF No. 551, and Defendants' opening brief clearly addressed this claim, *see* ECF No. 552 at 5, Plaintiff's argument that Defendants have somehow deprived her of "requisite notice and plain arguments" is frivolous.

2

the Campaign went into the White House.² However, at most, these facts merely demonstrate that Priebus was aware of, and possibly had a role in, the hiring decisions for *some* (unspecified) White House jobs. There is no evidence in the record that he ever discussed Plaintiff's job prospects specifically, let alone that he ever had a role in denying her a White House position.

Plaintiff attempts to dispute that point by arguing that Priebus was aware of her pregnancy and by referencing a meeting that Miller allegedly had with Priebus to go over potential White House Communications employees. ECF No. 557 at 7. But even in Plaintiff's account of that meeting, Miller told her that Priebus stated that no one would care about her pregnancy, which demonstrates that he harbored *no* discriminatory animus towards Plaintiff, let alone that he discriminatorily denied her a White House job because of such animus, as would be necessary to sustain a claim under the NYSHRL and the NYCHRL. Indeed, as Plaintiff concedes, Priebus testified that he "let the Department head make [the] decision," *Id.* (internal quotations omitted), which is consistent with Spicer's testimony that he made the decision to deny Plaintiff a role.³ ECF No. 437 at ¶90.

Finally, Plaintiff argues that the fact that Priebus was aware of her pregnancy and contacted outside counsel is evidence that he participated in the discriminatory or retaliatory conduct against her. To the contrary, Priebus's decision to contact outside counsel and initiate an investigation is

---

² Plaintiff's claim that Priebus "conceded" that all of the Campaign's Communications employees joined the White House is simply not true. ECF No. 557 at p. 7. Rather, Priebus specifically stated that he did not even know all of the members of the White House Communications Group and stated that he did not know if some of the Campaign's employees identified by Plaintiff's counsel received White House roles. *See* ECF No. 442-4 at 150-151.

³ Plaintiff cites to Omarosa Newman's declaration for the proposition that Mr. Spicer did not make the decision alone; however, there is no evidence that Newman ever participated in any White House hiring decisions or that she had any knowledge of the hiring decision for Plaintiff in particular. ECF No. 557 at 12, n.2. Regardless, Newman's declaration certainly does not provide any evidence that Priebus had any role in the decision not to offer Plaintiff a job.

conclusive evidence that he cannot be held liable under the discrimination laws. *See McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 77 (S.D.N.Y. 2020) (finding that an employee could not be held liable for failing to take remedial measures where the employer "conducted two investigations, including by an outside law firm" and the plaintiff failed to allege that the employee "guide[d] those investigations, or indeed any conduct by Finley in connection with them,[4] tending to make these investigations 'shams'").

While Plaintiff's opposition papers, like the Order, has pointed to facts demonstrating that Priebus had a role in some employment decisions in the White House,[5] Plaintiff has failed to demonstrate that he actually participated in any of the employment decisions against her or that he harbored any discriminatory or retaliatory animus.[6] Plaintiff criticizes Defendants' Motion on these claims, stating that it relies on Priebus' declaration and his deposition testimony, but the fact remains that the record is entirely bereft of any evidence, much less evidence sufficient to create a

---

[4] Plaintiff attempts to make this argument by claiming that it is not credible that Priebus did not have some "involvement" in the investigation. ECF No. 558 at 7-8. However, Plaintiff has not adduced any evidence to support her speculation and - as she herself has conceded in this case - defeating a valid summary judgment motion requires "a *genuine* dispute – not a self-serving, fabricated one." ECF No. 558 at 7 (emphasis in original).

[5] Notably, Plaintiff's opposition papers are entirely silent as to what supposed evidence warrants finding Priebus liable for the decision to deny her work assignments with the Campaign or to terminate her consultancy with the Campaign or the Transition Team, further underscoring why reconsideration is appropriate as to these two aspects of her claims.

[6] It is for this reason that the court's reasoning in *Leykis v. NYP Holdings, Inc.*, 899 F. Supp. 986 (E.D.N.Y. 1995) is persuasive here. As the court explained, the plaintiff's discrimination claims failed because there were no allegations showing "Murdoch's alleged intent to discriminate against plaintiffs, or that Murdoch was even involved in the alleged discriminatory scheme." In other words, regardless of the individual defendant's title, *Levkis* stands for the proposition that, as in the instant case, an absence of evidence of discriminatory intent or actual participation in the discriminatory conduct is fatal to a discrimination claim under the NYSHRL or the NYCHRL.

4

genuine issue of material fact, that he took part in the discriminatory or retaliatory conduct at issue in this case.

B. <u>**The Tortious Interference Claim.**</u>

Inexplicably, in responding to Defendants' Motion as to her claim for tortious interference with prospective economic advantage, Plaintiff once again reiterates that "there is no failure to hire claim," apparently contending that Defendants are conflating that claim with her tortious interference claim. This is plainly false, as Defendants separately argue why summary judgment should have been granted as to Plaintiff's failure to hire claim under the NYSHRL and the NYCHRL, and Plaintiff's claim for tortious interference with prospective economic advantage. *Compare* ECF No. 552 at 5 *with* 552 at 10-11.

Nor does Plaintiff address the merits of Defendants' Motion. The closest she comes is to (incorrectly) arguing that the "wrongful means" requirement of a tortious interference claim encompasses "legitimate conduct," such as business competition. *But cf. U-Neek, Inc. v. Wal-Mart Stores, Inc.*, 147 F. Supp. 2d 158, 177 (S.D.N.Y. 2001) ("if a defendant's interference is intended (at least partly) to advance its own interests, the claim will fail unless the means employed include criminal or fraudulent conduct"). Here, Plaintiff has failed to present any evidence whatsoever that Priebus participated in the decision to deny Plaintiff specifically a position in the White House, let alone that he had wrongful or improper motives for so. Indeed, Priebus' only comment Plaintiff has presented about her pregnancy is Miller's statement that Priebus told him that no one would care about Plaintiff's pregnancy. ECF No. 557 at 7. There is simply no evidence in the record sufficient to create a genuine issue of material fact as to Priebus' liability under a tortious interference theory, warranting reconsideration.

5

## **CONCLUSION**

For the foregoing reasons, as well as those in Defendants' opening brief, Defendants respectfully request that the Court grant their motion for reconsideration in its entirety.

Dated: October 30, 2025
     New York, New York

                         **SCHULMAN BHATTACHARYA, LLC**

               By:    /s/ Jeffrey S. Gavenman
                      Jeffrey S. Gavenman
                      Jeremy W. Schulman
                      6116 Executive Boulevard, Suite 425
                      North Bethesda, Maryland 20852
                      Tel.: (240) 356-8553
                      Facsimile: (240) 356-8558
                      Email: jgavenman@schulmanbh.com
                                   jschulman@schulmanbh.com

                      *Counsel for Defendants*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that this motion complies with the type-volume limitation of this Court's Individual Rules of Practice III(D) and ECF No. 508 because it contains 1,726 words, excluding the parts exempted by this Court's Individual Rules of Practice and the Local Rules of the Southern District of New York.

Dated: October 30, 2025                                  Respectfully submitted,

*/s/ Jeffrey S. Gavenman*
Jeffrey S. Gavenman

*Counsel for Defendants*
