UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ARLENE DELGADO,

                              Plaintiff,

        -against-

DONALD J. TRUMP FOR PRESIDENT, INC.,
SEAN SPICER, individually, REINCE PRIEBUS,
individually,

                              Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___12/12/2025___

19 Civ. 11764 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Plaintiff, Arlene Delgado, brings this action against Defendants, Donald J. Trump for President, Inc., Sean Spicer, and Reince Priebus, alleging, *inter alia*, that Defendants discriminated against her on the basis of gender and pregnancy and then retaliated against her when she spoke out in opposition, in violation of the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL"). *See generally* Am. Compl. ECF No. 94. Defendants move under Federal Rule of Civil Procedure 12(h)(3) to partially dismiss Delgado's amended complaint for lack of subject matter jurisdiction over Delgado's NYSHRL and NYCHRL claims. *See generally* Mot., ECF 560; *see also* Mem., ECF No. 561, Opp., ECF No. 568; Reply, ECF No. 570. Defendants also move to seal exhibits filed in connection with their motion. Mot. to Seal, ECF No. 569. For the reasons stated below, the motion to dismiss is DENIED. The motion to seal is GRANTED.

BACKGROUND[1]

Delgado is a political commentator, writer, and attorney. *See* Am. Compl. ¶¶ 12–15. In March 2016, she began volunteering for Donald Trump's presidential campaign, Donald J.

---

[1] The following facts are taken from the amended complaint unless otherwise stated, *see* Am. Compl., which the Court must accept as true for the purposes of Defendants' motion to dismiss. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

Trump for President, Inc. (the "Campaign"), *id.* ¶ 21, and in September 2016, the Campaign

retained Delgado pursuant to a consulting agreement (the "Consulting Agreement") to provide

policy advice, engage in "Hispanic [o]utreach" efforts, and conduct media appearances, *id.* ¶¶

12, 18, 21.  According to the Consulting Agreement, Delgado's work would end on November

10, 2016.  Consulting Agreement ¶ 3, Def. SJ Ex. 10.[2]  But Delgado continued to work on behalf

of President-elect Trump's team, including for the Campaign and for Trump's transition team,

Trump for America, Inc. (the "Transition"), until he was inaugurated on January 20, 2017.  Am.

Compl.  ¶¶ 12, 49; *see also* Def. SJ Ex. 11 (November 14 and 15, 2016 email thread welcoming

Delgado to the Transition team).  Delgado claims that she spent most of her time physically

working out of the Campaign's New York City headquarters.  She had desk space there,

maintained a Trump Tower office badge—which was exclusive for New York employees—to

enter and leave the Campaign's headquarters, was provided housing in New York, was

supervised by and worked with New York City employees, and maintained New York-based

duties.  Delgado Decl. ¶¶ 3–8, 13, 15, ECF No. 568-1; *see also* Opp. at 3–4.

Throughout her tenure with the Campaign and the Transition, Delgado was supervised by

Jason Miller, the Campaign's head communications official.  *See* Am. Compl. ¶ 36; Spicer Dep.

Tr. at 23:19–20, 48:9–11, Def. SJ Ex. 8.  In mid-November 2016, Delgado learned that she was

pregnant with Miller's child and informed Miller, who asked her to "terminate her pregnancy."

Am. Compl. ¶¶ 37, 38.  When she refused, he said that she could not be seen "waddling around

the White House pregnant."  *Id.* ¶ 38.  In late December 2016, Delgado emailed Bannon and

---

[2] Citations to "Def. SJ Ex." refer to the exhibits attached to the declaration of Jeffrey Gavenman at ECF No. 440 in support of Defendants' motion for summary judgment.  *See also* ECF No. 442 (correcting certain exhibits at ECF No. 440).  The Court may consider evidence outside the pleadings when deciding a motion to dismiss for lack of subject matter jurisdiction under Rule 12(h)(3).  *See UMB Bank, N.A. v. Bristol-Myers Squibb Co.*, No. 21 Civ. 4897, 2024 WL 4355029, at *5 (S.D.N.Y. Sept. 30, 2024) (citation omitted).

Priebus, informing them of her pregnancy and expressing her concern that she was being retaliated against because she was pregnant. *Id.* ¶ 42. Spicer then told her that "the White House is 'no place for a new mom'" and "tried persuading [her] to focus on options outside the White House." *Id.* ¶ 45. From late December 2016 through January 2017, "the Campaign and [Transition], including Spicer, Bannon, and Priebus, stripped [] Delgado of her job responsibilities and duties for . . . the remainder of her employment with them." *Id.* ¶ 47.

