

Hughes Hubbard & Reed LLP
1775 I Street, N.W.
Washington, D.C. 20006-2401
Office:+1 (202) 721-4600
Fax: +1 (202) 721-4646
hugheshubbard.com

Jeff Gavenman
Partner
Direct Dial: +1 (202) 721-4686
jeffrey.gavenman@hugheshubbard.com

February 17, 2026

**VIA ECF**

The Honorable Analisa Torres
United States District Court, Southern District of New York
500 Pearl Street
New York, NY 10007

Re: <u>Delgado v. Donald J. Trump for President, Inc., et al.</u> **No. 19-cv-11764 (AT)(KHP)**

Dear Judge Torres:

We represent Defendants Donald J. Trump for President, Inc., *et al.* (together "<u>Defendants</u>") and write in response to the letter sent by Plaintiff's counsel in the separate action currently pending in New York State Court, Thomas Giuffra, on February 11, 2026 (the "<u>Giuffra Letter</u>"). The Giuffra Letter is wildly inappropriate and should be stricken from the docket because it is focused exclusively on matters that bear no tangible relation to the instant action. Specifically, in his letter, Attorney Giuffra—who has not filed a notice of appearance and is not counsel of record for any party in this case—continues a troubling pattern of the improper intermingling of the instant case with the independent family law state court dispute between the plaintiff in this case, Arlene Delgado, and a non-party, Jason Miller, currently pending in Florida's 11th Judicial District (the "<u>Florida Case</u>"). For the reasons set forth below, we write to again renew our objections to the continued commingling of the issues in the Florida Case with the parties' attempts to resolve the instant matter, and to request that the Giuffra Letter be removed from the docket.

By way of brief background, as Your Honor is of course aware, Your Honor ordered the parties in this case to appear before the Court on January 12, 2026 to "discuss the terms of the settlement" that had been agreed to in principle between Defendants and Plaintiff. As you know, that confidential settlement concerned only the claims in this case, as well as a case Plaintiff brought against the Campaign and Mr. Miller in a case pending before the New York State Supreme Court (the "<u>Settlement</u>"). *See* ECF No. 583. During the January 12, 2026 conference (which became an *in camera* appearance by the parties as no court reporter was present), Your Honor inquired about the status of the Florida Case, despite the fact that the Florida Case is situated in a different jurisdiction and has no direct relation to this action. The parties informed the Court that the Defendants had no involvement in the Florida Case and that the Florida Case was carved out of the parties' provisional confidential resolution of the instant case. However, Your Honor ordered

Defendants to make their best efforts to ensure that the Florida Case was resolved in connection with the parties' Settlement.  As I explained to the Court on January 12, and as I reiterate now, I do not represent Mr. Miller in any capacity; I am not licensed to practice law in the State of Florida; Mr. Miller has a separate attorney in Florida who is representing him in the Florida Case, Sandy T. Fox, Esq.; Mr. Miller is not a party to the instant case; and, neither my clients nor I have any control over Mr. Miller.

Notwithstanding these facts, the Court went beyond its traditional jurisdictional confines and ordered Defendants to take steps to facilitate Mr. Miller and Ms. Delgado's resolution of the Florida Case.  The Court then scheduled another conference for January 20, 2026, and made clear that the Court wanted to hear that the Florida Case had been settled when the parties reconvened at that time.  In an effort to comply with the Court's order, and despite not having any ability to compel Mr. Miller or Attorney Fox to take any steps in the Florida Case, I spoke with Attorney Fox and informed him that the Court had directed the parties to ensure that the Florida Case was resolved as part of the Settlement.  In response, Attorney Fox informed me that Mr. Miller and Ms. Delgado had previously agreed to a complete resolution of the Florida Case. Ms. Delgado later made an application to the court to undo the parties' agreement.  He also informed me that Mr. Miller was willing to agree to a mediation to attempt to resolve the outstanding issues in the Florida Case pending a mutually agreed upon exchange of the financial records from each side.

At the January 20, 2026 status conference before the Court, per the Court's order, I informed the Court about what Attorney Fox told me, both about the dissolution of the previous settlement between Mr. Miller and Ms. Delgado, as well as about Mr. Miller's willingness to participate in a mediation expeditiously to attempt to resolve the Florida Case.  Once again, the Court remained focused on the Florida Case and ensuring that it was part of the parties' global settlement.  I again reminded the Court that I did not represent Mr. Miller in any capacity and Defendants could not force him or his attorneys to take any particular steps in the Florida Case.  However, at the Court's order, I agreed to once again speak with Attorney Fox and communicate the urgency with which the Court believed that the Florida Case should be resolved.

