**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

ARLENE J. DELGADO,

               Plaintiff,

v.

DONALD J. TRUMP FOR PRESIDENT, INC.,
*et al.*,

               Defendants.

Case No. 19-cv-11764 (AT) (KHP)

**MEMORANDUM OF LAW IN SUPPORT OF
<u>DEFENDANTS' MOTION IN LIMINE TO LIMIT PLAINTIFF'S DAMAGES</u>**

Jeffrey S. Gavenman
Jeremy W. Schulman
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, NY 10004
Telephone: (212) 837-6000

*Counsel for Defendants Donald J. Trump for President, Inc.
Reince Priebus, and Sean Spicer*

April 13, 2026

**TABLE OF CONTENTS**

<u>**Page**</u>

BACKGROUND .............................................................................................................................1

ARGUMENT ..................................................................................................................................3

    I.      THE COURT SHOULD LIMIT PLAINITFF TO AN AWARD OF
          GARDEN VARIETY EMOTIONAL DISTRESS DAMAGES. ...........................3

    II.    THE COURT SHOULD STRIKE PLAINTIFF'S REQUEST FOR
          FRONT PAY DAMAGES...................................................................................5

    III.   THE COURT SHOULD LIMIT PLAINTIFF'S ENTITLEMENT TO
          BACK PAY. ......................................................................................................6

    IV.   THE COURT SHOULD STRIKE PLAINTIFF'S PUNITIVE DAMAGES
          DEMAND. ........................................................................................................8

          A.    The Court Should Strike Plaintiff's Punitive Damages Demand
               under the New York City Human Rights Law..............................................8

          B.    The Court Should Strike Plaintiff's Punitive Damages Demand
               under the New York Common Law............................................................10

CONCLUSION.............................................................................................................................12

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Becerril v. E. Bronx NAACP Child Dev. Ctr.*, No. 08-cv-10283(PAC)(KNF), 2009
WL 2611950 (S.D.N.Y. Aug. 18, 2009), *report and recommendation adopted
sub nom. Becerril v. Ease Bronx NAACP Child Develpoment Ctr.*, No. 08
CIV. 10283 ...............................................................................................................4

*Bouveng v. NYG Capital LLC*, 175 F. Supp. 3d 280 (S.D.N.Y. 2016) ............................................4

*Carvel Corp. v. Noonan*, 350 F.3d 6 (2d Cir. 2003) ........................................................11

*Conocophillips v. 261 E. Merrick Rd. Corp.*, 428 F. Supp. 2d 111 (E.D.N.Y.
2006) ....................................................................................................................10

*Duarte v. St. Barnabas Hosp.*, 341 F. Supp. 3d 306 (S.D.N.Y. 2018) ......................................4, 5

*Edelman v. NYU Langone Health Sys.*, 141 F.4th 28 (2d Cir. 2025) .............................................9

*EEOC v. Joint Apprenticeship Comm. of the Joint Indus. Bd. of the Elec. Indus.*,
186 F.3d 110 (2d Cir. 1998)..........................................................................................6

*Epstein v. Kalvin-Miller Int'l, Inc.*, 139 F. Supp. 2d 469 (S.D.N.Y. 2001) .....................................3

*Hine v. Mineta*, 238 F. Supp. 2d 497 (E.D.N.Y. 2003) ...................................................5

*Jessamy v. Ehren*, 153 F. Supp. 2d 398 (S.D.N.Y. 2001)...............................................3

*Livingston v. City of New York*, 563 F. Supp. 3d 201 (S.D.N.Y. 2021) ("these
amendments only apply to claims that accrue on or after the effective date of
October 11, 2019; they do not apply retroactively to Plaintiff's claims here").........................9

*Lovejoy-Wilson v. Noco Motor Fuels, Inc.*, 242 F. Supp. 2d 236 (W.D.N.Y. 2003).......................8

*Lovitch v. Lovitch,* 11-cv-2536(ER)(LMS), 2015 WL 1047807 (S.D.N.Y. Mar. 10,
2015) .....................................................................................................................3

*McDaniel v. Scotch & Soda Retail LLC*, 2025 WL 401108 (S.D.N.Y. Feb. 4,
2025) .....................................................................................................................9