Delgado brought this action on December 23, 2019, alleging, *inter alia*, discrimination and retaliation claims under the NYSHRL and NYCHRL. *See* Compl., ECF No. 1; *see also* Am. Compl. Following the Court's partial grant and partial denial of the parties' cross motions for summary judgment, Delgado's active NYSHRL and NYCHRL claims in this action include pregnancy discrimination and retaliation claims against all Defendants under both statutes. Am. Coml. ¶¶ 102–121, 125–27; *see* SJ Order at 37, ECF No. 546. [3] Defendants now move to dismiss those claims for lack of subject matter jurisdiction. *See generally* Mot.[4]

---

[3] In its summary judgment order, the Court granted summary judgment to Priebus and Spicer on the discrete issue of retaliation based on the commencement of the arbitration against Delgado because there was no evidence that they played a role in instituting that arbitration. *See* SJ Order at 23 n.11. The other portions of Delgado's NYSHRL and NYCHRL retaliation claims against Priebus and Spicer survived summary judgment.

[4] Although not raised by either party, the Court questions whether Defendants' motion is properly a motion to dismiss for lack of subject matter jurisdiction or if it is, instead, in its substance, a motion to dismiss for failure to state a claim. Courts have considered the question of whether a plaintiff may bring NYSHRL and NYCHRL claims based on their residency under a subject matter jurisdiction analysis, *see e,g.*, *Pedroza v. Ralph Lauren Corp.*, No. 19 Civ. 8639, 2020 WL 4273988, at *2–3, and under a failure to state a claim analysis, *see e.g.*, *Chen-Oster v. Goldman, Sachs & Co.*, 251 F. Supp. 3d 579, 594 (S.D.N.Y. 2017). To the extent Defendants argue that Delgado has failed to state a claim under either statute, their motion is denied as untimely because Defendants already answered the amended complaint. *See* Answer to Am. Compl., ECF No. 94; *see also* Fed. R. Civ. P. 12(b). To the extent Defendants contend that Delgado does not have the right to sue under the NYSHRL and NYCHRL and that this Court, therefore, lacks subject matter jurisdiction, for the reasons explained below, those arguments also fail.

**DISCUSSION**

I.     Legal Standard

Rule 12(h)(3) states that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). "Motions brought pursuant to Rule 12(h)(3) are subject to the same standards as motions to dismiss for want of subject matter jurisdiction brought pursuant to Rule 12(b)(1)." *Shulman v. Chaitman LLP*, 392 F. Supp. 3d 340, 350 (S.D.N.Y. 2019) (citation omitted). Under Federal Rule of Civil Procedure 12(b)(1), a claim must be dismissed when the Court lacks subject matter jurisdiction—that is, the statutory or constitutional power to adjudicate the claim. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that [jurisdiction] exists." *Id.*; *see also UMB Bank, N.A. v. Bristol-Myers Squibb Co.*, No. 21 Civ. 4897, 2024 WL 4355029, at *5 (S.D.N.Y. Sept. 30, 2024).

II.     NYSHRL and NYCHRL Claims

Defendants argue that Delgado does not have statutory standing to assert claims under the NYSHRL or the NYCHRL because she is not a resident of New York, and she did not feel the impact of the discrimination she alleges in New York. Mem. at 6–7. Delgado contends that she is a protected employee within the meaning of the NYSHRL and NYCHRL because she felt the impact of the alleged discriminatory and retaliatory conduct she experienced while working in New York. Opp. at 5.

Claims brought pursuant to NYSHRL and NYCHRL require the Plaintiff to reside or work in New York State or City. *See Ware v. L-3 Vertex Aerospace, LLC*, 833 F. App'x 357, 359 (2d Cir. 2020). A non-resident may state a claim under the NYSHRL and NYCHRL if she

4

can "allege that the impact of the discriminatory conduct was felt in New York [State] or New York City, respectively." *Desiderio v. Hudson Techs., Inc.*, No. 22 Civ. 541, 2025 WL 1285278, at *13 (S.D.N.Y. May 2, 2025); *see Pedroza v. Ralph Lauren Corp.*, No. 19 Civ. 8639, 2020 WL 4273988, at *2 (S.D.N.Y. July 24, 2020) ("NYCHRL does not necessarily restrict non-residents from stating a claim, but it rather expands protections to non-residents who work in the city.").