The Court then ordered the parties to convene for another status conference the following week, on January 27, 2026.  At the January 27 conference, I conveyed to the Court information that Attorney Fox communicated to me; specifically, that he: had identified the documents that he believed were necessary to conduct a productive mediation with Ms. Delgado; had suggested a specific mediator to conduct the mediation between Mr. Miller and Ms. Delgado, but was willing to engage a court-appointed mediator if that was Ms. Delgado's preference; and, that he was willing to mediate on the weekend to ensure that the mediation was completed as soon as possible.  However, in response to a complaint by Ms. Delgado's attorney in this case, Attorney Hyland (who, it should be noted does not represent Ms. Delgado in the Florida Case, and, is not, as far as Defendants are aware, admitted to practice in Florida), about the fact that Mr. Miller continued to file motions in the Florida Case, Your Honor again expressed the Court's displeasure.  Specifically, Your Honor explained that the Court believed continued motion practice in the Florida Case was counterproductive towards the resolution that the Court had ordered.  Accordingly, the Court ordered me to inform Attorney Fox of Your Honor's displeasure at his continued efforts to litigate that matter while Mr. Miller and Ms. Delgado ostensibly should have been working towards a mediation and settlement of her claims in the Florida Case.  The Court then set another status conference for January 29, 2026.  Despite my objections that I do not represent Mr. Miller, and

have no power to compel him to do anything, and that the Florida Case should not be part of the instant case, the Court ordered Defendants to inform Your Honor at the January 29 conference that Attorney Fox had agreed to stop filing any motions in the Florida Case prior to the mediation and that a mediation date had been agreed upon between Mr. Miller and Ms. Delgado.

In accordance with the Court's order, I relayed to Attorney Fox that the Court wanted him to refrain from filing any additional motions in the Florida Case. Attorney Fox made it clear that, because there was no stay in the Florida Case, he was free to litigate it as he saw fit, in the best interests of Mr. Miller. In response, I communicated Your Honor's position that any further motion practice in the Florida Case would be counterproductive. I also told Attorney Fox that the Court wanted the mediation scheduled before the January 29, 2026 status conference in this case. In response, although the Florida Case has nothing to do with this case, Mr. Miller's attorney informed me that he would tell Ms. Delgado that Mr. Miller was willing to proceed with the mediation within seven days and that Mr. Miller would pay for the mediation.

During the January 29, 2026 status conference with the Court, per the Court's order, I communicated the information that Attorney Fox had informed me, and explained that, based on Attorney Fox's willingness to mediate the case within a week, Defendants hoped that the Florida Case could be resolved shortly and the parties could turn their attention back to finalizing the Settlement. However, Attorney Hyland and Attorney Giuffra[1] once again brought up matters concerning the Florida Case, complaining that Attorney Fox's "tone" in his e-mails was unprofessional. Your Honor then stated that the Court would be contacting the judge in the Florida Case at the time, Judge Spencer Multack, to discuss the Florida Case in more detail. Subsequently, Judge Multack scheduled a conference for February 9, 2026, and the attorneys in this case, including the undersigned, were informed that they were invited to attend.

As previously stated, Defendants strongly object to the Court's continued focus on the Florida Case, and the intermingling of that case with the instant matter. The Florida Case is not before Your Honor, and this Court lacks jurisdiction over those parties or proceedings. Indeed, "[i]t is a fundamental precept that federal courts are courts of limited jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution or Congress." *Durant, Nichols, Houston, Hodgson v. Dupont*, 565 F.3d 56, 62 (2d Cir. 2009) (quoting *Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 374 (1978)). "The consistent constitutional rule has been that a court has no power to adjudicate a personal claim or obligation unless it has jurisdiction over the person of the defendant." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 111 (1969). Thus, neither this Court nor the Defendants have the standing or authority to become involved in a contentious custody dispute between two parties over which they have no control.

Despite their objections, Defendants have followed the Court's directives in good faith and have taken every required step to facilitate the resolution of the Florida Case, despite having no interest in the outcome of that matter and having no involvement in that matter in any form. We hope the Court appreciates the great lengths that Defendants have undertaken to effectuate Your Honor's orders regarding the Florida Case – including working cooperatively with Mr. Miller and his counsel to do so.