*In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 725 F.3d 65 (2d
Cir. 2013) ..............................................................................................................11

*New York Univ. v. Cont'l Ins. Co.,* 87 N.Y.2d 308 (1995) ............................................11

1

*Pogil v. KPMG L.L.P.,* No. 21-CV-7628 (LTS) (BCM), 2024 WL 1208909
(S.D.N.Y. Mar. 21, 2024) ...............................................................................................6

*Press v. Concord Mortg. Corp.*, No. 08 CIV. 09497 (KTD), 2010 WL 3199684
(S.D.N.Y. Aug. 11, 2010) ...............................................................................................6

*Purgess v. Sharrock*, 33 F.3d 134 (2d Cir. 1994) ...............................................................11

*Raedle v. Credit Agricole Indosuez*, No. 04-cv-2235 (TPG), 2010 WL 1506731
(S.D.N.Y. Apr. 14, 2010) ...............................................................................................11

*Rainone v. Potter*, 388 F. Supp. 2d 120 (E.D.N.Y. 2005) ...................................................4

*Reach Music Publ'g, Inc. v. Protoons Inc.*, 718 F. App'x 8 (2d Cir. 2017) ...................................11

*Sanderson v. Leg Apparel LLC*, No. 1:19-CV-8423-GHW, 2024 WL 898654
(S.D.N.Y. Mar. 1, 2024) .............................................................................................5, 6

*Sohnen v. Charter Commc'ns, Inc.*, 761 F. Supp. 3d 556 (E.D.N.Y. 2025) ...................................8

**Statutes and Rules**

Local Rule 6.4, I..................................................................................................................14

New York City Human Rights Law......................................................................................8

**Legislative and Administrative Proceedings**

Order, p. 6, n.4 (Dec. 12, 2025) (ECF No. 579) ............................................................10

Defendants Donald J. Trump for President, Inc. (the "Campaign"), Sean Spicer, and Reince Priebus (together, "Defendants") respectfully submit this memorandum of law in support of their motion in limine to (1) strike Plaintiff Arelene Delgado's ("Plaintiff") compensatory damages demand in this case to the extent that she seeks anything more than garden variety emotional distress damages, (2) to strike Plaintiff's demand for front pay damages, (3) to limit Plaintiff's demand for back pay damages and (4) to strike Plaintiff's demand for punitive damages in its entirety.

## BACKGROUND

Despite lacking the evidence necessary to calculate damages required under the law, Plaintiff has insisted on seeking exorbitant sums in damages, without any legal basis for doing so. By way of example, throughout this case, Plaintiff has been steadfast in maintaining that she never sought any medical treatment in connection with any of her alleged damages in this case, including for her purported emotional distress. By way of example only, in Plaintiff's Responses and Objections to Defendants' First Set of Interrogatories to Plaintiff, Defendants asked her to provide a computation of her damages in this action. Plaintiff responded by stating that she was entitled to "$5,000,000 in reputational harm" and "at least $20,000,000 for her emotional distress and pain and suffering." *See* Ex. A at p. 9. However, in response to Defendants' interrogatory asking that she "identify each person with whom plaintiff has sought treatment for any alleged physical, mental, or emotional injuries relating to this action," Plaintiff responded by stating that "Plaintiff could not afford to seek any form of professional 'treatment' for any physical, mental, or emotional injuries relating to this action." *Id.*

Similarly, in response to Defendants' Requests for Authorizations, Plaintiff admitted that "Plaintiff has not suffered any form of physical injury." Ex. B at p. 2. She likewise admitted that "Plaintiff has not sought or received any form of mental health care or treatment since 2016" and

1

that "Plaintiff has not sought or received any form of physical, mental, or emotional injuries relating to this action." *Id.*

Despite this fact, pursuant to this Court's Individual Practices in Civil Cases, Section V(B)(xi), Plaintiff included in the parties' Joint Pre-Trial Order (the "JPTO") her Statement of Damages Claimed, which purports to identify the damages she seeks in this case ("Plaintiff's Damages Statement").  Incredibly, even after discovery, and after averring on numerous occasions that she suffered no physical injury and received no medical treatment related to any of her allegations in this case, Plaintiff's JPTO claims that she is nevertheless seeking as much as *$17.9 million* in emotional distress damages in this case.[1]  As will be shown below, Plaintiff's own admissions in this case put a hard cap on the amount of emotional distress damages she can seek in this case, and anything beyond that is wholly unsupported under the law.