   A.  Judge Frank Decision

Defendants rely on a decision made by the Honorable Lyle E. Frank in Delgado's New York State action ("NYS Action"), which dismissed her NYSHRL and NYCHRL claims for sexual abuse and assault against the Campaign and Miller, who is not named in this action. Mem. at 3; *see also* NYS Compl., Def. MTD Ex. B.[5]  In that decision, Judge Frank determined that "simply alleging that an injury occurred in New York City" and therefore, "fail[ing] to properly allege impact in New York, as a non-resident[,]" was insufficient to meet the burden of standing to bring claims under the statutes.  NYS Order at 9, Def. MTD Ex. F.

Defendants' reliance on Judge Frank's decision is inapposite.  Defendants do not argue that this decision has a preclusive effect on Delgado's standing to bring NYSHRL and NYCHRL claims in this action, nor can they.  "Under New York law, collateral estoppel comes into play when four conditions are fulfilled:  (1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and decided, (3) there was a full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits." *Carroll v. Trump*, 690 F. Supp. 3d 396, 4033 (S.D.N.Y. 2023) (cleaned up), *aff'd*, 151 F.4th 50 (2d Cir. 2025).  Although the second and third conditions may apply to Judge Frank's decision, the first and fourth conditions

---

[5] Citations to "Def. MTD Ex." refer to the exhibits attached to the declaration of Gavenman at ECF No. 560-1 attached to Defendants' motion to dismiss.

do not.  The issues in the NYS Action and this matter are not identical.  That action involved

Delgado's sexual abuse and assault claims, not the discrimination and retaliation claims she

alleges here.  There was also no valid and final judgment on the merits.  The NYS Action notes

that it is a "non-final disposition," NYS Order at 11, and following the entry of the order,

Delgado filed a motion to amend her complaint, which remains pending in that action, *see*

Delgado Decl. ¶ 12; NYS Mot. to Amend, Pl. MTD Ex. 4.[6]  To the extent Judge Frank grants

Delgado leave to amend her complaint, the dismissal order is not final.  *Slayton v. Am. Exp. Co.*,

460 F.3d 215, 224 (2d Cir. 2006) ("A dismissal with leave to amend is a non-final order.")

Accordingly, Judge Frank's decision has no preclusive effect on this action.

B.  Discriminatory and Retaliatory Impact in New York State and City

Delgado concedes that she is a resident of Miami, Florida, not New York.  *See* Mem. at

7–8; Am. Compl. ¶ 6.  Therefore, the Court analyzes whether the discriminatory and retaliatory

conduct Delgado alleges impacted her within New York and finds that it did.

Delgado qualifies as a "nonresident[] who work[ed] in the city" and thus may invoke the

protection of the NYSHRL and NYCHRL.  *Hoffman v. Parade Publ'ns.*, 933 N.E.2d 744, 747

(2010).  She claims that she worked out of the Campaign's headquarters in New York City and

received all of her work from that office.  *See* Am. Compl. ¶ 25; Delgado Dep. at 85:15–24, Pl.

MTD Ex. 5 (testifying that from August 2016 until the election, "most of [her work] was out of

New York," and although "[e]verybody was traveling [and] nobody was fully based inside New

York all the time," her work "was certainly based out of New York"); *id.* at 86:23–87:3

("[E]verybody had boots on the ground [in] different states at different days [because] . . . it is a

national campaign.  So if we are all in New York the whole time, none of us are doing our

---

[6] Citations to "Pl. MTD Ex." refer to the exhibits attached to the declaration of Arlene Delgado at ECF No. 568-1 attached to her opposition to Defendants' motion to dismiss.

jobs."); *id.* at 87:18–25 ("Even when we were elsewhere, we were always working out of Trump Tower. We were just visiting somewhere else. But base camp was always Trump Tower. Coordination, instructions, [and] directives were all from Trump Tower.  Our stuff was always back at Trump Tower.").  Following the election, Delgado would travel between Florida and New York City to continue work on the "[s]ame job." *Id.* at 156:6–157:12.  The Campaign also housed Delgado in New York City during the pre- and post-election period, *see* Delgado Decl. ¶ 6; Pl. MTD Ex. 3 (listing Delgado on the Transition team "NYC" "Apartment List"); referred to her as part of its "Team in NY,"  Delgado Decl. ¶ 14; Pl. MTD Ex. 6 (listing Delgado as part of the "Communications [Transition]Team in NY" in a November 25, 2016 email), and provided her with a "NY employees only" badge that was issued to her during and after the election period for her work in New York City, Delgado Decl. ¶¶ 4–5.