---

[1] Although, Attorney Giuffra does not have a notice of appearance in this case he has been able to attend and speak at status conference, including *in camera* conferences. Which we objected to.

Additionally, I have acted as an intermediary between Your Honor and Attorney Fox on several occasions at the Court's explicit instructions. However, because I do not represent Mr. Miller and am not licensed to practice law in Florida, I have had to carefully navigate my professional and ethical obligations to ensure that I did not engage in the improper practice of law in Florida, in a Florida case. This has been made more difficult as Ms. Delgado is not represented by counsel in the Florida Case and, since the January 12, 2026 status conference, has reached out to me directly to discuss various aspects of the Florida Case. While I have passed those messages along to Attorney Fox and Attorney Hyland without engaging with Ms. Delgado, Defendants are concerned that the continued inappropriate blurring of the lines between this action and the Florida Case will impede the resolution of both actions.

This concern was significantly exacerbated when Judge Multack scheduled a "joint" conference in a Florida court in the Florida Case. As explained above, I am not admitted in Florida and have no authorization to practice law in the Florida courts. Neither, it should be noted, is Attorney Hyland or Attorney Giuffra. Because we are not admitted in Florida, we cannot be required to appear at a family law conference in a Florida court as it would constitute the unauthorized practice of law. This issue highlights the ethical landmines that Defendants have been forced to navigate to comply with the Court's orders at several *in camera* conferences to take steps to facilitate an expedient resolution of the Florida Case. We cannot be made responsible for facilitating the resolution of a case in a foreign jurisdiction that we are not a party to, or, quite frankly, be required to commit unauthorized practice of law in another jurisdiction.

Indeed, even after Judge Multack's recusal, the lines between the Florida Case and this case continue to be blurred, as evinced by the Giuffra Letter. Attorney Giuffra, who, again. has never entered a notice of appearance in this case and should, therefore, not be practicing before the Court, submitted a letter that is almost entirely related to issues concerning the Florida Case, going so far as to accuse Mr. Miller of violating a Florida criminal statute in connection with his behavior as part of the Florida Case. This is unquestionably improper. To the extent that Ms. Delgado (or her attorneys) takes issue with Mr. Miller's conduct in the Florida Case, the appropriate, and only, avenue of recourse is to file a motion with Judge Rodriguez-Fonts in the Florida court seeking relief. The only conceivable reason that Attorney Giuffra would submit such a letter to this Court is to commit an inappropriate end run around the prohibition against his unauthorized practice of law in Florida. The Court should not aid or allow him to do so and the Giuffra Letter must be stricken from the docket.

Defendants respectfully submit that, with the recent recusal of Judge Multack, any resolution of the Florida Case will take weeks or even months while Judge Rodriguez-Fonts takes the necessary time to familiarize himself with the complexities of the lengthy litigation history between Mr. Miller and Ms. Delgado. Even if they were able to reach an expedient resolution, Judge Rodriguez-Fonts would need that time before that resolution could be approved by the court. It would substantially prejudice the parties in this case to delay the resolution of this case while that process plays out in a different court.

Accordingly, Defendants respectfully request that this case proceed entirely separately from the Florida Case and that the Florida Case no longer be the subject of further conferences or orders with the Court. Defendants also request that the Giuffra Letter be stricken from the docket, since

it is entirely unrelated to the matters before this Court. Again, the Florida Case is a separate matter, in a separate jurisdiction, with separate parties represented by separate counsel. It simply has no place here. Counsel in this case are not admitted to practice law in the Florida Case, have not litigated the Florida Case, and are not familiar with the long litigation history between the parties. Defendants respectfully submit that it is unfair, and prejudicial, to put them into a position where they have to address this history, such as by responding to statements made in the Giuffra Letter. Defendants further submit that any misstatements or inaccuracies in the Giuffra Letter stem directly from the fact that counsel in this case are obtaining information concerning the Florida Case secondhand and should not be required to make representations to this Court based on what amounts to hearsay. The Florida Case is a complicated and difficult dispute between two parents over how to best accommodate the needs of their child. The Florida Family Court system is uniquely positioned to oversee those needs in accordance with Florida law, and Defendants are neither capable of, nor are equipped to, make decisions impacting Ms. Delgado and Mr. Miller's child. Defendants further request that they not be asked to involve themselves in the Florida Case, to avoid any possibility that they will violate their ethical duties by inadvertently engaging in conduct that could be considered the unauthorized practice of law.

        Respectfully submitted,

        /s/ Jeffrey S. Gavenman
        Jeffrey S. Gavenman