Similarly, Plaintiff claims that she is entitled to over $3,000,000 in economic damages in this case, notwithstanding the fact that she has not presented a shred of evidence demonstrating that she would have earned even a fraction of the sum she seeks.  Simply put, Plaintiff's demand for economic damages is almost entirely unsupported by the record and the result of impermissible speculation that cannot be squared with the clear law.

Finally, Plaintiff's Damages Statement avers that she seeks an additional $1.2 million in punitive damages.  Again, there is absolutely no evidence in the record supporting an award of punitive damages under New York law.  Plaintiff cannot show that any of the Defendants acted

---

[1]    Specifically, Plaintiff's section of the Summary of Claims and Defenses to be Tried states that she believes that "she is entitled to $7,300,000 for *each* of the discrimination and retaliation causes of action, and $3,300,000 for the tortious interference claim," amounting to $17.9 million. JPTO at 2-3 (emphasis added).  However, Plaintiff herself has been unable to consistently describe her damages as the Damages Statement states that she is seeking $4 million in damages for her alleged emotional distress. As will be shown below, both figures are wildly out of line with what the evidence, or the law, supports.

with the necessary unlawful intent to support punitive damages.  As a result, Plaintiff's request for

punitive damages should be stricken entirely and Plaintiff should not be permitted to introduce any

evidence or testimony in support of her request for such damages.

**ARGUMENT**

**I.     THE COURT SHOULD LIMIT PLAINITFF TO AN AWARD OF GARDEN VARIETY EMOTIONAL DISTRESS DAMAGES.**

Put simply, Plaintiff's claim that she is entitled to as much as an astonishing $17,900,000

in emotional distress damages in this case cannot be squared with her admission that she suffered

*no* physical injuries as a result of Defendants' conduct in this case and that she never sought any

treatment from any medical providers in connection with this case.

The law is clear that plaintiffs that do not seek any medical treatment for their emotional

distress damages, and instead seek to rely solely on their own testimony, are limited to what courts

deem "garden variety" compensatory damages.  As one court has explained:

> Claims of emotional distress that are "garden variety" are "simple or usual." However, claims of emotional distress which are not "garden variety" include complex claims which "result in a specific psychiatric disorder." Generally, the distinction hinges on whether or not the claimed injury requires medical attention. Emotional distress damages claims which do not require medical attention have been characterized as "garden variety."

*Jessamy v. Ehren*, 153 F. Supp. 2d 398, 401 (S.D.N.Y. 2001) (cleaned up).  *See also Lovitch v.*

*Lovitch,* 11-cv-2536(ER)(LMS), 2015 WL 1047807, at \*11 n. 10 (S.D.N.Y. Mar. 10, 2015) ("With

claims of garden variety emotional distress, the evidence of mental anguish suffered is generally

limited to the testimony of the plaintiff, is described in vague or conclusory terms, without

presenting evidence of the duration, severity or consequences of the condition, and there is

minimal or no evidence of medical treatment") (internal quotations omitted); *Epstein v. Kalvin-*

3

*Miller Int'l, Inc.*, 139 F. Supp. 2d 469, 480 (S.D.N.Y. 2001) ("A 'garden variety' emotional distress claim is one that did not require medical treatment").

Here, Plaintiff has disclaimed both that Defendants' conduct caused her any physical injury and that she received any medical treatment for her alleged emotional distress.  She will therefore be able to offer nothing more than her own testimony about the "duration, severity or consequences of" her alleged injuries.  Thus, Plaintiff's claim for emotional distress is properly classified as "garden variety."  Indeed, Plaintiff's evidence clearly falls short of establishing the next higher level of emotional injury, "significant emotional distress," which is "found only where a plaintiff has offered medical, psychological, or therapist evidence of substantial, long-term psychological harm." *Duarte v. St. Barnabas Hosp.*, 341 F. Supp. 3d 306, 320 (S.D.N.Y. 2018).