Second, Delgado felt the impact of the discriminatory and retaliatory conduct she alleges within New York.  A plaintiff feels the impact of the discriminatory conduct in New York when the alleged unlawful conduct "had any impact on the terms, conditions or extent of her employment . . . within the boundaries of New York." *Hardwick v. Auriemma*, 116 A.D.3d 465, 467 (1st Dep't 2014).  Delgado claims that after Campaign and Transition staff, including Priebus and Spicer, learned that she was pregnant, she was ostracized and constructively fired from her position, which she claims consisted of her consultancy out of the Campaign's New York City Headquarters. *See* Am. Compl. ¶¶ 7–8, 21, 41–42, 47.  She also alleges that at this time, when she complained to Spicer, Priebus, and other Campaign and Transition staff of potential discriminatory conduct due to her ostracization that she was "stripped . . . of her job responsibilities and duties for . . . the remainder of her employment with them, from late December 2016 through the Inauguration in late January 2017."  Am. Compl. ¶ 47; *see also id.*

¶¶ 42, 46–49 (stating that she stopped receiving emails from the Campaign and Transition team). Accordingly, Delgado felt the impact of this alleged discriminatory and retaliatory conduct on the terms, conditions, and extent of her work in New York because she has sufficiently claims that it impacted her ability to participate in her role and responsibilities based in New York.

Defendants contend that there is "no evidence that [Delgado] resided in New York during the relevant time period" in her complaint.  Mem. at 10.  Delgado's "residence is irrelevant to establishing territorial jurisdiction under the NYCHRL . . . . [C]ourts have consistently emphasized that the location of the impact of the offensive conduct is the location where the plaintiff feels the impact of a violation of the NYCHRL on his or her employment." *Anderson v. HotelsAB, LLC*, No. 15 Civ. 712, 2015 WL 5008771, at *3 (S.D.N.Y. Aug. 24, 2015).

Next, Defendants argue that Delgado could not have felt the impact of the discriminatory and retaliatory conduct she alleges in New York because she was not located in New York during the time of that conduct, including:  her ostracization by the Campaign; her consultancy termination; her removal from organizational charts for the White House; and the Campaign's decision to institute an arbitration action against her.  *See* Mem. at 10–12.

First, the parties dispute when Delgado left New York to continue her work from Florida. *See* Mem. at 10; Opp. at 16.  Although the Court may consider evidence outside of the pleadings in determining a motion to dismiss on jurisdictional grounds, *see Makarova*, 201 F.3d at 113, factual disputes are to be resolved at trial.

Second, Delgado has testified that she only returned to Florida as of January 2017 because she felt the impact of the alleged discriminatory and retaliatory conduct, including her ostracization and the termination of her consultancy, in New York City.  Delgado Dep. 269:17–

8

20, Def. MTD Ex. G ("Because I wasn't given any work, I think I was physically in Florida.  But I still considered myself working out of New York.").

Third, the impact requirement nonetheless "applies even to employees working remotely, out-of-state for a New York employer." *Desiderio*, 2023 WL 185497, at *5–6 (finding, for example, that a remote employee working out of Florida felt the impact of discrimination in New York, where she attended a meeting in New York City and felt the impact of the gender discrimination she alleged at that meeting).

Fourth, to the extent Defendants argue that Delgado's alleged removal from White House organizational charts had no impact on Delgado in New York because the White House job was in Washington, D.C., *see* Mem. at 12, this argument is not relevant to the jurisdictional inquiry before the Court.  Delgado does not bring a failure-to-hire claim under the NYSHRL and NYCHRL.  *See* ECF No. 63 at 3–4 ("Delgado has stated unequivocally—more than once—that she does not maintain a cause of action against the federal government, or otherwise, for failure to hire. . . .  Nevertheless, Defendants bring a senseless motion to dismiss Delgado's nonexistent failure-to-hire claim." (citations omitted)).