As to the appropriate range of such awards, courts have held that in "'typical' or 'garden variety' emotional distress claims, district courts have awarded damages ***ranging from $5,000 to $35,000***, based upon the plaintiff's 'vague or conclusory' testimony of distress." *Becerril v. E. Bronx NAACP Child Dev. Ctr.*, No. 08-cv-10283(PAC)(KNF), 2009 WL 2611950, at *6 (S.D.N.Y. Aug. 18, 2009), *report and recommendation adopted sub nom. Becerril v. Ease Bronx NAACP Child Develpoment Ctr.*, No. 08 CIV. 10283 PACKNF, 2009 WL 2972992 (S.D.N.Y. Sept. 17, 2009) (emphasis added); *Rainone v. Potter*, 388 F. Supp. 2d 120, 122 (E.D.N.Y. 2005) ("At the low end of the continuum are what have become known as "garden-variety" distress claims in which district courts have awarded damages for emotional distress ranging from $ 5,000 to $ 35,000") (internal quotations omitted); *Bouveng v. NYG Capital LLC*, 175 F. Supp. 3d 280, 332 (S.D.N.Y. 2016) ("Because cases approving multi-hundred-thousand dollar awards for emotional damages all involve post-traumatic stress disorder or medical evidence of some other

4

psychological harm . . . the jury's [] award cannot stand.") (cleaned up); *see also Duarte*, 341 F. Supp. 3d at 321-322 (collecting cases).

Accordingly, based on the law, as well has her own admissions, Plaintiff is not entitled to the outrageous sums she seeks in this case for compensatory damages. Defendants therefore request that the Court strike Plaintiff's compensatory damages demand to the extent that it seeks any more than garden variety emotional distress damages.

## II. THE COURT SHOULD STRIKE PLAINTIFF'S REQUEST FOR FRONT PAY DAMAGES.

Although Plaintiff purports to seek front pay damages, Plaintiff's request is apparently premised on a fundamental misunderstanding of what front pay damages are and what purpose they are designed to serve. According to Plaintiff's Damages Statement, she is seeking "front pay" for the period from 2021 through 2024, and nothing for the years since. However, contrary to what Plaintiff apparently believes, this stretch of time, encompassing a period entirely before any verdict in this case, falls squarely under the category of back pay damages.

Specifically, it is well settled that front pay is "money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement." *Sanderson v. Leg Apparel LLC*, No. 1:19-CV-8423-GHW, 2024 WL 898654, at *4 (S.D.N.Y. Mar. 1, 2024). Thus, by Plaintiff's own admission that she is not seeking damages for any year after 2024, Plaintiff is clearly not seeking damages after the date of any judgment in this case, warranting striking of Plaintiff's front pay demand in this case.

Even if Plaintiff were properly seeking a front pay award (and she is not), the law is clear that she is not entitled to any such damages given the lack of evidence in the record supporting front pay damages. Specifically, as with all economic damages, "front pay should not be awarded where the calculation method is unduly speculative." *Hine v. Mineta*, 238 F. Supp. 2d 497, 501

(E.D.N.Y. 2003); *see also Press v. Concord Mortg. Corp.*, No. 08 CIV. 09497 (KTD), 2010 WL 3199684, at *2 (S.D.N.Y. Aug. 11, 2010) (denying front pay because "an award of front pay would be unduly speculative").  In the instant case, where Plaintiff's consultancy with the Campaign ended, and she was denied a role in the White House, nearly a decade ago, any projections about what Plaintiff's career would have looked like absent these decisions is necessarily speculative. *See, e.g., Pogil v. KPMG L.L.P.,* No. 21-CV-7628 (LTS) (BCM), 2024 WL 1208909, at *12 (S.D.N.Y. Mar. 21, 2024) ("The longer a proposed front pay period, the more speculative the damages become").  By way of example only, there is no evidence in the record concerning how many (if any employees) who started with the White House in 2016 received jobs in the White House during President Trump's second term, or that the Director of Hispanic Outreach position for which Plaintiff was being considered even exists in the current administration, foreclosing any such argument from Plaintiff in this case.  As a result, the record is clear that Plaintiff's demand for front pay is unsustainable in this case.