Fifth, as to the retaliation claim, Defendants argue that the decision to institute arbitration against Delgado occurred in July 2017, while she was in Florida, and therefore had no impact on her in New York.  Mem. at 12.  Not so.  It is plausible that Delgado felt the impact of this alleged retaliatory conduct in New York City because, as Delgado claims, it chilled and intimidated her "out of her ability to file a complaint with the New York City Human Rights Commission . . . and another suit in New York."  Opp. at 20; Am. Compl. ¶ 118.  Delgado was also required to participate in the arbitration in New York, and, because the arbitration purportedly sought to enforce a nondisclosure agreement, it plausibly had a chilling effect on Delgado's speech and

made her lose "out on speaking abilities and media jobs, almost all of which are in New York."

Opp. at 20–21; Am. Compl. ¶ 30.

Accordingly, Delgado has proven by a preponderance of the evidence that she has

standing to bring her NYSHRL and NYCHRL claims, and Defendants' motion to dismiss is

denied.

III.     Motion to Seal

A.   Legal Standard

The public enjoys "a general right to inspect and copy public records and documents,

including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597

(1978).  This presumption of public access "is based on the need for federal courts . . . to have a

measure of accountability and for the public to have confidence in the administration of justice."

*Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006) (quoting *United States*

*v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995)).

Courts conduct a three-step analysis to determine whether sealing is warranted.  First, a

court must determine whether the relevant material constitutes a "judicial document," *i.e.*, a

document that is "relevant to the performance of the judicial function and useful in the judicial

process." *Lugosch*, 435 F.3d at 119 (quoting *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir.

1995)).  If material constitutes a "judicial document," the "common law presumption of access

attaches," and a court must evaluate the "weight of that presumption." *Id.*  "[T]he presumption

of public access is at its highest when the material is relevant to a court's decision on a

dispositive motion." *SEC v. Ripple Labs, Inc.*, No. 20 Civ. 10832, 2022 WL 329211, at *1

(S.D.N.Y. Feb. 3, 2022).  The presumption is "weaker where the 'documents play only a

negligible role in the performance of Article III duties.'" *Olson v. Major League Baseball*, 29 F.4th 59, 89 (2d Cir. 2022) (quoting *Amodeo*, 71 F.3d at 1050).

A court must then balance the weight of the presumption against "competing considerations," including "the privacy interests of those resisting disclosure," *Lugosch*, 435 F.3d at 120 (quoting *Amodeo*, 71 F.3d at 1050), and "the protection of sensitive, confidential, or proprietary business information," *Ripple*, 2022 WL 329211, at *1. Ultimately, sealing judicial documents "may be justified only with specific, on-the-record findings that sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim." *Lugosch*, 435 F.3d at 124. The party seeking to file documents under seal "bears the burden of showing that higher values overcome the presumption of public access." *Samsung Elecs. Co., Ltd. v. Microchip Tech. Inc.*, 748 F. Supp. 3d 257, 259 (S.D.N.Y. 2024) (citation omitted).

B.  Application

Defendants seek to redact Delgado's home address and personal email address, as well as personal phone numbers for certain third parties, from the exhibits they submitted in connection with their partial motion to dismiss. Mot. to Seal at 1. These documents are all judicial documents because they were submitted in connection with Defendants' partial motion to dismiss, *see Lugosch*, 435 F.3d at 121, so the Court must decide the weight of the presumption of public access that attaches to these documents and whether Defendants have met their burden to overcome that presumption by showing that the nonpublic filing is narrowly tailored to promote higher interests. The Court agrees with Defendants that Delgado's home address and email address and third-party personal numbers are not relevant to the motion before the Court and may be redacted. *See Farris v. Avon Prods., Inc.*, No. 23 Civ. 2023, 2024 WL 4441811, at *4 (S.D.N.Y. Oct. 7, 2024) ("Typically, sealing of personal information[,] 'such as [a person]'s

home addresses, personal phone numbers, and email addresses, that is not public] is warranted unless that information has bearing on issues before the court." (citation omitted)).  Accordingly, Defendants' motion to seal is granted.

**CONCLUSION**

For the reasons stated above, Defendants' motion to dismiss is DENIED, and Defendants' motion to seal certain exhibits is GRANTED.  The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 560 and 569.

SO ORDERED.

Dated: December 12, 2025
New York, New York

_____
ANALISA TORRES
United States District Judge