### III.    THE COURT SHOULD LIMIT PLAINTIFF'S ENTITLEMENT TO BACK PAY.

Similarly, the claim in Plaintiff's Damages Statement that she is seeking an award of back pay award of $3.2 million is incompatible with the law and should be limited as a result.  It is black letter law that "a back pay remedy must be sufficiently tailored to expunge only the actual, ***and not merely speculative***, consequences of the unfair labor practices."  *Sanderson v. Leg Apparel LLC*, 1:19-CV-8423-GHW, 2024 WL 898654, at *2 (S.D.N.Y. Mar. 1, 2024) *quoting EEOC v. Joint Apprenticeship Comm. of the Joint Indus. Bd. of the Elec. Indus.*, 186 F.3d 110, 124 (2d Cir. 1998) (emphasis added).  Thus, Plaintiff has the burden of proving that she suffered economic damages as a result of Defendants' purported conduct and, more importantly, what those damages were.  She cannot do so based on the evidence in the record.

6

According to Plaintiff's Damages Statement, she believes that she is entitled to $150,000 for the years 2017 and 2018 and that she was entitled to $500,000 for every year between 2019 and 2024. However, Plaintiff failed to abide by the Court's Individual Rules of Practice in Civil Cases, Section V(B)(xi), which requires that the party seeking damages identify "the manner and method used to calculate any claimed damages and a breakdown of the elements of such claimed damages." As a result, there is no indication how Plaintiff derived these amounts beyond her claim that the 2017 and 2018 figures represent "the pay that Ms. Delgado would have received in the White House" for those years and the $500,000 figure represents "her likely income" after leaving the White House. Even assuming Plaintiff could prove that she would have worked at the White House in 2017 and 2018 (which is itself an unlikely proposition given that the evidence will show the White House during President Trump's first administration was marked by staff turnover with Plaintiff's self-selected comparators, as well as Mr. Priebus and Mr. Spicer, lasting less than a year), Plaintiff has to present evidence demonstrating that she would have earned $150,000 at the White House. No such evidence exists in the record.

Likewise, there is simply no evidence that Plaintiff's compensation would have jumped to $500,000 in 2019 and remained there for the next several years. While Plaintiff has made references to book deals and possible media appearances she would have received had she been employed by the White House, using these supposed opportunities as a basis for calculating damages in this case is necessarily speculative by definition. No one can predict how Plaintiff's career would have unfolded if she had been employed by the White House for two years. At a minimum, an expert witness would be necessary, and it is not clear how an expert could accurately gauge Plaintiff's ability to rise in the ranks of the news media solely because she worked in the White House. Hundreds of employees worked in the White House during President Trump's first

term.  There is no evidence that even a fraction of them have enjoyed the financial success Plaintiff claims she is entitled to.  As a result, Plaintiff should be barred from testifying or introducing other evidence about any potential career opportunities that she believes she would have received after leaving the White House.  Relatedly, because Plaintiff's Damages Statement makes clear that she only expected to work at the White House for two years, Plaintiff should be barred from receiving any back pay beyond 2018.

## IV.   THE COURT SHOULD STRIKE PLAINTIFF'S PUNITIVE DAMAGES DEMAND.

### A.   The Court Should Strike Plaintiff's Punitive Damages Demand under the New York City Human Rights Law

As explained above, Plaintiff also seeks punitive damages in this case in the amount of $1.2 million.[2]  However, because the evidentiary record does not support such an award, the Court should strike Plaintiff's punitive damages demand entirely.  *See, e.g., Sohnen v. Charter Commc'ns, Inc.*, 761 F. Supp. 3d 556, 572 (E.D.N.Y. 2025) ("As an initial matter, Defendant is permitted to move to dismiss Plaintiff's punitive damages claim as part of its motion *in limine*, as such a request—if granted—would narrow the issues to be presented by the jury") (citing *Lovejoy-Wilson v. Noco Motor Fuels, Inc.*, 242 F. Supp. 2d 236, 244 (W.D.N.Y. 2003) (collecting cases)).  In the instant case, Plaintiff cannot meet the standard necessary to obtain a punitive damages award under the New York City Human Rights Law[3] (the "NYCHRL") or under New York's common law, and, as such, the Court should bar Plaintiff from seeking an award of punitive damages.

---

[2]   Once again, because Plaintiff failed to follow the Court's Individual Rules of Practice in Civil Cases Section V(B)(xi), Plaintiff has not explained whether she believes she is entitled to punitive damages based on her claims of discrimination, retaliation or for tortious interference with prospective economic advantage.  Defendants will address Plaintiff's entitlement to punitive damages under either theory.

[3]   Although the NYSHRL was amended in 2019 to allow for punitive damages, the conduct in which Plaintiff alleges Defendants engaged occurred prior to the effective date of the

In order to qualify for punitive damages under the NYCHRL, a plaintiff must demonstrate that the "wrongdoer has engaged in discrimination with willful or wanton negligence, or recklessness, or a 'conscious disregard of the rights of others or conduct so reckless as to amount to such disregard.'" *McDaniel v. Scotch & Soda Retail LLC*, 2025 WL 401108, at *3 (S.D.N.Y. Feb. 4, 2025) (finding that standard unmet where there the motives behind the alleged mistreatment were obscure and there was "no evidence that she was subject to harsh or extensive mistreatment"). Under the NYCHRL, a punitive damages award requires a showing of "a high degree of moral culpability." *Edelman v. NYU Langone Health Sys.*, 141 F.4th 28, 43-44 (2d Cir. 2025) (even where facts justified a finding of retaliation, holding that the evidence was "not sufficient to justify an award of punitive damages").

In this case, Plaintiff has identified a single comment made by a decision maker that purports to demonstrate discriminatory and/or retaliatory animus – a comment from Mr. Spicer in which he allegedly said that he did not believe that the White House was a place for a pregnant woman (Mr. Spicer categorically denies making this statement or anything to that effect).[4] Even assuming, *arguendo*, that this statement was true, it was supposedly made in the context of Mr. Spicer's decision not to hire her for a position in the White House. However, as the Court has

---

amendments, which are not intended to be retroactive. *Livingston v. City of New York*, 563 F. Supp. 3d 201, 232 n. 14 (S.D.N.Y. 2021) ("these amendments only apply to claims that accrue on or after the effective date of October 11, 2019; they do not apply retroactively to Plaintiff's claims here").

[4] Plaintiff has also identified alleged stray comments about women by other individuals, most notably Jason Miller. However, there is no evidence that any of these individuals had any role in any of the discriminatory and/or retaliatory conduct of which Plaintiff complains. To the contrary, far from discriminating against Plaintiff, the record is clear that Mr. Miller consistently recommended her for a position in the White House. Thus, even if the comments that Plaintiff identified were true, they would not be relevant to determining whether *Defendants* acted willfully or wantonly towards *her* in violating her rights under the NYCHRL, as would be required to sustain a punitive damages award.

made clear: "The Court has already determined that Delgado's failure-to-hire claim is nonexistent, and Delgado disclaimed bringing such claims in her summary judgment briefing, and again disclaims them now." Order, p. 6, n.4 (Dec. 12, 2025) (ECF No. 579). Thus, Plaintiff cannot use the comment allegedly made by Mr. Spicer as a basis for punitive damages under the NYCHRL.

As to Plaintiff's remaining claims, there is simply no evidence of any discriminatory or retaliatory animus by decision makers warranting the imposition of punitive damages. There is no evidence in the record identifying any individual who was involved in the decision to allegedly reduce Plaintiff's job duties with the Campaign or to terminate her consultancy with the Campaign and/or the Transition Team. Without identifying those decision makers, Plaintiff cannot even demonstrate that the responsible individuals were motivated by an unlawful animus, let alone that demonstrating that Defendants' conduct was "willfully or wantonly" negligent or reckless, or that it evinced a "conscious disregard of the rights of others or conduct so reckless as to amount to such disregard." Thus, Plaintiff is not entitled to punitive damages under the NYCHRL.

**B.**      <u>**The Court Should Strike Plaintiff's Punitive Damages Demand under the New York Common Law**</u>

To the extent that Plaintiff is claiming she is entitled to punitive damages under her tortious interference with prospective economic advantage cause of action, the law simply does not support any such award. The standard for receiving punitive damages under New York tort law is even higher than under the NYCHRL. Unlike the case with the anti-discrimination laws, punitive damages are generally not available under New York's common law to remedy purely private claims between the party. *See, e.g., Conocophillips v. 261 E. Merrick Rd. Corp.*, 428 F. Supp. 2d 111, 129 (E.D.N.Y. 2006) ("this Court concludes that New York law does not permit punitive damages under Counts Two and Three [for tortious interference], since the torts involved were

10

purely private wrongs and not aimed at the public generally").  Indeed, even where punitive damages are allowed under New York common law, the Court of Appeals has stated:

> Punitive damages are available only in those limited circumstances where it is necessary to deter defendant and others like it from engaging in conduct that may be characterized as "gross" and "morally reprehensible," and of such wanton dishonesty as to imply a criminal indifference to civil obligations.

*New York Univ. v. Cont'l Ins. Co.,* 87 N.Y.2d 308, 315–16 (1995).  The Second Circuit has echoed this high standard, explaining that "[o]ur Court has observed that the recklessness that will give rise to punitive damages [under New York law] must be close to criminality." *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 725 F.3d 65, 127 (2d Cir. 2013) (internal quotations omitted); *see also Reach Music Publ'g, Inc. v. Protoons Inc.*, 718 F. App'x 8, 11 (2d Cir. 2017) ("Under New York law, which the parties agree applies here, punitive damages are awarded in tort actions where the defendant's wrongdoing has been intentional and deliberate, and has the character of outrage frequently associated with crime") (internal quotations omitted); *Raedle v. Credit Agricole Indosuez*, No. 04-cv-2235 (TPG), 2010 WL 1506731, at *2 (S.D.N.Y. Apr. 14, 2010) ("Courts in the Second Circuit have held that punitive damages are available in actions for tortious interference with prospective employment where the defendant's conduct is highly egregious and borders on the criminal") (citing *Carvel Corp. v. Noonan*, 350 F.3d 6, 24 (2d Cir. 2003); *Purgess v. Sharrock*, 33 F.3d 134, 142 (2d Cir. 1994)).

In the instant case, even were Plaintiff to prevail on her claim for tortious interference with prospective economic advantage based on the failure to offer her a role in the White House, there is absolutely no evidence supporting a finding that Mr. Spicer's single comment arose to a criminal indifference to her rights.  Accordingly, there is no basis to award punitive damages in this case, and Plaintiff's request for such damages should be stricken.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their motion in limine to limit Plaintiff's damages in its entirety.

Dated: April 13, 2026
New York, NY

**HUGHES HUBBARD & REED LLP**

By:    /s/ Jeffrey Gavenman
Jeffrey S. Gavenman
Jeremy W. Schulman
One Battery Park Plaza
New York, NY 10004
Telephone: (212) 837-6000
Jeffrey.gavenman@hugheshubbard.com
Jeremy.schulman@hugheshubbard.com

Michael T. Madaio, Esq.
Madaio Eyet & Associates LLP
112 West 34th Street 17th & 18th Floors
New York, New York 10023
Telephone: (908) 869-1188
mmadaio@me-firm.com

*Counsel for Defendants*

12

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this motion complies with the type-volume limitation of this Court's Individual Rules of Practice III(D) and ECF No. 508 because it contains 3708 words, excluding the parts exempted by this Court's Individual Rules of Practice and the Local Rules of the Southern District of New York.

Dated: April 13, 2026                                    Respectfully submitted,

/s/ Jeffrey S. Gavenman
                                                 Jeffrey S. Gavenman

                                                 *Counsel for Defendants*

13

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 6.4, I hereby certify that, on April 12, 2026, Defendants conferred with Plaintiff in a good faith effort to resolve the issues asserted in this motion without the intervention of the Court.

Dated: April 13, 2026
      New York, NY

By:    /s/ Jeffrey S. Gavenman
              Jeffrey S. Gavenman

*Counsel for Defendants*